### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| 15375 MEMORIAL CORPORATION, *et al.*, | ) | Bankr. Case No. 06-10859 (KG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| BEPCO LP, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | Civil Action No. 08-313 (SLR) |
| v. | ) | |
| | ) | Bankruptcy Case No. 06-10859 |
| GlobalSantaFe Corporation, *et al*, | ) | ADV 06-50822 |
| | ) | AP 08-29 |
| Appellees. | ) | |
| | ) | (Jointly Administered) |

### MOTION OF APPELLANT BEPCO, L.P., F/K/A BASS ENTERPRISES PRODUCTION COMPANY (I) FOR CONSIDERATION OF SUPPLEMENTAL MATERIALS IN CONNECTION WITH CERTIFICATION REQUEST AND (II) TO SUPPLEMENT RECORD ON APPEAL

Appellant BEPCO, L.P., f/k/a Bass Enterprises Production Company ("BEPCO" or "Appellant") by its undersigned attorneys, hereby moves (the "Motion") this Court to: (i) consider certain supplemental materials in connection with BEPCO's request, pursuant to 28 U.S.C. § 158(d)(2) and Rule 8001(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for certification of its above-captioned jointly administered appeals for direct review in the United States Court of Appeals for the Third Circuit; and (ii) supplement the record in connection with the appeals. In support of this Motion, BEPCO respectfully states as follows:

## BACKGROUND

1.     On April 28, 2008, BEPCO timely filed notices of appeal from (a) the Findings Of Fact And Conclusions Of Law (Bankr. D.I. 291; Adv. D.I. 164) (the "Opinion") and related Order (Bankr. D.I. 292; Adv. D.I. 165) (the "Order"); and (b) the Memorandum Opinion On Reargument (Bankr. D.I. 323; Adv. D.I. 193) (the "Reconsideration Opinion") and related Order (Bankr. D.I. 324; Adv. D.I. 194) (the "Reconsideration Order" and, collectively with the Reconsideration Opinion, the "Reconsideration Opinion and Order") each issued by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). By these appeals, BEPCO seeks, among other things, a reversal of the Bankruptcy Court's decision declining to dismiss the chapter 11 bankruptcy cases of 15375 Memorial Corporation ("Memorial") and Santa Fe Minerals, Inc. ("Santa Fe" and, collectively with Memorial, the "Debtors") for cause under section 1112(b) of title 11 of the United States Code (as amended, the "Bankruptcy Code") and for the Debtors' lack of good faith.

2.     On April 29, 2008, as authorized by the Reconsideration Opinion and Order, BEPCO filed a petition (the "Petition") against Santa Fe and certain liability insurers in the 12th Judicial District Court for the Parish of Avoyelles, Louisiana, thereby commencing an action captioned *BEPCO, L.P. v. Santa Fe Minerals, Inc., et al.*, Docket No. 2008-2006 B (the "Louisiana Action").

3.     On May 7, 2008, the Debtors and the GSF Entities[1] each filed notices of cross-appeal from the Opinion and Order and the Reconsideration Opinion and Order (Bankr. D.I. 336 & 337; Adv. D.I. 206 & 207).

---

[1]     The GSF Entities are GlobalSantaFe Corporation, GlobalSantaFe Corporate Services, Inc. and Entities Holdings, Inc.

4.      On May 8, 2008, BEPCO timely filed in the Bankruptcy Court: (i) the Statement Of Issues And Designation Of Items To Be Included In Record On Appeal By Appellant BEPCO, L.P., f/k/a Bass Enterprises Production Company Regarding Bankr. D.I. 291 & 292 And Adv. D.I. 164 & 165 (Bankr. D.I. 340; Adv. D.I. 210); and (ii) the Statement Of Issues And Designation Of Items To Be Included In Record On Appeal By Appellant BEPCO, L.P., f/k/a Bass Enterprises Production Company Regarding Bankr. D.I. 323 & 324 And Adv. D.I. 193 & 194 (Bankr. D.I. 341; Adv. D.I. 211).[2]

5.      On May 19, 2008, the Debtors filed the Statement Of Debtors And Debtors-In-Possession 15375 Memorial Corporation And Santa Fe Minerals, Inc. Of Issues On Cross-Appeal And Counter-Designation Of The Items To Be Included In The Record On Appeal (Bankr. D.I. 345, Adv. D.I. 213).  On that same day, the GSF Entities filed the GlobalSantaFe Entities' Statement Of Issues And Designation Of Record On Appeal (Bankr. D.I. 346; Adv. D.I. 214).

6.      All appeals were subsequently docketed with this Court on May 27 & 29, 2008, and assigned the following case numbers: 08-313 (SLR), 08-314 (SLR), 08-318 (SLR), 08-319 (SLR), 08-321 (SLR), 08-322 (SLR), 08-325 (SLR) and 08-326 (SLR).[3]

7.      On June 4, 2008, BEPCO filed in this Court BEPCO, L.P., f/k/a Bass Enterprises Production Company's Emergency Request For Certification For Direct Appeal To The United States Court Of Appeals For The Third Circuit Pursuant To 28 U.S.C. Section

---

[2]    BEPCO's appellate record designations are substantially identical in its appeals from the Opinion and Order and from the Reconsideration Opinion and Order.

[3]    On June 6, 2008, this Court ordered that all of the above-referenced appeals were to be consolidated for procedural purposes under Case No. 08-313.

158(d)(2) (Dist. D.I. 6) (the "Certification Request"). Pursuant to the Certification Request, BEPCO seeks to expedite its appeals and obtain their direct review in the United States Court of Appeals for the Third Circuit. The Certification Request is currently pending before this Court, with Appellees' responses due no later than June 16, 2008.

        8.     Following the docketing of the appeals with this Court, the Debtors filed the following in the Bankruptcy Court:

    i.    Debtors' First Amended Joint Plan of Liquidation (Bankr. D.I. 351) (the "Amended Plan");

    ii.    Disclosure Statement For Debtors' First Amended Joint Plan Of Liquidation (Bankr. D.I. 352) (the "Disclosure Statement");

    iii.    Notice Of Hearing with respect to adequacy of the Disclosure Statement (Bankr. D.I. 354) (the "Notice");

    iv.    Debtors' Motion For An Order (I) Approving Disclosure Statement, (II) Establishing Confirmation Related Notice Procedures, (III) Approving Solicitations Packages, And (IV) Approving Forms Of Ballots And Procedures For Voting On Debtors' First Amended Joint Plan Of Liquidation (Bankr. D.I. 356) (the "Solicitation Procedures Motion");

    v.    Second Interim Application Of Stevens & Lee, P.C. For Allowance And Payment Of Compensation And Reimbursement Of Expenses As Counsel To The Debtors For The Period November 1, 2006 Through January 31, 2007 (Bankr. D.I. 358) (the "Second Interim Fee Application");

    vi.    Third Interim Application Of Stevens & Lee, P.C. For Allowance And Payment Of Compensation And Reimbursement Of Expenses As Counsel To The Debtors For The Period February 1, 2007 Through April 30, 2007 (Bankr. D.I. 359) (the "Third Interim Fee Application");

    vii.    Debtors' Motion Under And Pursuant To Federal Rule Of Bankruptcy Procedure 9019 For Approval Of Settlement (Bankr. D.I. 360) (the "Insider Settlement Motion"); and

    viii.    Debtors' Motion For An Order Shortening Notice Period With Respect To Hearing On Adequacy Of The Disclosure Statement For Debtors' First Amended Joint Plan Of Liquidation (Bankr. D.I. 361) (the "Motion to Shorten").

        9.     As set forth in the above filings, the Debtors seek to proceed with numerous matters at a hearing before the Bankruptcy Court on June 27, 2008, at 11:00 a.m. (ET),

with objections asserted to be due no later than June 20, 2008. These matters involve issues that are at the heart of these appeals and which could result in the denial of effective appellate review to BEPCO if the Debtors obtain the relief they seek. For instance, pursuant to the Insider Settlement Motion, the Debtors seek approval of a settlement with the GSF Entities which would result in the compromise and release of valuable causes of action in which BEPCO asserts an interest. Similarly, the Amended Plan, the Disclosure Statement for which the Debtors seek to have approved at this hearing, incorporates the settlement and would grant the nondebtor GSF Entities impermissible permanent injunctions and releases from third party claims, including those of BEPCO. In addition, the Debtors' actions in the Bankruptcy Court since the docketing of these appeals appear intended to, and are likely to have the effect of, frustrating BEPCO's ability to proceed with the Louisiana Action authorized by the Bankruptcy Court in the Reconsideration Opinion and Order.

       10.    In response to the foregoing, BEPCO filed an objection to the Motion to Shorten and a request that the Debtors' other requests for relief be continued until a date to be determined pending a status conference before the Bankruptcy Court to discuss appropriate scheduling (Bankr. D.I. 364) (the "Objection/Cross-Motion" and, collectively with the Petition, the Amended Plan, the Disclosure Statement, the Notice, the Solicitation Procedures Motion, the Second Interim Fee Application, the Third Interim Fee Application, the Insider Settlement Motion and the Motion to Shorten, the "Additional Record Items").[4]

       11.    Although the noticed objection deadline for the June 27th hearing is just 9 days away, the Bankruptcy Court has not yet acted on the Motion to Shorten or the

_____

[4]    The Additional Record Items are attached to the proposed order annexed hereto as Exhibits A through J.

Objection/Cross Motion.   Immediately prior to the filing of this Motion, the Debtors filed Debtors' Reply In Further Support Of Motion For An Order Shortening Notice Period With Respect To Hearing On The Adequacy Of The Disclosure Statement For Debtors' First Amended Joint Plan Of Liquidation And Response To Bass' Cross-Motion To Adjourn June 27 Hearing Matters (Bankr. D.I. 366).

## RELIEF REQUESTED

12.     By this Motion, BEPCO respectfully requests that this Court: (i) consider the Additional Record Items in connection with BEPCO's Certification Request pending before this Court; and (ii) supplement the record in connection with these appeals to include the Amended Plan, the Disclosure Statement, the Insider Settlement Motion, the Second Interim Fee Application and the Third Interim Fee Application.

> A.     Consideration Of The Additional Record Items In Connection With BEPCO's Certification Request Is Warranted

13.     First, BEPCO seeks to have the Court consider the Additional Record Items, which are directly relevant to its Certification Request.

14.     The Certification Request, made pursuant to 28 U.S.C. § 158(d)(2) and Fed. R. Bankr. P. 8001(f), does not itself require this Court to review the actions of the Bankruptcy Court.   Rather, it is a procedural device that provides for this Court to make a determination concerning whether the criteria under the statute for a direct appeal to the Third Circuit have been satisfied.   There are four independent bases for granting a certification, including, but not limited to, whether "an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken . . . ." 28 U.S.C. § 158(d)(2)(A)(iii).

15.    The Additional Record Items are undoubtedly relevant to, *inter alia,* ascertaining whether a direct appeal in the Third Circuit would materially advance the progress of the underlying bankruptcy case.  The Additional Record Items principally establish how litigation continues to multiply in the Bankruptcy Court over issues that could be entirely resolved via a prompt adjudication of BEPCO's appeals, which seek the reversal of the Bankruptcy Court's decision not to dismiss the Debtors' bankruptcy cases for lack of good faith and for other cause under section 1112(b) of the Bankruptcy Code.  The Additional Record Items also establish, among other things: (a) the steps being taken by the Debtors and the GSF Entities in the Bankruptcy Court to thwart BEPCO's ability to obtain meaningful appellate review by seeking relief on an aggressive schedule that could moot BEPCO's appeals; (b) the machinations of the Debtors and the GSF Entities to frustrate BEPCO's ability to proceed with the Louisiana Action to liquidate its claims against Santa Fe and attempt to recover under liability insurance policies, as authorized by the Bankruptcy Court pursuant to the Reconsideration Opinion and Order; (c) BEPCO's efforts to diligently proceed with the Louisiana Action; and (d) BEPCO's efforts before the Bankruptcy Court to ensure that the Louisiana Action and these appeals have a chance to proceed.

16.    Accordingly, the Additional Record Items undoubtedly will be helpful to the Court in acting upon the Certification Request and should be considered for that purpose.

      B.    **The Appellate Record Should Be Formally Supplemented To Include The Amended Plan, The Disclosure Statement, The Second Interim Fee Application, The Third Interim Fee Application And The Insider Settlement Motion**

17.    Second, BEPCO requests that the appellate record be supplemented through the formal inclusion of the Amended Plan, the Disclosure Statement, the Insider Settlement Motion, the Second Interim Fee Application and the Third Interim Fee Application.

18.    Although appellate courts are ordinarily reluctant to consider materials not available to the trial court when it rendered its decision, it is well recognized in the federal system that appellate courts have the discretion to expand the record in appropriate circumstances in aid of deciding the matters submitted to them on appeal.[5] The leading case on this issue in the Third Circuit is *Capital Cities/ABC*, 913 F.3d at 96-98, in which the Third Circuit discussed various approaches taken to the question of whether the appellate record should be supplemented, eventually focusing on that used by the Eleventh Circuit in *Ross v. Kemp*, 785 F.2d 1467 (11th Cir. 1986).  As summarized by the Third Circuit, the *Ross* court identified three factors it considered in connection with a request to supplement the record on appeal:

> (1) whether the proffered addition would establish beyond any doubt the proper resolution of the pending issue; (2) whether remanding the case to the district court for consideration of the additional material would be contrary to the interests of justice and the efficient use of judicial resources; and (3) whether the appeal arose in the context of a habeas corpus action.

*Capital Cities/ABC*, 913 F.3d at 97 (citing *Ross*, 785 F.2d at 1474-75).[6]  The greatest emphasis is placed on whether acceptance of the proffered material into the record would establish the proper resolution of the pending issues on appeal. *Garden City*, 235 F.3d at 1330.

19.    In these appeals, where the Debtors' abuse of the bankruptcy process is a central issue, inclusion of the Amended Plan, the Disclosure Statement and the Insider

---

[5]    *See, e.g., United States v. Balderama-Iribe*, 490 F.3d 1199, 1202 n.4 (10th Cir. 2007); *CSX Transp., Inc. v. Garden City*, 235 F.3d 1325, 1330 (11th Cir. 2000); *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 988 F.2d 61, 63-64 (8th Cir. 1993); *In re Capital Cities/ABC, Inc.'s Appl. for Access to Sealed Trs.*, 913 F.2d 89, 97 (3d Cir.1990); *Castle v. Cohen*, 840 F.2d 173, 180 n. 12 (3d Cir. 1988); *Gibson v. Blackburn*, 744 F.2d 403, 405 n. 3 (5th Cir. 1984); *United States v. Aulet*, 618 F.2d 182, 187 (2d Cir. 1980); *Denicola v. G.C. Murphy Co.*, 562 F.2d 889, 894 n. 8 (3d Cir. 1977).

[6]    The Eleventh Circuit has since applied this approach outside of the context of a habeas corpus action. *See, e.g., Garden City*, 235 F.3d at 1330.

Settlement Motion in the appellate record is especially appropriate because they show beyond a reasonable doubt that the Debtors have no ability and willingness to confirm a plan of reorganization in compliance with the requirements of the Bankruptcy Code and Bankruptcy Rules. Most notably, the Amended Plan, which incorporates the settlement from the Insider Settlement Motion, is predicated on the granting of illegal third party releases and permanent injunctions for the benefit of the non-debtor GSF Entities (Amended Plan, §§ 8.1, 8.2 & 8.3) and, therefore, is unconfirmable on its face.

        20.    In its Reconsideration Opinion, the Bankruptcy Court stated as a principal reason for refusing to dismiss the Debtors' bankruptcy cases that "the Court is unable and unwilling to find that the Debtors will be unable to propose a confirmable plan." (Recon. Op. at 9) The filing of the Amended Plan, the Disclosure Statement and the Insider Settlement Motion, however, establish beyond a reasonable doubt that the Debtors are unable or unwilling to file a plan that is confirmable. The third party releases and permanent injunctions for the GSF Entities sought by the Debtors in those documents are virtually the same as those which the Bankruptcy Court rejected in its Opinion, where it stated:

> The Debtors are unable to demonstrate that this is the rare case where such extraordinary relief is appropriate. *See, e.g., In re Master Mortgage Inv. Fund, Inc.,* 168 B.R. 930, 936 (Bankr. W.D. Mo. 1994) ("[A] permanent injunction is a rare thing, indeed, and only upon a showing of exceptional circumstances in which the factors outlined above are present will this Court even entertain the possibility of a permanent injunction."); *Combustion Engineering,* 391 F.3d at 236 ("[T]he equitable powers authorized by § 105(a) are not without limitation, and courts have cautioned that this section 'does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity.'") (quoting *Schwartz v. Aquatic Dev. Group, Inc. (In re Aquatic Dev. Group, Inc.),* 352 F.3d 671, 680-81 (2d Cir.2003)).

(Op. at 77-78)  Accordingly, there is no reason not consider these items on appeal when they seek to achieve ends, as already determined by the Bankruptcy Court, that cannot be countenanced under the Bankruptcy Code and Bankruptcy Rules.

21.    Inclusion of the First Interim Fee Application and the Second Interim Fee Application in the appellate record is likewise appropriate because they establish that the full extent of the Debtors' dire administrative insolvency was misrepresented by the Debtors to the Bankruptcy Court in connection with proceedings on BEPCO's motion to dismiss the bankruptcy cases. *See Dakota Indus.*, 988 F.2d at 63 (considering new evidence on appeal tending to show that misrepresentations to the trial court, whether or not willful, left it with an "incomplete picture" of the dispute under appeal).  When the Bankruptcy Court rendered its Opinion on February 15, 2008, it noted that the only fee application filed in the bankruptcy cases had been submitted by Debtors' bankruptcy counsel, Stevens & Lee, P.C. and covered a period only through October 31, 2006. (Op. at 48).  Additionally, the Bankruptcy Court noted the testimony at the hearing held on September 17 & 18, 2007, of David Faure, the Debtors' sole representative in the bankruptcy cases, that Stevens & Lee's estimated fees and expenses for postpetition work in the chapter 11 cases was between $200,000 to $250,000. (Op. at 48)

22.    The recent filing of the First Interim Fee Application and the Second Interim Fee Application, which include fees and expenses of Stevens & Lee only for the period from November 2006 through April 2007, seek the allowance and payment on an interim basis of approximately $237,603.05 in fees and expenses.  This brings the aggregate total requested by Stevens & Lee alone to in excess of $325,000, with fees and expenses spanning a period of more

than 13 months still not having been applied for or disclosed to the Bankruptcy Court.[7]  This far

exceeds the $200,000 to $250,000 that the Debtors represented to the Bankruptcy Court was

owed to Stevens & Lee for the entirety of its postpetition work on the bankruptcy cases.[8]

      23.    Finally, in the context of these bankruptcy cases, it makes imminent sense

here for this Court take a practical approach to what should be included in the appellate record.

*See In re Brown,* 951 F.2d 564, 572 (3d Cir. 1991) (noting that in the context of an appeal of the

question of whether the bankruptcy petition should have been dismissed for lack of good faith,

the court would not "blind" itself to subsequent developments in the court below).  Were this

Court to ultimately remand for consideration of these additional materials, it would simply delay

the resolution of threshold issues in the bankruptcy cases that have been an overhang for

proceedings in the Bankruptcy Court for nearly two years now.  Accordingly, the interests of

justice and the efficient use of judicial resources warrant consideration of these items.

### D. DEL. L.R. 7.1.1 STATEMENT

      24.    To the extent applicable, the undersigned counsel for BEPCO hereby

certifies in accordance with Rule 7.1.1 of the Local Rules of Civil Practice and Procedure of the

United States District Court for the District of Delaware that a reasonable effort has been made

to reach agreement with the Debtors and the GSF Entities with respect to this Motion.

---

[7]    Indeed, the Bankruptcy Court felt compelled to comment in its Opinion that "as chapter 11 cases go, this one is extremely unusual in that the Debtors' professionals have foregone payment of their fees and expenses for nearly a year now (and fourteen months in the case of Kean Miller) without any promise or commitment of payment." (Op. at 48). Assuming Stevens & Lee's fees and expenses accrued at the same clip throughout the period from May 2007 through the present, the total accrued fees and expenses to Stevens & Lee alone would be in excess of $650,000.

[8]    The administrative expenses being accrued in the Debtors' bankruptcy cases consist almost entirely of fees and expenses for the Debtors' professionals.

Specifically, prior to filing this Motion, counsel for BEPCO requested counsel for the Debtors and GSF Entities to consent to the inclusion of these items in the record. Both parties refused to grant their consent.

WHEREFORE, BEPCO respectfully requests this Court enter an order in the form attached hereto as Exhibit 1: (i) providing that the Court will consider the Additional Record Items in connection with BEPCO's Certification Request; (ii) authorizing the appellate record to be supplemented to include the Amended Plan, the Disclosure Statement, the Insider Settlement Motion, the Second Interim Fee Application and the Third Interim Fee Application; and (iii) granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware       MORRIS, NICHOLS, ARSHT & TUNNELL LLP
      June 11, 2008

                                         Gregory W. Werkheiser (No. 3553)
                                         Kelly M. Dawson (No. 4786)
                                         1201 Market Street
                                         P. O. Box 1347
                                         Wilmington, Delaware 19899-1347
                                         Telephone: (302) 351-9229
                                         Fax: (302) 658-3989

                                         -and-

                                         CARVER DARDEN KORETZKY TESSIER FINN
                                         BLOSSMANN & AREAUX, L.L.C.
                                         M. Hampton Carver (LA #4546)
                                         Leann Opotowsky Moses (LA #19439)
                                         1100 Poydras Street, Suite 2700
                                         New Orleans, LA 70163
                                         Telephone: (504) 585-3800
                                         Fax: (504) 585-3801

                                         Co-Counsel for BEPCO, L.P., formerly known
                                         as Bass Enterprises Production Company

2357887.2

12

# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| 15375 MEMORIAL CORPORATION, *et al.*, | ) | Bankr. Case No. 06-10859 (KG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| BEPCO LP, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | Civil Action No. 08-313 (SLR) |
| v. | ) | |
| | ) | Bankruptcy Case No. 06-10859 |
| GlobalSantaFe Corporation, *et al,* | ) | ADV 06-50822 |
| | ) | AP 08-29 |
| Appellees. | ) | |
| | ) | (Jointly Administered) |

## ORDER

Upon the Motion Of Appellant BEPCO, L.P., f/k/a Bass Enterprises Production Company (I) For Consideration Of Supplemental Materials In Connection With Certification Request And (II) To Supplement Record On Appeal (the "Motion")[1]; and due and sufficient notice of the Motion having been given; and it appearing that no other or further notice need be provided; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.    The Motion is granted.

2.    The Additional Record Items, attached hereto as Exhibits A through J, may be considered in connection with proceedings on BEPCO, L.P., f/k/a Bass Enterprises

---

[1]    All terms not defined herein shall have the meanings ascribed to such terms in the Motion.

Production Company's Emergency Request For Certification For Direct Appeal To The United States Court Of Appeals For The Third Circuit Pursuant To 28 U.S.C. Section 158(d)(2) (Dist. D.I. 6).

    3.  The record in these appeals is hereby supplemented to include the Amended Plan (Exhibit B hereto), the Disclosure Statement (Exhibit C hereto), the Second Interim Fee Application (Exhibit F hereto), the Third Interim Fee Application (Exhibit G hereto) and the Insider Settlement Motion (Exhibit H hereto).

Dated: June __, 2008
    Wilmington, Delaware

                    _____
                    THE HONORABLE SUE L. ROBINSON
                    UNITED STATES DISTRICT JUDGE

# EXHIBIT A

FILE NO.
FILED AND RECORDED

2008 APR 29 P 4: 14

12TH JUDICIAL DISTRICT COURT FOR THE PARISH OF AVOYELLES

STATE OF LOUISIANA

CLERK AND RECORDER
AVOYELLES PARISH LA.

DOCKET NO. _2008- 2006_ B                    DIVISION "___"

BEPCO, L.P.

VERSUS

SANTA FE MINERALS, INC.; CERTAIN UNDERWRITERS AT LLOYD'S, LONDON AND
LONDON MARKET COMPANIES; AND XYZ INSURANCE COMPANIES

FILED: _____          _____
                                                    DEPUTY CLERK

## PETITION

NOW INTO COURT, through undersigned counsel, comes Plaintiff, BEPCO,
L.P., f/k/a Bass Enterprises Production Company, who respectfully files this Petition, and asserts
the following, to-wit:

### PARTIES

1.

Plaintiff BEPCO, L.P. is a partnership organized under the laws of the State of
Delaware, authorized to do and doing business in the State of Louisiana.

2.

Made Defendants herein are:

A.     Santa Fe Minerals, Inc. ("Santa Fe"), a corporation organized under the
laws of the State of Wyoming with its principal place of business in Texas; and

B.     Certain Underwriters at Lloyd's, London and London Market Companies,
foreign insurers, subscribing to the policies insuring Andover Oil Company, Santa Fe-Andover
Oil Company, and/or Santa Fe Minerals, Inc. for the years 1964 - 1990; and

1

C.    XYZ Insurance Companies, any other insurance companies that provided coverage for the claims made herein.

## JURISDICTION AND VENUE

**3.**

This Court has the legal power to hear and determine this matter pursuant to Louisiana Constitution Article V, Section 16. Defendant Santa Fe Minerals, Inc. is subject to the personal jurisdiction of this Court under the Louisiana Long Arm Statute, La. R.S. 13:3201, because Defendant Santa Fe Minerals, Inc. contracted business in the State of Louisiana and caused damage by an offense or quasi offense committed through an act or omission in the State of Louisiana. This Court has jurisdiction over the insurer Defendants pursuant to La. R.S. 22:655 because the injuries complained of occurred in Avoyelles Parish.

**4.**

This Petition involves causes of action for damages sounding in contract and in tort as an offense and/or quasi offense. Therefore, venue is proper in this Court, pursuant to Louisiana Code of Civil Procedure articles 74 and 76.1.

## FACTS APPLICABLE TO ALL CLAIMS

### *Leases and Assignments*

**5.**

Richardson Oils, Inc., which became BEPCO, L.P., conducted and participated in various oil and gas exploration and production activities on a portion of the property located within Sections 10, 11, 12, 21, and 22 in Township 2 South, Range 2 East, and in Sections 7, 17, 18, and 19 in Township 2 South, Range 3 East, all in Avoyelles Parish, Louisiana in the Haas and Eola Fields, pursuant to and on the terms contained in that certain Lease from Haas Investment Co., Inc. et al., as lessors, and S. W. Richardson, as lessee, dated October 15, 1938, recorded in Alienation Book A-73, folio 595, Avoyelles Parish, Louisiana ("Haas Lease").

923282v.1

**6.**

Pursuant to an act of Assignment dated effective February 1, 1964, Richardson Oils, Inc., which became BEPCO, L.P. and others, assigned their interests in and to the Haas Lease and their obligations under the Haas Lease to Chenola Oil Corporation, which assumed all obligations under the Haas Lease. This Assignment, which is recorded in Book 98, folio 551, Avoyelles Parish, Louisiana contains, in paragraph (d), a specific assumption by Chenola Oil Corporation of BEPCO, L.P.'s obligations that reads as follows: "Assignee, as Lessee, shall assume and perform all the obligations of Assignor or its predecessors in title required to be performed under the oil, gas and mineral leases described in Exhibit "A," or by any statue, law or governmental regulation."

**7.**

Pursuant to an act of Assignment dated effective June 1, 1971, Chenola Oil Corporation assigned its interest in and to the Haas Lease and its obligations thereunder, including its obligations to Richardson Oils, Inc. which became BEPCO, L.P., to Chenola Oil Corporation of Louisiana, Inc. In this Assignment, which is recorded in Book 113, folio 567, Registry No. 243301, records of Avoyelles Parish, Louisiana, Chenola Oil Corporation of Louisiana, Inc., in paragraph (d) thereof, specifically assumed all obligations of Chenola Oil Corporation or its predecessors in title required to be performed under the Haas Lease or by any statute, law, or governmental regulation.

**8.**

Chenola Oil Corporation of Louisiana assigned and transferred its interest in the Haas Lease and the obligations related thereto pursuant to an act of Transfer and Conveyance by Chenola Oil Corporation of Louisiana, Inc. to Andover Oil Company, dated September 4, 1974 recorded in Book 116, page 27, Registry No. 26422, records of Avoyelles Parish, Louisiana. This Assignment states that it incorporates and is subject to all obligations applicable to the Haas Lease or the land covered by such leases recorded in Avoyelles and Rapides Parishes, Louisiana on June 1, 1974.

3

**9.**

Santa Fe Minerals, Inc. acquired Andover Oil Company in or about July 1982, and changed its name to Santa Fe-Andover Oil Company in or about October 1982.

**10.**

Santa Fe-Andover Oil Company became Santa Fe Minerals, Inc. in or about November 1989.

**11.**

Certain Underwriters at Lloyd's, London and London Market Companies issued insurance policies to Andover Oil Company, Santa Fe-Andover Oil Company, and/or Santa Fe Minerals, Inc., that, upon information and belief, cover the claims asserted herein by BEPCO, L.P.

*The Tebow Litigation*

**12.**

In April 2005, Santa Fe Minerals, Inc., BEPCO, L.P., and others were named as defendants in an action filed by William H. Tebow, Donna Taylor Tebow, and Nancy Mikell Carruth ("Tebow Plaintiffs") and captioned *William H. Tebow et al v. Bradex Oil & Gas Inc., et al,* Docket No. 2005-7728, 12th Judicial District Court for the Parish of Avoyelles, State of Louisiana ("Tebow Lawsuit").

**13.**

In the Tebow Lawsuit, the Tebow Plaintiffs alleged that their property (located in Sections 10, 11, 12, 21, and 22 in Township 2 South, Range 2 East, and in Sections 7, 17, 18, and 19 in Township 2 South, Range 3 East, all in Avoyelles Parish, Louisiana in the Haas and Eola Fields) had been damaged by historical exploration and production operations conducted on or near the property by the defendants including Santa Fe and BEPCO, and each of their predecessors and successors.

923282v.1

**14.**

The Tebow Plaintiffs alleged that the defendants stored and disposed of oilfield wastes in unlined earthen pits on their property and that damage was caused by disposal of those wastes on their property. The Tebow Plaintiffs alleged that the defendants' operations caused contamination of the surface, subsurface, and ground water. The Tebow Plaintiffs sought to recover over three hundred million dollars of alleged damages.

**15.**

The Tebow Plaintiffs' claims against Santa Fe Minerals, Inc. and BEPCO, L.P. were based in tort, on alleged breaches of the Haas Lease, and under the Louisiana Mineral Code.

**16.**

The claims made by the Tebow Plaintiffs in the Tebow Lawsuit also fell squarely within Santa Fe's obligations to BEPCO, L.P. under the indemnification provisions of the Assignments through which Santa Fe assumed the obligation to indemnify BEPCO, L.P.

**17.**

Santa Fe Minerals, Inc. participated in the Tebow Lawsuit for over a year. On or about August 16, 2006, Santa Fe Minerals, Inc. filed bankruptcy in the bankruptcy court of Delaware.

**18.**

The Tebow Plaintiffs immediately attempted to dismiss Santa Fe without prejudice and did not file a proof of claim in Santa Fe's bankruptcy.

**19.**

By Order dated April 16, 2008, the Honorable Kevin Gross, United States Bankruptcy Judge for the District of Delaware, wherein the Santa Fe bankruptcy is pending, lifted the automatic stay and granted BEPCO, L.P. leave to proceed with this litigation.

**20.**

BEPCO, L.P. continued to vigorously defend the Tebow Lawsuit in which the Tebow Plaintiffs sought over three hundred million dollars in damages.

923282v.1

**21.**

The Tebow Court ruled that BEPCO, L.P. and Santa Fe were solidarily liable for the Tebow Plaintiffs' damages.

**22.**

The Tebow trial began on February 19, 2007. After trying the Tebow Lawsuit for one week, BEPCO, L.P. entered into a Settlement Agreement with the Tebow Plaintiffs on or about February 26, 2007 ("Tebow Settlement"). The terms of the Tebow Settlement are confidential but will be produced herein at the appropriate time and subject to the necessary protections.

**23.**

The Tebow Settlement required BEPCO, L.P. to make a one-time cash payment to the Tebow Plaintiffs to satisfy the environmental damages and liabilities asserted in the Tebow Lawsuit. The Tebow Settlement also required BEPCO, L.P. to conduct remediation activities on the Tebow Plaintiffs' property, which remediation activities are substantially complete. As part of the Tebow Settlement, BEPCO, L.P. was assigned the rights of the Tebow Plaintiffs in the Tebow Lawsuit against Santa Fe and the Tebow Plaintiffs are precluded from further pursuing Santa Fe for the damages and claims raised in the Tebow Lawsuit.

**24.**

The Tebow Settlement was reasonable in light of the damages claimed by the Tebow Plaintiffs and the potential liability of BEPCO, L.P.

**25.**

The Tebow Settlement was fair to Santa Fe.

**26.**

Upon information and belief, Santa Fe was aware that BEPCO, L.P. and the Tebow Plaintiffs were involved in settlement negotiations and that a settlement agreement was ultimately confected.

923282v.1

27.

BEPCO, L.P. is entitled to be fully indemnified and reimbursed by Santa Fe and its insurers for the full amount of the Tebow Settlement, including the full cost expended by BEPCO, L.P. for the remediation.

28.

Pursuant to the Tebow Court's ruling that Santa Fe is solidarily liable to the Tebow Plaintiffs, Santa Fe is liable to reimburse BEPCO, L.P. in proportion to its percentage of fault, which BEPCO, L.P. maintains is 100%.

## CLAIMS FOR RELIEF

## CAUSE OF ACTION FOR INDEMNITY

29.

Plaintiff BEPCO, L.P. re-alleges Paragraphs 1 - 28 as though set forth fully herein.

30.

Santa Fe operated in Section 7, Township 2 South, Range 3 East and specifically in the areas referred to as the "East Pit" and the "Eddie Mayo Tank Battery area."

31.

All damages and all obligations to the Tebow Plaintiffs arising from operations after February 1, 1964, when Richardson Oils, Inc. transferred the Haas Lease are attributable to Santa Fe Minerals, Inc.  Among other things, BEPCO, L.P.'s successors including Santa Fe Minerals, Inc., opened, used, and closed the earthen pit in Section 7, Township 2 South, Range 3 East, known as the "East Pit."

32.

In the assignment of the Haas Lease from Richardson Oils, Inc. to Chenola, Chenola agreed that it "shall assume and perform all the obligations of Assignor or its predecessors in title required to be performed under the oil, gas, and mineral leases."  In the assignment from Chenola to Andover (now Santa Fe), it was agreed that the assignment

7

"incorporates and is made subject to any and all burdens and obligations applicable to the Leases herein assigned or the land covered by such leases recorded in Avoyelles and Rapides Parishes, Louisiana on June 1, 1974."

### 33.

The Tebow Lawsuit alleged that the oil and gas operations on the Tebow property were conducted negligently thereby allegedly causing the surface and the subsurface of the property and the groundwater to be contaminated. The Tebow Lawsuit further alleged that the oil and gas operators breached the Haas Lease and/or violated the Louisiana Mineral Code.

### 34.

In the Tebow Lawsuit, the Tebow Plaintiffs' experts alleged that most of the alleged contamination and damage to the their property resulted from the East Pit.

### 35.

The East Pit did not exist until after Richardson Oils, Inc. assigned the Haas Lease in 1964 and ceased operations on the Tebow Plaintiffs' property.

### 36.

Andover and Santa used the East Pit from 1974 to 1990 when Santa Fe improperly closed the East Pit.

### 37.

The Tebow Plaintiffs' experts allocated approximately $250 million of the claimed damages to the East Pit.

### 38.

Andover and Santa Fe also conducted operations in the area known as the Eddie Mayo Tank Battery area. The Tebow Plaintiffs' experts testified that the Eddie Mayo Tank Battery area was contaminated and required remediation. The Tebow Plaintiffs' experts allocated approximately $68 million for remediation and restoration of the Eddie Mayo Tank Battery area.

923282v.1

**39.**

As assignee of the lease indemnification obligation, Santa Fe agreed to perform all obligations imposed by the Haas Lease or by any statute, law, or government regulation. One such obligation is the obligation to restore the premises at the termination of the lease.

**40.**

The Tebow Court ruled that the lessor can look to any person in the chain of title to perform this obligation or to pay damages in lieu of performance because such persons are liable to the lessor jointly and severally and *in solido*.

**41.**

Under the rulings made by the Tebow Court, if the lessor looks to only one party to perform the restoration obligation or obtains settlement damages in lieu thereof, that party may obtain contribution from other parties in the chain of title because all are liable *in solido*.

**42.**

Moreover, as between the party who paid the obligation and the party who actually caused the damages constituting a breach of contract, the former may demand complete indemnity from the latter. La. C.C. art. 1804.

**43.**

BEPCO, L.P. is entitled to indemnity from the Defendants. Defendants' obligation to indemnify BEPCO, L.P. arises under the indemnification provisions of the Assignments through which Santa Fe assumed the obligation to indemnify prior operators which includes BEPCO, L.P. for all obligations required to be performed under the Haas Lease or by any statute, law, or governmental regulation.

**44.**

The indemnification provisions encompass the obligations alleged in the Tebow Lawsuit and subject to the Tebow Settlement.

923282v.1

**45.**

BEPCO, L.P. settled the Tebow Plaintiffs' claims for alleged damage to the East Pit and the Eddie Mayo Tank Battery area and agreed to perform certain remediation activities in those areas. Pursuant to the contractual indemnification assumed by Santa Fe, BEPCO, L.P. is entitled to be reimbursed by the Defendants.

<u>CAUSE OF ACTION FOR CONTRIBUTION IN TORT</u>

**46.**

Plaintiff BEPCO, L.P. re-alleges Paragraphs 1 - 45 as though set forth fully herein.

**47.**

The Tebow Court ruled that all of the oil and gas operators in the chain of title under the Haas Lease were solidarily liable to the Tebow Plaintiffs in tort.

**48.**

Louisiana law on solidary liability in tort holds each solidary obligor responsible in proportion to their respective fault. La. Civ. Code art. 1804.

**49.**

Santa Fe operated and disposed of material in the East Pit area, which the Tebow Plaintiffs claimed resulted in significant surface and subsurface contamination and required remediation and restoration in the amount of approximately $250 million.

**50.**

BEPCO, L.P. had assigned the Haas Lease and had ceased all operations on the Tebow Plaintiffs' property before the East Pit came into existence. Santa Fe is responsible to BEPCO, L.P. for all amounts paid and expended by BEPCO, L.P. in connection with the Tebow Settlement.

**51.**

The assignment of rights by the Tebow Plaintiffs to BEPCO, L.P. includes rights not only under the 1938 Haas Lease but also for tort damages. Therefore, BEPCO, L.P. asserts a claim for damages sounding in tort against Santa Fe and its insurers for all monies paid and expended by BEPCO, L.P. under the terms of the Tebow Settlement.

923282v.1

52.

Plaintiff requests trial by jury.

**WHEREFORE,** after due proceedings are had, Plaintiff BEPCO, L.P. respectfully prays for judgment in its favor and against Santa Fe Minerals, Inc. and its insurers, jointly, severally and in solido:

1.     Holding that BEPCO, L.P. is entitled to indemnification under the Haas Lease and awarding BEPCO, L.P. all monies paid and expended by BEPCO, L.P. under the terms of Tebow Settlement; and

2.     Awarding BEPCO, L.P., as a solidary obligor with Santa Fe Minerals, Inc. in tort and against Santa Fe Minerals, Inc. and the insurer defendants, all amounts paid to the Tebow Plaintiffs or expended by BEPCO, L.P. under the terms of the Tebow Settlement; and

3.     Awarding interest and all cost of these proceedings; and

4.     Awarding all other such relief as the law, equity, and nature of the case may allow; and

923282v.1

5.　　Ordering trial by jury of all issues in this case.

Respectfully submitted,

*Phil Wittmann*

Phillip A. Wittmann, 13625
Daria Burgess Diaz, 17928
Jackie M. McCreary, 28676
　　　　Of
STONE PIGMAN WALTHER
　　WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130-3588
Telephone: (504) 581-3200
Facsimile: (504) 581-3361

**Attorneys for BEPCO, L.P.**

<u>PLEASE SERVE</u>:

**SANTA FE MINERALS, INC.**
Through its agent for service of process:
The Prentice-Hall Corp. System
1006 Hibernia Bank Building
New Orleans, Louisiana 70112

　　　　and

Via the Louisiana Long Arm Statute
La. R.S. 13:3201

**CERTAIN UNDERWRITERS AT LLOYDS, LONDON AND LONDON MARKET COMPANIES, FOREIGN INSURERS, SUBSCRIBING TO THE POLICIES INSURING ANDOVER OIL COMPANY, ANDOVER SANTA FE OIL COMPANY, AND/OR SANTA FE MINERALS, INC. FOR THE YEARS 1964 - 1990**
Through its agent for service of process:
Mendes and Mount
New York, New York

　　　　and

Through the Louisiana Secretary of State

**XYZ INSURANCE COMPANIES**
Through the Louisiana Secretary of State

923282v.1

# EXHIBIT B

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:         )

           )    Chapter 11

15375 MEMORIAL CORPORATION,   )

*et al.*          )    Case No. 06-10859 (KG)

           )

     Debtors.     )    Jointly Administered

           )

---

## DEBTORS' FIRST AMENDED JOINT PLAN OF LIQUIDATION

Dated: June 1, 2008

STEVENS & LEE, P. C.

John D. Demmy
1105 N. Market Street, 7th Floor
Wilmington, DE 19801
Telephone: (302) 425-3308
Facsimile: (610) 371-8515
E-mail: jdd@stevenslee.com

-and-

John C. Kilgannon
1818 Market Street, 29th Floor
Philadelphia, PA 19103
Telephone: (215) 751-1943
Facsimile: (610) 371-7954
E-mail: jck@stevenslee.com

*Attorneys for the Debtors and*
*Debtors in Possession*

SL1 818135v2/000000.00000

DATE FILED 6-2-08

DOCKET NO. 351

## Table of Contents

Page

ARTICLE I    DEFINITIONS AND RULES OF CONSTRUCTION ........................................1
1.1    Definitions..................................................................................................................1
    1.1.1    *Administrative Claim Plan*...........................................................................1
    1.1.2    *Administrative Claims Bar Date Plan.* ........................................................1
    1.1.3    *Allowance Date.* .........................................................................................1
    1.1.4    *Allowed Court.* ...........................................................................................1
    1.1.5    *Alter Ego Claims* ........................................................................................1
    1.1.6    *Asset* ..........................................................................................................2
    1.1.7    *Ballot* .........................................................................................................2
    1.1.8    *Bankruptcy Court* .......................................................................................2
    1.1.9    *Bankruptcy Rules* .......................................................................................2
    1.1.10    *Bar Date* .....................................................................................................2
    1.1.11    *Bass* ...........................................................................................................2
    1.1.12    *Bass Claims* ................................................................................................2
    1.1.13    *Bass Litigation* ...........................................................................................2
    1.1.14    *Business Day* ..............................................................................................2
    1.1.15    *Case.* ..........................................................................................................2
    1.1.16    *Cash* ...........................................................................................................2
    1.1.17    *Causes of Action* ........................................................................................2
    1.1.18    *Claim* .........................................................................................................3
    1.1.19    *Claimant* ....................................................................................................3
    1.1.20    *Class* ..........................................................................................................3
    1.1.21    *Class 3 Fund* ..............................................................................................3
    1.1.22    *Code* ...........................................................................................................3
    1.1.23    *Confirmation* ..............................................................................................3
    1.1.24    *Confirmation Date* ......................................................................................3
    1.1.25    *Confirmation Hearing* .................................................................................3
    1.1.26    *Confirmation Order* ....................................................................................3
    1.1.27    *Contested Claim* .........................................................................................3
    1.1.28    *Contingent Litigation Claims*......................................................................3
    1.1.29    *Creditor* ......................................................................................................4
    1.1.30    *Cure Amount* ..............................................................................................4
    1.1.31    *Debtors* .......................................................................................................4
    1.1.32    *Demand* ......................................................................................................4
    1.1.33    *Disclosure Statement* ..................................................................................4
    1.1.34    *Effective Date* .............................................................................................4
    1.1.35    *Entity.* .........................................................................................................4
    1.1.36    *Estate.* .........................................................................................................4
    1.1.37    *EPA* ............................................................................................................4
    1.1.38    *Final Order* .................................................................................................4
    1.1.39    *General Unsecured Claim* ...........................................................................4
    1.1.40    *GlobalSantaFe Contribution* .......................................................................5

**Table of Contents**
(continued)

Page

1.1.41   *GlobalSantaFe Entities* ...................................................................5
1.1.42   *GSF Settlement* ..............................................................................5
1.1.43   *Impaired* .........................................................................................5
1.1.44   *Insurer* ............................................................................................5
1.1.45   *Insurance Coverage Action* ...........................................................5
1.1.46   *Insurance Policy* .............................................................................5
1.1.47   *Insurance Rights* .............................................................................6
1.1.48   *Insurance Rights Agreement* ..........................................................6
1.1.49   *Insurance Settlement Agreement* ....................................................6
1.1.50   *Intercompany Claim* .......................................................................6
1.1.51   *Interest* ............................................................................................6
1.1.52   *IRC* ..................................................................................................6
1.1.53   *Lien* .................................................................................................6
1.1.54   *Local Rules* .....................................................................................6
1.1.55   *Memorial* .........................................................................................6
1.1.56   *Oilfield Legacy Claims* ...................................................................6
1.1.57   *Person.* .............................................................................................7
1.1.58   *Petitions* ..........................................................................................7
1.1.59   *Petition Date* ...................................................................................7
1.1.60   *Plan Documents* ..............................................................................7
1.1.61   *Post-Petition Litigation* .................................................................7
1.1.62   *Pre-Petition* ....................................................................................7
1.1.63   *Pre-Petition Litigation* ...................................................................7
1.1.64   *Priority Claim* .................................................................................8
1.1.65   *Priority Tax Claim* ..........................................................................8
1.1.66   *Professionals* ..................................................................................8
1.1.67   *Professional Fee Claims* .................................................................8
1.1.68   *Pro Rata* ..........................................................................................8
1.1.69   *Released Party or Parties* ...............................................................9
1.1.70   *Representatives* ...............................................................................9
1.1.71   *Santa Fe* ..........................................................................................9
1.1.72   *Santa Fe Dissolution* ......................................................................9
1.1.73   *Santa Fe Dissolution Bar Date* ......................................................9
1.1.74   *Schedules* ........................................................................................9
1.1.75   *Secured Claim* .................................................................................9
1.1.76   *Secured Creditor* .............................................................................9
1.1.77   *Sinz/Troia Claims* ...........................................................................9
1.1.78   *Unclassified Claims* ......................................................................10
1.1.79   *Unimpaired Class* ..........................................................................10
1.1.80   *Unsecured Claim* ...........................................................................10
1.2      Rules of Construction ......................................................................10

(ii)

## Table of Contents
### (continued)

|  |  | Page |
|---|---|---|
| 1.3 | Exhibits | 10 |
| 1.4 | Computation of Time | 10 |
| ARTICLE II | TREATMENT OF UNCLASSIFIED CLAIMS - ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND INTERCOMPANY CLAIMS | 11 |
| 2.1 | Generally | 11 |
| 2.2 | Administrative Claims | 11 |
| 2.3 | Priority Tax Claims | 11 |
| 2.4 | Intercompany Claims | 12 |
| ARTICLE III | CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS | 12 |
| 3.1 | Generally | 12 |
| 3.2 | Classes of Claims | 12 |
| 3.3 | Treatment of Claims and Interests. | 13 |
| | 3.3.1   Unclassified Claims. | 13 |
| | 3.3.2   Class 1 - Priority Claims. | 13 |
| | 3.3.3   Class 2 - Secured Claims | 13 |
| | 3.3.4   Class 3 – General Unsecured Claims. | 14 |
| | 3.3.5   Class 4 – Sinz/Troia Claims. | 14 |
| | 3.3.6   Class 5 – Bass Claims | 14 |
| | 3.3.7   Class 6 - Contingent Litigation Claims. | 15 |
| | 3.3.8   Class 8 - Interests. | 15 |
| ARTICLE IV | MEANS FOR AND IMPLEMENTATION  OF THE PLAN; THE LIQUIDATING TRUST | 16 |
| 4.1 | Settlement With The GSF Entities | 16 |
| 4.2 | Plan Implementation | 16 |
| 4.3 | Substantive Consolidation | 16 |
| 4.4 | Corporate Existence/Dissolution | 16 |
| ARTICLE V | INSURANCE POLICIES,  EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 17 |
| 5.1 | Insurance Policies and Insurance Neutrality | 17 |
| 5.2 | Rejection of Executory Contracts and Unexpired Leases | 17 |
| 5.3 | Assumption of Executory Contracts and Unexpired Leases | 17 |
| ARTICLE VI | ACCEPTANCE OR REJECTION OF THE PLAN | 18 |
| 6.1 | Only Impaired Classes Entitled to Vote | 18 |
| 6.2 | Acceptance by Impaired Classes | 18 |
| 6.3 | Deemed Acceptance of Plan | 18 |
| ARTICLE VII | CONDITIONS TO CONFIRMATION AND EFFECTIVENESS | 18 |
| 7.1 | Conditions to Confirmation | 18 |
| 7.2 | Conditions to Effectiveness | 19 |
| 7.3 | Waiver | 20 |

SL1 818135v2/000000.00000

# Table of Contents
(continued)

Page

ARTICLE VIII  INJUNCTION IN AID OF EXECUTION OF THE PLAN AND
             RELEASES .................................................................................20
  8.1    Releases.................................................................................20
  8.2    Exculpation ............................................................................20
  8.3    Releases by Claimants ...........................................................21
  8.4    Reservation of Rights.............................................................21
ARTICLE IX    MATTERS INCIDENT TO PLAN CONFIRMATION ...............22
  9.1    Term of Automatic Stay..........................................................22
  9.2    Term of the Injunction ...........................................................22
  9.3    No Successor Liability ...........................................................22
  9.4    Vesting and Enforcement of Causes of Action.......................22
  9.5    Preservation of Insurance Rights ...........................................22
ARTICLE X     CLAIMS ...........................................................................23
  10.1   Interest on Claims ..................................................................23
  10.2   Disputed Claims.....................................................................23
  10.3   Payment of Allowed Claims ...................................................23
ARTICLE XI    JURISDICTION .................................................................23
  11.1   Jurisdiction............................................................................23
  11.2   General Retention ...................................................................24
  11.3   Specific Purposes ...................................................................24
ARTICLE XII   CRAMDOWN .....................................................................26
ARTICLE XIII  MISCELLANEOUS ..............................................................26
  13.1   Revocation of Plan..................................................................26
  13.2   Modification of Plan ...............................................................26
  13.3   Transfer Taxes .......................................................................27
  13.4   Compliance with Tax Requirements........................................27
  13.5   Recordable Order....................................................................27
  13.6   Entire Agreement....................................................................27
  13.7   Severability ............................................................................27
  13.8   Headings ................................................................................28
  13.9   Governing Law .......................................................................28
  13.10  Successors and Assigns..........................................................28
  13.11  Non-Debtor Waiver of Rights.................................................28
  13.12  Corporate Action....................................................................28
  13.13  Closing And Reopening Of The Cases ...................................29
  13.14  Payment of Statutory Fees .....................................................29
  13.15  Professional Fee Claims.........................................................29
  13.16  Notices/Service of Documents ...............................................29
  13.17  Withholding and Reporting Requirements ..............................29

(iv)

# ARTICLE I

## DEFINITIONS AND RULES OF CONSTRUCTION

**1.1 Definitions.** Each capitalized term in this Plan shall have the meaning set forth below; except that capitalized terms used in but not defined in this Plan shall have the meaning given to it in the Code:

1.1.1 *Administrative Claim* means any cost or expense of administration of the Case entitled to priority in accordance with the provisions of Sections 503(b), 507(a)(1) or 507(b) of the Code, including, but not limited to, (a) any actual and necessary post-petition cost or expense of preserving the Estates or incurred in connection with Debtors' assets and operations through the Effective Date, (b) any approved Cure Amount, (c) any post-petition cost, indebtedness or contractual obligation duly and validly incurred or assumed by Debtors in the ordinary course of business, and (d) all compensation or reimbursement of expenses of professionals to the extent allowed by the Bankruptcy Court under Sections 330, 331, 327, 328, 503(b), or 1103 of the Code and unpaid as of the Effective Date. The term Administrative Claim shall not include Claims classified in Article 3.3 of this Plan.

1.1.2 *Administrative Claims Bar Date* means the first Business Day at least thirty (30) days after the Effective Date of this Plan.

1.1.3 *Allowance Date* with respect to any Claim, means the date on which such claim becomes an Allowed Claim.

1.1.4 *Allowed* means a Claim (a) listed in the Schedules and not listed as either contingent, disputed or unliquidated, or (b) as set forth in a properly and timely filed proof of Claim filed by a Creditor as to which the Debtors or any other party in interest has not filed an objection prior to the date by which objections to Claims must be filed and, if objected to, to the extent such Claim has been allowed by Final Order of the Bankruptcy Court.

1.1.5 *Alter Ego Claims* mean claims asserting that one or more of the GlobalSantaFe Entities or other affiliates of either or both of the Debtors are liable for any Claim against either or both of the Debtors under non-bankruptcy law "alter ego," "common business enterprise," single business enterprise," or similar theories or claims for relief, which Debtors contend are property of their estates under and pursuant to section 541 of the Code.

1

1.1.6 ***Asset*** mean any item of property of either or both of the Debtors including, without limitation, all Causes of Action.

1.1.7 ***Ballot*** means the form distributed to holders of Claims for acceptance or rejection of this Plan.

1.1.8 ***Bankruptcy Court*** means The United States Bankruptcy Court for the District of Delaware.

1.1.9 ***Bankruptcy Rules*** means The Federal Rules of Bankruptcy Procedure, as amended from time to time, as promulgated by the Supreme Court of the United States, and as applicable in this case.

1.1.10 ***Bar Date*** means April 16, 2007; except that, as applied to the Bass Claims, the "Bar Date" shall be April 27, 2007.

1.1.11 ***Bass*** means BEPCO, L.P. f/k/a Bass Enterprises Production Company.

1.1.12 ***Bass Claims*** means the claims asserted by Bass by its proofs of claim filed on April 27, 2007, for itself or on behalf of any other person or entity against either or both Debtors.

1.1.13 ***Bass Insurance Litigation*** means the action captioned *BEPCO, L. P. v. Santa Fe Minerals, Inc., et al.*, Docket No. 20082006, in the 12th Judicial District Court for the Parish of Avoyelles, Louisiana, filed by Bass on or about April 29, 2008.

1.1.14 ***Business Day*** means any day except a Saturday, Sunday, or other day on which commercial banks located in Wilmington, Delaware are authorized by law to close.

1.1.15 ***Case*** or ***Cases*** means, as the usage warrants, either or both of the captioned bankruptcy cases of the Debtors under Chapter 11 of the Code, which Cases are being jointly administered,.

1.1.16 ***Cash*** means United States currency and cash equivalents. With respect to any payment in Cash provided for under the Plan, Cash shall include plain checks, certified checks, bank checks and wire transfers.

1.1.17 ***Causes of Action*** means all litigation, Claims and other rights of action now owned or hereafter acquired by Debtors, including, without limitation, those arising under

2

Sections 544, 547, 548, 549, 550, 551, 553 or other sections of the Code or other federal or state law.

1.1.18 *Claim* has the meaning given to it in section 101(5) of the Code.

1.1.19 *Claimant* means the holder of a Claim.

1.1.20 *Class* means a category of Claims or Interests, as classified in Article III of the Plan, pursuant to section 1122(a)(1) of the Code.

1.1.21 *Class 3 Fund* means the Cash remaining from the Cash component of the GlobalSantaFe Contribution and the Cash otherwise held by Debtors as of the Confirmation Date after satisfaction of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Claims, and Allowed Secured Claims, in accordance with the provisions of Article III of this Plan.

1.1.22 *Code* means Title 11 of the United States Code, as amended, 11 U.S.C. §§ 101, et seq, as applicable to the Cases.

1.1.23 *Confirmation* means approval of this Plan by the Bankruptcy Court pursuant to section 1129 and all other applicable sections of the Code.

1.1.24 *Confirmation Date* means the date on which the Bankruptcy Court enters the Conformation Order on its docket.

1.1.25 *Confirmation Hearing* means the hearing(s) which will be held before the Bankruptcy Court in which Debtors will seek confirmation of the Plan.

1.1.26 *Confirmation Order* means the order of the Bankruptcy Court confirming this Plan.

1.1.27 *Contested Claim* means a Claim, or any portion thereof which is not an Allowed Claim.

1.1.28 *Contingent Litigation Claims* means collectively, all the Claims that may relate to the Pre-Petition Litigation, the Post-Petition Litigation, Oilfield Legacy Claims, and any and all oil and/or gas production related Claims or Demands including, without limitation, Claims based on royalty obligations or payments or environmental or property damage, against either or both Debtors which are contingent and/or unliquidated in nature. For the avoidance of

3

doubt, Contingent Litigation Claims do not include either the Sinz/Troia Claims or the Bass Claims.

1.1.29  *Creditor* has the meaning given to it in section 101(10) of the Code.

1.1.30  *Cure Amount* means the sum of money, if any, needed to cure any default that must be cured pursuant to section 365 of the Code in connection with any executory contract or unexpired lease being assumed by Debtors.

1.1.31  *Debtors* means, collectively, Santa Fe and Memorial.

1.1.32  *Demand* means a future demand for payment against either or both of the Debtors that is related to a Contingent Litigation Claim or any Oilfield Legacy Claims.

1.1.33  *Disclosure Statement* means the Disclosure Statement for Joint Plan of Liquidation, filed contemporaneously with the Plan, either in its form as filed or as it may be amended from time to time, including any exhibits and schedules appended thereto.

1.1.34  *Effective Date* means the date on which the Confirmation Order becomes a Final Order.

1.1.35  *Entity* has the meaning given to it in Section 101(15) of the Code.

1.1.36  *Estate* means the estate created for a debtor in its Chapter 11 Case pursuant to section 541 of the Code.

1.1.37  *EPA* means the United States Environmental Protection Agency.

1.1.38  *Final Order* means a judgment, order or other decree issued and entered by the Bankruptcy Court, which judgment, order or other decree has not been reversed, stayed, or vacated, and as to which the time to appeal from or seek review or rehearing has expired; provided, however, that with respect to the Confirmation Order, the Debtors, in their discretion, may elect to treat such order as a Final Order, whether or not an appeal is pending, so long as the Conformation Order has not been reversed or vacated, and as to which no stay is then in effect. The possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules or Local Rules may be filed shall not cause the Confirmation Order not to be deemed a Final Order.

1.1.39 ***General Unsecured Claim*** means any Claim that (x) either (i) is evidenced by a proof of claim filed in the Cases, or (ii) is included in the Schedules as a liquidated, non-contingent, undisputed Claim, and also (y) is not either an Administrative Expense Claim, a Priority Tax Claim, a Priority Claim, a Secured Claim, a Sinz/Troia Claim, or a Bass Claim.

1.1.40 ***GlobalSantaFe Contribution*** means the Cash and other consideration from the GlobalSantaFe Entities in connection with the GSF Settlement as described in Article 4.1 of this Plan.

1.1.41 ***GlobalSantaFe Entities*** means, collectively, GlobalSantaFe Corporation, GlobalSantaFe Corporate Services, Inc., and Entities Holdings, Inc., the predecessors and successors of any of such entities, and all past, present and future parents, subsidiaries and affiliates of any of such entities.

1.1.42 ***GSF Settlement*** has the meaning given to it in Article 4.1 of this Plan.

1.1.43 ***Impaired***, when used with reference to any Claim or Interest, has the meaning set forth in section 1124 of the Code.

1.1.44 ***Insurer*** means any insurance company, insurance broker, guaranty association, liquidator, rehabilitator or any other Entity with demonstrated or potential liability to any of the Debtors for indemnity or defenses costs, or for insurance coverage for any Claim, under or related to any Insurance Policy or Insurance Policies.

1.1.45 ***Insurance Coverage Action*** means any dispute under any Insurance Policy, whether in litigation or not, between either or both of the Debtors and any Insurer relating to any Insurance Rights or claim for insurance coverage, including without limitation indemnity and defense costs, not reduced to Cash proceeds, and available for the payment or reimbursement of any Claim.

1.1.46 ***Insurance Policy*** means any insurance policy issued to or for the benefit of either or both of the Debtors, or under which either or both of them are named as or otherwise additional insureds, in effect at any time on or before the Effective Date, that may afford either or both of the Debtors insurance coverage, either for indemnity, defense costs or otherwise, in connection with any Claim.

5

1.1.47 *Insurance Rights* means all of the Debtors' rights, claims for coverage, causes of action, or choses in action for accrued or future coverage claims, demands, indemnity, defense costs, or any other entitlements to insurance proceeds, and any and all extra-contractual rights (including any statutory or common law bad faith or unfair claim handling rights) arising under or in connection with the Insurance Policies.

1.1.48 *Insurance Rights Agreement* means the agreement to be entered into by and among Debtors and the GlobalSantaFe Entities in connection with the GSF Settlement.

1.1.49 *Insurance Settlement Agreement* means any settlement agreement entered into between an Insurer and either or both of the Debtors with respect to coverage for any Claim or with respect to indemnity or the reimbursement to Debtors of, or otherwise relating to, defense costs in connection with any Claim.

1.1.50 *Intercompany Claim* means any Claim that is held by one Debtor against another Debtor or by one or both of the Debtors against any of the GlobalSantaFe Entities, other than the Alter Ego Claims and any Claims relating to the GlobalSantaFe Contribution.

1.1.51 *Interest* means any share of stock or other instrument evidencing an ownership interest in either of the Debtors, whether transferable, and any option, warrant or right, contractual or otherwise, to acquire any such interest which was in existence immediately prior to the Petition Date.

1.1.52 *IRC* means the Internal Revenue Code of 1986, as amended.

1.1.53 *Lien* means any valid and duly perfected mortgage, lien, claim, pledge, charge, security interest, security device (including a lease which is not a true lease) or encumbrance of any kind affecting an Asset or Assets, arising by operation of law, contract or otherwise.

1.1.54 *Local Rules* means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

1.1.55 *Memorial* means 15375 Memorial Corporation, one of the Debtors.

1.1.56 *Oilfield Legacy Claims* means any Claim, whether or not formally or informally asserted, against either or both of the Debtors, relating to the Debtors' oil and gas

6

production operations, including, without limitation, Claims based on royalty obligations or payments or environmental or property damage, and including any such  Claims that may be asserted in the future against either or both of the Debtors.

  1.1.57 **Person** has the meaning given in Section 101(41) of the Code.

  1.1.58 **Petition** or **Petitions**, as the usage requires, mean the voluntary petitions for relief under Chapter 11 of the Code filed by the Debtors initiating this Case or one of such Petitions.

  1.1.59 **Petition Date** means August 16, 2006.

  1.1.60 **Plan Documents** means the Disclosure Statement, this Plan, and all exhibits and schedules to any of the foregoing.

  1.1.61 **Post-Petition Litigation** means the litigation matters asserted against either or both of the Debtors, either directly or indirectly as defendants or potentially responsible persons, commenced after the Petition Date including, without limitation, the following matters:

   (a) *Tripkovich v. Affiliated Holdings, Inc., et al.*, filed on or about July 9, 2007, in the 16th Judicial District Court, Parish of St. Martin, Louisiana, No. 72217, which is an alleged benzene exposure case in which Santa Fe has been named as a defendant (the "*Tripkovich* Action"); and

   (b) *James Boudreaux, Jr., et al., vs. McDermott, Inc., et al.*, No. 3:07-cv-48, pending in the United States District Court for the Southern District of Texas, Galveston Division, in which GSF was sued by the *Boudreaux* plaintiffs as the alleged "successor" to several entities, including Memorial (the "*Boudreaux* Action").

  1.1.62 **Pre-Petition** refers to the time prior to the Petition Date.

  1.1.63 **Pre-Petition Litigation** means the litigation matters asserted against either or both of the Debtors, either directly or indirectly as defendants or potentially responsible persons, commenced before the Petition Date including, without limitation, the following matters:

<div align="center">7</div>

(a) *William M. Tebow, et al., v. Bradex Oil & Gas, Inc., et al.*, Docket No. 2005-7728, in the 12th Judicial District Court for the Parish of Avoyelles, Louisiana;

(b) *Jackie Eugene Ellison, et al. v. FPC Disposal, Inc., et al.*, Case No. CJ-99-151-01, in Oklahoma state court;

(c) *Wyomania Harris, et al. v. The Ratkovich Company et al.*, Case No. BC35585, in California state court; and

(d) the regulatory and/or administrative actions of the EPA and the California Water Board in connection with property located in Alhambra, California, known as Campus 1000 located within an EPA Superfund site known as the San Gabriel Valley, Area 3, Superfund site.

1.1.64 *Priority Claim* means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, but only to the extent entitled to such priority.

1.1.65 *Priority Tax Claim* means a Claim against either Debtor of the kind specified in Section 507(a)(8) of the Code which is entitled to priority thereunder and which is not a Secured Claim.

1.1.66 *Professionals* mean the attorneys and others hired by Debtors in the Case pursuant to section 327 of the Code and order of the Bankruptcy Court.

1.1.67 *Professional Fee Claims* means a Claim of a professional retained in the Cases pursuant to section 327 of the Code for compensation and reimbursement of expenses pursuant to sections 328, 330 and 331 of the Code.

1.1.68 *Pro Rata* with respect to any distribution to the holder of an Allowed Claim of a particular class on a particular date, means the same proportion that the amount of such Allowed Claim bears to the aggregate amount of all Claims (including Contested Claims) of such class.

8

1.1.69 **Released Party or Parties** means each of the Debtors, their respective Representatives, and the GlobalSantaFe Entities and their respective Representatives, under and pursuant to Article VIII of the Plan.

1.1.70 **Representatives**, with respect to any Entity, means the present and former directors, officers, members, employees, trustees, accountants (including certified public accountants), advisors, attorneys, consultants, experts or other agents of such Entity, or any other professionals of that Entity, in each case in their capacity as such.

1.1.71 **Santa Fe** means Santa Fe Minerals, Inc., one of the Debtors.

1.1.72 **Santa Fe Dissolution** means all proceedings under Wyoming state law commenced in or about December 2000 with respect to the dissolution of Santa Fe under Wyoming law, and any and all related actions by Santa Fe in connection therewith.

1.1.73 **Santa Fe Dissolution Bar Date** means August 4, 2008, which is the date on which the two year notice period provided by Santa Fe of its dissolution under Wyoming law expires and after which no claims against Santa Fe or Memorial based on Santa Fe's dissolution can be brought under Wyoming law.

1.1.74 **Schedules** means the respective Schedules of Assets and Liabilities filed by each of the Debtors with the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been and may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009.

1.1.75 **Secured Claim** means a Claim against either or both of the Debtors that is secured by a valid, perfected and non-avoidable lien on any Asset or group of Assets in which either or both of the Debtors has an interest, to the extent of the value of the Creditor's interest in the Debtors' interest in such Asset or group of Assets.

1.1.76 **Secured Creditor** means any Creditor that holds a Secured Claim.

1.1.77 **Sinz/Troia Claims** means, collectively, the Claims asserted against Memorial in the following matters:

    (a) *Patricia Sinz et al. v. Allied Packing, Inc. et al.*, Alameda County Superior Court, California, Case No. RG 04 139532; and

(b) *Rita Troia et al. v. Amchem Products, Inc. et al.*, Alameda County Superior Court, California, Case No. RG 05 194426.

1.1.78 ***Unclassified Claims*** means the Claims referred to in Sections 2.1, 2.2, and 2.3 of this Plan.

1.1.79 ***Unimpaired Class*** means any class of Claims that is not impaired within the meaning of section 1124 of the Code.

1.1.80 ***Unsecured Claim*** means any Claim against either or both of the Debtors, other than Secured Claims and Administrative Claims, which is not entitled to priority pursuant to section 507 of the Code.

**1.2 Rules of Construction.**  In addition to the rules of construction contained in Section 102 of the Code, which are incorporated herein except to the extent inconsistent with the express provisions of this Article 1 of this Plan, the following rules of interpretation and construction shall apply with respect to this Plan.  For purposes of the Plan:  (i) whenever it appears appropriate from the context, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (ii) any reference in this Plan to a contract, instrument, release, agreement, exhibit or document means such contract, instrument, release, agreement, exhibit or document as it may have been or may be amended, modified or supplemented as of the Confirmation Date; and (iii) the words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to this Plan in its entirety rather than to only a particular portion of this Plan.

**1.3 Exhibits.**  Exhibits in this Plan may be amended from time to time, and both original and amended Exhibits may be filed with the Bankruptcy Court from time to time, but in no event later than five (5) Business Days before the date set for the hearing on the confirmation of this Plan or such other date as may be authorized by the Bankruptcy Court.  Current copies of Exhibits may be obtained by reference to the Bankruptcy Court's files or shall be provided to parties in interest upon written request to the Debtors.

**1.4 Computation of Time.**  Except as specifically provided in this Plan, Bankruptcy Rule 9006(a) applies to the computation of any period of time prescribed or allowed by this Plan, and Bankruptcy Rules 9006(b) and 9006(c) apply, respectively to the enlargement or reduction

10

of any period of time prescribed or allowed by this Plan.  The provisions of Bankruptcy Rule 9006(a) will be deemed to apply even after the Effective Date.

## ARTICLE II

### TREATMENT OF UNCLASSIFIED CLAIMS - ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND INTERCOMPANY CLAIMS

**2.1  Generally.**  In accordance with section 1123(a)(1) of the Code, Administrative Claims and Priority Tax Claims are not classified Claims in this Plan.  In addition, Intercompany Claims have not been classified and are not included in any of the classes of Claims set forth in Article III of this Plan.

**2.2  Administrative Claims.**  The Plan leaves unaltered the legal, equitable and contractual rights of holders of Administrative Claims.  Subject to the Administrative Claims Bar Date, and unless otherwise agreed by the holder of an Allowed Administrative Claim, each holder of an Allowed Administrative Claim will receive, in full satisfaction of such Claim, Cash equal to the amount of such Allowed Administrative Claim as soon as is practicable after the Effective Date.  If the Administrative Claim is not an Allowed Administrative Claim as of the Effective Date, the holder of such Claim will receive, in full satisfaction of such Claim, Cash equal to the Allowed amount of such Administrative Claim eleven (11) days after the date on which an order with respect to such Claim becomes a Final Order.  Administrative Claims representing undisputed and non-contingent obligations incurred in the ordinary course of business of Debtors as debtors in possession, if any, shall be paid in full in accordance with the terms and conditions of the transaction and any applicable agreement.

**2.3  Priority Tax Claims.**  The Plan leaves unaltered the legal, equitable and contractual rights of holders of Priority Tax Claims.  Debtors do not believe there are any valid Priority Tax Claims other than of a *de minimus* amount, if any.  To the extent there are any valid Priority Tax Claims, and unless otherwise agreed by the holder of any such Claim, Allowed Priority Tax Claims will be paid in full in Cash on the later of the Effective Date or the date the Priority Tax Claim becomes due and payable.  Any holder of a Priority Tax Claim will not be entitled to receive any payment on account of any penalty arising with respect to or in connection with the Allowed Priority Tax Claim; and, any Claim for any such penalty will be deemed

11

disallowed by Confirmation of this Plan and the holder of an Allowed Priority Tax Claim will be enjoined from assessing or attempting to collect such penalty from Debtors or Debtors' Estates.

**2.4 Intercompany Claims.**  In accordance with the GSF Settlement described in Article 4.1 of this Plan, there shall be no distribution from Debtors' Estates to any holder of an Intercompany Claim and all Intercompany Claims shall be cancelled and deemed waived and released in their entirety on the Effective Date; provided however, that nothing herein shall effect a cancellation, waiver or release of any Claim of either or both Debtors relating to Alter Ego Claims (subject to approval of the GSF Settlement) and the GlobalSantaFe Contribution.

## ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

**3.1 Generally.**  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of the Class; and is classified in a different Class to the extent the Claim or Interest qualifies within the description of that different Class.  In accordance with section 1123(a)(1) of the Code, Administrative Claims and Priority Tax Claims are not classified and are excluded from the following Classes.  The treatment afforded Administrative Claims and Priority Tax Claims is set forth in Article II of this Plan.

**3.2 Classes of Claims.**  The following constitute the Classes of Claims against and Interests in the Debtors:

(a) **Class 1 - Priority Claims.**  Class 1 consists of all Priority Claims against either or both of the Debtors.  Debtors do not believe there are any valid Priority Claims.

(b) **Class 2 - Secured Claims.**  Class 2 consists of all Secured Claims against either or both of the Debtors.  Debtors do not believe there are any valid Secured Claims.

(c) **Class 3 –  General Unsecured Claims.**  Class 3 consists of all General Unsecured Claims against either or both of the Debtors.  Class 3 does not include Claims that are either Sinz/Troia Claims, Bass Claims, or Contingent Litigation Claims.

12

(d) **Class 4 – Sinz/Troia Claims.** Class 4 consists of the Claims that have been asserted by (i) Patricia Sinz, Daniel Jerome Sinz, and Kathleen Marie Sinz, individually and as successor in interest to the Estate of Wayne Sinz Rita Troia, Bettina Troia, and by (ii) Michelle Blair and Mary Hermansader, individually and as successor in interest to the Estate of Michael Troia.

(e) **Class 5 - Bass Claims.** Class 5 consists of the Bass Claims.

(f) **Class 6 - Contingent Litigation Claims.** Class 6 consists of all Contingent Litigation Claims against either or both of the Debtors that were contingent, unsecured and unliquidated Claims as of the Petition Date. All claims against either or both of the Debtors that have been asserted, have been threatened, or which could be asserted or threatened against either or both of the Debtors either by any plaintiff or any defendant in either the Pre-Petition Litigation or Post-Petition Litigation or by any owner or lesser of any property with respect to any Oilfield Legacy Claims, are included within Class 6. Class 6 does not include any Claim which is classified herein in Classes 3, 4 or 5.

(g) **Class 7 - Interests.**

**Class 7-A** consists of all Interests in Santa Fe.

**Class 7-B** consists of all Interests in Memorial.

**3.3 Treatment of Claims and Interests.**

3.3.1 **Unclassified Claims.** Each holder of an Allowed Administrative Claim or an Allowed Priority Tax Claim shall receive the treatment set forth in Article II of this Plan.

3.3.2 **Class 1 - Priority Claims.** The Plan leaves unaltered the legal, equitable and contractual rights to which any Priority Claim entitles the holder of such Claim. To the extent there are any valid Priority Claims, each such Allowed Claim will be paid in full on the later of the Effective Date or the date the Claim becomes due by its terms. Class 1 is an Unimpaired Class and is deemed to have accepted this Plan.

3.3.3 **Class 2 - Secured Claims.** Each holder of a Allowed Secured Claim shall retain, unaltered, the legal, equitable and contractual rights (including, but not limited to, any

<div align="center">13</div>

Liens that secure such Allowed Secured Claim) to which such Allowed Secured Claim entitles such holder. To the extent there are any valid Secured Claims, each such Allowed Claim will be paid in full on the later of the Effective Date or the date the Claim becomes due and payable by its terms. Class 2 is an Unimpaired Class and is deemed to have accepted this Plan.

3.3.4 **Class 3 – General Unsecured Claims**. Upon Allowance or disallowance, as the case may be, of all Class 3 Claims, each holder of an Allowed Class 3 Claim shall receive, in complete satisfaction of the Claim, a distribution from Debtors in an amount equal to such Claimant's Pro Rata share of the Class 3 Fund. Class 3 is an Impaired Class and is entitled to vote either to accept or reject this Plan.

3.3.5 **Class 4 – Sinz/Troia Claims.** To the extent that any of the Sinz/Troia Claims are determined by a court of competent jurisdiction to be valid, then, in full satisfaction of the Claims, the Sinz/Troia Claimants shall be entitled to the proceeds of Insurance Policies, if any, that provide coverage for such Claims, to the extent of the full amount of the Allowed Claim. Debtors and the GSF Entities shall, pursuant to the Insurance Rights Agreement, work together to obtain any such proceeds to which the Sinz and/or Troia Claimants may become entitled, except, that, to the extent they may have a direct right of action against an Insurer under applicable law, they shall directly pursue such Insurance Policy proceeds in full satisfaction of their Allowed Claim. Class 4 is an Impaired Class and is entitled to vote either to accept or reject this Plan.

3.3.6 **Class 5 – Bass Claims.** In full satisfaction of any and all Claims that it may have against Santa Fe, Bass shall have the right to continue to pursue its claims against Santa Fe in the Bass Insurance Litigation and recovery of proceeds of insurance policies to the extent of any Claim it may obtain against Santa Fe in the Bass Insurance Litigation. Because Debtors anticipate that the available limits, and thus the proceeds, of Insurance Policies that are available to provide coverage for the Bass Claims will be in excess of the Allowed amount of the Bass Claims, if any, Bass, to the extent it can validate any claim against Santa Fe, will be paid in full. Accordingly, Class 5 is an Unimpaired Class. Further, Debtors have objected to the Bass Claims. Thus, Bass is not entitled to vote on this Plan, but is presumed to have voted to accept this Plan.

14

3.3.7 **Class 6 - Contingent Litigation Claims**.  Class 6 is an Impaired Class and is entitled to vote either to accept or reject this Plan.

(a)  Any Entity that may assert a Class 6 Claim against Santa Fe after the Santa Fe Dissolution Bar Date shall receive nothing on account of such Claim and shall be forever barred from asserting such Claim against Debtors or any other Entity.

(b)  Any Entity that has asserted a Class 6 Claim against Santa Fe prior to the Santa Fe Dissolution Bar Date shall, to the extent that such Claim is determined by a court of competent jurisdiction to be valid, then, in full satisfaction of such Claim, be entitled to the proceeds of Insurance Policies, if any, that provide coverage for such Claims, to the extent of the full amount of the Allowed Claim.  Debtors and the GSF Entities shall, pursuant to the Insurance Rights Agreement, work together to obtain any such proceeds to which the Claimant may become entitled, except, that, to the extent the Claimant may have a direct right of action against an Insurer under applicable law, the Claimant shall directly pursue such Insurance Policy proceeds in full satisfaction of such Claim.

(c)  Any Entity that has asserted a Class 6 Claim against Memorial shall, to the extent that such Claim is determined by a court of competent jurisdiction to be valid, in full satisfaction of such Claim, be entitled to the proceeds of Insurance Policies, if any, that provide coverage for such Claims, to the extent of the full amount of the Allowed Claim. Debtors and the GSF Entities shall, pursuant to the Insurance Rights Agreement, work together to obtain any such proceeds to which the Claimant may become entitled, except, that, to the extent the Claimant may have a direct right of action against an Insurer under applicable law, the Claimant shall directly pursue such Insurance Policy proceeds in full satisfaction of such Claim. shall be entitled to pursue proceeds of any Insurance Policy that provides coverage for such Claim.

3.3.8 **Class 7 - Interests.**

(a)  **Class 7-A**:    For the purposes of consummating this Plan and otherwise performing the obligations of Debtors under this Plan, Memorial shall retain its

15

Interests in Santa Fe.  Accordingly, Class 7-A Interests are Unimpaired by this Plan and are deemed to have accepted this Plan.

(b) **Class 7-B**:  The holders of Interests in Memorial shall retain such Interests.  Class 7-B Interests are Unimpaired by this Plan and are deemed to have accepted this Plan.

## ARTICLE IV

### MEANS FOR AND IMPLEMENTATION
### OF THE PLAN; THE LIQUIDATING TRUST

**4.1  Settlement With The GSF Entities.**  All issues between and among Debtors and the GSF Entities, either pursuant to this Plan or by separate motion under Federal Rule of Bankruptcy Procedure 9019, shall be settled and resolved (the "**GSF Settlement**"). The GSF Settlement shall produce Cash and other consideration to the Debtors' estates used to fund distributions under this Plan.  In general terms, the GSF Settlement will result in $972,000.00 Cash to Debtors' Estates in return for (i) settlement, release and waiver of all Intercompany Claims as between Debtors and the GlobalSantaFe Entities, (ii) settlement, release and waiver of any and all claims of Debtors against the GlobalSantaFe Entities based on the Santa Fe Dissolution, (iii) settlement, release and waiver of any and all Alter Ego Claims by Debtors against the GlobalSantaFe Entities, and (iv) the GlobalSantaFe Entities' cooperation in the pursuit of Debtors' Insurance Rights.

**4.2  Plan Implementation.**  The Plan shall be consummated on the Effective Date. The assets and liabilities of Debtors shall be substantively consolidated.  The Confirmation Order shall empower and authorize Debtors to take or cause to be taken all actions that are necessary to implement the Plan.

**4.3  Substantive Consolidation.**  On the Effective Date, Debtors' Estates shall be substantively consolidated for purposes of distribution; and, all Claims against either of the Debtors shall be deemed a Claim against the Debtors collectively.

**4.4  Corporate Existence/Dissolution.**  Memorial shall continue in existence after the Effective Date for the purposes set forth herein or as may be required by the Code, including,

without limitation, prosecution of any objections to Claims, including without limitation Debtors' objections to the Bass Claims pending as of the Effective Date, payment of Allowed Claims as provided for under this Plan, and the pursuit of Insurance Rights as contemplated by this Plan. Upon consummation of the Plan Santa Fe shall be deemed to have been fully and finally dissolved under Wyoming law without the necessity for any further filings or actions.

## ARTICLE V

### INSURANCE POLICIES, EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**5.1 Insurance Policies and Insurance Neutrality.** Any and all Insurance Policies under which either or both of the Debtors is a named or additional insured or which otherwise covers Claims against either or both of the Debtors in existence as of the Effective Date shall not be affected by any release of the Debtors from Claims as provided for in this Plan except as such may be necessary to be consistent with this Plan; and the terms and provisions of this Plan shall not impair or diminish (i) the enforceability of any Insurance Policy that may cover Claims against either or both of the Debtors or benefit and/or cover any other Entity, or (ii) the recovery of proceeds of any such Insurance Policy. Notwithstanding anything to the contrary contained in this Plan or in the Confirmation Order, nothing shall in any way operate to, or have the effect of, impairing any insurer's or any other Person or Entity's legal, equitable or contractual rights, if any, in any respect. The rights of insurers shall be determined under the Insurance Policies and agreements and applicable law.

**5.2 Rejection of Executory Contracts and Unexpired Leases.** Subject to the procedure set forth in Article 5.3, each unexpired lease or executory contract as to which either or both of the Debtors is a party and which was not assumed by Bankruptcy Court order prior to Confirmation shall, as of the Confirmation Date (subject to the occurrence of the Effective Date), be deemed to have been rejected by Debtors. Entry of the Confirmation Order on the Case docket by the Bankruptcy Court shall constitute approval of such rejections pursuant to sections 365 and 1123 of the Bankruptcy Code.

**5.3 Assumption of Executory Contracts and Unexpired Leases.** Debtors may seek authority from the Bankruptcy Court to assume any unexpired lease or executory contract by

17

filing a schedule of the particular unexpired leases or executory contracts to be assumed, along with the Debtors' proposed Cure Amount, at least twenty (20) days prior to the date of the Confirmation Hearing; counter-parties to the unexpired leases and executory contracts that the Debtors propose to assume must file and serve their objection to the proposed Cure Amount, if any, upon Debtors' counsel, at least ten (10) days before the date of the Confirmation Hearing. For proposed assumptions made pursuant to section 5.3, the assumption of the unexpired leases or executory contracts must be made pursuant to the Confirmation Order; if the unexpired leases or executory contracts are not assumed pursuant to the Confirmation Order, they will be deemed rejected pursuant to the terms of section 5.2. Any Cure Amount shall be paid as an Allowed Administrative Claim.

## ARTICLE VI

### ACCEPTANCE OR REJECTION OF THE PLAN

**6.1 Only Impaired Classes Entitled to Vote.** Only the holders of Claims in Classes 3, 4, and 6 may vote either to accept or reject the Plan.

**6.2 Acceptance by Impaired Classes.** In accordance with section 1126(c) of the Bankruptcy Code, the holders of Claims in Classes 3, 4, and 6 shall have accepted this Plan if (a) the holders of at least two-thirds in dollar amount of the allowed Claims actually voting in each such Class (other than Claims held by any holder designated pursuant to section 1126(e) of the Bankruptcy Code) have voted to accept the Plan, and (b) more than one-half in number of such allowed Claims actually voting in each such Class (other than Claims held by any holder designated pursuant to section 1126(e) of the Bankruptcy Code) have voted to accept the Plan.

**6.3 Deemed Acceptance of Plan.** Classes 1, 2 and 5 are not impaired under the Plan. Under section 1126(1) of the Bankruptcy Code, the holders of Unimpaired Claims are conclusively presumed to have voted to accept the Plan.

## ARTICLE VII

### CONDITIONS TO CONFIRMATION AND EFFECTIVENESS

**7.1 Conditions to Confirmation.** Confirmation of this Plan shall not occur unless:

(a) The GSF Settlement has been approved by the Court.;

(b) the Confirmation Order contains findings of fact and/or conclusions of law, including:

(i) release of the Released Parties is essential to the equitable treatment of holders of Claims as the Released Parties would not otherwise have made the GlobalSantaFe Contribution; and

(ii) The duties and obligations of the Insurers that issued Insurance Policies and their successors and assigns, or, with respect to any insolvent insurers, their liquidators and/or the state insurance guaranty funds that bear responsibility with respect to such rights under such Insurance Policies which constitute the Contingent Litigation Claims are not eliminated or diminished by this Plan or by confirmation of this Plan.

**7.2 Conditions to Effectiveness.** Notwithstanding any other provision of this Plan or the Confirmation Order, the Effective Date of this Plan shall not occur unless and until each of the following conditions has been performed or, with respect to subsection (c) below, waived in writing by each of the Plan Proponents:

(a) The GSF Settlement shall have been approved by the Bankruptcy Court;

(b) the Confirmation Order shall have been issued and docketed, in form and substance acceptable to the Debtors, and the Confirmation Order shall have become a Final Order; provided, however, that the Effective Date may, at Debtors' option, occur even if the Confirmation Order is not a Final Order unless the effectiveness of the Confirmation Order has been stayed or vacated, in which case the Effective Date will be the first Business Day immediately following the expiration or other termination of any stay of effectiveness of the Confirmation Order;

19

(c) The fees of the United States Trustee then owing by the Debtors shall have been paid in full; and

(d) There is sufficient Cash available to pay all Allowed Administrative Claims.

**7.3  Waiver.**  Any of the conditions to Confirmation or the Effective Date set forth in Articles 7.1 and 7.2 may be waived in whole or in part by Debtors at any time without order of the Bankruptcy Court.

## ARTICLE VIII

### RELEASES AND EXCULPATION

**8.1  Releases.**  To the extent permitted by law applicable to the Case under the Code in the judicial district in which the Bankruptcy Court is located, except as otherwise specifically provided in this Plan and in the Plan Documents, for good and valuable consideration, the receipt and sufficiency of which is acknowledged in this Plan, all Released Parties, on and after the Effective Date, are released from any and all Claims, obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that any Entity would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based in whole or in part, upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, for claims or liabilities resulting from their services members, officers or directors of the Debtors or to the extent such claims or liabilities relate to the business, operations or management of the Debtors prior to the Effective Date or to their conduct as professionals or advisors to any of the Debtors.

**8.2  Exculpation.**  To the extent permitted by law applicable to these Cases under the Code in the judicial district in which the Bankruptcy Court is located, as of the Effective Date, each of the Debtors, and any of their Representatives, (i) shall not have or incur any liability to any Entity for any act or omission in connection with or arising out of the negotiation of this Plan or any Plan Document, the administration of the Plan or the property to be distributed under this

20

Plan; and (ii) in all respects shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Plan and the other Plan Documents.

**8.3 Releases by Claimants.** To the extent permitted by law applicable to cases under the Code in the judicial district in which the Bankruptcy Court is located, except as otherwise specifically provided in Article III of the Plan or as otherwise provided in this Plan or the Plan Documents, on and after the Effective Date, each Claimant who has accepted this Plan shall be deemed to have unconditionally released the Released Parties from any and all Claims, obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that any Entity would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based in whole or in part, upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date by the Debtors, or the negotiation, formulation, and preparation of the Plan, and Plan Documents or any related agreements, instruments or other documents.

**8.4 Reservation of Rights.** Notwithstanding any other provision of the Plan to the contrary, the satisfaction and release of Claims, and the Injunction set forth in this Article VIII shall not serve to satisfy, discharge, release, or enjoin:

(a) the rights of Entities to the treatment accorded them under Article III of this Plan, as applicable;

(b) the rights of Entities to assert any Claim or Demand;

(c) the rights of the Debtors to prosecute Claims and Causes of Action;

(d) the rights of Released Parties under the Policies for claims not related to the Debtors.

## ARTICLE IX

## MATTERS INCIDENT TO PLAN CONFIRMATION

**9.1 Term of Automatic Stay.** Any injunction and/or automatic stay provided for in or in connection with the Case, whether pursuant to section 105, section 362 or any other provision of the Code or other applicable law, in existence immediately prior to Confirmation shall remain in full force and effect until the Injunction described in Article 9.2 becomes effective, and thereafter if so provided in this Plan, the Confirmation Order, or by their own terms. In addition, on and after Confirmation, Debtors may seek such further orders as they may deem necessary to preserve the status quo during the time between the Confirmation and the Effective Date.

**9.2 Term of the Injunction.** The Injunction shall become effective on the Effective Date and shall continue in effect at all times thereafter. Notwithstanding any provision to the contrary contained in this Plan, all actions in the nature of those to be enjoined by the Injunction shall be enjoined during the period between the Confirmation Date and the Effective Date.

**9.3 No Successor Liability.** Neither of the Debtors shall have any successor or transferee liability of any kind or character.

**9.4 Vesting and Enforcement of Causes of Action.** On the Effective Date, and pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, and except as otherwise provided in the Plan, Debtors shall be vested with and have the right to enforce against any Entity any and all of the Debtors' Claims and Causes of Action. As of the Effective Date Debtors shall be empowered to initiate, prosecute, defend and resolve all legal actions and other proceedings, including without limitation, the Insurance Coverage Disputes and the Insurance Rights.

**9.5 Preservation of Insurance Rights.** It is Debtors' position and intent that the terms of this Plan shall neither diminish nor impair the Debtors' Insurance Rights nor the enforceability of any of the Insurance Policies against a party that is not a Released Party.

# ARTICLE X

## CLAIMS

**10.1 Interest on Claims.**  To the extent interest is required by applicable contract or statutory provision, post-petition interest shall accrue on Claims at the applicable non-default rate.

**10.2 Disputed Claims.**  For 180 days after the Effective Date Debtors shall retain the right and authority to object to any Claims or Demands and to litigate to judgment, settle or withdraw such objections to Claims or Demands.

**10.3 Payment of Allowed Claims.**  Debtors shall pay Allowed Administrative Claims, Allowed Tax Priority Claims, Allowed Class 1 Claims, Allowed Class 2 Claims,, Allowed Class 3 Claims and Allowed Class 4 Claims on or as soon after the Effective Date as is reasonable and practicable under the circumstances, or otherwise upon such date as may be agreed to by the holder of such Allowed Claim.  Allowed Class 4 Claims (to the extent the holders of such Claims have elected such treatment), Allowed Class 5 Claims, and Allowed Class 6 Claims shall be paid as and when they may become entitled to the proceeds of Insurance Policies, if ever, by settlement or litigation.

# ARTICLE XI

## JURISDICTION

**11.1 Jurisdiction.**  Until the bankruptcy case of each of the Debtors is closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction permissible to it, including that necessary to ensure that the purposes and intent of the Plan and the Plan Documents are carried out.  Nothing contained herein shall prevent Debtors from taking such action as may be necessary in the enforcement of any Cause of Action that Debtors have or may have, each of which Cause of Action shall survive Confirmation of this Plan and shall not be affected thereby except as specifically provided herein.  Nothing contained herein or otherwise in any of the Plan Documents shall be considered or construed as any waiver of any right Debtors may have, if any, to commence and prosecute any Causes of Action in any other forum in which

has jurisdiction over such, including, without limitation, the United States District Court for the District of Delaware.

**11.2 General Retention.** Following entry of the Confirmation Order, administration of the Case will continue at least until the completion of the transfers contemplated to be accomplished on the Effective Date. Failure by Debtors to object to, or examine, any Claim for the purposes of voting, shall not be deemed a waiver of any right of Debtors to object to any Claim in whole or part.

**11.3 Specific Purposes.** In addition to the foregoing, the Bankruptcy Court shall, where consistent with this Plan and as necessary, retain jurisdiction for the following specific purposes after Confirmation:

> (a) to modify this Plan after Confirmation, pursuant to the provisions of the Code and the Bankruptcy Rules;

> (b) to correct any defect, cure any omission, reconcile any inconsistency, or make any other necessary changes or modifications in or to the Plan Documents or the Confirmation Order as may be necessary to carry out the purposes and intent of this Plan, including the adjustment of the dates of performance under the Plan Documents in the event that the Effective Date does not occur as provided herein so that the intended effect of this Plan may be substantially realized thereby;

> (c) to enforce and interpret the terms and conditions of the Plan Documents;

> (d) to enter such orders or judgments, including, but not limited to, injunctions (i) as are necessary to enforce Debtors' rights, title to Assets and other powers and (ii) as are necessary to enable Claimants to pursue their rights against any Entity that may be liable therefore pursuant to applicable law or otherwise, including, but not limited to, Bankruptcy Court orders;

(e) to hear and determine any objections to any Claims or any motion relating to any Claims, including without limitation, motions to estimate Claims and motions to subordinate Claims.

(f) to hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits, and similar or related matters arising on or prior to the Effective Date, arising on account of transactions contemplated by the Plan Documents, or relating to the period of administration of the Cases;

(g) to hear and determine Professional Fee Claims and any other applications for compensation and reimbursement of expenses of professionals under sections 330, 331 and 503(b) of the Bankruptcy Code, if any, required by the Bankruptcy Court;

(h) to hear and determine any causes of action arising during the period from the Petition Date through the Effective Date;

(i) to hear and determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(j) to consider and act on the compromise and settlement of any Claim against or Interest in the Debtors or their Estates;

(k) to hear and determine all questions and disputes regarding title to the assets of the Debtors and/or their Estates;

(l) to hear and determine any other matters related hereto, including the implementation and enforcement of all orders entered by the Bankruptcy Court in these Cases.

SL1 818135v2/000000.00000

## ARTICLE XII

## CRAMDOWN

Debtors request confirmation under section 1129(b) of the Code with respect to any Impaired Class that does not, or is deemed not to, accept this Plan pursuant to section 1126 of the Code.

## ARTICLE XIII

## MISCELLANEOUS

**13.1 Revocation of Plan.** Debtors reserve the right to revoke and withdraw this Plan before Confirmation. If Debtors revoke or withdraw this Plan, or a Confirmation Order is not entered on the docket, then with respect to all parties in interest, this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against Debtors or any other Entity or to prejudice in any manner the rights of Debtors or such Entity in any further proceedings involving Debtors.

**13.2 Modification of Plan.** Debtors may, under section 1127 of the Code, propose amendments to or modifications of this Plan at any time prior to the Confirmation Date. After Confirmation, Debtors may remedy any defects or omissions or reconcile any inconsistencies in this Plan or the Confirmation Order or any other order entered for the purpose of implementing this Plan in such manner as may be necessary to carry out the purposes and intent of this Plan, so long as the interests of the holders of Claims, without such holder's consent, are not adversely affected relative to such holder's treatment under this Plan. Anything in this Plan or in any Plan Document to the contrary notwithstanding, following Confirmation and before "substantial consummation" (as defined in section 1101(2) of the Code) of this Plan, no Plan Document shall be modified, supplemented, changed or amended in any material respect, except upon order of the Court after notice and a hearing under Section 102 of the Bankruptcy Code. In the event of a conflict between the terms or provisions of this Plan and the Confirmation Order, the terms of the Confirmation Order shall be deemed to have amended this Plan and shall control over the terms of the Plan.

SL1 818135v2/000000.00000

**13.3 Transfer Taxes.** Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of any of the securities issued under, or the transfer of any other assets or property pursuant to or in connection with this Plan or the making or delivery of an instrument of transfer under or in connection with this Plan shall not be taxed under any law imposing a stamp tax, transfer tax or other similar tax or governmental assessment. Confirmation of this Plan shall constitute a direction to state and local governmental officials and agents to forego collection of any such tax or assessment and to accept for filing and recordation any instruments or documents issued in connection with this Plan, without the payment of any tax or governmental assessment.

**13.4 Compliance with Tax Requirements.** In connection with the Plan, Debtors shall comply with all withholding and reporting requirements imposed by federal, state, local and foreign taxing authorities, and all distributions hereunder shall be subject to such withholding and reporting requirements.

**13.5 Recordable Order.** Upon docketing of the Confirmation Order, the Confirmation Order shall be deemed to be in recordable form, and shall be accepted by any recording officer for filing and recording purposes without further or additional orders, certifications, or other supporting documents.

**13.6 Entire Agreement.** The Plan Documents set forth the entire agreement and undertakings relating to the subject matter thereof and supersede all prior discussions and draft documents. No Entity shall be bound by any terms, conditions, definitions, warranties, understandings or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed to by any party in writing.

**13.7 Severability.** Should any provision in this Plan be determined to be invalid, void, or unenforceable, such determination shall in no way limit or affect the validity, enforceability or operative effect of any and all other provisions of this Plan or the operative part, if any, of that provision. If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid and enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision. The remainder of the

27

term or provision, and of this Plan generally, shall remain in full force and effect and will in no way be affected, altered or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and will provide that each term or provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**13.8 Headings.** Headings are utilized in this Plan for convenience and reference only and shall not constitute a part of this Plan for any other purpose.

**13.9 Governing Law.** Except to the extent that federal law (including, but not limited to, the Code and the Bankruptcy Rules) is applicable or where this Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflicts of law thereof.

**13.10 Successors and Assigns.** The rights, duties, and obligations of any Entity named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Entity.

**13.11 Non-Debtor Waiver of Rights.** Nothing contained herein or in the Plan Documents shall be construed as prohibiting any non-Debtor party from exercising a right, if any, to voluntarily waive any rights, benefits or protections afforded under this Plan or any order issued confirming or in furtherance of this Plan. In the event any non-Debtor party shall waive any right, benefit or protection afforded under this Plan or under any order issued confirming or in furtherance of this Plan, such waiver shall supersede such right, benefit or protection provided thereunder. Any such waiver shall be effective only if it is writing.

**13.12 Corporate Action.** All matters provided for under this Plan involving the Debtors' corporate structure, or any corporate action to be taken by, or required of, Debtors, shall be deemed to have occurred and be effective as provided in this Plan, and shall be authorized and approved in all respects without any requirement for further action by the stockholders or directors of any of such entities.

**13.13  Closing And Reopening Of The Cases.**  Each of the Debtors' Cases may be closed notwithstanding the continuing reservation of jurisdiction by the Bankruptcy Court under and pursuant to Article XI of this Plan.

**13.14  Payment of Statutory Fees.**  All fees payable pursuant to section 1930 of Title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing,  shall be paid by Debtors on or before the Effective Date and thereafter by Debtors as due until the Cases are closed, converted or dismissed.

**13.15  Professional Fee Claims.**  All final requests for payment of Professional Fee Claims must be filed no later than 60 days after the Effective Date, unless otherwise ordered by the Bankruptcy Court.  Objections to any such requests or applications must be filed and served on the respective applicant and its counsel within 20 days after the date on which the applicable application for compensation or reimbursement was filed.

**13.16  Notices/Service of Documents.**  Any pleading, notice or other document required by this Plan or the Confirmation Order to be given or served on Debtors must be served by overnight delivery service, courier service or messenger to:

>  David E. Faure
>  Vice President and Assistant Secretary
>  15375 Memorial Corporation
>  15375 Memorial
>  Houston, TX

>  With a copy, by the same means of delivery, to:

>  John D. Demmy
>  STEVENS & LEE, P. C.
>  1105 N. Market Street, 7th Floor
>  Wilmington, DE 19801

**13.17  Withholding and Reporting Requirements.**  Debtors must comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions under this Plan remain subject to any such withholding and reporting requirements.  Debtors as applicable, may take all actions necessary to comply with such withholding and reporting requirements.

29

Dated: June 1, 2008                     15375 MEMORIAL CORPORATION


                                        By:   /s/ David E. Faure
                                              David E. Faure
                                              Vice President and Assistant Secretary


Dated: June 1, 2008                     SANTA FE MINERALS, INC.

                                        By:   /s/ David E. Faure
                                              David E. Faure
                                              Vice President and Assistant Secretary of 15375
                                              Memorial Corporation, sole shareholder of
                                              Santa Fe Minerals, Inc., a dissolved Wyoming
                                              Corporation

30

# EXHIBIT C

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| 15375 MEMORIAL CORPORATION, and | ) | Case No. 06-10859 (KG) |
| SANTA FE MINERALS, INC., | ) | and 06-10860 (KG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## DISCLOSURE STATEMENT FOR
## DEBTORS' FIRST AMENDED JOINT PLAN OF LIQUIDATION

Dated: June 1, 2008

STEVENS & LEE, P. C.

John D. Demmy
1105 N. Market Street, 7th Floor
Wilmington, DE 19801
Telephone: (302) 425-3308
Facsimile: (610) 371-8515
E-mail: jdd@stevenslee.com

-and-

John C. Kilgannon
1818 Market Street, 29th Floor
Philadelphia, PA 19103
Telephone: (215) 751-1943
Facsimile: (610) 371-7954
E-mail: jck@stevenslee.com

*Attorneys for the Debtors and*
*Debtors in Possession*

SL1 819967v2/101674.00002

DATE FILED 6-2-08
DOCKET NO. 352

# TABLE OF CONTENTS

Page

I.     INTRODUCTION...................................................................................................1
       A.   Vote Deadline..........................................................................................4
       B.   Acceptance of the Plan.............................................................................4
       C.   Voting Procedures, Ballots, and Voting Deadline.....................................4
       D.   Confirmation Hearing and Deadline for Objections to Confirmation.........5

II.    LIQUIDATING PLAN OF REORGANIZATION – GENERAL
       OVERVIEW...........................................................................................................5

III.   DESCRIPTION AND HISTORY OF THE DEBTORS.............................................6
       A.   General Information and Background .........................................................6
            1.   Memorial........................................................................................6
            2.   Santa Fe.........................................................................................6
            3.   Debtors' Activities..........................................................................7
            4.   The GlobalSantaFe Entities ...........................................................7
       B.   Non-Bankruptcy Litigation.......................................................................8
            1.   The Ellison Action..........................................................................8
            2.   The Tebow Action ..........................................................................9
            3.   The Harris Action and Related EPA and  California Water
                 Board Environmental Matters.........................................................9
            4.   The Sinz and Troia Actions ..........................................................10
            5.   Oilfield Legacy Cases...................................................................10
       C.   The Filing of the Bankruptcy Cases ........................................................11
            1.   Debtors' Consideration Of A Possible "Dissolution
                 Defense".......................................................................................11
            2.   Commencement of the Case ..........................................................11
            3.   The EHI Note................................................................................12
            4.   Post-Bankruptcy Activity In the Tebow Action .............................12
       D.   Significant Events During the Bankruptcy Case.......................................13
            1.   The Adversary Proceeding.............................................................13
            2.   The Bass Bankruptcy Litigation ...................................................13
            3.   Further Investigation Regarding the Distribution Upon
                 Dissolution and the GSF Settlement...............................................15
            4.   Insurance Review..........................................................................17
            5.   Other Assets..................................................................................18
            6.   The Bass Settlement in Tebow and its Proofs of Claim ..................18
            7.   The EPA Claim..............................................................................19
            8.   Escheated Royalty Amounts Due to Debtors/Possible
                 Royalty Interests ..........................................................................19
            9.   Scheduled and Filed Claims...........................................................20
            10.  DIP Financing ...............................................................................20
            11.  Miscellaneous Actions...................................................................20

SL1 819967v2/101674.00002

**TABLE OF CONTENTS**
(continued)

Page

IV. THE JOINT PLAN OF LIQUIDATION .................................................................21
    A.   TREATMENT AND CLASSIFICATION OF CLAIMS..........................21
        1.   Unclassified Claims ...............................................................21
        2.   Class 1 - Priority Claims .......................................................21
        3.   Class 2 - Secured Claims ......................................................21
        4.   Class 3 - General Unsecured Claims ....................................21
        5.   Class 4 - Sinz/Troia Claims ...................................................22
        6.   Class 5 - Bass Claims ............................................................22
        7.   Class 6 - Contingent Litigation Claims.................................22
        8.   Class 7 - Interests.................................................................23
        9.   Class 7-A - Santa Fe Interests ..............................................23
        10.   Class 7-B - Memorial Interests ............................................23
    B.   PAYMENT OF ALLOWED UNCLASSIFIED AND UNIMPAIRED
        CLAIMS ON THE EFFECTIVE DATE.........................................23
    C.   ACCEPTANCE OR REJECTION OF THE PLAN.............................23
    D.   OBJECTIONS TO CLAIMS .............................................................23
    E.   REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED
        LEASES ............................................................................................24
    F.   OTHER PROVISIONS .....................................................................24
        1.   Distribution of Unclaimed Funds..........................................24
        2.   Retention of Jurisdiction by the Bankruptcy Court ..............24
        3.   Modification of the Plan ........................................................24
        4.   Causes of Action...................................................................24
        5.   Liability in Connection with the Plan ...................................24
        6.   Released Parties ....................................................................24
    G.   MEANS FOR IMPLEMENTATION OF THE PLAN .......................24
    H.   CONFIRMATION OF THE PLAN ...................................................25
    I.   RISK FACTORS ...............................................................................26
        1.   Allowance of Claims.............................................................26
        2.   Risk of Non-Confirmation of the Plan..................................26
        3.   Nonconsensual Confirmation................................................27
        4.   Delays of Confirmation and/or Effective Date .....................27
        5.   Avoidance Actions................................................................27
        6.   Parties in Interest May Object to the Debtors' Classification
          of Claims ..............................................................................27
        7.   The Debtors May Object to the Amount or Secured or
          Priority Status of a Claim......................................................28
        8.   The Actual Allowed Amounts of Claims May Differ from
          the Estimated Claims and Adversely Affect the Percentage
          Recovery on Unsecured Claims.............................................28

SL1 819967v2/101674.00002

# TABLE OF CONTENTS
### (continued)

Page

V.   BEST INTERESTS OF CREDITORS – COMPARISON WITH CHAPTER
     7 LIQUIDATION.................................................................................................28

VI.  EFFECT OF CONFIRMATION OF THE PLAN .............................................29

# I. INTRODUCTION

Debtors[1] are transmitting this Disclosure Statement, pursuant to sections 1125 and 1126 of the Code, in connection with the solicitation of votes to accept Debtors' First Amended Joint Plan of Liquidation (the "Plan"). With this Disclosure Statement Debtors also are transmitting the Plan and other materials with respect to the Plan including, without limitation, the order of the Bankruptcy Court approving this Disclosure Statement, a notice of hearing on confirmation of the Plan, and a ballot for voting on the Plan (collectively, the "Solicitation Package"). The purpose of the Solicitation Package is to provide the holders of Claims with information, that the Bankruptcy Court has adjudged as adequate, about Debtors and the Plan to enable the holders of Claims to make an informed judgment on whether to accept or reject the Plan. This information includes, among other things, historical information about Debtors, an overview of the Case and an explanation of how the Plan will work. The Solicitation Package contains copies of:

(a) the Disclosure Statement;

(b) Plan;

(c) the Voting Procedures Order, which fixes the dates and times for transmission of ballots accepting or rejecting the Plan, the hearing to consider Confirmation of the Plan and related matters, and for filing objections to the Plan;

(d) the notice of the Confirmation Hearing; and

(e) if you are a Person or Entity entitled to vote on the Plan, a "Ballot" for accepting or rejecting the Plan along with a self-addressed stamped envelope ("SASE").

The information contained in this Disclosure Statement has been supplied by Debtors and their counsel, and has not been subject to an audit or independent review. The statements contained in this Disclosure Statement are made as of the date hereof unless another time is specified herein, and the delivery of this Disclosure Statement does not mean that the information contained herein has not changed since the date of this Disclosure Statement.

This Disclosure Statement does not purport to be a complete description of the Plan, historical information relating to Debtors, the financial data pertaining to Debtors, the applicable provisions of the Code, or of any other matter that may be deemed significant or material by the holders of Claims in connection with their decisions to vote to accept or reject the Plan. Rather, this Disclosure Statement contains information found by the Court to be adequate pursuant to Section 1125 of the Code and sufficient to enable holders of Claims to make an informed judgment in connection with their decisions to vote to accept or reject the Plan.

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS INCLUDED FOR PURPOSES OF SOLICITING ACCEPTANCES, AND CONFIRMATION,

---

[1] Unless otherwise defined in this Disclosure Statement, capitalized terms used but not defined herein have the meanings given to them in Debtors' First Amended Joint Plan of Liquidation (the "Plan").

1

OF THE PLAN AND MAY NOT BE RELIED UPON FOR ANY OTHER PURPOSE. NO PERSON OR ENTITY MAY GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS REGARDING THE PLAN OR THE SOLICITATION OF ACCEPTANCES OF THE PLAN OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS DISCLOSURE STATEMENT AND ANY ACCOMPANYING DOCUMENTS.

ALL HOLDERS OF CLAIMS AGAINST OR INTERESTS IN EITHER OR BOTH DEBTORS ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN AND THE EXHIBITS AND SCHEDULES ATTACHED TO THE PLAN, WHICH CONTROL IN THE EVENT OF ANY AMBIGUITY, INCONSISTENCY OR INCOMPLETENESS (IN THE DISCLOSURE STATEMENT SUMMARIES OR STATEMENTS). THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE OF THIS DISCLOSURE STATEMENT, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THIS DATE.

ANY STATEMENTS IN THIS DISCLOSURE STATEMENT CONCERNING THE PROVISIONS OF ANY OTHER DOCUMENT IN WRITING CANNOT BE RELIED UPON AS COMPLETE, AND IN EACH SUCH INSTANCE IN WHICH REFERENCE IS MADE TO ANY OTHER DOCUMENT IN WRITING REFERENCE IS HEREBY MADE AS WELL TO SUCH DOCUMENT FOR THE FULL TEXT THEREOF. CERTAIN DOCUMENTS DESCRIBED OR REFERRED TO IN THIS DISCLOSURE STATEMENT MAY NOT BE ATTACHED AS EXHIBITS HERETO BECAUSE OF THE IMPRACTICABILITY OF FURNISHING COPIES OF ALL SUCH DOCUMENTS TO ALL RECIPIENTS OF THIS DISCLOSURE STATEMENT.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE CODE AND RULE 3016 OF THE BANKRUPTCY THE RULES AND NOT PURSUANT TO FEDERAL OR STATE SECURITIES LAWS OR OTHER NON-BANKRUPTCY LAW. THIS DISCLOSURE STATEMENT HAS BEEN NEITHER APPROVED NOR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION ("SEC") OR ANY STATE SECURITIES REGULATOR, AND NEITHER THE SEC NOR ANY STATE SECURITIES REGULATOR HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING SECURITIES OF OR CLAIMS AGAINST DEBTORS SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSE FOR WHICH THEY WERE PREPARED.

THIS DISCLOSURE STATEMENT AND ANY ATTACHED OR OTHERWISE ACCOMPANYING DOCUMENTS ARE THE ONLY DOCUMENTS TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES ON THE PLAN. NO

SOLICITATION OF VOTES MAY BE MADE EXCEPT AFTER DISTRIBUTION OF THIS DISCLOSURE STATEMENT. NO PERSON HAS BEEN AUTHORIZED TO DISTRIBUTE ANY INFORMATION CONCERNING THE PLAN OTHER THAN THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AND ANY ACCOMPANYING DOCUMENTS.

CERTAIN OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS BY ITS NATURE FORWARD LOOKING AND CONTAINS ESTIMATES, ASSUMPTIONS AND PROJECTIONS THAT MAY BE MATERIALLY DIFFERENT FROM ACTUAL FUTURE RESULTS. THE WORDS "BELIEVE," "MAY," "WILL," "ESTIMATE, "CONTINUE," "ANTICIPATE," "INTEND," "EXPECT" AND SIMILAR EXPRESSIONS IDENTIFY THESE FORWARD-LOOKING STATEMENTS. IN LIGHT OF THESE RISKS AND UNCERTAINTIES, THE FORWARD-LOOKING EVENTS AND CIRCUMSTANCES DISCUSSED IN THIS DISCLOSURE STATEMENT MAY NOT OCCUR, AND ACTUAL RESULTS COULD DIFFER MATERIALLY FROM THOSE ANTICIPATED IN THE FORWARD-LOOKING STATEMENTS. DEBTORS DID NOT AND DO NOT UNDERTAKE ANY OBLIGATION TO UPDATE PUBLICLY OR OTHERWISE REVISE ANY FORWARD-LOOKING STATEMENTS, WHETHER AS A RESULT OF NEW INFORMATION, FUTURE EVENTS OR OTHERWISE. EXCEPT WHERE SPECIFICALLY NOTED, THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AND IN ITS EXHIBITS HAS NOT BEEN AUDITED BY A CERTIFIED PUBLIC ACCOUNTANT AND HAS NOT BEEN PREPARED IN ACCORDANCE WITH GENERALLY ACCEPTED ACCOUNTING PRINCIPLES.

THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER IN CONNECTION WITH ANY PENDING OR HEREAFTER FILED OR COMMENCED CONTESTED MATTERS, ADVERSARY PROCEEDINGS OR OTHER ACTIONS OR THREATENED ACTIONS, BUT, RATHER, AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE PLAN WITH RESPECT TO HOLDERS OF CLAIMS AGAINST, OR EQUITY INTERESTS IN, EITHER THE DEBTORS OR THE REORGANIZED DEBTORS.

By order dated _____, 2008, the Bankruptcy Court approved this Disclosure Statement as containing "adequate information," in accordance with Section 1125 of the Bankruptcy Code, to enable a hypothetical, reasonable investor typical of holders of Claims and Interests to make an informed judgment about whether to accept or reject the Plan, and has authorized use of this Disclosure Statement in connection with the solicitation of votes on the Plan. **APPROVAL OF THIS DISCLOSURE STATEMENT HOWEVER DOES NOT CONSTITUTE A DETERMINATION BY THE COURT AS TO WHETHER THE PLAN CAN OR SHOULD BE CONFIRMED**. No solicitation of votes may be made except pursuant to this Disclosure Statement and Section 1125 of the Bankruptcy Code. In voting on the Plan

SL1 819967v2/101674.00002

holders of Claims and Interests should not rely on any information about the Debtors or these Cases other than as contained in this Disclosure Statement and the exhibits hereto.

### A. Vote Deadline.

TO BE COUNTED FOR VOTING PURPOSES, BALLOTS MUST ACTUALLY BE RECEIVED BY COUNSEL FOR THE DEBTORS BY 4:00 P.M. PREVAILING EASTERN TIME ON _____, 2008, UNLESS OTHERWISE ORDERED BY THE BANKRUPTCY COURT, AT THE FOLLOWING ADDRESS:

<div align="center">

**STEVENS & LEE, P. C.**
**Attn: Stephanie Foster**
**Re: 15375 Memorial Corporation and Santa Fe Minerals, Inc.**
**1105 N. Market Street, 7th Floor**
**Wilmington, DE 19801**

</div>

### B. Acceptance of the Plan.

Under the provisions of the Code, not all parties in interest are entitled to vote on a Chapter 11 plan. Creditors and equity interest holders whose Claims or interests are not impaired by a plan are deemed to accept such plan under Section 1126(f) of the Code and are not entitled to vote thereon. In addition, Creditors and equity interest holders who will receive no distribution under a plan are not entitled to vote thereon because they are deemed to have rejected such plan under Section 1126(g) of the Code. A description of the Classes of Creditors, Claimants and other Entities entitled to vote on the Plan is included in Article V, below. Only Persons and Entities entitled to vote on the Plan will receive a Ballot and SASE.

### C. Voting Procedures, Ballots, and Voting Deadline.

If you are entitled to vote to accept or reject the Plan, a Ballot is enclosed for the purpose of voting on the Plan. Please vote and return your Ballot(s) to counsel for the Debtors unless you are (i) a beneficial owner of a security whose claim will be voted by the record holder (i.e., a bank or brokerage firm) on a Master Ballot, in which case you must return your Ballot to that bank or brokerage firm (or its agent) or (ii) the holder of an Contingent Litigation Claim whose claim will be either voted by your attorney or whose Ballot will be returned to Debtors' counsel by your attorney.

Before voting on the Plan, each holder of a Claim or equity interest should read, in its entirety, this Disclosure Statement, the Plan, the Voting Procedures Order, the notice of the Confirmation Hearing, and the instructions accompanying the ballots. These documents contain important information concerning how Claims and equity interests are classified for voting purposes and how votes will be tabulated. After carefully reviewing the materials in the Solicitation Package and the detailed instructions accompanying your Ballot (if you received one), please indicate your acceptance or rejection of the Plan by voting in favor of or against the Plan. In order for your vote to be counted, you must complete and sign your original Ballot and

<div align="center">4</div>

return it in the SASE provided. A copy of the Ballot will not be accepted. Each Ballot has been coded to reflect the Class of Claims or Equity Interests it represents. Accordingly, in voting to accept or reject the Plan, you must use only the coded Ballot or Ballots sent to you with this Disclosure Statement.

For your vote to be counted, your Ballot must be properly completed in accordance with the voting instructions on the Ballot and received no later than the Voting Deadline (as defined in the Voting Procedures Order) by counsel for the Debtors. Do not include any other paperwork in your SASE. Any Ballot that does not indicate either an acceptance or rejection of the Plan or indicates both an acceptance and rejection of the Plan will not be counted as a vote either to accept or reject the Plan.

If you have any questions about the procedure for voting your Claim or equity interest, the Solicitation Package, the amount of your Claim, or if you wish to obtain, at your own expense an additional copy of this Disclosure Statement and its appendices and exhibits, please contact Debtors' counsel, attn: Stephanie Foster at (302) 425-3317.

### D. Confirmation Hearing and Deadline for Objections to Confirmation.

The Bankruptcy Court has scheduled the Confirmation Hearing to commence on _____, 2008 at _____m. (prevailing Eastern time) at 824 North Market Street, 6th Floor, Wilmington, Delaware. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for the announcement of adjournment at the Confirmation Hearing, or at any subsequent adjourned Confirmation Hearing. Any objection to confirmation of the Plan must be made in writing and specify in detail all grounds for the objection. Any such objection must be filed with the Bankruptcy Court, and served so that it is received by 4:00 p.m. on _____, 2008. Copies of objections also must be served on Debtors' counsel: Stevens & Lee, P.C., 1105 N. Market Street, 7th Floor, Wilmington, DE 19801, Attn: John D. Demmy, Esquire.

## II. LIQUIDATING PLAN OF REORGANIZATION – GENERAL OVERVIEW

The Plan provides, *inter alia*, for payment in full of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Claims and Allowed Secured Claims, and for payment as provided by the Plan of general unsecured claims from Debtors' existing assets and from the Cash to be provided by the GlobalSantaFe Entities pursuant to the GSF Settlement described in Section 4.1 of the Plan. The Plan further provides for the treatment and satisfaction in full of the Claims in Class 5 (Sinz/Troia Claims) and Class 6 (the Bass Claims) and certain of the Claims in Class 7 (those asserted against Memorial or asserted against Santa Fe prior to the Santa Fe Dissolution Bar Date), to the extent, if any, that such Claims are valid, from proceeds of Insurance Policies to the extent that such provide coverage for such Claims. *See generally*, Articles 3 and 4 of the Plan. The GSF Settlement also provides, as implemented by the Plan, for a release of all claims held or asserted by the GlobalSantaFe Entities against Debtors' Estates and of claims held by the Estates against the GlobalSantaFe Entities, and the GlobalSantaFe Entities' commitments to cooperate in connection with the pursuit of Insurance Rights in respect of Claims in Classes 5, 6 and 7.

5

Debtors believe that the Plan is the best and most efficient way to liquidate their Assets given the contingent, unliquidated and disputed nature of the Claims in Classes 4 5, and 6. For a more detailed description of the terms and provisions of the Plan, see Article V of the Disclosure Statement as well as the Plan, which is attached hereto as Exhibit A, in its entirety. Debtors hereafter reserve the right to modify the Plan consistent with Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

## III. DESCRIPTION AND HISTORY OF THE DEBTORS

### A. General Information and Background

#### 1. Memorial

Memorial (then known as KPC (U.S.) Inc.) incorporated in Delaware on October 1, 1981. On June 27, 2001, Memorial (then known as Santa Fe (U.S. Holdings) Inc.)[2] filed a Certificate of Dissolution with the Delaware Secretary of State. On June 22, 2004, Memorial revoked its dissolution in accordance with Delaware law. Memorial currently is a Delaware corporation in good standing and neither its dissolution nor the revocation of its dissolution effects its status as a Delaware corporation in good standing. As of the commencement of the Bankruptcy Cases Memorial was, and remains, the sole shareholder of Santa Fe. The parent and sole shareholder of Memorial is Entities Holdings, Inc. ("EHI").[3]

#### 2. Santa Fe

The predecessor of Santa Fe was formed in 1954 as a Wyoming corporation. Prior to 1995, Santa Fe operated in the oil and natural gas production and transportation business. In or about the early 1990's, Santa Fe undertook to dispose of all its operating properties and at such time generally began liquidating its assets and settling its liabilities. By May 1995 Santa Fe had sold all or substantially all of its properties. In December 2000, Santa Fe dissolved pursuant to the non-judicial statutory dissolution procedure provided under Wyoming law. Memorial (then known as Santa Fe (U.S. Holdings) Inc.) executed an Agreement and Plan of Liquidation dated December 1, 2000, and Articles of Dissolution for Santa Fe were filed with the Wyoming Secretary of State on December 8, 2000.

Although notice of dissolution could have been made promptly upon Santa Fe's dissolution, Debtors discovered in 2005 that notice of dissolution probably had not been given in December 2000. Notice of Santa Fe's dissolution was effected in accordance with Wyoming

---

[2]     After June 22, 2004, Santa Fe (U.S. Holdings) Inc. changed its name to GlobalSantaFe Holdings Corporation. In anticipation of the captioned bankruptcy cases (the "Bankruptcy Cases"), on or about August 14, 2006, GlobalSantaFe Holdings Corporation changed its name to Memorial. The name change was effected due to the similarity between the names of the separate but related companies - GlobalSantaFe Holdings Corporation and GlobalSantaFe Corporation - to avoid mis-understandings about which company had filed for bankruptcy.

[3]     GlobalSantaFe Corporation ("GSF"). GlobalSantaFe Corporate Services, Inc. ("GSF Services") and EHI is referred to collectively as the "GlobalSantaFe Entities."

6

dissolution law on August 4, 2006, when Santa Fe published notification of its dissolution in the Wyoming Tribune-Eagle.[4]  Under Wyoming corporate law, any unknown claims against Santa Fe will be forever barred unless asserted by August 4, 2008, two (2) years after the publication of the Tribune-Eagle Notice (as defined in the Plan, the "Santa Fe Dissolution Bar Date").  From the perspective of resolving all potential liabilities, Santa Fe's dissolution under Wyoming state law does not become final until after the Santa Fe Dissolution Bar Date.

After the December 2000 dissolution Santa Fe has had a limited corporate existence pursuant to Wyoming law.  It can sue and be sued and it can wind up its affairs.  Santa Fe has no officers, directors, or employees and can act only through its sole shareholder, Memorial.

### 3. Debtors' Activities

Since prior to commencement of the Bankruptcy Cases, David E. Faure ("Mr. Faure"), a Vice President and Assistant Secretary of Memorial since June 2004, has been responsible for winding up the Debtors' affairs including marshaling their assets and dealing with their liabilities.[5]  Mr. Faure has full authority to act and make decisions for the Debtors in connection with the Bankruptcy Cases pursuant to Memorial's bylaws and resolutions of Memorial's Board of Directors.  As of the Petition Date both Debtors' addresses was 15375 Memorial Drive, Houston, TX 77079-4101.

### 4. The GlobalSantaFe Entities

GSF was the product of the November, 2001, merger between Global Marine, Inc. and Santa Fe International Corporation (the "Global Marine Merger").  Santa Fe's dissolution occurred prior to the Global Marine Merger and Mr. Faure was not employed by either Memorial, Santa Fe, or Santa Fe International Corporation prior to the Global Marine Merger.

GSF Services' function within the GlobalSantaFe family was to provide most corporate services that the other affiliated companies may require.  GSF Services employs approximately 400 to 450 people.  GSF employs approximately 30.  The vast majority of the

---

[4]    Under the Wyoming dissolution statute publication notice must be made in a newspaper of general circulation in the county where the dissolved company's registered office was located.  The Wyoming Tribune-Eagle is a newspaper of general circulation in Laramie County, Wyoming, where Santa Fe's registered office was located.

[5]    Mr. Faure also is a Vice President and Assistant Secretary of both GSF Services and EHI.  Mr. Faure also is employed by GSF Services as an Assistant General Counsel.  Mr. Faure is a 1987 law school graduate and is licensed to practice law in the State of Louisiana.  Through GSF Services Mr. Faure provides legal advice to GlobalSantaFe operating companies on bidding and contracts with their vendors and customers, and at times will become involved in collection matters.  Mr. Faure's duties for EHI consist mainly in signing required corporate documents.  Mr. Faure also provides legal services to EHI in the nature of assisting in defensive litigation and he has continued with those services since the Cases were filed.  Mr. Faure is not involved in the financial accounting or reporting for any of the GlobalSantaFe companies including GSF.

7

employees within the GlobalSantaFe family in the United States are offshore rig workers employed by GlobalSantaFe Drilling Company. Memorial has no employees of its own and, like other companies in the GlobalSantaFe family, Memorial obtains from GSF Services, other affiliate entities and outside vendors all support services, including, but not limited to, legal, tax, and purchasing. Most of the companies in the GlobalSantaFe family do not have the capability of providing its own legal, accounting and procurement services and such activities are centralized with GSF Services, whose revenues are derived from a five per cent "up lift" charge against any third party invoices or billings paid by GSF Services on behalf of another company in the GlobalSantaFe family. Substantially all of the books and records of both Debtors in existence as of the Petition Date are in the possession, custody or control of GSF Services.

## B. Non-Bankruptcy Litigation

Significant contingent liabilities unknown to Santa Fe and Memorial, and otherwise unanticipated, in December 2000 arose since Santa Fe's dissolution. Such contingent claims against Santa Fe also may impact Memorial because Memorial is the sole shareholder of Santa Fe. Under Wyoming law, the creditors of a dissolved corporation can recover their debts from the dissolved corporation's shareholders, up to the value of the assets that each shareholder received at the dissolution. Thus, Memorial may face exposure for contingent claims asserted against Santa Fe because it is Santa Fe's sole shareholder and, on information and belief, it received Santa Fe's remaining net assets in December 2000 after completion of the liquidation process referred to above. The contingent and disputed claims that have arisen after Santa Fe's dissolution stemmed from Santa Fe's historic operations in the oil and natural gas production and transportation business.[6] The cases filed against Debtors pre-petition included:

### 1. The *Ellison* Action

After Santa Fe's dissolution the action *Jackie Eugene Ellison, et al. v. FPC Disposal, Inc., et al.*, Case No. CJ-99-151-01, was filed in Oklahoma state court in 2001 (the "*Ellison* Action"). In the *Ellison* Action plaintiffs alleged that FPC Disposal had designed, maintained and operated a facility in a manner that damaged plaintiffs' land. Santa Fe was among the top 5 or 10 defendants, by percentage of loads delivered, that had disposed of materials at the facility. Soon after Santa Fe was added as a party-defendant, an order was entered dismissing the plaintiffs' claims. After approximately three years, in 2005, the dismissal was reversed on appeal and the action was remanded for trial. Santa Fe asserted rights of indemnity against co-defendant BP Amoco Corporation ("BP"). BP defended the *Ellison* Action on Santa Fe's behalf, subject to a reservation of rights for gross negligence, willful misconduct and punitive damages; and, these kinds of allegations eventually were made against (but disputed

---

[6]    Significantly, some state laws allow a landowner to hold each operator in the chain of title on an oil and gas lease jointly and severally liable to the landowner for damages caused by any operator in the same chain of title. These state laws also may allow the operators to seek contribution and/or indemnification for proportionate shares of responsibility from each other. These suits are sometimes referred to as "Oilfield Legacy" cases. There are dozens of Oilfield Legacy cases pending in Louisiana alone which, upon information and belief, energy companies and their insurers have paid hundreds of millions of dollars in remediation costs or to settle or satisfy judgments.

by) Santa Fe. Debtors' concern prior to the Cases, based on these allegations, was that ultimately there would be no defense or indemnity from BP for the *Ellison* claims.

The *Ellison* plaintiffs voluntarily dismissed without prejudice their claims against Santa Fe within a few weeks after the Cases were filed; and thereafter the *Ellison* Action was settled pursuant to the Settlement Agreement and Release, dated February 19, 2007. The *Ellison* Action was settled without the participation of Santa Fe or Memorial and neither Santa Fe nor Memorial were required to make a financial contribution to the settlement. Santa Fe received a release from liability in connection with the settlement although paying, settling defendants could still pursue the nonpaying, settling defendants, like Santa Fe, if they chose to do so.

## 2. The *Tebow* Action

In 2005 *William M. Tebow, et al., v. Bradex Oil & Gas, Inc., et al.*, Docket No. 2005-7728 (the "*Tebow* Action") was filed in Louisiana state court, in which the plaintiff landowners sued Bass, Santa Fe, and at least sixteen other oil company defendants seeking damages of approximately $320 million, plus punitive damages. SantaFe and/or its predecessor Andover Oil Company ("Andover") operated on the *Tebow* property from 1974 to 1990. Santa Fe sold its interest in the *Tebow* property to PNP Petroleum ("PNP") in April, 1990. Bass and Santa Fe are in the same leasehold chain of title for certain parcels of the property at issue in the *Tebow* Action.

There was a mediation in June of 2006 in the *Tebow* Action which did not produce a settlement. Debtors were aware in or about June of 2006 that, after the *Tebow* plaintiffs first had done so, Bass stated that it intended to pursue the GlobalSantaFe Entities on alter ego claims. GSF reported this in its Form 10-Q Quarterly Report for the period ended June 30, 2006. On August 17, 2006, Santa Fe was dismissed without prejudice from the *Tebow* Action upon an *ex parte* motion by the *Tebow* Plaintiffs. Post-petition developments in the *Tebow* litigation are outlined below.

## 3. The *Harris* Action and Related EPA and California Water Board Environmental Matters

On July 13, 2006, Memorial was named as a defendant in a personal injury lawsuit *Wyomania Harris, et al. v. The Ratkovich Company et al.*, Case No. BC35585, in California state court (the "*Harris* action"). Memorial's involvement in the *Harris* Action relates to the ownership by a legacy Santa Fe company in the 1930s or 1940s of allegedly contaminated property located in Alhambra, California (the "California Property"). Because the Bankruptcy Cases were commenced soon after the *Harris* Action was filed, neither Debtors nor any of the GlobalSantaFe Entities had hired counsel for or incurred material expenses in the defense of the *Harris* Action as of commencement of the Bankruptcy Cases.

In addition, for a few years prior and as of commencement of the Bankruptcy Cases the California Property also was subject to pending investigations by the EPA and the California Water Board. The California Property is located above an EPA Superfund site known as the San Gabriel Valley, Area 3, Superfund site. On August 19, 2003, the EPA sent a request

9

for information under Section 104 of CERCLA to Santa Fe International Corporation inquiring about the history of the California Property and other questions about its environmental condition. To the best of its knowledge, this investigation has not yet been concluded.

### 4. The *Sinz* and *Troia* Actions

As of the Petition Date Memorial also was a party in two wrongful death asbestos suits pending in California State Court. In *Patricia Sinz et al. v. Allied Packing, Inc. et al.*, Alameda County Superior Court, California, Case No. RG 04 139532 (the "*Sinz* Action"), plaintiffs sued J. H. Pomeroy & Co., Inc., a Washington corporation ("Pomeroy"), GlobalSantaFe Corporation and several of its subsidiaries. In *Rita Troia et al. v. Amchem Products, Inc. et al.*, Alameda County Superior Court, California, Case No. RG 05 194426 (the "*Troia* Action"), plaintiffs sued Pomeroy, GlobalSantaFe Corporation and several of its subsidiaries as alleged successors-in-interest to persons allegedly liable to the plaintiffs.

In December 1992 Pomeroy was merged into Memorial. Memorial's responsibility for the actions of Pomeroy was not contested in the *Sinz* and *Troia* Actions because as a result of the merger between Pomeroy and Memorial, Memorial became responsible for the liabilities of Pomeroy. The plaintiffs in both the *Sinz* Action and the *Troia* Action assert claims for personal injuries, strict liability, breach of warranties, negligence, fraud, premises liability and wrongful death arising from alleged exposure to asbestos-containing products. After the successorship of Memorial with respect to Pomeroy became apparent, on January 19, 2007, Debtors' bankruptcy counsel sent a letter to counsel for *Sinz* and *Troia* plaintiffs regarding the Case and the automatic stay. Thereafter, Memorial was dismissed as a party to these actions. The *Sinz* and *Troia* plaintiffs have filed proofs of claim against Memorial in the Bankruptcy Cases, each asserting an unsecured nonpriority claim in the amount of $5,000,000.

### 5. Oilfield Legacy Cases

Although Santa Fe had sold the last of its properties in 1995, during the period in which it had active business operations, Santa Fe owned and/or operated mineral interests in at least thirteen parishes in Louisiana alone. Santa Fe also had owned many properties in Texas and Oklahoma.

Debtors expect that there are other pending or to-be-filed Oilfield Legacy lawsuits where one or both of the Debtors or one of their predecessors in interest appears in the relevant chain of title. Thus, Debtors had and continue to have a reasonable expectation that attempts may be made to assert claims against them in Oilfield Legacy lawsuits.[7]

---

[7]    Debtors' concerns over potential legacy liabilities have been borne out after commencement of the Bankruptcy Cases. Memorial has become the subject of at least two lawsuits involving long tail legacy type claims – the *Boudreaux* Action and the *Tripkovich* Action. Both the *Boudreaux* and *Tripkovich* Actions are long tail, legacy exposure cases similar to the types of cases that Debtors were concerned with and included in the decision-making process with respect to the filing of the Bankruptcy Cases.

10

### C. The Filing of the Bankruptcy Cases

#### 1. Debtors' Consideration Of A Possible "Dissolution Defense"

Debtors understanding of the defense based on dissolution that was potentially available to Santa Fe in the *Ellison Action* or any pre-petition litigation in which it was (or might become) involved was that if Santa Fe's 2000 dissolution was complete it no longer would be liable for claims and should be dismissed from any litigation because, under Wyoming dissolution law, Santa Fe no longer would be capable of being sued (the "Dissolution Defense"). Debtors' further understanding with respect to the Dissolution Defense were (and are) (i) once notice of dissolution had been published there would be a two-year limitations period on asserting claims against Debtors; (ii) Memorial could have liability with respect to claims asserted before the expiration of the two year notice period only to the extent that Memorial received a distribution of assets of Santa Fe at the time of the dissolution; and (iii) any claims not asserted before two years after publication notice under the Wyoming statute would be precluded as the two year notice period acted as the functional equivalent of a bar date in bankruptcy.

Debtors began to consider use of the Dissolution Defense when the *Ellison* Action began heating up after disposition of the appeal, which coincided with commencement of the *Tebow* Action in April 2005. At a settlement conference in the *Ellison* Action in June or July of 2006 the *Ellison* plaintiffs demanded $10 million to settle, far in excess of any possible amount distributed to Memorial upon Santa Fe's dissolution. However, because Debtors could not uncover evidence that publication notice of Santa Fe's dissolution had been effected upon dissolution in December 2000, Debtors concluded that both Santa Fe and Memorial remained open to possible limited liability under the Wyoming dissolution statute. Debtors' understanding was that under the Wyoming dissolution statute there is a single limit of liability for shareholders that had received assets upon dissolution and not a liability to each claimant asserting a claim within the two year notice period. Thus, Memorial, as Santa Fe's sole shareholder, might have liability for the assets it received upon dissolution but not in excess of that one amount. Debtors were concerned in light of the various pending litigation and investigatory matters and possible future legacy claims that there would be multiple attacks on this single fund.

#### 2. Commencement of the Case

Among the claims and other issues that Debtors considered in deciding whether to commence the Cases were those related to the *Ellison* Action, the *Tebow* Action, the *Harris* Action and the EPA and California Water Board investigations. Debtors also considered the wearing effect of piecemeal litigation involving one case after another over a possible finite pot of money; the ability to obtain jurisdiction over a geographically disparate group of claimants (located in Texas, Oklahoma, Louisiana and California, among other states); and possible multiple claims on the same insurance policies and the problem of divvying up the proceeds of such policies among multiple claimants. Taken as a whole, the uncertainty involved in the Non-Bankruptcy Litigation and Oilfield Legacy claims negatively impacted the Debtors ability to liquidate and dissolve their assets in an orderly and fair process.

11

A central concern was that to the extent parties including the Ellisons, the Tebows, co-defendants in such actions, or claimants in future oilfield legacy cases wanted to pursue affiliated companies, like Memorial, Debtors would be exposed to numerous and repeated attacks on the limited distribution on dissolution liability under the Wyoming dissolution statute. In addition, any other assets to which Debtors may have had rights, would be the subject of multiple and serial attacks and recovery and possible inconsistent decisions. Rather than face this kind of exposure and potential litigation cost, Debtors commenced the Cases on August 16, 2006, to obtain the certainty and efficiency of a single ruling on the Dissolution Defense in one jurisdiction which would have jurisdiction over all interested parties.

As of the commencement of the Bankruptcy Cases there were approximately 130 potential or pending claims against Debtors, as reflected in their respective Schedules F, all of which, excepting the claims scheduled for EHI and Corporate Services, are claims of plaintiffs or co-defendants in either the *Ellison*, *Harris* or *Tebow* Actions and were scheduled as contingent, disputed and unliquidated.

### 3. The EHI Note

Prior to commencement of the Bankruptcy Cases Memorial obtained $100,000 from EHI under the Subordinated Revolving Demand Note (the "Note") to fund bankruptcy costs and represented, in effect, a down payment on the $500,000 that Ernst & Young believed may have been distributed to Memorial by Santa Fe at the time of Santa Fe's dissolution. Included in Memorial's Schedule F is the unsecured nonpriority claim of EHI in the amount of $100,000 relating to the loan from EHI to Memorial pursuant to the Note. Memorial had no cash before it executed the Note and, given their financial and operational status, Debtors could not obtain funding from any source other than the GlobalSantaFe Entities.[8]

### 4. Post-Bankruptcy Activity In the *Tebow* Action

On August 17, 2006, Santa Fe filed a pleading in the *Tebow* Action giving notice of the commencement of the Cases. On August 22, 2006, Bass filed its "Exceptions and Answer to Third Supplemental And Amending Petition and Third Party Petition" (the "Third Party Complaint"), against (i) certain of Santa Fe's insurers ("Insurers") whom Santa Fe had disclosed to Bass and the other *Tebow* defendants, and (ii) against the GlobalSantaFe Entities pursuant to a theory that the GlobalSantaFe Entities could be held liable for any contribution claim held against Santa Fe ("Alter Ego Claims"). The Louisiana State Court dismissed the Third Party Complaint without prejudice, because Bass had not first sought leave to file it. On August 25, 2006, Bass filed its "Motion to Reinstate Third Party Demand Filed by Bass Enterprises Production Company And Alternatively For Leave To File Third Party Demand And To Upset Trial Date" (the "Motion to Reinstate And To Upset Trial Date"), by which Bass sought, *inter*

---

[8]     In connection with the negotiation and execution of the EHI Note Mr. Faure had investigated alleged alter ego claim theories against the GlobalSantaFe Entities and his conclusion was (and remains) that such claims lack merit.

*alia*, to (i) re-assert its alleged claims against Debtors' Insurers and its Alter Ego Claims against the GlobalSantaFe Entities, and (ii) adjourn the October 11, 2006 trial date in the *Tebow* Action.

On September 5, 2006, one day before the Motion to Reinstate And To Upset Trial Date was to be heard by the Louisiana State Court, Bass removed the *Tebow* Action to the United States District Court for the Western District of Louisiana (the "Louisiana Federal Court"); and asked the Louisiana Federal Court to transfer venue of the *Tebow* Action to the United States District Court for the District of Delaware (the "Motion to Transfer"). In its Ruling and Judgment, each dated September 20, 2006, the Louisiana Federal Court remanded the *Tebow* Action to the Louisiana State Court.

Trial of the *Tebow* Action commenced on February 19, 2007. Bass and the *Tebow* plaintiffs entered into a settlement of the *Tebows'* claims against Bass (the "Tebow Settlement Agreement"). A "Notice of Release and Assignment" was filed for registry and recorded in Book 548, Page 884, File Number 2007-00002390, on March 30, 2007, with the Clerk of Court for the Parish of Avoyelles, Louisiana. A stipulation of dismissal with prejudice as to the *Tebow* plaintiffs' claims against Bass has been filed in the *Tebow* Action. The *Tebow* plaintiffs have not filed a proof of claim against either of the Debtors.

### D. Significant Events During the Bankruptcy Case.

#### 1. The Adversary Proceeding

On September 8, 2006, Santa Fe commenced an adversary proceeding against Bass, Adv. No. 06-10859 (the "Adversary Proceeding"), seeking a declaratory judgment that Alter Ego Claims are property of Debtors' Estates under section 541 of the Code and an injunction enjoining Bass from seeking to pursue Alter Ego Claims against the GlobalSantaFe Entities. In addition, Santa Fe filed a motion seeking a preliminary injunction against Bass (the "PI Motion") in connection with the Adversary Proceeding.

By order dated October 24, 2006 (Adversary Docket No. 27), the GlobalSantaFe Entities were allowed to intervene in the Adversary Proceeding; and, on December 29, 2006, the GlobalSantaFe Entities filed their Motion to Dismiss [Bass's] Motion for Modification of the Automatic Stay Under 11 U.S.C. § 362 (Bankr. Docket No. 100) (the "Motion to Dismiss Stay Motion"). Debtors' joined the Motion to Dismiss Stay Motion on January 3, 2007 (Bankr. Docket No. 101).

#### 2. The Bass Bankruptcy Litigation

On September 29, 2006, Bass filed motions to dismiss, to convert, for abstention, for appointment of a trustee, or for appointment of an examiner (the "Dismissal/Conversion Motions") (Bankr. Docket No. 1-24) and a motion for modification of the automatic stay under 11 U.S.C. § 362, and a related memorandum of law in support thereof (Bankr. Docket Nos. 23 and 26) (collectively, the "Stay Relief Motion," and together with the Dismissal/Conversion Motion, the "Bass Motions").

13

Trial of the PI Motion and of the Bass Motions (collectively, the "Bass Litigation") commenced October 19, 2006, and the Court declined to dismiss the bankruptcy cases on either of the issues heard on October 19, 2006 (whether Santa Fe was ineligible to be a chapter 11 debtor, as alleged by Bass, and whether the Cases had been filed in good faith) based on the record established at that hearing.[9]  However, the Court indicated after the October 19, 2006, hearing that it wanted a fuller record developed in connection with the Bass Litigation matters. Resumption of the trial on the Bass Litigation initially was scheduled for December 4 and 5, 2006; but it was adjourned several times while discovery and other pre-trial activity ensued.

Trial of the Bass Litigation proceeded on September 17 and 18, 2007 (the "Trial"). Pursuant to the Court's September 26, 2007 *Post-Trial Order With Respect To Matters Tried On September 17-18, 2007 And With Respect To Other Pending Matters* dated (Bankr. Docket No. 249; Adv. Docket No. 137) (the "Post-Trial Order"), the parties made post-trial submissions on October 19, 2007 (proposed findings of fact and conclusions of law) and on November 2, 2007 (reply briefs to the initial submissions).

On February 15, 2008, the Court issued its Findings of Fact and Conclusions of Law (the "Findings") and related Order (Bankr. Docket Nos. 291 and 292; Adversary Docket Nos. 164 and 165) (collectively, the "Order"), disposing of the issues raised in the Bass Litigation. Specifically, the Court denied the Dismissal/Conversion Motion and the PI Motion. The Stay Relief Motion was granted subject to the Court's subsequent determination as to the appropriate forum for the litigation that Bass sought to commence.

On February 25, 2008, the Debtors filed a Motion (I) Under Fed. R. Bankr. P. 7052, 9023 and 9024 For Clarification And/Or Reconsideration And/Or Amendment Of The Court's February 15, 2008, Findings Of Fact And Conclusions Of Law And Related Order; And (II) Under Fed. R. Bankr. P. 7062 And 8005, For Entry Of An Order Staying Effectiveness Of The Court's Findings Of Fact And Conclusions Of Law And Related Order Pending Resolution Of This Motion And/Or Any Related Appeal (the "Debtors' Reconsideration Motion"). (Bankr. Docket No. 296). The Debtors' Reconsideration Motion sought clarification with respect to three discrete portions of the Orders. Specifically, the Debtors requested clarification as to whether: (i) the Court intended to grant Bass relief from the automatic stay to pursue claims against Memorial; (ii) the Court intended to conclusively rule on Santa Fe's claim for declaratory relief that Santa Fe owns the Alter Ego Claim pursuant to Section 541 of the Bankruptcy Code; or (iii) whether the discussion regarding the Bass Claims was intended to constitute findings of fact or conclusions of law for any purpose other than the minimal "colorable claim" showing

---

[9]    At the October 19, 2006, hearing, Bass requested relief from stay to proceed with its Motion to Reinstate And To Upset Trial Date at the October 20, 2006, hearing in the *Tebow* Action, for the purpose of requesting the Louisiana State Court to grant Bass leave to file the Third Party Complaint. This request was denied by the Bankruptcy Court, but the Bankruptcy Court stated that such denial in no way impeded Bass' right to proceed with the Motion to Reinstate And To Upset Trial Date as to any proposed third party defendant other than Santa Fe's Insurers and the GlobalSantaFe Entities. At the October 20, 2006, hearing in the *Tebow* Action Bass did not proceed on its Motion to Reinstate And To Upset Trial Date as to any party.

14

required to demonstrate that Bass was entitled to relief from the automatic stay. Additionally, the Debtors' Reconsideration Motion requested an extension of the stay under Fed. R. Bankr. P. 4001(a)(3) pending adjudication of the motion and any appeal. The GlobalSantaFe Entities filed their own motion for reconsideration and joinder to the Debtors' Reconsideration Motion (Bankr. Docket No. 298), which Motion was joined by the Debtors (Bankr. Docket No. 297).

Also on February 25, 2008, Bass filed its Motion For Entry Of An Order (I) Granting Reconsideration, In Part, Of The Court's Opinion And Order, Each Dated February 15, 2008; (II) Upon Reconsideration, (A) Vacating That Portion Of The Opinion And Order Denying The BEPCO Dismissal/Conversion Motion; And (III) Granting Related Relief (the "Bass Reconsideration Motion"). (Bankr. Docket No. 299). In its Motion, Bass (i) argued that the Court failed to appropriately consider the "cause" argument for dismissal under Section 1112(b)(4)(A) of the Bankruptcy Code; (ii) requested reconsideration of the Court's ruling that the Debtors' cases were filed in good faith.

Additionally, the Debtors, the GlobalSantaFe Entities and Bass each submitted letters to the Court outlining their respective positions as to the appropriate venue for the Bass Litigation against Bass and/or its insurers. (Bankr. Docket Nos. 303, 308, 309, 315, 319 and 321).

On April 16, 2008, the Court issued its Memorandum Opinion On Reargument and related Order (Bankr. Docket Nos. 323 and 324) outlining its rulings on the motions for reconsideration that were filed by the Debtors, Global Santa Fe Entities and Bass (collectively, the "Reconsideration Motions"). In the Reconsideration Order, the Court denied the Bass Reconsideration Motion and granted the Debtors' Reconsideration Motion. Additionally, the Court held that the litigation that is to be commenced by Bass against Santa Fe and/or its insurers should proceed in a non-bankruptcy forum of Bass' choosing, to wit, Louisiana.

On April 21, 2008, the Court entered its Order Regarding Debtors' Motion To Stay Pending Appeal And Joinder By The GSF Entities pursuant to which the Court denied the Debtors' request for a stay of that portion of the Order granting Bass relief from the automatic stay to pursue claims against Santa Fe and its insurers. (Bankr. Docket No. 326).

### 3. Further Investigation Regarding the Distribution Upon Dissolution and the GSF Settlement

After commencement of the Bankruptcy Cases, Debtors continued to try to determine the exact amount of the distribution upon dissolution in December, 2000. They discovered Memorial's 2000 federal tax return which suggested that the distribution on dissolution was $772,000. Debtors have not discovered any other or better evidence of the distribution upon dissolution by Santa Fe to Memorial other than as reflected in the Santa Fe and Memorial year 2000 tax returns.

At present, Memorial lacks sufficient funds to return this dissolution distribution to creditors. In addition, extensive discovery and motion practice by Bass have caused Debtors' estates to incur significant, under-funded administrative expenses. These expenses, along with

15

other factors, including, but not limited to, the prospect of continued and significant future litigation expenses have caused Debtors to conclude that a settlement with the GlobalSantaFe Entities is in the best interest of Debtors' estates and their creditors. This is especially true considering that continued litigation is unlikely to yield any further information or detail with respect to the Santa Fe's dissolution distribution, which occurred approximately 8 years or more ago. Of further import, such a settlement is likely to be a critical required prong of the successful implementation of this Plan process; a process that will yield a confirmed Plan, which will serve to benefit all creditors of the Debtors' estates, past, present and future.

Pursuant to the Settlement (as defined below) embodied in the Plan, the GlobalSantaFe Entities are contributing value, consisting of cash and other non-cash consideration (including, without limitation, claim waivers and cooperation in the pursuit of insurance), of more than twice the $500,000 face amount of the Note to fund confirmation and post-confirmation activities. Even though, as to Memorial under Delaware corporate law, claims relating to allegedly improper dividends must be brought within four years of the dividend, the GlobalSantaFe Entities nevertheless are willing to provide funding in connection with Debtors' Plan based in part on the distribution upon dissolution amount included in the Memorial 2000 tax return.

Debtors submit that the GSF Settlement is in the best interests of the estates, for many reasons, including without limitation:

(a) without the GSF Settlement there likely would be insufficient funds in the estates to pay Allowed Administrative Expense Claims;

(b) the GSF Settlement results not only in funds to pay Allowed Administrative Expense Claims but also resolves substantial Administrative Expense Claims held by the GlobalSantaFe Entities against the estates;

(c) Santa Fe operated as a separate stand-alone company with its own management during its entire existence until commencement of the dissolution process, thus, Debtors submit that Alter Ego Claims lack merit (in addition, Alter Ego Claims have long ago prescribed);

(d) The best evidence of the amount of the distribution on dissolution is $772,000 and the GSF Settlement provides consideration to the estates far in excess of such amount;

(e) The burden to prove Alter Ego Claims is a substantial one and with Debtors' estates having limited resources, the time and expense that would be incurred in pursuing full blown litigation over Alter Ego Claims would be prohibitive to the estates;

(f) GSF Services was not even in existence prior to Santa Fe's dissolution and, after dissolution, when GSF Services was extant, Santa Fe's existence was only to wind up its affairs and not to engage in any active business operations and it did not engage in any active business operations post-dissolution; and

16

(g)    Assistance by the GlobalSantaFe Entities with pursuit of Insurance Rights is valuable consideration to the estates and the creditors of the estates, which assistance is not available to creditors of the estates absent the GSF Settlement.

### 4. <u>Insurance Review</u>

Among the assets that Debtors considered when deciding whether to commence the Cases were their possible rights in and to insurance. Santa Fe had been requested by the *Tebow* plaintiffs to produce insurance policies by April of 2006 and Santa Fe had produced certain policies that it had been able to locate as of the May 16, 2006 records deposition of Mr. Faure in the *Tebow* Action. As of commencement of the Cases Debtors were aware of a limited number of insurance policies, including those that had been located and produced in the *Tebow* Action, that were potentially available to cover claims against them. Debtors also were aware that there possibly were others contained in approximately 250 boxes of insurance related information, the contents of which were unknown, that had to be retrieved from archive and inventoried.[10]

After initially believing that the insurance policies produced in the *Tebow* Action had sudden and accidental pollution exclusion language, Santa Fe later became aware, in the Summer of 2006, that certain of these policies did not contain such exclusions.

Prior to the Cases Debtors did not have the financial wherewithal to conduct a detailed insurance archeology review for their potential insurance policies and coverage. GSF Services, in conjunction with Mr. Faure's duties for the Debtors, and under his management and direction, took on the task of reviewing the substantial insurance information in archive relating to the Santa Fe legacy companies (the "Insurance Review Project"). In October 2006, GSF Services hired two people to assist in the Insurance Review Project. The Insurance Review Project began in October 2006 and was completed in May 2007. Of the over 250 boxes identified as potentially containing insurance policies and related information, consisting of thousands of pages of material, 50 boxes were pulled for review at a time, were reviewed and inventoried.

The Insurance Review Project was undertaken for the benefit of the entire GlobalSantaFe corporate family as the boxes reviewed related to the Santa Fe legacy companies' insurance program. The overall goal of the Insurance Review Project was to compile a database of policies that could be reviewed as claims came up against any Santa Fe entity, whether it be the Debtors or others. Once the insurance policies were inventoried, notices were sent out as required with respect to the *Sinz*, *Troia* and *Tebow* claims. The notification process is ongoing. Debtors through GSF Services continue to investigate additional potential insurance coverage.

---

[10]    Debtors filed amended Schedule B's in October 2006 at the request of the United States Trustee to include the insurance policies they had identified and produced in the *Tebow* Action. Debtors knew when they filed their amended schedules that such would not be an exhaustive list of all possibly applicable insurance policies because of the significant volume of insurance information relating to Santa Fe and related legacy companies from the 1960s through the 1990s that still had to be pulled from archive, inventoried and analyzed.

Based on the results of the Insurance Review Project, Memorial asserts rights as an insured under insurance policies for some or all of the periods of asbestos exposure alleged in the *Troia* and *Sinz* Actions); and based on the allegations against Santa Fe or its predecessors made in the *Tebow* Action, Santa Fe asserts insurance coverage under various insurance policies issued by various insurance companies for *Tebow* related claims.

### 5. Other Assets

In addition to insurance rights and the assets currently held by the estates, there are additional assets which can be used by Debtors in connection with a liquidating plan. Claims for indemnity under purchase and sale agreements, referred to in Debtors' respective Schedules B (Item 21) have value to Debtors if someone, such as Bass, is successful in making a claim against the Debtors which possibly could be monetized through an agreement with the indemnitors. With respect to the claim for indemnity under the purchase and sale agreement between Santa Fe and BP involved in the *Ellison* Action, there is no reason at this time for Debtors to ask BP for a "cash-out" of BP's indemnification obligation because the bar date has passed and no party has asserted a claim against Debtors based on the *Ellison* Action. PNP potentially is obligated to indemnify Santa Fe for *Tebow* related claims. If PNP indemnified Santa Fe such could include defense costs, reducing Corporate Services' claim against Memorial attributable to defense of the *Tebow* Action, which would be a benefit to Debtors' estates. Debtors' claims for defense costs in connection with the *Tebow* Action or otherwise are another potential asset of Debtors' estates.

A possible additional asset available to Debtors relates to a pooling order from the State of Oklahoma based on a filing by Newfield Exploration, which indicated that Santa Fe had a working interest in one of the tracts subject to the pooling order. This represents either another asset available to Debtors or a property previously sold and being included by Newfield as a curative matter. As of the Trial Debtors had not been able to determine which was the case.

Debtors have obtained other assets since the filing of the Bankruptcy Cases, including (i) proceeds from a class action lawsuit against Conoco in the approximate amount of $62,500, and (ii) escheated funds from the states of Texas and Oklahoma in the approximate amount of $21,000. Debtors also are still due a $5722 Intercompany receivable due as part of a pre-petition tax refund.

### 6. The Bass Settlement in *Tebow* and its Proofs of Claim

In the *Tebow* Action, the plaintiffs brought suit for environmental damage to property that was allegedly caused by oilfield operations. The *Tebow* plaintiffs alleged that remediation of the subject property would cost in excess of $390 Million. Throughout the *Tebow* litigation Bass, through its expert witness (jointly retained by Bass and Santa Fe) asserted that the remediation would cost only approximately $2.55 Million.

On February 19, 2007, trial of the Tebow litigation commenced. On or about February 26, 2007, Bass settled with the *Tebow* plaintiffs. The then only remaining defendant, Atlantic Richfield Delaware Corporation ("ARCO"), tried the case to a defense verdict. The

18

terms of the settlement between the *Tebow* plaintiffs and Bass were set forth in a settlement agreement entered into effective February 26, 2007 (the "Settlement Agreement").

On April 27, 2007, Bass filed its Proofs of Claim (the "Bass Claims") asserting unliquidated general unsecured claims against each of the Debtors. Debtors have objected to the Bass Claims.[11]

## 7. **The EPA Claim**

In September 2006, Richard J. Denney, counsel for Memorial, was contacted by an official from the EPA who advised that the EPA would be sending out letters to potentially responsible parties ("PRPs") for the California Property. Later that month, Mr. Denney was contacted by an official from the California Water Board, a state agency responsible for monitoring ground water contamination. The California Water Board also issued a letter dated October 6, 2006 ordering that site investigation work be done on the California Property to determine whether soil contamination is present and whether the groundwater beneath the site has been threatened by the release of contaminants. Mr. Denney anticipates, based on his communication with federal and state officials, that one or more Santa Fe entities will be named as a PRP in respect of the California Property. Based upon the size of the property and the significant manufacturing operations that once took place on the property, Mr. Denney believes that the liability could be significant.

## 8. **Escheated Royalty Amounts Due to Debtors/Possible Royalty Interests**

Shortly after commencement of the Cases Debtors learned that certain payments due to them from various mineral interests and utility cooperatives held principally in Kansas, Texas and Oklahoma had been escheated to the State of Texas. Three claims totaling approximately $64,000 were filed on behalf of the Debtors. On or about February 26, 2007, Debtors received $20,906.24 in respect of one such claim and that amount was deposited in DIP bank account. Debtors anticipate receiving the balance of the funds from the remaining claims over the next 60-90 days. These funds may represent royalties due either in connection with mineral interests of either SANTA FE or Memorial in property which were sold pre-petition (and as to SANTA FE, likely were liquidated as part of its wind up and dissolution process) or which may represent de minimus interests which have not yet been liquidated but presumably could be for the benefit of Debtors' estates. Debtors are in the process of investigating the nature of their current interests in property in connection with these royalties and the utility cooperatives, if any. If any such rights exist that can be liquidated for the benefit of Debtors' estates, Debtors will undertake efforts to do so, and such interests will be included in the Trust Assets upon the

---

[11]    In their motion for summary judgment with respect to the Bass Claims (Bankr. Docket No. ___), Debtors submit that Bass' claims are invalid because, *inter alia*: (1) they are vaguely described and not *prima facie* valid; (2) Bass lacks standing to pursue claims that appear to be owned by entities that have neither appeared in the Bankruptcy Cases nor filed proofs of claim; (3) as a matter of law, Bass has no contribution claims to assert against Debtors, pursuant to applicable Louisiana state law; (4) Bass' claims are time barred; and (5) to the extent Bass does have any claim, it is estopped from claiming any amount in excess of $2.55 million.

Effective Date of the Plan in the event liquidation of any such interests has not occurred by such time.

### 9. Scheduled and Filed Claims

Nineteen (19) proofs of claim were filed against Debtors (the "Filed Claims") by the Bar Date. The Filed Claims are set forth in the Claims Register maintained by the Clerk of the Court. No person or entity has filed a proof of claim in either Debtor's bankruptcy case asserting a claim arising out of or relating to the *Ellison* Action. No person has filed a proof of claim in either Debtor's bankruptcy case asserting a claim arising out of or relating to the *Harris* Action or the California Property.

The GlobalSantaFe Entities have filed claims against Debtors. Under the Plan these claims are to be waived as part of the consideration for the GSF Settlement.

### 10. DIP Financing

Shortly after commencement of the Bankruptcy Cases Debtors sought approval for debtor-in-possession financing ("DIP Financing") from GSF Services for the stated purpose of facilitating Debtors' objectives in commencing the Bankruptcy Cases to effectuate an orderly wind-down and equitable distribution to creditors. On October 3, 2006, Debtors filed their *Motion for Order Authorizing Debtors to Enter into Management Agreement and to Incur Credit Pursuant to 11 U.S.C. Section 364(c)(1)* (Bankr. D. I. 34), which seeks an order authorizing them to: (i) enter into the Management Agreement in existence between GSF Services and other members of Debtors' corporate group; (ii) incur post-petition credit in the amount of $200,000; and (iii) grant a super priority administrative claim to GSF Services to the extent of the credit provided. The Court approved the DIP Financing sought by Debtors by its Order dated October 30, 2006 (Bankr. Docket No. 69). However, until the Court's rulings denying Bass' Dismissal/Conversion Motion, the DIP Financing had been held in abeyance.

### 11. Miscellaneous Actions

On September 15, 2006, Debtors timely filed their schedules of assets and liabilities and their statements of financial affairs (the "Schedules and Statements"). On October 9, 2006, Debtors each filed amended schedules of personal property (the "Amended Schedule B") and amendments to their schedules of unsecured claims (the "Amended Schedule F").

On September 21, 2006, the U.S. Trustee conducted a section 341 creditors' meeting in the Debtors' Cases. Debtors have filed initial and monthly reports pursuant to the Code and Local Rules.

Debtors continue to pursue insurance coverage for the Non-Bankruptcy Litigation and Oilfield Legacy claims by giving notice to Insurers they believe have or may have a duty to respond to these types of claims. Several Insurers have responded (some reserving rights, some denying coverage, and some making requests for more information). Debtors also have identified other Insurers upon whom they intend to make demands upon in the very near future.

## IV. THE JOINT PLAN OF LIQUIDATION

The following is a summary of the Plan, and is qualified in its entirety by the full text of the Plan, a copy of which accompanies this Disclosure Statement as Exhibit A. The Plan, if confirmed by the Bankruptcy Court, will be binding upon the Debtors, its Creditors and all other parties in interest in connection with the Cases. All Creditors and parties in interest are urged to read the Plan carefully.

### A. TREATMENT AND CLASSIFICATION OF CLAIMS.

The Plan provides for seven (7) classes of Claims and Interests and also provides for the payment of unclassified Claims (the holders of which do not vote), consisting of Administrative Expense Claims and Priority Tax Claims. The Classes and the treatment to be afforded each Class (as well as unclassified Claims) under the Plan are described below.

**1. Unclassified Claims.** The Code, pursuant to section 1123(a)(1), does not permit Administrative Claims or Priority Tax Claims to be classified in a plan of reorganization. Accordingly, these claims are not classified in the Plan. Administrative Claims include Professional Fee Claims, including fees incurred by counsel to the Debtors. All entities that are awarded compensation or reimbursement of expenses by the Bankruptcy Court under section 503(b) shall receive Cash in such amounts as are allowed by the Bankruptcy Court on the later of the Effective Date, the date on which an order of the Bankruptcy Court with respect to any such Claim becomes a Final Order, or the date upon which funds are available to pay those claims. The Debtors have estimated that accrued and unpaid Administrative Claims as of the Effective Date of the Plan will be approximately $600,000.

Holders of Allowed Priority Tax Claims shall be paid the Allowed amount of such Claim in full in Cash on the Effective Date. The Debtors believe that if there are any Priority Tax Claims they are of a *de minimus* amount.

**2. Class 1 - Priority Claims.** Class 1 consists of all Priority Claims against either or both of the Debtors. The Plan leaves unaltered the legal, equitable and contractual rights of the holders of any Priority Claim. Debtors believe that to the extent any Class 1 Claims exist, they are de minimus. This is an Unimpaired Class.

**3. Class 2 - Secured Claims.** Class 2 consists of all Secured Claims against either or both of the Debtors. The Plan leaves unaltered the legal, equitable and contractual rights (including, but not limited to, any Liens that secure such Claim) of the holder of any such Secured Claim. The Plan Proponents do not believe any Class 2 Claims exist. This is an Unimpaired Class.

**4. Class 3 - General Unsecured Claims.** Class 3 consists of all general Unsecured Claims against either or both of the Debtors, provided, however, that Class 3 does not include holders of Claims in Classes 4, 5 and 6. Upon Allowance or disallowance, as the case may be, of all Class 3 Claims, each holder of an Allowed Class 3 Claim shall receive, in complete satisfaction of the Claim, a distribution from Debtors in an amount equal to such Claimant's Pro

21

Rata share of the Class 3 Fund. Class 3 is an Impaired Class and is entitled to vote either to accept or reject this Plan.

**5. Class 4 - Sinz/Troia Claims**. Class 4 consists of the Sinz/Troia Claims. The holders of the Sinz/Troia Claims allege that predecessors of Memorial are liable for asbestos related personal injury claims. Debtors deny liability in connection with the Sinz/Troia Claims and they intend to object to the Allowance of such Claims. To the extent that any of the Sinz/Troia Claims are determined by a court of competent jurisdiction to be valid, then, in full satisfaction of the Claims, the Sinz/Troia Claimants shall be entitled to the proceeds of Insurance Policies, if any, that provide coverage for such Claims, to the extent of the full amount of the Allowed Claim. Debtors do not know whether the proceeds of Insurance Policies, if any, that may provide coverage for the Sinz/Troia Claims are in excess of the amounts claimed by the Sinz and Troia Claimants. Accordingly, Class 4 is an Impaired Class and is entitled to vote either to accept or reject this Plan. Debtors and the GSF Entities shall, pursuant to the Insurance Rights Agreement, work together to obtain any such proceeds to which the Sinz and/or Troia Claimants may become entitled, except, that, to the extent the Sinz and/or Troia Claimants may have a direct right of action against an Insurer under applicable law, they shall directly pursue such Insurance Policy proceeds in full satisfaction of their Allowed Claim.

**6. Class 5 - Bass Claims.** Class 5 consists of the Bass Claims, which allege that Debtors are liable to Bass for the amount of the settlement paid by Bass ($20,000,000) to the qualified settlement fund created in connection with the Tebow Settlement, plus the amounts actually expended by Bass to remediate the Tebow property (which Debtors believe is less than $500,000). Bass asserted, in requesting relief from stay in the Bass Litigation, and the Bankruptcy Court found in the Bass Litigation, that the aggregate face amounts of Insurance Policies that likely provide coverage for the Bass Claims are well in excess of $20,500,000. Bass also asserted, in requesting relief from stay in the Bass Litigation, that it has the right under Louisiana state law to proceed against Santa Fe's Insurers by right of direct action. Pursuant to the Bankruptcy Court's decision granting relief from stay for Bass to liquidate its claims against Santa Fe in Louisiana State Court and Bass' commencement of the Bass Insurance Litigation, Bass is in the process of pursuing an insurance recovery against Santa Fe's insurers.[12] In full satisfaction of any and all Claims that Bass may have against Debtors, Bass shall have the right to continue to pursue its claims against Santa Fe in the Bass Insurance Litigation and to recover proceeds of Insurance Policies that provide coverage for such Claims to the extent of any Allowed Claim it may obtain against Santa Fe. Class 5 is an Unimpaired Class. Further, Debtors have objected to the Bass Claims. Accordingly, Bas is not entitled to vote on this Plan, but is presumed to have voted to accept this Plan.

**7. Class 6 - Contingent Litigation Claims**. Class 6 consists of all holders of Contingent Litigation Claims against either of the Debtors.

(a) Any Entity asserting a Class 6 Claim against Santa Fe after the Santa Fe Dissolution Bar Date shall receive nothing on account of such Claim and shall be forever barred from asserting such Claim against Debtors or any other Entity.

---

[12]    Debtors have appealed from the Bankruptcy Court's orders granting relief from stay for Bass.

22

(b) Any Entity that has asserted a Class 6 Claim against Santa Fe prior to the Santa Fe Dissolution Bar Date shall be entitled to pursue proceeds of any Insurance Policy that provides coverage for such Claim.

(c) Any Entity that has asserted a Class 6 Claim against Memorial shall be entitled to pursue proceeds of any Insurance Policy that provides coverage for such Claim.

At present there are no holders of any Class 6 Claims as no party yet has asserted any such Claim. To the extent there are any holders of Class 6 Claims, Class 6 is an Impaired Class and is entitled to vote either to accept or reject this Plan.

**8. Class 7 - Interests.**

**9. Class 7-A - Santa Fe Interests.** Class 7-A consists of all equity interest held by Memorial in Santa Fe. Although no property will be distributed to the holders of Interests in Santa Fe, for the purposes of consummating this Plan and otherwise performing the obligations of Debtors under this Plan, Memorial shall retain its Interests in Santa Fe. Accordingly, Class 7-A Interests are Unimpaired by this Plan and are deemed to have accepted this Plan.

**10. Class 7-B - Memorial Interests.** Class 7-B consists of all equity interest held by any Entity in Memorial. Although no property will be distributed to the holders of Interests in Memorial, the holders of Interests in Memorial shall retain such Interests. Class 7-B Interests are Unimpaired by this Plan and are deemed to have accepted this Plan.

## B. PAYMENT OF ALLOWED UNCLASSIFIED AND UNIMPAIRED CLAIMS ON THE EFFECTIVE DATE

The Plan contemplates that the Debtors, on the Effective Date or as soon thereafter as practicable, shall pay holders of Allowed Unclassified Claims and holders of Allowed Class 1 Claims, Allowed Class 2 Claims in full in Cash. On the Effective Date the holders of Allowed Class 4, 5 and 6 Claims shall be entitled to liquidate their Claims and receive proceeds of Insurance Policies, if any, providing coverage for such Claims. Claimants should review the Plan for specifics regarding distributions.

## C. ACCEPTANCE OR REJECTION OF THE PLAN

Only the holders of Impaired Claims may vote to accept or reject the Plan. Thus, only holders of Class 3 Claims, Class 4 Claims and Class 6 Claims may vote on the Plan. Holders of Unclassified Claims, Class 1 Claims, Class 2 Claims, Class 5 Claims and Class 7 equity interests will not receive a Ballot because, pursuant to section 1126 of the Code, these Claimants are either Unclassified or Unimpaired and therefore not legally eligible to vote.

## D. OBJECTIONS TO CLAIMS

Debtors shall retain the right to pursue all objections to Claims that are pending as of the Effective Date of the Plan. After the Effective Date, only the Liquidating Trustee shall have the authority to commence or file objections to any Claims or Demands and litigate to judgment,

23

settle or withdraw such objections to Claims or Demands. All objections to Claims shall be filed within 180 days of the Effective Date, although such period is subject to extension by order of the Court upon motion filed by the Liquidating Trust.

## E.  REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Plan specifies that any and all Pre-Petition Date executory contracts and unexpired leases which have not been assumed or rejected prior to Confirmation, and are not assumed pursuant to Confirmation, shall be rejected pursuant to section 365 of the Code, effective as of the Effective Date.

## F.  OTHER PROVISIONS

**1. Distribution of Unclaimed Funds.** All checks to Creditors holding Allowed Claims shall be void if not cashed within 6 months and the unclaimed amounts shall be redistributed pursuant to the Plan.

**2. Retention of Jurisdiction by the Bankruptcy Court.** The Plan sets forth those types of matters for which the Bankruptcy Court will retain jurisdiction after the Plan has been confirmed.

**3. Modification of the Plan.** The Plan sets forth the manner in which the Plan may be modified before and after it has been confirmed by the Bankruptcy Court.

**4. Causes of Action.** Debtors may commence and prosecute, settle and/or abandon any Causes of Action. All recoveries shall be used to fund the Class 3 Fund. Debtors are unable to estimate the amount of such recoveries, if any.

**5. Liability in Connection with the Plan.** Neither the Debtors nor any of their attorneys, accountants, Representatives and agents shall have, nor shall they incur, any liability to any Creditor or and holder of an Interest for any act or omission in connection with or arising out of their duties and participation in the Cases, or the administration of the Plan, and all such Persons shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

**6. Released Parties.** The plan provides a release to the Debtors' Representatives and to the GlobalSantaFe Entities, as well as any settling Insurers. Details on the releases can be found in Section 8.3 of the Plan.

## G.  MEANS FOR IMPLEMENTATION OF THE PLAN

On the Effective Date, or as soon thereafter as is practicable, Debtors shall use the funds available to them from the Cash in their debtor-in-possession bank account and from the GlobalSantaFe Contribution to pay all holders of Allowed Unclassified Claims and Allowed Class 1, 2, and 3 Claims in accordance with the terms of the Plan.

24

## H. CONFIRMATION OF THE PLAN

To confirm the Plan, the Code requires that the Bankruptcy Court make a series of findings concerning the Plan and Debtors, the proponents of the Plan, including, *inter alia*, that: (i) the Plan classifies Claims in a permissible manner; (ii) the Plan complies with applicable provisions of the Code; (iii) the Debtors, as Plan Proponents, comply with applicable provisions of the Code; (iv) the Plan has been accepted by the requisite votes of holders of Claims (except to the extent that cramdown is available under section 1129(b) of the Bankruptcy Code); (v) the Plan has been proposed in good faith and not by any means forbidden by law; (vi) the disclosure required by section 1125 of the Code has been made; (vii) the Plan is feasible and confirmation will likely not be followed by the need for further financial reorganization of Debtors; (viii) the Plan is in the "best interests" of all holders of Claims in an Impaired Class by providing to such holders on account of their Claims property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain in a Chapter 7 liquidation, unless each holder of a Claim in such Class has accepted the Plan; and (ix) all fees and expenses payable under 28 U.S.C. § 1930 (fees owing to the bankruptcy clerk and the United States Trustee) have been paid or the Plan provides for their payment on the Effective Date.

Thus, even if Creditors accept the Plan by the requisite vote, the Bankruptcy Court must make independent findings with respect to, *inter alia*, whether approval of the Plan is in the best interests of Creditors and whether the Plan is fair and equitable to non-accepting Classes of Claims. Debtors submit that the Plan meets these criteria. In respect of the feasibility test imposed by section 1129(a)(11) of the Code, Debtors submit that it is inapplicable given that the Plan is a liquidating plan.

The Code maintains provisions for confirmation of the Plan even if the Plan is not accepted by all impaired classes, provided that the Plan is accepted by at least one (1) impaired Class of Claims. These "cramdown" provisions are set forth in section 1129(b)(1) of the Code. A Plan may be confirmed pursuant to the cramdown provisions if, in addition to satisfying other requirements of section 1129 of the Code, the Plan: (i) "does not discriminate unfairly"; and (ii) "is fair and equitable with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." As used by the Code, the phrases "discriminate unfairly" and "fair and equitable" have meanings unique to bankruptcy law.

The requirement that a plan "not discriminate unfairly" means that a dissenting class must be treated equally with respect to other classes of equal rank. The Plan Proponents submit that the Plan does not "discriminate unfairly" with respect to any class of Claims. The "fair and equitable" standard, also known as the "absolute priority rule," has different meanings with respect to Secured and Unsecured Claims. With respect to Secured Claims, for a Plan to be fair and equitable, the Plan may provide that the holder of such Claims retain the Liens securing those Claims to the extent of the Allowed amount of such Claims, and that such holder receive on account of such Claim deferred Cash payments totaling at least the Allowed amount of such Claim of a value, as of the Effective Date of the Plan, of at least the value of such holder's interest in the Estate's interest in such property. Alternatively, a Plan may provide for the realization by the holders of Secured Claims of the indubitable equivalent of such Claims

25

through Debtors' surrender of all of the collateral securing such Claim. Debtors believe that the treatment afforded to each Secured Creditor under the Plan meets the fair and equitable test.

With respect to a class of Unsecured Claims or Interests, a Plan can be fair and equitable if it provides that no holder of an Unsecured Claim or Interest that is junior to the Claims or Interest of such class will receive or retain under the Plan on account of such junior Claim or Interest property on account of such junior Claim or Interest. Debtors submit that the Plan meets the fair and equitable test with respect to Unsecured Claims and Interests. Because Class 6 (equity interests) is deemed to have rejected the Plan, Debtors intend to request Confirmation of the Plan pursuant to section 1129(b) of the Code.

**THE DEADLINE TO OBJECT TO CONFIRMATION OF THE PLAN IS _____, 2008. OBJECTIONS THAT ARE NOT TIMELY FILED AND SERVED MIGHT NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

## I. RISK FACTORS

Prior to voting on the Plan, each holder of a Claim entitled to vote should consider carefully the risk factors described below, as well as all of the information contained in this Disclosure Statement. These risk factors should not, however, be regarded as constituting the only risks involved in connection with the Plan and its implementation.

### A. Risk Factors Regarding Bankruptcy Cases

#### 1. <u>Allowance of Claims</u>

This Disclosure Statement has been prepared based on preliminary information concerning filed Claims and the Debtors' books and records. Upon completion of more-detailed analysis of filed Claims, the actual amount of Allowed Claims may differ from the Debtors' current estimates.

As noted in Section III.D.10 above, approximately 19 Claims were filed against the Debtors, many of which are contingent and unliquidated claims. The Debtors believe that they have valid objections to many of the Claims that have been filed and, thus, the ultimate allowed amount of such Claims will be significantly less than the asserted amounts. As a result, the ultimate amount of Allowed Claims in the cases could significantly exceed the Debtors' estimated in the development of the Plan.

#### 2. <u>Risk of Non-Confirmation of the Plan</u>

Even if all impaired Classes accept or could be deemed to have accepted the Plan, the Plan may not be confirmed by the Bankruptcy Court. Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation and requires, among other things: (a) that the Confirmation of the Plan not be followed by a need for further liquidation or reorganization; (b) that the value of distributions to dissenting holders not be less than the value of distributions to such holders if the Debtors were liquidated under chapter 7 of the Bankruptcy Code; and (c) that the Plan and the Debtors otherwise comply with the applicable provisions of the

26

Bankruptcy Code. Although the Debtors believe that the Plan will meet all applicable tests, there can be no assurance that the Bankruptcy Court will reach the same conclusion. *See* Section IV.H for additional information regarding the requirements for Confirmation. Additionally, thee is a risk that the Court will not approve the GSF Settlement, the approval of which is a condition precedent to confirmation.

### 3. Nonconsensual Confirmation

Pursuant to the "cramdown" provisions of section 1129 of the Bankruptcy Code, the Bankruptcy Court can confirm the Plan at the Debtors' request if at least one impaired Class has accepted the Plan (with such acceptance being determined without including the acceptance of any "insider" in such Class) and, as to each impaired Class that has not accepted the Plan, the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such impaired Class.

The Debtors reserve the right to modify the terms of the Plan as necessary for Confirmation without the acceptance of all impaired Classes. Such modification could result in less favorable treatment for any non-accepting Classes than the treatment currently provided for in the Plan.

### 4. Delays of Confirmation and/or Effective Date

Any delay in Confirmation and effectiveness of the Plan could result in, among other things, increased Administrative Claims. These or any other negative effects of delays in Confirmation or effectiveness of the Plan could endanger the ultimate approval of the Plan by the Bankruptcy Court.

### 5. Avoidance Actions

In accordance with section 1123(b) of the Bankruptcy Code, even after confirmation of the Plan, the Debtors will retain and may enforce any claims, demands, rights and causes of action that the Estates may have against any person or Entity. In pursuing any such claims, the Debtors will act in the best interest of the Estates. Accordingly, a holder of a Claim may be subject to one or more such claims brought by the Debtors, even if such holder voted in favor of the Plan.

### 6. Parties in Interest May Object to the Debtors' Classification of Claims

Section 1122 of the Bankruptcy Code provides that a chapter 11 plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class. The Debtors believe that the classification of Claims and Interests under the Plan complies with the requirements set forth in the Bankruptcy Code. Certain Holders of Claims may object to this classification.

SL1 819967v2/101674.00002

### 7. **The Debtors May Object to the Amount or Secured or Priority Status of a Claim**

The Debtors reserve the right to object to the amount or the secured or priority status of any Claim or Interest. The estimates set forth in this Disclosure Statement cannot be relied on by any Holder of Claims or Interest whose Claim or Interest is subject to an objection. Any such Holder of a Claim or Interest may not receive its specified share of the estimated distributions described in this Disclosure Statement.

### 8. **The Actual Allowed Amounts of Claims May Differ from the Estimated Claims and Adversely Affect the Percentage Recovery on Unsecured Claims**

The estimated Claims set forth in this Disclosure Statement are based on various assumptions. Should one or more of the underlying assumptions ultimately prove to be incorrect, the actual amounts of Allowed Claims may differ significantly from the estimated amount of Allowed Claims contained herein. As a result, such differences may materially and adversely affect the recovery to Holders of such Claims under the Plan.

## V. BEST INTERESTS OF CREDITORS – COMPARISON WITH CHAPTER 7 LIQUIDATION

Notwithstanding acceptance of the Plan by holders of Claims, in order to confirm the Plan, the Bankruptcy Court must independently determine that the Plan is in the best interests of all classes impaired by the Plan. In order to confirm the Plan, the Bankruptcy Court must find that the Plan provides to each Entity who rejects the Plan a recovery which has a value at least equal to the value of the distribution which each such Entity would receive if all of the Debtors' Assets were liquidated under Chapter 7 of the Code.

To calculate what Creditors would recover in a Chapter 7 liquidation, the Bankruptcy Court must first determine the aggregate dollar amount that would be generated from the Debtors' Assets if the case were converted to Chapter 7 and the Assets were liquidated by a trustee in bankruptcy. Upon liquidation, the potential distribution available to Creditors would be reduced by the costs of liquidation under Chapter 7, which costs would include the compensation of a trustee, all unpaid expenses incurred by the Debtors during their Chapter 11 Case (such as compensation of professionals), litigation costs, and Claims arising during the pendency of the Chapter 11 Cases and the Chapter 7 liquidation proceeding.

Attached to this Disclosure Statement as Exhibit "B" is a liquidation analysis which sets forth the anticipated proceeds from the disposition of the Debtors' Assets and the anticipated expenses and payments on account of Allowed Claims both under the Plan and in the event these Cases were converted to cases under Chapter 7 of the Code. Based on this analysis, Debtors believe that the distribution to Creditors under the Plan will be greater than such would be if these Cases were converted to cases under Chapter 7 of the Code.

28

## VI. EFFECT OF CONFIRMATION OF THE PLAN

In accordance with Section 1141 of the Bankruptcy Code, the provisions of the Plan, if confirmed, will bind Debtors, the Liquidating Trust, the holders of Claims and Interests and all other parties in interest with respect to the matters covered by the Plan. The Plan binds the holder of any Claim, whether or not the Claim is Impaired under the Plan, and whether or not the holder of such Claim has accepted the Plan.


Dated:  June 1, 2008                          15375 Memorial Corporation


                                              By:  */s/ David E. Faure*_____
                                              David E. Faure
                                              Vice President and Assistant Secretary



Dated:  June 1, 2008                          Santa Fe Minerals, Inc.


                                              By:  */s/ David E. Faure*_____
                                              David E. Faure
                                              Vice President and Assistant Secretary of
                                              15375 Memorial Corporation,
                                              sole shareholder of Santa Fe Minerals, Inc., a
                                              dissolved Wyoming Corporation

# EXHIBIT D

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| 15375 MEMORIAL CORPORATION, *et al.*, | : | Case No. 06-10859 (KG) |
| Debtors. | : | Jointly Administered |

**Hearing Date: June 27, 2008 @ 11:00 a.m.**
**Objection Deadline: June 20, 2008 by 4:00 p.m.**
**Related to Docket No. 352**

## NOTICE OF HEARING

PLEASE TAKE NOTICE that on June 2, 2008, Debtors filed their *Disclosure Statement for Debtors' First Amended Joint Plan of Liquidation* (the "Disclosure Statement") with the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801 (the "Bankruptcy Court").

PLEASE TAKE FURTHER NOTICE that objections to the Disclosure Statement must be made in writing, filed with the Clerk of the Bankruptcy Court, and served upon undersigned counsel on or before **4:00 p.m. on June 20, 2008** (the "Objection Deadline"). Only those objections that are timely filed, and are timely served and received, by the Objection Deadline will be considered by the Bankruptcy Court.

PLEASE TAKE FURTHER NOTICE that a hearing on the Disclosure Statement will be held on **June 27, 2008 at 11:00 a.m.**, before the Honorable Kevin Gross, United States Bankruptcy Judge for the District of Delaware.

Dated:  June 3, 2008

STEVENS & LEE, P.C.

/s/ John D. Demmy
John D. Demmy (Bar No. 2802)
1105 North Market Street, 7th Floor
Wilmington, DE  19801
Telephone: (302) 425-3308
Telecopier: (610) 371-8515
Emails: jdd@stevenslee.com

*Attorneys for the Debtors and debtors-in-Possession*

DATE FILED  6-3-08
DOCKET NO.  354

# EXHIBIT E

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>15375 MEMORIAL CORPORATION, *et al.*,<br><br>Debtors. | ) Chapter 11<br>)<br>) Case No. 06-10859 (KG)<br>)<br>) Jointly Administered<br>)<br>) **Hearing Date: June 27, 2008 at 11:00 a.m.**<br>) **Obj. Deadline: June 20, 2008 by 4:00 p.m.** |

**DEBTORS' MOTION FOR AN ORDER (I) APPROVING DISCLOSURE
STATEMENT, (II) ESTABLISHING CONFIRMATION RELATED NOTICE
PROCEDURES, (III) APPROVING SOLICITATION PACKAGES, AND
(IV) APPROVING FORMS OF BALLOTS AND PROCEDURES FOR
VOTING ON DEBTORS' FIRST AMENDED JOINT PLAN OF LIQUIDATION**

15375 Memorial Corporation ("Memorial") and Santa Fe Minerals, Inc. ("Santa Fe")
(collectively, "Debtors") hereby request, pursuant to sections 105, 1125, 1126 and 1128 of
Title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 3017, 3018 and 3020
of the Federal Rules of Bankruptcy Procedure (collectively, the "Bankruptcy Rules" and
singularly, a "Bankruptcy Rule") and Rule 3017-1 of the Local Rules of Bankruptcy Practice and
Procedure of the United States Bankruptcy Court for the District of Delaware (collectively, the
"Local Rules" and singularly, a "Local Rule"), entry of an order (i) approving the adequacy of
Debtors' *Disclosure Statement For Debtors' First Amended Joint Plan of Liquidation* (as it may
be amended from time to time, the "Disclosure Statement"), (ii) establishing notice procedures
for confirmation of *Debtors' First Amended Joint Plan of Liquidation* (as it may be amended
from time to time, the "Plan"), (iii) approving the Solicitation Packages (as defined below) and
procedures for distribution, and (iv) approving the forms of ballots and procedures for voting on
the Plan. In support hereof, Debtors respectfully represent as follows:

SL1 821216v2/000000.00000

DATE FILED 6-5-08

DOCKET NO. 356

## BACKGROUND

1.    On August 16, 2006 (the "Petition Date"), Debtors commenced these cases by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Debtors are debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed.[1]

2.    This Court has jurisdiction over these cases and this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief sought herein are sections 105, 1125 and 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3017, 3018 and 3020, and Local Rule 3017-1.

3.    No prior request has been made to this Court or any other court for the relief sought herein.

## THE PLAN AND DISCLOSURE STATEMENT

4.    On June 1, 2008, Debtors filed the Plan and Disclosure Statement relating thereto. In accordance with Bankruptcy Rule 3017(a) and Local Rule 3017-1(a), Debtors have obtained June 27, 2008, at 11:00 a.m. Eastern Standard Time from the Court as the date and time for a hearing on the Disclosure Statement (the "Disclosure Statement Hearing").

5.    Debtors are in a position to solicit votes on the Plan immediately upon approval of the Disclosure Statement and will seek confirmation of the Plan as soon as voting is concluded.

## RELIEF REQUESTED

A.    **Approval of the Disclosure Statement**

6.    Bankruptcy Rule 3017(b) provides for the Court to determine whether the Disclosure Statement should be approved as containing adequate information under and as

---

[1]    The United States Trustee did not appoint an Official Committee of Unsecured Creditors in these Chapter 11 cases.

SL1 821216v2/000000.00000

required by section 1125 of the Bankruptcy Code. Fed. R. Bank. P. 3017(b).[2]

7.      Debtors submit that the Disclosure Statement contains adequate information as required by section 1125 and should be approved by the Court.

**B.      Notice Procedures for Confirmation of the Plan**

8.      Bankruptcy Rule 3017(c) provides:

> On or before approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan and may fix a date for the hearing on confirmation.

Fed. R. Bankr. P. 3017(c). Bankruptcy Rule 2002(b) requires at least twenty-five (25) days' notice by mail to all creditors of the time set for filing objections to confirmation of a Chapter 11 plan and the hearing to consider a Chapter 11 plan.

9.      In accordance with Bankruptcy Rules 2002(b) and 3017(c), and in accordance with Debtors' proposed solicitation schedule outlined herein, Debtors request that a confirmation hearing (the "Confirmation Hearing") be scheduled, for a date and time consistent with Bankruptcy Rule 2002, at the hearing on the Disclosure Statement.

10.      Bankruptcy Rule 2002(b) and (d) require not less than twenty-five (25) days' notice to all creditors and equity security holders of the time fixed for filing objections and the hearing to consider confirmation of a Chapter 11 plan.   In accordance with Bankruptcy Rules 2002 and 3017(d), the Debtors propose to provide to all creditors and equity security holders, simultaneously with the distribution of the Solicitation Packages (as defined below), a copy of the notice substantially in the form annexed hereto as <u>Exhibit A</u> and incorporated herein by reference (the "Confirmation Hearing Notice"), setting forth (i) the Voting Deadline (as

---

[2]    In accordance with Bankruptcy Rule 3017(a), Debtors have served a copy of the Disclosure Statement and the Plan on the U.S. Trustee, the IRS, and the parties that have requested service pursuant to Bankruptcy Rule 2002.

defined below) for the submission of ballots to accept or reject the Plan (the "Ballots"), (ii) the time fixed for filing objections to confirmation of the Plan, and (iii) the time, date, and place for the Confirmation Hearing.

11.    As described above, Bankruptcy Rule 2002(l) permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice." Fed. R. Bankr. P. 2002(l).  In addition to mailing the Confirmation Hearing Notice, the Debtors propose to publish the Confirmation Hearing Notice, not less than twenty-five (25) days before the last date to object to confirmation of the Plan, in the national edition of The Wall Street Journal.  Debtors submit that publication of the Confirmation Hearing Notice will provide sufficient notice of the Voting Deadline, the time fixed for filing objections to confirmation of the Plan, and the time, date, and place of the Confirmation Hearing to persons or entities who do not otherwise receive notice by mail as provided for in the order approving this Motion.

12.    Debtors submit that the foregoing procedures will provide adequate notice of the Confirmation Hearing and, accordingly, request that the Court deem such notice adequate.

## C.    Approving Solicitation Packages and Procedures for Distribution

13.    Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders of claims and equity interests for the purpose of soliciting their votes and providing adequate notice of the hearing on confirmation of a plan of reorganization:

> Upon approval of a disclosure statement -- except to the extent that the court orders otherwise with respect to one or more unimpaired classes of creditors or equity security holders -- the debtor in possession, trustee, proponent of the plan, or clerk as the court orders, shall mail to all creditors and equity security holders, and in a chapter 11 reorganization case shall transmit to the United States trustee,
>
> (1)    the plan or a court-approved summary of the plan;
>
> (2)    the disclosure statement approved by the court;

4

(3)    notice of the time within which acceptances and rejections of such plan may be filed; and

(4)    any other information as the court may direct, including any court opinion approving the disclosure statement or a court-approved summary of the opinion.

In addition, notice of the time fixed for filing objections and the hearing on confirmation shall be mailed to all creditors and equity security holders in accordance with Rule 2002(b), and a form of ballot conforming to the appropriate Official Form shall be mailed to creditors and equity security holders entitled to vote on the plan.

Fed. R. Bankr. P. 3017(d).

14.    After the Court has approved the Disclosure Statement, Debtors propose to mail packages (the "Solicitation Packages") containing copies of (i) the Order (without exhibits) approving this Motion, (ii) the Disclosure Statement, (iii) the Confirmation Hearing Notice, and (iv) the Plan. Except as set forth below, the Solicitation Packages will be mailed no later than ten (10) days after the approval of the Disclosure Statement (the "Solicitation Date") to (i) the U.S. Trustee, (ii) each person or entity that filed a proof of claim on or before the date of the Disclosure Statement Hearing, (iii) each person or entity listed in the Schedules as holding a liquidated, noncontingent and undisputed claim, in an amount greater than zero, except if such claim was paid pursuant to, or expunged by, a prior order of the Court, (iv) all other parties in interest that have filed a request for notice pursuant to Bankruptcy Rule 2002 in the Debtors' Chapter 11 cases, (v) the IRS, and (vi) any other known holders of claims against or equity interests in the Debtors.

15.    In addition, Debtors propose to provide certain additional solicitation materials to be included in the Solicitation Packages. Specifically, holders of claims in classes entitled to vote to accept or reject the Plan each will receive a Ballot and a return envelope. Consistent with sections 1126(f) and (g) of the Bankruptcy Code and Bankruptcy Rule 3017(d), Solicitation

Packages for holders of claims against or interests in any Debtor placed within a class under the Plan that is deemed to accept or reject the Plan under section 1126(f) or (g) of the Bankruptcy Code will not include a Ballot. Instead, the Solicitation Packages for such holders of claims and interests will include a Notice of Non-Voting Status-Unimpaired (defined below). In addition, Debtors request that the Court determine that they are not required to distribute copies of the Plan and Disclosure Statement to any holder of an unimpaired claim, unless such party makes a specific request in writing to Debtors' counsel.

16.     Debtors anticipate that some Disclosure Statement Notices may be returned by the United States Postal Service as undeliverable. Debtors believe that it would be costly and wasteful to mail Solicitation Packages to the same addresses to which undeliverable notices of the Bar Date or Disclosure Statement Notices were mailed. Moreover, as set forth above, Debtors intend to publish the Confirmation Hearing Notice in The Wall Street Journal. Therefore, Debtors seek the Court's approval for a departure from the strict notice rule, excusing Debtors from mailing Solicitation Packages to those entities listed at such insufficient addresses unless Debtors are provided with accurate information for such entities before the Solicitation Date.

17.     Debtors submit that they have shown good cause for implementing the proposed notice and service procedures.

**D.     Forms of Ballots and Establishing Procedures for Voting on the Plan**

18.     Bankruptcy Rule 3017(d) requires Debtors to mail a form of ballot, which substantially conforms to Official Form No. 14, only to "creditors and equity security holders entitled to vote on the plan." Fed. R. Bankr. P. 3017(d). Debtors propose to distribute to certain creditors, as described below, one Ballot and corresponding instructions substantially in the

6

forms annexed hereto as <u>Exhibits B-1</u>, <u>B-2</u>, and <u>B-3</u> and incorporated herein by reference.  The forms of Ballots are based on Official Form No. 14, but have been modified to address these cases and to include certain additional information that Debtors believe to be relevant and appropriate for each such class of claims or interests.  The appropriate Ballot will be distributed to holders of claims in Classes 3, 4 and 6, which classes are entitled to vote to accept or reject the Plan.

19.    Claims and Interests in Classes 1, 2, 5, and 7 are unimpaired and, therefore, such classes are conclusively presumed to accept the Plan.  Debtors therefore propose that Ballots not be sent to holders of claims and interests in Classes 1, 2, 5, and 7.

20.    Bankruptcy Rule 3017(d) provides, in relevant part, as follows:

> If the court orders that the disclosure statement and the plan or a summary of the plan shall not be mailed to any unimpaired class, notice that the class is designated in the plan as unimpaired and notice of the name and address of the person from whom the plan or summary of the plan and disclosure statement may be obtained upon request and at the plan proponent's expense, shall be mailed to members of the unimpaired class together with the notice of the time fixed for filing objections to and the hearing on confirmation.

Fed. R. Bankr. P. 3017(d).

21.    Accordingly, Debtors propose to send to holders of unimpaired claims and interests in Classes 1, 2, 5, and 7 a notice of non-voting status, substantially in the form attached hereto as <u>Exhibit C</u> (the "Notice of Non-Voting Status-Unimpaired"), which identifies the class designated as unimpaired and sets forth the manner in which a copy of the Plan and Disclosure Statement may be obtained.  Debtors submit that such notice satisfies the requirements of Bankruptcy Rule 3017(d).  Debtors also request that the Court determine that they are not required to distribute copies of the Plan and Disclosure Statement to any holder of an unimpaired claim, unless such party makes a specific request in writing for the same.

7

22.     Bankruptcy Rule 3017(c) provides that, on or before approval of a disclosure statement, the court shall fix a time within which the holders of claims or equity security interests may accept or reject a plan.  Debtors anticipate commencing the solicitation period within ten (10) days after the entry of an order approving the Disclosure Statement.  Based on such schedule, Debtors propose that, to be counted as a vote to accept or reject the Plan, each Ballot must be properly executed, completed, and delivered to counsel to the Debtors (i) by first-class mail, in the return envelope provided with each Ballot, (ii) by overnight courier, or (iii) by personal delivery so that it is received by Debtors' counsel no later than 4:00 p.m. Eastern Standard Time on the date set by the Court at the Disclosure Statement Hearing as the voting deadline (the "Voting Deadline").  This solicitation period should be a sufficient period within which creditors can make an informed decision to accept or reject the Plan.

23.     Section 1126(c) of the Bankruptcy Code provides:

> A class of claims has accepted a plan if such plan has been
> accepted by creditors, other than any entity designated under
> subsection (e) of this section, that hold at least two-thirds in
> amount and more than one-half in number of the allowed claims of
> such class held by creditors, other than any entity designated under
> subsection (e) of this section, that have accepted or rejected such
> plan.

11 U.S.C. § 1126(c).  Further, Bankruptcy Rule 3018(a) provides that the "court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan." Fed. R. Bankr. P. 3018(a).

24.     Solely for purposes of voting to accept or reject the Plan and not for the purpose of the allowance of, or distribution on account of, a Claim, and without prejudice to the rights of the Debtors in any other context, the Debtors propose that each Claim within a class or subclass of claims entitled to vote to accept or reject the Plan be temporarily allowed in an amount equal to the amount of such Claim as set forth in a timely filed proof of claim (with such timely filed

8

proof of claim superseding any scheduled amount for such creditor) or, if no proof of claim was filed, the amount of such Claim as set forth in the Schedules. The foregoing general procedure will be subject to the following exceptions:

(a) If a Claim is deemed allowed in accordance with the Plan, such Claim is allowed for voting purposes in the deemed allowed amount set forth in the Plan;

(b) If a Claim for which a proof of claim has been timely filed is marked as contingent or unliquidated, or if such Claim is in fact contingent or unliquidated, such Claim is temporarily allowed for voting purposes only, and not for purposes of allowance or distribution, at $1.00;

(c) If a Claim has been estimated or otherwise allowed for voting purposes by order of the Court, such claim is temporarily allowed in the amount so estimated or allowed by the Court for voting purposes only, and not for purposes of allowance or distribution;

(d) If a Claim is listed in the Schedules as contingent, or disputed, or scheduled in the amount of zero or undetermined, and a proof of claim was not (i) filed by the applicable Bar Date or (ii) deemed timely filed by an order of the Court prior to the Voting Deadline, the Debtors propose that such Claim be disallowed for purposes of receiving notices regarding the Plan or voting on the Plan;

(e) If Debtors have served an objection to a Claim at least fifteen (15) days before the Voting Deadline, Debtors propose that such claim be temporarily disallowed for voting purposes only and not for purposes of allowance or distribution, unless the claimant files a motion to temporarily allow the Claim or Interest for voting purposes pursuant to Bankruptcy Rule 3018(a) in accordance with the deadline proposed in paragraph 25, below; and

(f) Due to the Substantive Consolidation of Debtors pursuant to the Plan, for voting purposes only, each proof of claim filed against any Debtor shall be deemed filed against the consolidated Debtors and shall be deemed a single obligation of the consolidated Debtors.

9

25.    Debtors believe that the foregoing proposed procedures provide for a fair and equitable voting process.  If any creditor seeks to challenge the allowance or disallowance of its Claim for voting purposes in accordance with the above procedures, Debtors request that the Court direct such creditor to serve on the Debtors and file with the Court (with a copy to chambers) a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such claim in a different amount for purposes of voting to accept or reject the Plan on or before the tenth (10th) day after the later of (i) service of the Confirmation Hearing Notice and (ii) service of notice of an objection, if any, to such claim.  Debtors further propose, in accordance with Bankruptcy Rule 3018, that as to any creditor filing such a motion, such creditor's Ballot should not be counted unless temporarily allowed by the Court for voting purposes, after notice and a hearing.

26.    Debtors request (i) if no votes to accept or reject the Plan are received with respect to a particular class, that such class be deemed to have voted to accept the Plan; (ii) if a creditor casts more than one Ballot voting the same claim before the Voting Deadline, the last Ballot received before the Voting Deadline be deemed to reflect the voter's intent and thus to supersede any prior Ballots; (iii) if a creditor submits a Ballot that is properly completed, executed, and timely returned to Debtors' counsel, but does not indicate an acceptance or rejection of the Plan, or that indicates both an acceptance and rejection of the Plan, such creditor shall be deemed to have voted to accept the Plan; and (iv) creditors must vote all of their claim(s) within a particular class under the Plan, whether or not such claims are asserted against the same or multiple Debtors, either to accept or reject the Plan and may not split their vote(s), and thus a Ballot that partially rejects and partially accepts the Plan and allocates portions of the claim in such manner will not be counted.

10

27.    Debtors further propose that the following Ballots not be counted or considered for any purpose in determining whether the Plan has been accepted or rejected: (i) any Ballot received after the Voting Deadline unless Debtors shall have granted in writing an extension of the Voting Deadline with respect to such Ballot; (ii) any Ballot that is illegible or contains insufficient information to permit the identification of the claimant or interest holder; (iii) any Ballot cast by a person or entity that does not hold a claim in a class that is entitled to vote to accept or reject the Plan; (iv) any Ballot cast for a claim scheduled as unliquidated, contingent, or disputed for which no proof of claim was timely filed or deemed timely filed; (v) any Ballot without an original signature; and (vi) any Ballot transmitted to counsel to the Debtors by facsimile.

## NOTICE

28.    Notice of this Motion has been given to (i) the U.S. Trustee, (ii) the IRS, and (ii) all entities that have filed a notice of appearance and request for service in these cases pursuant to Bankruptcy Rule 2002.

WHEREFORE, the Debtors respectfully request entry of an order, substantially in the form annexed hereto as Exhibit D, granting the relief sought herein and such other and further relief as the Court may deem just and proper.

Dated: June 5, 2008
      Wilmington, Delaware

Respectfully submitted,

STEVENS & LEE, P.C.

_/s/ John D. Demmy_
John D. Demmy (Bar No. 2802)
1105 North Market Street, 7th Floor
Wilmington, DE 19801
Telephone: (302) 425-3308
Telecopier: (610) 371-8515
Email: jdd@stevenslee.com

11

-and-

John C. Kilgannon
1818 Market Street, 29th Floor
Philadelphia, PA 19103
Telephone:  (215) 751-1943
Facsimile:  (610) 371-7954
Email: jck@stevenslee.com

SL1 821216v2/000000.00000

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 06-10859 (KG) |
| 15375 MEMORIAL CORPORATION, *et al.*, | |
| | Jointly Administered |
| Debtors. | |
| | **Hearing Date: June 27, 2008 at 11:00 a.m.** |
| | **Obj. Deadline: June 20, 2008 by 4:00 p.m.** |

## NOTICE OF HEARING

PLEASE TAKE NOTICE, that on June 5, 2008, Debtors 15375 Memorial Corporation ("Memorial") and Santa Fe Minerals, Inc. ("Santa Fe") (collectively, "Debtors") filed with the Court Debtors' Motion For An Order (I) Approving Disclosure Statement, (II) Establishing Confirmation Related Notice Procedures, (III) Approving Solicitation Packages, and (IV) Approving Forms of Ballots and Procedures for Voting on Debtors' First Amended Joint Plan of Liquidation (the "Motion").

**PLEASE TAKE NOTICE** that any responses or objections to the Motion must be in writing, filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), 5th Floor, 824 Market Street, Wilmington, Delaware 19801, and served upon and received by the undersigned counsel on or before **June 20, 2008 by 4:00 p.m. (Eastern Time).**

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion will be held on **June 27, 2008 at 11:00 a.m. (Eastern Time)** before the Honorable Kevin Gross at the United States Bankruptcy Court for the District of Delaware, 6th Floor, 824 Market Street, Wilmington, Delaware 19801.  Only parties who have filed a timely objection will be heard at the hearing.

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF DEMANDED BY THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

Dated: June 5, 2008
      Wilmington, Delaware

           STEVENS & LEE, P.C.

           /s/ John D. Demmy
           John D. Demmy (Bar No. 2802)
           1105 North Market Street, 7th Floor
           Wilmington, DE  19801
           Telephone: (302) 425-3308
           Telecopier: (610) 371-8515
           Email: jdd@stevenslee.com

           -and-

John C. Kilgannon
1818 Market Street, 29th Floor
Philadelphia, PA 19103
Telephone:  (215) 751-1943
Facsimile:  (610) 371-7954
Email: jck@stevenslee.com

2

# EXHIBIT A

**EXHIBIT A**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | ) | Chapter 11 |
| In re: | ) | |
| | ) | |
| 15375 MEMORIAL CORPORATION, et al., | ) | Case No. 06-10859 (KG) |
| | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | |
| | ) | |

## NOTICE OF CONFIRMATION HEARING ON DEBTORS' FIRST AMENDED JOINT PLAN OF LIQUIDATION

PLEASE TAKE NOTICE that:

1. By Order dated _____, 2008 (the "Order"), the United States Bankruptcy Court for the District of Delaware (the "Court") approved the Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code for Debtors' First Amended Joint Plan of Liquidation (as the same may be amended, the "Disclosure Statement"), dated June 1, 2008, filed by 15375 Memorial Corporation ("Memorial") and Santa Fe Minerals, Inc. ("Santa Fe") (collectively, "Debtors") and directed the Debtors to solicit votes with regard to the acceptance or rejection of the Debtors' First Amended Joint Plan of Liquidation, dated June 1, 2008 (as the same may be amended, the "Plan"), annexed as Exhibit A thereto. Capitalized terms used herein but not defined herein have the meanings ascribed to such terms in the Order.

2. A hearing (the "Confirmation Hearing") to consider the confirmation of the Plan will be held at _____ a.m. Eastern Standard Time on _____ 2008, before the Honorable Kevin Gross, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 2nd Floor, Courtroom #2B, Wilmington, Delaware 19801. The Confirmation Hearing may be continued from time to time without further notice other than the announcement by the Debtors of the adjourned date(s) at the Confirmation Hearing or any continued hearing, and the Plan may be modified, if necessary, pursuant to 11 U.S.C. §1127 prior to, during, or as a result of the Confirmation Hearing, without further notice to interested parties.

3. If you hold a Claim against one of the Debtors in Classes 3, 4, and 6, you are entitled to vote to accept or reject the Plan, and you have therefore received with this Notice a Ballot form and voting instructions appropriate for your Claim(s). In order for your vote to accept or reject the Plan to be counted, you must complete

all required information on the Ballot, execute the Ballot, and return the completed Ballot to Stevens & Lee, P.C. ("S&L") at the address indicated on the Ballot so as to be received by S&L by 4:00 p.m. Eastern Standard Time on _____ 2008. Any failure to follow the voting instructions included with the Ballot may disqualify your Ballot and your vote.

4. Holders of unimpaired Claims and Interests under the Plan are not eligible to vote on the Plan, and therefore, will receive a Notice of Non-Voting Status- Unimpaired rather than a Ballot in their Solicitation Packages.

5. Any Claim that is listed in the Schedules at zero or in an unknown amount or as contingent, unliquidated, or disputed and a proof of claim was not (i) filed by the applicable Bar Date for the filing of proofs or claim established by the Court or (ii) deemed timely filed by an order of the Court prior to the Voting Deadline, unless the Debtors have consented in writing, shall be disallowed for voting purposes.

6. Any Claim marked as contingent or unliquidated, or if such Claim is in fact contingent or unliquidated, shall be temporarily allowed for voting purposes at only $1.

7. Claims that are the subject of an objection are not entitled to vote on the Plan and, therefore, did not receive a Ballot in their Solicitation Packages. If you disagree with Debtors' classification of, or objection to, your Claim and believe that you should be entitled to vote on the Plan, and have timely filed a proof of claim by the applicable Bar Date, you must serve on Debtors and file with the Court (along with a copy to chambers) a motion for an order pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure (a "Rule 3018(a) Motion") temporarily allowing such Claim in a different amount or in a different class for purposes of voting to accept or reject the Plan. All Rule 3018(a) Motions must be filed on or before the tenth (10th) day after the later of (i) service of the Confirmation Hearing Notice (i.e. this notice) and (ii) service of notice of an objection, if any, to such Claim. In accordance with Bankruptcy Rule 3018, as to any creditor filing a Rule 3018(a) Motion, such creditor's Ballot will not be counted unless temporarily allowed by the Court for voting purposes, after notice and a hearing. Creditors must contact S&L, the Debtors' voting agent, at the address set forth below to receive a Ballot for any Claim for which a timely proof of claim and a Rule 3018(a) Motion have been filed. Rule 3018(a) Motions that are not timely filed and served in the manner set forth above shall not be considered.

8. Objections, if any, to the confirmation of the Plan must (i) be in writing, (ii) state the name and address of the objecting party and the nature of the Claim or Interest of such party, (iii) state with particularity the basis and nature of any objection or response and include, where appropriate, proposed language to be inserted in the Plan to resolve any such objection or response, and (iv) be filed, together with proof of service, with the Court and served **SO THAT THEY ARE RECEIVED NO LATER THAN 4:00 P.M. EASTERN STANDARD TIME ON**

2

_____, 2008 BY: (a) Clerk of the Court, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801; (b) counsel to the Debtors, Stevens & Lee, P.C. 1105 N. Market Street, 7th Floor, Wilmington, DE. 19801, Attn:  John D. Demmy, Esq.; and (c) the Office of United States Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801, Attn: David L. Buchbinder, Esq. **OBJECTIONS NOT TIMELY FILED AND SERVED IN THE MANNER SET FORTH ABOVE SHALL NOT BE CONSIDERED AND SHALL BE OVERRULED.**

9. The terms of the Plan will be binding on all holders of claims against, and all present and former holders of equity security interests in, Debtors once the Plan has been confirmed by the Bankruptcy Court.

10. The Ballots provide for holders of Class 3 Claims, Class 4 Claims and Class 6 Claims to indicate their consent to certain releases.  Each holder of a Class 3 Claim, Class 4 Claim, and Class 6 Claim will be deemed to have consented to the releases provided in Section 8 of the Plan unless that holder checks the box on its Ballot indicating rejection of such proposed releases.

11. Any party in interest wishing to obtain information about the solicitation procedures shall submit a request to S&L at 1105 N. Market Street, 7th Floor, Wilmington, DE. 19801, Attn: John D. Demmy, Esq.

12. Any party in interest wishing to obtain copies of the Disclosure Statement, the Plan, or the Plan Supplement (to be filed prior to the Confirmation Hearing) may obtain them at the address listed in Paragraph 11, above.

Dated: Wilmington, Delaware
_____, 2008

STEVENS & LEE, P.C.

# EXHIBIT B-1

EXHIBIT B-1

<u>**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE COURT.**</u>

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE  .

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| 15375 MEMORIAL CORPORATION, et al. , | ) Case No. 06-10859 (KG) |
|  | ) Jointly Administered |
| Debtors. | ) |
|  | ) |

BALLOT FOR ACCEPTING OR REJECTING
PLAN OF REORGANIZATION OF 15375 MEMORIAL CORPORATION AND
SANTA FE MINERALS, INC.
Class 3 (General Unsecured Claim)

**THE BALLOT DEADLINE IS_____ 2008 AT 4:00 P.M., EASTERN STANDARD TIME. YOUR BALLOT MUST BE RECEIVED BY THE BALLOTING AGENT BY THE BALLOT DEADLINE, OR THE VOTES REPRESENTED BY YOUR BALLOT WILL NOT BE COUNTED.**

15375 Memorial Corporation ("Memorial") and Santa Fe Minerals, Inc. ("Santa Fe") (collectively, the "<u>Debtors</u>"), in the above-captioned Chapter 11 cases pending before the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>"), submit this Ballot for Class 3 (General Unsecured Claims) Claims to you to solicit your vote to accept or reject the Debtors' First Amended Joint Plan of Liquidation, dated June 1, 2008 (as amended, the "<u>Plan</u>"), described in the accompanying Disclosure Statement, dated June 1, 2008 (with all of its attendant exhibits, the "<u>Disclosure Statement</u>").

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of claims in each class voting on the Plan. If the requisite acceptances are not obtained, the Bankruptcy Court may nevertheless confirm the Plan if the Bankruptcy Court finds that the Plan accords fair and equitable treatment to the class or classes rejecting it and otherwise satisfies the requirements of 11 U.S.C. § 1129(b). To have your vote count, you must complete and return this Ballot.

PLEASE READ AND FOLLOW THE ATTACHED INSTRUCTIONS CAREFULLY. COMPLETE, SIGN AND DATE THIS BALLOT AND RETURN IT IN THE ENCLOSED POSTAGE-PAID ENVELOPE TO ENSURE THAT THE BALLOT IS RECEIVED BY 4:00 P.M., EASTERN STANDARD TIME, ON _____, 2008 BY STEVENS & LEE, P.C. ("<u>S&L</u>"), AS BALLOTING AGENT, AT THE FOLLOWING ADDRESS:

STEVENS & LEE, P. C.
Re: 15375 Memorial Corporation and Santa Fe Minerals, Inc.
1105 N. Market Street, 7th Floor
Wilmington, DE 19801

<u>DO NOT FAX YOUR BALLOT TO S&L. FAXED BALLOTS WILL NOT BE COUNTED ONLY BALLOTS WITH AN ORIGINAL SIGNATURE WILL BE COUNTED.</u> Copies of Ballots are permitted provided they contain original signatures. Creditors voting should endeavor to send original Ballots.

PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS
BEFORE COMPLETING THIS BALLOT.

**PLEASE COMPLETE ITEMS 1, 2 and 3. THIS BALLOT WILL NOT BE VALID OR COUNTED AS HAVING BEEN CAST IF THIS BALLOT IS NOT SIGNED ON THE APPROPRIATE LINES BELOW. IF NEITHER THE "ACCEPT" NOR THE "REJECT" BOX IS CHECKED IN ITEM 1, THIS BALLOT WILL BE DEEMED TO BE A VOTE IN FAVOR OF THE PLAN.**

**Item 1. Class Vote.** The undersigned, a Holder of Class 3 (General Unsecured Claims) Claims(s) against one or more of the Debtors in the amount set forth below, votes to (check one box):

ACCEPT the Plan                                                                      REJECT the Plan

Claimant_____                              Claim Amount: $_____

**Item 2. Releases.** Check this box only if you <u>DO NOT</u> wish to grant the releases described in Section 8 of the Plan.☐

**Item 3. Certifications.** By signing this Ballot, the undersigned certifies:

       (a) that on this date, that he/she/it was the holder of the Class 3 Claim(s) identified in Item 1;

       (b) that no other Ballots cast with respect to the amount of the Class 3 Claim(s) identified in Item 1 have been cast with respect to such Class 3 Claim(s), or that any such previously cast Ballots are hereby revoked;

       (c) that a copy of the Disclosure Statement relating to the Plan has been provided to and reviewed by the undersigned;

       (d) that as the holder of the amount of Class 3 Claim(s) set forth in Item 1, the undersigned has full power and authority to vote to accept or reject the Plan. The undersigned also acknowledges that this solicitation is subject to all the terms and conditions set forth in the Disclosure Statement relating to the Plan; and

       (e) the undersigned has reviewed the Order (I) Approving Disclosure Statement, (II) Establishing Confirmation Related Notice Procedures, (III) Approving Solicitation Packages, and (IV) Approving Forms of Ballots and Procedures for Voting on Debtors' First Amended Joint Plan of Liquidation provided herewith.

Name of Claimant (and any joint claimants)     _____

Social Security (last four digits) or Federal
Tax I.D. No.:                                                      _____

Signature:                                                         _____

Name and Title (if by Authorized Agent):         _____
Street Address:                                                  _____
City, State & Zip Code:                                      _____
Telephone Number:                                           _____
Date Completed:                                               _____

If the above address is different than the address provided on the proof of claim you submitted, unless otherwise requested, your mailing address will be updated with respect to your proof of claim.

**PLEASE CONFIRM THAT YOU HAVE PROVIDED ALL INFORMATION REQUESTED BY THIS BALLOT.**

> **IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, OR IF YOU NEED ADDITIONAL COPIES OF THE BALLOT OR THE OTHER ENCLOSED MATERIALS, PLEASE CALL DEBTOR'S COUNSEL AT (302-654-5180).**

SL1 821216v2/000000.00000

## INSTRUCTIONS FOR COMPLETING THE BALLOT

(1) In the box provided in Item 1 of the Ballot, please indicate acceptance or rejection of the Plan. Complete the Ballot by providing all information requested and sign, date and return the Ballot by mail, overnight courier or personal delivery to S&L at the following address:

<div align="center">

STEVENS & LEE, P.C.
Re:  15375 Memorial Corporation and Santa Fe Minerals, Inc.
1105 N. Market Street, 7th Floor
Wilmington, DE 19801

</div>

Ballots must be *received* by S&L by 4:00 p.m. (Eastern Standard Time) on _____, 2008 (the "<u>Ballot Deadline</u>"). If a Ballot is received after the Ballot Deadline, it will not be counted. An envelope addressed to S&L is enclosed for your convenience. *Ballots submitted by facsimile will not be accepted.*

(2) You must vote all of your claims within a single class either to accept or reject the Plan. Accordingly, if you return more than one Ballot voting different claims within a single class and the Ballots are not voted in the same manner, those Ballots will not be counted. An otherwise properly executed Ballot that attempts to partially reject the Plan likewise will not be counted.

(3) The Ballot does not constitute and will not be deemed a proof of claim or an assertion of a claim or interest.

(4) If you cast more than one Ballot voting the same claim prior to the Ballot Deadline, the last Ballot received by the Balloting Agent before the Ballot Deadline will supersede all prior Ballots.

(5) See the Order (I) Approving Disclosure Statement, (II) Establishing Confirmation Related Notice Procedures, (III) Approving Solicitation Packages, and (IV) Approving Forms of Ballots and Procedures for Voting on Debtors' First Amended Joint Plan of Liquidation for the complete voting tabulation procedures.

<div align="center">

## PLEASE MAIL YOUR BALLOT PROMPTLY

## IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CALL STEVENS &LEE, P.C. AT (302) 654-5180.

</div>

SL1 821216v2/000000.00000

# EXHIBIT B-2

EXHIBIT B-2

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE COURT.**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| 15375 MEMORIAL CORPORATION, et al., | ) | Case No. 06-10859 (KG) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

**BALLOT FOR ACCEPTING OR REJECTING**
**PLAN OF REORGANIZATION OF 15375 MEMORIAL CORPORATION AND SANTA FE MINERALS, INC.**
Class 4 (Sinz/Troia Claims)

THE BALLOT DEADLINE IS _____, 2008 AT 4:00 P.M., EASTERN STANDARD TIME. YOUR BALLOT MUST BE RECEIVED BY THE BALLOTING AGENT BY THE BALLOT DEADLINE, OR THE VOTES REPRESENTED BY YOUR BALLOT WILL NOT BE COUNTED.

15375 Memorial Corporation ("Memorial") and Santa Fe Minerals, Inc. ("Santa Fe") (collectively, the "Debtors"), in the above-captioned Chapter 11 cases pending before the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), submit this Ballot for Class 4 (Sinz/Troia Claims) Claims to you to solicit your vote to accept or reject the Debtors' First Amended Joint Plan of Liquidation, dated June 1, 2008 (as amended, the "Plan"), described in the accompanying Disclosure Statement, dated June 1, 2008 (with all of its attendant exhibits, the "Disclosure Statement").

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of claims in each class voting on the Plan. If the requisite acceptances are not obtained, the Bankruptcy Court may nevertheless confirm the Plan if the Bankruptcy Court finds that the Plan accords fair and equitable treatment to the class or classes rejecting it and otherwise satisfies the requirements of 11 U.S.C. § 1129(b). To have your vote count, you must complete and return this Ballot.

PLEASE READ AND FOLLOW THE ATTACHED INSTRUCTIONS CAREFULLY. COMPLETE, SIGN AND DATE THIS BALLOT AND RETURN IT IN THE ENCLOSED POSTAGE-PAID ENVELOPE TO ENSURE THAT THE BALLOT IS RECEIVED BY 4:00 P.M., EASTERN STANDARD TIME, ON _____, 2008 BY STEVENS & LEE, P.C. ("S&L"), AS BALLOTING AGENT, AT THE FOLLOWING ADDRESS:

STEVENS & LEE, P.C.
Re:  15375 Memorial Corporation and Santa Fe Minerals, Inc.
1105 N. Market Street, 7th Floor
Wilmington, DE 19801

**DO NOT FAX YOUR BALLOT TO S&L. FAXED BALLOTS WILL NOT BE COUNTED ONLY BALLOTS WITH AN ORIGINAL SIGNATURE WILL BE COUNTED.** Copies of Ballots are permitted provided they contain original signatures. Creditors voting should endeavor to send original ballots.

**PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

PLEASE COMPLETE ITEMS 1, 2, 3 and 4. THIS BALLOT WILL NOT BE VALID OR COUNTED AS HAVING BEEN CAST IF THIS BALLOT IS NOT SIGNED ON THE APPROPRIATE LINES BELOW. IF NEITHER THE "ACCEPT" NOR THE "REJECT" BOX IS CHECKED IN ITEM 1, THIS BALLOT WILL BE DEEMED TO BE A VOTE IN FAVOR OF THE PLAN.

**Item 1.  Class Vote.**  The undersigned, a Holder of Class 4 (Sinz/Troia Claims) Claims(s) against one or more of the Debtors in the amount set forth below, votes to (check one box):

ACCEPT the Plan                                          REJECT the Plan

Claimant_____                Claim Amount: $_____

**Item 2.  Releases.**  Check this box only if you DO NOT wish to grant the releases described in Section 8 of the Plan. ☐

**Item 3.  Certifications.**  By signing this Ballot, the undersigned certifies:

(a)  that on this date, he/she/it was the holder of the Class 4 Claim(s) identified in Item 1;

(b)  that no other Ballots cast with respect to the amount of the Class 4 Claim(s) identified in Item 1 have been cast with respect to such Class 4 Claim(s), or that any such previously cast ballots are hereby revoked;

(c)  that a copy of the Disclosure Statement relating to the Plan has been provided to and reviewed by the undersigned;

(d)  that as the holder of the amount of Class 4 Claim(s) set forth in Item 1, the undersigned has full power and authority to vote to accept or reject the Plan. The undersigned also acknowledges that this solicitation is subject to all the terms and conditions set forth in the Disclosure Statement relating to the Plan; and

(e)  the undersigned has reviewed the Order (I) Approving Disclosure Statement, (II) Establishing Confirmation Related Notice Procedures, (III) Approving Solicitation Packages, and (IV) Approving Forms of Ballots and Procedures for Voting on Debtors' First Amended Joint Plan of Liquidation

| | |
|---|---|
| Name of Claimant (and any joint claimants) | _____ |
| Social Security (last four digits) or Federal Tax I.D. No.: | _____ |
| Signature: | _____ |
| Name and Title (if by Authorized Agent): | _____ |
| Street Address: | _____ |
| City, State & Zip Code: | _____ |
| Telephone Number: | _____ |
| Date Completed: | _____ |

If the above address is different than the address provided on the proof of claim you submitted, unless otherwise requested, your mailing address will be updated for all future communications from the Debtors.

**PLEASE CONFIRM THAT YOU HAVE PROVIDED ALL INFORMATION REQUESTED BY THIS BALLOT.**

---

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, OR IF YOU NEED ADDITIONAL COPIES OF THE BALLOT OR THE OTHER ENCLOSED MATERIALS, PLEASE CALL DEBTOR'S COUNSEL AT (302) 654-5180.**

---

SL1 821216v2/000000.00000

## INSTRUCTIONS FOR COMPLETING THE BALLOT

(1) In the box provided in Item 1 of the Ballot, please indicate acceptance or rejection of the Plan. Complete the Ballot by providing all information requested and sign, date and return the Ballot by mail, overnight courier or personal delivery to S&L at the following address:

<div align="center">

STEVENS & LEE, P.C.

Re: 15375 Memorial Corporation and Santa Fe Minerals, Inc.

1105 N. Market Street, 7th Floor

Wilmington, DE 19801

</div>

Ballots must be *received* by S&L by 4:00 p.m. (Eastern Standard Time) on _____, 2008 (the "Ballot Deadline"). If a Ballot is received after the Ballot Deadline, it will not be counted. An envelope addressed to S&L is enclosed for your convenience. *Ballots submitted by facsimile will not be accepted.*

(2) You must vote all of your claims within a single class either to accept or reject the Plan. Accordingly, if you return more than one Ballot voting different claims within a single class and the Ballots are not voted in the same manner, those Ballots will not be counted. An otherwise properly executed Ballot that attempts to partially reject the Plan likewise will not be counted.

(3) The Ballot does not constitute and will not be deemed a proof of claim or an assertion of a claim or interest.

(4) If you cast more than one Ballot voting the same claim prior to the Ballot Deadline, the last Ballot received by S&L before the Ballot Deadline will supersede all prior Ballots.

(5) See the Order (I) Approving Disclosure Statement, (II) Establishing Confirmation Related Notice Procedures, (III) Approving Solicitation Packages, and (IV) Approving Forms of Ballots and Procedures for Voting on Debtors' First Amended Joint Plan of Liquidation for the complete voting tabulation procedures.

<div align="center">

### PLEASE MAIL YOUR BALLOT PROMPTLY

</div>

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CALL STEVENS & LEE, P.C. AT 302-654-5180.**

SL1 821216v2/000000.00000

# EXHIBIT B-3

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE COURT.**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | ) | Chapter 11 |
| In re: | ) | |
| | ) | |
| 15375 MEMORIAL CORPORATION, et al., | ) | Case No. 06-10859 (KG) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

**BALLOT FOR ACCEPTING OR REJECTING
PLAN OF REORGANIZATION OF 15375 MEMORIAL CORPORATION AND SANTA FE MINERALS, INC.**
Class 6 (Contingent Litigation Claims)

> THE BALLOT DEADLINE IS _____, 2008 AT 4:00 P.M., EASTERN STANDARD TIME. YOUR BALLOT MUST BE RECEIVED BY THE BALLOTING AGENT BY THE BALLOT DEADLINE, OR THE VOTES REPRESENTED BY YOUR BALLOT WILL NOT BE COUNTED.

15375 Memorial Corporation ("Memorial") and Santa Fe Minerals, Inc. ("Santa Fe") (collectively, the "Debtors"), in the above-captioned Chapter 11 cases pending before the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), submit this Ballot for Class 6 (Contingent Litigation Claims) Claims to you to solicit your vote to accept or reject the Debtors' First Amended Joint Plan of Liquidation, dated June 1, 2008 (as amended, the "Plan"), described in the accompanying Disclosure Statement, dated June 1, 2008 (with all of its attendant exhibits, the "Disclosure Statement").

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of claims in each class voting on the Plan. If the requisite acceptances are not obtained, the Bankruptcy Court may nevertheless confirm the Plan if the Bankruptcy Court finds that the Plan accords fair and equitable treatment to the class or classes rejecting it and otherwise satisfies the requirements of 11 U.S.C. § 1129(b). To have your vote count, you must complete and return this Ballot.

PLEASE READ AND FOLLOW THE ATTACHED INSTRUCTIONS CAREFULLY. COMPLETE, SIGN AND DATE THIS BALLOT AND RETURN IT IN THE ENCLOSED POSTAGE-PAID ENVELOPE TO ENSURE THAT THE BALLOT IS RECEIVED BY 4:00 P.M., EASTERN STANDARD TIME, ON _____, 2008 BY STEVENS & LEE, P.C. ("S&L"), AS BALLOTING AGENT, AT THE FOLLOWING ADDRESS:

STEVENS & LEE, P.C.
Re: 15375 Memorial Corporation and Santa Fe Minerals, Inc.
1105 N. Market Street, 7th Floor
Wilmington, DE 19801

**DO NOT FAX YOUR BALLOT TO S&L. FAXED BALLOTS WILL NOT BE COUNTED ONLY BALLOTS WITH AN ORIGINAL SIGNATURE WILL BE COUNTED.** Copies of Ballots are permitted provided they contain original signatures. Creditors voting should endeavor to send original ballots.

**PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

> PLEASE COMPLETE ITEMS 1, 2, 3 and 4. THIS BALLOT WILL NOT BE VALID OR COUNTED AS HAVING BEEN CAST IF THIS BALLOT IS NOT SIGNED ON THE APPROPRIATE LINES BELOW. IF NEITHER THE "ACCEPT" NOR THE "REJECT" BOX IS CHECKED IN ITEM 1, THIS BALLOT WILL BE DEEMED TO BE A VOTE IN FAVOR OF THE PLAN.

**Item 4. Class Vote.** The undersigned, a Holder of Class 6 (Contingent Litigation Claims) Claims(s) against one or more of the Debtors in the amount set forth below, votes to (check one box):

ACCEPT the Plan                                                     REJECT the Plan

Claimant_____                Claim Amount: $_____

**Item 5. Releases.** Check this box only if you DO NOT wish to grant the releases described in Section 8 of the Plan. ☐

**Item 6. Certifications.** By signing this Ballot, the undersigned certifies:

        (a) that on this date, he/she/it was the holder of the Class 6 Claim(s) identified in Item 1;

        (b) that no other Ballots cast with respect to the amount of the Class 6 Claim(s) identified in Item 1 have been cast with respect to such Class 6 Claim(s), or that any such previously cast ballots are hereby revoked;

        (c) that a copy of the Disclosure Statement relating to the Plan has been provided to and reviewed by the undersigned;

        (d) that as the holder of the amount of Class 6 Claim(s) set forth in Item 1, the undersigned has full power and authority to vote to accept or reject the Plan. The undersigned also acknowledges that this solicitation is subject to all the terms and conditions set forth in the Disclosure Statement relating to the Plan; and

        (e) the undersigned has reviewed the Order (I) Approving Disclosure Statement, (II) Establishing Confirmation Related Notice Procedures, (III) Approving Solicitation Packages, and (IV) Approving Forms of Ballots and Procedures for Voting on Debtors' First Amended Joint Plan of Liquidation

Name of Claimant (and any joint claimants)     _____

Social Security (last four digits) or Federal Tax I.D. No.:   _____

Signature:                             _____

Name and Title (if by Authorized Agent):      _____
Street Address:                       _____
City, State & Zip Code:              _____
Telephone Number:              _____
Date Completed:                 _____

If the above address is different than the address provided on the proof of claim you submitted, unless otherwise requested, your mailing address will be updated for all future communications from the Debtors.

**PLEASE CONFIRM THAT YOU HAVE PROVIDED ALL INFORMATION REQUESTED BY THIS BALLOT.**

> **IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, OR IF YOU NEED ADDITIONAL COPIES OF THE BALLOT OR THE OTHER ENCLOSED MATERIALS, PLEASE CALL DEBTOR'S COUNSEL AT (302) 654-5180.**

## INSTRUCTIONS FOR COMPLETING THE BALLOT

(1) In the box provided in Item 1 of the Ballot, please indicate acceptance or rejection of the Plan. Complete the Ballot by providing all information requested and sign, date and return the Ballot by mail, overnight courier or personal delivery to S&L at the following address:

<div align="center">

STEVENS & LEE, P.C.

Re: 15375 Memorial Corporation and Santa Fe Minerals, Inc.

1105 N. Market Street, 7th Floor

Wilmington, DE 19801

</div>

**Ballots must be *received* by S&L by 4:00 p.m. (Eastern Standard Time) on _____, 2008 (the "Ballot Deadline").** If a Ballot is received after the Ballot Deadline, it will not be counted. An envelope addressed to S&L is enclosed for your convenience. *Ballots submitted by facsimile will not be accepted.*

(2) You must vote all of your claims within a single class either to accept or reject the Plan. Accordingly, if you return more than one Ballot voting different claims within a single class and the Ballots are not voted in the same manner, those Ballots will not be counted. An otherwise properly executed Ballot that attempts to partially reject the Plan likewise will not be counted.

(3) The Ballot does not constitute and will not be deemed a proof of claim or an assertion of a claim or interest.

(4) If you cast more than one Ballot voting the same claim prior to the Ballot Deadline, the last Ballot received by S&L before the Ballot Deadline will supersede all prior Ballots.

(5) See the Order (I) Approving Disclosure Statement, (II) Establishing Confirmation Related Notice Procedures, (III) Approving Solicitation Packages, and (IV) Approving Forms of Ballots and Procedures for Voting on Debtors' First Amended Joint Plan of Liquidation for the complete voting tabulation procedures.

<div align="center">

### PLEASE MAIL YOUR BALLOT PROMPTLY

</div>

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CALL STEVENS & LEE, P.C. AT 302-654-5180.**

<div align="center">

Page 3 of 3

</div>

# EXHIBIT C

**EXHIBIT C**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) ) | Chapter 11 |
| 15375 MEMORIAL CORPORATION, et al., | ) ) ) | Case No. 06-10859 (KG) |
| Debtors. | ) ) ) | Jointly Administered |

**NOTICE OF NON-VOTING STATUS WITH RESPECT TO UNIMPAIRED CLASSES**

PLEASE TAKE NOTICE THAT on _____, 2008, the United States Bankruptcy Court for the District of Delaware, (the "Court") approved the Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code for Debtors' First Amended Joint Plan of Liquidation (as the same may be amended, the "Disclosure Statement") filed by the above-captioned debtors and debtors in possession (the "Debtors") for use by the Debtors in soliciting acceptances or rejections of the Debtors' First Amended Joint Plan of Liquidation, dated June 1, 2008 (as the same may be amended, the "Plan"), from holders of impaired claims and interests who are (or may be) entitled to receive distributions under the Plan.

**UNDER THE TERMS OF THE PLAN, YOUR CLAIM(S) AGAINST THE DEBTORS IS/ARE NOT IMPAIRED AND, THEREFORE, PURSUANT TO SECTION 1126(f) OF TITLE 11 OF THE UNITED STATES CODE, YOU ARE (I) DEEMED TO HAVE ACCEPTED THE PLAN, AND (II) NOT ENTITLED TO VOTE ON THE PLAN. ACCORDINGLY, THE ENCLOSED NOTICE(S) ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE ANY QUESTIONS ABOUT THE STATUS OF YOUR CLAIM(S), YOU SHOULD CONTACT STEVENS & LEE, P.C. AT 302-654-5180. IF YOU WANT TO REQUEST A COPY OF THE PLAN AND DISCLOSURE STATEMENT, YOU SHOULD CONTACT STEVENS & LEE, P.C. AT THE NUMBER ABOVE.**

# EXHIBIT D

**EXHIBIT D**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| 15375 MEMORIAL CORPORATION, et al., | ) | Case No. 06-10859 (KG) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

**ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) APPROVING
THE FORM AND MANNER OF NOTICE OF THE DISCLOSURE STATEMENT
HEARING, (III) ESTABLISHING NOTICE PROCEDURES FOR CONFIRMATION
OF THE JOINT PLAN OF LIQUIDATION, (IV) APPROVING SOLICITATION
PACKAGES AND PROCEDURES FOR DISTRIBUTION AND (V) APPROVING
FORMS OF BALLOTS AND PROCEDURES FOR VOTING ON
DEBTORS' FIRST AMENDED JOINT PLAN OF LIQUIDATION**

Upon the motion, dated June 5, 2008 (the "Motion")[1], of 15375 Memorial Corporation

("Memorial") and Santa Fe Minerals, Inc. ("Santa Fe") (collectively, the "Debtors"), seeking an

order in connection with the Court's consideration of the Debtor's proposed disclosure statement

attached hereto as Exhibit A (the "Disclosure Statement") (i) approving the form and manner of

notice of the disclosure statement hearing; (ii) establishing notice procedures for confirmation of

the Debtors' First Amended Joint Plan of Liquidation, dated June 1, 2008 (as may be amended,

the "Plan"), (iii) approving the Solicitation Packages (as defined below) and procedures for

distribution, and (iv) approving forms of ballots and procedures for voting on the Plan, all as

more fully set forth in the Motion; and it appearing that the Court has jurisdiction over this

matter; and due and sufficient notice of the Motion, the Disclosure Statement Hearing and this

order having been provided, and it appearing that no other or further notice need be provided;

and it further appearing that the relief requested in the Motion is in the best interests of the

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings set forth in the Motion.

Debtors, their creditors, and all parties in interest; and the Court having determined that the legal and factual basis set forth in the Motion establish just cause for the relief granted herein; and

IT IS HEREBY FOUND THAT:

A. Debtors' Disclosure Statement contains adequate information within the meaning of section 1125 of Title 11 of the United States Code (the "Bankruptcy Code").

B. The forms of ballot (the "Ballots") annexed hereto as <u>Exhibits B-1</u>, <u>B-2</u>, and <u>B-3</u> are sufficiently consistent with Official Form No. 14 and adequately address the particular needs of these Chapter 11 cases and are appropriate for the classes of claims entitled under the Plan to vote to accept or reject the Plan.

C. Ballots need not be provided to holders of claims or interests in (i) Class 1 (Priority Claims), (ii) Class 2 (Secured Claims), (iii) Class 5 (Bass Claims), and (iv) Class 7 (Interests) because they are unimpaired and, therefore, conclusively presumed to accept the Plan.

D. The period, set forth below, during which Debtors may solicit acceptances of the Plan is a reasonable period of time for creditors to make an informed decision to accept or reject the Plan.

E. The procedures for the solicitation and tabulation of votes to accept or reject the Plan (as more fully set forth in the Motion) provide for a fair and equitable voting process and are consistent with Section 1126 of the Bankruptcy Code.

F. The procedures set forth below regarding notice (the "Confirmation Hearing Notice") to all creditors of the time, date, and place of the hearing to confirm the Plan (the "Confirmation Hearing") and the contents of the Solicitation Package comply with Rules 2002 and 3017 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and constitute sufficient notice to all interested parties.

NOW, THEREFORE, IT IS:

ORDERED that the Motion is granted; and it is further

ORDERED that the Disclosure Statement is approved in all respects and as containing "adequate information" within the meaning of Section 1125 of the Bankruptcy Code, and Debtors are hereby authorized and empowered to solicit acceptances of the Plan in accordance with this Order; and it is further

ORDERED that the Ballots are to be distributed only to the holders of impaired claims in Class 3 (General Unsecured Claims), Class 4 (Sinz/Troia Claims) and Class 6 (Contingent Litigation Claims) under the Plan, which Classes are entitled to vote to accept or reject the Plan; and it is further

ORDERED that a Notice of Non-Voting Status-Unimpaired, substantially in the form annexed hereto as Exhibit C, is to be distributed to all holders of claims and interests in Classes 1, 2, 5, and 7 which Classes are not entitled to vote to accept or reject the Plan; and it is further

ORDERED that all Ballots must be properly executed, completed, and delivered to S&L (i) by mail, in the return envelope provided with each Ballot, (ii) by overnight courier, or (iii) by personal delivery so that they are received by S&L no later than 4:00 p.m., Eastern Standard Time, on _____ 2008 (the "Voting Deadline"); and it is further

ORDERED that if no votes to accept or reject the Plan are received with respect to a particular class, such class is deemed to have voted to accept the Plan; and it is further

ORDERED that if a creditor casts more than one Ballot voting the same claim before the Voting Deadline, the last Ballot received before the Voting Deadline is deemed to reflect the voter's intent and thus to supersede any prior Ballots; and it is further

SL1 821216v2/000000.00000

ORDERED that if a creditor submits a Ballot that is properly completed, executed, and timely returned to S&L, but does not indicate an acceptance or rejection of the Plan, or that indicates both an acceptance and rejection of the Plan, such creditor shall be deemed to have voted to accept the Plan; and it is further

ORDERED that creditors must vote all of their claim(s) within a particular class under the Plan, whether or not such claims are asserted against the same or multiple Debtors, either to accept or reject the Plan and may not split their vote(s), and thus a Ballot that partially rejects and partially accepts the Plan and allocates portions of one or more claims in such manner will not be counted; and it is further

ORDERED that the following types of Ballots will not be counted in determining whether the Plan has been accepted or rejected: (i) any Ballot received after the Voting Deadline unless the Debtors shall have granted, in writing, an extension of the Voting Deadline with respect to such Ballot at any time; (ii) any Ballot that is illegible or contains insufficient information to permit the identification of the claimant or interest holder; (iii) any Ballot cast by a person or entity that does not hold a claim in a class that is entitled to vote to accept or reject the Plan; (iv) any Ballot cast for a claim identified as unliquidated, contingent, or disputed for which no proof of claim was timely filed or deemed timely filed; (v) any Ballot without an original signature; and (vi) any Ballot transmitted to S&L by facsimile; and it is further

ORDERED that the Confirmation Hearing will be held at _____ a.m. Eastern Standard Time on _____, 2008; provided, however, that the Confirmation Hearing may be continued from time to time as appropriate by the Court or the Debtors without further notice except for adjournments announced in open court; and it is further

SL1 821216v2/000000.00000

ORDERED that any objections to confirmation of the Plan must (i) be in writing, (ii) state the name and address of the objecting party and the nature of the claim or interest of such party, (iii) state with particularity the basis and nature of any objection or proposed modification, and (iv) be filed, together with proof of service, with the Court and served so that they are actually received by the (a) Clerk of the Court, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801; (b) counsel to the Debtors, Stevens & Lee, P.C., 1105 N. Market Street, 7th Floor, Wilmington, Delaware 19801, Attn: John D. Demmy, Esq.; and (c) the Office of United States Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801, Attn: David L. Buchbinder, Esq., no later than 4:00 p.m. Eastern Standard Time, on _____, 2008; and it is further

ORDERED that objections to confirmation of the Plan or proposed modification of the Plan, if any, not timely filed and served strictly in the manner set forth above shall not be considered and shall be overruled; and it is further

ORDERED that the Confirmation Hearing Notice annexed hereto as <u>Exhibit A</u> is approved; and it is further

ORDERED that the Debtors are directed to mail or cause to be mailed solicitation packages containing a copy of this Order (without the exhibits annexed hereto), the Confirmation Hearing Notice, the Disclosure Statement, and the Plan (the "Solicitation Packages"), by _____, _____, 2008, to (i) the U.S. Trustee, (ii) each person or entity that filed a proof of claim on or before the date of the Disclosure Statement Notice, except if such claim was paid pursuant to, or expunged by, a prior order of the Court, (iii) each person or entity listed in the Debtors' Schedules, as holding liquidated, noncontingent, or undisputed claims, (iv) all other parties in interest that have filed a request for notice pursuant to Bankruptcy Rule 2002 in the Debtors'

SLI 821216v2/000000.00000

Chapter 11 cases, (v) the IRS, and (vi) any other known holders of claims against or equity interests in the Debtors; *provided, however,* that the Debtors are not required to distribute copies of the Plan and Disclosure Statement to any holder of a claim or interest in Classes 1, 2, 5, and 7 unless such party makes a specific request for the same; and it is further

ORDERED that in addition, holders of claims in classes entitled to vote to accept or reject the Plan shall receive, as part of their Solicitation Packages, a Ballot and a Ballot return envelope; and it is further

ORDERED that Debtors shall publish the Confirmation Hearing Notice not less than twenty-five (25) days before the last date to object to confirmation of the Plan in the national edition of The Wall Street Journal; and it is further

ORDERED that, with respect to addresses from which Disclosure Statement Notices or notices of the bar date were returned as undeliverable by the United States Postal Service, the Debtors are excused from mailing Solicitation Packages to those entities listed at such addresses unless the Debtors are provided with accurate addresses for such entities before the Solicitation Date; and it is further

ORDERED that Debtors are authorized to take or refrain from taking any action necessary or appropriate to implement the terms of and the relief granted in this Order without seeking further order of the Court; and it is further

ORDERED that Debtors are authorized to make nonsubstantive changes to the Disclosure Statement, the Plan, and related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors, changes to update projected claims and recovery estimates, and to make conforming changes among the

Disclosure Statement, the Plan, and any other materials in the Solicitation Package prior to their mailing.

Date:  Wilmington, Delaware
       June ___, 2008

_____
Hon. Kevin Gross
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT F

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| 15375 MEMORIAL CORPORATION, *et al.*, | Case No. 06-10859 (KG) |
| Debtors. | Jointly Administered |

**Hearing Date: June 27, 2008 @ 11:00 a.m.**
**Objection Deadline: June 20, 2008**

## SECOND INTERIM APPLICATION OF STEVENS & LEE, P.C. FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE DEBTORS FOR THE PERIOD NOVEMBER 1, 2006 THROUGH JANUARY 31, 2007

| | |
|---|---|
| Name of Applicant: | Stevens & Lee, P.C. |
| Authorized to Provide Professional Services to: | Debtors and Debtor in Possession |
| Date of Retention: | Order dated September 8, 2006 (effective *nunc pro tunc* to August 16, 2006) |
| Period for which compensation and reimbursement is sought: | November 1, 2006 through January 31, 2007 |
| Amount of Compensation sought: | $96,713.50 |
| Amount of Expense Reimbursement sought: | $1,251.64 |
| This is the: | Second Interim Fee Application |

### PRIOR APPLICATION HISTORY

| | | Requested | | Approved | | Certificate of No Objection |
|---|---|---|---|---|---|---|
| Dated Filed | Period Covered | Fees | Expenses | Fees | Expenses | |
| 11/29/06 | 8/16/06-10/31/06 | $83,653.00 | $3,750.04 | $83,653.00 | $3,750.04 | No |

SL1 816015v1/000000.00000

DATE FILED  6-6-08

DOCKET NO.  358

## LOCAL FORM 102 INFORMATION SUMMARIES FOR PERIOD

## TIMEKEEPER SUMMARY

| Name of Professional Person | Position; Years w/ S&L; Years in Practice | Hourly Billing Rate | Total Billed Hours | Total Compensation |
|---|---|---|---|---|
| John D. Demmy | Shareholder; 6.75 years with S&L; 20 years | 2006 $365 2007 $400 | 2006 55.7 2007 59.0 | 2006 $20,330.50 2007 $23,600.00 |
| Marnie E. Simon | Shareholder; 6.5 years with S&L; 12 years | 2006 $325 2007 $365 | 2006 10.1 2007 40.7 | 2006 $3,282.50 2007 $14,855.50 |
| John C. Kilgannon | Associate; 5 years with S&L; 8 years | 2006 $290 2007 $330 | 2006 63.9 2007 43.1 | 2006 $18,531.00 2007 $14,223.00 |
| Valerie Frew | Paralegal | 2006 $150 | 4.7 | $705.00 |
| Stephanie Foster | Legal Assistant | 2006 $120 2007 $125 | 2006 4.9 2007 4.4 | 2006 $588 2007 $550 |
| Joann MacDonald | Legal Assistant | 2006 $120 | .4 | $48.00 |
| **Grand Total** | | N/A | 286.90 | $96,713.50 |
| **Blended Rate** | | $259.00 | | |

SL1 816015v1/000000.00000

## COMPENSATION BY PROJECT SUMMARY

| Project Category | Total Hours | Total Fees |
|---|---|---|
| Asset Analysis & Recovery | 2.0 | $800.00 |
| Litigation | 191.90 | $65,667.50 |
| Plan and Disclosure Statement | 50.3 | $18,354.50 |
| Claims Administration and Objections | .4 | $146.00 |
| Prep for/Attendance at Hearing/Other Proceeding | 2.8 | $1,022.00 |
| Prep/Revise Motion/Joinder | 6.5 | $2,372.50 |
| Fee/Employment Applications | 16.70 | $4,693.00 |
| Fee/Employment Objections | 2.3 | $839.50 |
| Case Administration | 14 | $2,818.50 |
| **TOTAL** | 286.90 | $96,713.50 |

- 3 -

**EXPENSE SUMMARY**

| Expense Category | Amount |
|---|---|
| Courier/Delivery Services | $70.00 |
| Photocopies – Internal | $599.25 |
| Computer Research | $244.39 |
| Facsimile | $338.00 |
| **TOTAL** | $1,251.64 |

- 4 -

<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

</div>

| | |
|---|---|
| In re | :     Chapter 11 |
| 15375 MEMORIAL CORPORATION, *et al.*, | :     Case No. 06-10859 (KG) |
| Debtors. | :     Jointly Administered |

<div align="center">

**Hearing Date: June 27, 2008 @ 11:00 a.m.**
**Objection Deadline: June 20, 2008**

**SECOND INTERIM APPLICATION OF STEVENS & LEE, P.C. FOR**
**ALLOWANCE AND PAYMENT OF COMPENSATION AND**
**REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE DEBTORS**
**FOR THE PERIOD NOVEMBER 1, 2006 THROUGH JANUARY 31, 2007**

</div>

Pursuant to sections 330 and 331 of Title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the law firm of Stevens & Lee, P.C. (hereinafter "**S&L**") hereby makes this Second Interim Application for Compensation and Reimbursement of Expenses (the "**Application**") for professional legal services rendered as counsel to the above-captioned debtors and debtors in possession (collectively, "**Debtors**") for the period commencing November 1, 2006 through and including January 31, 2007 (the "**Period**"), in the total amount of $97,965.14 which is composed of (i) $96,713.50 for professional fees and (ii) $1,251.64 for expenses incurred during the Period. In support of its Application, S&L respectfully represents as follows:

1.      On August 16, 2006 (the "**Petition Date**"), Debtors commenced these bankruptcy cases by each filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Debtors have operated as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2.      S&L was employed to represent Debtors as general bankruptcy counsel under Section 327 of the Bankruptcy Code pursuant to the Order entered by the Court on September 8, 2006, effective *nunc pro tunc* to the Petition Date.  Prior to the Petition Date Debtors tendered $25,000 to S&L to pay for fees and expenses incurred prior to the Petition Date, with the balance of such amount (the "**Retainer**") to be held and to be applied against post-Petition date fees and expenses.  As of the Petition Date the Retainer balance was $11,625.64.  Pursuant to this Court's order dated December 27, 2006 [Docket No. 97], S&L applied the Retainer to the fees and expenses awarded by the Court in connection with S&L's *First Interim Application of Stevens & Lee, P.C. for Allowance and Payment of Compensation and Reimbursement of Expenses as Counsel to the Debtors for the Period August 16, 2006 through October 31, 2006* [Docket No. 88] (the "**First Interim Application**").

3.      All services for which compensation is requested by S&L were performed for or on behalf of Debtors.

4.      Attached hereto as Exhibits A and B, respectively, are detailed statements of the fees and expenses incurred by S&L during the Period showing the amount of $96,713.50 for fees and $1,251.64 for reimbursement of expenses.  In connection with this Application, and in accordance with Sections 330 and 331 of the Bankruptcy Code, S&L is seeking allowance in full amount of such fees and expenses, subject to submission of a final fee application.

### SUMMARY OF SERVICES RENDERED

5.      The attorneys of S&L who have rendered professional services in these cases during the Period are John D. Demmy, Marnie E. Simon, and John C. Kilgannon.  Paraprofessional services were provided by Valerie Frew, Stephanie Foster, and Joann MacDonald.  A summary of

SL1 816015v1/000000.00000

each person's information who billed time during the Period may be found in the TimeKeeper Summary, attached as Delaware Form 102, supra.

6.    S&L, by and through the above-named persons, provided the Debtors with the necessary legal services required in connection with these bankruptcy cases, specifically but not limited to: (i) general legal services related to the continuation of a Chapter 11 bankruptcy case; (ii) development of a disclosure statement, plan, and voting procedures related to same; and (iii) the motions filed by BEPCO, L.P. f/k/a Bass Enterprises Production Co. ("Bass") and the adversary proceeding commenced by Debtor Santa Fe Minerals, Inc. against Bass in which GlobalSantaFe Corporation, Entities Holdings, Inc. and GlobalSantaFe Corporate services, Inc. have intervened (collectively, the "Bass Litigation"). To the extent required without duplicating efforts, S&L professionals diligently consulted with Debtors and with other parties in interest concerning the general administration of this case. S&L professionals attended all necessary hearings, filed and served necessary papers and communicated with the Court and interested parties on routine matters. Such tasks have been performed throughout the Fee Period, in substantial part by telephone communications and e-mail, with counsel, other representatives for the Debtors and other interested parties.

## SUMMARY OF SERVICES BY PROJECT

7.    The services rendered by S&L during the Period are grouped in the categories set forth in the Compensation by Project Summary, attached as Delaware Form 102, supra. More specifically, the attorneys and paraprofessionals that rendered the services relating to each category are identified, along with the number of hours for each individual and the total compensation sought for each category, in Exhibit A hereto.

- 3 -

8.     In accordance with the factors enumerated in Sections 330 and 331 of the Bankruptcy Code, the amount requested for services rendered is fair and reasonable given (a) the Bass Litigation, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, and (e) the cost of comparable services other than in a case under the Bankruptcy Code.

## DISBURSEMENTS

9.     S&L incurred reasonable and necessary out-of-pocket expenses in the sum of $1,251.64 in connection with its legal services to Debtors during the Period. These expenses are summarized by category in the Expense Summary, attached as Delaware Form 102, supra. A complete itemization of expenses incurred during the Period is attached hereto as Exhibit B, as required by Local Rule 2016-2(e)(ii) of the Local Rules of Bankruptcy Practice and Procedure of the Bankruptcy Court (the "Local Rules").

10.     S&L sought to utilize the most cost-efficient method of communication consistent with the necessary time constraints. S&L's regular charge for photocopy expenses is $0.10 per page. S&L's regular telecopy charge is $1.00 per page. No charge is made for telecopies received. Lexis/Westlaw charges represent computerized legal research facility charges for computer assisted research. Use of Lexis and/o Westlaw greatly enhances legal research and access to case law from all jurisdictions, and is cost-efficient, saving substantial attorney research time. Other disbursements are itemized in Exhibit B. These disbursements were necessary to effectively render legal services in these cases.

11.     Due to the unavoidable delay in the posting of some disbursements (particularly those relating to third-party vendors), certain disbursements made during the Period may not have

- 4 -

been included in S&L's computer system at the time this Application was prepared. S&L reserves the right to seek reimbursement for expenses for such omitted items in subsequent fee applications.

12.    Annexed hereto as Exhibit C and made part hereof is the Certification of John D. Demmy, Esq., submitted pursuant to Section 504 of the Bankruptcy Code.

13.    S&L has reviewed Del. Bankr. L.R. 2016-2 and believes that the time entries included in the Exhibits hereto are in compliance with the requirements thereof. In accordance with the factors enumerated in 11 U.S.C. §§ 330 and 331, the amount requested is fair and reasonable given (a) the Bass Litigation, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, and (e) the cost of comparable services other than in a case under the Bankruptcy Code.

WHEREFORE, S&L respectfully requests that the Court grant this Application and allow S&L the amounts of $96,713.50 for professional fees incurred during the Period and $1,251.64 for expenses incurred during the Period, as compensation for necessary professional services rendered by S&L to Debtors and reimbursement of actual, necessary costs and expenses incurred by S&L during the Period. S&L further requests such other relief as this Court may deem just and proper.

Dated: Wilmington, Delaware
June 6, 2008

STEVENS & LEE, P.C.

/s/ John D. Demmy
John D. Demmy (Bar No. 2802)
1105 North Market Street, 7th Floor
Wilmington, DE 19801
Telephone: (302) 425-3308
Telecopier: (610) 371-8515
Email: jdd@stevenslee.com

- 5 -

SL1 816015v1/000000.00000

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
| 15375 MEMORIAL CORPORATION, *et al.*, | : | Case No. 06-10859 (KG) |
| Debtors. | : | Jointly Administered |
|  | : |  |

Hearing Date: June 27, 2008 @ 11:00 a.m.
Objection Deadline: June 20, 2008

**NOTICE OF SECOND INTERIM APPLICATION OF STEVENS & LEE,**
**P.C. FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND**
**REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE DEBTORS**
**FOR THE PERIOD NOVEMBER 1, 2006 THROUGH JANUARY 31, 2007**

PLEASE TAKE NOTICE that on this date the attached *Second Interim Application of Stevens & Lee, P.C. For Compensation And Reimbursement Of Expenses As Counsel To The Debtors For The Period November 1, 2006 Through January 31, 2007* (the "**Application**") has been filed with the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801 (the "**Bankruptcy Court**").    Stevens & Lee seeks allowance of compensation in the amount of $96,713.50 for professional services rendered on behalf of the Debtors and reimbursement of $1,251.64 in expenses actually and necessarily incurred, during the period from November 1, 2006 through January 31, 2007.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Application must be made in writing, filed with the Clerk of the Bankruptcy Court, and served upon undersigned counsel on or before **June 20, 2008 at 4:00 p.m.** (the "**Objection Deadline**").  Only those objections that are timely filed by the Objection Deadline, and are timely served and received will be considered by the Bankruptcy Court.

SL1 816015v1/000000.00000

PLEASE TAKE FURTHER NOTICE that a hearing on the application will be held on

**June 27, 2008, at 11:00 a.m.,** before the Honorable Kevin Gross, United States Bankruptcy

Judge for the District of Delaware.

Dated:  June 6, 2008

<div style="margin-left:40%">

STEVENS & LEE, P.C.

/s/ John D. Demmy
John D. Demmy (Bar No. 2802)
1105 North Market Street, 7th Floor
Wilmington, DE  19801
Telephone: (302) 425-3308
Telecopier: (610) 371-8515
Emails: jdd@stevenslee.com

</div>

- 2 -

# EXHIBIT A

| TaskPhase | PersonID | DateWorked | Hrs | Dollars | BillText |
|---|---|---|---|---|---|
| **Litigation** | | | | | |
| | JCK | 11/01/06 | 2.60 | $754.00 | CONTINUED PREPARATION OF BRIEF IN OPPOSITION TO MOTION TO DISMISS AND MOTION FOR RELIEF |
| | JCK | 11/02/06 | 4.90 | $1,421.00 | RESEARCH RE 10TH CIRCUIT LAW RE ALTER EGO CLAIMS (1.2), REVISED BRIEF IN OPPOSITION TO MOTIONS TO DISMISS AND FOR RELIEF FROM STAY (3.7) |
| | JCK | 11/02/06 | 0.80 | $232.00 | TELEPHONE CALL WITH JDD RE BRIEF (.2), TELEPHONE CONFERENCE WITH ERIC LOCKRIDGE RE BRIEF EDITS AND REVISIONS (.6) |
| | JCK | 11/03/06 | 6.90 | $2,001.00 | CONTINUED REVISIONS TO BRIEFS IN OPPOSITION TO MOTIONS TO DISMISS AND FOR RELIEF FROM STAY AND REPLY BRIEF IN SUPPORT OF PRELIMINARY INJUNCTION MOTION |
| | JCK | 11/03/06 | 0.80 | $232.00 | RECEIPT AND REVIEW EMAILS FROM JDD AND CO-COUNSEL RE REVISIONS TO BRIEF (.3), TELEPHONE CONFERENCE WITH JDD RE BRIEF (.1), TELEPHONE CALLS FROM CO-COUNSEL AND CLIENT RE REVISIONS TO BRIEF (.4) |
| | JCK | 11/06/06 | 2.20 | $638.00 | CONDUCTED RESEARCH RE DEPOSITION OF CLIENT FOLLOWING 341 MEETING AND TESTIMONY AT HEARING |
| | JCK | 11/07/06 | 0.40 | $116.00 | CONTINUED RESEARCH RE DEPOSITION OF DAVID FAURE FOLLOWING 341 MEETING AND HEARING TESTIMONY |
| | JCK | 11/08/06 | 2.70 | $783.00 | RECEIPT AND REVIEW EMAILS FROM JDD RE REQUEST FOR DISCOVERY CONFERENCE (.2), REVIEWED REQUEST FOR DISCOVERY CONFERENCE (.4), REVIEWED HEARING TRANSCRIPTS (1.1), PREPARED RESPONSE TO REQUEST (1.0) |
| | JCK | 11/09/06 | 2.30 | $667.00 | PREPARATION OF REPLY TO REQUEST FOR DISCOVERY CONFERENCE (2.3) |
| | JCK | 11/09/06 | 0.20 | $58.00 | EMAILS TO/FROM JDD RE REPLY TO REQUEST FOR DISCOVERY CONFERENCE (.2) |
| | JCK | 11/16/06 | 0.10 | $29.00 | EMAIL FROM JDD RE DISCOVERY RESPONSES |
| | JCK | 11/20/06 | 0.50 | $145.00 | EMAIL FROM JDD RE DISCOVERY (.1), REVIEWED PROPOSED DISCOVERY TO DEFENDANTS (.3), EMAIL TO JDD RE DISCOVERY AND RELATED MATTERS (.1) |
| | JCK | 11/21/06 | 0.30 | $87.00 | EMAIL TO/FROM JDD RE DISCOVERY RESPONSES (.2), EMAIL TO CLIENT RE DISCOVERY (.1) |
| | JCK | 11/22/06 | 1.40 | $406.00 | PREPARED RESPONSES TO DISCOVERY REQUESTS |
| | JCK | 11/27/06 | 0.50 | $145.00 | PREPARED OBJECTIONS AND RESPONSES TO DISCOVERY SERVED BY BASS |
| | JCK | 11/28/06 | 1.40 | $406.00 | PREPARED RESPONSES TO DISCOVERY (1.4) |
| | JCK | 11/28/06 | 0.90 | $261.00 | CONDUCTED RESEARCH RE CASE LAW ON CAUSE TO EXTEND EXCLUSIVITY PERIOD |
| | JCK | 11/28/06 | 0.50 | $145.00 | PREPARED EMAIL MEMO TO JDD RE RESEARCH (.5) |
| | JCK | 11/29/06 | 1.60 | $464.00 | REVIEWED RESEARCH AND PREPARED SECTION IN MOTION TO EXTEND EXCLUSIVITY REGARDING LITIGATION AS A ELEMENT OF CAUSE TO EXTEND EXCLUSIVITY PERIOD |
| | JCK | 11/29/06 | 0.40 | $116.00 | EMAILS TO/FROM JDD RE RESEARCH ON EXCLUSIVITY PERIOD (.3), EMAIL FROM CLIENT RE CONFERENCE CALL TO DISCUSS DISCOVERY (.1) |
| | JCK | 12/01/06 | 0.80 | $232.00 | REVISED RESPONSES TO DISCOVERY (.6) |
| | JCK | 12/01/06 | 0.90 | $261.00 | TELEPHONE CALL FROM CLIENT RE DISCOVERY (.2), TELEPHONE CALL FROM JDD RE DISCOVERY RESPONSES (.2), EMAIL TO JDD RE DISCOVERY RESPONSES (.2), EMAILS FROM COUNSEL RE DISCOVERY RESPONSES (.2), EMAIL TO CLIENT RE CONFERENCE CALL FOR DISCOVERY (.1) |
| | JCK | 12/04/06 | 3.20 | $928.00 | EMAIL TO/FROM ERIC LOCKRIDGE RE DISCOVERY (.2), EMAIL TO CLIENT RE CONFERENCE ON DISCOVERY (.1), TELEPHONE CONFERENCE WITH CLIENT AND COUNSEL RE DISCOVERY (2.9) |
| | JCK | 12/05/06 | 0.60 | $174.00 | TELEPHONE CALL TO JDD RE DISCOVERY CONFERENCE (.1), EMAIL TO CLIENT AND COUNSEL RE FOLLOW UP TO CONFERENCE (.2), EMAIL FROM JDD RE DEADLINE FOR DISCOVERY (.1), EMAIL TO CLIENT RE DISCOVERY RESPONSES (.1), EMAIL FROM COUNSEL RE DISCOVERY RESPONSES (.1) |
| | JCK | 12/06/06 | 2.40 | $696.00 | PREPARED OBJECTIONS AND RESPONSES TO DISCOVERY |
| | JCK | 12/06/06 | 0.50 | $145.00 | TELEPHONE CALL FROM PHILIP EISENBERG RE DISCOVERY (.2), RECEIPT AND REVIEW EMAIL FROM COUNSEL RE DISCOVERY (.1), EMAIL TO CLIENT RE JOINT RESPONSES TO DISCOVERY (.1), EMAIL FROM CLIENT RE DISCOVERY RESPONSES (.1) |
| | JCK | 12/07/06 | 0.10 | $29.00 | RECEIPT AND REVIEW EMAIL FROM CLIENT RE DISCOVERY |
| | JCK | 12/07/06 | 1.20 | $348.00 | PREPARED OBJECTIONS AND RESPONSES TO BASS' DISCOVERY (1.2) |
| | JCK | 12/08/06 | 0.20 | $58.00 | EMAILS TO/FROM CLIENT AND COUNSEL RE CONFERENCE CALL AND DISCOVERY ISSUES (.2) |
| | JCK | 12/08/06 | 1.90 | $551.00 | PREPARED RESPONSES AND OBJECTIONS TO INTERROGATORIES |
| | JCK | 12/09/06 | 0.10 | $29.00 | EMAIL TO COUNSEL RE DISCOVERY RESPONSES |
| | JCK | 12/09/06 | 0.50 | $145.00 | REVISED RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS |
| | JCK | 12/11/06 | 1.00 | $290.00 | TELEPHONE CONFERENCE WITH CLIENT RE RESPONSES TO DISCOVERY |
| | JCK | 12/11/06 | 2.50 | $725.00 | REVISED RESPONSES TO DISCOVERY |
| | JCK | 12/12/06 | 3.70 | $1,073.00 | REVISED RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS |

| | | | | |
|---|---|---|---|---|
| JCK | 12/12/06 | 0.80 | $232.00 | TELEPHONE CALLS TO CLIENT RE DISCOVERY RESPONSES (.3), EMAILS TO/FROM CLIENT RE DISCOVERY (.2), TELEPHONE CALL TO COUNSEL RE DISCOVERY RESPONSES (.2), EMAIL TO BASS' COUNSEL RE DISCOVERY RESPONSES (.1) |
| JCK | 12/13/06 | 0.50 | $145.00 | REVIEWED OBJECTION TO FEE APPLICATION AND CASES CITED IN OBJECTION |
| JCK | 12/13/06 | 0.40 | $116.00 | REVIEWED EMAIL FROM MARK CHAVEZ RE DOCUMENT PRODUCTION (.2), TELEPHONE CALL TO MARK CHAVEZ RE DOCUMENT PRODUCTION (.1), TELEPHONE CALL TO CLIENT RE DOCUMENT PRODUCTION (.1) |
| JCK | 12/15/06 | 1.50 | $435.00 | RESEARCH RE STANDARD FOR FEE APPLICATION AND CASES CITED BY BASS |
| JCK | 12/15/06 | 0.90 | $261.00 | TELEPHONE CONFERENCE WITH COUNSEL FOR GLOBALSANTAFE RE DOCUMENT PRODUCTION (.3), REVIEWED LANGUAGE RE CONFIDENTIALITY AGREEMENTS (.3), EMAIL TO COUNSEL FOR GLOBALSANTAFE RE CONFIDENTIALITY AGREEMENTS (.1), REVIEWED AGENDA FOR DECEMBER 19 HEARING (.2) |
| JCK | 12/18/06 | 0.80 | $232.00 | REVIEWED CASES RE FEE APPLICATION (.8) |
| JCK | 12/18/06 | 0.80 | $232.00 | EMAIL TO JDD RE CASES ON FEE APPLICATION (.3), TELEPHONE CALL FROM JDD RE RESEARCH (.1), EMAIL FROM CLIENT RE DISCOVERY RESPONSES AND DOCUMENTS (.1), EMAIL FROM COUNSEL FOR GLOBALSANTAFE RE CONFIDENTIALITY AGREEMENT (.1), REVIEWED CONFIDENTIALITY AGREEMENT (.2) |
| JCK | 12/19/06 | 1.70 | $493.00 | PREPARATION FOR HEARING ON FEE APPLICATION (.3), ATTENDED HEARING ON FEE APPLICATION AND EXCLUSIVITY MOTION (1.4) |
| JCK | 12/20/06 | 1.00 | $290.00 | REVIEWED PROPOSED ORDER ON FEE APPLICATION (.2), EMAIL TO JDD RE PROPOSED ORDER (.1), TELEPHONE CONFERENCE WITH COUNSEL FOR GLOBALSANTAFE RE DISCOVERY (.4), RECEIPT AND REVIEW EMAILS RE CONFIDENTIALITY AGREEMENT (.2), RECEIPT AND REVIEW CORRESPONDENCE FROM COUNSEL FOR GLOBALSANTAFE RE DOCUMENT PRODUCTION (.1) |
| JCK | 12/21/06 | 0.70 | $203.00 | CONFERENCE CALL WITH COUNSEL FOR GLOBALSANTAFE RE DISCOVERY RESPONSES OF DEBTORS (.2), EMAILS FROM DEBTORS' COUNSEL AND COUNSEL FOR GLOBALSANTAFE RE CONFERENCE CALL (.2), EMAILS TO/FROM JDD RE DISCOVERY ISSUES (.2), EMAIL FROM BASS' COUNSEL RE DISCOVERY RESPONSES (.1) |
| JCK | 12/21/06 | 1.20 | $348.00 | REVIEWED DEBTORS' RESPONSES TO DEBTORS' DISCOVERY (.7), REVIEWED REVISED CONFIDENTIALITY AGREEMENT (.5) |
| JCK | 12/22/06 | 2.50 | $725.00 | TELEPHONE CONFERENCE RE DISCOVERY (1.0), EMAIL TO JDD RE CONFERENCE (.3), EMAIL TO/FROM JDD RE DISCOVERY (.2), TELEPHONE CALL FROM BASS' COUNSEL RE DISCOVERY RESPONSES (.1), EMAIL FROM COUNSEL RE DISCOVERY RESPONSES (.1), EMAIL FROM JDD RE DISCOVERY RESPONSES (.1), EMAIL FROM GLOBALSANTAFE RE DISCOVERY RESPONSES (.1), TELEPHONE CONFERENCE WITH COUNSEL FOR GLOBAL RE DISCOVERY RESPONSES AND CONFIDENTIALITY AGREEMENT (.3), EMAILS FROM COUNSEL RE CONFIDENTIALITY AGREEMENT (.3) |
| JCK | 12/29/06 | 0.10 | $29.00 | RECEIPT AND REVIEW EMAIL FROM COUNSEL RE MOTION TO DISMISS MOTION FOR RELIEF |
| JCK | 01/02/07 | 1.20 | $396.00 | PREPARED LETTER TO BASS' COUNSEL RE DISCOVERY RESPONSES |
| JCK | 01/02/07 | 0.50 | $165.00 | EMAILS TO/FROM JDD RE BASS' DISCOVERY RESPONSES (.3), EMAIL FROM CLIENT RE DISCOVERY RESPONSES (.1), RECEIPT AND REVIEW EMAIL FROM BASS' COUNSEL RE MOTION TO DISMISS (.1) |
| JCK | 01/03/07 | 0.50 | $165.00 | EMAILS FROM COUNSEL RE CONFERENCE CALL (.2), REVIEWED GLOBALSANTAFE'S MOTION TO DISMISS (.3) |
| JCK | 01/04/07 | 0.70 | $231.00 | REVIEWED AND REVISED LETTER TO COUNSEL RE DISCOVERY RESPONSES |
| JCK | 01/04/07 | 0.70 | $231.00 | EMAIL TO/FROM JDD RE LETTER TO COUNSEL RE DISCOVERY (.2), TELEPHONE CALL WITH JDD RE LETTER AND DISCOVERY (.2), REVIEWED DOCUMENTS PRODUCED BY BASS (.3) |
| JCK | 01/05/07 | 0.60 | $198.00 | RECEIPT AND REVIEW EMAILS RE DEPOSITION (.1), TELEPHONE CONFERENCE WITH JDD RE CONFERENCE WITH JUDGE GROSS (.2), RECEIPT AND REVIEW EMAIL FROM JDD RE REVISED SCHEDULE (.1), EMAIL TO JDD AND CLIENT RE SUPPLEMENTAL DISCOVERY (.2) |
| JCK | 01/05/07 | 0.20 | $66.00 | REVIEWED DISCOVERY RESPONSES RE SUPPLEMENTAL RESPONSES |
| JCK | 01/08/07 | 0.30 | $99.00 | EMAIL FROM CLIENT RE SUPPLEMENTAL RESPONSES TO DISCOVERY (.1), EMAIL TO/FROM JDD RE DEBTORS' OBJECTIONS TO DISCOVERY (.2) |
| JCK | 01/09/07 | 0.20 | $66.00 | REVIEWED DISCOVERY RESPONSES IN ANTICIPATION OF CONFERENCE WITH CLIENT |
| JCK | 01/09/07 | 0.80 | $264.00 | TELEPHONE CONFERENCE WITH CLIENT RE SUPPLEMENTAL DISCOVERY |
| JCK | 01/10/07 | 0.10 | $33.00 | RECEIPT AND REVIEW EMAIL FROM CLIENT RE ELLISON LITIGATION |
| JCK | 01/12/07 | 0.20 | $66.00 | TELEPHONE CONFERENCE WITH COUNSEL FOR GLOBALSANTA FE RE DISCOVERY |
| JCK | 01/12/07 | 0.60 | $198.00 | PREPARED AMENDED AND SUPPLEMENTAL RESPONSES TO DISCOVERY |
| JCK | 01/15/07 | 0.70 | $231.00 | RECEIPT AND REVIEW EMAILS FROM JDD RE SUPPLEMENTAL DISCOVERY (.2), EMAILS TO JDD RE SUPPLEMENTAL DISCOVERY (.2),  REVIEWED EMAIL FROM JDD AND ATTACHED DOCUMENTS RE SUBPOENA ISSUED BY BASS (.3) |

| | | | | |
|---|---|---|---|---|
| JCK | 01/15/07 | 1.40 | $462.00 | RESEARCH RE STANDING OF PARTY TO OBJECT TO SUBPOENA ISSUED TO NON-PARTY (1.4) |
| JCK | 01/16/07 | 2.00 | $660.00 | TELEPHONE CALL WITH COUNSEL FOR GLOBALSANTAFE RE DISCOVERY ISSUES (.3), EMAILS FROM JDD AND CLIENT RE LETTER TO PLAINTIFFS ON ALTER EGO ISSUES (.2), EMAILS TO CLIENT RE DISCOVERY (.2), RECEIPT AND REVIEW EMAILS RE GLOBALSANTAFE'S DISCOVERY (.2), RESEARCH RE THIRD CIRCUIT STANDARD RE STANDING TO OBJECT TO SUBPOENA (.5), TELEPHONE CONFERENCE WITH ERIC LOCKRIDGE RE OBJECTION TO SUBPOENA (.6) |
| JCK | 01/16/07 | 0.20 | $66.00 | REVISED SUPPLEMENTAL DISCOVERY (.2) |
| JCK | 01/17/07 | 0.90 | $297.00 | PREPARED SUPPLEMENTAL DISCOVERY FOR SERVICE (.2), EMAIL TO COUNSEL RE DISCOVERY (.1), TELEPHONE CONFERENCE WITH JDD REGARDING SUBPOENA ISSUES (.3), TELEPHONE CALL FROM COUNSEL FOR GLOBALSANTAFE RE SUBPOENA (.2), RECEIPT AND REVIEW EMAIL FROM COUNSEL FOR GLOBALSANTAFE RE SUPPLEMENTAL DISCOVERY (.1) |
| JCK | 01/18/07 | 0.20 | $66.00 | EMAIL TO/FROM ERIC LOCKRIDGE RE OBJECTION TO SUBPOENA ISSUED TO E&Y (.2) |
| JCK | 01/18/07 | 1.50 | $495.00 | PREPARED LETTER TO JUDGE GROSS RE OBJECTION TO SUBPOENA (1.5) |
| JCK | 01/19/07 | 0.40 | $132.00 | TELEPHONE CONFERENCE WITH JDD RE ALTER EGO ISSUES (.1), EMAIL TO JDD RE RESEARCH ON ALTER EGO ISSUES (.1), EMAIL FROM CLIENT RE 30(B)(6) NOTICE (.1), EMAIL FROM COUNSEL RE DISCOVERY ISSUES (.1) |
| JCK | 01/19/07 | 0.40 | $132.00 | RESEARCH NINTH CIRCUIT LAW RE ALTER EGO ISSUES |
| JCK | 01/22/07 | 0.80 | $264.00 | CONFERENCE WITH JDD RE DISCOVERY ISSUES (.3), EMAIL TO BASS' COUNSEL RE DISCOVERY QUESTION (.1), EMAIL TO CLIENT RE DISCOVERY QUESTION (.1), EMAILS TO/FROM ERIC LOCKRIDGE RE MOTION TO QUASH (.3) |
| JCK | 01/22/07 | 0.80 | $264.00 | PREPARED LETTER TO JUDGE GROSS RE MOTION TO QUASH SUBPOENA (.5), REVIEWED SUPPLEMENTAL DISCOVERY FROM BASS (.3) |
| JCK | 01/23/07 | 2.60 | $858.00 | EMAILS FROM COUNSEL FOR GLOBALSANTAFE RE DISCOVERY (.3), EMAIL FROM JDD RE DISCOVERY ISSUES (.1), EMAIL FROM CLIENT RE DISCOVERY ISSUES (.1), REVIEWED DOCUMENTS AND PREPARED EMAIL TO COUNSEL FOR DEBTOR RE DOCUMENTS PRODUCED (.3), TELEPHONE CALL WITH GLOBALSANTAFE'S COUNSEL RE SUBPOENA ISSUES (.3), EMAIL TO JDD RE DISCOVERY AND DOCUMENTS PRODUCED BY BASS (.1), REVIEW AND ANALYSIS OF DOCUMENTS PRODUCED BY DEBTORS AND PREPARED EMAIL REPLY TO BASS' COUNSEL RE DISCOVERY (.5), REVISED LETTER TO JUDGE GROSS RE SUBPOENA (.5), EMAILS TO/FROM ERIC LOCKRIDGE RE MOTION TO QUASH (.4) |
| JCK | 01/24/07 | 1.30 | $429.00 | RECEIPT AND REVIEW EMAILS FROM ERIC LOCKRIDGE RE MOTION TO QUASH (.2), EMAIL TO LOCKRIDGE RE MOTION TO QUASH (.1), EMAIL FROM JDD AND BASS' COUNSEL RE MOTION TO STRIKE (.3), TELEPHONE CONFERENCE WITH JDD RE DISCOVERY ISSUES (.3), TELEPHONE CONFERENCE WITH ERIC LOCKRIDGE RE MOTION TO QUASH AND RELATED ISSUES (.3), EMAIL FROM JDD RE PRO HAC MOTION (.1) |
| JCK | 01/24/07 | 2.20 | $726.00 | REVIEWED DISCOVERY ISSUES RAISED BY BASS (.8), RECEIPT AND REVIEW ORDER RE EMERGENCY HEARING (.1), REVIEWED DOCUMENTS PRODUCED BY BASS (.1), CONDUCTED RESEARCH RE WAIVER OF PRIVILEGE (.6), REVIEWED AND SIGNED PRO HAC MOTION (.1), PREPARED FOR EMERGENCY HEARING ON MOTION TO STRIKE (.5) |
| JCK | 01/25/07 | 0.60 | $198.00 | CONTINUED PREPARATION OF LETTER TO JUDGE GROSS RE DISCOVERY ISSUES |
| JCK | 01/25/07 | 2.50 | $825.00 | PREPARATION FOR AND ATTENDED HEARING ON MOTION TO STRIKE GLOBAL SANTAFE'S MOTION TO QUASH (2.5) |
| JCK | 01/25/07 | 0.90 | $297.00 | TELEPHONE CONFERENCES WITH JDD RE HEARING ON MOTION TO STRIKE AND DISCOVERY ISSUES (.4), TELEPHONE CALL WITH GLOBALSANTAFE'S COUNSEL RE HEARING (.2), EMAILS FROM ERIC LOCKRIDGE AND GLOBALSANTAFE COUNSEL RE DRAFT LETTER TO ERNST & YOUNG (.2), CORRESPONDENCE FROM BASS' COUNSEL TO ERNST & YOUNG (.1) |
| JCK | 01/26/07 | 4.10 | $1,353.00 | REVIEWED DOCUMENTS SUPPLIED BY BASS (.2), REVIEWED AND REVISED LETTER TO JUDGE GROSS RE DISCOVERY ISSUES (2.2), PREPARED LETTER TO COUNSEL FOR BASS RE ERNST & YOUNG SUBPOENA (.4), PREPARED EXHIBITS FOR LETTER TO JUDGE GROSS (1.7) |
| JCK | 01/26/07 | 0.80 | $264.00 | EMAILS TO/FROM JDD AND COUNSEL FOR GLOBALSANTAFE RE ERNST & YOUNG SUBPOENA (.2), REVIEWED LETTER FROM BASS' COUNSEL TO ERNST & YOUNG (.1), TELEPHONE CONFERENCE WITH JDD RE ERNST & YOUNG LETTER (.2), CONFERENCE WITH JDD RE LETTER TO JUDGE GROSS (.2), EMAIL FROM ERIC LOCKRIDGE RE SUBPOENA (.1) |
| JCK | 01/29/07 | 3.90 | $1,287.00 | REVIEWED LETTERS TO JUDGE GROSS FROM BASS' COUNSEL AND GLOBALSANTAFE'S COUNSEL (.8), REVIEWED LETTER FROM BASS' COUNSEL RE DISCOVERY ISSUES (.4), PREPARED FOR CONFERENCE (.4), CONFERENCE WITH COUNSEL RE DISCOVERY ISSUES (2.3) |
| JCK | 01/29/07 | 0.70 | $231.00 | RECEIPT AND REVIEW EMAILS FROM COUNSEL RE DISCOVERY (.2), TELEPHONE CONFERENCE WITH JDD RE DISCOVERY CONFERENCE (.1), CONFERENCE WITH SLFO RE AGENDA (.1), TELEPHONE CONFERENCE WITH GLOBALSANTAFE COUNSEL RE DISCOVERY CONFERENCE (.3) |
| JCK | 01/30/07 | 0.70 | $231.00 | CONFERENCE WITH JDD RE DISCOVERY CONFERENCE (.5), EMAILS TO/FROM ERIC LOCKRIDGE RE DISCOVERY (.2) |

| | | | | |
|---|---|---|---|---|
| JCK | 01/31/07 | 6.90 | $2,277.00 | CONFERENCE WITH JDD RE DISCOVERY CONFERENCE (.5), ATTENDED DISCOVERY CONFERENCE WITH JUDGE GROSS AND PARTIES (.5.5), CONFERENCE WITH JDD AND CLIENT RE DISCOVERY CONFERENCE (.3) |
| JCK | | 107.00 | $32,754.00 | |
| JDD | 11/01/06 | 1.60 | $584.00 | REVIEW/ANALYZE TRANSCRIPT OF 10/19 HEARING |
| JDD | 11/01/06 | 0.20 | $73.00 | TELEPHONE CONFERENCE W/ J KILGANNON RE BRIEF IN RESPONSE TO BASS MOTIONS TO DISMISS/CONVERT ETC. |
| JDD | 11/01/06 | 0.50 | $182.50 | REVIEW/ANALYZE EMAIL FROM BASS' COUNSEL WITH DRAFT SCHEDULING ORDER RE BASS MOTIONS TO DISMISS/CONVERT ETC. AND EMAIL FROM P EISENBERG WITH GLOBALSANTAFE COMMENTS.  REVIEW/ANALYZE EMAIL FROM G WERKHEISER IN RESPONSE. |
| JDD | 11/02/06 | 1.30 | $474.50 | REVIEW/ANALYZE FINAL DRAFT OF BRIEF IN RESPONSE TO BASS MOTIONS AND REPLY RE PJ MOTION |
| JDD | 11/03/06 | 0.70 | $255.50 | SEVERAL TELECONFERENCES WITH J KILGANNON RE REVISIONS TO AND FILING OF BRIEF IN RESPONSE TO BASS MOTIONS AND REVIEW/ANALYZE SEVERAL EMAILS FROM CLIENT RE SAME SUBJECT |
| JDD | 11/03/06 | 0.30 | $109.50 | REVIEW/ANALYZE GLOBALSANTAFE'S BRIEF IN OPPOSITION TO BASS' MOTIONS |
| JDD | 11/03/06 | 0.20 | $73.00 | REVIEW/ANALYZE SEVERAL EMAILS FROM BASS AND GLOBALSANTAFE COUNSEL RE PROPOSED SCHEDULING/DISCOVERY ORDER RE BASS MOTIONS |
| JDD | 11/08/06 | 0.20 | $73.00 | EMAIL COMMUNICATIONS WITH COUNSEL FOR BASS AND GLOBALSANTAFE RE SCHEDULING OF DISCOVERY STATUS CONFERENCE |
| JDD | 11/08/06 | 0.50 | $182.50 | REVIEW/ANALYZE BASS' REQUEST FOR A DISCOVERY CONFERENCE IN ADVERSARY.  EMAIL TO CLIENT FORWARDING BASS REQUEST. |
| JDD | 11/08/06 | 0.10 | $36.50 | PREPARED AGENDA NOTICE FOR 11/13 DISCOVERY/STATUS CONFERENCE |
| JDD | 11/08/06 | 0.40 | $146.00 | COMMUNICATIONS WITH J KILGANNON RE RESPONSE TO BASS' REQUEST FOR DISCOVERY CONFERENCE |
| JDD | 11/09/06 | 0.30 | $109.50 | EMAIL TO CLIENT RE AND FORWARDING RESPONSE TO BASS REQUEST AND REVIEW/ANALYZE RESPONSES (COMMENTS TO RESPONSE). |
| JDD | 11/09/06 | 3.00 | $1,095.00 | REVIEW/ANALYZE KILGANNON DRAFT OF AND REVISED RESPONSE TO BASS' REQUEST FOR DISCOVERY/SCHEDULING STATUS CONFERENCE.  PREPARED RESPONSE AND EXHIBITS FOR FILING/SERVICE. |
| JDD | 11/10/06 | 0.30 | $109.50 | REVIEW/ANALYZE EMAIL FROM JUDGE GROS RE 11/13 HEARING AND RESPONSES FROM WERKHEISER AND MONACO. |
| JDD | 11/13/06 | 0.20 | $73.00 | REVIEW/ANALYZE E-NOTICE OF SERVICE OF BASS DISCOVERY AND EMAIL FROM G WERKHEISER WITH BASS DISCOVERY (AND FORWARDED SAME TO CLIENT) |
| JDD | 11/13/06 | 0.30 | $109.50 | EMAIL TO D FAURE RE HEARING RESULTS AND TELECONFERENCE WITH D FAURE RE HEARING |
| JDD | 11/13/06 | 2.10 | $766.50 | PREPARATION FOR (INCLUDING REVIEW OF PLEADINGS) AND ATTENDANCE AT HEARING ON BASS' REQUEST FOR DISCOVERY/SCHEDULING CONFERENCE |
| JDD | 11/14/06 | 0.20 | $73.00 | SEVERAL EMAILS FROM AND TO COUNSEL FOR BASS AND GLOBALSANTAFE RE SERVICE OF BASS DISCOVERY |
| JDD | 11/15/06 | 0.80 | $292.00 | DRAFTED SCHEDULING ORDER FOR JANUARY HEARINGS BASED ON RULINGS MADE AT 11/13 HEARING AND CIRCULATED ORDER TO BASS AND GLOBALSANTA FE COUNSEL.  SOLICITED AND INCORPORATED COMMENTS FROM GLOBALSANTAFE COUNSEL IN FORM OF ORDER FORWARDED TO BASS. |
| JDD | 11/20/06 | 5.20 | $1,898.00 | CONTINUED DRAFTING DISCOVERY DIRECTED TO BASS.  CIRCULATED DRAFT DISCOVERY TO CLIENT FOR REVIEW AND COMMENT.  REVIEW/ANALYZE AND INCORPORATED CLIENT COMMENTS TO DISCOVERY AND PREPARED SAME FOR SERVICE ON BASS. |
| JDD | 11/20/06 | 0.70 | $255.50 | EMAIL TO G WERKHEISER ET AL AGAIN FORWARDING DRAFT SECOND SCHEDULING ORDER.  REVIEW/ANALYZE SEVERAL EMAILS AND COMMENTS FROM WERKHEISER (BASS) AND M CHAVEZ (GLOBALSANTAFE).  EMAILS TO BASS AND GLOBALSANTAFE COUNSEL RE COMMENTS TO BASS' PROPOSED CHANGES. |
| JDD | 11/20/06 | 0.50 | $182.50 | REVIEW/ANALYZE DRAFT DISCOVERY PREPARED BY GLOBALSANTAFE DIRECTED TO BASS |
| JDD | 11/20/06 | 0.20 | $73.00 | DRAFTED JOINDER TO GLOBALSANTAFE DISCOVERY DIRECTED TO BASS |
| JDD | 11/21/06 | 0.20 | $73.00 | COMMUNICATIONS WITH CLIENT RE COMPETING FORMS OF SCHEDULING ORDER AND DEBTORS' POSITION |
| JDD | 11/21/06 | 0.30 | $109.50 | REVIEW/ANALYZE BASS' CERTIFICATION AND PROPOSED SCHEDULING ORDER. FORWARDED CERTIFICATION AND PROPOSED SCHEDULING ORDER TO CLIENT AND GLOBALSANTAFE COUNSEL. |
| JDD | 11/21/06 | 0.30 | $109.50 | REVIEW/ANALYZE GLOBALSANTAFE CERTIFICATION AND PROPOSED SCHEDULING ORDER. |
| JDD | 11/27/06 | 0.10 | $36.50 | REVIEW/ANALYZE SCHEDULING ORDER RE JANUARY HEARINGS ENTERED BY THE COURT |
| JDD | 12/01/06 | 0.40 | $146.00 | TELEPHONE CONFERENCE W/ COUNSEL FOR GSF ENTITIES RE DISCOVERY ISSUES |
| JDD | 12/01/06 | 0.30 | $109.50 | REVIEW/ANALYZE EMAIL FROM AND TELEPHONE CONFERENCE W/ J KILGANNON RE DISCOVERY ISSUES RELATING TO BASS MATTER |

| | | | | |
|---|---|---|---|---|
| JDD | 12/05/06 | 0.40 | $146.00 | TELEPHONE CONFERENCE W/ J KILGANNON RE MONDAY'S DISCOVERY TELECONFERENCE AND RELATED ISSUES. REVIEW/ANALYZE SEVERAL EMAILS FROM COUNSEL RE DISCOVERY ISSUES AND EMAIL TO KILGANNON RE DEADLINE TO RESPOND TO BASS' DISCOVERY. |
| JDD | 12/08/06 | 0.20 | $73.00 | REVIEW/ANALYZE EMAILS FROM KILGANNON RE PROGRESS/STATUS OF DISCOVERY RESPONSES |
| JDD | 12/08/06 | 0.20 | $73.00 | TEL FROM, AND EMAILS TO AND ROM L MOSES (BASS COUNSEL) RE DEPOSITIONS. EMAIL TO CLIENT AND CO-COUNSEL RE BASS REQUEST FOR DEPOSITIONS. |
| JDD | 12/11/06 | 1.20 | $438.00 | REVIEW/ANALYZE DRAFT RESPONSES TO BASS DISCOVERY AND TELECONFERENCE WITH J KILGANNON RE RESPONSES AND DISCOVERY ISSUES |
| JDD | 12/12/06 | 0.30 | $109.50 | SEVERAL EMAILS FROM AND TO L MOSES (BASS COUNSEL) RE DISCOVERY ISSUES (SCHEDULING OF DEPOSITIONS AND DEBTORS' RESPONSES TO WRITTEN DISCOVERY). |
| JDD | 12/12/06 | 0.20 | $73.00 | TELEPHONE CONFERENCE W/ P EISENBERG (GSF COUNSEL) RE DISCOVERY ISSUES IN BASS LITIGATION |
| JDD | 12/13/06 | 0.10 | $36.50 | DISCUSSION WITH J KILGANNON RE BASS DISCOVERY ISSUES |
| JDD | 12/18/06 | 0.20 | $73.00 | TELEPHONE CONFERENCE W/ D FAURE RE BASS DISCOVERY ISSUES |
| JDD | 12/19/06 | 0.20 | $73.00 | REVIEW/ANALYZE EMAIL FROM P EISENBERG WITH DRAFT CONFIDENTIALITY AGREEMENT RE BASS LITIGATION DISCOVERY. CONF. WITH J KILGANNON RE CONFIDENTIALITY AGREEMENT. |
| JDD | 12/20/06 | 0.20 | $73.00 | REVIEW/ANALYZE EMAILS FROM BASS AND GSF COUNSEL RE REVISIONS TO CONFIDENTIALITY STIP/ORDER RELATING TO BASS LITIGATION. |
| JDD | 12/21/06 | 0.20 | $73.00 | SEVERAL EMAILS FROM AND TO BASS AND GSF COUNSEL RE DISCOVERY ISSUES AND 12/22 TELECONFERENCE WITH COURT |
| JDD | 12/21/06 | 0.20 | $73.00 | SEVERAL EMAILS FROM AND TO J KILGANNON RE BASS DISCOVERY RESPONSES |
| JDD | 12/22/06 | 0.10 | $36.50 | REVIEW/ANALYZE EMAIL FROM J KILGANNON RE RESULTS OF TELECONFERENCE WITH COURT RE BASS AND DISCOVERY ISSUES |
| JDD | 12/22/06 | 0.20 | $73.00 | REVIEW/ANALYZE EMAIL FROM G WERKHEISER WITH REVISED CONFIDENTIALITY AGREEMENT. EMAILS WITH J KILGANNON RE REVISED AGREEMENT. |
| JDD | 12/22/06 | 0.20 | $73.00 | REVIEW/ANALYZE AND DRAFTED RESPONSE TO EMAIL FROM L MOSES RE CLARIFICATION OF DEBTORS' REQUEST FOR PRODUCTION NO. 11. |
| JDD | 12/22/06 | 0.20 | $73.00 | COMMUNICATIONS WITH J KILGANNON RE TELECONFERENCE WITH THE COURT AND ADVISE RE RESPONDING IN CONNECTION WITH CERTAIN DISCOVERY ISSUES |
| JDD | 12/27/06 | 0.20 | $73.00 | REVIEW/ANALYZE EMAILS FROM L MOSES (BASS COUNSEL) RE DISCOVERY ISSUES AND EMAILS FROM P EISENBERG AND J KILGANNON RELATING THERETO. |
| JDD | 12/28/06 | 0.30 | $109.50 | TELEPHONE CONFERENCE W/ P EISENBERG RE VARIOUS DISCOVERY ISSUES AND GSF MOTION TO DISMISS BASS RELIEF FROM STAY MOTION |
| JDD | 12/29/06 | 1.30 | $474.50 | REVIEW/ANALYZE GSF'S MOTION TO DISMISS BASS RELIEF FROM STAY MOTION ON STANDING GROUNDS. EMAIL TO GSF COUNSEL RE COMMENTS TO MOTION. |
| JDD | 12/29/06 | 2.00 | $730.00 | REVIEW/ANALYZE BASS' RESPONSES TO GSF AND DEBTORS' DISCOVERY. |
| JDD | 12/29/06 | 0.20 | $73.00 | EMAILS TO AND FROM D FAURE RE GSF MOTION TO DISMISS BASS RELIEF FROM STAY MOTION |
| JDD | 01/02/07 | 0.60 | $240.00 | TELEPHONE CONFERENCE W/ P EISENBERG RE DISCOVERY AND RELATED ISSUES |
| JDD | 01/02/07 | 0.20 | $80.00 | COMMUNICATIONS WITH J KILGANNON RE BASS' DISCOVERY RESPONSES AND FOLLOW UP (LETTER/MOTION TO COMPEL) |
| JDD | 01/02/07 | 0.40 | $160.00 | DRAFTED JOINDER TO GLOBALSANTAFE MOTION TO DISMISS BASS RELIEF FROM STAY MOTION AND PREPARED SAME FOR FILING/SERVICE |
| JDD | 01/03/07 | 0.40 | $160.00 | TELEPHONE CONFERENCE W/ D FAURE RE DISCOVERY ISSUES (INCLUDING E&Y) |
| JDD | 01/03/07 | 0.40 | $160.00 | TELEPHONE CONFERENCE W/ P EISENBERG RE AND FORWARDED 2000 TAX RETURNS TO P EISENBERG IN CONNECTION WITH DISCOVERY/PRODUCTION OF DOCUMENTS TO BASS. EMAILS FROM AND TO P EISENBERG RE 2000 TAX RETURNS. |
| JDD | 01/03/07 | 0.20 | $80.00 | TELECONFERENCE WITH BASS COUNSEL AND COURT RE NEED FOR STATUS HEARING WITH COURT AND SCHEDULING ISSUES RE SAME |
| JDD | 01/03/07 | 5.70 | $2,280.00 | BEGAN DRAFTING PRE-TRIAL MEMORANDUM FOR JANUARY 24 AND 25 HEARINGS |
| JDD | 01/04/07 | 0.60 | $240.00 | REVIEW/ANALYZE BASS RESPONSES TO REQUESTS FOR ADMISSION IN PREPARATION FOR TELECONFERENCE WITH COURT AND POSSIBLE DISCOVERY LETTER/MOTION. |
| JDD | 01/04/07 | 0.40 | $160.00 | REVIEW/ANALYZE AND MADE REVISIONS TO J KILGANNON DRAFT LETTER RE BASS DISCOVERY RESPONSES |
| JDD | 01/04/07 | 1.30 | $520.00 | REVIEW/ANALYZE AND RESPONDED TO NUMEROUS EMAILS FROM L MOSES AND P EISENBERG RE DISCOVERY, DEPOSITIONS AND RELATED ISSUES |
| JDD | 01/04/07 | 3.00 | $1,200.00 | CONTINUED DRAFTING/REVISING JOINT PRE-TRIAL STIPULATION (FACTS AND LEGAL ISSUES) |
| JDD | 01/04/07 | 1.80 | $720.00 | REVISED JOINT PRE-TRIAL MEMO (ADDED WITNESSES AND DOCUMENTS AS WELL). |

| | | | | |
|---|---|---|---|---|
| JDD | 01/05/07 | 0.30 | $120.00 | DRAFTED REVISED SCHEDULING ORDER IN ACCORDANCE WITH RESULTS OF TELECONFERENCE WITH BASS AND THE COURT |
| JDD | 01/05/07 | 1.00 | $400.00 | REVIEW/ANALYZE EMAILS FROM D FAURE RE AND TELECONFERENCE WITH D FAURE RE DISCOVERY ISSUES IN PREPARATION FOR TELECONFERENCE WITH BASS AND THE COURT |
| JDD | 01/05/07 | 1.50 | $600.00 | PARTICIPATED IN TELECONFERENCE WITH COURT AND BASS RE GSF MOTION TO DISMISS, DISCOVERY, SCHEDULING AND RELATED ISSUES |
| JDD | 01/05/07 | 0.20 | $80.00 | EMAIL TO D FAURE OUTLINING SCHEDULE GOING FORWARD AS A RESULT OF TELECONFERENCE WITH BASS AND THE COURT |
| JDD | 01/05/07 | 0.40 | $160.00 | FOLLOW UP TELECONFERENCE WITH D FAURE RE TELECONFERENCE RESULTS, SCHEDULING AND RELATED ISSUES |
| JDD | 01/05/07 | 0.20 | $80.00 | FOLLOWUP TELECONFERENCE WITH COUNSEL FOR GSF ENTITIES RE STATUS OF MATTER/COORDINATION OF DISCOVERY EFFORTS |
| JDD | 01/08/07 | 0.40 | $160.00 | REVIEW/ANALYZE EMAIL FROM J KILGANNON RE DEBTORS' DISCOVERY RESPONSES IN LIGHT OF COURT'S REQUEST THAT PARTIES SUPPLEMENT THEIR RESPONSES AT 1/5 TELECONFERENCE AND DRAFTED RESPONSE THERETO |
| JDD | 01/09/07 | 4.20 | $1,680.00 | REVIEW/ANALYZE DOCUMENTS PRODUCED BY DEBTORS/GSF ENTITIES IN PREPARATION FOR DISCOVERY/EVIDENTIARY HEARINGS |
| JDD | 01/09/07 | 0.30 | $120.00 | REVIEW/ANALYZE SEVERAL EMAILS FROM BASS AND GSF ENTITIES COUNSEL RE TRIAL AND PRE-TRIAL CONFERENCE DATES/SCHEDULING AND RESPONDED THERETO |
| JDD | 01/09/07 | 0.30 | $120.00 | REVIEW/ANALYZE COURT'S SCHEDULING ORDER RE DISCOVERY ISSUES AND EMAIL TO GSF COUNSEL RE ISSUES RELATING TO MOTION TO DISMISS. REVIEW/ANALYZE RESPONSE TO EMAIL. |
| JDD | 01/09/07 | 0.10 | $40.00 | EMAIL TO CLIENT FORWARDING COURT'S SCHEDULING ORDER RE DISCOVERY ISSUES |
| JDD | 01/09/07 | 0.30 | $120.00 | REVIEW/ANALYZE SEVERAL EMAILS FROM BASS AND GSF ENTITIES COUNSEL RE DEPOSITION AND DISCOVERY ISSUES (INCLUDING JORDAN, 30(B)(6) AND E&Y DEPOSITIONS) |
| JDD | 01/09/07 | 0.40 | $160.00 | TELEPHONE CONFERENCE W/ P EISENBERG RE DISCOVERY/DEPOSITION ISSUES |
| JDD | 01/09/07 | 0.10 | $40.00 | REVISED (INSERTED TRIAL AND OTHER DATES), AND CIRCULATED TO ALL COUNSEL, SCHEDULING ORDER RE EVIDENTIARY TRIAL ON PENDING MOTIONS |
| JDD | 01/10/07 | 0.50 | $200.00 | DRAFTED RESPONSE TO L MOSES EMAIL RE DEPOSITION ISSUES AND FORWARDED TO CLIENT FOR REVIEW AND COMMENT |
| JDD | 01/11/07 | 0.20 | $80.00 | REVIEW/ANALYZE EMAIL FROM M CHAVEZ WITH DRAFT 30(B)(6) DEPOSITION NOTICE TO BEPCO. EMAIL TO M CHAVEZ WITH COMMENTS TO NOTICE. |
| JDD | 01/12/07 | 0.40 | $160.00 | REVIEW/ANALYZE VARIOUS NOTICES OF DEPOSITION OF NON-PARTY WITNESSES AND 30(B)(6) DEPOSITION NOTICES |
| JDD | 01/15/07 | 0.20 | $80.00 | REVIEW/ANALYZE EMAILS REGARDING AND REVISED SCHEDULING ORDER FOR APRIL TRIAL DATES, ETC.AND EMAILED REVISED ORDER TO COUNSEL. |
| JDD | 01/15/07 | 0.20 | $80.00 | COMMUNICATIONS WITH J KILGANNON RE E&Y DISCOVERY ISSUES AND PREPARATION OF PLEADINGS RE E & Y MATTER |
| JDD | 01/15/07 | 0.30 | $120.00 | REVIEW/ANALYZE SUPPLEMENTAL RESPONSES TO BASS DISCOVERY, IN CONNECTION WITH JUDGE GROSS' ORDER REQUIRING SUPPLEMENTATION, AND PROVIDED COMMENTS THEREON TO J KILGANNON. |
| JDD | 01/16/07 | 2.30 | $920.00 | RESEARCH RE AND BEGAN DRAFTING LETTER BRIEF/MOTION RE E&Y DISCOVERY ISSUES FOR PRESENTATION AT JANUARY 31 DISCOVERY HEARING |
| JDD | 01/16/07 | 0.20 | $80.00 | REVIEW/ANALYZE EMAIL FROM P EISENBERG IN RESPONSE TO MINE RE FORM OF FOURTH SCHEDULING ORDER IN BASS LITIGATION. DRAFTED CERTIFICATION OF COUNSEL RE SUBMISSION OF FOURTH SCHEDULING ORDER. |
| JDD | 01/16/07 | 0.20 | $80.00 | REVIEW/ANALYZE EMAILS FROM R PABST AND D FAURE RE E&Y SUBPOENA AND RESPONDED THERETO RE INTENT TO MOVE FOR PROTECTIVE ORDER |
| JDD | 01/16/07 | 0.10 | $40.00 | EMAIL TO D FAURE RE AND FORWARDING 30(B)(6) DEPOSITION NOTICES SERVED BY BASS |
| JDD | 01/16/07 | 0.20 | $80.00 | OUTLINED DEPOSITION SCHEDULE PURSUANT TO BASS AND GSF DEPOSITION NOTICES |
| JDD | 01/17/07 | 0.10 | $40.00 | REVIEW/ANALYZE ENTERED SCHEDULING ORDER RE BASS LITIGATION AND FORWARDED TO ALL COUNSEL |
| JDD | 01/17/07 | 0.30 | $120.00 | TELECONFERENCE WITH D FAURE RE BASS 30(B)(6) DEPOSITION NOTICES AND POMEROY ISSUES |
| JDD | 01/17/07 | 0.40 | $160.00 | REVIEW/ANALYZE BASS 30(B)(6) DEPOSITION NOTICES AND LISTS OF 31 DIFFERENT DESIGNATED SUBJECTS IN PREPARATION FOR CONFERENCE WITH D FAURE |
| JDD | 01/17/07 | 0.20 | $80.00 | TELEPHONE CONFERENCE W/ J KILGANNON RE E&Y MOTION/LETTER BRIEF AND RELATED ISSUES |
| JDD | 01/19/07 | 0.10 | $40.00 | REVIEW/ANALYZE EMAIL FROM G WERKHEISER RE GSF ENTITIES MOTION TO QUASH/RESPONSE AND DEBTORS' RESPONSE TO 30(B)(6) NOTICES |
| JDD | 01/19/07 | 2.50 | $1,000.00 | REVIEW/ANALYZE BASS 30(B)(6) NOTICE AND DRAFTED DEBTORS' RESPONSE THERETO |
| JDD | 01/19/07 | 0.10 | $40.00 | REVIEW/ANALYZE EMAIL FROM L MOSES RE DISCOVERY ISSUES AND EMAILS WITH J KILGANNON RE RESPONDING THERETO |

| | | | | |
|---|---|---|---|---|
| JDD | 01/19/07 | 0.40 | $160.00 | TELEPHONE CONFERENCE W/ D FAURE AND EMAILS FROM AND TO D FAURE RE RESPONSE TO BASS 30(B)(6) NOTICE |
| JDD | 01/19/07 | 0.30 | $120.00 | REVIEW/ANALYZE GSF ENTITIES' MOTION TO QUASH/RESPONSE TO BASS 30(B)(6) NOTICES DIRECTED TO GSF ENTITIES |
| JDD | 01/19/07 | 0.10 | $40.00 | EMAILS FROM AND TO D FAURE RE WERKHEISER EMAIL RE RESPONSES TO 30(B)(6) NOTICES |
| JDD | 01/22/07 | 0.30 | $120.00 | CONF. WITH J KILGANNON RE SEVERAL DISCOVERY ISSUES (E&Y AND BASS' SUPPLEMENTAL/AMENDED RESPONSES) |
| JDD | 01/22/07 | 0.50 | $200.00 | TELECONFERENCE WITH P EISENBERG RE BASS' COUNSEL'S 1/19 EMAIL RE GSF AND DEBTORS' 30B)(6) DEPOSITION NOTICE RESPONSES |
| JDD | 01/22/07 | 1.50 | $600.00 | REVIEW/ANALYZE BASS' SUPPLEMENTAL/AMENDED RESPONSES TO DISCOVERY |
| JDD | 01/22/07 | 0.20 | $80.00 | DRAFTED EMAIL TO G WERKHEISER IN RESPONSE TO HIS FROM 1/19 RE RESPONSE TO 30(B)(6) DEPOSITION NOTICES |
| JDD | 01/23/07 | 0.20 | $80.00 | REVIEW/ANALYZE EMAIL FROM D FAURE RE E&Y RETENTION AND DRAFTED EMAIL TO FAURE ET AL RE E&Y RETENTION BY SANTA FE AND GSF |
| JDD | 01/23/07 | 0.20 | $80.00 | REVIEW/ANALYZE EMAILS FROM P EISENBERG AND G WERKHEISER RE DISCOVERY ISSUES (30(B)6) NOTICE RESPONSES AND ALLEGED DEFICIENCIES IN GSF AND DEBTOR DISCOVERY RESPONSES) |
| JDD | 01/23/07 | 0.30 | $120.00 | REVIEW/ANALYZE EMAILS FROM P EISENBERG AND G WERKHEISER RE GSF-BASS DISCOVERY DISPUTES |
| JDD | 01/24/07 | 0.70 | $280.00 | REVIEW/ANALYZE BASS' MOTIONS E MOTION TO STRIKE GSF MOTION TO QUASH AND REQUEST FOR EMERGENCY HEARING |
| JDD | 01/24/07 | 0.30 | $120.00 | EMAILS TO AND FROM G WERKHEISER RE DEBTORS' POSITION IN RESPECT OF THE BASS MOTIONS TO STRIKE AND FOR EMERGENCY HEARING |
| JDD | 01/24/07 | 0.80 | $320.00 | REVIEW/ANALYZE DRAFT MOTION TO QUASH RE E&Y SUBPOENA AND MADE COMMENTS THERETO.  FORWARDED COMMENTS TO CLIENT AND CO-COUNSEL. |
| JDD | 01/24/07 | 0.30 | $120.00 | REVIEW/ANALYZE CO-COUNSEL COMMENTS TO S&L LETTER BRIEF RE E&Y ISSUES FORWARDED BY J KILGANNON AND TELECONFERENCE WITH J KILGANNON RE E&Y ISSUES |
| JDD | 01/25/07 | 0.20 | $80.00 | TELEPHONE CONFERENCE W/ J KILGANNON RE 1/25 HEARING RESULTS AND FOLLOW-UP |
| JDD | 01/26/07 | 2.00 | $800.00 | REVIEW/ANALYZE GSF AND BASS' COUNSEL'S LETTERS TO JUDGE GROSS RE DISCOVERY ISSUES |
| JDD | 01/26/07 | 0.20 | $80.00 | REVIEW/ANALYZE JUDGE GROSS' 1/26 DISCOVERY ORDER AND EMAILS TO AND FROM J KILGANNON RE TERMS OF ORDER |
| JDD | 01/26/07 | 0.80 | $320.00 | DRAFTED RESPONSE TO L MOSES LETTER TO ERNST & YOUNG |
| JDD | 01/26/07 | 0.10 | $40.00 | REVIEW/ANALYZE L MOSES 1/25 LETTER TO E&Y RE SUBPOENA/DISCOVERY |
| JDD | 01/26/07 | 0.40 | $160.00 | EMAIL AND TELEPHONE COMMUNICATIONS WITH P EISENBERG AND J KILGANNON RE L MOSES LETTER AND RESPONSE THERETO |
| JDD | 01/26/07 | 3.50 | $1,400.00 | REVIEWED AND REVISED LETTER TO JUDGE GROSS RE E&Y AND OTHER DISCOVERY ISSUES AND PREPARED SAME, ALONG WITH EXHIBITS, FOR FILING/SERVICE |
| JDD | 01/29/07 | 0.30 | $120.00 | EMAIL TO AND TELECONFERENCE WITH J KILGANNON RE TODAY'S DISCOVERY TELECONFERENCE WITH BASS AND GSF COUNSEL |
| JDD | 01/30/07 | 0.40 | $160.00 | TELECONFERENCE WITH J KILGANNON RE YESTERDAY'S DISCOVERY TELECONFERENCE WITH BASS AND GSF COUNSEL |
| JDD | 01/30/07 | 0.40 | $160.00 | TELEPHONE CONFERENCE W/ D FAURE RE 1/31 HEARING AND RELATED ISSUES |
| JDD | 01/31/07 | 7.00 | $2,800.00 | PREPARATION FOR AND ATTENDANCE AT DISCOVERY HEARING/CONFERENCE WITH JUDGE GROSS, BASS AND GSF |
| JDD | 01/31/07 | 0.40 | $160.00 | TELEPHONE CONFERENCE W/ CLIENT RE DISCOVERY HEARING/CONFERENCE |
| **JDD** | | **84.70** | **$32,840.50** | |
| MES | 01/02/07 | 0.20 | $73.00 | E-MAILS W/ JDD AND JCK RE BASS DISCOVERY RESPONSES (SPECIFICALLY, THEIR LACK OF RESPONSES) AND STRATEGY GOING FORWARD TO DEAL WITH THE LACK OF RESPONSES THERETO (.2) |
| **MES** | | **0.20** | **$73.00** | |
| | Total: | **191.90** | **$55,667.50** | |

**Plan and Disclosure Statement**

| | | | | |
|---|---|---|---|---|
| JDD | 12/06/06 | 7.00 | $2,555.00 | CONTINUED DRAFTING PLAN, DISCLOSURE STATEMENT AND LIQUIDATING TRUST AGREEMENT |
| JDD | 12/14/06 | 2.50 | $912.50 | CONTINUED DRAFTING PLAN AND DISCLOSURE DOCUMENTS |
| JDD | 12/27/06 | 0.20 | $73.00 | CONFERENCE WITH M SIMON RE DRAFTING PLAN AND DISCLOSURE DOCUMENTS. |
| JDD | 01/19/07 | 0.20 | $80.00 | COMMUNICATIONS WITH M SIMON RE PLAN AND DISCLOSURE DRAFTING AND RELATED ISSUES |
| **JDD** | | **9.90** | **$3,620.50** | |
| MES | 12/27/06 | 0.30 | $97.50 | TELEPHONE CONF W/ JDD RE ISSUES RELATING TO A PLAN AND DISCLOSURE STATEMENT |

| | | | | |
|---|---|---|---|---|
| MES | 01/02/07 | 1.40 | $511.00 | REVIEW OF DRAFT DISCLOSURE STATEMENT AND PLAN |
| MES | 01/03/07 | 1.60 | $584.00 | ANALYSIS OF MATERIAL NEEDED TO BE PLACED INTO DISCLOSURE STATEMENT AND PLAN BASED UPON PRIOR REVIEW OF DRAFT DOCUMENTS |
| MES | 01/05/07 | 5.00 | $1,825.00 | ANALYSIS OF DRAFT PLAN AND DISCLOSURE STATEMENT AND INITIAL REVISIONS TO SAME |
| MES | 01/08/07 | 1.60 | $584.00 | REVIEW OF DISCLOSURE STATEMENT AND PLAN PROVISIONS |
| MES | 01/11/07 | 2.00 | $730.00 | WORK ON REVISIONS TO THE PLAN AND DISCLOSURE STATEMENT |
| MES | 01/17/07 | 1.40 | $511.00 | E-MAILS W/ JDD RE PLAN AND DISCLOSURE STATEMENT (.2) - ANALYSIS OF DRAFT OF PLAN (.4) - REVIEW/ANALYSIS OF 524(g) AND TRUST ISSUES RELATING TO PLAN AND DISCLOSURE STATEMENT (.8) |
| MES | 01/18/07 | 5.60 | $2,044.00 | REVISE DRAFT OF PLAN (3.0) AND RESEARCH CHANNELING INJUNCTION USAGE WITHOUT 524(G) (2.6) |
| MES | 01/19/07 | 8.00 | $2,920.00 | REVISE PLAN AND DISCLOSURE STATEMENT |
| MES | 01/20/07 | 4.00 | $1,460.00 | REVISE DISCLOSURE STATEMENT |
| MES | 01/22/07 | 1.20 | $438.00 | REVIEW REVISED DISCLOSURE STATEMENT AND PLAN AND E-MAIL TO JDD WITH MEMO RE CONSIDERATIONS AND AREAS TO WORK ON |
| MES | 01/23/07 | 1.00 | $365.00 | CONF CALL W/ JDD RE QUESTIONS RE PLAN AND DISCLOSURE STATEMENT AND REVIEW OF CODE RE SAME |
| MES | 01/24/07 | 0.70 | $255.50 | REVIEW E-MAIL FROM JDD RE MOTION TO SET CLAIMS BAR DATE (.1) - REVIEW LOCAL RULES RE PLEADINGS NECESSARY WHEN FILING A PLAN AND DISCLOSURE STATEMENT AND TIMING OF CLAIMS BAR DATE (.6) |
| MES | 01/26/07 | 5.00 | $1,825.00 | REVIEW OF CODE PROVISIONS FOR PLAN CONFIRMATION, DISCHARGE, AND OTHER CHAPTER 11 PLAN AND DISCLOSURE STATEMENT REQUIREMENTS AND ANALYSIS OF DRAFT DISCLOSURE STATEMENT AND PLAN RE SAME (3.0) - REVISE DS AND PLAN AND COORDINATE DEFINITIONS AND SECTIONS (2.0) |
| MES | 01/29/07 | 1.60 | $584.00 | REVISE DISCLOSURE STATEMENT AND PLAN AND SEND TO JDD ALONG WITH COVER E-AIL SETTING FORTH CERTAIN ISSUES RELATING TO DISCLOSURE STATEMENT AND PLAN |
| **MES** | | **40.40** | **$14,734.00** | |
| | Total: | 50.30 | $18,354.50 | |

**Prep for/Attendance at Hearing/Other**

| | | | | |
|---|---|---|---|---|
| JDD | 12/19/06 | 2.80 | $1,022.00 | PREPARATION FOR ()INCLUDING REVIEW OF PLEADINGS AND OUTLINE OF ARGUMENT) AND ATTENDANCE AT OMNIBUS HEARING |
| **JDD** | | **2.80** | **$1,022.00** | |
| | Total: | 2.80 | $1,022.00 | |

**Prep/Revise Motion/Joinder**

| | | | | |
|---|---|---|---|---|
| JDD | 11/22/06 | 3.50 | $1,277.50 | BEGAN DRAFTING MOTION TO EXTEND EXCLUSIVE PERIODS |
| JDD | 11/28/06 | 1.20 | $438.00 | REVISED EXCLUSIVITY MOTION. EMAIL TO CLIENT RE AND FORWARDING MOTION FOR REVIEW AND COMMENT. |
| JDD | 11/29/06 | 0.70 | $255.50 | REVIEW/ANALYZE EMAIL FROM D FAURE WITH COMMENTS TO EXCLUSIVITY MOTION AND REVISED MOTION ACCORDINGLY |
| JDD | 11/29/06 | 0.60 | $219.00 | COMMUNICATIONS WITH J KILGANNON RE EXCLUSIVITY RESEARCH AND REVISION OF MOTION. REVIEWED CASE LAW FOUND BY KILGANNON. |
| JDD | 11/30/06 | 0.50 | $182.50 | REVIEW/ANALYZE EMAIL FROM D FAURE WITH COMMENTS TO EXCLUSIVITY MOTION,. REVISED AND PREPARED MOTION FOR FILING/SERVICE. |
| **JDD** | | **6.50** | **$2,372.50** | |
| | Total: | 6.50 | $2,372.50 | |

**Case Administration**

| | | | | |
|---|---|---|---|---|
| JDD | 11/30/06 | 0.20 | $73.00 | REVIEW/ANALYZE MONTHLY REPORTS FOR OCTOBER AND PREPARED SAME FOR FILING |
| JDD | 12/05/06 | 0.20 | $73.00 | TELEPHONE CONFERENCE W/ G WERKHEISER RE EXCLUSIVITY MOTION |
| JDD | 12/06/06 | 0.30 | $109.50 | EMAILS TO AND FROM G WERKHEISER RE PROPOSAL FOR DEFERRAL OF EXCLUSIVITY MOTION UNTIL AFTER 1/24 & 25 HEARINGS AND BASS OBJECTION THERETO |
| JDD | 12/06/06 | 0.30 | $109.50 | DRAFTED AGENDA NOTICE FOR 12/19 HEARING |
| JDD | 12/14/06 | 0.20 | $73.00 | REVIEW/ANALYZE AND REVISED AGENDA NOTICE FOR 12/19 HEARING. PREPARED NOTICE FOR FILING AND SERVICE. |
| JDD | 12/18/06 | 0.20 | $73.00 | REVIEW/ANALYZE EMAIL FROM D FAURE WITH NOVEMBER MONTHLY OPERATING REPORTS |
| JDD | 12/20/06 | 0.50 | $182.50 | DRAFTED BRIDGE ORDER RE EXCLUSIVITY MOTION AND FORWARDED SAME TO COUNSEL FOR BASS AND GSF FOR REVIEW AND COMMENT |
| JDD | 12/22/06 | 0.20 | $73.00 | EMAILS TO AND FROM BASS' COUNSEL RE DRAFTS OF FEE APPLICATION AND EXCLUSIVITY ORDERS |
| JDD | 12/28/06 | 0.20 | $73.00 | EMAIL TO G WERKHEISER RE EXCLUSIVITY BRIDGE ORDER AND DRAFTED CERTIFICATION RE BRIDGE ORDER AND PREPARED CERTIFICATION/BRIDGE ORDER FOR FILING/SERVICE. |

| JDD | 12/28/06 | 0.20 | $73.00 | DRAFTED AND PREPARED FOR FILING AND SERVICE CERTIFICATION RE EXCLUSIVITY BRIDGE ORDER |
|---|---|---|---|---|
| JDD | 01/02/07 | 0.50 | $200.00 | DRAFTED AGENDA NOTICE FOR 1/17 PRE-TRIAL CONFERENCE/HEARING |
| JDD | 01/16/07 | 0.80 | $320.00 | REVIEW/ANALYZE EMAIL FROM D FAURE AND LETTER FROM MORGAN LEWIS WITH INFORMATION RE TROIA AND SINZ CLAIMS AND BEGAN DRAFTING LETTER TO TROIA AND SINZ PLAINTIFF'S COUNSEL (ASBESTOSIS CLAIMANTS IN CALIFORNIA LITIGATION) RE AUTOMATIC STAY RELATING TO DEBTORS AND ALTER EGO CLAIMS. |
| JDD | 01/29/07 | 0.20 | $80.00 | DRAFTED AGENDA NOTICE FOR 1/31 DISCOVERY STATUS CONFERENCE/HEARING |
| JDD | 01/30/07 | 0.20 | $80.00 | REVIEW/ANALYZE DECEMBER MONTHLY OPERATING REPORTS AND PREPARED SAME FOR FILING/SERVICE |
| JDD | 01/30/07 | 0.10 | $40.00 | COMMUNICATIONS WITH S FOSTER AND D FAURE RE CERTIFIED COPY OF MEMORIAL PETITION FOR DIP BANK ACCOUNT |
| JDD | | 4.30 | $1,632.50 | |
| | | | | |
| JM | 12/22/06 | 0.40 | $48.00 | SCAN, EFILE, COPY, SERVICE TO COURT AND OPPOSING COUNSEL |
| JM | | 0.40 | $48.00 | |
| | | | | |
| SLFO | 11/03/06 | 0.30 | $36.00 | PREPARE, EFILE AND SERVE DEBTORS' COMBINED BRIEF IN OPPOSITION TO MOTIONS OF BEPCO, L.P., F/K/A BASS ENTERPRISES PRODUCTION COMPANY, FOR ORDERS (I) (A) DISMISSING OR CONVERTING CASES TO CHAPTER 7 CASES, OR (B) APPOINTING A CHAPTER 11 TRUSTEE, OR (C) APPOINTING AN EXAMINER, AND (II) FOR MODIFICATION OF THE AUTOMATIC STAY UNDER 11 U.S.C. SECTION 362; AND REPLY BRIEF OF SANTA FE MINERALS, INC. IN SUPPORT OF MOTION FOR PRELIMINARY DECLARATORY AND INJUNCTIVE RELIEF - SEND COPY TO DAVID FAURE AND ERIC LOCKRIDGE VIA EMAIL |
| SLFO | 11/08/06 | 0.50 | $60.00 | DRAFT AGENDA FOR NOVEMBER 13TH HEARING |
| SLFO | 11/08/06 | 0.50 | $60.00 | PREPARE, EFILE AND SERVE DEBTORS' RESPONSE TO BEPCO, L. P.'S REQUEST FOR DISCOVERY STATUS CONFERENCE (CASE NOS. 06-10859/06-50822) - SEND BOUND COPY TO JUDGE GROSS VIA HAND DELIVERY - SEND COPY TO DAVID FAURE AND ERIC LOCKRIDGE VIA EMAIL |
| SLFO | 11/08/06 | 0.20 | $24.00 | ASSEMBLE HEARING BINDERS - SEND COPY TO JUDGE GROSS VIA HAND DELIVERY |
| SLFO | 11/08/06 | 0.50 | $60.00 | PREPARE, EFILE AND SERVE NOTICE OF AGENDA OF MATTERS SCHEDULED FOR HEARING ON MONDAY, NOVEMBER 13, 2006, AT 10:00 A.M. (CASE NOS. 06-10859/06-50822) - SEND COPY TO DAVID FAURE AND ERIC LOCKRIDGE VIA EMAIL |
| SLFO | 11/20/06 | 0.30 | $36.00 | DRAFT NOTICE OF SERVICE RE: DEBTORS' AND PLAINTIFF'S COMBINED FIRST SETS OF INTERROGATORIES, REQUEST FOR PRODUCTION OF DOCUMENTS AND REQUEST FOR ADMISSIONS DIRECTED TO BEPCO, L.P., F/K/A BASS ENTERPRISES PRODUCTION COMPANY |
| SLFO | 11/20/06 | 0.30 | $36.00 | PREPARE, EFILE AND SERVE NOTICE OF SERVICE (CASE NOS. 06-06-50822 AND 06-10859) - SEND COPY TO DAVID FAURE AND ERIC LOCKRIDGE VIA EMAIL |
| SLFO | 11/21/06 | 0.30 | $36.00 | DRAFT NOTICE OF SERVICE RE: DEBTORS' AND PLAINTIFF'S JOINDER TO DISCOVERY OF GLOBALSANTAFE CORPORATION DIRECTED TO BEPCO, L.P., F/K/A BASS ENTERPRISES PRODUCTION COMPANY |
| SLFO | 11/21/06 | 0.30 | $36.00 | PREPARE, EFILE AND SERVE NOTICE OF SERVICE (CASE NOS. 06-06-50822 AND 06-10859) - SEND COPY TO DAVID FAURE AND ERIC LOCKRIDGE VIA EMAIL |
| SLFO | 11/29/06 | 0.40 | $48.00 | PREPARE, E-FILE AND SERVE FIRST INTERIM APPLICATION OF STEVENS & LEE, P.C. FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE DEBTORS FOR THE PERIOD AUGUST 16, 2006 THROUGH OCTOBER 31, 2006 - SEND COPY TO DAVID FAURE AND ERIC LOCKRIDGE VIA EMAIL |
| SLFO | 11/30/06 | 0.50 | $60.00 | PREPARE AND E-FILE MONTHLY OPERATING REPORTS FOR OCTOBER, 2006 (CASE NOS. 06-10860 AND 06-10859) - SEND COPY TO DAVID BUCHBINDER VIA HAND DELIVERY - SEND COPY TO DAVID FAURE AND ERIC LOCKRIDGE VIA EMAIL |
| SLFO | 11/30/06 | 0.30 | $36.00 | PREPARE, E-FILE AND SERVE MOTION FOR EXTENSION OF EXCLUSIVITY PERIODS TO FILE PLANS OF REORGANIZATION AND TO SOLICIT ACCEPTANCES OF PLANS OF REORGANIZATION - SEND COPY TO DAVID FAURE AND ERIC LOCKRIDGE VIA EMAIL |
| SLFO | 12/19/06 | 0.50 | $60.00 | PREPARE AND EFILE MONTHLY OPERATING REPORTS FOR NOVEMBER, 2006 (CASE NOS. 06-10860 AND 06-10859) - SEND COPY TO DAVID BUCHBINDER VIA HAND DELIVERY - SEND COPY TO DAVID FAURE AND ERIC LOCKRIDGE VIA EMAIL |
| SLFO | 01/02/07 | 0.30 | $37.50 | PREPARE, EFILE AND SERVE DEBTORS' JOINDER IN MOTION TO DISMISS RELIEF FROM STAY MOTION FILED BY BEPCO, L. P. F/K/A BASS ENTERPRISES PRODUCTION COMPANY - SEND COPY TO DAVE FAURE AND ERIC LOCKRIDGE VIA EMAIL |
| SLFO | 01/16/07 | 0.50 | $62.50 | PREPARE, EFILE AND SERVE CERTIFICATION OF COUNSEL REGARDING PROPOSED FORM OF SCHEDULING ORDER - SEND BOUND COPY TO JUDGE GROSS VIA HAND DELIVERY - SEND COPY TO DAVID FAURE AND ERIC LOCKRIDGE VIA EMAIL |

| | | | | |
|---|---|---|---|---|
| SLFO | 01/19/07 | 0.30 | $37.50 | PREPARE, EFILE AND SERVE DEBTORS' RESPONSE TO NOTICE OF RULE 30(B)(6) DEPOSITION OF BEPCO, L.P. F/K/A BASS ENTERPRISES PRODUCTION COMPANY DIRECTED TO THE DEBTORS - SEND COPY TO DAVE FAURE AND ERIC LOCKRIDGE VIA EMAIL |
| SLFO | 01/24/07 | 0.20 | $25.00 | DRAFT MOTION AND ORDER FOR ADMISSION PRO HAC VICE |
| SLFO | 01/25/07 | 0.20 | $25.00 | PREPARE, EFILE AND SERVE MOTION AND ORDER FOR ADMISSION PRO HAC VICE - SEND COPY TO JUDGE GROSS VIA HAND DELIVERY - SEND COPY TO DAVE FAURE AND ERIC LOCKRIDGE VIA EMAIL |
| SLFO | 01/25/07 | 0.20 | $25.00 | SEND AND SERVE LETTER TO THE HONORABLE KEVIN GROSS |
| SLFO | 01/29/07 | 0.50 | $62.50 | PREPARE AND EFILE (CASE NOS. 06-10859 AND 06-50822) - LETTER TO THE HONORABLE KEVIN GROSS |
| SLFO | 01/29/07 | 0.50 | $62.50 | DRAFT AGENDA FOR JANUARY 31, 2007 HEARING |
| SLFO | 01/29/07 | 0.50 | $62.50 | PREPARE, EFILE AND SERVE NOTICE OF AGENDA OF MATTERS SCHEDULED FOR HEARING ON WEDNESDAY, JANUARY 31, 2007 AT 2:00 P.M. (CASE NO. 06-10859 AND 06-50822) - SEND BOUND COPY TO JUDGE GROSS - SEND COPY TO DAVE FAURE AND ERIC LOCKRIDGE VIA EMAIL |
| SLFO | 01/30/07 | 0.50 | $62.50 | PREPARE AND EFILE MONTHLY OPERATING REPORTS FOR DECEMBER 31, 2006 (CASE NOS. 06-10859 AND 06-10860) - SEND COPY TO DAVID BUCHBINDER VIA HAND DELIVERY - SEND COPY TO DAVID FAURE AND ERIC LOCKRIDGE VIA EMAIL |
| SLFO | 01/30/07 | 0.20 | $25.00 | CONTACT USBC RE: CERTIFIED COPY OF THE NOTICE OF FILING |
| SLFO | 01/31/07 | 0.50 | $62.50 | PREPARE, EFILE AND SERVE NOTICE OF AMENDED AGENDA OF MATTERS SCHEDULED FOR HEARING ON WEDNESDAY, JANUARY 31, 2007 AT 12:00 P.M. (CASE NOS. 06-10859 AND 06-50822) - SEND BOUND COPY TO JUDGE GROSS - SEND COPY TO DAVE FAURE AND ERIC LOCKRIDGE VIA EMAIL |
| **SLFO** | | **9.30** | **$1,138.00** | |
| | **Total:** | **14.00** | **$2,818.50** | |

### Claims Administration and Objections

| | | | | |
|---|---|---|---|---|
| MES | 01/23/07 | 0.40 | $146.00 | CONF CALL W/ JDD RE CLAIMS BAR DATE MOTION (.1) - REVIEW OF RULES RELATING TO TIMING OF SAME (.3) |
| **MES** | | **0.40** | **$146.00** | |
| | **Total:** | **0.40** | **$146.00** | |

### Fee/Employment Applications

| | | | | |
|---|---|---|---|---|
| JDD | 11/22/06 | 1.60 | $584.00 | REVIEW/ANALYZE AND REVISED FIRST INTERIM APPLICATION FOR COMPENSATION/REIMBURSEMENT OF EXPENSES |
| JDD | 11/22/06 | 0.20 | $73.00 | EMAIL TO CLIENT RE AND FORWARDING DRAFT FEE APPLICATION |
| JDD | 11/29/06 | 0.40 | $146.00 | REVIEW/ANALYZE EMAIL FROM D FAURE RE AND PREPARED FEE APPLICATION AND RELATED EXHIBITS/PAPERS FOR FILING AND SERVICE. |
| **JDD** | | **2.20** | **$803.00** | |
| MES | 11/16/06 | 0.30 | $97.50 | E-MAILS W/ JDD RE PREPARATION OF S&L FIRST INTERIM FEE APPLICATION |
| MES | 11/17/06 | 1.00 | $325.00 | COORDINATE COMPILING OF BILLING DATA FOR PREPARATION OF FIRST INTERIM FEE APPLICATION |
| MES | 11/20/06 | 0.70 | $227.50 | CONF W/ VAF RE PREPARATION OF DRAFT OF FIRST INTERIM FEE APPLICATION, E-MAILS W/ SUPPORT STAFF RE GENERATION OF NEEDED EXHIBITS RELATING TO FEES AND EXPENSES, CONF W/ VAF RE LOCAL RULES RE TIMING FOR HEARING ON FEE APP |
| MES | 11/21/06 | 6.20 | $2,015.00 | REVIEW AND REVISE DRAFT OF S&L'S FIRST INTERIM FEE APPLICATION, ANALYSIS OF LOCAL RULES RE SAME, REVIEW AND REVISE EXHIBITS RELATING TO COMPENSATION AND EXPENSES, E-MAILS W/ S&L COUNSEL RE INFORMATION NEEDED FOR FEE APPLICATION SPECIFICS RELATING TO THEIR PRACTICE YEARS, RATES, ETC. |
| MES | 11/22/06 | 1.60 | $520.00 | E-MAILS W/ JDD RE REVISIONS NEEDED TO S&L FIRST INTERIM FEE APPLICATION, REVISE FEE APP PER COMMENTS, COORDINATE REVISIONS TO COMPENSATION EXHIBIT DETAIL |
| **MES** | | **9.80** | **$3,185.00** | |
| VAF | 11/20/06 | 3.60 | $540.00 | MEETING WITH MES; EMAILS T/F ACCOUNTING RE CATEGORIES FOR FEE APPLICATIONS/SPREADSHEET REQUIRED FOR COURT; PREPARE TEMPLATE/DRAFT FEE APPLICATION FOR MES TO COMPLETE |
| VAF | 11/21/06 | 1.10 | $165.00 | EDITS TO EXCEL SPREADSHEETS FOR 1ST INTERIM FEE APP; TO MES TO COMPLETE |
| **VAF** | | **4.70** | **$705.00** | |
| | **Total:** | **16.70** | **$4,693.00** | |

### Fee/Employment Objections

| | | | | |
|---|---|---|---|---|
| JDD | 12/01/06 | 0.10 | $36.50 | EMAIL FROM G WERKHEISER (BASS COUNSEL) RE FEE APPLICATION. |
| JDD | 12/12/06 | 0.30 | $109.50 | REVIEW/ANALYZE BASS' OBJECTION TO FIRST FEE APPLICATION |

| | | | | |
|---|---|---|---|---|
| JDD | 12/13/06 | 0.20 | $73.00 | CONF. WITH J KILGANNON RE BASS OBJECTION TO FEE APPLICATION AND RESPONSE TO BASS OBJECTION. |
| JDD | 12/18/06 | 1.20 | $438.00 | REVIEW/ANALYZE CASE LAW FORWARDED BY J KILGANNON RE BASS OBJECTION TO STEVENS & LEE FEE APPLICATION |
| JDD | 12/20/06 | 0.20 | $73.00 | EMAIL TO BASS AND GSF COUNSEL RE AND FORWARDING REVISED FEE APP ORDER AND REVIEW/ANALYZE EMAILS FROM BASS AND GSF COUNSEL IN RESPONSE. |
| JDD | 12/20/06 | 0.30 | $109.50 | REVIEW/ANALYZE BASS PROPOSED CHANGES TO FEE APP ORDER AND REVISED ORDER. |
| **JDD** | | **2.30** | **$839.50** | |
| | Total: | 2.30 | $839.50 | |

**Asset Analysis and Recovery**

| | | | | |
|---|---|---|---|---|
| JDD | 01/19/07 | 0.30 | $120.00 | REVIEW/ANALYZE 9TH CIRCUIT ALTER EGO CASE FORWARDED BY J KILGANNON AND REVISED LETTER TO TROIA ND SINZ PLAINTIFFS AND PREPARED LETTER FOR FORWARDING TO COUNSEL AND CO-DEFENDANTS' COUNSEL |
| JDD | 01/22/07 | 0.20 | $80.00 | REVIEW/ANALYZE EMAIL FROM D FAURE WITH DEPOSITION NOTICES OF GSF IN TROIA AND SINZ MATTERS |
| JDD | 01/22/07 | 0.10 | $40.00 | EMAIL TO D FAURE RE RECOMMENDATIONS RE RESPONSE TO DEPOSITION NOTICES IN TROIA AND SINZ MATTERS |
| JDD | 01/24/07 | 0.60 | $240.00 | TELECONFERENCE WITH COUNSEL IN CALIFORNIA ACTIONS RE TROIA AND SINZ ACTIONS AND COURSE OF ACTION RE PRESERVATION OF ESTATE CLAIMS. REVIEW/ANALYZE EMAILS FROM COUNSEL RE COURSE OF ACTION AND FURTHER COMMUNICATIONS WITH PLAINTIFFS' COUNSEL. |
| JDD | 01/24/07 | 0.20 | $80.00 | EMAILS FROM AND TO N MANZER, WILMER HALE (COUNSEL FOR POSSIBLE INSURER OF DEBTORS) RE STATUS OF MATTER |
| JDD | 01/29/07 | 0.20 | $80.00 | TELECONFERENCE WITH N MANZER (WILMER HALE - HARTFORD COUNSEL) RE STATUS OF BANKRUPTCY CASE, PLAN AND RELATED ISSUES |
| JDD | 01/29/07 | 0.10 | $40.00 | EMAILS TO AND FROM D FAURE RE HARTFORD'S STATUS AS DEBTORS' INSURER |
| JDD | 01/29/07 | 0.20 | $80.00 | TELEPHONE CALLS TO AND FROM N RAMSEY (KAZAN MCCLAIN COUNSEL) RE ALTER EGO/BANKRUPTCY ISSUES RELATING TO CALIFORNIA ASBESTOS LITIGATION (SINZ AND TROIA) AND EMAIL TO CALIFORNIA COUNSEL RE STATUS OF PHONE CALLS |
| JDD | 01/31/07 | 0.10 | $40.00 | TEL TO N RAMSEY (KAZAN MCCLAIN BANKRUPTCY COUNSEL) AND EMAIL TO B SMITH RE SINZ AND TROIA MATTERS. |
| **JDD** | | **2.00** | **$800.00** | |
| | Total: | 2.00 | $800.00 | |

| | | | |
|---|---|---|---|
| Grand Total: | | 286.90 | $96,713.50 |

| | 2006 | 2007 | |
|---|---|---|---|
| **JCK** | 63.90 | 43.10 | 107.00 |
| **JDD** | 55.70 | 59.00 | 114.70 |
| **MES** | 10.10 | 40.70 | 50.80 |
| **VAF** | 4.70 | 0.00 | 4.70 |
| **SLFO** | 4.90 | 4.40 | 9.30 |
| **JM** | 0.40 | 0.00 | 0.40 |
| | 139.70 | 147.20 | 286.90 |

# EXHIBIT B

| Date | Dollars | BillText |
|------|---------|----------|
| 12/21/06 | $112.07 | COMPUTER RESEARCH: WESTLAW |
| 01/23/07 | $132.32 | COMPUTER RESEARCH |
| | **$244.39** | |
| | | |
| 11/14/06 | $8.75 | DOCUMENT REPRODUCTION |
| 11/14/06 | $9.25 | DOCUMENT REPRODUCTION |
| 11/14/06 | $9.50 | DOCUMENT REPRODUCTION |
| 11/14/06 | $9.75 | DOCUMENT REPRODUCTION |
| 11/14/06 | $9.75 | DOCUMENT REPRODUCTION |
| 11/14/06 | $9.75 | DOCUMENT REPRODUCTION |
| 11/14/06 | $9.75 | DOCUMENT REPRODUCTION |
| 11/14/06 | $10.25 | DOCUMENT REPRODUCTION |
| 11/14/06 | $10.25 | DOCUMENT REPRODUCTION |
| 11/14/06 | $10.25 | DOCUMENT REPRODUCTION |
| 11/14/06 | $10.50 | DOCUMENT REPRODUCTION |
| 11/14/06 | $10.50 | DOCUMENT REPRODUCTION |
| 11/14/06 | $10.50 | DOCUMENT REPRODUCTION |
| 11/14/06 | $10.25 | DOCUMENT REPRODUCTION |
| 11/14/06 | $10.25 | DOCUMENT REPRODUCTION |
| 11/14/06 | $10.50 | DOCUMENT REPRODUCTION |
| 11/14/06 | $49.50 | DOCUMENT REPRODUCTION |
| 11/22/06 | $1.25 | DOCUMENT REPRODUCTION |
| 11/22/06 | $1.25 | DOCUMENT REPRODUCTION |
| 11/22/06 | $1.25 | DOCUMENT REPRODUCTION |
| 11/22/06 | $1.25 | DOCUMENT REPRODUCTION |
| 11/22/06 | $1.50 | DOCUMENT REPRODUCTION |
| 11/22/06 | $1.50 | DOCUMENT REPRODUCTION |
| 11/27/06 | $3.75 | DOCUMENT REPRODUCTION |
| 11/27/06 | $3.75 | DOCUMENT REPRODUCTION |
| 11/27/06 | $3.75 | DOCUMENT REPRODUCTION |
| 11/27/06 | $4.50 | DOCUMENT REPRODUCTION |
| 11/27/06 | $4.25 | DOCUMENT REPRODUCTION |
| 11/27/06 | $4.25 | DOCUMENT REPRODUCTION |
| 11/27/06 | $2.75 | DOCUMENT REPRODUCTION |
| 11/27/06 | $2.75 | DOCUMENT REPRODUCTION |
| 11/27/06 | $3.00 | DOCUMENT REPRODUCTION |
| 11/27/06 | $28.75 | DOCUMENT REPRODUCTION |
| 11/27/06 | $8.75 | DOCUMENT REPRODUCTION |
| 12/04/06 | $3.25 | DOCUMENT REPRODUCTION |
| 12/04/06 | $3.25 | DOCUMENT REPRODUCTION |
| 12/04/06 | $4.75 | DOCUMENT REPRODUCTION |
| 12/04/06 | $2.00 | DOCUMENT REPRODUCTION |
| 12/04/06 | $2.00 | DOCUMENT REPRODUCTION |
| 12/04/06 | $10.75 | DOCUMENT REPRODUCTION |
| 12/04/06 | $3.75 | DOCUMENT REPRODUCTION |
| 12/04/06 | $2.75 | DOCUMENT REPRODUCTION |
| 12/04/06 | $2.75 | DOCUMENT REPRODUCTION |
| 12/04/06 | $40.00 | DOCUMENT REPRODUCTION |
| 12/04/06 | $3.50 | DOCUMENT REPRODUCTION |
| 12/04/06 | $28.75 | DOCUMENT REPRODUCTION |
| 12/13/06 | $2.75 | DOCUMENT REPRODUCTION |
| 12/13/06 | $3.75 | DOCUMENT REPRODUCTION |
| 12/13/06 | $2.75 | DOCUMENT REPRODUCTION |
| 12/13/06 | $3.25 | DOCUMENT REPRODUCTION |
| 12/13/06 | $3.50 | DOCUMENT REPRODUCTION |
| 12/13/06 | $3.50 | DOCUMENT REPRODUCTION |
| 12/13/06 | $3.75 | DOCUMENT REPRODUCTION |
| 12/13/06 | $3.75 | DOCUMENT REPRODUCTION |

| | | |
|---|---|---|
| 12/13/06 | $3.75 | DOCUMENT REPRODUCTION |
| 12/18/06 | $20.00 | DOCUMENT REPRODUCTION |
| 12/19/06 | $30.00 | DOCUMENT REPRODUCTION |
| 12/19/06 | $7.50 | DOCUMENT REPRODUCTION |
| 12/19/06 | $3.25 | DOCUMENT REPRODUCTION |
| 12/19/06 | $4.25 | DOCUMENT REPRODUCTION |
| 12/19/06 | $4.25 | DOCUMENT REPRODUCTION |
| 12/19/06 | $4.25 | DOCUMENT REPRODUCTION |
| 12/19/06 | $4.25 | DOCUMENT REPRODUCTION |
| 12/19/06 | $3.25 | DOCUMENT REPRODUCTION |
| 12/19/06 | $3.25 | DOCUMENT REPRODUCTION |
| 12/19/06 | $4.50 | DOCUMENT REPRODUCTION |
| 12/19/06 | $4.50 | DOCUMENT REPRODUCTION |
| 12/19/06 | $4.50 | DOCUMENT REPRODUCTION |
| 12/19/06 | $4.50 | DOCUMENT REPRODUCTION |
| 12/19/06 | $4.50 | DOCUMENT REPRODUCTION |
| 12/19/06 | $3.50 | DOCUMENT REPRODUCTION |
| 12/27/06 | $3.50 | DOCUMENT REPRODUCTION |
| 12/27/06 | $9.00 | DOCUMENT REPRODUCTION |
| 12/27/06 | $1.50 | DOCUMENT REPRODUCTION |
| 01/03/07 | $7.50 | DOCUMENT REPRODUCTION |
| 01/03/07 | $1.50 | DOCUMENT REPRODUCTION |
| 01/08/07 | $3.75 | DOCUMENT REPRODUCTION |
| 01/23/07 | $3.50 | DOCUMENT REPRODUCTION |
| 01/24/07 | $2.25 | DOCUMENT REPRODUCTION |
| 01/24/07 | $5.25 | DOCUMENT REPRODUCTION |
| 01/24/07 | $13.50 | DOCUMENT REPRODUCTION |
| 01/24/07 | $7.50 | DOCUMENT REPRODUCTION |
| | | **$599.25** |
| | | |
| 11/14/06 | $116.00 | FACSIMILE |
| 11/14/06 | $24.00 | FACSIMILE |
| 11/27/06 | $48.00 | FACSIMILE |
| 11/27/06 | $16.00 | FACSIMILE |
| 12/04/06 | $66.00 | FACSIMILE |
| 12/04/06 | $48.00 | FACSIMILE |
| 12/27/06 | $20.00 | FACSIMILE |
| | | **$338.00** |
| | | |
| 11/27/06 | $7.50 | PARCELS INC: HAND DELIVERY |
| 12/07/06 | $5.00 | PARCELS INC: HAND DELIVERY |
| 12/07/06 | $5.00 | PARCELS INC: HAND DELIVERY |
| 12/07/06 | $5.00 | PARCELS INC: HAND DELIVERY |
| 01/05/07 | $7.50 | PARCELS INC: HAND DELIVERY |
| 01/16/07 | $5.00 | PARCELS INC: HAND DELIVERY |
| 01/16/07 | $7.50 | PARCELS INC: HAND DELIVERY |
| 01/22/07 | $5.00 | PARCELS INC: HAND DELIVERY |
| 01/22/07 | $7.50 | PARCELS INC: HAND DELIVERY |
| 01/29/07 | $15.00 | PARCELS INC: HAND DELIVERY |
| | | **$70.00** |
| | | |
| 12/04/06 | $51.19 | PARCELS INC: COPIES |
| | | **$51.19** |
| | | |
| 12/27/06 | $27.50 | TELEPHONE CHARGES - CONFERENCE CALLS |
| 12/27/06 | $14.91 | TELEPHONE CHARGES - CONFERENCE CALLS |
| | | **$42.41** |

| | | |
|---|---|---|
| 11/14/06 | $6.36 | POSTAGE |
| 11/27/06 | $2.70 | POSTAGE |
| 11/27/06 | $1.26 | POSTAGE |
| 12/04/06 | $3.18 | POSTAGE |
| 12/04/06 | $2.22 | POSTAGE |
| 12/18/06 | $2.52 | POSTAGE |
| 12/22/06 | $6.36 | POSTAGE |
| 12/27/06 | $3.15 | POSTAGE |
| 01/03/07 | $3.15 | POSTAGE |
| 01/22/07 | $3.48 | POSTAGE |
| 01/24/07 | $3.78 | POSTAGE |

**$38.16**

| | | |
|---|---|---|
| 11/16/06 | $26.00 | U.S. BANKRUPTCY COURT: FILING FEE |

**$26.00**

Grand Total:                    **$1,409.40**

# EXHIBIT C

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
| 15375 MEMORIAL CORPORATION, *et al.*, | : | Case No. 06-10859 (KG) |
| Debtors. | : | Jointly Administered |
|  | : |  |

**Hearing Date: June 27, 2008 @ 11:00 a.m.**
**Objection Deadline: June 20, 2008**

**CERTIFICATION OF JOHN D. DEMMY IN CONNECTION WITH
SECOND INTERIM APPLICATION OF STEVENS & LEE, P.C. FOR
ALLOWANCE AND PAYMENT OF COMPENSATION AND
REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE DEBTORS
FOR THE PERIOD NOVEMBER 1, 2006 THROUGH JANUARY 31, 2007**

John D. Demmy, Esquire, hereby certifies:

1.      I am a shareholder of the law firm of Stevens & Lee, P.C., (the "Firm") attorneys for the above-captioned debtors (collectively, "Debtors"), and submit this Certification in connection with the *Second Interim Application Of Stevens & Lee, P.C. For Allowance And Payment Of Compensation And Reimbursement Of Expenses As Counsel To The Debtors For The Period November 1, 2006 Through January 31, 2007* (the "**Application**").

2.      In compliance with 18 U.S.C. § 155 and the Local Rules of this Court, neither I nor any attorney of the Firm has entered into any agreement, written or oral, express or implied, with Debtors, any creditor of the Debtors, or any other party in interest, or any attorney of such person, for the purpose of fixing the amount of any of the fees or other compensation to be allowed out of or paid from the assets of the Debtors other than in accordance with the compensation provisions of the Bankruptcy Code and Rules.

3.      In accordance with Section 504 of the Bankruptcy Code, no agreement or understanding exists between me, the Firm or any attorney thereof, on the one hand, and any other

person, on the other hand, for the division of such compensation as the Firm may receive as allowed by the Court, nor will any division of fees prohibited by Section 504 of the Bankruptcy Code be made by me, or any shareholder or associate of the Firm.

    4.    I am familiar with the work performed on behalf of Debtors by the lawyers and paraprofessionals of the Firm and believe that this Application and the Exhibits and attachments thereto are in compliance with the requirements of Del. Bank. LR 2016-2.

    5.    The facts set forth in the foregoing Application are true and correct to the best of my knowledge, information and belief.

/s/ John D. Demmy
John D. Demmy

Dated: June 6, 2008

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| 15375 MEMORIAL CORPORATION, *et al.*, | Case No. 06-10859 (KG) |
| Debtors. | Jointly Administered |

**ORDER APPROVING SECOND INTERIM APPLICATION
OF STEVENS & LEE, P.C. FOR ALLOWANCE AND
PAYMENT OF COMPENSATION AND REIMBURSEMENT
OF EXPENSES AS COUNSEL TO THE DEBTORS FOR
THE PERIOD NOVEMBER 1, 2006 THROUGH JANUARY 31, 2007**

Upon consideration of the *Second Interim Application Of Stevens & Lee, P.C. For Compensation And Reimbursement Of Expenses As Counsel To The Debtors For The Period November 1, 2006 Through January 31, 2007* (the "**Application**"); and it appearing to the Court that adequate and proper notice of the Application having been given and it appearing that no other notice need be given; and with this Court having jurisdiction over the Application; and after any proceedings in respect of this matter; and sufficient cause appearing therefor, it is ORDERED that:

1.     The Application is hereby approved and GRANTED.

2.     Stevens & Lee, P.C. is hereby awarded, on an interim basis subject to the submission and approval of a final fee application, interim compensation in the amount of $96,713.50, and $1,251.64 for reimbursement of expenses.

3.     Debtors are authorized to pay the compensation and reimburse the expenses awarded.

Dated: June ___, 2008

_____
Hon. Kevin Gross
UNITED STATES BANKRUPTCY JUDGE

SL1 816015v1/000000.00000

# EXHIBIT G

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| 15375 MEMORIAL CORPORATION, *et al.*, | : : | Case No. 06-10859 (KG) |
| Debtors. | : : | Jointly Administered |

**Hearing Date: June 27, 2008 @ 11:00 a.m.**
**Objection Deadline: June 20, 2008**

### THIRD INTERIM APPLICATION OF STEVENS & LEE, P. C. FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE DEBTORS FOR THE PERIOD FEBRUARY 1, 2007 THROUGH APRIL 30, 2007

| | |
|---|---|
| Name of Applicant: | Stevens & Lee, P.C. |
| Authorized to Provide Professional Services to: | Debtors and Debtor in Possession |
| Date of Retention: | Order dated September 8, 2006 (effective *nunc pro tunc* to August 16, 2006) |
| Period for which compensation and reimbursement is sought: | February 1, 2007 Through April 30, 2007 |
| Amount of Compensation sought: | $129,448.00 |
| Amount of Expense Reimbursement sought: | $10,189.91 |
| This is the: | Third Interim Fee Application |

### PRIOR APPLICATION HISTORY

| | | Requested | | Approved | | Certificate of No Objection |
|---|---|---|---|---|---|---|
| **Dated Filed** | **Period Covered** | **Fees** | **Expenses** | **Fees** | **Expenses** | |
| 11/29/06 | 8/16/06-10/31/06 | $83,653.00 | $3,750.04 | $83,653.00 | $3,750.04 | No |
| 6/6/08 | 11/1/06-1/31/07 | $96,713.50 | $1,251.64 | | | |

DATE FILED 6-6-08
DOCKET NO. 359

## LOCAL FORM 102 INFORMATION SUMMARIES FOR PERIOD

## TIMEKEEPER SUMMARY

| Name of Professional Person | Position; Years w/ S&L; Years in Practice | Hourly Billing Rate | Total Billed Hours | Total Compensation |
|---|---|---|---|---|
| John D. Demmy | Shareholder; 6.75 years with S&L; 20 years | $400 | 155 | $62,000.00 |
| Marnie E. Simon. | Shareholder; 6.5 years with S&L; 12 years | $365 | 64.7 | $23,615.50 |
| John C. Kilgannon | Associate; 5 years with S&L; 8 years | $330 | 127.0 | $41,910.00 |
| Alexandria Minehart | Paralegal | $175 | 2.2 | $385.00 |
| Stephanie Foster | Legal Assistant | $125 | 12.3 | $1,537.50 |
| **Grand Total** | | N/A | 361.2 | $129,448.00 |
| **Blended Rate** | | $279.00 | | |

## COMPENSATION BY PROJECT SUMMARY

| Project Category | Total Hours | Total Fees |
|---|---|---|
| Asset Analysis & Recovery | 1.2 | $480.00 |
| Litigation | 233.6 | $84,550.00 |
| Plan and Disclosure Statement | 71.80 | $27,029.50 |
| Prep for/Attendance at Hearing/Other Proceeding | 5.7 | $2,280.00 |
| Claims Administration and Objections | 26.3 | $10,012.50 |
| Case Administration | 22.6 | $5,096.00 |
| **TOTAL** | 361.2 | $129,448.00 |

SLI 816107v1/000000.00000

## EXPENSE SUMMARY

| Expense Category | Amount |
|---|---|
| Photocopies and Bates Labels – External | $1,289.69 |
| Digital Prints | $425.91 |
| Courier/Delivery Services | $280.50 |
| Telephone Charges | $198.19 |
| Photocopies – Internal | $455.75 |
| Postage | $23.19 |
| Miscellaneous – Travel Expenses for JDD | $25.00 |
| Express mail | $79.88 |
| Computer Research | $7,145.30 |
| Facsimile - Internal | $143.00 |
| Facsimile – External | $89.00 |
| Bankruptcy Court Filing Fees | $34.50 |
| **TOTAL** | $10,189.91 |

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| 15375 MEMORIAL CORPORATION, *et al.*, | : | Case No. 06-10859 (KG) |
| Debtors. | : | Jointly Administered |

Hearing Date: June 27, 2008 @ 11:00 a.m.
Objection Deadline: June 20, 2008

**THIRD INTERIM APPLICATION OF STEVENS & LEE, P.C.
FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND
REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE DEBTORS
FOR THE PERIOD FEBRUARY 1, 2007 THROUGH APRIL 30, 2007**

Pursuant to sections 330 and 331 of Title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the law firm of Stevens & Lee, P.C. (hereinafter "**S&L**") hereby makes this Third Interim Application for Compensation and Reimbursement of Expenses (the "**Application**") for professional services rendered as counsel to the above-captioned debtors and debtors in possession (collectively, "**Debtors**") for the period commencing February 1, 2007 through and including April 30, 2007 (the "**Period**"), in the total amount of $139,637.91 which is composed of (i) $129,448.00 for professional fees and (ii) $10,189.91 for expenses incurred during the Period. In support of its Application, S&L respectfully represents as follows:

1.     On August 16, 2006 (the "**Petition Date**"), Debtors commenced these bankruptcy cases by each filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Debtors have operated as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2.    S&L was employed to represent Debtors as general bankruptcy counsel under Section 327 of the Bankruptcy Code pursuant to the Order entered by the Court on September 8, 2006, effective *nunc pro tunc* to the Petition Date. Prior to the Petition Date Debtors tendered $25,000 to S&L to pay for fees and expenses incurred prior to the Petition Date, with the balance of such amount (the "**Retainer**") to be held and to be applied against post-Petition date fees and expenses. As of the Petition Date the Retainer balance was $11,625.64. Pursuant to this Court's order of December 27, 2006 [Docket No. 97], S&L applied the Retainer to the fees and expenses awarded by the Court in connection with S&L's *First Interim Application of Stevens & Lee, P.C. for Allowance and Payment of Compensation and Reimbursement of Expenses as Counsel to the Debtors for the Period August 16, 2006 through October 31, 2006* [Docket No. 88] (the "**First Interim Application**").

3.    All services for which compensation is requested by S&L were performed for or on behalf of Debtors.

4.    Attached hereto as Exhibits A and B, respectively, are detailed statements of the fees and expenses incurred by S&L during the Period showing the amount of $129,448.00 for fees and $10,189.91 for reimbursement of expenses. In connection with this Application, and in accordance with Sections 330 and 331 of the Bankruptcy Code, S&L is seeking allowance in full amount of such fees and expenses, subject to submission of a final fee application.

## SUMMARY OF SERVICES RENDERED

5.    The attorneys of S&L who have rendered professional services in these cases during the Period are John D. Demmy, Marnie E. Simon, and John C. Kilgannon. Paraprofessional services were provided by Alexandria Minehart and Stephanie Foster. A summary of each

person's information who billed time during the Period may be found in the TimeKeeper Summary, attached as Delaware Form 102, supra.

6.      S&L, by and through the above-named persons, provided the Debtors with the necessary legal services required in connection with the filing of these bankruptcy cases, specifically but not limited to: (i) the preparation of the Debtors' disclosure statement, plan, voting procedures, and claims administration matters; (ii) general legal services related to the continuation of a Chapter 11 bankruptcy case; and (iii) the motions filed by BEPCO, L.P. f/k/a Bass Enterprises Production Co. ("Bass") and the adversary proceeding commenced by Debtor Santa Fe Minerals, Inc. against Bass in which GlobalSantaFe Corporation, Entities Holdings, Inc. and GlobalSantaFe Corporate services, Inc. have intervened (collectively, the "Bass Litigation").   To the extent required without duplicating efforts, S&L professionals diligently consulted with Debtors and with other parties in interest concerning the general administration of this case.   S&L professionals attended all necessary hearings, filed and served necessary papers and communicated with the Court and interested parties on routine matters.   Such tasks have been performed throughout the Fee Period, in substantial part by telephone communications and e-mail, with counsel, other representatives for the Debtors and other interested parties.

## SUMMARY OF SERVICES BY PROJECT

7.      The services rendered by S&L during the Period are grouped in the categories set forth in the Compensation by Project Summary, attached as Delaware Form 102, supra.  More specifically, the attorneys and paraprofessionals that rendered the services relating to each category are identified, along with the number of hours for each individual and the total compensation sought for each category, in Exhibit A hereto.

- 3 -

8.    In accordance with the factors enumerated in Sections 330 and 331 of the Bankruptcy Code, the amount requested for services rendered is fair and reasonable given (a) the Bass Litigation, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, and (e) the cost of comparable services other than in a case under the Bankruptcy Code.

## DISBURSEMENTS

9.    S&L incurred reasonable and necessary out-of-pocket expenses in the sum of $10,189.91 in connection with its legal services to Debtors during the Period. These expenses are summarized by category in the Expense Summary, attached as Delaware Form 102, supra. A complete itemization of expenses incurred during the Period is attached hereto as Exhibit B, as required by Local Rule 2016-2(e)(ii) of the Local Rules of Bankruptcy Practice and Procedure of the Bankruptcy Court (the "Local Rules").

10.    S&L sought to utilize the most cost-efficient method of communication consistent with the necessary time constraints. S&L's regular charge for photocopy expenses is $0.10 per page. S&L's regular telecopy charge is $1.00 per page. No charge is made for telecopies received. Lexis and/or Westlaw charges represent computerized legal research facility charges for computer assisted research. Use of Lexis and/or Westlaw greatly enhances legal research and access to case law from all jurisdictions, and is cost-efficient, saving substantial attorney research time. Other disbursements are itemized in Exhibit B. These disbursements were necessary to effectively render legal services in these cases.

11.    Due to the unavoidable delay in the posting of some disbursements (particularly those relating to third-party vendors), certain disbursements made during the Period may not have

- 4 -

been included in S&L's computer system at the time this Application was prepared.  S&L reserves the right to seek reimbursement for expenses for such omitted items in subsequent fee applications.

12.    Annexed hereto as Exhibit C and made part hereof is the Certification of John D. Demmy, Esq., submitted pursuant to Section 504 of the Bankruptcy Code.

13.    S&L has reviewed Del. Bankr. L.R. 2016-2 and believes that the time entries included in the Exhibits hereto are in compliance with the requirements thereof.  In accordance with the factors enumerated in 11 U.S.C. §§ 330 and 331, the amount requested is fair and reasonable given (a) the Bass Litigation, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, and (e) the cost of comparable services other than in a case under the Bankruptcy Code.

WHEREFORE, S&L respectfully requests that the Court grant this Application and allow S&L the amounts of $129,448.00 for professional fees incurred during the Period and $10,189.91 for expenses incurred during the Period, as compensation for necessary professional services rendered by S&L to Debtors and reimbursement of actual, necessary costs and expenses incurred by S&L during the Period.  S&L further requests such other relief as this Court may deem just and proper.

Dated: Wilmington, Delaware
June 6, 2008

STEVENS & LEE, P.C.

/s/ John D. Demmy
John D. Demmy (Bar No. 2802)
1105 North Market Street, 7th Floor
Wilmington, DE  19801
Telephone: (302) 425-3308
Telecopier: (610) 371-8515
Email: jdd@stevenslee.com

- 5 -

SL1 816107v1/000000.00000

# EXHIBIT A

| TaskPhase | PersonID | DateWorked | Hrs | Dollars | BillText |
|---|---|---|---|---|---|
| **Asset Analysis and Recovery** | | | | | |
| | JDD | 02/02/07 | 0.10 | $40.00 | TEL AND EMAIL TO N RAMSEY RE SINZ AND TROIA MATTERS. |
| | JDD | 02/05/07 | 0.20 | $80.00 | TELEPHONE CONFERENCE W/ N RAMSEY (KAZAN MCCLAIN COUNSEL) RE SINZ AND TROIA MATTERS |
| | JDD | 02/06/07 | 0.20 | $80.00 | REVIEW/ANALYZE EMAILS FROM CO-COUNSEL AND CLIENT RE STATUS OF SINZ AND TROIA MATTERS |
| | JDD | 03/01/07 | 0.20 | $80.00 | TELEPHONE CONFERENCE W/ D FAURE RE ROYALTY/ESCHEAT FUNDS AND POSSIBLE PROPERTY RIGHTS AVAILABLE TO DEBTORS/ESTATES |
| | JDD | 03/12/07 | 0.20 | $80.00 | REVIEW/ANALYZE EMAIL FROM N RAMSEY RE INSURANCE REVIEW IN CONNECTION WITH SINZ/TROIA MATTERS.  EMAIL TO N RAMSEY IN RESPONSE. |
| | JDD | 03/20/07 | 0.30 | $120.00 | REVIEW/ANALYZE EMAIL FROM L MOSES RE CLAIM AGAINST HIGHLANDS INSURANCE AND FOLLOW UP COMMUNICATIONS WITH CLIENT RE STATUS OF ASSERTION OF CLAIM IN HIGHLANDS RECEIVERSHIP |
| | JDD | | 1.20 | $480.00 | |
| | | Total: | 1.20 | $480.00 | |
| **Litigation** | | | | | |
| | JCK | 02/01/07 | 0.30 | $99.00 | EMAIL TO/FROM COUNSEL FOR GLOBALSANTAFE RE DOCUMENT PRODUCTION (.2), EMAIL TO JDD RE DOCUMENT PRODUCTION (.1) |
| | JCK | 02/01/07 | 0.80 | $264.00 | RESEARCH RE PRIVILEGE AND WAIVER |
| | JCK | 02/02/07 | 1.30 | $429.00 | RESEARCH RE WAIVER OF PRIVILEGE ISSUE (1.3) |
| | JCK | 02/05/07 | 1.80 | $594.00 | CONFERENCE CALL WITH COUNSEL RE PROPOSED ORDER (.5), CONFERENCE CALL WITH BASS COUNSEL RE PROPOSED ORDER (1.3) |
| | JCK | 02/05/07 | 1.40 | $462.00 | REVIEWED PROPOSED ORDER (.3), REVIEWED EMAILS RE PROPOSED ORDER (.3), EMAIL TO/FROM JDD RE BRIEF ON PRIVILEGE (.2), EMAILS TO/FROM ERIC LOCKRIDGE RE  MOTION TO QUASH (.2), EMAILS RE CONFERENCE CALL AND ORDER (.4) |
| | JCK | 02/05/07 | 0.50 | $165.00 | RESEARCH RE WAIVER |
| | JCK | 02/06/07 | 0.20 | $66.00 | EMAIL FROM JDD RE CONFERENCE WITH JUDGE GROSS (.1), TELEPHONE CALL WITH JDD RE CONFERENCE (.1) |
| | JCK | 02/06/07 | 0.80 | $264.00 | CONDUCTED RESEARCH RE WAIVER OF PRIVILEGE |
| | JCK | 02/07/07 | 5.20 | $1,716.00 | RESEARCH RE WAIVER OF PRIVILEGE (.8), PREPARED LETTER BRIEF TO JUDGE GROSS RE PRIVILEGE ISSUE (4.4) |
| | JCK | 02/08/07 | 3.60 | $1,188.00 | REVIEWED ORDER RE DISCOVERY (.2), RESEARCH RE WAIVER ISSUES (1.2), CONTINUED LETTER BRIEF (2.2) |
| | JCK | 02/09/07 | 6.50 | $2,145.00 | PREPARED LETTER BRIEF TO JUDGE GROSS (5.1), PREPARED AFFIDAVITS OF DAVID FAURE AND RICHARD PABST (1.4) |
| | JCK | 02/12/07 | 0.70 | $231.00 | TELEPHONE CONFERENCE WITH JDD RE LETTER BRIEF (.3), CONFERENCE WITH COUNSEL FOR GLOBAL SANTA FE RE PRIVILEGE ISSUES (.2), EMAILS FROM CLIENT RE PRIVILEGE ISSUES (.2 |
| | JCK | 02/12/07 | 1.80 | $594.00 | REVIEWED AND REVISED LETTER BRIEF (1.8) |
| | JCK | 02/13/07 | 1.00 | $330.00 | TELEPHONE CONFERENCE WITH JDD RE LETTER BRIEF (.3), TELEPHONE CONFERENCE WITH COUNSEL FOR GLOBALSANTAFE RE PRIVILEGE ISSUES (.2), EMAILS FROM JDD RE LETTER BRIEF (.2), EMAILS TO/FROM CLIENT RE LETTER BRIEF (.3) |
| | JCK | 02/13/07 | 2.20 | $726.00 | CONTINUED REVIEW AND PREPARATION OF LETTER BRIEF AND AFFIDAVITS |
| | JCK | 02/14/07 | 5.20 | $1,716.00 | REVIEWED AND REVISED LETTER BRIEFS AND AFFIDAVITS (5.2) |
| | JCK | 02/14/07 | 1.50 | $495.00 | TELEPHONE CONFERENCES WITH JDD RE BRIEF (.3), CONFERENCE CALL WITH CLIENT RE BRIEF (.8), EMAILS FROM CLIENT RE BRIEF AND AFFIDAVITS (.4) |
| | JCK | 02/15/07 | 0.20 | $66.00 | TELEPHONE CALL WITH GLOBALSANTAFE COUNSEL RE PLAN (.2) |
| | JCK | 02/19/07 | 0.30 | $99.00 | EMAILS FROM CLIENT RE CLAIMS |
| | JCK | 02/21/07 | 0.30 | $99.00 | EMAIL FROM JDD RE RESPONSE TO LETTER BRIEF (.1), REVIEWED OBJECTION TO BAR DATE MOTION (.2) |
| | JCK | 02/22/07 | 0.70 | $231.00 | CONFERENCE WITH JDD RE LETTER RESPONSE (.3), EMAIL TO CLIENT RE RESPONSE (.1), REVIEWED DISCOVERY ISSUES RAISED BY JDD (.3) |
| | JCK | 02/22/07 | 6.40 | $2,112.00 | PREPARED LETTER RESPONSE RE PRIVILEGE ISSUES |
| | JCK | 02/23/07 | 0.50 | $165.00 | EMAILS TO/FROM CLIENT RE LETTER BRIEF (.2), TELEPHONE CALLS TO WILMINGTON OFFICE RE FILING (.2), EMAIL FROM BASS' COUNSEL RE DISCOVERY (.1) |
| | JCK | 02/23/07 | 5.90 | $1,947.00 | CONTINUED PREPARATION OF LETTER BRIEF |
| | JCK | 02/26/07 | 0.10 | $33.00 | EMAIL E FILING OF LETTER BRIEF |
| | JCK | 02/27/07 | 0.50 | $165.00 | REVIEWED EMAILS RE DEPOSITIONS AND DISCOVERY (.4), CONFERENCE CALL WITH JDD RE DISCOVERY (.1) |
| | JCK | 02/28/07 | 3.10 | $1,023.00 | RESEARCH REGARDING 30B6 DEPOSITION (1.5), RESEARCH REGARDING STAY PENDING APPEAL (1.6) |
| | JCK | 02/28/07 | 1.20 | $396.00 | PREPARED EMAIL TO JDD RE RESEARCH ON 30B6 ISSUES (.5), EMAILS FROM JDD RE RESEARCH (.2), EMAILS TO/FROM JDD RE STAY PENDING APPEAL RESEARCH (.4), CORRESPONDENCE FROM GLOBALSANTAFE'S COUNSEL RE DISCOVERY (.1) |

| | | | | |
|---|---|---|---|---|
| JCK | 03/01/07 | 0.90 | $297.00 | RECEIPT AND REVIEW LETTER FROM COUNSEL RE 30(B)(6) DESIGNATIONS (.1), EMAIL FROM GSF COUNSEL RE DISCOVERY (.1), EMAIL TO JDD RE DISCOVERY (.1), EMAIL FROM BASS' COUNSEL RE DISCOVERY (.1), EMAIL FROM ERIC LOCKRDIGE RE ORDER (.1), TELEPHONE CALL FROM JDD RE DISCOVERY (.4) |
| JCK | 03/01/07 | 1.20 | $396.00 | RESEARCH RE STAY PENDING APPEAL (1.2) |
| JCK | 03/02/07 | 2.10 | $693.00 | CONDUCTED RESEARCH RE RECONSIDERATION STANDARD AND PREPARED MOTION FOR RECONSIDERATION OF MARCH 1 ORDER |
| JCK | 03/02/07 | 1.70 | $561.00 | CONFERENCE CALL WITH JDD RE MARCH 1ST ORDER (.4), EMAIL FROM JDD RE ORDER (.2), CONFERENCE CALL WITH CLIENT RE ORDER (1.0), EMAIL FROM COUNSEL FOR BASS RE DISCOVERY (.1) |
| JCK | 03/04/07 | 1.50 | $495.00 | PREPARED MOTION FOR RECONSIDERATION |
| JCK | 03/05/07 | 0.20 | $66.00 | TELEPHONE CONFERENCE WITH COUNSEL FOR GSF RE MARCH 1 ORDER (.2) |
| JCK | 03/05/07 | 3.90 | $1,287.00 | PREPARED MOTION FOR RECONSIDERATION OF MARCH 1 ORDER |
| JCK | 03/06/07 | 0.20 | $66.00 | EMAILS TO CLIENT AND COUNSEL FOR GSF RE MOTION FOR RECONSIDERATION (.2) |
| JCK | 03/06/07 | 5.50 | $1,815.00 | CONTINUED PREPARATION OF MOTION FOR RECONSIDERATION |
| JCK | 03/07/07 | 0.60 | $198.00 | EMAILS TO/FROM JDD RE LETTER BRIEF (.3), EMAIL TO CLIENT RE REVISED BRIEF (.1), EMAILS FROM CLIENT RE PRIVILEGE (.2) |
| JCK | 03/07/07 | 2.20 | $726.00 | REVISED MOTION FOR RECONSIDERATION |
| JCK | 03/08/07 | 0.30 | $99.00 | TELEPHONE CONFERENCE WITH JDD RE MOTION (.2), EMAIL TO CLIENT RE MOTION FOR RECONSIDERATION (.1) |
| JCK | 03/09/07 | 0.90 | $297.00 | EMAILS FROM CLIENT RE MOTION FOR RECONSIDERATION (.2), EMAIL TO/FROM JDD RE MOTION (.1), TELEPHONE CALL TO COUNSEL FOR GSF RE MOTION (.1), EMAILS TO/FROM JDD RE MOTION (.3), TELEPHONE CALL FROM CLIENT RE RECONSIDERATION MOTION (.1), TELEPHONE CALL WITH JDD RE RECONSIDERATION MOTION (.1) |
| JCK | 03/09/07 | 1.70 | $561.00 | CONTINUED PREPARATION OF MOTION FOR RECONSIDERATION |
| JCK | 03/12/07 | 1.10 | $363.00 | TELEPHONE CALL WITH CLIENT (.3), EMAILS TO/FROM ERIC LOCKRIDGE RE MOTION (.3), EMAILS TO/FROM JDD RE MOTION (.2), TELEPHONE CALLS WITH WILMINGTON OFFICE RE FILING (.1), RECEIPT AND REVIEW EMAILS FROM WILMINGTON OFFICE RE FILING (.2) |
| JCK | 03/12/07 | 1.80 | $594.00 | CONTINUED PREPARATION OF MOTION FOR RECONSIDERATION |
| JCK | 03/13/07 | 0.20 | $66.00 | EMAILS FROM COUNSEL RE MOTION FOR RECONSIDERATION |
| JCK | 03/14/07 | 0.80 | $264.00 | REVIEWED MOTION TO EXPEDITE (.4), EMAILS TO/FROM JDD RE MOTION AND RELATED ISSUES (.4) |
| JCK | 03/15/07 | 0.10 | $33.00 | REVIEWED COURT ORDER RE RECONSIDERATION MOTION |
| JCK | 03/16/07 | 0.10 | $33.00 | EMAIL FROM JDD RE SCHEDULING OF HEARINGS (.1) |
| JCK | 03/20/07 | 0.60 | $198.00 | REVIEWED DEBTORS' RESPONSE TO MOTION TO RECONSIDER |
| JCK | 03/20/07 | 0.30 | $99.00 | EMAIL FROM ERIC LOCKRIDGE RE SCHEDULING (.1), EMAIL FROM COUNSEL FOR GSF RE DISCOVERY (.1), EMAIL FROM COUNSEL FOR BASS RE DISCOVERY (.1) |
| JCK | 03/21/07 | 0.20 | $66.00 | EMAILS FROM JDD AND CLIENT RE STATUS CONFERENCE |
| JCK | 03/27/07 | 0.50 | $165.00 | EMAILS FROM JDD AND CLIENT RE ORDER (.3), REVIEWED ORDER ON MOTION FOR RECONSIDERATION (.2) |
| JCK | 03/28/07 | 1.60 | $528.00 | REVIEWED DISCOVERY ORDER (.3), CONFERENCE WITH JDD RE ORDER (.3), TELEPHONE CONFERENCE WITH CLIENT RE ORDER (1.0) |
| JCK | 03/28/07 | 3.30 | $1,089.00 | CONDUCTED RESEARCH RE STANDARD OF REVIEW OF BANKRUPTCY COURT ORDER ON APPEAL (1.2), RESEARCH REGARDING WAIVER OF APPEAL RIGHTS (2.1) |
| JCK | 03/29/07 | 0.50 | $165.00 | RECEIPT AND REVIEW CORRESPONDENCE FROM BASS' COUNSEL (.1), TELEPHONE CONFERENCE WITH GSF COUNSEL RE ORDER ON MOTION FOR RECONSIDERATION (.3), EMAIL FROM CLIENT RE CLAIMS (.1) |
| JCK | 03/29/07 | 3.10 | $1,023.00 | CONTINUED RESEARCH RE ISSUES ON WAIVER OF APPEAL |
| JCK | 03/30/07 | 1.30 | $429.00 | TELEPHONE CONFERENCE WITH JDD RE RESEARCH (.3), CONFERENCE CALL WITH CLIENT RE DISCOVERY ISSUES (.9), TELEPHONE CONFERENCE WITH JDD RE DISCOVERY ISSUES (.1) |
| JCK | 03/30/07 | 2.80 | $924.00 | CONTINUED RESEARCH RE APPEAL ISSUES |
| JCK | 04/02/07 | 0.80 | $264.00 | EMAILS FROM CLIENT RE DOCUMENT PRODUCTION (.2), REVIEWED DOCUMENTS FROM ERNST & YOUNG (.6), EMAIL FROM COUNSEL RE SCHEDULING (.1) |
| JCK | 04/03/07 | 0.30 | $99.00 | EMAILS RE SCHEDULING OF HEARING (.2), EMAIL FROM CLIENT RE E&7 DOCUMENTS (.1) |
| JCK | 04/04/07 | 0.20 | $66.00 | RECEIPT AND REVIEW EMAILS RE SCHEDULING (.2) |
| JCK | 04/06/07 | 0.30 | $99.00 | RECEIPT AND REVIEW EMAILS AND CORRESPONDENCE RE DOCUMENT PRODUCTION |
| JCK | 04/09/07 | 0.80 | $264.00 | EMAILS REGARDING DOCUMENTS PRODUCED (.3), PREPARATION FOR CONFERENCE CALL (.2), CONFERENCE CALL WITH CLIENT RE DOCUMENTS (.3) |
| JCK | 04/10/07 | 0.10 | $33.00 | EMAIL RE SCHEDULING OF HEARING |
| JCK | 04/11/07 | 0.50 | $165.00 | RECEIPT AND REVIEW EMAILS RE BASS' MOTION RE CLAIM (.4), REVIEWED MOTION (.1) |
| JCK | 04/12/07 | 0.50 | $165.00 | REVIEWED BASS MOTION (.3), REVIEWED EMAILS RE SCHEDULING (.2) |
| JCK | 04/13/07 | 0.60 | $198.00 | EMAIL TO/FROM COUNSEL FOR GSF RE CLAIMS (.2), REVIEWED LOCAL RULES RE CLAIMS FILING (.2), EMAIL TO/FROM JDD RE CLAIMS FILING (.2) |

| | | | | |
|---|---|---|---|---|
| JCK | 04/16/07 | 1.80 | $594.00 | EMAIL FROM JDD RE BRIEF IN OPPOSITION TO CONFIDENTIALITY MOTION (.1), RESEARCH RE CASES CITED BY BASS (1.7) |
| JCK | 04/17/07 | 5.40 | $1,782.00 | RESEARCH RE 107 ISSUES (2.2), PREPARED BRIEF IN OPPOSITION TO BASS' MOTION (3.2) |
| JCK | 04/18/07 | 4.90 | $1,617.00 | CONTINUED PREPARATION OF OBJECTION TO CONFIDENTIALITY MOTION |
| JCK | 04/19/07 | 4.90 | $1,617.00 | CONTINUED PREPARATION OF OBJECTION TO CONFIDENTIALITY MOTION |
| JCK | 04/20/07 | 1.20 | $396.00 | CONFERENCE CALL WITH CLIENT RE TEBOW SETTLEMENT (.3), EMAILS TO/FROM CLIENT RE RESPONSE AND TEBOW SETTLEMENT (.4), EMAILS TO/FROM JDD RE RESPONSE AND TEBOW SETTLEMENT (.3), RECEIPT AND REVIEW EMAIL FROM BASS' COUNSEL RE SCHEDULING (.1), CORRESPONDENCE FROM BASS' COUNSEL RE TEBOW SETTLEMENT (.1) |
| JCK | 04/20/07 | 3.80 | $1,254.00 | CONTINUED REVIEW AND PREPARATION OF RESPONSE TO CONFIDENTIALITY MOTION (3.6) |
| JCK | 04/23/07 | 0.30 | $99.00 | RECEIPT AND REVIEW EMAILS RE RESPONSE TO CONFIDENTIALITY MOTION (.2), EMAIL TO WILMINGTON OFFICE RE FILING OF RESPONSE (.1) |
| JCK | 04/23/07 | 0.40 | $132.00 | REVIEWED RESPONSE OF BASS IN SUPPORT OF CONFIDENTIALITY MOTION |
| JCK | 04/24/07 | 1.00 | $330.00 | PREPARED FOR HEARING ON CONFIDENTIALITY MOTION (.4), REVIEWED CASES FOR HEARING (.6) |
| JCK | 04/25/07 | 3.40 | $1,122.00 | CONFERENCE WITH JDD RE HEARING (.5), ATTENDED HEARING ON EXCLUSIVITY MOTION AND CONFIDENTIALITY MOTION (2.9) |
| JCK | 04/26/07 | 0.20 | $66.00 | EMAILS RE STATUS OF SETTLEMENT AGREEMENT (.1), REVIEWED SETTLEMENT AGREEMENT (.1) |
| JCK | 04/27/07 | 0.10 | $33.00 | EMAIL FROM JDD RE DISCOVERY (.1) |
| JCK | 04/30/07 | 0.20 | $66.00 | RECEIPT AND REVIEW EMAILS RE SCHEDULING OF HEARING |
| **JCK** | | **126.90** | **$41,877.00** | |
| JDD | 02/01/07 | 0.10 | $40.00 | TEL TO E LOCKRIDGE RE E&Y ISSUES |
| JDD | 02/02/07 | 0.40 | $160.00 | TELEPHONE CONFERENCE W/ E LOCKRIDGE RE E&Y ISSUES |
| JDD | 02/05/07 | 0.60 | $240.00 | REVIEW/ANALYZE EMAIL FROM JUDGE GROSS' CHAMBERS WITH PROPOSED DRAFT ORDER RE 1/31 DISCOVERY CONFERENCE AND DRAFTED LIST OF ISSUES RELATING TO DRAFT ORDER |
| JDD | 02/05/07 | 0.60 | $240.00 | TELECONFERENCES WITH CLIENT AND COUNSEL RE JUDGE GROSS' DRAFT ORDER |
| JDD | 02/05/07 | 0.20 | $80.00 | TELECONFERENCE WITH CHAMBERS AND EMAILS TO AND FROM COUNSEL FOR BASS AND GLOBALSANTAFE RE POSSIBLE TELECONFERENCE WITH COURT RE DRAFT ORDER RELATING TO 1/31 TELECONFERENCE |
| JDD | 02/05/07 | 0.50 | $200.00 | DRAFTED EMAIL TO COURT RE DEBTORS' COMMENTS TO DRAFT ORDER RE 1/31 DISCOVERY CONFERENCE |
| JDD | 02/05/07 | 0.40 | $160.00 | REVIEW/ANALYZE DRAFT REVISED ORDER RE 1/31 CONFERENCE PREPARED BY GLOBALSANTAFE COUNSEL AND EMAILED COMMENTS |
| JDD | 02/05/07 | 0.30 | $120.00 | EMAIL FROM G WERKHEISER RE PRIVILEGE ISSUES IN CONNECTION WITH JUDGE GROSS' DRAFT ORDER. REVIEW/ANALYZE EMAIL FROM P EISENBERG IN RESPONSE. EMAILS TO AND FROM E LOCKRIDGE RE JURISDICTION ISSUE POSED BY WERKHEISER. |
| JDD | 02/06/07 | 2.60 | $1,040.00 | PREPARATION FOR (INCLUDING REVIEW OF BASS AND GSF SUBMISSIONS AND TELECONFERENCES WITH CLIENT AND GSF COUNSEL) AND PARTICIPATED IN TELEPHONE CONFERENCE WITH THE COURT RE COURT'S DRAFT DISCOVERY ORDER AND RELATED DISCOVERY ISSUES |
| JDD | 02/07/07 | 0.80 | $320.00 | TELECONFERENCE WITH CLIENT RE INSURANCE AND PRIVILEGE ISSUES |
| JDD | 02/08/07 | 1.20 | $480.00 | REVIEW/ANALYZE DOCUMENTS FORWARDED BY E&Y |
| JDD | 02/08/07 | 1.30 | $520.00 | DRAFTED AFFIDAVITS FOR D FAURE AND R PABST RE E&Y RETENTION IN TEBOW MATTER |
| JDD | 02/08/07 | 0.20 | $80.00 | REVIEW/ANALYZE JUDGE GROSS' 2/8 ORDER RE DISCOVERY ISSUES AND FORWARDED TO D FAURE AND J KILGANNON |
| JDD | 02/08/07 | 0.20 | $80.00 | REVIEW/ANALYZE EMAILS FROM R PABST AND D FAURE RE STATUS OF AND EVENTS IN TEBOW LITIGATION |
| JDD | 02/09/07 | 0.60 | $240.00 | DRAFTED CATEGORIZATION/LIST OF E&Y DOCUMENTS FOR PURPOSES OF LETTER BRIEF DUE 2/14 |
| JDD | 02/09/07 | 1.50 | $600.00 | TELECONFERENCE WITH E LOCKRIDGE RE AND REVIEW OF E&Y DOCUMENTS |
| JDD | 02/12/07 | 0.30 | $120.00 | TELECONFERENCE WITH D FAURE RE PRIVILEGE ISSUES IN CONNECTION WITH LETTER BRIEF TO JUDGE GROSS |
| JDD | 02/12/07 | 0.20 | $80.00 | TELECONFERENCE WITH P EISENBERG RE PRIVILEGE ISSUES |
| JDD | 02/12/07 | 0.30 | $120.00 | TELEPHONE CONFERENCE W/ J KILGANNON RE PRIVILEGE ISSUES IN CONNECTION WITH BRIEF DUE 2/14 |
| JDD | 02/12/07 | 5.20 | $2,080.00 | REVIEW/ANALYZE NUMEROUS DOCUMENTS/COMMUNICATIONS FORWARDED BY D FAURE RE PRIVILEGE ISSUES AND COMPILED INFO TO PREPARE PRIVILEGE LOG IN CONNECTION WITH LETTER BRIEF TO JUDGE GROSS RE PRIVILEGE ISSUES |
| JDD | 02/13/07 | 0.20 | $80.00 | TELEPHONE CONFERENCE W/ J KILGANNON RE LETTER BRIEF TO JUDGE GROSS RE PRIVILEGE ISSUES |
| JDD | 02/13/07 | 2.00 | $800.00 | REVISED LETTER BRIEF TO JUDGE GROSS RE PRIVILEGE ISSUES |
| JDD | 02/13/07 | 0.60 | $240.00 | REVIEW/ANALYZE EMAIL FROM E LOCKRIDGE RE E&Y DOCUMENTS AND REVIEW/ANALYZE DOCUMENTS THAT WERE RELIED UPON BY E&Y. |
| JDD | 02/13/07 | 2.40 | $960.00 | PREPARED AND THEREAFTER REVIEWED AND REVISED PRIVILEGE LOG RE 2/7 ORDER PARAGRAPH 5 DOCUMENTS |

| JDD | 02/13/07 | 0.70 | $280.00 | REVIEW/ANALYZE SEVERAL EMAILS RE REVISIONS/COPMMENTS TO DRAFT LETTER BRIEF RE PRIVILEGE ISSUES AND SUPPORTING AFFIDAVITS AND COMMUNICATED WITH J KILGANNON AND CLIENT RE REVISIONS TO DOCUMENTS |
| JDD | 02/14/07 | 6.30 | $2,520.00 | REVISED PRIVILEGE BRIEF AND RELATED PAPERS (AFFIDAVITS AND PRIVILEGE LOG) AND PREPARED PRIVILEGE BRIEF FOR SUBMISSION TO THE COURT AND SERVICE. SEVERAL COMMUNICATIONS WITH J KILGANNON, D FAURE AND OTHERS RE PRIVILEGE BRIEF AND PRIVILEGE LOG. |
| JDD | 02/16/07 | 0.10 | $40.00 | REVIEW/ANALYZE 2/13 LETTER FROM L MOSES RE BASS 30(B)(6) DEPOSITION |
| JDD | 02/19/07 | 0.80 | $320.00 | REVIEW/ANALYZE EMAILS FROM D FAURE WITH ATTACHED DOCUMENTS RE POST-DISSOLUTION, PRE-BANKRUPTCY CLAIMS AGAINST SFMI |
| JDD | 02/19/07 | 0.20 | $80.00 | REVIEW/ANALYZE EMAIL FROM CLIENT WITH ATTACHED DOCUMENTS RE COMMUNICATIONS WITH INSURERS |
| JDD | 02/19/07 | 0.70 | $280.00 | REVIEW/ANALYZE EMAIL FROM G WERKHEISER RE QUESTIONS ABOUT PRIVILEGE LOG FILED ON 2/14. FOLLOW UP EMAILS TO AND FROM CLIENT AND CO-COUNSEL RE LOG. EMAIL TO G WERKHEISER RESPONDING TO HIS QUESTIONS RE PRIVILEGE LOG (IDENTIFICATION OF PERSONS INCLUDED). |
| JDD | 02/20/07 | 0.10 | $40.00 | REVIEW/ANALYZE 2/19 EMAIL FROM P EISENBERG TO L MOSES RE ADDITIONAL PRODUCTION OF DOCUMENTS PURSUANT TO COURT'S 2/7 ORDER |
| JDD | 02/20/07 | 2.60 | $1,040.00 | BEGAN OUTLINING EVIDENTIARY/TESTIMONIAL PRESENTATION FOR 4/4-5 HEARING |
| JDD | 02/21/07 | 0.10 | $40.00 | REVIEW/ANALYZE EMAIL EXCHANGE BETWEEN L MOSES AND P EISENBERG RE ADDITIONAL PRODUCTION OF DOCUMENTS |
| JDD | 02/21/07 | 0.30 | $120.00 | EMAILS FROM AND TO D FAURE RE VARIOUS POST-DISSOLUTION CONTINGENT/OTHER CLAIMS |
| JDD | 02/21/07 | 0.40 | $160.00 | DRAFTED LETTER TO G WERKHEISER AND L MOSES RE SUPPLEMENTAL IDENTIFICATION AND PRODUCTION OF DOCUMENTS PURSUANT TO 2/7/07 DISCOVERY ORDER |
| JDD | 02/22/07 | 0.20 | $80.00 | EMAILS TO AND FROM J KILGANNON RE BASS LETTER BRIEF RE PRIVILEGE ISSUES AND RESPONSE THERETO |
| JDD | 02/22/07 | 1.40 | $560.00 | REVIEW/ANALYZE BASS' LETTER BRIEF RE PRIVILEGE ISSUES |
| JDD | 02/23/07 | 0.50 | $200.00 | REVIEW/ANALYZE GSF REPLY RE PRIVILEGE ISSUES |
| JDD | 02/23/07 | 2.50 | $1,000.00 | REVIEW/ANALYZE KILGANNON DRAFT OF LETTER BRIEF TO JUDGE GROSS RE PRIVILEGE ISSUES AND MADE REVISIONS/COMMENTS THERETO |
| JDD | 02/23/07 | 0.30 | $120.00 | EMAILS TO AND FROM G WERKHEISER AND L MOSES RE PRODUCTION OF DOCUMENTS IN ACCORDANCE WITH 2/22 LETTER |
| JDD | 02/23/07 | 3.70 | $1,480.00 | REVIEW/ANALYZE BASS SUPPLEMENTAL RESPONSES TO WRITTEN DISCOVERY AND DOCUMENTS PRODUCED BY BASS (OVER 1400 PAGES) |
| JDD | 02/26/07 | 0.30 | $120.00 | REVIEW/ANALYZE EMAIL FROM SINZ/TROIA COUNSEL RE AND TELECONFERENCE WITH D FAURE RE INSURANCE ISSUES RELATIVE TO THE SINZ/TROIA CLAIMS |
| JDD | 02/26/07 | 1.30 | $520.00 | REVIEW/ANALYZE 2/22 LETTER FROM P EISENBERG TO L MOSES WITH ENCLOSED INSURANCE DOCUMENTS (COMMUNICATIONS WITH INSURERS) AND REVIEWED COMMUNICATIONS |
| JDD | 02/26/07 | 1.30 | $520.00 | REVIEW/ANALYZE AND OUTLINED D FAURE 341 TESTIMONY FOR DESIGNATION PURPOSES AND IN PREPARATION FOR UPCOMING HEARING AND 30(B)(6) DEPOSITION |
| JDD | 02/26/07 | 0.20 | $80.00 | REVIEW/ANALYZE EMAILS FROM R PABST RE RESULTS OF TEBOW TRIAL |
| JDD | 02/26/07 | 0.10 | $40.00 | REVIEW/ANALYZE EMAIL FROM L MOSES AND P EISENBERG RESPONSE RE DOCUMENTS PREVIOUSLY PRODUCED BY DEBTORS/GSF (APART FROM THOSE BEING MADE AVAILABLE AT GSF OFFICES) |
| JDD | 02/27/07 | 2.80 | $1,120.00 | REVIEW/ANALYZE TRANSCRIPT OF 10/19 HEARING FOR 30(B)(6) DEPOSITION DESIGNATION AND PREPARATION PURPOSES |
| JDD | 02/27/07 | 1.70 | $680.00 | REVIEW/ANALYZE SEVERAL EMAILS FROM L MOSES, P EISENBERG AND G WERKHEISER AND DRAFTED EMAILS TO L MOSES AND G WERKHEISER RE DEPOSITION SCHEDULING AND VARIOUS RELATED DISCOVERY ISSUES |
| JDD | 02/27/07 | 0.40 | $160.00 | TELEPHONE CONFERENCE W/ P EISENBERG RE DEPOSITION SCHEDULING AND RELATED DISCOVERY ISSUES |
| JDD | 02/27/07 | 0.80 | $320.00 | REVIEW/ANALYZE SUMMARY OF TESTIMONY IN TEBOW TRIAL AND FOLLOW UP COMMUNICATIONS WITH CLIENT RE SPECIFIC ISSUES OF RELEVANCE TO BANKRUPTCY LITIGATION |
| JDD | 02/28/07 | 0.80 | $320.00 | TELEPHONE CALLS WITH P EISENBERG RE DEPOSITION SCHEDULING AND RELATED ISSUES |
| JDD | 02/28/07 | 1.60 | $640.00 | DRAFTED AMENDED RESPONSE TO BASS 30(B)(6) DEPOSITION NOTICE AND FORWARDED TO CLIENT AND CO-COUNSEL FOR REVIEW AND COMMENT |
| JDD | 02/28/07 | 0.10 | $40.00 | REVIEW/ANALYZE EMAIL FROM JUDGE GROSS RE TIMING OF PRIVILEGE RULING |
| JDD | 02/28/07 | 0.30 | $120.00 | COMMUNICATIONS WITH GSF COUNSEL AND WITH J KILGANNON RE POSSIBLE APPEAL OF PRIVILEGE RULING |
| JDD | 02/28/07 | 3.50 | $1,400.00 | REVIEW/ANALYZE BASS 30(B)(6) NOTICE AND BEGAN DRAFTING DEPOSITION PREPARATION OUTLINE FOR DAVE FAURE |
| JDD | 02/28/07 | 0.10 | $40.00 | REVIEW/ANALYZE 2/28 LETTER FROM GSF COUNSEL TO L MOSES RE BASS DISCOVERY RESPONSE DEFICIENCIES |

| | | | | |
|---|---|---|---|---|
| JDD | 03/01/07 | 1.70 | $680.00 | TELEPHONE CONFERENCES W/ D FAURE RE PREPARATION FOR HIS DEPOSITION SCHEDULED FOR 3/5 |
| JDD | 03/01/07 | 0.60 | $240.00 | REVIEW/ANALYZE 2/28 LETTER FROM L MOSES CONFIRMING 3/5 DEPOSITION OF FAURE AND DEPOSITION OF BASS REP LATER THAT WEEK AND ENCLOSING REVISED 30(B)(6) DEPOSITION NOTICES |
| JDD | 03/01/07 | 0.30 | $120.00 | REVIEW/ANALYZE AND REVISED DEPO PREP OUTLINE AND FORWARDED TO D FAURE IN ANTICIPATION OF PREP SESSION |
| JDD | 03/01/07 | 0.40 | $160.00 | REVIEW/ANALYZE 10/4 HEARING TRANSCRIPT TO COUNTER BASS CLAIM RE FAURE TESTIMONY AT 10/19 HEARING |
| JDD | 03/01/07 | 0.30 | $120.00 | REVIEW/ANALYZE EMAIL FROM L MOSES RE DOCUMENT PRODUCTION AND POSSIBLE ALTERATION OF PRE-TRIAL CONFERENCE AND OTHER DISCOVERY DATES. TELEPHONE CONFERENCE W/ P EISENBERG RE MOSES EMAIL. REVIEW/ANALYZE EMAIL FROM P EISENBERG IN RESPONSE TO MOSES EMAIL. |
| JDD | 03/01/07 | 1.20 | $480.00 | REVIEW/ANALYZE JUDGE GROSS' OPINION AND ORDER RE PRIVILEGE ISSUES |
| JDD | 03/01/07 | 0.60 | $240.00 | TELEPHONE CONFERENCE W/ D FAURE RE JUDGE GROSS' OPINION AND ORDER |
| JDD | 03/01/07 | 0.20 | $80.00 | EMAIL TO L MOSES RE REVISED 30(B)(6) DEPOSITION NOTICES FOR DEBTORS AND REVIEW/ANALYZE RESPONSE FROM G WERKHEISER |
| JDD | 03/01/07 | 0.40 | $160.00 | TELEPHONE CONFERENCE W/ OTHER COUNSEL RE VARIOUS DISCOVERY/DEPOSITION ISSUES INCLUDING POSSIBLE ALTERATION OF PRE-TRIAL AND HEARING SCHEDULES |
| JDD | 03/01/07 | 0.60 | $240.00 | LOOKED AT E&Y DOCUMENTS IN LIGHT OF JUDGE GROSS' OPINION AND ORDER |
| JDD | 03/02/07 | 0.40 | $160.00 | TELECONFERENCES WITH BASS AND GSF COUNSEL RE SCHEDULING ISSUES AND COMMUNICATIONS WITH COURT RE APRIL HEARING |
| JDD | 03/02/07 | 1.40 | $560.00 | TELECONFERENCES WITH J KILGANNON, D FAURE AND E LOCKRIDGE RE CONSIDERATION OF PRIVILEGE ISSUES AND DEBTORS' RESPONSE IN LIGHT OF 3/1 OPINION AND ORDER |
| JDD | 03/02/07 | 0.30 | $120.00 | TELECONFERENCE WITH P EISENBERG RE L MOSES REQUEST FOR EXTENSION OF PRE-TRIAL AND HEARING DATES, JUDGE GROSS' 3/1 OPINION AND ORDER AND AND RELATED ISSUES |
| JDD | 03/02/07 | 0.80 | $320.00 | LEGAL RESEARCH RE AND REVIEW/ANALYZE LOCAL RULES AND FEDERAL BANKRUPTCY RULES RE STAY PENDING APPEAL AND MOTION FOR RECONSIDERATION AND EFFECT ON APPEAL IN CONNECTION WITH JUDGE GROSS' 3/1 OPINION AND ORDER |
| JDD | 03/05/07 | 3.00 | $1,200.00 | REVIEW/ANALYZE INSURANCE INFORMATION AND DOCUMENTS PRODUCED TO BASS |
| JDD | 03/07/07 | 3.30 | $1,320.00 | REVIEW/ANALYZE AND MADE REVISIONS TO KILGANNON DRAFT OF MOTION FOR RECONSIDERATION OF 3/1 ORDER RE ERNST & YOUNG |
| JDD | 03/07/07 | 0.30 | $120.00 | TELECONFERENCE WITH J KILGANNON RE DRAFT MOTION FOR RECONSIDERATION OF 3/1 ORDER RE ERNST & YOUNG |
| JDD | 03/08/07 | 0.10 | $40.00 | REVIEW/ANALYZE EMAILS FROM E LOCKRIDGE AND D FAURE RE E&Y ISSUES/DOCUMENT PRODUCTION |
| JDD | 03/09/07 | 0.30 | $120.00 | REVIEW/ANALYZE SEVERAL EMAILS FROM D FAURE, J KILGANNON AND E LOCKRIDGE RE MOTION FOR RECONSIDERATION OF 3/1 ORDER RE ERNST & YOUNG ISSUES |
| JDD | 03/09/07 | 0.10 | $40.00 | REVIEW/ANALYZE 3/9 LETTER FROM EISENBERG TO L MOSES RE DISCOVERY ISSUES |
| JDD | 03/12/07 | 0.40 | $160.00 | EMAIL COMMUNICATIONS WITH AND AMONG J KILGANNON, E LOCKRIDGE AND D FAURE RE REVISIONS TO AND FINALIZATION/FILING OF MOTION FOR RECONSIDERATION OF 3/1 ERNST & YOUNG ORDER |
| JDD | 03/12/07 | 0.30 | $120.00 | FINAL REVIEW OF MOTION FOR RECONSIDERATION IN PREPARATION FOR FILING AND SERVICE |
| JDD | 03/13/07 | 0.40 | $160.00 | REVIEW/ANALYZE EMAILS FROM G WERKHEISER AND GSF COUNSEL AND TELECONFERENCE WITH GSF COUNSEL RE BASS REQUEST TO EXPEDITE CONSIDERATION OF MOTIONS FOR RECONSIDERATION RE 3/1 ERNST & YOUNG ORDER. |
| JDD | 03/13/07 | 0.10 | $40.00 | REVIEW/ANALYZE EMAIL FROM G WERKHEISER RE BASS' VIEW OF EFFECT OF 3/1 ORDER AND DEBTORS' COMPLIANCE THEREWITH |
| JDD | 03/14/07 | 0.60 | $240.00 | REVIEW/ANALYZE BASS MOTION FOR EXPEDITED TREATMENT OF MOTIONS FOR RECONSIDERATION OF 3/1 ERNST & YOUNG ORDER |
| JDD | 03/15/07 | 0.20 | $80.00 | REVIEW/ANALYZE COURT'S ORDER GRANTING BASS MOTION TO EXPEDITE CONSIDERATION OF MOTIONS FOR CONSIDERATION AND FORWARDED SAME TO CLIENT |
| JDD | 03/15/07 | 0.20 | $80.00 | EMAILS TO AND FROM D FAURE RE SCHEDULING ISSUES AND AVAILABILITY RE RESCHEDULING OF TRIAL ON BASS MOTIONS AND DEBTORS' PI MOTION |
| JDD | 03/15/07 | 0.20 | $80.00 | TELECONFERENCE WITH P EISENBERG RE SCHEDULING ISSUES |
| JDD | 03/16/07 | 0.40 | $160.00 | TELECONFERENCE WITH COUNSEL FOR BASS AND GSF RE SCHEDULING ISSUES |
| JDD | 03/16/07 | 0.20 | $80.00 | EMAILS TO AND FROM CLIENT AND CO-COUNSEL RE SCHEDULING OF TRIAL IN ADVERSARY AND BASS MOTIONS MATTERS |
| JDD | 03/19/07 | 0.30 | $120.00 | REVIEW/ANALYZE 3/15 LETTER FROM L MOSES RE DISCOVERY ISSUES |
| JDD | 03/20/07 | 0.10 | $40.00 | REVIEW/ANALYZE 3/20 LETTER FROM P EISENBERG TO L MOSES RE DISCOVERY AND 3/21 STATUS/SCHEDULING CONFERENCE |
| JDD | 03/20/07 | 0.80 | $320.00 | REVIEW/ANALYZE BASS' RESPONSE TO MOTIONS FOR RECONSIDERATION |

| | | | | |
|---|---|---|---|---|
| JDD | 03/21/07 | 2.20 | $880.00 | PREPARATION FOR AND ATTENDANCE AT STATUS/SCHEDULING CONFERENCE RE BASS MOTIONS AND DEBTORS PT/DECLARATORY RELIEF MOTION |
| JDD | 03/21/07 | 0.30 | $120.00 | DRAFTED EMAIL TO D FAURE RE RESULTS OF STATUS/SCHEDULING CONFERENCE |
| JDD | 03/23/07 | 0.20 | $80.00 | EMAILS TO AND FROM L MOSES RE SCHEDULING ISSUES |
| JDD | 03/27/07 | 0.40 | $160.00 | REVIEW/ANALYZE JUDGE GROSS' 3/26 ORDER REGARDING MOTIONS FOR RECONSIDERATION |
| JDD | 03/27/07 | 0.20 | $80.00 | EMAILS TO AND FROM CLIENT AND CO-COUNSEL RE JUDGE GROSS' 3/26 ORDER |
| JDD | 03/28/07 | 1.20 | $480.00 | TELECONFERENCE WITH CLIENT AND CO-COUNSEL RE COURT'S 3/26 ORDER ON CLARIFICATION OF 3/1 ERNST & YOUNG ORDER |
| JDD | 03/29/07 | 0.80 | $320.00 | REVIEW/ANALYZE MEMO FROM KEAN MILLER RE EFFECT OF TEBOW SETTLEMENT ON POSSIBLE BASS CONTRIBUTION CLAIM AGAINST SANTA FE AND SEVERAL EMAILS FROM CLIENT AND KEAN MILLER RE SAME SUBJECT |
| JDD | 03/30/07 | 0.30 | $120.00 | TELECONFERENCE WITH J KILGANNON RE RESEARCH INTO ISSUES RELATING TO APPEAL IN CONNECTION WITH 3/26 ERNST & YOUNG ORDER |
| JDD | 03/30/07 | 0.70 | $280.00 | TELECONFERENCE WITH D FAURE, PABST, LOCKRIDGE AND KILGANNON RE COURSE OF ACTION IN CONNECTION WITH 3/26 ERNST & YOUNG ORDER |
| JDD | 03/30/07 | 1.60 | $640.00 | REVIEW/ANALYZE 3/28 LETTER FROM L MOSES (CC TO COURT) RE HIGHLANDS INSURANCE. NUMEROUS EMAILS FROM AND TO L MOSES, P EISENBERG, CLIENT AND G WERKHEISER RE HIGHLAND INSURANCE ISSUES. DRAFTED LETTER TO L MOSES IN RESPONSE TO HER 3/28 LETTER. |
| JDD | 04/02/07 | 0.20 | $80.00 | REVIEW/ANALYZE EMAIL FROM L MOSES RE SCHEDULING NEW TRIAL DATES FOR BASS MOTIONS AND DEBTORS' PI MOTION AND DRAFTED RESPONSE |
| JDD | 04/03/07 | 0.30 | $120.00 | EMAILS FROM OPPOSING AND CO-COUNSEL AND CLIENT RE SCHEDULING (RE-SETTING TRIAL ON BASS MOTIONS AND DEBTORS' PI MOTION). EMAIL TO G WERKHEISER RE NEW TRIAL DATES. |
| JDD | 04/03/07 | 3.00 | $1,200.00 | REVIEW/ANALYZE SEVERAL EMAILS FROM D FAURE RE ERNST & YOUNG DOCS TO PRODUCE TO BASS AND BEGAN REVIEW OF ERNST & YOUNG DOCUMENTS FOR PRODUCTION TO BASS |
| JDD | 04/04/07 | 1.30 | $520.00 | CONTINUED REVIEW OF ERNST & YOUNG DOCUMENTS FOR PRODUCTION TO BASS |
| JDD | 04/04/07 | 0.50 | $200.00 | SEVERAL EMAILS TO AND FROM D FAURE RE ERNST & YOUNG DOCUMENTS TO PRODUCE TO BASS AND VARIOUS ISSUES CONCERNING DOCS |
| JDD | 04/04/07 | 0.20 | $80.00 | REVIEW/ANALYZE 4/4 LETTER FROM L MOSES RE BASS PROOF OF CLAIM, SETTLEMENT AGREEMENT IN TEBOW AND CONFIDENTIALITY |
| JDD | 04/04/07 | 1.10 | $440.00 | TELECONFERENCE WITH D FAURE RE ERNST & YOUNG DOCUMENT PRODUCTION TO BASS |
| JDD | 04/05/07 | 0.40 | $160.00 | EMAIL COMMUNICATIONS WITH CLIENT AND CO-COUNSEL RE PRODUCTION OF E&Y DOCUMENTS TO BASS |
| JDD | 04/05/07 | 0.30 | $120.00 | DRAFTED NOTICE OF SERVICE OF E&Y DOCUMENT PRODUCTION ON BASS AND FORWARDED TO CLIENT FOR REVIEW AND COMMENT |
| JDD | 04/05/07 | 3.20 | $1,280.00 | FINAL; REVIEW AND PREPARATION OF ERNST & YOUNG DOCUMENTS FOR PRODUCTION TO BASS |
| JDD | 04/06/07 | 0.80 | $320.00 | REVIEW/ANALYZE EMAILS FROM E LOCKRIDGE AND D FAURE RE FINAL ISSUES RE PRODUCTION OF ERNST & YOUNG DOCUMENTS AND PREPARED SAME FOR COPYING AND SERVICE/PRODUCTION. |
| JDD | 04/06/07 | 0.60 | $240.00 | DRAFTED LETTER TO G WERKHEISER (CC TO MOSES AND GSF COUNSEL) RE PRODUCTION OF ERNST & YOUNG DOCUMENTS AND REVISED NOTICE OF PRODUCTION OF ERNST & YOUNG DOCS AND PREPARED SAME FOR FILING/SERVICE/DELIVERY. |
| JDD | 04/06/07 | 0.60 | $240.00 | DRAFTED LOG RE POSSIBLY NON-RESPONSIVE/PRIVILEGED DOCS RE E&Y AND FORWARDED TO CLIENT AND CO-COUNSEL FOR FURTHER REVIEW |
| JDD | 04/06/07 | 0.40 | $160.00 | TELECONFERENCE WITH GSF COUNSEL RE L MOSES 4/4 LETTER RE TEBOW SETTLEMENT AND CONFIDENTIALITY/PROOF OF CLAIM ISSUES |
| JDD | 04/06/07 | 0.30 | $120.00 | LEGAL RESEARCH RE CONFIDENTIALITY ISSUES IN CONNECTION WITH L MOSES 4/4 LETTER RE TEBOW SETTLEMENT/BASS PROOF OF CLAIM |
| JDD | 04/09/07 | 0.10 | $40.00 | EMAIL FROM L MOSES RE TRIAL DATED AND DRAFTED RESPONSE |
| JDD | 04/09/07 | 0.10 | $40.00 | EMAIL FROM L MOSES RE HER 4/4 LETTER AND CONFIDENTIALITY ISSUES AND DRAFTED RESPONSE |
| JDD | 04/09/07 | 0.10 | $40.00 | REVIEW/ANALYZE 4/9 LETTER FROM P EISENBERG RESPONDING TO L MOSES 4/4 LETTER RE BASS PROOF OF CLAIM AND CONFIDENTIALITY ISSUES |
| JDD | 04/09/07 | 0.20 | $80.00 | TELECONFERENCE WITH CLIENT AND CO-COUNSEL RE ERNST & YOUNG DOCS/ LOG |
| JDD | 04/10/07 | 0.20 | $80.00 | EMAILS FROM L MOSES AND G WERKHEISER AND DRAFTED RESPONSE RE DEBTORS' POSITION ON BASS REQUEST FOR CONFIDENTIALITY RE TEBOW SETTLEMENT |
| JDD | 04/10/07 | 0.80 | $320.00 | REVIEW/ANALYZE DOCUMENTS TO BE LOGGED AND DRAFTED WORKING LOG OF WITHHELD (PRIVILEGED) AND REDACTED DOCUMENTS RE ERNST & YOUNG PRODUCTION TO BASS |
| JDD | 04/11/07 | 0.70 | $280.00 | REVIEW/ANALYZE BASS MOTION RE CONFIDENTIALITY OF TEBOW SETTLEMENT AND PROOF OF CLAIM ISSUES |

| | | | | |
|---|---|---|---|---|
| JDD | 04/11/07 | 0.60 | $240.00 | DRAFTED RESPONSE TO BASS MOTION TO SHORTEN TIME RE EMERGENCY MOTION IN CONNECTION WITH TEBOW SETTLEMENT/CONFIDENTIALITY/POC ISSUES |
| JDD | 04/11/07 | 0.30 | $120.00 | SEVERAL EMAILS FROM AND TO G WERKHEISER, P EISENBERG, K MANGAN, D BUCHBINDER AND CLIENT RE SCHEDULING AND OTHER ISSUES RE EMERGENCY MOTION IN CONNECTION WITH TEBOW SETTLEMENT/CONFIDENTIALITY/POC ISSUES |
| JDD | 04/11/07 | 0.20 | $80.00 | TELECONFERENCE WITH G WERKHEISER AND WITH JUDGE GROSS' CHAMBERS RE RE-SETTING HEARING ON BASS EMERGENCY MOTION FROM 4/13 TO 4/25 |
| JDD | 04/12/07 | 0.20 | $80.00 | TELEPHONE CONFERENCE W/ D BUCHBINDER RE BASS EMERGENCY MOTION RE TEBOW SETTLEMENT/POC/CONFIDENTIALITY |
| JDD | 04/12/07 | 0.20 | $80.00 | EMAIL TO P EISENBERG (CC TO CLIENT) RE TELEPHONE CONFERENCE W/ D BUCHBINDER RE BASS EMERGENCY MOTION RE TEBOW SETTLEMENT/POC/CONFIDENTIALITY |
| JDD | 04/12/07 | 0.30 | $120.00 | REVIEW/ANALYZE EMAIL FROM G WERKHEISER WITH DRAFT ORDER RE SCHEDULING OF BASS EMERGENCY MOTION AND EXTENSION OF BAR DATE |
| JDD | 04/12/07 | 0.10 | $40.00 | EMAILS TO AND FROM G WERKHEISER AND P EISENBERG RE COMMENTS TO DRAFT ORDER RE SCHEDULING OF BASS EMERGENCY MOTION AND EXTENSION OF BAR DATE |
| JDD | 04/13/07 | 0.20 | $80.00 | SEVERAL EMAILS FROM AND TO CLIENT AND CO-COUNSEL RE POSSIBLE SETTLEMENT WITH BASS |
| JDD | 04/17/07 | 0.30 | $120.00 | TELECONFERENCES WITH P EISENBERG AND L MOSES RE BASS CONFIDENTIALITY MOTION AND DISCRETE SCHEDULING/DISCOVERY ISSUES. |
| JDD | 04/19/07 | 0.80 | $320.00 | REVIEW/ANALYZE BASS OBJECTION TO SECOND EXCLUSIVITY MOTION |
| JDD | 04/27/07 | 0.30 | $120.00 | EMAILS TO AND FROM FAURE AND PABST RE PREPARATION OF AFFIDAVITS MEMORIALIZING THEIR KNOWLEDGE RE SETTLEMENT AMOUNT AND RELATED ISSUES |
| JDD | 04/30/07 | 0.30 | $120.00 | REVIEW/ANALYZE EMAIL FROM PABST WITH DRAFT AFFIDAVIT RE TEBOW SETTLEMENT/CONFIDENTIALITY |
| JDD | | 106.50 | $42,600.00 | |
| MES | 04/05/07 | 0.20 | $73.00 | RECEIPT AND REVIEW OF VARIOUS E-MAILS RELATING TO THE RESOLUTION OF THE ELLISON LITIGATION |
| MES | | 0.20 | $73.00 | |
| | Total: | 233.60 | $84,550.00 | |

**Plan and Disclosure Statement**

| | | | | |
|---|---|---|---|---|
| JCK | 02/16/07 | 0.10 | $33.00 | EMAIL TO JDD RE PLAN |
| JCK | | 0.10 | $33.00 | |
| JDD | 02/02/07 | 3.50 | $1,400.00 | REVISED PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT |
| JDD | 02/05/07 | 4.00 | $1,600.00 | DRAFTED PLAN AND RELATED DOCUMENTS |
| JDD | 02/07/07 | 6.30 | $2,520.00 | DRAFTED PLAN OF REORGANIZATION |
| JDD | 02/09/07 | 1.80 | $720.00 | DRAFTED INSURANCE RIGHTS ASSIGNMENT AGREEMENT |
| JDD | 02/09/07 | 0.80 | $320.00 | CONFERENCE WITH M SIMON RE PLAN AND TRUST ISSUES |
| JDD | 02/12/07 | 0.30 | $120.00 | TELEPHONE CONFERENCE W/ M SIMON RE PLAN AND TRUST DRAFTING ISSUES |
| JDD | 02/15/07 | 0.20 | $80.00 | EMAILS TO AND FROM M SIMON RE SEVERAL PLAN/TRUST ISSUES IN PREPARATION FOR CIRCULATION OF PLAN DOCUMENTS |
| JDD | 02/15/07 | 0.90 | $360.00 | FINAL REVIEW AND REVISION OF PLAN DRAFT IN PREPARATION FOR CIRCULATION TO CLIENT |
| JDD | 02/15/07 | 1.70 | $680.00 | REVIEW/ANALYZE AND MADE REVISIONS TO TRUST AGREEMENT |
| JDD | 02/16/07 | 0.70 | $280.00 | REVISED INSURANCE RIGHTS ASSIGNMENT AGREEMENT |
| JDD | 02/16/07 | 0.20 | $80.00 | EMAIL AND TELEPHONE TO CLIENT RE AND FORWARDING PLAN DOCUMENTS |
| JDD | 02/21/07 | 0.20 | $80.00 | EMAILS FROM AND TO E LOCKRIDGE RE SCOPE OF INSURANCE RIGHTS ASSIGNMENT IN CONNECTION WITH PLAN. |
| JDD | 02/21/07 | 0.20 | $80.00 | COMMUNICATIONS WITH M SIMON RE REVISIONS TO AND TIMING OF FILING OF PLAN AND DISCLOSURE STATEMENT |
| JDD | 02/21/07 | 0.50 | $200.00 | TELEPHONE CONFERENCE W/ P EISENBERG RE PLAN AND DISCOVERY ISSUES |
| JDD | 02/26/07 | 0.90 | $360.00 | TELEPHONE CONFERENCE W/ D FAURE RE PLAN DOCUMENT AND PLAN AND RELATED ISSUES |
| JDD | 02/28/07 | 0.40 | $160.00 | REVIEW/ANALYZE EMAILS FROM D FAURE AND DOCUMENTS RE ROYALTY/ESCHEAT FUNDS AND DRAFTED SECTION OF DISCLOSURE STATEMENT RE ROYALTY/ESCHEAT FUNDS |
| JDD | 04/12/07 | 0.80 | $320.00 | REVIEW/ANALYZE AND REVISED PLAN.  FORWARDED REVISED PLAN OF REORGANIZATION TO CLIENT FOR REVIEW AND COMMENT. |
| JDD | 04/16/07 | 0.20 | $80.00 | TELECONFERENCE WITH P EISENBERG RE PLAN AND CLAIM ISSUES |
| JDD | | 23.60 | $9,440.00 | |

| | | | | |
|---|---|---|---|---|
| MES | 02/02/07 | 1.30 | $474.50 | RECEIPT AND REVIEW OF JDD'S REVISIONS TO PLAN AND RESPOND TO JDD RE SUBSTANTIVE COMMENTS, COORDINATE REVISIONS TO DOCUMENT PURSUANT TO DISCUSSIONS WITH JDD |
| MES | 02/05/07 | 3.00 | $1,095.00 | ANALYSIS OF REQUIREMENTS FOR MOTION RELATING TO APPROVAL OF DISCLOSURE STATEMENT AND VOTING PROCEDURES NEEDED FOR PLAN CONFIRMATION AND PREPARE INITIAL DRAFT OF SAME |
| MES | 02/07/07 | 3.00 | $1,095.00 | REVISE VOTING PROCEDURES AND APPROVAL OF DISCLOSURE STATEMENT MOTION |
| MES | 02/08/07 | 4.20 | $1,533.00 | CALLS AND E-MAILS W/ JDD RE PLAN, CLAIMS MOTION AND OVERALL PLAN STRATEGY (.6) - ANALYSIS OF CLAIMS BAR DATE MOTION AND VOTING PROCEDURES MOTION IN RELATION TO CHANGES AND COMMENTS TO PLAN BY JDD AND REVISE BOTH CLAIMS BAR DATE MOTION AND VOTING PROCEDURES MOTION BASED ON ANALYSIS (3.6) |
| MES | 02/09/07 | 7.80 | $2,847.00 | CONF W/ JDD RE REQUIREMENTS FOR A LIQUIDATING TRUST AGREEMENT TO IMPLEMENT THE PLAN FOR DEBTORS (.8) - ANALYSIS OF PLAN REQUIREMENTS AND VARIOUS COMPONENTS NEEDED FOR LIQUIDATING TRUST AND PREPARE INITIAL DRAFT OF A LIQUIDATING TRUST AGREEMENT (6.0) - REVIEW REVISED PLAN AND ANALYSIS OF SAME WITH DISCLOSURE STATEMENT (1.0) |
| MES | 02/11/07 | 2.60 | $949.00 | PREPARE THE LIQUIDATING TRUST AGREEMENT FOR USE PURSUANT TO PLAN |
| MES | 02/12/07 | 4.50 | $1,642.50 | E-MAILS TO AND FROM AND CALLS W/ JDD RE CONSIDERATIONS AND SPECIFICATIONS OF LIQUIDATING TRUST AGREEMENT (.5) - REVISIONS TO LIQUIDATING TRUST AGREEMENT (4.0) |
| MES | 02/13/07 | 6.10 | $2,226.50 | REVISIONS TO LIQUIDATING TRUST AGREEMENT AND PLAN IN LIGHT OF PLAN REVIEW, COORDINATE PROVISIONS IN BOTH DOCUMENTS (6.0) - E-MAILS W/ JDD RE SAME (.1) |
| MES | 02/15/07 | 0.70 | $255.50 | E-MAILS W/ JDD RE REVISIONS TO DISCLOSURE STATEMENT AND ISSUES RELATING TO THE QUALIFIED TRUST AGREEMENT (.2) - REVIEW CODE PROVISIONS RELATING TO A CASE AND RE ISSUES OF UST FEES AND CLOSING OF COURT REMAINING JURISDICTION IN PLAN (.5) |
| MES | 02/16/07 | 0.60 | $219.00 | E-MAILS W/ JDD RE NON-BANKRUPTCY LITIGATION ASPECT OF PLAN AND CHANGES NEEDED TO PLAN AND DISCLOSURE STATEMENT RE SAME (.2) - REVIEW BACKGROUND INFORMATION RELATING TO CHANGES TO PLAN AND DS (.4) |
| MES | 02/21/07 | 1.90 | $693.50 | RECEIPT AND REVIEW OF E-MAIL FROM JDD RE CHANGES TO PLAN DOCUMENTS RELATING TO INSURANCE ASSIGNMENT ISSUES (.1) - ANALYSIS OF ASSIGNMENT OF INSURANCE RIGHTS DOCUMENTS AND REVISIONS TO SAME, REVISIONS MADE TO PLAN TO CONFORM WITH REVISIONS IN ASSIGNMENT OF INSURANCE RIGHTS DOCUMENT (1.8) |
| MES | 02/22/07 | 7.30 | $2,664.50 | REVISE ASSIGNMENT OF INSURANCE RIGHTS AGREEMENT, PLAN, DISCLOSURE STATEMENT, BALLOTS, MOTION FOR APPROVAL OF DISCLOSURE STATEMENT AND VOTING PROCEDURES AND REVIEW RULES RE SAME, E-MAILS TO JDD RE REVISIONS BEING MADE TO PLAN DOCUMENTS |
| MES | 02/23/07 | 0.20 | $73.00 | CALL W/ JDD RE PLAN AND DISCLOSURE STATEMENT ISSUES |
| MES | 03/07/07 | 0.60 | $219.00 | REVIEW OF DEADLINES AND FILING REQUIREMENTS FOR DISCLOSURE STATEMENT AND PLAN |
| MES | 03/08/07 | 3.20 | $1,168.00 | ANALYSIS OF INTEGRATION BETWEEN ALL PLAN DOCUMENTS AND REVISE RE SAME |
| MES | 03/09/07 | 1.00 | $365.00 | REVISE PLAN DOCUMENTS (.4) - REVIEW CLAIMS PROCEDURE FOR OILFIELD LEGACY CLAIMS  (.4) - E-MAIL JDD WITH DRAFTS OF PLAN DOCUMENTS AND COMMENTS RE ITEMS STILL NEEDED TO BE DRAFTED (.2) |
| MES | 03/22/07 | 0.10 | $36.50 | CALL W/ JDD RE NEW DATE FOR DISCLOSURE STATEMENT HEARING |
| MES | | 48.10 | $17,556.50 | |

|  |  |  |
|---|---|---|
| Total: | 71.80 | $27,029.50 |

<br>

**Prep for/Attendance at Hearing/Other**

| | | | | |
|---|---|---|---|---|
| JDD | 04/19/07 | 0.20 | $80.00 | DRAFTED AGENDA NOTICE FOR 4/25 OMNIBUS HEARING |
| JDD | 04/25/07 | 5.50 | $2,200.00 | PREPARATION FOR (INCLUDING REVIEW OF CASE LAW AND OUTLINING OF ARGUMENTS) AND ATTENDANCE AT OMNIBUS HEARING (EXCLUSIVITY MOTION AND BASS MOTION RE CONFIDENTIALITY/TEBOW SETTLEMENT).  CONFERENCE WITH CO -COUNSEL RE HEARING RESULTS. |
| JDD | | 5.70 | $2,280.00 | |

|  |  |  |
|---|---|---|
| Total: | 5.70 | $2,280.00 |

<br>

**Case Administration**

| | | | | |
|---|---|---|---|---|
| AM | 04/13/07 | 0.50 | $87.50 | DRAFT AMENDED SCHEDULE F EMAILS WITH THE GROUP REGARDING THE SAME. |
| AM | 04/16/07 | 1.50 | $262.50 | DRAFT AND RE-DRAFT AMENDED SCHEDULE F TO INCLUDE BOTH 15375 AND E&Y (.5) DRAFT DECLARATION CONCERNING DEBTORS AMENDED SCHEDULES (.5) MULTI EMAILS RE-SAME (.5) |
| AM | 04/16/07 | 0.20 | $35.00 | REVISE SCHEDULE F - EMAILS WITH MES (.2) |

| | | | | |
|---|---|---|---|---|
| AM | | 2.20 | $385.00 | |
| JDD | 02/16/07 | 0.20 | $80.00 | COMMUNICATIONS WITH CLIENT AND OTHER COUNSEL RE PROPOSED OMNIBUS HEARING DATES AND DRAFTED CERTIFICATE AND PROPOSED ORDER RE OMNIBUS HEARING DATES |
| JDD | 02/19/07 | 0.20 | $80.00 | SEVERAL EMAILS FROM AND TO G WERKHEISER (BASS) RE PROPOSED OMNIBUS HEARING DATES |
| JDD | 02/20/07 | 0.40 | $160.00 | DRAFTED AGENDA LETTER FOR 2/27 HEARING |
| JDD | 02/20/07 | 0.20 | $80.00 | TEL FROM JUDGE GROSS' CHAMBERS RE OMNIBUS HEARING DATES AND PREPARED REVISED CERTIFICATE R AND REVISED OMNIBUS HEARING DATE ORDER |
| JDD | 02/21/07 | 0.30 | $120.00 | REVISED AGENDA NOTICE FOR 2/27 HEARING BASED ON BASS FILING OBJECTION TO BAR DATE MOTION AND NOT FILING OBJECTION TO EXCLUSIVITY MOTION |
| JDD | 02/23/07 | 0.40 | $160.00 | DRAFTED EMAIL TO G WERKHEISER RE ISSUES INVOLVED IN MATTERS SET FOR HEARING ON 2/27 AND EMAILS FROM AND TO G WERKHEISER RE BAR DATE AND EXCLUSIVITY ISSUES |
| JDD | 02/23/07 | 0.40 | $160.00 | DRAFTED EXCLUSIVITY ORDER AND CERTIFICATION FOR EXCLUSIVITY ORDER |
| JDD | 02/23/07 | 0.30 | $120.00 | REVISED AGENDA NOTICE FOR 2/27 HEARING |
| JDD | 02/27/07 | 1.30 | $520.00 | PREPARATION FOR AND ATTENDANCE AT OMNIBUS HEARING (EXCLUSIVITY AND BAR DATE) |
| JDD | 03/13/07 | 1.40 | $560.00 | REVIEW/ANALYZE AND REVISED AND PREPARED SECOND EXCLUSIVITY MOTION FOR FILING/SERVICE |
| JDD | 03/19/07 | 0.30 | $120.00 | DRAFTED AGENDA NOTICE FOR 3/21 HEARING |
| JDD | 03/22/07 | 0.20 | $80.00 | REVIEW/ANALYZE MONTHLY OPERATING REPORTS FOR FEBRUARY AND FORWARDED THEM FOR FILING. |
| JDD | 04/24/07 | 0.20 | $80.00 | PREPARED REVISED AGENDA LETTER FOR 4/25 HEARING |
| JDD | 04/25/07 | 0.40 | $160.00 | TELECONFERENCE WITH D FAURE RE OMNIBUS HEARING RESULTS |
| JDD | | 6.20 | $2,480.00 | |
| MES | 03/28/07 | 0.20 | $73.00 | REVIEW OF E-MAILS RELATING TO STRATEGY GOING FORWARD |
| MES | 04/13/07 | 0.40 | $146.00 | E-MAILS W/ JDD, S FOSTER AND A MINEHART RE PREPARATION AND FILING OF AMENDMENT TO SCHEDULE F |
| MES | 04/13/07 | 0.10 | $36.50 | E-MAIL W/ ASSISTANT US TRUSTEE RE HEARING ON MOTION TO EXTEND EXCLUSIVITY |
| MES | 04/16/07 | 1.00 | $365.00 | COORDINATE AND SUPERVISE DRAFTING AND FILING OF AMENDMENT TO SCHEDULE F |
| MES | 04/17/07 | 0.20 | $73.00 | REVIEW DRAFT OF DECLARATION OF DAVID FAURE RE AMENDMENT TO SCHEDULE F AND E-MAIL SAME TO FAURE FOR SIGNING, COORDINATE FILING OF SAME |
| MES | | 1.90 | $693.50 | |
| SLFO | 02/01/07 | 0.30 | $37.50 | DOWNLOAD/PRINT/SCAN PROOFS OF CLAIM |
| SLFO | 02/12/07 | 0.50 | $62.50 | PREPARE, EFILE AND SERVE DEBTORS' MOTION FOR ORDER (I) ESTABLISHING BAR DATES FOR FILING PROOFS OF CLAIM, (II) APPROVING PROOF OF CLAIM FORM, (III) APPROVING BAR DATE NOTICE, (IV) APPROVING MAILING AND PUBLICATION PROCEDURES, AND (V) PROVIDING CERTAIN OTHER RELIEF - SEND COPY TO DAVE FAURE AND ERIC LOCKRIDGE VIA EMAIL |
| SLFO | 02/12/07 | 0.40 | $50.00 | DRAFT CERTIFICATE OF SERVICE AND EDIT NOTICE/MOTION |
| SLFO | 02/15/07 | 0.30 | $37.50 | PREPARE, EFILE AND SERVE LETTER TO THE HONORABLE KEVIN GROSS - SEND COPY TO DAVE FAURE AND ERIC LOCKRIDGE VIA EMAIL |
| SLFO | 02/15/07 | 0.10 | $12.50 | CONTACT CHAMBERS RE: OMNIBUS HEARING DATES |
| SLFO | 02/15/07 | 0.20 | $25.00 | DRAFT CERTIFICATION OF COUNSEL REGARDING OMNIBUS HEARING DATES |
| SLFO | 02/16/07 | 0.20 | $25.00 | DRAFT CERTIFICATE OF SERVICE RE: CERTIFICATION OF COUNSEL REGARDING OMNIBUS HEARING DATES |
| SLFO | 02/16/07 | 0.30 | $37.50 | PREPARE, EFILE AND SERVE CERTIFICATION OF COUNSEL REGARDING OMNIBUS HEARING DATES - SEND COPY TO JUDGE GROSS VIA HAND DELIVERY - SEND COPY TO DAVE FAURE AND ERIC LOCKRIDGE VIA EMAIL |
| SLFO | 02/19/07 | 0.20 | $25.00 | UPDATE SERVICE LIST |
| SLFO | 02/20/07 | 0.30 | $37.50 | PREPARE, EFILE AND SERVE CERTIFICATION OF COUNSEL REGARDING OMNIBUS HEARING DATES - SEND COPY TO JUDGE GROSS VIA HAND DELIVERY - SEND COPY TO DAVE FAURE AND ERIC LOCKRIDGE VIA EMAIL |
| SLFO | 02/20/07 | 0.30 | $37.50 | PREPARE, EFILE AND SERVE NOTICE OF SERVICE RE: OBJECTIONS AND RESPONSES OF SANTA FE MINERALS, INC. AND 15375 MEMORIAL CORPORATION TO BEPCO L.P., F/K/A BASS ENTERPRISES PRODUCTION COMPANY'S, FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND ANSWERS AND OBJECTIONS OF SANTA FE MINERALS, INC. AND 15375 MEMORIAL CORPORATION TO BEPCO L.P., F/K/A BASS ENTERPRISES PRODUCTION COMPANY'S, FIRST SET OF INTERROGATORIES - SEND COPY TO DAVE FAURE AND ERIC LOCKRIDGE VIA EMAIL |
| SLFO | 02/23/07 | 0.40 | $50.00 | PREPARE, EFILE AND SERVE NOTICE OF AGENDA OF MATTERS SCHEDULED FOR HEARING ON FEBRUARY 27, 2007, AT 10:00 A.M. - SEND BOUND COPY TO JUDGE GROSS - SEND COPY TO DAVE FAURE AND ERIC LOCKRIDGE VIA EMAIL |

| | | | | |
|---|---|---|---|---|
| SLFO | 02/23/07 | 0.40 | $50.00 | PREPARE, EFILE AND SERVE CERTIFICATION OF COUNSEL REGARDING PROPOSED FORM OF ORDER GRANTING DEBTORS' MOTION FOR EXTENSION OF EXCLUSIVE PERIODS TO FILE PLANS OF REORGANIZATION AND TO SOLICIT ACCEPTANCES OF PLANS OF REORGANIZATION - SEND BOUND COPY TO JUDGE GROSS - SEND COPY TO DAVE FAURE AND ERIC LOCKRIDGE VIA EMAIL |
| SLFO | 02/23/07 | 0.30 | $37.50 | PREPARE, EFILE AND SERVE LETTER BRIEF- SEND BOUND COPY TO JUDGE GROSS - SEND COPY TO DAVE FAURE AND ERIC LOCKRIDGE VIA EMAIL |
| SLFO | 02/27/07 | 0.40 | $50.00 | PREPARE AND EFILE MONTHLY OPERATING REPORT FOR JANUARY, 2007 (CASE NOS. 06-10859 AND 06-10860) - SEND COPY TO DAVID BUCHBINDER VIA HAND DELIVERY - SEND COPY TO DAVID FAURE AND ERIC LOCKRIDGE VIA EMAIL |
| SLFO | 03/01/07 | 0.30 | $37.50 | UPDATE SERVICE LIST |
| SLFO | 03/06/07 | 2.00 | $250.00 | DRAFT CERTIFICATE OF SERVICE RE: NOTICE OF DEADLINE OF APRIL 16, 2007 AT 5:00 P.M. (EASTERN TIME) TO FILE PROOFS OF CLAIM AGAINST DEBTORS |
| SLFO | 03/12/07 | 0.50 | $62.50 | PREPARE AND SERVE DEBTORS' MOTION FOR RECONSIDERATION AND/OR CLARIFICATION OF COURT'S MARCH 1, 2007 ORDER AND, IN THE ALTERNATIVE MOTION FOR STAY PENDING APPEAL - SEND COPY TO DAVE FAURE AND ERIC LOCKRIDGE VIA EMAIL |
| SLFO | 03/13/07 | 0.30 | $37.50 | PREPARE, EFILE AND SERVE SECOND MOTION FOR EXTENSION OF EXCLUSIVE PERIODS TO FILE PLANS OF REORGANIZATION AND TO SOLICIT ACCEPTANCES OF PLANS OF REORGANIZATION- SEND COPY TO DAVE FAURE AND ERIC LOCKRIDGE VIA EMAIL |
| SLFO | 03/15/07 | 0.20 | $25.00 | PREPARE AND EFILE AFFIDAVIT OF SERVICE - SEND COPY TO DAVE FAURE AND ERIC LOCKRIDGE VIA EMAIL |
| SLFO | 03/19/07 | 0.40 | $50.00 | PREPARE, EFILE AND SERVICE NOTICE OF AGENDA OF MATTERS SCHEDULED FOR HEARING ON WEDNESDAY, MARCH 21, 2007 AT 1:00PM (CASE NOS. 06-10859 AND 06-10860) - SEND BOUND COPY TO JUDGE GROSS - SEND COPY TO DAVE FAURE AND ERIC LOCKRIDGE VIA EMAIL |
| SLFO | 03/22/07 | 0.40 | $50.00 | PREPARE AND EFILE MONTHLY OPERATING REPORT FOR FEBRUARY, 2007 (CASE NOS. 06-10859 AND 06-10860) - SEND COPY TO DAVID BUCHBINDER VIA HAND DELIVERY - SEND COPY TO DAVID FAURE AND ERIC LOCKRIDGE VIA EMAIL |
| SLFO | 04/06/07 | 0.30 | $37.50 | PREPARE, EFILE AND SERVE NOTICE OF SERVICE (CASE NOS. 06-10859 AND 06-50822) - SEND COPY TO DAVE FAURE AND ERIC LOCKRIDGE VIA EMAIL |
| SLFO | 04/13/07 | 0.30 | $37.50 | DRAFT NOTICE OF FILING OF AMENDMENT TO SCHEDULE F |
| SLFO | 04/16/07 | 0.20 | $25.00 | PREPARE, EFILE AND SERVE AMENDMENT TO SCHEDULE F - SEND COPY TO DAVE FAURE AND ERIC LOCKRIDGE VIA EMAIL [$26 FILING FEE] |
| SLFO | 04/16/07 | 0.20 | $25.00 | |
| SLFO | 04/19/07 | 0.30 | $37.50 | 0.2 |
| SLFO | 04/23/07 | 0.40 | $50.00 | PREPARE, EFILE AND SERVE NOTICE OF FILING AMENDMENT TO SCHEDULE F - SEND COPY TO DAVE FAURE AND ERIC LOCKRIDGE VIA EMAIL |
| SLFO | 04/23/07 | 0.40 | $50.00 | DRAFT AGENDA FOR APRIL 25TH HEARING |
| SLFO | 04/23/07 | 0.40 | $50.00 | DRAFT CERTIFICATE OF SERVICE/EDIT OBJECTION |
| SLFO | 04/23/07 | 0.40 | $50.00 | PREPARE, EFILE AND SERVE DEBTORS' OBJECTION TO EMERGENCY MOTION OF BEPCO, L.P. F/K/A BASS ENTERPRISES PRODUCTION COMPANY, FOR ENTRY OF AN ORDER (I) DETERMINING THAT ITS PROOF OF CLAIM NEED NOT ATTACH CONFIDENTIAL SETTLEMENT AGREEMENT IN TEBOW LITIGATION OR DISCLOSE CONFIDENTIAL TERMS THEREOF, (II) APPROVING CONFIDENTIALITY PROTECTIONS AND (III) GRANTING RELATED RELIEF - SEND COPY TO DAVE FAURE AND ERIC LOCKRIDGE VIA EMAIL |
| SLFO | 04/24/07 | 0.30 | $37.50 | EDIT AGENDA/PRINT DOCS FOR BINDER |
| SLFO | 04/25/07 | 0.40 | $50.00 | PREPARE, EFILE AND SERVE NOTICE OF AGENDA OF MATTERS SCHEDULED FOR HEARING ON WEDNESDAY, APRIL 25, 2007 AT 11:00 A.M. - SEND BOUND COPY TO JUDGE GROSS - SEND COPY TO DAVE FAURE AND ERIC LOCKRIDGE VIA EMAIL |
| SLFO | | 12.30 | $1,537.50 | |
| | Total: | 22.60 | $5,096.00 | |

## Claims Administration and Objections

| | | | | |
|---|---|---|---|---|
| JDD | 02/08/07 | 0.70 | $280.00 | REVIEW/ANALYZE DRAFT BAR DATE MOTION AND MADE REVISIONS THERETO |
| JDD | 02/09/07 | 0.20 | $80.00 | CONFERENCE WITH M SIMON RE BAR DATE MOTION |
| JDD | 02/12/07 | 0.20 | $80.00 | REVIEW/ANALYZE D FUARE EMAIL RE BAR DATE MOTION AND TELECONFERENCE WITH M SIMON RE BAR DATE ISSUES |
| JDD | 02/12/07 | 0.40 | $160.00 | COMMUNICATIONS WITH M SIMON, R PABST, D FAURE AND E LOCKRIDGE RE BAR DATE ISSUES (PUBLICATION ETC.) |
| JDD | 02/20/07 | 0.20 | $80.00 | SEVERAL EMAILS TO AND FROM D BUCHBINDER RE HIS 2/16 EMAIL RE BAR DATE MOTION AND EXTENSION OF OBJECTION DEADLINE TO WORK OUT ISSUES |
| JDD | 02/21/07 | 0.40 | $160.00 | REVIEW/ANALYZE BASS' LIMITED OBJECTION TO BAR DATE MOTION |

| | | | | |
|---|---|---|---|---|
| JDD | 02/21/07 | 0.20 | $80.00 | COMMUNICATIONS WITH M SIMON RE BASS' OBJECTION AND RELIEF REQUESTED BY BAR DATE MOTION |
| JDD | 02/22/07 | 0.10 | $40.00 | EMAIL FROM SIMON RE BAR DATE ISSUES |
| JDD | 02/27/07 | 0.20 | $80.00 | REVIEW/ANALYZE ENTERED BAR DATE ORDER AND FORWARDED TO M SIMON AND S FOSTER WITH INFORMATION RE CLAIMS AND PUBLICATION NOTICE |
| JDD | 02/28/07 | 0.30 | $120.00 | COMMUNICATIONS WITH M SIMON AND S FOSTER RE BAR DATE NOTICE AND MAKING SURE ALL POSSIBLE CREDITORS ARE NOTICED |
| JDD | 03/14/07 | 0.20 | $80.00 | REVIEW/ANALYZE EMAILS FROM CLIENT AND M SIMON RE PUBLICATION OF BAR DATE ISSUES |
| JDD | 03/15/07 | 0.20 | $80.00 | EMAIL COMMUNICATIONS WITH M SIMON AND S FOSTER RE PUBLICATION AND NORMAL SERVICE OF BAR DATE NOTICE |
| JDD | 03/19/07 | 0.20 | $80.00 | EMAILS FROM AND TO D FAURE RE INCLUSION OF COUNSEL FOR SINZ/TROIA ON BAR DATE SERVICE LIST |
| JDD | 04/13/07 | 0.20 | $80.00 | SEVERAL EMAILS WITH CLIENT REBAR DATE AND PROOF OF CLAIM ISSUES |
| JDD | 04/16/07 | 0.30 | $120.00 | COMMUNICATIONS WITH M SIMON AND STAFF RE PREPARATION AND FILING OF AMENDMENT TO SANTA FE SCHEDULE F |
| JDD | 04/16/07 | 0.20 | $80.00 | TELECONFERENCE WITH E LOCKRIDGE RE PROOF OF CLAIM ISSUES. |
| JDD | 04/19/07 | 1.40 | $560.00 | REVIEW/ANALYZE AND MADE REVISIONS TO DRAFT OBJECTION TO BASS MOTION RE TEBOW SETTLEMENT/CONFIDENTIALITY ISSUES AND PROOFS OF CLAIM |
| JDD | 04/19/07 | 0.30 | $120.00 | EMAILS FROM R PABST AND FAURE AND RESPONSES THERETO RE LETTER TO CARVER DARDEN RE CONFIDENTIALITY OF TEBOW SETTLEMENT AMOUNT |
| JDD | 04/20/07 | 2.60 | $1,040.00 | REVIEW/ANALYZE AND REVISED OBJECTION TO BASS MOTION RE CONFIDENTIALITY OF TEBOW SETTLEMENT AGREEMENT |
| JDD | 04/20/07 | 1.20 | $480.00 | REVIEW/ANALYZE 4/19 LETTER FROM L MOSES RE BASS' MOTION RE CONFIDENTIALITY OF TEBOW SETTLEMENT AGREEMENT AND DRAFTED RESPONSE THERETO.  FORWARDED MOSES LETTER AND DRAFT RESPONSE TO CLIENT FOR REVIEW AND COMMENT. |
| JDD | 04/20/07 | 0.30 | $120.00 | TELECONFERENCE WITH CLIENT RE RESPONSE TO BASS CONFIDENTIALITY MOTION AND RESPONSES TO L MOSES LETTER RE CONFIDENTIALITY/TEBOW SETTLEMENT |
| JDD | 04/23/07 | 0.60 | $240.00 | REVIEW/ANALYZE BASS REPLY TO RESPONSES RE TEBOW SETTLEMENT/CONFIDENTIALITY MOTION |
| JDD | 04/23/07 | 0.10 | $40.00 | REVIEW/ANALYZE 4/20 EMAIL FROM P EISENBERG TO L MOSES IN RESPONSE TO HER 4/19 LETTER |
| JDD | 04/23/07 | 0.20 | $80.00 | FINAL REVIEW AND PREPARATION OF OBJECTION TO BASS MOTION RE CONFIDENTIALTY/TEBOW SETTLEMENT AND PREPARED SAME FOR FILING AND SERVICE |
| JDD | 04/24/07 | 0.30 | $120.00 | TELEPHONE CONFERENCE W/ CLIENT RE 4/25 HEARING AND ISSUES RELATED TO BASS MOTION RE CONFIDENTIALITY/TEBOW SETTLEMENT |
| JDD | 04/24/07 | 0.20 | $80.00 | TELECONFERENCE WITH CO-COUNSEL RE 4/25 HEARING ON BASS MOTION RE TEBOW SETTLEMENT/CONFIDENTIALITY |
| JDD | 04/30/07 | 0.40 | $160.00 | REVIEW/ANALYZE BASS PROOFS OF CLAIM |
| JDD | | 11.80 | $4,720.00 | |
| MES | 02/05/07 | 3.00 | $1,095.00 | PREPARE INITIAL DRAFTS OF MOTION FOR CLAIMS BAR DATE, NOTICES, BAR DATE ORDER, ETC. |
| MES | 02/12/07 | 1.10 | $401.50 | E-MAILS W/ JDD AND COUNSEL RE CLAIM BAR DATE MOTION (.2) - REVIEW LOCAL RULES AND SCHEDULES RE NEED FOR CLAIM AGENT (.3) - REVISE CLAIMS BAR DATE MOTION FOR FILING AND INSTRUCT SF RE FILING OF SAME (.6) |
| MES | 02/16/07 | 0.60 | $219.00 | RECEIPT OF ASSISTANT US TRUSTEE'S COMMENTS TO MOTION FOR CLAIMS BAR DATE PROPOSED ORDER, RESEARCH POINTS AND ANALYSIS OF UST'S PROPOSED REVISIONS ON CASE |
| MES | 02/20/07 | 0.30 | $109.50 | E-MAILS W/ JDD AND ASSISTANT US TRUSTEE RE REVISIONS NEEDED TO PROPOSED CLAIMS BAR DATE ORDER |
| MES | 02/21/07 | 1.10 | $401.50 | ANALYSIS OF CLAIMS BAR DATE ISSUES LISTING IN BASS' OBJECTION TO CLAIMS BAR DATE MOTION AS WELL AS ANALYSIS OF AUST COMMENTS TO PROPOSED ORDER, REVISE PROPOSED ORDER |
| MES | 02/23/07 | 0.20 | $73.00 | CALL W/ JDD RE REVISIONS TO PROPOSED CLAIMS BAR DATE ORDER |
| MES | 02/27/07 | 0.70 | $255.50 | CALL AND E-MAIL TO JDD RE REVISIONS TO PROPOSED CLAIMS BAR DATE ORDER, E-MAIL FROM JDD RE ENTRY OF CLAIMS BAR DATE ORDER |
| MES | 02/28/07 | 4.40 | $1,606.00 | REVIEW NOTICE OF CLAIMS BAR DATE AND CONF W/ S FOSTER RE SERVICE OF SAME, REVIEW LOCAL RULES RE SERVICE AND REVIEW DOCKET RE MATRIX, E-MAILS AND TELEPHONE CALL W/ E LOCKRIDGE RE CLAIMS ISSUES |
| MES | 03/05/07 | 0.50 | $182.50 | E-MAIL TO JDD RE MAILING OF NOTICE OF CLAIMS BAR DATE AND CALL W/ S FOSTER RE SAME, RESEARCH RE PUBLICATION OF CLAIMS BAR DATE NOTICE |
| MES | 03/06/07 | 0.20 | $73.00 | COORDINATE SERVICE OF NOTICE OF CLAIMS BAR DATE WITH S FOSTER |

| MES | 03/12/07 | 1.20 | $438.00 | E-MAIL WITH A LEVIN RE PUBLICATION OF CLAIMS BAR DATE NOTICE IN WALL STREET JOURNAL (.1) - TELEPHONE CALL W/ A LEVIN RE SAME (.3) - REVISE NOTICE OF CLAIMS BAR DATE FOR PUBLICATION TO CONFORM WITH CLAIMS BAR DATE ORDER AND E-MAIL TO A LEVIN FOR QUOTE (.6) - RECEIPT AND REVIEW OF QUOTE TO PUBLISH  NOTICE AND E-MAIL WITH JDD RE SAME (.20 |
| MES | 03/13/07 | 0.90 | $328.50 | E-MAILS W/ CLIENT AND JDD RE REVISIONS TO NOTICE OF CLAIMS BAR DATE FOR PUBLICATION IN WALL STREET JOURNAL (.3) - REVISE NOTICE PER COMMENTS (.3) -  AND SEND REVISED NOTICE TO MILLER LEGAL SERVICES FOR PUBLISHING AND COORDINATE COST AND PAYMENT OF SAME (.3) |
| MES | 03/22/07 | 0.30 | $109.50 | RECEIPT OF PROOF OF PUBLICATION OF BAR DATE NOTICE AND E-MAIL WITH COORDINATOR OF PUBLICATION RE SAME |
| MES | | 14.50 | $5,292.50 | |
| | Total: | 26.30 | $10,012.50 | |
| Grand Total: | | 361.20 | $129,448.00 | |

# EXHIBIT B

SL1 816107v1/000000.00000

| Date | Dollars | BillText |
|------|---------|----------|
| 02/26/07 | $2,938.11 | COMPUTER RESEARCH: WESTLAW |
| 03/21/07 | $4,128.15 | COMPUTER RESEARCH: WESTLAW |
| 04/18/07 | $79.04 | COMPUTER RESEARCH |
| | **$7,145.30** | |
| | | |
| 02/01/07 | $5.00 | DOCUMENT REPRODUCTION |
| 02/01/07 | $0.75 | DOCUMENT REPRODUCTION |
| 02/01/07 | $1.50 | DOCUMENT REPRODUCTION |
| 02/01/07 | $1.75 | DOCUMENT REPRODUCTION |
| 02/01/07 | $1.75 | DOCUMENT REPRODUCTION |
| 02/15/07 | $0.75 | DOCUMENT REPRODUCTION |
| 02/15/07 | $7.75 | DOCUMENT REPRODUCTION |
| 02/15/07 | $2.00 | DOCUMENT REPRODUCTION |
| 02/15/07 | $2.00 | DOCUMENT REPRODUCTION |
| 02/15/07 | $1.50 | DOCUMENT REPRODUCTION |
| 02/15/07 | $1.75 | DOCUMENT REPRODUCTION |
| 02/15/07 | $1.75 | DOCUMENT REPRODUCTION |
| 02/15/07 | $1.75 | DOCUMENT REPRODUCTION |
| 02/15/07 | $7.25 | DOCUMENT REPRODUCTION |
| 02/15/07 | $11.25 | DOCUMENT REPRODUCTION |
| 02/15/07 | $2.50 | DOCUMENT REPRODUCTION |
| 02/15/07 | $2.75 | DOCUMENT REPRODUCTION |
| 02/19/07 | $37.50 | DOCUMENT REPRODUCTION |
| 02/19/07 | $6.00 | DOCUMENT REPRODUCTION |
| 02/26/07 | $4.00 | DOCUMENT REPRODUCTION |
| 02/26/07 | $6.00 | DOCUMENT REPRODUCTION |
| 02/26/07 | $18.50 | DOCUMENT REPRODUCTION |
| 02/26/07 | $6.25 | DOCUMENT REPRODUCTION |
| 02/26/07 | $9.00 | DOCUMENT REPRODUCTION |
| 03/06/07 | $3.50 | DOCUMENT REPRODUCTION |
| 03/20/07 | $36.25 | DOCUMENT REPRODUCTION |
| 03/20/07 | $17.50 | DOCUMENT REPRODUCTION |
| 03/26/07 | $11.00 | DOCUMENT REPRODUCTION |
| 03/26/07 | $3.50 | DOCUMENT REPRODUCTION |
| 04/04/07 | $11.00 | DOCUMENT REPRODUCTION |
| 04/04/07 | $2.75 | DOCUMENT REPRODUCTION |
| 04/04/07 | $2.25 | DOCUMENT REPRODUCTION |
| 04/04/07 | $2.00 | DOCUMENT REPRODUCTION |
| 04/04/07 | $2.00 | DOCUMENT REPRODUCTION |
| 04/04/07 | $1.75 | DOCUMENT REPRODUCTION |
| 04/04/07 | $2.00 | DOCUMENT REPRODUCTION |
| 04/04/07 | $4.50 | DOCUMENT REPRODUCTION |
| 04/04/07 | $3.00 | DOCUMENT REPRODUCTION |
| 04/04/07 | $4.25 | DOCUMENT REPRODUCTION |
| 04/04/07 | $4.25 | DOCUMENT REPRODUCTION |
| 04/04/07 | $1.25 | DOCUMENT REPRODUCTION |
| 04/04/07 | $1.25 | DOCUMENT REPRODUCTION |
| 04/04/07 | $4.25 | DOCUMENT REPRODUCTION |
| 04/04/07 | $4.50 | DOCUMENT REPRODUCTION |
| 04/04/07 | $4.50 | DOCUMENT REPRODUCTION |
| 04/04/07 | $1.25 | DOCUMENT REPRODUCTION |
| 04/04/07 | $4.50 | DOCUMENT REPRODUCTION |
| 04/04/07 | $3.25 | DOCUMENT REPRODUCTION |
| 04/04/07 | $4.25 | DOCUMENT REPRODUCTION |
| 04/04/07 | $2.75 | DOCUMENT REPRODUCTION |
| 04/04/07 | $2.75 | DOCUMENT REPRODUCTION |
| 04/04/07 | $3.75 | DOCUMENT REPRODUCTION |
| 04/09/07 | $5.00 | DOCUMENT REPRODUCTION |

| | | |
|---|---|---|
| 04/09/07 | $3.25 | DOCUMENT REPRODUCTION |
| 04/09/07 | $3.25 | DOCUMENT REPRODUCTION |
| 04/09/07 | $3.25 | DOCUMENT REPRODUCTION |
| 04/09/07 | $2.25 | DOCUMENT REPRODUCTION |
| 04/09/07 | $2.00 | DOCUMENT REPRODUCTION |
| 04/09/07 | $1.50 | DOCUMENT REPRODUCTION |
| 04/09/07 | $1.50 | DOCUMENT REPRODUCTION |
| 04/09/07 | $1.50 | DOCUMENT REPRODUCTION |
| 04/09/07 | $1.50 | DOCUMENT REPRODUCTION |
| 04/09/07 | $1.25 | DOCUMENT REPRODUCTION |
| 04/09/07 | $2.00 | DOCUMENT REPRODUCTION |
| 04/09/07 | $1.50 | DOCUMENT REPRODUCTION |
| 04/09/07 | $1.25 | DOCUMENT REPRODUCTION |
| 04/09/07 | $1.25 | DOCUMENT REPRODUCTION |
| 04/09/07 | $3.00 | DOCUMENT REPRODUCTION |
| 04/09/07 | $1.50 | DOCUMENT REPRODUCTION |
| 04/09/07 | $11.00 | DOCUMENT REPRODUCTION |
| 04/09/07 | $1.50 | DOCUMENT REPRODUCTION |
| 04/09/07 | $11.00 | DOCUMENT REPRODUCTION |
| 04/09/07 | $8.00 | DOCUMENT REPRODUCTION |
| 04/09/07 | $3.00 | DOCUMENT REPRODUCTION |
| 04/10/07 | $28.50 | DOCUMENT REPRODUCTION |
| 04/10/07 | $6.25 | DOCUMENT REPRODUCTION |
| 04/23/07 | $7.50 | DOCUMENT REPRODUCTION |
| 04/26/07 | $5.00 | DOCUMENT REPRODUCTION |
| 04/26/07 | $2.00 | DOCUMENT REPRODUCTION |
| 04/26/07 | $2.25 | DOCUMENT REPRODUCTION |
| 04/26/07 | $2.25 | DOCUMENT REPRODUCTION |
| 04/26/07 | $2.50 | DOCUMENT REPRODUCTION |
| 04/26/07 | $2.50 | DOCUMENT REPRODUCTION |
| 04/26/07 | $2.50 | DOCUMENT REPRODUCTION |
| 04/26/07 | $2.50 | DOCUMENT REPRODUCTION |
| 04/26/07 | $3.25 | DOCUMENT REPRODUCTION |
| 04/26/07 | $3.25 | DOCUMENT REPRODUCTION |
| 04/26/07 | $2.75 | DOCUMENT REPRODUCTION |
| 04/26/07 | $2.75 | DOCUMENT REPRODUCTION |
| 04/26/07 | $3.00 | DOCUMENT REPRODUCTION |
| 04/26/07 | $3.00 | DOCUMENT REPRODUCTION |
| 04/26/07 | $3.25 | DOCUMENT REPRODUCTION |
| 04/26/07 | $2.75 | DOCUMENT REPRODUCTION |
| 04/26/07 | $3.00 | DOCUMENT REPRODUCTION |
| 04/26/07 | $3.00 | DOCUMENT REPRODUCTION |
| | **$455.75** | |
| | | |
| 02/26/07 | $20.00 | FACSIMILE |
| 02/26/07 | $36.00 | FACSIMILE |
| 03/20/07 | $30.00 | FACSIMILE |
| 03/20/07 | $30.00 | FACSIMILE |
| 04/06/07 | $12.00 | FACSIMILE |
| 04/18/07 | $15.00 | FACSIMILE |
| | **$143.00** | |
| | | |
| 02/06/07 | $10.63 | FEDERAL EXPRESS |
| 02/16/07 | $9.65 | FEDERAL EXPRESS |
| 02/16/07 | $6.67 | FEDERAL EXPRESS |
| 03/13/07 | $23.28 | FEDERAL EXPRESS |
| 04/20/07 | $29.65 | FEDERAL EXPRESS |
| | **$79.88** | |

| | | |
|---|---|---|
| 03/27/07 | $344.87 | PARCELS INC: COPIES |
| 03/16/07 | $321.12 | PARCELS INC: COPIES AND BATES LABEL |
| 04/20/07 | $623.70 | PARCELS INC: COPIES AND BATES LABEL |
| | **$1,289.69** | |
| | | |
| 02/09/07 | $12.00 | PARCELS INC: HAND DELIVERY |
| 02/09/07 | $12.00 | PARCELS INC: HAND DELIVERY |
| 02/09/07 | $12.00 | PARCELS INC: HAND DELIVERY |
| 02/09/07 | $15.00 | PARCELS INC: HAND DELIVERY |
| 02/09/07 | $7.50 | PARCELS INC: HAND DELIVERY |
| 02/13/07 | $5.00 | PARCELS INC: HAND DELIVERY |
| 02/13/07 | $7.50 | PARCELS INC: HAND DELIVERY |
| 02/13/07 | $7.50 | PARCELS INC: HAND DELIVERY |
| 02/13/07 | $15.00 | PARCELS INC: HAND DELIVERY |
| 02/13/07 | $5.00 | PARCELS INC: HAND DELIVERY |
| 02/28/07 | $15.00 | PARCELS INC: HAND DELIVERY |
| 02/28/07 | $7.50 | PARCELS INC: HAND DELIVERY |
| 02/28/07 | $12.00 | PARCELS INC: HAND DELIVERY |
| 03/08/07 | $7.50 | PARCELS INC: HAND DELIVERY |
| 03/08/07 | $7.50 | PARCELS INC: HAND DELIVERY |
| 03/08/07 | $7.50 | PARCELS INC: HAND DELIVERY |
| 03/08/07 | $7.50 | PARCELS INC: HAND DELIVERY |
| 03/08/07 | $7.50 | PARCELS INC: HAND DELIVERY |
| 03/08/07 | $12.00 | PARCELS INC: HAND DELIVERY |
| 03/08/07 | $12.00 | PARCELS INC: HAND DELIVERY |
| 03/08/07 | $12.00 | PARCELS INC: HAND DELIVERY |
| 03/08/07 | $12.00 | PARCELS INC: HAND DELIVERY |
| 03/08/07 | $7.50 | PARCELS INC: HAND DELIVERY |
| 03/08/07 | $12.00 | PARCELS INC: HAND DELIVERY |
| 03/27/07 | $7.50 | PARCELS INC: HAND DELIVERY |
| 03/27/07 | $7.50 | PARCELS INC: HAND DELIVERY |
| 03/27/07 | $7.50 | PARCELS INC: HAND DELIVERY |
| 04/03/07 | $7.50 | PARCELS INC: HAND DELIVERY |
| 04/03/07 | $5.00 | PARCELS INC: HAND DELIVERY |
| 04/17/07 | $7.50 | PARCELS INC: HAND DELIVERY |
| | **$280.50** | |
| | | |
| 02/14/07 | $89.00 | PARCELS INC: MULTI FAX |
| | **$89.00** | |
| | | |
| 02/19/07 | $7.95 | POSTAGE |
| 02/19/07 | $3.15 | POSTAGE |
| 02/27/07 | $0.00 | POSTAGE |
| 02/28/07 | $1.35 | POSTAGE |
| 03/20/07 | $2.70 | POSTAGE |
| 03/20/07 | $1.74 | POSTAGE |
| 04/11/07 | $3.15 | POSTAGE |
| 04/23/07 | $3.15 | POSTAGE |
| | **$23.19** | |
| | | |
| 03/06/07 | $425.91 | RELIABLE COPY SERVICE INC: DIGITAL PRINTS |
| | **$425.91** | |
| | | |
| 02/01/07 | $3.69 | TELEPHONE CHARGES - CONFERENCE CALLS |
| 04/23/07 | $140.00 | TELEPHONE CHARGES - CONFERENCE CALLS |
| 04/23/07 | $26.00 | TELEPHONE CHARGES - CONFERENCE CALLS |
| 04/23/07 | $28.50 | TELEPHONE CHARGES - CONFERENCE CALLS |
| | **$198.19** | |

| 03/07/07 | $25.00 | TRAVEL EXPENSES: JOHN D DEMMY |
|----------|--------|-------------------------------|
|          |        | **$25.00** |

| 02/02/07 | $9.50 | U.S. BANKRUPTCY COURT: FILING FEE |
|----------|-------|-----------------------------------|
| 02/02/07 | $25.00 | U.S. BANKRUPTCY COURT: FILING FEE |
|          |        | **$34.50** |

**Grand Total:**                    **$10,189.91**

# EXHIBIT C

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| 15375 MEMORIAL CORPORATION, *et al.*, | : | Case No. 06-10859 (KG) |
| Debtors. | : | Jointly Administered |

Hearing Date: June 27, 2008 @ 11:00 a.m.
Objection Deadline: June 20, 2008

**CERTIFICATION OF JOHN D. DEMMY IN CONNECTION WITH
THIRD INTERIM APPLICATION OF STEVENS & LEE, P.C. FOR
ALLOWANCE AND PAYMENT OF COMPENSATION AND
REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE DEBTORS
FOR THE PERIOD FEBRUARY 1, 2007 THROUGH APRIL 30, 2007**

John D. Demmy, Esquire, hereby certifies:

1.      I am a shareholder of the law firm of Stevens & Lee, P.C., (the "Firm") attorneys for

the above-captioned debtors (collectively, "Debtors"), and submit this Certification in connection

with the *Third Interim Application Of Stevens & Lee, P.C. For Allowance And Payment Of*

*Compensation And Reimbursement Of Expenses As Counsel To The Debtors For The Period*

*February 1, 2007 Through April 30, 2007* (the "**Application**").

2.      In compliance with 18 U.S.C. § 155 and the Local Rules of this Court, neither I nor

any attorney of the Firm has entered into any agreement, written or oral, express or implied, with

Debtors, any creditor of the Debtors, or any other party in interest, or any attorney of such person,

for the purpose of fixing the amount of any of the fees or other compensation to be allowed out of or

paid from the assets of the Debtors other than in accordance with the compensation provisions of

the Bankruptcy Code and Rules.

3.      In accordance with Section 504 of the Bankruptcy Code, no agreement or

understanding exists between me, the Firm or any attorney thereof, on the one hand, and any other

person, on the other hand, for the division of such compensation as the Firm may receive as allowed by the Court, nor will any division of fees prohibited by Section 504 of the Bankruptcy Code be made by me, or any shareholder or associate of the Firm.

4.    I am familiar with the work performed on behalf of Debtors by the lawyers and paraprofessionals of the Firm and believe that this Application and the Exhibits and attachments thereto are in compliance with the requirements of Del. Bank. LR 2016-2.

5.    The facts set forth in the foregoing Application are true and correct to the best of my knowledge, information and belief.

/s/ John D. Demmy
John D. Demmy

Dated:  June 6, 2008

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| 15375 MEMORIAL CORPORATION, *et al.*, | : | Case No. 06-10859 (KG) |
| Debtors. | : | Jointly Administered |

**Hearing Date: June 27, 2008 @ 11:00 a.m.**
**Objection Deadline: June 20, 2008**

**NOTICE OF THIRD INTERIM APPLICATION OF STEVENS & LEE,**
**P.C. FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND**
**REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE DEBTORS**
**FOR THE PERIOD FEBRUARY 1, 2007 THROUGH APRIL 30, 2007**

PLEASE TAKE NOTICE that on this date the attached *Third Interim Application of Stevens & Lee, P.C. For Compensation And Reimbursement Of Expenses As Counsel To The Debtors For The Period February 1, 2007 Through April 30, 2007* (the "**Application**") has been filed with the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801 (the "**Bankruptcy Court**").    Stevens & Lee seeks allowance of compensation in the amount of $129,448.00 for professional services rendered on behalf of the Debtors and reimbursement of $10,189.91 in expenses actually and necessarily incurred, during the period from February 1, 2007 Through April 30, 2007.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Application must be made in writing, filed with the Clerk of the Bankruptcy Court, and served upon undersigned counsel on or before **June 20, 2008 at 4:00 p.m.** (the "**Objection Deadline**").  Only those objections that are timely filed by the Objection Deadline, and are timely served and received will be considered by the Bankruptcy Court.

PLEASE TAKE FURTHER NOTICE that a hearing on the application will be held on

**June 27, 2008, at 11:00 a.m.,** before the Honorable Kevin Gross, United States Bankruptcy

Judge for the District of Delaware.

Dated:  June 6, 2008

STEVENS & LEE, P.C.

/s/ John D. Demmy

John D. Demmy (Bar No. 2802)
1105 North Market Street, 7th Floor
Wilmington, DE  19801
Telephone: (302) 425-3308
Telecopier: (610) 371-8515
Emails: jdd@stevenslee.com

- 2 -

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| 15375 MEMORIAL CORPORATION, *et al.*, | : | Case No. 06-10859 (KG) |
| Debtors. | : | Jointly Administered |

**ORDER APPROVING THIRD INTERIM APPLICATION**
**OF STEVENS & LEE, P.C. FOR ALLOWANCE AND**
**PAYMENT OF COMPENSATION AND REIMBURSEMENT**
**OF EXPENSES AS COUNSEL TO THE DEBTORS FOR**
**THE PERIOD FEBRUARY 1, 2007 THROUGH APRIL 30, 2007**

Upon consideration of the *Third Interim Application Of Stevens & Lee, P.C. For Compensation And Reimbursement Of Expenses As Counsel To The Debtors For The Period February 1, 2007 Through April 30, 2007* (the "**Application**"); and it appearing to the Court that adequate and proper notice of the Application having been given and it appearing that no other notice need be given; and with this Court having jurisdiction over the Application; and after any proceedings in respect of this matter; and sufficient cause appearing therefor, it is ORDERED that:

1.    The Application is hereby approved and GRANTED.

2.    Stevens & Lee, P.C. is hereby awarded, on an interim basis subject to the submission and approval of a final fee application, interim compensation in the amount of $129,448.00, and $10,189.91 for reimbursement of expenses.

3.    Debtors are authorized to pay the compensation and reimburse the expenses awarded hereunder.

Dated: June ___, 2008

                                            _____
                                            Hon. Kevin Gross
                                            UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT H

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| 15375 MEMORIAL CORPORATION, | ) | Case No. 06-10859 (KG) |
| *et al.* | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

Hearing Date: June 27, 2008, at 11:00 a.m.
Objection Deadline: June 20, 2007, by 4:00 p.m.

## DEBTORS' MOTION UNDER AND PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 FOR APPROVAL OF SETTLEMENT

Debtors 15375 Memorial Corporation ("Memorial") and Santa Fe Minerals, Inc. ("Santa Fe," and, together with Memorial, "Debtors"), by and through their undersigned counsel, request that the Court enter an order, under and pursuant to Federal Rule of Bankruptcy Procedure 9019, approving the settlement between Debtors and GlobalSantaFe Corporation ("GSF"), GlobalSantaFe Corporate Services Inc. ("GSF Services") and Entities Holdings, Inc. ("EHI") (collectively, the "GlobalSantaFe Entities"), as described below. In support of this motion, Debtors respectfully represent as follows:

### SUMMARY OF RELIEF REQUESTED

1.     Debtors seek approval of their settlement with the GlobalSantaFe Entities, which resolves all issues between them, including Debtors' potential alter-ego claims, as well as the various claims – some administrative in nature – that the GlobalSantaFe Entities hold against Debtors' estates.

2.     Generally, the proposed compromise and settlement provides for: (i) payment of $972,000.00 in cash to Debtors' estates; (ii) settlement, release and waiver of all intercompany claims as between Debtors and the GlobalSantaFe Entities; (iii) settlement, release and waiver of

SL1 823182v1/101674.00002

DATE FILED 6-6-08
DOCKET NO. 360

any and all claims of Debtors against the GlobalSantaFe Entities based upon Santa Fe's dissolution; (iv) settlement, release and waiver of any and all alleged alter ego claims by Debtors against the GlobalSantaFe Entities; and (v) the GlobalSantaFe Entities' continued cooperation in pursuit of the Debtors' insurance rights (the "GSF Settlement").  A copy of a draft Mutual Release and Settlement Agreement is attached hereto as Exhibit A.

3.     As set forth more fully below, Debtors submit that the proposed compromise is fair and equitable and in the best interests of Debtors' estates in that it provides Debtors with the means to implement their proposed First Amended Joint Plan of Liquidation (the "Plan"), while at the same time eliminating the need for costly litigation.  Based thereon, Debtors respectfully request that the Court grant this motion and approve the settlement described herein.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(A) and (O).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTUAL BACKGROUND[1]

5.     On August 16, 2006 (the "Petition Date"), Debtors commenced the captioned cases by filing voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in this Court.  The cases were filed, in part, to address several unliquidated, contingent liabilities of the Debtors in one central forum, rather than in piecemeal litigation throughout the country.

6.     On September 8, 2006, Santa Fe commenced an adversary proceeding against BEPCO, L. P. f/k/a Bass Enterprises Production Company ("Bass"), Adversary No. 06-50822

---

[1]     Given that the Court is intimately familiar with this matter, only a limited and basic factual background is recited herein, subject to Debtors' right to present a more fulsome factual presentation if necessary in connection with this motion.

2

(the "Adversary Proceeding"), seeking a declaratory judgment that alter ego claims, single business enterprise and similar claims or theories in which relief is sought against Santa Fe's parent and affiliates, including the GlobalSantaFe Entities (collectively, "Alter Ego Claims") are property of Debtors' estates under Section 541 of the Bankruptcy Code and an injunction enjoining Bass from seeking to pursue Alter Ego Claims against the GlobalSantaFe Entities. In addition, Santa Fe filed a motion seeking a preliminary injunction against Bass (the "PI Motion") in connection with the Adversary Proceeding.

7.    By order dated October 24, 2006 (Adv. Docket No. 27), the GlobalSantaFe Entities were allowed to intervene in the Adversary Proceeding, to the extent they requested relief consistent with that requested by Debtors.

8.    On April 16, 2007, the GlobalSantaFe Entities filed six proofs of claim in these cases, which can be summarized as follows:[2]

- **EHI:**  Pre-petition, EHI advanced funds in the amount of $100,000.00 to Memorial pursuant to that Subordinated Revolving Demand Note ("Demand Note") dated August 8, 2006, which gave rise to an undisputed, non-contingent, liquidated, pre-petition claim in the amount of $100,000.00 in favor of EHI against the Memorial estate.

- **GSF Services:**  Pre-petition, GSF Services rendered services to Memorial pursuant to that certain Master Intercompany Labor and Services Agreement ("Agreement), made effective as of January 1, 2002, which has subsequently been approved by this Court, giving rise to an undisputed, non-contingent, liquidated, pre-petition claim in the amount of $355,573.80 in favor of GSF Services against Memorial and giving rise, post-petition, to an administrative claim in favor of GSF in an amount that has yet to be determined.

- **GlobalSantaFe Entities:**  In addition to the foregoing, each of GlobalSantaFe Entities may have claims against one or both of the Debtors, including, but not limited to, claims for indemnity and/or contribution arising from claims alleging alter-ego, single-business-enterprise or similar remedies/causes of action in connection with oil and gas or other activities conducted by Debtors.

---

[2]    *See* Claims Register, claims numbered 10-15.

3

9.    On June 2, 2008, Debtors filed the Plan and a related Disclosure Statement (Bankr. Docket Nos. 351 and 352).

10.    Debtors' Plan is based, part, on implementation of the GSF Settlement, which resolves the various claims asserted as between Debtors and the GlobalSantaFe Entities, while, at the same time, providing significant monetary and non-monetary value to Debtors' estates for the benefit of creditors.  Indeed:

> (a)    without approval of the proposed settlement, there likely will be insufficient funds in the estates to pay Allowed Administrative Expense Claims;[3]
>
> (b)    Debtors' estates would be burdened with substantial Administrative Expense Claims held by the GlobalSantaFe Entities;
>
> (c)    Debtors would be left pursuing Alter Ego Claims that, not only might be cost prohibitive, but would be difficult to prove, given that Santa Fe operated as a separate stand-alone company with its own management until commencement of its dissolution process; and
>
> (d)    assistance by the GlobalSantaFe Entities with pursuit of Insurance Rights is valuable consideration to the estates and the creditors of the estates, which assistance is not available to creditors of the estates absent the parties' proposed settlement.

11.    Moreover, the GSF Settlement avoids the uncertainty associated with pursuing and prosecuting the various claims between Debtors and the GlobalSantaFe Entities.

## ARGUMENTS AND AUTHORITIES

12.    Settlement of contested matters is governed by Fed. R. Bankr. P. 9019(a), which provides:

> **Compromise.**  On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the Untied States trustee, the

---

[3]    Capitalized terms not defined herein have the meanings given to them in the Plan.

4

debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

13.    In deciding whether to approve the GSF Settlement the Court must determine whether it is in the best interest of Debtors and their creditors.  The Court's decision in this regard should be guided by the following factors: (i) the relative strengths and weaknesses of the opposing claims; (ii) the potential for success should the claims be litigated; (iii) the complexity, expense and likely duration of such litigation; (iv) the potential harm to the debtor and/or its creditors caused by the delay of litigation; (v) the possible difficulties of collecting any judgment which might be obtained; and (vi) the terms of the compromise as compared to the likely rewards of litigation. *Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424 (1968); *see also In re Martin,* 91 F.3d 389 (3d Cir. 1996).

14.    Applying the above-cited factors to the claims at hand, it is quite evident that the settlement proposed by Debtors is in the best interests of Debtors' estates and their creditors.

I.    **RELATIVE STRENGHS OF THE PARTIES' POSITIONS AND THE DEBTORS' PROBABILITY OF SUCCESS IN PURSUIT OF ITS CLAIMS**

15.    With regard to Debtors' Alter Ego claims, it is well-established that "alter-ego" type causes of action are the sole property of a debtor's estate and that a creditor lacks standing to pursue such causes of action on its own behalf.  **"Unless a creditor is able to show particularized harm different from that suffered by the other creditors . . . the creditor lacks standing to bring a claim to pierce the Debtors' corporate veil."** *In re Enron Corp.,* 2004 WL 2149100 at *1 (S.D.N.Y.); *see also Kalb, Voorhis & Co. v. American Financial Corp.,* 8 F.3d 130 (2d Cir. 1993) (recognizing that "alter-ego claim constitute[d] property of the debtor corporation, and the debtor-in-possession or bankruptcy trustee, rather than individual creditors, ha[d] exclusive standing to assert the claims."); *In re S.I. Acquisition, Inc.,* 817 F.2d 1142, 1152-

5

53 (5th Cir. 1987) (concluding that the alter-ego claims at issue were "property of the bankruptcy estate and [were] not assertable by individual creditors."); *Cedarbrook Plaza, Inc. v. Gottfried,* 1997 WL 330390 (E.D. Pa.) (similarly holding).

16.     Here, Debtors propose to compromise any and all Alter Ego Claims they may hold against the GlobalSantaFe Entities, as well as claims stemming from the dissolution distribution made by Santa Fe to Memorial, which is believed to have been in an amount not greater than approximately $772,000.

17.     As part of the evaluation of the GSF Settlement, Debtors, through counsel, have examined the nature of their claims against the GlobalSantaFe Entities, including an analysis of applicable law.

18.     In particular, Debtors have considered the burdens of proof required in order to establish liability on the part of the GlobalSantaFe Entities, on any alter-ego or similar theory, as well as liability for the distribution payment made upon completion of Santa Fe's dissolution.

A.     **Alter-Ego Analysis**[4]

19.     "Courts in Delaware will ignore the separate corporation existence of a subsidiary . . . only if the subsidiary is the alter ego or a mere instrumentality of the parent. Generally, a corporate parent will only be held liable for the obligations of its subsidiaries upon a showing of fraud or some inequity. The underlying cause of action is not sufficient to supply the necessary *fraud* or injustice." *Grasty v. Michail,* 2004 WL 396388 at *1 (Del.Super.) (internal quotations omitted; emphasis added).

20.     Under Delaware law, a close connection alone is not sufficient, there must be a showing that the parent/subsidiary relationship would work a fraud, or that the subsidiary is merely operating as an instrumentality of the parent. *Id.* "Of course, common management of

---

[4]     Both Memorial and EHI are Delaware corporations.

two entities does not, by itself, justify piercing the corporate veil." *Trustees of the Village of Arden v. Unity Constr. Co.*, Del.Ch., 2000 WL 130627 at * 3. "Neither total stock ownership nor the existence of common management, without more, is sufficient to pierce the corporate veil." *Landgarten v. York Research Corp.* Del.Ch., 1988 WL 7392 at *4.

21.     Indeed, courts have commented that "[p]ersuading a Delaware Court to disregard the corporate entity is a difficult task. The legal entity of a corporation will not be disturbed until sufficient reason appears." *Albert v. Alex. Brown Management Services*, Del.Ch., 2005 WL 2130607; *see also La Chemise Lacoste v. General Mills, Inc.*, 53 F.R.D. 596, 603 (D. Del. 1971) (stating: "Corporate entities must be respected in the absence of <u>clear proof</u> that one corporation is the mere agency or department of the other and is used as an instrumentality to perpetuate fraud, justify wrong, avoid litigation or render it more difficult, or generally to escape liability for what are in substance its own acts." (emphasis added)).

22.     Here, Debtors have been unable to amass proof of any more than a typical parent/subsidiary relationship between the entities at issue. Moreover, there does not appear to be even an allegation, much less evidence of, any fraud perpetrated by the GlobalSantaFe Entities through the use of Debtors' corporate forms. Therefore, given the absence of "clear proof" sufficient to show that Debtors and the GlobalSantaFe Entities are the alter-egos of each other, Debtors have concluded that there is little likelihood of prevailing on the merits of any Alter Ego Claims. Indeed, Delaware courts have refused to find an alter-ego relationship between entities in cases where the relationship was far closer than that presented in the instant case.

23.     For example, in *Akzona Inc. v. E.I. Du Pont de Nemours & Co.*, 607 F. Supp. 227 (D. Del. 1984), "the relationship between the parent and subsidiary was that the parent had 100%

7

ownership of the subsidiary, the parent referred to the subsidiary as a division of the parent, the subsidiary's board reported to the parent, the parent approved substantial capital expenditures, the parent referred to the subsidiary's business as its project and took credit for the project in its annual report, and the parent guaranteed loans for the subsidiary. Based on these facts, the court [there] concluded that the record was *insufficient* to support a finding that the subsidiary was the alter ego of the parent." *Upjohn Co.*, 1990 WL 79232 at *4 (*citing Akzona Inc.*, 607 F. Supp. at 240 (emphasis added).

24.    Similarly, in *Upjohn*, the parent: (1) own[ed] the capital stock of the subsidiary and caused its incorporation; (2) directors [were] shared between the two corporations; (3) [the sub] was capitalized with 1000 shares of $1.00 par stock; (4) [the parent] guarantee[d] the lease of [the sub.'s] headquarters; (5) consolidated financial statements [were] filed; (6)[the parent] refer[red] to the product [of its sub.] as its own in various public filings." *Id.* at *5. Even under these circumstances, however, the court determined that the subsidiary and parent corporation in question were not alter egos of each other.

25.    As Delaware courts have recognized, "[f]or the purposes of the corporation law, the act of one corporation is not regarded as the act of another merely because the first corporation is a subsidiary of the other, or because the two may be treated as part of a single economic enterprise for some other purpose. Rather, *to pierce the corporate veil based on an agency or alter ego theory, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud.*" *In re Sunstates Corp. Shareholder Litigation,* Del.Ch., 788 A.2d 530, 534 (2001) (emphasis added).

26.    Thus, under Delaware law, absent proof of a fraud, Debtors' Alter Ego Claims have little value to their estates.

### B.    Distribution Claim

27.    Under Wyoming law, creditors – but in this case, Debtors on behalf of their creditors – of a dissolved corporation can recover their debts from the dissolved corporation's shareholders, up to the value of the assets that each shareholder received at the dissolution.

28.    The Wyoming statute that provides for the assertion of claims against an entity for liability of a dissolved corporation, Section 17-16-1407 (d), provides in relevant part:

> (d)  A claim may be enforced under this section:
>
>> (1)  Against the dissolved corporation, to the extent of its undistributed assets; or
>>
>> (2)  if the assets have been distributed in liquidation, against a shareholder of the dissolved corporation to the extent of his pro rata share of the claim or the corporate assets distributed to him in liquidation, whichever is less, but a shareholder's total liability for all claims, under this section may not exceed the total amount of assets distributed to him.

WYO. STAT. § 17-16-1407(d)

29.    Based upon Debtors' investigation, the best evidence of the amount distributed to Memorial (its sole shareholder) upon Santa Fe's dissolution is its year 2000 tax return, which reflects a dissolution distribution in the amount of $772,000. Based upon this evidence, the Santa Fe estate might be able to recover this amount from Memorial, pursuant to Wyoming law. Recovery of this amount, however, would be impeded by the fact that Memorial is insolvent and incapable of meeting this obligation and the fact that any claim by Santa Fe for return of any distribution may be prescribed by applicable law. The same would hold for any assertion of wrongful transfer or distribution by Memorial, a Delaware corporation.

30.    Particularly, under both Wyoming and Delaware law, claims based upon fraudulent transfers are prescribed four years after the transfers in question are made. Wyo. Stat.

9

Ann. § 34-14-210 (Michie 2005); Del. Code Ann. Title 6, 1209 (2006). In addition, any claim based upon improper dividends would be prescribed in Delaware after six years of the dividend being paid and in Wyoming after two years of the dividend being paid. Del. Code Ann. Title 8, 174 (2006); Wyo. Stat. Ann. 17-16-833(c) (Michie 2005). Therefore, even if Santa Fe were to pursue claims beyond the year 2000 distribution payment, such claims are likely prescribed by applicable law and the same would be true with regard to claims by Memorial, if any ever existed.

31.    Pursuant to the GSF Settlement, however, Debtors' estates would recover cash and other value well in excess of the $772,000, while limiting their risk of liability on claims held by the GlobalSantaFe Entities against the estates and the risk of incurring any additional administrative costs associated with litigating either Debtors' claims against the GlobalSantaFe Entities or the GlobalSantaFe Entities' claims against Debtors' estates. Indeed, when the merits of the GlobalSantaFe Entities' claims against Debtors' estates are considered, it is quite evident that the GSF Settlement is in the best interests of all concerned. Not only do the estates receive an influx of cash they would not otherwise have, any Memorial obligation to the Santa Fe estate, pursuant to Wyoming or Delaware law, is being satisfied.

C.    **GlobalSantaFe Entities Claims Against the Estates**

32.    In any analysis of the probabilities of Debtors' success in prosecution of its claims against the GlobalSantaFe Entities, due consideration must be given to the claims of the GlobalSantaFe Entities against Debtors' estates.

33.    As set forth above, the GlobalSantaFe Entities, collectively, have undisputed, non-contingent, liquidated, pre-petition claims in the amount $455,573.80 against the Debtors' estates. In addition, they hold administrative claims in an amount that has yet to be determined,

10

arising from services performed pursuant to a Master Intercompany Labor and Services Agreement made effective as of January 1, 2002, which has been approved by this Court. *See* Bankr. Docket No. 69. Further still, the GlobalSantaFe Entities hold claims for indemnity and/or contribution arising from claims alleging alter-ego, single-business-enterprise or similar remedies/causes of action in connection with oil and gas or other activities conducted by Debtors.

34.    If Debtors' claims and the GlobalSantaFe Entities' unliquidated claims are set-off against each other, the amount due Debtors might be in the neighborhood of $316,000. This amount, however, would remain subject to further reduction once the GlobalSantaFe Entities' administrative claim is liquidated. Therefore, it is clear that the $972,000 payment to be made pursuant to the GSF Settlement far exceeds the maximum amount Debtors could recover in litigating claims against the GlobalSantaFe Entities. This is especially true given the complexity, expense and likely duration of any litigation regarding such claims.

**II.    COMPLEXITY, EXPENSE AND LIKELY DURATION**

35.    The issues associated with Debtors' and the GlobalSantaFe Entities' claims are complicated and would require the expenditure of significant time and resources in order to try them to conclusion.

36.    The Alter Ego Claims alone have been strongly contested by the GlobalSantaFe Entities and expensive and lengthy litigation would ensue if Debtors were to pursue such causes of action. Embarking in such litigation would not only be contrary to the best interests of Debtors' estates, but would be cost prohibitive.

37.    After expending thousands upon thousands of dollars in legal fees litigating with Bass, Debtors' estates are not in a financial position to begin another phase of drawn out

11

litigation with the GlobalSantaFe Entities; litigation that would, when all costs are considered, only yield a fraction of the cash and consideration that stands to be gained through the GSF Settlement.

38.    Thus, in light of the complexity of the issues and the general uncertainty of success in litigation of the type presented by Debtors' and the GlobalSantaFe Entities claims, the "complexity, expense and likely duration" factor weighs in favor of approving the parties proposed settlement.

## III.    POTENTIAL HARM TO THE DEBTOR AND CREDITORS FROM DELAY

39.    The fourth *Anderson* factor, relating to the effect of the potential delay of litigation upon Debtors and their creditors, also weighs in favor of approval of the GSF Settlement.

40.    Approval of the settlement would allow for an early resolution of the disputes between Debtors and the GlobalSantaFe Entities and would further enable to acquire funds for the benefit of Debtors' creditors; funds which are a key component of Debtors' proposed Plan.

41.    Moreover, the Court's approval of the settlement will not only provide funds necessary for payment of its administrative expenses, but also will allow Debtors to focus their attention on pursuit of insurance assets, thus increasing the likelihood of a positive recovery for creditors.  As set forth more fully below, if the GSF Settlement is not approved, Debtors and their creditors are unlikely to recover additional cash assets.  Further, Debtors' attention will be split between pursuing the GlobalSantaFe Entities on questionable causes of action and the more important task of pursuing insurance assets for the benefit of creditors.  Therefore, it would appear that the more prudent course of action is to allow Debtors to compromise their differences with the GlobalSantaFe Entities and move forward with pursuit of insurers.

SL1 823182v1/101674.00002

## IV.     DIFFICULTIES IN COLLECTING ANY JUDGMENT

42.     Aside from the foregoing factors, which Debtors submit all weigh in favor of approving their proposed compromise, even if Debtors were successful in pursuing the GlobalSantaFe Entities, there would be significant delays in collecting any judgment.

43.     The GlobalSantaFe Entities would likely appeal any judgment rendered against them on the Debtors' Alter Ego Claims, resulting in a delay that could last years. All the while, Debtors would continue to incur costs with no influx of cash to offset such expenses.

44.     Based upon their current financial position, Debtors submit that collection of a judgment against the GlobalSantaFe Entities would be time-consuming, expensive and questionable. Accordingly, Debtors submit that this factor strongly supports approving the GSF Settlement.

## V.     THE TERMS OF THE COMPROMISE AS COMPARED TO THE LIKELY REWARDS OF LITIGATION

45.     As set forth above, the maximum amount Debtors' could hope to recover (not taking into consideration the unliquidated administrative claims held by the GlobalSantaFe Entities) is in the neighborhood of $316,000, which is a gross amount, subject to reduction based upon the fees and expenses incurred in pursuit of Debtors' claims.

46.     In contrast, a settlement with the GlobalSantaFe Entities will yield $972,000 in cash, a release of the GlobalSantaFe Entities' various claims (the liquidated portion which totals in excess of $455,000), as well much needed cooperation in pursuit of the Debtors' insurance assets.

47.     In addition, and as noted above:

(a)     without approval of the proposed settlement, there likely would be insufficient funds in the estates to pay Allowed Administrative Expense Claims;

13

(b)    Debtors' estates would be burdened with substantial Administrative Expense Claims held by the GlobalSantaFe Entities;

(c)    Debtors' would be left pursuing Alter Ego Claims that, not only might be cost prohibitive, but would be difficult to prove, given that Santa Fe operated as a separate stand-alone company with its own management until commencement of its dissolution process; and

(d)    assistance by the GlobalSantaFe Entities with pursuit of Insurance Rights is valuable consideration to the estates and the creditors of the estates, which assistance is not available to creditors of the estates absent the parties' proposed settlement.

## CONCLUSION

48.    Based upon the foregoing, Debtors respectfully submit that the GSF Settlement is in the best interests of Debtors, their estates and their creditors.

WHEREFORE, Debtors respectfully request that this motion be granted and further request such other and further relief as the Court deems just and proper.

Dated: June 6, 2008

Respectfully submitted,

STEVENS & LEE, P.C.

/s/ John D. Demmy
John D. Demmy (Bar No. 2802)
1105 North Market Street, 7th Floor
Wilmington, DE 19801
Telephone: (302) 425-3308
Telecopier: (610) 371-8515
Email: jdd@stevenslee.com

-and-

John C. Kilgannon
1818 Market Street, 29th Floor
Philadelphia, PA 19103
Telephone: (215) 751-1943
Telecopier: (610) 371-7954
Email: jck@stevenslee.com
*Attorneys for Debtors*

14

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| 15375 MEMORIAL CORPORATION, | ) | Case No. 06-10859 (KG) |
| *et al.* | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

**Hearing Date: June 27, 2008, at 11:00 a.m.**
**Objection Deadline: June 20, 2007, by 4:00 p.m.**

### NOTICE OF HEARING

PLEASE TAKE NOTICE, that on June 6, 2008, Debtors 15375 Memorial Corporation ("Memorial") and Santa Fe Minerals, Inc. ("Santa Fe") (collectively, "Debtors") filed with the Court *Debtors' Motion Under And Pursuant To Federal Rule Of Bankruptcy Procedure 9019 For Approval Of Settlement* (the "Motion").

**PLEASE TAKE NOTICE** that any responses or objections to the Motion must be in writing, filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), 5th Floor, 824 Market Street, Wilmington, Delaware 19801, and served upon and received by the undersigned counsel on or before **June 20, 2008 by 4:00 p.m. (Eastern Time).**

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion will be held on **June 27, 2008 at 11:00 a.m. (Eastern Time)** before the Honorable Kevin Gross at the United States Bankruptcy Court for the District of Delaware, 6th Floor, 824 Market Street, Wilmington, Delaware 19801. Only parties who have filed a timely objection will be heard at the hearing.

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF DEMANDED BY THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

Dated: June 6, 2008
      Wilmington, Delaware

STEVENS & LEE, P.C.

/s/ John D. Demmy
John D. Demmy (Bar No. 2802)
1105 North Market Street, 7th Floor
Wilmington, DE 19801
Telephone: (302) 425-3308
Telecopier: (610) 371-8515
Email: jdd@stevenslee.com

-and-

John C. Kilgannon
1818 Market Street, 29th Floor
Philadelphia, PA 19103
Telephone: (215) 751-1943
Facsimile: (610) 371-7954
Email: jck@stevenslee.com

*Attorneys for the Debtors*

2

# EXHIBIT A

## MUTUAL RELEASE AND SETTLEMENT AGREEMENT

This Mutual Release and Settlement Agreement is entered into by and among 15375 Memorial Corporation ("Memorial") and Santa Fe Minerals, Inc. ("Santa Fe") (collectively "Debtors"), along with GlobalSantaFe Corporation, GlobalSantaFe Corporate Services Inc. and Entities Holdings, Inc. (collectively "GlobalSantaFe Entities") (the Debtors and GlobalSantaFe Entities collectively "Parties" or individually "Party").

WHEREAS, on August 26, 2006 (the "Petition Date"), Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, Case Numbers 06-10859 and 06-10860 (the "Bankruptcy Cases");

WHEREAS, pre-petition, Entities Holdings, Inc. advanced funds in the amount of $100,000.00 to Memorial pursuant to that Subordinated Revolving Demand Note ("Demand Note") dated August 8, 2006, which gives rise to an undisputed, non-contingent, liquidated, pre-petition claim in the amount of $100,000.00 in favor of Entities Holdings, Inc. against the Memorial estate;

WHEREAS, pre-petition, GlobalSantaFe Corporate Services Inc. rendered services to Memorial pursuant to that certain Master Intercompany Labor and Services Agreement ("Agreement), made effective as of January 1, 2002, which has subsequently been approved by the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court"), giving rise to an undisputed, non-contingent, liquidated, pre-petition claim in the amount of $355,573.80 in favor of GlobalSantaFe Corporate Services Inc against Memorial and gives rise, post-petition, to an administrative claim in favor of GlobalSantaFe Corporate Services Inc. in an amount that has yet to be determined;

WHEREAS, via an order dated October 30, 2006, the Bankruptcy Court authorized GlobalSantaFe Corporate Services Inc. to provide post-petition credit in an amount up to $200,000, in the aggregate, to the Debtors in connection with GlobalSantaFe Corporate Services Inc.'s provision of services to the Debtors under and pursuant to the January 1, 2002 Master Intercompany Labor and Services Agreement referenced above;

WHEREAS, Debtors may have alter ego, single business enterprise or related claims against the GlobalSantaFe Entities and each of the GlobalSantaFe Entities, in turn, may have claims against one or both of the Debtors, including, but not limited to, claims for indemnity and/or contribution arising from such alter-ego, single-business-enterprise or similar remedies/causes of action in connection with oil and gas or other activities conducted by the Debtors;

WHEREAS, Santa Fe may have claims against Memorial deriving from the payment of a distribution in the approximate amount of $772,000 to Memorial as part of Santa Fe's dissolution and claims against the GlobalSantaFe Entities based upon certain alter-ego and other similar theories, as referenced above;

1

WHEREAS, the Parties wish to avoid the uncertainties, annoyance, and expense of litigation in connection with the aforementioned matters, the Parties have agreed to settle the disputes and controversies that have arisen under the terms set forth in this Mutual Release and Settlement Agreement;

NOW, THEREFORE, in consideration of the representations, warranties, acknowledgements, promises, and covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby covenant, represent and agree as follows:

**I.    Payment from the GlobalSantaFe Entities to Debtors' Estates:** The GlobalSantaFe Entities agree to pay $972,000 (nine-hundred and seventy-two thousand dollars) ("Settlement Payment") to the Debtors' estates. Upon receipt of an executed copy of this Mutual Release and Settlement Agreement and the entry of a final, non-appealable order of the Bankruptcy Court approving such Mutual Release and Settlement Agreement, the GlobalSantaFe Entities agree to tender the Settlement Payment to the Debtors' estates within eleven (11) days, in a manner mutually agreeable to the Parties.

**II.    Forgiveness of Post-Petition Credit:** Upon receipt of an executed copy of this Mutual Release and Settlement Agreement and the entry of a final, non-appealable order of the Bankruptcy Court approving such Mutual Release and Settlement Agreement, GlobalSantaFe Corporate Services Inc. agrees to forgive any and all amounts owed to it by the Debtors as a result of post-petition credit advanced pursuant to that certain January 1, 2002 Master Intercompany Labor and Services Agreement, which was approved by the Bankruptcy Court via an order dated October 30, 2006.

**III.    Mutual Full, Final and Complete Releases:**

Upon payment of the Settlement Payment to the Debtors and entry of a final, non-appealable order of the Bankruptcy Court approving this Mutual Release and Settlement Agreement, Memorial, Santa Fe and the GlobalSantaFe Entities, on behalf of themselves and their successors and assigns, do hereby fully, finally, completely, and absolutely RELEASE, ACQUIT, and FOREVER DISCHARGE each and every other Party to this Mutual Release and Settlement Agreement, their affiliates, related entities, current and former officers, employees, agents, attorneys, successors, assigns, and representatives, and all those at interests therewith, of and from any and all claims, demands, actions, remedies, causes of action, debts, liabilities, contracts, damages, liens, both potential and existing, costs (including without limitation, attorneys' fees and all costs of court or other proceedings), expenses, and losses of every kind or nature, whether arising by contract, tort, or other theory, at this time known or unknown, direct or indirect, fixed or contingent, in law, by statute, by regulation, by court order, or in equity, that each Party to this Mutual Release and Settlement Agreement, their assigns, agents and all those at interest therewith, ever had, now has, or hereafter can, shall or may have, against each and every other Party to this Mutual Release and Settlement Agreement including, but not limited to: (i) claims deriving from the payment of a distribution in the approximate amount of $772,000 to Memorial as part of Santa Fe's dissolution and any related claims based upon theories of fraudulent transfer, wrongful payment of dividend, alter ego, single business enterprise and/or

<div align="center">2</div>

any other similar theory or theories; (ii) claims based upon any alleged alter-ego claims the Debtors purportedly hold against the GlobalSantaFe Entities; (iii) Entities Holdings, Inc.'s undisputed, non-contingent, liquidated, pre-petition claim in the amount of $100,000.00 against Memorial; (iv) GlobalSantaFe Corporate Services Inc. undisputed, non-contingent, liquidated, pre-petition claim in the amount of $355,573.80 against Memorial, as well as GlobalSantaFe Corporate Services, Inc.'s claim for an administrative claim in an amount that has yet to be determined; and (v) GlobalSantaFe Entities' claims against one or both of the Debtors, including, but not limited to, claims for indemnity and/or contribution arising from claims alleging alter-ego, single-business-enterprise or similar remedies/causes of action in connection with oil and gas or other activities conducted by the Debtors . It is the express intent of all the Parties hereto that this instrument operate as a full, final and complete release of any and all claims that the each of the Parties to this Mutual Release and Settlement Agreement may have or ever have had against any other Party to this Mutual Release and Settlement Agreement, regardless of whether such claim(s) exist or may ever have existed under any state or federal law ("Released Claims"). However, nothing in this Paragraph shall be construed to limit the rights of the Parties to raise claims concerning the non-implementation or mis-implementation of this Mutual Release and Settlement Agreement.

**IV.    Cooperation of the GlobalSantaFe Entities in Recovery of Insurance Proceeds:** The GlobalSantaFe Entities agree that, in addition to the Settlement Payment, they shall fully cooperate in the Debtors' efforts to pursue those insurance rights, which form the basis for the Debtors' Joint Plan of Liquidation, subject to the Parties entering into a mutually agreeable Insurance Rights Agreement, as defined and contemplated in the Debtor's First Amended Plan of Liquidation.

**V.    Effective Date:** This Mutual Release and Settlement Agreement is expressly conditioned upon entry of a final, non-appealable order of the Bankruptcy Court approving this agreement.

**VI.    Covenant Not to Sue:** Debtors and the GlobalSantaFe Entities covenant and agree not to sue, prosecute, or otherwise seek any relief, monetary or otherwise, from each other in any forum, whether state, federal or foreign, by motion or otherwise on account of any claim or cause of action arising from or relating directly or indirectly to the GlobalSantaFe Entities' Released Claims and/or the Debtors' Released Claims.

**VII.    Authority and Competence:** Each Party represents that the person executing this Mutual Release and Settlement Agreement below has the authority and is legally competent to execute this Agreement on behalf of the Debtors and the GlobalSantaFe Entities.

**VIII. Comprehension of Document: No Reliance:**    EACH PARTY EXPRESSLY ACKNOWLEDGES, WARRANTS, AND REPRESENTS THAT THEY HAVE HAD AN OPPORTUNITY TO CONSULT WITH INDEPENDENT LEGAL COUNSEL AND OTHER ADVISORS REGARDING ALL LEGAL, TAX, AND OTHER EFFECTS OF THIS AGREEMENT. **EACH PARTY REPRESENTS THAT THEY ARE RELYING SOLELY ON THEIR OWN BEST JUDGMENT AND ARE NOT RELYING ON ANY REPRESENTATION OR STATEMENT, EXPRESS OR IMPLIED, BY THE OTHER PARTY OR PARTIES OR ANY AGENT, EMPLOYEE, ATTORNEY, OR OTHER**

**REPRESENTATIVE THEREOF, UNLESS SUCH REPRESENTATION OR STATEMENT IS EXPRESSED IN WRITING IN THIS AGREEMENT.**

**IX.    Not an Admission of Liability:**  All Parties to this Mutual Release and Settlement Agreement mutually agree that the agreements contained herein and the consideration transferred are to compromise and settle disputed claims and avoid litigation and that no payment made nor releases or other consideration given shall constitute an admission of liability, all liability being expressly denied. In addition, the agreements contained herein are in no way an admission of disputed facts.

**X.    No Oral Agreements:**  This Mutual Release and Settlement Agreement represents the complete and final agreement between the Parties hereto with respect to the subject matter contained herein and supersedes completely any prior agreement between them. This Mutual Release and Settlement Agreement may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements between the parties. There are no unwritten oral agreements between the Parties.

**XI.    Successors and Assigns.**  This Mutual Release and Settlement Agreement shall survive any conversion or dismissal of the Bankruptcy Cases and shall be mutually binding upon the Parties hereto and such Parties' respective representatives, trustees, receivers, predecessors, successors and assigns, and shall inure to the benefit of the Parties hereto and their respective heirs, legal representatives, successors and assigns.

**XII.    Construction:**  All Parties hereto mutually agree that this Mutual Release and Settlement Agreement shall be construed without regard to which Party drafted it, and it shall be interpreted as if all Parties hereto participated equally in drafting the Agreement.

**XIII.    Governing Law, Venue and Dispute Resolution:**  This Mutual Release and Settlement Agreement shall be construed and interpreted in accordance with the laws of the State of Delaware without regard to choice of law principles. The Parties acknowledge that this Mutual Release and Settlement Agreement has been negotiated and performance hereunder will occur in New Castle County, Delaware. Any action brought to interpret and/or enforce the terms of this Agreement must be in the Bankruptcy Court. The Parties agree that before filing suit over a dispute involving this Mutual Release and Settlement Agreement, the Parties will attempt to resolve the dispute by phone conference. If litigation nevertheless arises, the Parties agree that the prevailing Party or Parties shall be entitled to recover reasonable attorneys' fees and expenses incurred in resolving any such dispute.

**XIV.    Multiple Copies:**  All Parties agree that this Mutual Release and Settlement Agreement may be executed in multiple counterparts, identically worded, and that each such counterpart shall constitute a single agreement of the Parties.

**XV.    Severability:**  Each part of this Mutual Release and Settlement Agreement is intended to be separate, and if any term, covenant, condition, or provision hereof is illegal, invalid or unenforceable for any reason whatsoever, such illegality, invalidity or unenforceability shall not affect the legality, validity, and enforceability of the remaining parts of the Agreement.

4

**XVI.  Headings:** The heading and titles are inserted only for convenience and shall not be deemed part of this Mutual Release and Settlement Agreement or be taken into consideration in the interpretation or construction of this Agreement.

**XVII.  Notice:** All notices and other communications required by or related to this Mutual Release and Settlement Agreement shall be in writing and shall be delivered personally or shall be sent by registered or certified mail, return receipt requested, or by facsimile transmission, to the receiving Party at the following address and communication numbers:

If to the Debtors:

David E. Faure
GlobalSantaFe Corporate Services Inc.
15375 Memorial Drive
Houston, TX 77079
Tel: (281) 925-6660
Fax: (281) 925-6673

and

John D. Demmy
Stevens & Lee, P. C.
1105 North Market Street
7th Floor
Wilmington, DE 19801
Tel: (302) 425-3308
Fax: (610) 371-8515

If to the GlobalSantaFe Entities:

Eric Brown
Transocean Inc.
4 Greenway Plaza
Houston, TX 77046
Tel: (713) 232-7608
Fax: (713) 232-7511

and

Philip G. Eisenberg
Locke Lord Bissell & Liddell LLP
3400 JPMorgan Chase Tower
600 Travis Street
Houston, TX 77002
Tel: (713) 226-1200
Fax: (713) 223-3717

5

**XVI. Settlement Subject to Court Approval:** This Mutual Release and Settlement Agreement remains subject to the approval of the Bankruptcy Court, pursuant to Federal Rule of Bankruptcy Procedure 9019. The Parties agree to jointly seek such relief as expeditiously as possible.

AGREED THIS _____ DAY OF _____ 2008.

**GLOBALSANTAFE CORPORATION**                    **SANTA FE MINERALS, INC.**

_____                        _____

By:_____                       By:_____

Title:_____                       Title:_____

**ENTITIES HOLDINGS, INC.**                      **15375 MEMORIAL CORPORATION**

_____                        _____

By:_____                       By:_____

Title:_____                       Title:_____

**GLOBALSANTAFE CORPORATE SERVICES INC.**

_____

By:_____

Title:_____

6

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| 15375 MEMORIAL CORPORATION, | ) | |
| *et al.* | ) | Case No. 06-10859 (KG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**Related to Docket No. ____**

### ORDER GRANTING DEBTORS' MOTION UNDER
### AND PURSUANT TO FEDERAL RULE OF BANKRUPTCY
### PROCEDURE 9019 FOR APPROVAL OF SETTLEMENT

Upon consideration of the motion (the "Motion") of Debtors 15375 Memorial Corporation ("Memorial") and Santa Fe Minerals, Inc. ("Santa Fe," and, together with Memorial, "Debtors"), for entry of an order, under and pursuant to Federal Rule of Bankruptcy Procedure 9019, approving the settlement between Debtors and GlobalSantaFe Corporation ("GSF"), GlobalSantaFe Corporate Services Inc. ("GSF Services") and Entities Holdings, Inc. ("EHI") (collectively, the "GlobalSantaFe Entities"), as described in the Motion (the "GSF Settlement"); and the Court, having found that notice of the Motion was proper and sufficient under the Federal Rules of Bankruptcy Procedure and the Local Rules of the Court; and the Court having found that just cause exists for approval of the GSF Settlement; it is hereby

ORDERED, that the Motion is GRANTED; and it is further

ORDERED, that the GSF Settlement is approved.

Dated: June ____, 2008

_____
Honorable Kevin Gross
UNITED STATES BANKRUPTCY JUDGE

SL1 823182v1/101674.00002

# EXHIBIT I

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| 15375 MEMORIAL CORPORATION, *et al.*, | ) | Case No. 06-10859 (KG) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |
|  | ) | **Related to Docket Nos. 352 and 354** |

### DEBTORS' MOTION FOR AN ORDER SHORTENING NOTICE PERIOD WITH RESPECT TO HEARING ON THE ADEQUACY OF THE DISCLOSURE STATEMENT FOR DEBTORS' FIRST AMENDED JOINT PLAN OF LIQUIDATION

15375 Memorial Corporation ("Memorial") and Santa Fe Minerals, Inc. ("Santa Fe") (collectively, "Debtors"), by their counsel, pursuant to Federal Rule of Bankruptcy Procedure 9006(c) and Rule 9006-1(e) of the Local Rules of the Court, requests entry of an order shortening the notice period by one day (actually, less than ten hours) to allow for a hearing on June 27, 2008, at 11:00 a.m. on the adequacy of the Debtors' *Disclosure Statement In Connection With Debtors' First Amended Joint Plan Of Liquidation* (the "Disclosure Statement"). In support, Debtors respectfully represent as follows:

### BACKGROUND

1.    On June 2, 2008, Debtors filed their Disclosure Statement. In accordance with Bankruptcy Rule 3017(a) and Local Rule 3017-1(a), Debtors obtained June 27, 2008, at 11:00 a.m. Eastern Standard Time, from the Court as the date and time for a hearing on the Disclosure Statement (the "Disclosure Statement Hearing").

DATE FILED 6-9-08

DOCKET NO. 361

2.      On June 3, 2008, at approximately 9:00 a.m., the Debtors filed and served a *Notice of Hearing* of the Disclosure Statement Hearing (the "Notice");[1] and that objections to the Disclosure Statement must be filed on or before June 20, 2008.

3.      By email dated June 6, 2008, counsel for Bass advised Debtors' counsel that Bass objected to the scheduling of the hearing on June 27th because Bass was not provided with at least 25 days notice.  In an attempt to resolve this matter, Debtors' counsel offered to extend the objection deadline for Bass to June 23rd, and otherwise to work with Bass' counsel to resolve whatever issues they had with the Disclosure Statement, which offer was rejected by Bass, leading to the filing of this motion.  *See* Exhibit A attached hereto, consisting of the June 6, 2008, email exchange between counsel for Bass and Debtors.

## RELIEF REQUESTED

4.      Federal Rule of Bankruptcy Procedure 3017(a) provides that after a disclosure statement is filed, the court shall hold a hearing on at least twenty five days notice to creditors and other parties in interest to allow such creditors and parties to consider the disclosure statement and any objections or modifications thereto.  Rule 3017 does not say that parties must receive 25 days to file their objections to a disclosure statement.

5.      The Disclosure Statement was filed and served on the parties on June 2, 2008, twenty five days before the scheduled June 27th hearing.  Although the Notice was admittedly filed on the morning of the next day, by the time of the hearing on June 27th, Bass will have been provided with twenty five days to review the Disclosure Statement and consider any objections thereto as well as 25 days less about nine hours (most of which Debtors assume Bass' counsel would have been asleep) actual notice of the Disclosure Statement Hearing.

---

[1]   The filing and service of the Notice on the morning of June 3rd was due to a miscommunication between Debtors' lead counsel and his staff caused, in part, on his travel to another district for a hearing in another matter.

2

6.      Although Debtors believe they are in compliance with the notice periods set forth in the Federal Rules of Bankruptcy Procedure, Debtors respectfully request the entry of an Order shortening the applicable notice period by less than one day to allow the Debtors to conduct a hearing on the Disclosure Statement at the previously scheduled June 27, 2008 omnibus hearing.

7.      Bass' intimate knowledge of the facts, circumstances and issues involved in this case is such that there is no prejudice to Bass from the relief sought herein.  In addition, as they believe a disclosure statement approval process can and should be a collaborative effort in which parties discuss changes and additions to a disclosure statement in an effort to avoid litigating disclosure issues with the Court, Debtors remain willing to extend Bass' deadline to object to the Disclosure Statement to June 23, 2008.

WHEREFORE, Debtors respectfully request that the Court grant this Motion and shorten the notice period for the Disclosure Statement Hearing as requested herein; and grant such other and further relief as the Court may deem just and proper.

Dated: June 9, 2008
      Wilmington, Delaware      Respectfully submitted,

                                    STEVENS & LEE, P.C.

                                      _____*/s/ John D. Demmy*_____
                                      John D. Demmy (Bar No. 2802)
                                      1105 North Market Street, 7th Floor
                                      Wilmington, DE  19801
                                      Telephone: (302) 425-3308
                                      Telecopier: (610) 371-8515
                                      Email: jdd@stevenslee.com

                                        -and-

SL1 823222v1/101674.00002

John C. Kilgannon
1818 Market Street, 29th Floor
Philadelphia, PA 19103
Telephone: (215) 751-1943
Facsimile: (610) 371-7954
Email: jck@stevenslee.com

*Attorneys for the Debtors*

4

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

|  | ) | Chapter 11 |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 06-10859 (KG) |
| 15375 MEMORIAL CORPORATION, *et al.*, | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |
| | ) | |

## ORDER

AND NOW, this ___ day of June, 2008, upon consideration of the Debtors'
*Motion For Order Shortening Notice Period With Respect To Hearing On The Adequacy
Of The Debtors' First Amended Joint Plan Of Reorganization* (the "Motion"), and good
cause appearing therefor, it is hereby

ORDERED that the Motion is GRANTED; and it is further

ORDERED that the hearing to consider the adequacy of the *Disclosure Statement
For Debtors' First Amended Joint Plan of Liquidation* will be held on June 27, 2008, at
11:00 a.m.

_____
Honorable Kevin Gross
United States Bankruptcy Judge

## CERTIFICATE OF SERVICE

I hereby certify that on this day of June 9, 2008, true and correct copies of the foregoing *Debtors' Motion For An Order Shortening Notice Period With Respect To Hearing On The Adequacy Of The Disclosure Statement For Debtors' First Amended Joint Plan Of Liquidation* were served on the parties listed below, electronically through the Court's CM/ECF System, and via electronic mail.

David Buchbinder, Esq.
Office of the U.S. Trustee
844 King Street, Suite 2207
Lockbox 35
Wilmington, DE 19801

Gregory W. Werkheiser, Esq.
Kelly Dawson, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

Francis A. Monaco, Jr., Esq.
Kevin Mangan, Esq.
Womble Carlyle Sandridge & Rice, PLLC
222 Delaware Avenue
15th Floor
Wilmington, DE 19901

Philip Eisenberg, Esq.
Mark Chavez, Esq.
Locke Liddell & Sapp LLP
3400 JPMorgan Chase Tower
600 Travis
Houston, TX 77002

Hampton Carver, Esq.
Leann Opotowsky Moses, Esq.
Carver, Darden, Koretzky, Tessier,
Finn, Blossman & Areaux LLC
Energy Centre
1100 Poydras Street, Suite 2700
New Orleans, LA 70163

Noel C. Burnham, Esq.
Montgomery, McCracken, Walker &
Rhoads, LLC
1105 North Market Street
15th Floor
Wilmington, DE 19801

Natalie D. Ramsey, Esq.
Montgomery, McCracken, Walker &
Rhoads, LLC
123 South Broad Street
Philadelphia, PA 19109

/s/ John D. Demmy
John D. Demmy

6

# EXHIBIT A

## Demmy, John, D.

| | |
|---|---|
| **From:** | Werkheiser, Gregory [GWerkheiser@MNAT.com] |
| **Sent:** | Friday, June 06, 2008 3:55 PM |
| **To:** | Demmy, John, D. |
| **Cc:** | Dawson, Kelly; carver@carverdarden.com; moses@carverdarden.com; peisenberg@lockelord.com; MChavez@lockelord.com; FMonaco@wcsr.com; KMangan@wcsr.com |

**Subject:** RE: 15375 Memorial Corp., Case No. 06-10859

John,

I appreciate your offer to extend the objection deadline, but that is not sufficient to cure the notice deficiencies. I think, if the Debtors want to seek to have this heard on June 27th, they need to file a motion to shorten and limit notice for such relief, unless you're able to disabuse me of my reading of the Rules.

BEPCO is not currently in a position to state whether or it will be necessary to litigate disclosure statement issues. We've not yet had sufficient time to fully read and digest the Disclosure Statement, Amended Plan and the Solicitation Procedures Motion that was just filed.

Nevertheless, I suspect that there may be a number of smaller issues that might be resolved through discussions and we can attempt to do that once we've had an opportunity to react to these documents. Of course, on our preliminary review of the Disclosure Statement and Amended Plan, it appears that the Amended Plan continues to seek impermissible third party releases and injunctions that would render it unconfirmable as a matter of law. Additionally, the Disclosure Statement and Amended Plan likewise appear to attempt to impermissibly deny BEPCO the opportunity to vote on the Amended Plan. If there's a negotiated resolution to be had, it is really up to the Debtors and GSF Entities to take reasonable positions on these and other fundamental issues.

if the Debtors intend to press forward with the June 27th hearing without seeking a scheduling order from the Bankruptcy Court, despite what the Rules provide, please let me know immediately. Thank you.


Gregory W. Werkheiser
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Chase Manhattan Centre, 18th Floor
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

Main: 302.658.9200
Direct Dial: 302.351.9229
Fax: 302.425.4663
| M | N | A | T |

---

**From:** Demmy, John, D. [mailto:JDD@stevenslee.com]
**Sent:** Friday, June 06, 2008 1:34 PM
**To:** Werkheiser, Gregory
**Cc:** Dawson, Kelly; carver@carverdarden.com; moses@carverdarden.com; peisenberg@lockelord.com; MChavez@lockelord.com; FMonaco@wcsr.com; KMangan@wcsr.com

6/9/2008

**Subject:** Re: 15375 Memorial Corp., Case No. 06-10859

Debtors' intend to proceed on the 27th, but we certainly are agreeable to extending Bass' time to object to the Disclosure Statement. How about June 23rd?

Of course, rather than litigating Disclosure Statement issues, we also could discuss whatever Bass believes should be added to the document.

----- Original Message -----
From: Werkheiser, Gregory <GWerkheiser@MNAT.com>
To: Demmy, John, D.
Cc: Dawson, Kelly <kdawson@mnat.com>; Hampton Carver <carver@carverdarden.com>; Leann Moses <moses@carverdarden.com>; Eisenberg, Philip <peisenberg@lockelord.com>; MChavez@lockelord.com <MChavez@lockelord.com>; FMonaco@wcsr.com <FMonaco@wcsr.com>; Mangan, Kevin <KMangan@wcsr.com>
Sent: Fri Jun 06 12:40:33 2008
Subject: 15375 Memorial Corp., Case No. 06-10859

John,

We are in receipt of the Debtors' notice of disclosure statement hearing with respect to the Disclosure Statement for the Amended Joint Plan of Liquidation filed on June 2, 2008. The notice indicates that the Debtors intend to proceed with the hearing on June 27, 2008, at 11:00 a.m. (ET), with objections due on June 20, 2008.

By my reading of FRBP 2002(b) and 3017(a), this notice does not comply with the requirement of these rules that the Debtors provide at least 25 days notice of the deadline to object to the Disclosure Statement. Accordingly, the hearing (either as to the Disclosure Statement or the related solicitation procedures motion filed yesterday) should not go forward on June 27th.

These items should be continued until the July omnibus hearing date or another later date that complies with the FRBP notice requirements. Also, I would ask that it not be scheduled during the period from July 1st through 7th because of the holiday and because my wife is scheduled to deliver our third child by c-section on July 2nd.

The Debtors waited over nine months to file the Amended Plan (and this Disclosure Statement is the first one that's ever been filed in the case). Additionally, as you know, there are pending appeals on case dispositive issues that BEPCO has asked to be expedited and reviewed directly in the Third Circuit. Under the circumstances, it does not appear appropriate here to depart from the default Bankruptcy Rules.

Please let me know as soon as possible how the Debtors intend to proceed. Thanks.


Gregory W. Werkheiser
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Chase Manhattan Centre, 18th Floor
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

Main: 302.658.9200
Direct Dial: 302.351.9229
Fax: 302.425.4663
| M | N | A | T |

This message, including any accompanying documents or attachments, may contain information that is confidential or that is privileged. If you are not the intended recipient of this message, please note that the dissemination, distribution, use or copying of this message or any of the accompanying documents or attachments is strictly prohibited. If you believe that you may have received this message in error, please contact me at (302) 658-9200 or by return e-mail.

6/9/2008

This email may contain privileged and confidential information and is solely for the use of the sender's intended recipient(s). If you received this email in error, please notify the sender by reply email and delete all copies and attachments. Thank you.

# EXHIBIT J

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| 15375 MEMORIAL CORPORATION, *et al.*, | ) | |
| | ) | Case No. 06-10859 (KG) |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| _____ | ) | Re: D.I. 351, 352, 354, 356, |
| | | 358, 359, 360 & 361 |

### BEPCO, L.P., F/K/A BASS ENTERPRISES PRODUCTION COMPANY'S (I) OBJECTION TO DEBTORS' MOTION FOR AN ORDER SHORTENING NOTICE PERIOD WITH RESPECT TO HEARING ON THE ADEQUACY OF THE DISCLOSURE STATEMENT FOR DEBTORS' FIRST AMENDED JOINT PLAN OF LIQUIDATION AND (II) CROSS MOTION TO DEFER PROCEEDINGS ON MOTIONS AND APPLICATIONS SCHEDULED FOR OMNIBUS HEARING ON JUNE 27, 2008, AT 11:00 A.M. (ET)

BEPCO, L.P, f/k/a Bass Enterprises Production Company ("BEPCO"), by and through its undersigned counsel, hereby respectfully submits this: (I) objection (the "Objection") to the Debtors' Motion For An Order Shortening Notice Period With Respect To Hearing On The Adequacy Of The Disclosure Statement For Debtors' First Amended Joint Plan Of Liquidation (Bankr. D.I. 361) (the "Motion to Shorten") filed by 15375 Memorial Corporation ("Memorial") and Santa Fe Minerals, Inc. ("Santa Fe" and, collectively with Memorial, the "Debtors") with respect to the Disclosure Statement For Debtors' First Amended Joint Plan Of Liquidation (Bankr. D.I. 352) (the "Disclosure Statement") and the accompanying Notice Of Hearing (Bankr. D.I. 354) (the "Notice"); and (II) cross motion (the "Cross Motion") to defer proceedings on, and extend the objection deadlines with respect to, the following motions and applications the Debtors have scheduled for a regular omnibus hearing date on June 27, 2008, at 11:00 a.m. (E.T.):

DATE FILED  6-9-08

DOCKET NO.  364

(a)    The Debtors' Motion Under And Pursuant To Federal Rule Of Bankruptcy Procedure 9019 For Approval Of Settlement (Bankr. D.I. 360) (the "Insider Settlement Motion");

(b)    The Debtors' Motion For An Order (I) Approving Disclosure Statement, (II) Establishing Confirmation Related Notice Procedures, (III) Approving Solicitations Packages, And (IV) Approving Forms Of Ballots And Procedures For Voting On Debtors' First Amended Joint Plan Of Liquidation (Bankr. D.I. 356) (the "Solicitation Procedures Motion");

(c)    The Second Interim Application Of Stevens & Lee, P.C. For Allowance And Payment Of Compensation And Reimbursement Of Expenses As Counsel To The Debtors For The Period November 1, 2006 Through January 31, 2007 (Bankr. D.I. 358) (the "Second Interim Fee Application"); and

(d)    The Third Interim Application Of Stevens & Lee, P.C. For Allowance And Payment Of Compensation And Reimbursement Of Expenses As Counsel To The Debtors For The Period February 1, 2007 Through April 30, 2007 (Bankr. D.I. 359) (the "Third Interim Fee Application," and collectively with the Insider Settlement Motion, the Solicitation Procedures Motion and the Second Interim Fee Application, the "June 27 Pleadings")

In support of this Objection and Cross Motion, BEPCO respectfully states as follows:

## INTRODUCTION

1.    Less than two months ago, with all parties present, the Court delivered the following ruling from the Bench concerning how these cases were to proceed following the issuance of its Reconsideration Opinion and Order (as defined below):

> THE COURT: Well, here's what I'm going to say before we all become even more sort of argumentative on the issues. My whole -- one of the problems that's happened in this case is that there have been a lot of moving parts. And it seemed as if there would be some progress or some direction to the case and once side or the other would then interject sort of a – an alternate course. *And my thought in the – in the decision on reconsideration was that the case in Louisiana should proceed because until we have a result in Louisiana, all of these other issues are going to be very, very difficult to resolve, and they may never have to be resolved. And there could be inconsistencies.*
>
> *So, I agree with BEPCO here. That I would like the litigation in Louisiana to proceed, at least for a reasonable period of time to give them an opportunity to commence the case, to take*

2

*some discovery, to engage in settlement discussions before some
of the bankruptcy-related issues become active again.* And -- so,
to that end, I am not going to schedule anything further on either
the motion for summary judgment in the adversary case, or the
motion to dismiss in the -- in the main cases. And allow BEPCO to
get its feet on the ground in the litigation on Louisiana, which will
have a tremendous impact upon whatever the debtors do in this
court. And I just think that makes all the sense in the world, and it
will clarify things in a way that really hasn't been the case
heretofore. And so I -- as part of this order that I'm going to issue
addressing the stay relief --

     MR. WERKHEISER: Yes, Your Honor.

     THE COURT: -- I will also address the scheduling, which
will be that the -- the pending motions from the GSF entities and
the debtors are held in abeyance. Now, I am not going to be in a
position to know when something happens necessarily in the
Louisiana litigation, but I'm sure that one party or the other, if
some action is needed on the part of the Court, will bring it to my
attention.

Transcript of April 18, 2008 Hearing, at 38-38 (emphasis added) (**Exhibit A** hereto).

    2.    Following the hearing, the Court entered Order, dated April 21, 2008

(Bankr. D.I. 326) (the "April 21 Order") (**Exhibit B** hereto), which briefly addressed scheduling.

The April 21 Order, while allowing the Debtors to "file" an amended plan, expressly directed

that proceedings on "(1) the GSF Entities motion to dismiss BEPCO's motion to lift stay (D.I.

100) and joinder by the Debtors (D.I. 101); and (2) motion for summary judgment regarding

BEPCO's proofs of claim (D.I. 243)" would "be held in abeyance to permit BEPCO's litigation

in Louisiana to proceed."

    3.    BEPCO acted expeditiously in accordance with the Court's rulings in the

Reconsideration Opinion and Order and on April 29, 2008, the Monday after the Reconsideration

Opinion and Order became effective, commenced an action in the 12th Judicial District Court for

the Parish of Avoyelles, Louisiana, captioned *BEPCO, L.P. v. Santa Fe Minerals, Inc., et al.,*

Docket No. 2008-2006 B (the "Louisiana Action"), by the filing of its Petition (**Exhibit C**

hereto). The Louisiana Action is in its earliest stages, with service having only recently been completed on Santa Fe and certain of the principal insurer defendants, which are based overseas.

4.    Despite the Court's clear instructions at the April 18th hearing that the Louisiana Action should be allowed to proceed for at least a "reasonable period of time to give [BEPCO] an opportunity to commence the case, to take some discovery, [and] to engage in settlement discussions before some of the bankruptcy-related issues become active again," (4/18/08 Tr. at 37), between June 2nd and June 6th the Debtors not only filed their Amended Plan (as defined below) and Disclosure Statement, but proceeded to schedule the Disclosure Statement for a hearing on improperly abbreviated notice *and* filed the Insider Settlement Motion, the Solicitation Procedures Motion, the Second Interim Fee Application and the Third Interim Fee Application, all scheduled for a hearing on June 27, 2008 at 11:00 a.m. (ET) with objections due by June 20, 2008. When BEPCO urged the Debtors to reconsider their position on scheduling of these matters, the Debtors flatly refused. Thus, the Debtors, in direct contravention of the Court's direction at the April 18th hearing, have insisted upon embroiling this Court and the parties in further litigation of bankruptcy-related issues before the Louisiana Action even has a chance to begin in earnest.

5.    In addition, following entry of the Reconsideration Opinion and Order, BEPCO timely exercised its right to seek appellate review of the Court's decision not to dismiss these cases pursuant to the BEPCO Dismissal/Conversion Motion (as defined below). Because of the important questions of law raised by the Court's rulings and in order to help advance the progress of these cases, on June 4, 2008, BEPCO requested (the "<u>Certification Request</u>") that the District Court certify its appeals for direct and expedited review by the Third Circuit pursuant to the procedures in 28 U.S.C. § 158(d)(2) and Rule 8001(f) of the Federal Rules of Bankruptcy

4

Procedure. BEPCO's Certification Request is pending, with any responses thereto due by June 14, 2008.

6.     The actions of the Debtors and the GSF Entities not only threaten BEPCO's ability to make meaningful progress in the Louisiana Action, but also threaten BEPCO's ability to obtain meaningful appellate relief.[1] This, no doubt, is precisely their design. As a result, BEPCO is left with no choice but to fulfill the Court's prediction at the April 18th hearing by bringing these matters to the attention to the Court and requesting action by the Court to ensure that BEPCO's rights and the Court's prior rulings are not entirely frustrated.

7.     To this end, BEPCO respectfully submits that the Motion to Shorten should be denied and that proceedings on the other June 27 Pleadings should be continued (and the objection deadlines extended) until a date to be determined. Responses to BEPCO's Certification Request are due within a few days and it is possible that the District Court may act on the Certification Request promptly thereafter.[2] In addition, deferring scheduling of these matters for a brief period of time may allow the parties to assess the status of the Louisiana Action. Accordingly, BEPCO proposes that the June 27, 2008 at 11:00 a.m. (ET) hearing date

---

[1]     Indeed, the Debtors are already on record asserting that this Court retains jurisdiction, notwithstanding BEPCO's appeals, to confirm a plan. *See* Debtors' Response In Opposition To Motion Of BEPCO, L.P., f/k/a Bass Enterprises Production Company For Entry Of An Order (I) Granting Reconsideration, In Part, Of The Court's Opinion And Order, Each Dated February 15, 2008; (II) Upon Reconsideration, (A) Vacating That Portion Of The Opinion And Order Denying The BEPCO Dismissal/Conversion Motion And (B) Amending The Opinion And Order To Grant The Relief Requested In The BEPCO Dismissal/Conversion Motion; And (III) Granting Related Relief (Bankr. D.I. 305; Adv. D.I. 177), at ¶ 22 n.5.

[2]     Certification requests are intended to be disposed of quickly and, therefore, are expressly not governed by Bankruptcy Rule 9014 and oral argument is not allowed. *See* Fed. R. Bankr. P. 8001(f)(3)(E).

be used instead as a status conference fore the parties and the Court to evaluate when and in what

manner the Disclosure Statement, Amended Plan and June 27 Pleadings should proceed.

## BACKGROUND

A.  THE PENDING MOTIONS, THE OPINION AND ORDER, THE RECONSIDERATION OPINION
    AND ORDER AND THE SUBSEQUENT APPEALS

8.    On August 16, 2006 (the "Petition Date"), the Debtors each filed

voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code"), thereby commencing the above-captioned, jointly administered bankruptcy

cases.

9.    Since the Petition Date, the Debtors, BEPCO and GlobalSantaFe

Corporation, GlobalSantaFe Corporate Services Inc. and Entities Holdings, Inc. (collectively, the

"GSF Entities") have each filed various motions, several of which have been pending before this

Court since September 2006 (the "Pending Motions").[3]  The Pending Motions were presented to

the Court in a two-day bench trial that commenced on September 17, 2007.

10.    On February 15, 2008, this Court entered the Findings Of Fact And

Conclusions Of Law (Bankr. D.I. 291; Adv. D.I. 164) (the "Opinion") and related Order (Bankr.

---

[3]    The Pending Motions include (i) the Motion For Preliminary Declaratory And Injunctive
Relief and a related memorandum of law in support thereof (Adv. D.I. 3 & 4), filed by
Santa Fe (together, the "Injunction Motion"); (ii) the Motion Of BEPCO, L.P. f/k/a Bass
Enterprises Production Company, For Order (I) Dismissing Debtors' Chapter 11 Cases
For Bad Faith, Cause Under 11 U.S.C. § 1112(b) And Ineligibility Under 11 U.S.C. §
109, (II) Dismissing Or Suspending Debtors' Chapter 11 Cases Under 11 U.S.C. §
305(a)(1), (III) Converting The Debtors' Chapter 11 Cases To Cases Under Chapter 7 Of
The Bankruptcy Code Pursuant To 11 U.S.C. § 1112(b), (IV) Appointing A Trustee
Pursuant To 11 U.S.C. § 1104(a), Or, (V) Appointing An Examiner Pursuant To 11
U.S.C. § 1104(a) and a related memorandum of law in support thereof (Bankr. D.I. 21 &
22), filed by BEPCO (together, the "BEPCO Dismissal/Conversion Motion"); and (iii)
the Motion For Modification Of The Automatic Stay Under 11 U.S.C. § 362 and a
related memorandum of law in support thereof (Bankr. D.I. 23 & 26), filed by BEPCO
(together, the "BEPCO Stay Relief Motion").

D.I. 292; Adv. D.I. 165) (the "Order"), pursuant to which the Court denied the Injunction Motion and the BEPCO Dismissal/Conversion Motion, but granted the BEPCO Stay Relief Motion, in part, to allow BEPCO to pursue its claims against the Debtors and the Debtors' insurers.

11.     On February 25, 2008, the Debtors, the GSF Entities and BEPCO each filed motions seeking reconsideration or clarification of various portions of the Court's Opinion and Order.

12.     On April 16, 2008, this Court issued the Memorandum Opinion On Reargument (Bankr. D.I. 323; Adv. D.I. 193) (the "Reconsideration Opinion") and related Order (Bankr. D.I. 324; Adv. D.I. 194) (the "Reconsideration Order" and, collectively with the Reconsideration Opinion, the "Reconsideration Opinion and Order") which, *inter alia*, again denied the relief requested in the BEPCO Dismissal/Conversion Motion.

13.     On April 28, 2008, BEPCO timely filed notices of appeal from the Opinion and Order and the Reconsideration Opinion and Order.  On May 7, 2008, the Debtors and the GSF Entities each filed notices of cross-appeal from the Opinion and Order and the Reconsideration Opinion and Order (Bankr. D.I. 336 & 337; Adv. D.I. 206 & 207).

14.     All appeals were subsequently docketed with the United States District Court for the District of Delaware (the "District Court") on May 27 & 29, 2008, and assigned the following case numbers: 08-313 (SLR), 08-314 (SLR), 08-318 (SLR), 08-319 (SLR), 08-321 (SLR), 08-322 (SLR), 08-325 (SLR) and 08-326 (SLR).[4]

B.     THE DEBTORS' JOINT PLANS OF LIQUIDATION AND DOCUMENTS RELATED THERETO

---

[4]     Because there were direct and cross appeals from both the Opinion and Order and the Reconsideration Opinion and Order and because each of those decisions was docketed in both the above-captioned main bankruptcy case and a related adversary proceeding, eight related appeals have been docketed by the Clerk.

15.    On August 28, 2007, the Debtors filed the Debtors' Joint Plan Of Liquidation (D.I. 222) (the "Plan"). In its Opinion, the Court made findings establishing that the Plan was unconfirmable, including that it (i) was conditioned on the grant to the GSF Entities of "a permanent injunction" notwithstanding the Debtors' inability "to demonstrate that this is the rare case where such extraordinary relief is appropriate" (Op. at 77), and (ii) would grant the "GSF Entities . . . the protection of releases and channeling injunctions well before they may ever be called upon to provide any material assistance to the Plan trustee." (Op. at 70)

16.    Despite having been instructed by this Court more than 3 ½ months earlier that the Plan, as filed, could not be confirmed, the Debtors waited until June 2, 2008, to file the Debtors' First Amended Joint Plan Of Liquidation (Bankr. D.I. 351) (the "Amended Plan") and the Disclosure Statement.

17.    BEPCO has had only a brief opportunity to examine the Amended Plan, but defects which are likely to render it unconfirmable are already apparent. The Amended Plan, like the predecessor Plan that this Court rejected in the Opinion, contains impermissible third party releases and injunctions (Amended Plan, §§ 8.1, 8.2 & 8.3) that would, *inter alia,* deny BEPCO any ability to obtain a recovery from the non-debtor GSF Entities without in any way compensating it for the extinguishment of such claims. The Amended Plan is particularly offensive and overreaching as to BEPCO in two additional ways. First, it attempts to deny BEPCO the right to vote on the Amended Plan by deeming it "unimpaired" under section 1124 of the Bankruptcy Code by reason of the possibility that BEPCO's claims might someday be satisfied by liability insurance proceeds (and notwithstanding that the Louisiana Action is in its infancy and that none of the Debtors' liability insurers have agreed to cover BEPCO's claims). Second, it would deny BEPCO the ability to vote on the basis of the Debtors' pending Summary

Judgment Motion pursuant to which the Debtors seek to draw litigation over BEPCO's claims back into this Court. (Amended Plan, § 3.3.6)

18.   On June 3, 2008, the Debtors filed the Notice seeking to set June 27, 2008, as the date upon which this Court would consider the Disclosure Statement.

19.   On June 5, 2008, the Debtors filed the Solicitation Procedures Motion and set June 27, 2008, as the date upon which the Procedures Motion would be considered by this Court.

20.   One week after filing the Amended Plan and Disclosure Statement, and only after BEPCO pointed out the defects in notice and urged the Debtors to do so, the Debtors filed the Motion to Shorten with respect to the Disclosure Statement.

C.   THE INSIDER SETTLEMENT MOTION

21.   On June 6, 2008, the Debtors filed the Insider Settlement Motion, which requests approval pursuant to Bankruptcy Rule 9019 of a settlement between the Debtors and the insider GSF Entities that wholly dominate and control them.  The apparent aim of the Debtors and GSF Entities in filing the Insider Settlement Motion separately from the Amended Plan is to avoid giving the more extensive notice required in connection with consideration of the Amended Plan and to avoid subjecting their self-dealing tainted settlement to the more rigorous scrutiny and approval procedures that would apply in the plan process.

9

22. The Insider Settlement Motion, which seeks approval of a transaction that is at the heart of the Amended Plan, was noticed for the minimum 20 day period required for generic settlements under Bankruptcy Rule 9019.[5]

23. Proceedings on the Insider Settlement Motion are likely to be contested, to involve discovery (which has never gone forward as to the Alter Ego Claims) and to involve this Court in evaluating the merits of the Alter Ego Claim and defenses thereto, including those raised in the GSF Entities' motion to dismiss (Bankr. D.I. 100) the BEPCO Stay Relief Motion, which this Court expressly directed should be held in abeyance pursuant to the April 21 Order.

D. THE STEVENS & LEE FEE APPLICATIONS

24. Also on June 6, 2006, Debtors' bankruptcy counsel, Stevens & Lee, P.C., filed the Second Interim Fee Application and the Third Interim Fee Application and the 9019 Motion and noticed them for the June 27th hearing. The Second Interim Application and the Third Interim Application, cover Stevens & Lee's fees and expenses only through April 2007, but seek the allowance and payment on an interim basis of approximately $237,603.05 (in addition to $87,403.04 in fees and expenses incurred to Stevens & Lee near the outset of these cases).[6]

25. Consideration of the Second Interim Fee Application and Third Interim Fee Application likewise cannot be divorced from resolution of the broader issues in the cases.

---

[5] As stated in the Disclosure Statement, the Insider Settlement is "embodied in the Plan" (Disclosure Statement, 16). The Insider Settlement is the only source of funding for the Amended Plan.

[6] It is notable that Stevens & Lee still has not filed fee applications for a period covering more than 13 months versus the 9 months it has now applied for. Assuming Stevens & Lee's fees and expenses accrued at the same clip throughout this later period, which includes trial on the Pending Motions, the total accrued fees and expenses to Stevens & Lee alone may be in excess of $650,000.

Although BEPCO has not had an opportunity to fully review thee applications, it is likely that they seek compensation for matters that are still in dispute among the parties or as to which the Court has ruled adversely to the Debtors. For instance, to what extent, if any, is it appropriate to compensate professionals for opposing BEPCO's right to access liability insurance proceeds given the Court's findings in the Opinion establishing that the Debtors clearly had no meaningful interest in such proceeds?

## OBJECTION TO MOTION TO SHORTEN

26.    As discussed above, the hearing on the Disclosure Statement should not go forward on June 27th because it is inconsistent with the Court's ruling at the April 18th hearing and because it is almost certainly the first step to embroiling this Court and the parties in the litigation of the bankruptcy issues that this Court indicated should not go forward until the Louisiana Action had an opportunity to progress sufficiently. Moreover, the Debtors have now scheduled for the same June 27th omnibus hearing date what, were it to go forward, would effectively be a "Battle Royal" on many of the issues that have troubled the parties and this Court from the earliest stages of these cases.

27.    In addition, and contrary to the assertions in the Motion to Shorten, the notice given by the Debtors is technically defective. The Notice, filed on June 3, 2008, provided BEPCO and other parties-in-interest with only 17 days in which to object to the Disclosure Statement – far short of the 25 days notice of the objection deadline mandated by Bankruptcy Rules 2002(b) and 3017(a).[7]

---

[7]    Even the Debtors' belated offer in the Motion to Shorten to extend the deadline to June 23, 2008, would still fall 5 days short of the required period.

11

28.    Rule 3017(a) of the Federal Rules provides, in pertinent part, that "after a disclosure statement is filed . . . , the court shall hold a hearing on at least 25 days' notice to the debtor, creditors, equity security holders and other parties in interest *as provided in Rule 2002* to consider the disclosure statement *and any objections* or modifications thereto." Fed. R. Bankr. P. 3017(a) (emphasis added). Federal Rule 2002 further provides that "the clerk, or some other person as the court may direct, shall give . . . all creditors . . . not less than 25 days notice by mail of (1) the time fixed *for filing objections* and the hearing to consider approval of a disclosure statement." Fed. R. Bankr. P. 2002(b) (emphasis added).[8]

29.    Pursuant to rule 9006-1(e) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), a debtor may request a hearing to approve a disclosure statement on lesser notice, if exigent circumstances exist.    Del. Bankr. L.R. 9006-1(e).    However, no such exigent circumstances exist in the Debtors' bankruptcy cases and none have been identified in the Motion to Shorten. The Motion to Shorten should be denied.

## CROSS MOTION

30.    By this Cross Motion, BEPCO respectfully requests that the Court defer proceedings on the Disclosure Statement, the Plan and the June 27 Pleadings until a date to be determined. As set forth above, the June 27, 2008 at 11:00 a.m. (ET) hearing date should serve as a status conference so that the parties can bring the Court up to speed on developments in the Louisiana Action and with respect to the Certification Request. From there, the Court can establish schedule, if appropriate, for further proceedings.

---

[8]    The 25 day notice period for the objection deadline should equally apply to the Solicitation Procedures Motion, which specifically requests approval of the Disclosure Statement.

31.    This Court, of course, has ample authority pursuant to section 105 of the Bankruptcy Code, Bankruptcy Rules 9006 and 9007 and its inherent powers to control its docket and regulate the notice periods on matters before it.  In contrast to the complete absence of any compelling reason to shorten notice, there are very compelling reasons for the Amended Plan, the Disclosure Statement and the other June 27 Pleadings not to go forward at this time.  Most notably, the attempt of the Debtors and the GSF Entities to "Blitzkrieg" BEPCO and the Court with matters for the June 27th omnibus hearing cannot be reconciled with the Court's ruling at the April 18th hearing or the Terms of the April 21 Order.  Second, the attempt to proceed with all such matters on such an aggressive schedule is entirely unrealistic in that it fails to account for the inevitable disputes and related discovery and motion practice that will follow.  Third, the conduct of the Debtors and GSF Entities in significantly overreaching via the Amended Plan and the Insider Settlement Motion warrants that BEPCO, interest parties and the Court be given ample time to respond to them.

WHEREFORE, BEPCO respectfully requests that this Court enter an order (i) denying the Motion to Shorten; (ii) granting its Cross Motion and deferring scheduling on the Disclosure Statement, Amended Plan and the related June 27 Pleadings pending a status conference to be held at the June 27, 2008, at 11:00 a.m. (ET) omnibus date and (iii) granting BEPCO such other and further relief as is just and proper.

Dated: Wilmington, Delaware
June 9, 2008

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____
Gregory W. Werkheiser (No. 3553)
Kelly M. Dawson (No. 4786)
1201 Market Street
P. O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 351-9229
Fax: (302) 658-3989

-and-

CARVER DARDEN KORETZKY TESSIER FINN
BLOSSMANN & AREAUX, L.L.C.
M. Hampton Carver (LA #4546)
Leann Opotowsky Moses (LA #19439)
1100 Poydras Street, Suite 2700
New Orleans, LA 70163
Telephone: (504) 585-3800
Fax: (504) 585-3801

Co-Counsel for BEPCO, L.P., formerly known
as Bass Enterprises Production Company

2358108.2

14

# Exhibit A

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Case No. 06-10859(KG) |
| | ) | (Jointly Administered) |
| | ) | Chapter 11 |
| 15375 MEMORIAL CORPORATION, | ) | |
| *et al.*, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| SANTA FE MINERALS, INC., | ) | Adversary No. 06-50822(KG) |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| versus | ) | |
| | ) | |
| BEPCO, L.P., formerly known as | ) | |
| BASS ENTERPRISES PRODUCTIONS | ) | Courtroom No. 3 |
| COMPANY, | ) | J. Caleb Boggs Federal |
| | ) | 844 N. King Street |
| Defendant. | ) | Wilmington, Delaware 19801 |
| | ) | |
| GLOBALSANTAFE CORPORATION, | ) | |
| GLOBALSANTAFE CORPORATE | ) | |
| SERVICES, INC., and ENTITIES | ) | |
| HOLDINGS, INC., | ) | |
| | ) | April 18, 2008 |
| Intervenors. | ) | 10:05 A.M. |

TRANSCRIPT OF STATUS CONFERENCE
BEFORE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

ECRO:                    Leslie Murin


TRANSCRIPTION SERVICE:   TRANSCRIPTS PLUS
                         435 Riverview Circle
                         New Hope, Pennsylvania 18938
                         Telephone: 215-862-1115
                         Facsimile: 215-862-6639
                         e-mail CourtTranscripts@aol.com


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

1  they are rateably entitled to, it's not before Your Honor but I

2  don't know how that -- it can be confirmed in a case like this.

3          So, I don't think the summary judgment motion is

4  anything that needs to go forward right now.  Your Honor, let's

5  file the plan and maybe we reevaluate the issue at that time.

6          Your Honor, I do want to mention a couple of issues,

7  and I think Mr. Carver hinted at them.  Which is that if a plan

8  does go forward, I expect it will largely be premised, again,

9  on an attempt to compromise the so-called alter ego claims that

10  assert ownership over them between the debtor and its parent,

11  GlobalSantaFe.

12          And that does raise issues as to the interested

13  nature of the transaction, whether, in fact, there ought to be

14  a third party fiduciary, such as a Trustee or an examiner in

15  that process.  We are, at this stage of the case, well beyond

16  the exclusive periods for the debtor, even by the outside dates

17  that Congress would permit.

18          So, you know, that -- it's not before Your Honor but

19  in terms of mapping the path forward, I think that is something

20  that is probably -- would have to be addressed if another plan

21  is put back on the table.  Thank you.

22          THE COURT:  Well, here's what I'm going to say before

23  we all become even more sort of argumentative on the issues.

24  My whole -- one of the problems that's happened in this case is

25  that there have been a lot of moving parts.  And it seemed as

37

1  if there would be some progress or some direction to the case

2  and once side or the other would then interject sort of a -- an

3  alternate course.  And my thought in the -- in the decision on

4  reconsideration was that the case in Louisiana should proceed

5  because until we have a result in Louisiana, all of these other

6  issues are going to be very, very difficult to resolve, and

7  they may never have to be resolved.  And there could be

8  inconsistencies.

9         So, I agree with BEPCO here.  That I would like the

10  litigation in Louisiana to proceed, at least for a reasonable

11  period of time to give them an opportunity to commence the

12  case, to take some discovery, to engage in settlement

13  discussions before some of the bankruptcy-related issues become

14  active again.  And -- so, to that end, I am not going to

15  schedule anything further on either the motion for summary

16  judgment in the adversary case, or the motion to dismiss in the

17  -- in the main cases.  And allow BEPCO to get its feet on the

18  ground in the litigation on Louisiana, which will have a

19  tremendous impact upon whatever the debtors do in this court.

20  And I just think that makes all the sense in the world, and it

21  will clarify things in a way that really hasn't been the case

22  heretofore.  And so I -- as part of this order that I'm going

23  to issue addressing the stay relief --

24         MR. WERKHEISER:  Yes, Your Honor.

25         THE COURT:  -- I will also address the scheduling,

1 which will be that the -- the pending motions from the GSF

2 entities and the debtors are held in abeyance.

3        Now, I am not going to be in a position to know when

4 something happens necessarily in the Louisiana litigation, but

5 I'm sure that one party or the other, if some action is needed

6 on the part of the Court, will bring it to my attention.

7        MR. DEMMY:  Your Honor, on -- on the point of

8 scheduling matters and whether matters should be held in

9 abeyance, Your Honor did not touch upon -- and clearly we

10 believe that an amended plan is required based on the Court's

11 rulings on various issues.  And as Mr. Eisenberg stated, it was

12 our intent to proceed with an amended plan, and I didn't hear

13 the Court say anything about that.  I think that we should be

14 allowed to proceed with that process.  The Court, in the

15 context of confirmation, can always make whatever rulings and

16 scheduling decision it would like to make.  But I think we

17 should be allowed to proceed so the Court -- I think that will

18 further clarify matters.

19        THE COURT:  I think it may, too.  And I certainly am

20 not going to enjoin, if you will, the debtors from filing an

21 amended plan.  And I think we'll see -- we'll see what that

22 plan says obviously, and BEPCO, I'm sure, will have some views

23 on the plan.

24        MR. DEMMY:  Yes, sir.

25        THE COURT:  But at least we won't be involved in

1 rather heavy litigation, even if it is just motion practice,

2 but it's still litigation while the Louisiana case is allowed

3 to proceed.

4          MR. WERKHEISER:  Understood, Your Honor.  Thank you.

5          THE COURT:  I see Mr. Buchbinder waiting to rise.

6 Don't complicate it further, Mr. Buchbinder, bring clarity.

7          MR. BUCHBINDER:  Good morning, Your Honor.

8          THE COURT:  Good morning.

9          MR. BUCHBINDER:  David Buchbinder on behalf of the

10 United States Trustee.

11          I would just like to observe this morning that our

12 purpose here ultimately is to have a confirmed plan or other

13 disposition of the case, and from the perspective of my client,

14 moving this case forward through the plan process seems to be

15 most appropriate, and I would also observe from my own

16 experiences that -- and of all the people in this room that

17 this is not the first Chapter 11 case in which we have what,

18 for all practical purposes, is a two-party dispute.

19          THE COURT:  Right.

20          MR. BUCHBINDER:  But in which the Court has found

21 that there are other interests that are ultimately implicated.

22 And it is certainly not the first case in which a debtor has

23 faced the prospect of litigation, which is germane to the

24 outcome of the case, and these things can certainly be

25 accounted for in a properly drafted plan.  And I am all in

# Exhibit B

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| 15375 MEMORIAL CORPORATION, et al., | ) | Case No. 06-10859(KG) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Re Dkt. Nos. 296 & 298** |
| SANTA FE MINERALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 06-50822(KG) |
| | ) | |
| BEPCO, L.P., formerly known as BASS | ) | |
| ENTERPRISES PRODUCTION COMPANY, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| GLOBALSANTAFE CORPORATION, | ) | |
| GLOBALSANTAFE CORPORATE SERVICES | ) | |
| INC. AND ENTITIES HOLDING, INC. | ) | |
| | ) | |
| Intervenors. | ) | **Re Dkt Nos. 169 & 171** |

## ORDER

The Court conducted a scheduling conference on April 18, 2008, following the issuance of the Memorandum Opinion on Reargument and Order ("the Ruling") (D.I. 323/324 and 193/194). The parties raised several issues which the Court will resolve in this Order.

### 1. Debtors' Motion to Stay Pending Appeal and Joinder by the GSF Entities

The Debtors and the GSF Entities seek a stay pending appeal ("the Stay Application") of that portion of the Ruling lifting the stay to permit BEPCO to proceed with litigation against debtor Santa Fe Minerals, Inc. ("Santa Fe") (D.I. 296/298 & 169/171).

The Court denies the Stay Application. Pursuant to Federal Rules of Bankruptcy Procedure 8005, a bankruptcy court, "may suspend or order the continuation of other proceedings in the case . . . during the pendency of an appeal on such terms as will protect the rights of all parties in interest." The factors courts consider are[1]:

(a)    Movant's likelihood of success on the merits of the appeal. The Court had an opportunity to review its decision in response to the reargument motions and does not believe Debtors will prevail on the appeal.

(b)    Whether movant will suffer irreparable injury if the stay is not granted. The Court believes that the Bankruptcy Cases will benefit from the resolution of the litigation BEPCO will file against Santa Fe in Louisiana.

(c)    Whether the other parties will suffer substantial harm if the stay is granted. This is largely a two party case so that other creditors' rights are not implicated. BEPCO has been waiting a considerably long time to pursue its claims against Santa Fe. A stay pending appeal will further prejudice BEPCO.

(d)    Whether there will be harm to the public interest if the stay is issued. The public interest is not implicated.

The Court is deciding the Stay Application without Debtors or the GSF Entities having filed an appeal. There is a question whether a motion to stay must be decided before the appeal is filed because of the unsettled concern that a bankruptcy court's jurisdiction may otherwise be divested upon a party filing an appeal. The Court believes that the better but

---

[1] *See, e.g., In re Blackwell*, 162 B.R. 117 (E.D. Pa 1993).

2

not mandatory practice is to await the filing of the appeal to avoid an unnecessary, or advisory opinion. One court in this district explained the issue as follows:

> . . . But most courts have also held that bankruptcy courts retain jurisdiction to enforce, implement, and otherwise treat as valid judgments and orders that are the subject of pending appeals, as long as that enforcement and implementation does not require redeciding issues that are on appeal. *See, e.g., Dicola v. American Steamship Owners Mut. Protection and Indemnity Ass'n (In re Prudential Lines)* . . . .

*Kales v. Fox, Rothschild, O'Brien & Frankel (In re Mazzocone)*, 1995 U.S. Dist. LEXIS 3218, (E.D. Pa. 1995) at *12.[2]

    2.    <u>Further Scheduling</u>

Debtors have several motions pending: (1) the GSF Entities' motion to dismiss BEPCO's motion to lift stay (D.I. 100) and joinder by the Debtors (D.I. 101); and (2) motion for summary judgment regarding BEPCO's proofs of claim (D.I. 243), both filed in the Bankruptcy Cases. The Court directs that further briefing on the motions be held in abeyance to permit BEPCO's litigation in Louisiana to proceed. Any party or the Court, *sua sponte*, may request a hearing to consider allowing the motions to proceed to briefing and argument.

    3.    <u>Plan</u>

Debtors may file an Amended Plan of Liquidation at anytime.

Dated: April 21, 2008

                            KEVIN GROSS, U.S.B.J.

---

[2] It appears that the procedural conundrum results, in part, from the decision in *Burchinal v. Central Washington Bank (In re Adams Apple, Inc.)*, 829 F.2d 1484 (9th Cir. 1987). Comment on *Burchinal* suggests that the holding that an appeal divests jurisdiction does not square with Rule 8005.

# Exhibit C

FILE NO.
FILED AND RECORDED
2008 APR 29 P 4:14

12TH JUDICIAL DISTRICT COURT FOR THE PARISH OF AVOYELLES

STATE OF LOUISIANA

DOCKET NO. _2008-2006 B_                    DIVISION "___"

BEPCO, L.P.

VERSUS

SANTA FE MINERALS, INC.; CERTAIN UNDERWRITERS AT LLOYD'S, LONDON AND
LONDON MARKET COMPANIES; AND XYZ INSURANCE COMPANIES

FILED: _____    _____
                                    DEPUTY CLERK

### PETITION

NOW INTO COURT, through undersigned counsel, comes Plaintiff, BEPCO,

L.P., f/k/a Bass Enterprises Production Company, who respectfully files this Petition, and asserts

the following, to-wit:

### PARTIES

**1.**

Plaintiff BEPCO, L.P. is a partnership organized under the laws of the State of

Delaware, authorized to do and doing business in the State of Louisiana.

**2.**

Made Defendants herein are:

A.    Santa Fe Minerals, Inc. ("Santa Fe"), a corporation organized under the

laws of the State of Wyoming with its principal place of business in Texas; and

B.    Certain Underwriters at Lloyd's, London and London Market Companies,

foreign insurers, subscribing to the policies insuring Andover Oil Company, Santa Fe-Andover

Oil Company, and/or Santa Fe Minerals, Inc. for the years 1964 - 1990; and

1

923282v.1

C.    XYZ Insurance Companies, any other insurance companies that provided coverage for the claims made herein.

## JURISDICTION AND VENUE

### 3.

This Court has the legal power to hear and determine this matter pursuant to Louisiana Constitution Article V, Section 16. Defendant Santa Fe Minerals, Inc. is subject to the personal jurisdiction of this Court under the Louisiana Long Arm Statute, La. R.S. 13:3201, because Defendant Santa Fe Minerals, Inc. contracted business in the State of Louisiana and caused damage by an offense or quasi offense committed through an act or omission in the State of Louisiana. This Court has jurisdiction over the insurer Defendants pursuant to La. R.S. 22:655 because the injuries complained of occurred in Avoyelles Parish.

### 4.

This Petition involves causes of action for damages sounding in contract and in tort as an offense and/or quasi offense. Therefore, venue is proper in this Court, pursuant to Louisiana Code of Civil Procedure articles 74 and 76.1.

## FACTS APPLICABLE TO ALL CLAIMS

### *Leases and Assignments*

### 5.

Richardson Oils, Inc., which became BEPCO, L.P., conducted and participated in various oil and gas exploration and production activities on a portion of the property located within Sections 10, 11, 12, 21, and 22 in Township 2 South, Range 2 East, and in Sections 7, 17, 18, and 19 in Township 2 South, Range 3 East, all in Avoyelles Parish, Louisiana in the Haas and Eola Fields, pursuant to and on the terms contained in that certain Lease from Haas Investment Co., Inc. et al., as lessors, and S. W. Richardson, as lessee, dated October 15, 1938, recorded in Alienation Book A-73, folio 595, Avoyelles Parish, Louisiana ("Haas Lease").

6.

Pursuant to an act of Assignment dated effective February 1, 1964, Richardson Oils, Inc., which became BEPCO, L.P. and others, assigned their interests in and to the Haas Lease and their obligations under the Haas Lease to Chenola Oil Corporation, which assumed all obligations under the Haas Lease. This Assignment, which is recorded in Book 98, folio 551, Avoyelles Parish, Louisiana contains, in paragraph (d), a specific assumption by Chenola Oil Corporation of BEPCO, L.P.'s obligations that reads as follows: "Assignee, as Lessee, shall assume and perform all the obligations of Assignor or its predecessors in title required to be performed under the oil, gas and mineral leases described in Exhibit "A," or by any statue, law or governmental regulation."

7.

Pursuant to an act of Assignment dated effective June 1, 1971, Chenola Oil Corporation assigned its interest in and to the Haas Lease and its obligations thereunder, including its obligations to Richardson Oils, Inc. which became BEPCO, L.P., to Chenola Oil Corporation of Louisiana, Inc. In this Assignment, which is recorded in Book 113, folio 567, Registry No. 243301, records of Avoyelles Parish, Louisiana, Chenola Oil Corporation of Louisiana, Inc., in paragraph (d) thereof, specifically assumed all obligations of Chenola Oil Corporation or its predecessors in title required to be performed under the Haas Lease or by any statute, law, or governmental regulation.

8.

Chenola Oil Corporation of Louisiana assigned and transferred its interest in the Haas Lease and the obligations related thereto pursuant to an act of Transfer and Conveyance by Chenola Oil Corporation of Louisiana, Inc. to Andover Oil Company, dated September 4, 1974 recorded in Book 116, page 27, Registry No. 26422, records of Avoyelles Parish, Louisiana. This Assignment states that it incorporates and is subject to all obligations applicable to the Haas Lease or the land covered by such leases recorded in Avoyelles and Rapides Parishes, Louisiana on June 1, 1974.

923282v.1

**9.**

Santa Fe Minerals, Inc. acquired Andover Oil Company in or about July 1982, and changed its name to Santa Fe-Andover Oil Company in or about October 1982.

**10.**

Santa Fe-Andover Oil Company became Santa Fe Minerals, Inc. in or about November 1989.

**11.**

Certain Underwriters at Lloyd's, London and London Market Companies issued insurance policies to Andover Oil Company, Santa Fe-Andover Oil Company, and/or Santa Fe Minerals, Inc., that, upon information and belief, cover the claims asserted herein by BEPCO, L.P.

*The Tebow Litigation*

**12.**

In April 2005, Santa Fe Minerals, Inc., BEPCO, L.P., and others were named as defendants in an action filed by William H. Tebow, Donna Taylor Tebow, and Nancy Mikell Carruth ("Tebow Plaintiffs") and captioned *William H. Tebow et al v. Bradex Oil & Gas Inc., et al,* Docket No. 2005-7728, 12th Judicial District Court for the Parish of Avoyelles, State of Louisiana ("Tebow Lawsuit").

**13.**

In the Tebow Lawsuit, the Tebow Plaintiffs alleged that their property (located in Sections 10, 11, 12, 21, and 22 in Township 2 South, Range 2 East, and in Sections 7, 17, 18, and 19 in Township 2 South, Range 3 East, all in Avoyelles Parish, Louisiana in the Haas and Eola Fields) had been damaged by historical exploration and production operations conducted on or near the property by the defendants including Santa Fe and BEPCO, and each of their predecessors and successors.

4

14.

The Tebow Plaintiffs alleged that the defendants stored and disposed of oilfield wastes in unlined earthen pits on their property and that damage was caused by disposal of those wastes on their property. The Tebow Plaintiffs alleged that the defendants' operations caused contamination of the surface, subsurface, and ground water. The Tebow Plaintiffs sought to recover over three hundred million dollars of alleged damages.

15.

The Tebow Plaintiffs' claims against Santa Fe Minerals, Inc. and BEPCO, L.P. were based in tort, on alleged breaches of the Haas Lease, and under the Louisiana Mineral Code.

16.

The claims made by the Tebow Plaintiffs in the Tebow Lawsuit also fell squarely within Santa Fe's obligations to BEPCO, L.P. under the indemnification provisions of the Assignments through which Santa Fe assumed the obligation to indemnify BEPCO, L.P.

17.

Santa Fe Minerals, Inc. participated in the Tebow Lawsuit for over a year. On or about August 16, 2006, Santa Fe Minerals, Inc. filed bankruptcy in the bankruptcy court of Delaware.

18.

The Tebow Plaintiffs immediately attempted to dismiss Santa Fe without prejudice and did not file a proof of claim in Santa Fe's bankruptcy.

19.

By Order dated April 16, 2008, the Honorable Kevin Gross, United States Bankruptcy Judge for the District of Delaware, wherein the Santa Fe bankruptcy is pending, lifted the automatic stay and granted BEPCO, L.P. leave to proceed with this litigation.

20.

BEPCO, L.P. continued to vigorously defend the Tebow Lawsuit in which the Tebow Plaintiffs sought over three hundred million dollars in damages.

5

F13282v.1

**21.**

The Tebow Court ruled that BEPCO, L.P. and Santa Fe were solidarily liable for the Tebow Plaintiffs' damages.

**22.**

The Tebow trial began on February 19, 2007. After trying the Tebow Lawsuit for one week, BEPCO, L.P. entered into a Settlement Agreement with the Tebow Plaintiffs on or about February 26, 2007 ("Tebow Settlement"). The terms of the Tebow Settlement are confidential but will be produced herein at the appropriate time and subject to the necessary protections.

**23.**

The Tebow Settlement required BEPCO, L.P. to make a one-time cash payment to the Tebow Plaintiffs to satisfy the environmental damages and liabilities asserted in the Tebow Lawsuit. The Tebow Settlement also required BEPCO, L.P. to conduct remediation activities on the Tebow Plaintiffs' property, which remediation activities are substantially complete. As part of the Tebow Settlement, BEPCO, L.P. was assigned the rights of the Tebow Plaintiffs in the Tebow Lawsuit against Santa Fe and the Tebow Plaintiffs are precluded from further pursuing Santa Fe for the damages and claims raised in the Tebow Lawsuit.

**24.**

The Tebow Settlement was reasonable in light of the damages claimed by the Tebow Plaintiffs and the potential liability of BEPCO, L.P.

**25.**

The Tebow Settlement was fair to Santa Fe.

**26.**

Upon information and belief, Santa Fe was aware that BEPCO, L.P. and the Tebow Plaintiffs were involved in settlement negotiations and that a settlement agreement was ultimately confected.

923282v.1

**27.**

BEPCO, L.P. is entitled to be fully indemnified and reimbursed by Santa Fe and its insurers for the full amount of the Tebow Settlement, including the full cost expended by BEPCO, L.P. for the remediation.

**28.**

Pursuant to the Tebow Court's ruling that Santa Fe is solidarily liable to the Tebow Plaintiffs, Santa Fe is liable to reimburse BEPCO, L.P. in proportion to its percentage of fault, which BEPCO, L.P. maintains is 100%.

## CLAIMS FOR RELIEF

### CAUSE OF ACTION FOR INDEMNITY

**29.**

Plaintiff BEPCO, L.P. re-alleges Paragraphs 1 - 28 as though set forth fully herein.

**30.**

Santa Fe operated in Section 7, Township 2 South, Range 3 East and specifically in the areas referred to as the "East Pit" and the "Eddie Mayo Tank Battery area."

**31.**

All damages and all obligations to the Tebow Plaintiffs arising from operations after February 1, 1964, when Richardson Oils, Inc. transferred the Haas Lease are attributable to Santa Fe Minerals, Inc. Among other things, BEPCO, L.P.'s successors including Santa Fe Minerals, Inc., opened, used, and closed the earthen pit in Section 7, Township 2 South, Range 3 East, known as the "East Pit."

**32.**

In the assignment of the Haas Lease from Richardson Oils, Inc. to Chenola, Chenola agreed that it "shall assume and perform all the obligations of Assignor or its predecessors in title required to be performed under the oil, gas, and mineral leases." In the assignment from Chenola to Andover (now Santa Fe), it was agreed that the assignment

7

"incorporates and is made subject to any and all burdens and obligations applicable to the Leases herein assigned or the land covered by such leases recorded in Avoyelles and Rapides Parishes, Louisiana on June 1, 1974."

### 33.

The Tebow Lawsuit alleged that the oil and gas operations on the Tebow property were conducted negligently thereby allegedly causing the surface and the subsurface of the property and the groundwater to be contaminated. The Tebow Lawsuit further alleged that the oil and gas operators breached the Haas Lease and/or violated the Louisiana Mineral Code.

### 34.

In the Tebow Lawsuit, the Tebow Plaintiffs' experts alleged that most of the alleged contamination and damage to the their property resulted from the East Pit.

### 35.

The East Pit did not exist until after Richardson Oils, Inc. assigned the Haas Lease in 1964 and ceased operations on the Tebow Plaintiffs' property.

### 36.

Andover and Santa used the East Pit from 1974 to 1990 when Santa Fe improperly closed the East Pit.

### 37.

The Tebow Plaintiffs' experts allocated approximately $250 million of the claimed damages to the East Pit.

### 38.

Andover and Santa Fe also conducted operations in the area known as the Eddie Mayo Tank Battery area. The Tebow Plaintiffs' experts testified that the Eddie Mayo Tank Battery area was contaminated and required remediation. The Tebow Plaintiffs' experts allocated approximately $68 million for remediation and restoration of the Eddie Mayo Tank Battery area.

923282v.1

**39.**

As assignee of the lease indemnification obligation, Santa Fe agreed to perform all obligations imposed by the Haas Lease or by any statute, law, or government regulation. One such obligation is the obligation to restore the premises at the termination of the lease.

**40.**

The Tebow Court ruled that the lessor can look to any person in the chain of title to perform this obligation or to pay damages in lieu of performance because such persons are liable to the lessor jointly and severally and *in solido*.

**41.**

Under the rulings made by the Tebow Court, if the lessor looks to only one party to perform the restoration obligation or obtains settlement damages in lieu thereof, that party may obtain contribution from other parties in the chain of title because all are liable *in solido*.

**42.**

Moreover, as between the party who paid the obligation and the party who actually caused the damages constituting a breach of contract, the former may demand complete indemnity from the latter. La. C.C. art. 1804.

**43.**

BEPCO, L.P. is entitled to indemnity from the Defendants. Defendants' obligation to indemnify BEPCO, L.P. arises under the indemnification provisions of the Assignments through which Santa Fe assumed the obligation to indemnify prior operators which includes BEPCO, L.P. for all obligations required to be performed under the Haas Lease or by any statute, law, or governmental regulation.

**44.**

The indemnification provisions encompass the obligations alleged in the Tebow Lawsuit and subject to the Tebow Settlement.

923282v.1

45.

BEPCO, L.P. settled the Tebow Plaintiffs' claims for alleged damage to the East Pit and the Eddie Mayo Tank Battery area and agreed to perform certain remediation activities in those areas. Pursuant to the contractual indemnification assumed by Santa Fe, BEPCO, L.P. is entitled to be reimbursed by the Defendants.

## CAUSE OF ACTION FOR CONTRIBUTION IN TORT

46.

Plaintiff BEPCO, L.P. re-alleges Paragraphs 1 - 45 as though set forth fully herein.

47.

The Tebow Court ruled that all of the oil and gas operators in the chain of title under the Haas Lease were solidarily liable to the Tebow Plaintiffs in tort.

48.

Louisiana law on solidary liability in tort holds each solidary obligor responsible in proportion to their respective fault. La. Civ. Code art. 1804.

49.

Santa Fe operated and disposed of material in the East Pit area, which the Tebow Plaintiffs claimed resulted in significant surface and subsurface contamination and required remediation and restoration in the amount of approximately $250 million.

50.

BEPCO, L.P. had assigned the Haas Lease and had ceased all operations on the Tebow Plaintiffs' property before the East Pit came into existence. Santa Fe is responsible to BEPCO, L.P. for all amounts paid and expended by BEPCO, L.P. in connection with the Tebow Settlement.

51.

The assignment of rights by the Tebow Plaintiffs to BEPCO, L.P. includes rights not only under the 1938 Haas Lease but also for tort damages. Therefore, BEPCO, L.P. asserts a claim for damages sounding in tort against Santa Fe and its insurers for all monies paid and expended by BEPCO, L.P. under the terms of the Tebow Settlement.

10

923282v.1

**52.**

Plaintiff requests trial by jury.

**WHEREFORE,** after due proceedings are had, Plaintiff BEPCO, L.P. respectfully prays for judgment in its favor and against Santa Fe Minerals, Inc. and its insurers, jointly, severally and in solido:

1.   Holding that BEPCO, L.P. is entitled to indemnification under the Haas Lease and awarding BEPCO, L.P. all monies paid and expended by BEPCO, L.P. under the terms of Tebow Settlement; and

2.   Awarding BEPCO, L.P., as a solidary obligor with Santa Fe Minerals, Inc. in tort and against Santa Fe Minerals, Inc. and the insurer defendants, all amounts paid to the Tebow Plaintiffs or expended by BEPCO, L.P. under the terms of the Tebow Settlement; and

3.   Awarding interest and all cost of these proceedings; and

4.   Awarding all other such relief as the law, equity, and nature of the case may allow; and

11

5.    Ordering trial by jury of all issues in this case.

Respectfully submitted,

Phillip A. Wittmann, 13625
Daria Burgess Diaz, 17928
Jackie M. McCreary, 28676
Of
STONE PIGMAN WALTHER
   WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130-3588
Telephone: (504) 581-3200
Facsimile: (504) 581-3361

Attorneys for BEPCO, L.P.

**PLEASE SERVE**:

**SANTA FE MINERALS, INC.**
Through its agent for service of process:
The Prentice-Hall Corp. System
1006 Hibernia Bank Building
New Orleans, Louisiana 70112

    and

Via the Louisiana Long Arm Statute
La. R.S. 13:3201

**CERTAIN UNDERWRITERS AT LLOYDS, LONDON AND LONDON MARKET
COMPANIES, FOREIGN INSURERS, SUBSCRIBING TO THE POLICIES INSURING
ANDOVER OIL COMPANY, ANDOVER SANTA FE OIL COMPANY, AND/OR SANTA
FE MINERALS, INC. FOR THE YEARS 1964 - 1990**
Through its agent for service of process:
Mendes and Mount
New York, New York

    and

Through the Louisiana Secretary of State

**XYZ INSURANCE COMPANIES**
Through the Louisiana Secretary of State

12

923282v.1

## CERTIFICATE OF SERVICE

I, Kelly M. Dawson, certify that I am not less than 18 years of age, and that service of the **Motion Of Appellant BEPCO, L.P., f/k/a Bass Enterprises Production Company (I) For Consideration Of Supplemental Materials In Connection With Certification Request And (II) To Supplement Record On Appeal** was caused to be made on June 11, 2008, in the manner indicated upon the parties on the attached list.

Under penalty of perjury, I declare that the foregoing is true and correct.

Dated: June 11, 2008

Kelly M. Dawson (No. 4786)

806880.5

# SERVICE LIST

## VIA E-MAIL and HAND DELIVERY

John D. Demmy, Esquire
Stevens & Lee, PC
1105 N. Market Street
7th Floor
Wilmington, DE 19801
jdd@stevenslee.com

Francis A. Monaco, Jr., Esquire
Kevin J. Mangan, Esquire
Womble, Carlyle, Sandridge & Rice, PLLC
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
fmonaco@wcsr.com
kmangan@wcsr.com

Noel C. Burnham, Esquire
Montgomery McCracken
1105 Market Street
Wilmington, DE 19801
nburnham@mmwr.com

David Buchbinder, Esquire
Office of the U.S. Trustee
844 King Street
Suite 2207
Lockbox 35
Wilmington, DE 19801
david.l.buchbinder@usdoj.gov

## VIA E-MAIL and FIRST CLASS U.S. MAIL

Philip G. Eisenberg, Esquire
Mark A. Chavez, Esquire
Locke Liddell & Sapp, LLP
600 Travis Street
3400 JP Morgan Chase Tower
Houston, TX 77002
peisenberg@lockeliddell.com
mchavez@lockeliddell.com

John C. Kilgannon, Esquire
Stevens & Lee, PC
1818 Market Street
Philadelphia, PA 19103
jck@stevenslee.com

Natalie D. Ramsey, Esquire
Montgomery McCracken
123 South Broad Street
Philadelphia, PA 19109-1029
nramsey@mmwr.com

M. Hampton Carver, Esq.
Leann Opotowsky Moses, Esq.
Carver Darden Koretzky Tessier Finn Blossman &
Areaux, L.L.C.
1100 Poydras Street - Suite 3100
New Orleans, LA 70163
carver@carverdarden.com
moses@carverdarden.com

2021479.2