# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| 15375 MEMORIAL CORPORATION, *et al.,* | ) Bankr. Case. No. 06-10859 (KG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| BEPCO L.P., f/k/a | ) |
| Bass Enterprises Production Company, | ) |
| | ) Civil Action No. 08-313 (SLR) |
| Appellant, | ) |
| | ) |
| v. | ) (Consolidation of civil actions 08-313, |
| | ) 314, 318, 319, 321, 322, 325 and 326) |
| 15375 MEMORIAL CORPORATION, *et al.,* | ) |
| | ) |
| Appellees and Cross-Appellants. | ) |

**RESPONSE OF APPELLEES AND CROSS-APPELLANTS 15375 MEMORIAL CORPORATION AND SANTA FE MINERALS, INC. IN OPPOSITION TO BEPCO, L.P. F/K/A BASS ENTERPRISES PRODUCTION COMPANY'S EMERGENCY REQUEST FOR CERTIFICATION FOR DIRECT APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT PURSUANT TO 28 U.S.C. § 158(d)(2)[1]**

Debtors and Debtors in possession 15375 Memorial Corporation ("Memorial") and Santa Fe Minerals, Inc. ("Santa Fe")(collectively, "Debtors"), by their undersigned counsel, hereby respond in opposition to the request of BEPCO, L.P. f/k/a Bass Enterprises Production Company ("Bass") for certification for direct appeal to the United States Court of Appeals for

---

[1] Although Bass has styled their request as an emergency matter it has not actually sought expedited treatment by this Court. Federal Rule of Bankruptcy Procedure 8011, which relates to motions filed in bankruptcy appeals, states that responses to motions may be filed within seven days of service of the motion but that "the district court ... may shorten or extend the time for responding to any motion." This Court's local rule 7.1.2 provides that responses to motions shall be filed within ten days of service of the motion. Accordingly, Debtors are filing this response within the ten day period provided by local rule 7.1.2, as authorized by Federal Rule of Bankruptcy Procedure 8011.

the Third Circuit pursuant to 28 U.S.C. § 158(d)(2) (the "Certification Request"). In support, Debtors respectfully represent as follows:

## I.  PRELIMINARY STATEMENT

1. A direct appeal to the Third Circuit is not warranted in this case for a number of procedural and substantive reasons. First, Bass did not request certification within the deadline established by 28 U.S.C. §158(d)(2)(E), which requires certification requests be made within sixty days of entry of the order from which the appeal is taken. This appeal originates from the Bankruptcy Court's Findings of Fact and Conclusions of Law and related Order entered on February 15, 2008; but Bass did not seek certification until June 4, 2008, well after the sixty day deadline had expired. Accordingly, the Certification Request must be summarily denied for this reason before this Court need consider any other of the facts and circumstances warranting denial of the Certification Request.[2]

2. Bass seeks certification pursuant to a recent amendment of Title 28 relating to bankruptcy matters. As discussed below, Congress acted to provide a vehicle for immediate circuit court review of appeals that require the resolution of a discrete legal, rather than a fact intensive, issue. As is evident from Bass' twenty-seven page Certification Request, the issues raised in this appeal are anything but legal and discrete. Rather, they involve fact-intensive matters for which the Bankruptcy Court received and weighed the evidence and judged the credibility of the sole witness at trial. The gist of Bass' appeal is that the Bankruptcy Court

---

[2]   That Bass sought reconsideration of the Bankruptcy Court's February 15, 2008, Findings of Fact and Conclusions of Law and related Order should not, in effect, extend Bass' time to seek certification here. Bass' motion for reconsideration was not one based on a request for clarification of the Bankruptcy Court's decision. Rather, Bass simply advised the Bankruptcy Court that it was wrong and asked the Bankruptcy Court to change its mind. That Bass voluntarily chose to do so should not extend the 60 day rule, which is designed to ensure that appeals of a truly exigent nature make it to the court of appeals in a timely fashion. Bass has characterized its Certification Request as an emergency matter but has neither acted within the time frame required by 28 U.S.C. § 158 nor has it actually sought expedited treatment of its request in this Court.

2

failed to properly apply the extensive factual record to the controlling law. In short, these factually intensive appeals are not the type that Congress intended to be certified for immediate circuit court review.

3. It is equally clear that Bass cannot satisfy any of the criteria established under 28 U.S.C. §158(d)(2)(A)(i)-(iii) to certify a direct appeal. Indeed, this appeal does not involve a question of law for which there is no controlling Third Circuit precedent and does not require a reconciliation of conflicting lower court opinions. Rather, this appeal requires a straightforward application of an extensive factual record to controlling law. Moreover, this appeal does not implicate matters of public importance inasmuch as they arise out of what has essentially been a two party dispute imposed on Debtors by Bass since the inception of Debtors' bankruptcy cases.

4. Finally, certification of this appeal will not advance the progress of the bankruptcy cases and, in fact, will impede the bankruptcy cases and likely will prove to be a waste of judicial resources. Debtors are in the process of seeking confirmation of their First Amended Joint Plan of Liquidation (the "Plan") which, if confirmed, would undoubtedly moot this appeal. Indeed, if the Plan is confirmed, this appeal likely would be subsumed in any subsequent appeal taken from the confirmation order. Thus, a direct appeal would be at the expense of judicial economy. Moreover, certification to the Third Circuit would serve as an end-run around, and deprive Debtors of the opportunity to attempt to resolve the issues raised in this appeal through the District Court's mandatory mediation program. For these reasons, as well as those set forth below, the Certification Request must be denied.

## II. FACTUAL BACKGROUND

5. On August 16, 2006 (the "Petition Date"), Debtors commenced their bankruptcy cases by filing voluntary petitions for relief under Chapter 11 of Title 11 of the

United States Code (the "Bankruptcy Code"). Debtors filed for bankruptcy protection with the ultimate objective of confirming a plan of liquidation.

6.   On September 8, 2006, Debtors commenced an adversary proceeding against Bass (the "Adversary") and on that date Santa Fe also filed its *Motion for Preliminary Declaratory and Injunctive Relief* (the "Injunction Motion"). Among the relief sought by Santa Fe in the Adversary was (i) a declaration that (x) any claims Bass sought to assert against the GlobalSantaFe Entities[3] on the basis of "alter ego" or "veil piercing" or "single business enterprise" or similar theories (the "Alter Ego Claims") and (y) any claims that Bass sought to assert with respect to insurance policies or the proceeds thereof that may be available to provide coverage for claims or losses arising out of or relating to the *Tebow* Action[4] (the "Insurance Claims") were property of Santa Fe's bankruptcy estate under Section 541 of the Bankruptcy Code; and (ii) injunctive relief enjoining Bass from taking any actions to assert or prosecute the Alter Ego Claims or the Insurance Claims. Pursuant to the Bankruptcy Court's order of October 24, 2006 (Adversary Docket No. 27), the GlobalSantaFe Entities were permitted to intervene in the Adversary.

7.   On September 29, 2006, Bass filed: (a) Motion of BEPCO, L.P. f/k/a Bass Enterprises Production Company, For Order (i) Dismissing Debtors' Chapter 11 Cases For Bad Faith, Cause Under 11 U.S.C. § 1112(b) and Ineligibility Under 11 U.S.C. § 109, (ii) Dismissing

---

[3]   The GlobalSantaFe Entities are GlobalSantaFe Corporation ("GSF"), Entities Holdings, Inc. ("EHI"), and GlobalSantaFe Corporate Services, Inc. EHI is the parent company of Memorial. GSF was the ultimate parent of EHI.

[4]   The phrase "*Tebow* Action" refers to the litigation captioned *William M. Tebow, et al., v. Bradex Oil & Gas, Inc., et al.*, Docket No. 2005-7728, in Louisiana State Court, in which Bass and Santa Fe each were defendants until Santa Fe was dismissed by the plaintiffs after commencement of the bankruptcy cases. Subsequent to commencement of the bankruptcy cases Bass settled with the plaintiffs in the *Tebow* action, and now asserts claims against Santa Fe and Memorial based on its settlement of the *Tebow* action.

or Suspending Debtors' Chapter 11 Cases Under 11 U.S.C. § 305(a)(1), (iii) Converting Debtors' Chapter 11 Cases to Cases Under Chapter 7 of the Bankruptcy Code Pursuant to 11 U.S.C. § 1112(b), (iv) Appointing A Trustee Pursuant to 11 U.S.C. § 1104(a), or (v) Appointing An Examiner Pursuant to 11 U.S.C. § 1104(c), and a related memorandum of law in support thereof (Bankr. Docket Nos. 21 & 22) (the "Dismissal/Conversion Motion"); and (b) Motion For Modification Of The Automatic Stay Under 11 U.S.C. § 362, and a related memorandum of law in support thereof (Bankr. Docket Nos. 23 & 26) (collectively, the "Stay Relief Motion," and together with the Dismissal/Conversion Motion, the "Bass Motions").

8. By the Stay Relief Motion, Bass requested relief from the automatic stay pursuant to 11 U.S.C. §362 to permit it, *inter alia,* to pursue its claims against Santa Fe arising out of or relating to the *Tebow Action* and to pursue claims under the Louisiana direct action statute against insurers that issued liability policies to or which arguably cover claims against Santa Fe.

9. The Injunction Motion and the Bass Motions (the "Trial Issues") were tried to the Bankruptcy Court on September 17 and 18, 2007[5] (the "Trial"); and the parties filed extensive proposed findings of fact and conclusions of law and post-trial briefs (totaling over 300 pages of material) concluding on November 2, 2007.

10. On February 15, 2008, the Bankruptcy Court entered its Findings of Fact and Conclusions of Law and related Order with respect to the Trial Issues (collectively, the "February 15, 2008 Order"). Therein, the Court denied the Dismissal/Conversion Motion and the Injunction Motion, but granted the Stay Relief Motion.[6]

---

[5] An earlier hearing on the Bass Motions was held on October 19, 2006.

[6] The Bankruptcy Court's ruling on the Stay Relief Motion was subject to its later determination with respect to the appropriate forum for the litigation contemplated by the Bankruptcy Court in

11. On February 25, 2008, Debtors filed a motion for reconsideration, seeking clarification of four discrete points in respect of the Bankruptcy Court's February 15, 2008, Order. On that date Bass filed a motion for reconsideration of the Bankruptcy Court's denial of the Dismissal/Conversion Motion, asserting, in effect, that the Bankruptcy Court had not made the correct decision in denying dismissal of the bankruptcy cases and asking the Bankruptcy Court to change its mind on such ruling.

12. On April 16, 2008, the Bankruptcy Court issued its *Memorandum Opinion On Reargument* and related Order (collectively, the "Reconsideration Order") pursuant to which the Bankruptcy Court : (i) granted the Debtors' Reconsideration Motion; and (ii) denied the Bass Reconsideration Motion.

13. On April 21, 2008, the Bankruptcy Court entered an Order denying the Debtors' request for a stay pending appeal with respect to that portion of the February 15, 2008 Order granting Bass relief from the automatic stay to pursue its claims against Santa Fe.[7]

14. On April 28, 2008, Bass filed notices of appeal from (i) the February 15, 2008 Order; and (ii) the Reconsideration Order. Bass did not request a stay pending appeal either from the Bankruptcy Court or this Court with respect to any of the issues raised in its notices of appeal.

15. On May 7, 2008, the Debtors and the GlobalSantaFe Entities each filed notices of cross-appeal with respect to the portion of the Bankruptcy Court's February 15, 2008 Order granting relief from stay for Bass.

---

connection with its decision to grant stay relief to Bass. The Bankruptcy Court made its decision on the forum issue by its Order of April 16, 2008, and on April 29, 2008, pursuant to the Bankruptcy Court's granting of the Stay Relief Motion, Bass commenced litigation against Santa Fe and certain of its insurers in Louisiana state court.

[7] Notably, this Order authorized Debtors to file an amended Plan at anytime.

16. On June 2, 2008, the Debtors filed their Plan and related Disclosure Statement. A hearing to address the adequacy of the Disclosure Statement is presently scheduled for June 27, 2008.

17. On June 4, 2008, Bass filed the Certification Request with this Court.

### III. ARGUMENT

#### A. THE CERTIFICATION REQUEST WAS UNTIMELY AND SHOULD BE SUMMARILY REJECTED

18. The Certification Request should be rejected summarily because Bass failed to pursue certification within the deadlines established by 28 U.S.C. § 158(d)(2)(E), which provides as follows:

> (E) Any request under subparagraph (B) for certification shall be made *not later than 60 days* after the entry of the judgment, order or decree.

28 U.S.C. §158(d)(2)(E)(emphasis supplied).

19. This appeal originates from the Bankruptcy Court's February 15, 2008 Order; but the Certification Request was not filed until June 4, 2008, more than sixty (60) days thereafter. All that Bass' motion for reconsideration did in respect of the February 15, 2008 Order was extend the time for Bass to appeal therefrom. But Bass' action in seeking reconsideration was entirely voluntary, and inconsistent with the position it now advocates that this appeal is of a character requiring emergency treatment and the bypassing of this Court. The 60 day rule of 28 U.S.C. §158(d)(2)(E) exists to ensure that appeals that truly should go directly to a court of appeals do so, and to avoid tactical litigation maneuvering of the sort here being perpetrated by Bass. The Bankruptcy Court's Reconsideration Order cannot be considered as creating a new 60 day period for Bass to seek certification because a reconsideration motion and

order does not change the basis of the appeal – which is the original order, from which reconsideration was sought, and from which an appeal is correctly taken. Accordingly, the Certification Request should be denied summarily.

### B. BASS CANNOT SATISFY ANY OF THE REQUIREMENTS FOR CERTIFICATION OF A DIRECT APPEAL TO THE THIRD CIRCUIT

#### 1. The Legislative History For Section 158(d)(2)(A) Clearly Demonstrates That Congress Did Not Intend For Direct Circuit Court Review Of Fact-Intensive Appeals

20. The legislative history relating to the enactment of Section 158(d)(2)(A) demonstrates that this appeal is not of the type that Congress envisioned being certified directly to the Third Circuit.

21. On April 20, 2005, President Bush signed the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") into law. Among other things, BAPCPA included a provision, codified at 28 U.S.C. § 158(d)(2)(A), authorizing the direct appeal of a bankruptcy court order to the appropriate Circuit Court of Appeals under limited circumstances.[8] That provision provides as follows:

> (2)
>> (A)
>> The appropriate court of appeals shall have jurisdiction of appeals described in the first sentence of subsection (a) if the bankruptcy court, the district court, or the bankruptcy appellate panel involved, acting on its own motion or on the request of a party to the judgment, order, or decree described in such first sentence, or all the appellants and appellees (if any) acting jointly, certify that –
>>
>>> (i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;

---

[8] Even if standards of the statute are satisfied, the court of appeals may, in its discretion, decline to exercise jurisdiction over a direct appeal. *Weber v. U.S. Trustee*, 484 F.3d 154, 157 (2d Cir. NY 2007).

        (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or

        (iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken;

and if the court of appeals authorizes the direct appeal of the judgment, order, or decree.

28 U.S.C. §158(d)(2)(A).

22.     The import of this statute is clear: appeals that raise novel questions of law, concern matters of public importance or necessitate a ruling to curtail needless litigation may be heard immediately by the circuit court.

23.     Because the certification procedures in § 158(d)(2)(A) have been in effect for only a few years, the case law interpreting the statute is very limited. However, in addition to what Debtors submit is the plain meaning of the statute, its legislative history clearly demonstrates that Congress did not intend for certification of direct appeals where (as here) the appeal is fact intensive and does not involve novel legal questions. *See Weber,* 484 F.3d at 158.

24.     Rather, Congress believed that a direct appeal would be appropriate only where circuit courts were being asked to address discrete and controlling questions of law, not appeal issues heavily dependent upon the particular facts of the case. *See* H.R. Rep. No. 109-31, at 148-49, U.S. Code Cong. & Admins. News 2005, 88, 206 (noting that Congress did not intend for § 158(d)(2) to be used to facilitate direct appeals of "fact-intensive issues" and that such factual issues should be addressed by the district court).

25.     Courts have recognized that appellate review by a district court provides a material benefit to the appellate process. Indeed, in the *Weber* opinion, the Second Circuit explained:

9

> In many cases involving unsettled areas of bankruptcy law, review by a district court would be most helpful. Courts of appeal benefit immensely from reviewing the efforts of the district court to resolve such questions. Permitting direct appeals too readily might impede the development of a coherent body of bankruptcy case law.

*Weber*, 484 F. 3d. at 160 (citations omitted).

26. While the expeditious resolution of appeals is one of the driving factors behind the enactment of § 158(d)(2), Congress did not intend to elevate speed over the ultimate objective of appellate review – answering questions wisely and well. *Weber,* 484 F.3d at 160. In addition, because district courts tend to resolve bankruptcy appeals faster than circuit courts, the cost in speed of permitting district court review is likely to be small. *Weber,* 484 F.3d at 160. (citations omitted). By creating a discretionary framework, Congress recognized that while cases that involve purely legal questions of controlling law should proceed expeditiously to a circuit court, other cases should percolate through the normal appellate channel which would "cast more light on the issue and facilitate a wise and well informed decision." *Weber,* 484 F.3d at 161.

### 2. This Is Not An Appeal That Should Be Certified To The Third Circuit Under 28 U.S.C. § 158

27. Application of the elements of Section 158(d)(2)(A) that must be satisfied to certify a direct appeal to the Third Circuit to the present case indicates that none of those elements are present in this appeal. This appeal does not turn on a discrete question of controlling law and, instead, involves the application of an extensive factual record (created over the course of three days of testimony and numerous exhibits) to the Bankruptcy Code and well established case law. In addition, these appeals arise out of litigation between the Debtors and Bass and do not implicate matters of public importance. There are no conflicting decisions from the lower courts in this Circuit that must be reconciled. Finally, because the Debtors are

vigorously pursuing confirmation of the Plan, these appeals will undoubtedly be mooted once the Plan is confirmed by the Bankruptcy Court. For all of these reasons, the Certification Request should be denied.

> *(i) There Are No Unresolved Questions Of Controlling Law That Must Be Resolved By The Third Circuit*

28.    In its February 15, 2008 Order and the Reconsideration Order, the Bankruptcy Court reviewed the standard for dismissal of a bankruptcy case under Section 1112(b) of the Bankruptcy Code and ruled that: (i) the Debtors' bankruptcy cases should not be dismissed for cause pursuant to Section 1112(b); and (ii) the bankruptcy cases were not filed in bad faith. The thrust of Bass's appeal is that the Bankruptcy Court refused to dismiss the Debtors' cases even though the Court made a number of factual findings indicating that the Debtors are no longer operating as going concerns.[9]  Indeed, at pages 9 through 11 of the Certification Request, Bass references twenty (20) detailed factual findings which, according to Bass, demonstrate that the Bankruptcy Court erred by not dismissing the cases. In short, Bass's argument is that the Bankruptcy Court misapplied the facts of record to the controlling law.

29.    It is clear that Bass' appeal does not seek appellate review of a pure question of law or a resolution of conflicting lower court opinions. Rather, Bass' repeated references to the extensive factual record clearly demonstrate that Bass believes that the Bankruptcy Court misapplied the facts of record to the controlling case law. As the text of §158(d)(2)(A), and the legislative history relating to that provision clearly indicate, a factually intensive appeal of this nature is not ripe for immediate certification to the Third Circuit.

---

[9]    The Debtors have never disputed that they are no longer conducting business operations, a fact which does not impede the Debtors' ability to file their Chapter 11 petitions. *See* February 15 Order, p. 55. (citing authority for the proposition that liquidation is a proper purpose for chapter 11 proceedings).

11

30. Faced with the indisputable conclusion that the present case does not fit within the letter or spirit of §158(d)(2)(A), Bass attempts to manufacture an unresolved question of law in this routine appeal by constructing a hypothetical statutory construction question regarding Section 1112(b).

31. The lynchpin of Bass' statutory construction argument regarding the proper interpretation of Section 1112(b) of the Bankruptcy Code is based upon Bass' flawed interpretation of the Reconsideration Order. Bass suggests that the Bankruptcy Court determined that there was sufficient "cause" under Section 1112(b)(4)(A) of the Bankruptcy Code to dismiss the Debtors' bankruptcy cases. However, closer scrutiny of the Reconsideration Order indicates that although the Bankruptcy Court recognized that: (i) Debtors' estates experienced substantial and continuing diminution; and (ii) Debtors did not have a reasonable likelihood of rehabilitation, the Bankruptcy Court concluded that the existence of those factors were "irrelevant" given the unique circumstances of the case because (x) Debtors were not operating and were not sustaining losses; and (y) creditors were not being prejudiced by the continuation of the bankruptcy cases. *See* Reconsideration Order, p. 6.

32. In reconciling Section 1112(b)(1) with Section 1112(b)(2), the Bankruptcy Court concluded that even if a court determines that cause for dismissal is determined under Section 1112(b)(4)(A), the Court has discretion to deny the request for dismissal if it concluded that there are special circumstances that militate against dismissal. *See* Reconsideration Order, p. 6. In short, the Bankruptcy Court did not wrestle with competing interpretations of Section 1112 or address conflicting precedent regarding those provisions as Bass hypothesizes. Accordingly, Bass' suggestion that this provision presents a compelling reason to authorize a direct appeal completely misses the mark.

33. Next, Bass argues that the Bankruptcy Court erred by failing to dismiss the bankruptcy cases on good faith grounds. In support of its argument, Bass states that the Bankruptcy Court ignored the Third Circuit's opinion in *NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc.,* 384, F.3d. 108 (3d Cir. 2004); and *In re: SGL Carbon Corp.*, 200 F.3d. 154 (3rd Cir. 1999). *See* Certification Request, pp. 21-22.

34. This representation is a gross misstatement given that the Reconsideration Order expressly stated that the Bankruptcy Court considered *Integrated Telecom* and concluded that its holding was consistent with that Third Circuit precedent:

> The Court has carefully considered the Third Circuit's holding in *Integrated Telecom*, a leading case involving dismissal for cause. [internal citations omitted]. The Decision is not inconsistent with that ruling.

*See* Reconsideration Order, p. 7.

35. The Bankruptcy Court distinguished *Integrated Telecom* observing that unlike the bankruptcy cases in that case, Debtors' cases produced material benefits to Debtors and their creditors including the: (i) inventory and assessment of insurance policies that may provide coverage for claims asserted against the Debtors; and (ii) development of the Plan, which, the Bankruptcy Court determined, has a reasonable likelihood of being confirmed with appropriate modifications. *See* Reconsideration Order, pp. 7-8.

36. Thus, the essence of Bass' argument is not that the Bankruptcy Court did not apply a controlling Third Circuit decision, but rather that it misapplied the facts of record to that precedent. Because the question is fact intensive, the issue of good faith is most appropriately left to the sound discretion of the District Court. *Accord*, *Weber*, 484 F.3d at 158 (noting that direct appeals are not appropriate where resolution is heavily dependent upon the facts of the case).

SL1 823019v1/101674.00002

> *(ii) Resolution Of This Appeal Does Not Implicate Matters Of Public Importance*

37. As set forth above, an appeal may be certified for direct appellate review by a circuit court if the issues involved implicate matters of public importance. *See* 28 U.S.C. § 158(d)(2)(a)(1). No such concerns are raised by the instant appeal which arises out of bankruptcy cases that were filed by two corporations that were no longer conducting business operations as of the Petition Date. This appeal arises out of what has essentially been a two-party dispute between the Debtors and Bass. There are no employee constituencies or other interested parties that have been active in these cases and, consequently, no discernable issues of public interest that must be immediately address by the Third Circuit.

38. Once again, Bass attempts to construct an argument where none exists. In short, Bass contends that the Third Circuit should immediately consider this appeal to stem the tide of bad faith bankruptcy filings.[10] *See* Certification Request, p. 22-23. However, even assuming, *arguendo,* that bad faith bankruptcy filings rise to the level of "public importance," the Bankruptcy Court has ruled that the instant cases were not filed in bad faith. *See* February 15 Order, p. 52. Thus, Bass' public policy argument is based upon a foundation that has been soundly rejected by the Bankruptcy Court.

> *(iii) There Are No Conflicting Decisions That Must Be Reconciled To Resolve The Appeal*

39. It is clear from the Certification Request that Bass cannot demonstrate the existence of conflicting decisions from the lower courts within the Third Circuit that must be reconciled to resolve this appeal. Again, Bass attempts to construct a statutory construction

---

[10] Bass did not articulate a reason why the District Court could not effectively perform this function.

conflict relating to Section 1112(b); however, it is clear that the Bankruptcy Court did not misinterpret that provision.

40. With respect to the good faith argument, Bass' representations regarding the Bankruptcy Court's analysis of the good faith issue are at odds with the Reconsideration Order which states that the Bankruptcy Court analyzed the Third Circuit's opinion in *Integrated Telecom* and concluded that it was factually distinguishable. *See* Reconsideration Order, p. 7-8. Bass' representations that the Bankruptcy Court failed to consider *Integrated Telecom* as controlling legal authority are patently false.

41. Finally, Bass points to conflicting decisions from courts in other circuits on the issue of whether a dissolved corporation is eligible to file a Chapter 11 petition under Section 109 of the Bankruptcy Code. The Bankruptcy Court carefully considered the eligibility issue and concluded that Santa Fe, a dissolved Wyoming corporation, was an eligible Chapter 11 debtor. *See* February 15 Order, pp. 50-51. The Bankruptcy Court reasoned that under Wyoming state law, Santa Fe maintained its corporate existence to wind up its business affairs. *See* February 15 Order, p. 51. Bass' references to a decision from the Second Circuit simply bear no weight on that determination.

> (iv) *A Direct Appeal Will Not Advance The Process Of These Chapter 11 Cases And Will Waste Judicial Resources*

42. Certifying Bass' appeal to the Third Circuit likely could prove to be a waste of judicial resources. Indeed, on June 2, 2008, Debtors filed their Plan and Disclosure Statement. A hearing on the Disclosure Statement is presently scheduled for June 27, 2008. If the Disclosure Statement is approved, Debtors intend to promptly pursue confirmation of the Plan. Debtors submit that confirmation of the Plan likely would occur prior to any decision is

15

reached on the pending appeals; and, if the Plan is confirmed, this appeal will likely be subsumed in a broader appeal of the confirmation order that Bass undoubtedly would pursue.

43. Moreover, proceeding with this appeal in the District Court will allow the parties to take full advantage of the District Court's mandatory mediation procedures which, in turn, may obviate the need for continued litigation. A direct appeal will simply lead to briefing and more litigation in an appeal, the issues of which likely can and will be addresses in the context of a plan confirmation process.

WHEREFORE, Debtors respectfully request the entry of an Order denying the Certification Request and request such other and further relief as this Court deems necessary and just.

Dated: June 12, 2008
Wilmington, Delaware

Respectfully submitted,

STEVENS & LEE, P.C.

/s/ *John D. Demmy*
John D. Demmy (Bar No. 2802)
1105 North Market Street, 7th Floor
Wilmington, DE  19801
Telephone: (302) 425-3308
Telecopier: (610) 371-8515
Email: jdd@stevenslee.com

-and-

John C. Kilgannon
1818 Market Street, 29th Floor
Philadelphia, PA 19103
Telephone:  (215) 751-1943
Facsimile:  (610) 371-7954
Email: jck@stevenslee.com

*Attorneys for the Debtors*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on this day of June 13, 2008, true and correct copies of the foregoing *Response Of Appellees And Cross-Appellants 15375 Memorial Corporation And Santa Fe Minerals, Inc. in Opposition to BEPCO, L.P. F/K/A Bass Enterprises Production Company's Emergency Request For Certification For Direct Appeal To The United States Court Of Appeals For The Third Circuit Pursuant To 28 U.S.C. § 158(d)(2)* were served on the parties listed below, electronically through the Court's CM/ECF System, and via electronic mail.

| | |
|---|---|
| David Buchbinder, Esq.<br>Office of the U.S. Trustee<br>844 King Street, Suite 2207<br>Lockbox 35<br>Wilmington, DE 19801 | Gregory W. Werkheiser, Esq.<br>Kelly Dawson, Esq.<br>Morris, Nichols, Arsht & Tunnell LLP<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899-1347 |
| Francis A. Monaco, Jr., Esq.<br>Kevin Mangan, Esq.<br>Womble Carlyle Sandridge & Rice, PLLC<br>222 Delaware Avenue<br>15th Floor<br>Wilmington, DE 19901 | Philip Eisenberg, Esq.<br>Mark Chavez, Esq.<br>Locke Liddell & Sapp LLP<br>3400 JPMorgan Chase Tower<br>600 Travis<br>Houston, TX 77002 |
| Hampton Carver, Esq.<br>Leann Opotowsky Moses, Esq.<br>Carver, Darden, Koretzky, Tessier,<br>Finn, Blossman & Areaux LLC<br>Energy Centre<br>1100 Poydras Street, Suite 2700<br>New Orleans, LA 70163 | |

/s/ *John D. Demmy*
John D. Demmy

SL1 825184v1/101674.00002