**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| 15375 MEMORIAL CORPORATION, *et al.*, | ) | Bankr. Case. No. 06-10859 (KG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| BEPCO L.P., f/k/a | ) | |
| Bass Enterprises Production Company, | ) | |
| | ) | Civil Action No. 08-313 (SLR) |
| Appellant, | ) | |
| | ) | |
| v. | ) | (Consolidation of civil actions 08-313, |
| | ) | 314, 318, 319, 321, 322, 325 and 326) |
| 15375 MEMORIAL CORPORATION, *et al.*, | ) | |
| | ) | |
| Appellees and Cross-Appellants. | ) | |
| | ) | |

**RESPONSE OF GLOBALSANTAFE ENTITIES IN OPPOSITION TO BEPCO, L.P.,
F/K/A BASS ENTERPRISES PRODUCTION COMPANY'S EMERGENCY REQUEST
FOR CERTIFICATION FOR DIRECT APPEAL TO THE UNITED STATES COURT
OF APPEALS FOR THE THIRD CIRCUIT PURSUANT TO 28 U.S.C. § 158(d)(2)**

GlobalSantaFe Corporation, GlobalSantaFe Corporate Services, Inc., and Entities

Holdings, Inc. (collectively "GlobalSantaFe Entities"), by and through their undersigned counsel,

hereby submit this Response in Opposition to BEPCO, L.P., f/k/a Bass Enterprises Production

Company's Emergency Request for Certification for Direct Appeal to the United States Court of

Appeals for the Third Circuit Pursuant to 28 U.S.C. § 158(d)(2) ("Request to Certify") and

respectfully show the Court as follows:

**INTRODUCTION**

1.  28 U.S.C. 158(d)(2) provides, in relevant part:

> The appropriate court of appeals shall have jurisdiction of appeals described in the
> first sentence of subsection (a) if the bankruptcy court, the district court, or the

HOU 0015838.00162: 1330507v1
WCSR 3919537v1

bankruptcy appellate panel involved, acting on its own motion or on the request of a party to the judgment, order, or decree described in such first sentence, or all the appellants and appellees (if any) acting jointly, certify that –

(i)      the judgment, order, or decree involves *a question of law* as to which there is *no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States*, or involves a matter of public importance;

(ii)     the judgment, order, or decree involves *a question of law* requiring resolution of conflicting decisions; or

(iii)    an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken; and if the court of appeals authorizes the direct appeal of the judgment, order, or decree.

(emphasis added)

2.  28 U.S.C. 158(d)(2)(D) further provides that an appeal, even if granted, under this section:

. . .does not stay any proceeding of the bankruptcy court, the district court, or the bankruptcy appellate panel from which the appeal is taken, unless the respective bankruptcy court, district court, or bankruptcy appellate panel, or the court of appeals in which the appeal is pending, issues a stay of such proceeding pending the appeal.

3.  Based upon a plain reading of the foregoing sections, it is clear that BEPCO is not entitled to certification of this appeal, pursuant to § 158(d)(2).

4.  In its Request to Certify, BEPCO maintains that certification is necessary: (1) to protect BEPCO from a "substantial risk that BEPCO's ability to obtain meaningful appellate review" has been compromised;  (2) to address "no less than three (3) dispositive questions of law as to which there is either no controlling decision of the Third Circuit or the Supreme Court;" and (3) to vindicate the public interest.  However, a review of the record in this case illustrates that none of these positions are supportable, much less sufficient to warrant certification of an expedited appeal.

2

5.   As a preliminary matter, any risk of BEPCO's appeal being mooted via the Debtors' plan process moving forward should have been addressed in a request by BEPCO for a stay pending appeal  – a stay BEPCO never sought – not via a Request to Certify.  Relatedly to the extent the Debtors' plan process moves through confirmation, the GlobalSantaFe Entities would submit that such progress is a strong indicator that the dismissal BEPCO continues to pursue is unwarranted in these cases.

6.   Furthermore, if BEPCO is interested in expediency, an appeal in this Court, not the Third Circuit, would be preferable.  *Webber v. United States Trustee,* 484 F.3d 154, 158 (2d Cir. 2007) (stating: "district courts tend to resolve bankruptcy appeals faster than the courts of appeals.").

7.   Further still, rather than identifying questions upon which there is no controlling decision in this circuit, BEPCO simply identifies issues, the results of which it is dissatisfied with.  That, the GlobalSantaFe Entities would submit, is a far cry from an issue upon which there is no controlling decision.  Indeed, in certain instances, BEPCO itself cites to controlling authority on the very issues it maintains require review by the Third Circuit. (*See e.g.,* Request to Certify at ¶ 35). Lastly, as set forth below, the public interest is not served by certifying these matters to the Third Circuit, but rather by allowing them to develop in this Court.  *Weber,* 484 F.3d at 160-61 (stating: "In many cases involving unsettled areas of bankruptcy law, review by the district court would be most helpful. Courts of appeals benefit immensely from reviewing the efforts of the district court to resolve such questions. Permitting direct appeal too readily might impede the development of a coherent body of bankruptcy case-law.").

8.   In sum, the appeals before this Court do not satisfy the requires of § 158(d)(2) because: (1) the matters at issue are fact-intensive issues, not pure questions of law; (2) the questions presented do not involve questions of law that require resolution by the Third Circuit at this time;

HOU 0015838.00162: 1330507v1

(3) resolution of this appeal by the Third Circuit is unlikely to materially advance the progress of these cases; and (4) the public interest is not served by certification of this appeal, but rather by allowing this appeal to proceed through normal channels. When due deference is given to the Bankruptcy Court's factual findings and consideration is given to the fact-intensive nature of this appeal, which is evidenced by BEPCO's fourteen pages of introduction and factual background, as well as its one-hundred pages of attachments, which include the Bankruptcy Court's seventy-nine page Findings of Fact and Conclusions of Law, it becomes clear that this is not the type of case that Congress intended to be certified for direct appeal to the circuit court, pursuant to § 158(d)(2). *See* H.R. Rep. No. 109-31, at 148-49, U.S. Code Cong & Admins. News 2005, 88, 206 (noting that Congress did not expect that § 158 would be used to facilitate direct appeal of "fact-intensive issues," but rather "anticipated that ... [for such issues] district court judges or bankruptcy appellate panels" would suffice).

9.  Accordingly, the GlobalSantaFe Entities respectfully request that the Court deny BEPCO's Request to Certify.[1]

## FACTUAL BACKGROUND

### A.    The Debtors

10. Debtor 15375 Memorial Corporation ("Memorial") is a Delaware corporation originally formed on October 1, 1981, in good standing under Delaware law, and is the sole shareholder of Debtor Santa Fe Minerals, Inc. ("Santa Fe") (collectively "Debtors").[2] Santa Fe was a Wyoming corporation, the predecessor of which was formed in 1954. During its existence, Santa Fe

---

[1] As an additional basis for denying BEPCO's Request to Certify, the GlobalSantaFe Entities' join in Debtors' argument that BEPCO's Request to Certify is untimely and, therefore, should be summarily denied.

[2]  Memorial was dissolved on June 27, 2001, but its dissolution was revoked on June 22, 2004, by the filing of a Certificate of Revocation of Dissolution with the Delaware Secretary of State. Memorial's revoked dissolution has no effect on its current status as a Delaware corporation in good standing. *See* 8 Del. C. § 311.

engaged in a number of oil and gas operations.   After a several year asset liquidation and wind-up process commencing in the 1990s involving its then known assets and liabilities, Santa Fe dissolved in December 2000 pursuant to an Agreement and Plan of Liquidation dated December 1, 2000, and Articles of Dissolution filed with the Wyoming Secretary of State on December 8, 2000.[3]

11. Although notice of Santa Fe's dissolution could have been made promptly upon Santa Fe's dissolution, Debtors discovered in 2005 that notice of dissolution probably had not been given in December 2000.   Notice of Santa Fe's dissolution was subsequently effected in accordance with Wyoming dissolution law on August 4, 2006, when Santa Fe published notification of its dissolution in the Wyoming Tribune-Eagle.[4]   Under Wyoming corporate law, any unknown claims against Santa Fe will be forever barred unless asserted by August 4, 2008, two (2) years after the publication of the Tribune-Eagle Notice.

12. Because of the Santa Fe's delay in publishing notice of its dissolution, it maintained significant exposure with respect to the liabilities discussed below that necessitated the filing of these bankruptcy cases.

### B.      The Bankruptcy Cases

13. On August 26, 2006 (the "Petition Date"), Santa Fe and Memorial Corporation filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States

---

[3]  A dissolving company is required under Wyoming law to give notice of its dissolution in a newspaper of general circulation in the county in which the company's registered office is located.   Because it was unaware whether such had been done previously, on August 4, 2006, Santa Fe published notification of its dissolution in the Wyoming Tribune-Eagle, a newspaper of general circulation in Laramie County, Wyoming, which is the county where Santa Fe's registered office was located.  Under Wyoming corporate law, any currently unknown claims against Santa Fe will be forever barred unless they are asserted according to the terms of the notice by August 4, 2008, two (2) years after the publication of the notice.  WYO. STAT. § 17-16-1407.

[4]  Under the Wyoming dissolution statute publication notice must be made in a newspaper of general circulation in the county where the dissolved company's registered office was located.   The Wyoming Tribune-Eagle is a newspaper of general circulation in Laramie County, Wyoming, where Santa Fe's registered office was located.

HOU 0015838.00162: 1330507v1

Bankruptcy Court for the District of Delaware. These petitions were filed, in large part, in an effort to address several unliquidated, contingent liabilities of the Debtors in one central forum, rather than in piecemeal litigation throughout the country. These liabilities are discussed in more detail below.

### C.    Pre-Petition Litigation and Potential Claims

14. While BEPCO disingenuously represents to this Court that it is "by far the largest of the Debtors' handful of non-insider creditors" and that the Debtors have only a "handful of non-insider creditors," the record in this case reflects otherwise.

15. As reflected in the Debtors' schedules and in the various filings in the Bankruptcy Court, pre-petition, the Debtors faced the following liabilities:

- **The *Ellison* Action:** After Santa Fe's dissolution the action *Jackie Eugene Ellison, et al. v. FPC Disposal, Inc., et al.*, Case No. CJ-99-151-01, was filed in Oklahoma state court in 2001 (the "*Ellison* Action"). In the *Ellison* Action, plaintiffs alleged that an entity known as FPC Disposal had designed, maintained and operated a facility in a manner that damaged plaintiffs' land. Santa Fe was among the top 5 or 10 defendants, by percentage of loads delivered, that had disposed of materials at the facility.

- **The *Tebow* Action:** In 2005, *William M.* Tebow*, et* al*., v. Bradex Oil & Gas, Inc., et al.*, Docket No. 2005-7728 (the "*Tebow* Action") was filed in Louisiana state court, in which the plaintiff landowners sued BEPCO, Santa Fe, and at least sixteen other oil company defendants seeking damages of approximately $320 million, plus punitive damages. Santa Fe and/or its predecessor Andover Oil Company ("Andover") operated on the *Tebow* property from 1974 to 1990. Santa Fe sold its interest in the *Tebow* property to PNP Petroleum ("PNP") in April, 1990. BEPCO and Santa Fe are in the same leasehold chain of title for certain parcels of the property at issue in the *Tebow* Action.

- **The *Harris* Action and Related EPA and California Water Board Environmental Matters**: On July 13, 2006, Memorial was named as a defendant in a personal injury lawsuit *Wyomania Harris, et al. v. The Ratkovich Company et al.*, Case No. BC35585, in California state court (the "*Harris* action"). Memorial's involvement in the *Harris* Action relates to the ownership by a legacy Santa Fe company in the 1930s or 1940s of allegedly contaminated property located in Alhambra, California (the "California Property"). In addition, for a few years prior and as of commencement of the Bankruptcy Cases, the California Property was subject to pending investigations by the EPA and the California Water Board. The California Property is located above an EPA Superfund site known as the San Gabriel Valley, Area 3, Superfund site. On August 19, 2003, the EPA sent a request for information under Section 104 of CERCLA to Santa Fe International

Corporation inquiring about the history of the California Property and other questions about its environmental condition. To the best of its knowledge, this investigation has not yet been concluded.

- **The *Sinz* and *Troia* Actions:** As of the Petition Date Memorial was a party in two wrongful death asbestos suits pending in California State Court. In *Patricia Sinz et al. v. Allied Packing, Inc. et al.*, Alameda County Superior Court, California, Case No. RG 04 139532 (the "*Sinz* Action"), plaintiffs sued J. H. Pomeroy & Co., Inc., a Washington corporation ("Pomeroy"), GlobalSantaFe Corporation and several of its subsidiaries. In *Rita Troia et al. v. Amchem Products, Inc. et al.*, Alameda County Superior Court, California, Case No. RG 05 194426 (the "*Troia* Action"), plaintiffs sued Pomeroy, GlobalSantaFe Corporation and several of its subsidiaries as alleged successors-in-interest to persons allegedly liable to the plaintiffs. In December 1992, Pomeroy was merged into Memorial. Memorial's responsibility for the actions of Pomeroy was not contested in the *Sinz* and *Troia* Actions because as a result of the merger between Pomeroy and Memorial, Memorial became responsible for the liabilities of Pomeroy. The plaintiffs in both the *Sinz* Action and the *Troia* Action assert claims for personal injuries, strict liability, breach of warranties, negligence, fraud, premises liability and wrongful death arising from alleged exposure to asbestos-containing products. The *Sinz* and *Troia* plaintiffs have filed proofs of claim against Memorial in the Bankruptcy Cases, each asserting an unsecured nonpriority claim in the amount of $5,000,000.

- **Oilfield Legacy Cases:** Although Santa Fe had sold the last of its properties in 1995, during the period in which it had active business operations, Santa Fe owned and/or operated mineral interests in at least thirteen parishes in Louisiana alone. Santa Fe also had owned many properties in Texas and Oklahoma. Debtors expect that there are other pending or to-be-filed Oilfield Legacy lawsuits where one or both of the Debtors or one of their predecessors in interest appears in the relevant chain of title. Thus, Debtors had and continue to have a reasonable expectation that attempts may be made to assert claims against them in Oilfield Legacy lawsuits.[5]

### C.    Commencement of Bankruptcy Cases

16. As noted above, because Debtors could not uncover evidence that publication notice of Santa Fe's dissolution had been effected upon dissolution in December 2000, Debtors concluded that both Santa Fe and Memorial (as Santa Fe's sole shareholder) remained open to possible limited liability under the Wyoming dissolution statute. Debtors' understanding was that under the Wyoming dissolution statute there is a single limit of liability for shareholders that had

---

[5] Debtors' concerns over potential legacy liabilities have been borne out after commencement of the Bankruptcy Cases. Memorial has become the subject of at least two lawsuits involving long tail legacy type claims – the *Boudreaux* Action and the *Tripkovich* Action. Both the *Boudreaux* and *Tripkovich* Actions are long tail, legacy exposure cases similar to the types of cases that Debtors were concerned with and included in the decision-making process with respect to the filing of the Bankruptcy Cases.

received assets upon dissolution and not a liability to each claimant asserting a claim within the two year notice period.[6]

17. Thus, Memorial, as Santa Fe's sole shareholder, might have liability for the assets it received upon dissolution. Debtors were concerned in light of the various pending litigation and investigatory matters and possible future legacy claims that there would be multiple attacks on this single fund. In light of the wearing effect of piecemeal litigation involving one case after another over a possible finite pot of money; the ability to obtain jurisdiction over a geographically disparate group of claimants (located in Texas, Oklahoma, Louisiana and California, among other states); and possible multiple claims on the same insurance policies and the problem of dividing up the proceeds of such policies among multiple claimants, the Debtors determined that bankruptcy was their only option.

18. As of the commencement of the Bankruptcy Cases there were approximately 130 potential or pending claims against Debtors, as reflected in their respective Schedules F, all of which, excepting the claims scheduled for the GlobalSantaFe Entities, are claims of plaintiffs or co-defendants in either the *Ellison*, *Harris* or *Tebow* Actions and were scheduled as contingent, disputed and unliquidated.

### D.    Post-Petition Litigation With BEPCO

19. On September 8, 2006, Santa Fe commenced an adversary proceeding against BEPCO, Adv. No. 06-10859 (the "Adversary Proceeding"), seeking a declaratory judgment that certain alter ego claims (the "Alter Ego Claims")[7] are property of Debtors' Estates under section 541 of

---

[6] While BEPCO casts unsupported allegations of bad faith in connection with the Debtors' filings, all of which were rejected by the Bankruptcy Court, the GlobalSantaFe Entities will not dignify such accusations with a response.

[7] While BEPCO has attempted, unsuccessfully to pursue these claims, the relevant case law clearly shows that these causes of action, to the extent they exist, constitute property of the Debtors' estates. *See e.g., S.I. Acquisition,* 817 F.2d 1142 (5th Cir. 1987) (concluding that alter ego claims in question constituted property of estate).; *In re PHP*

the Code and an injunction enjoining BEPCO from seeking to pursue the Alter Ego Claims against the GlobalSantaFe Entities. In addition, Santa Fe filed a motion seeking a preliminary injunction against Bass (the "PI Motion") in connection with the Adversary Proceeding. By order dated October 24, 2006 (Adv. Docket No. 27), the GlobalSantaFe Entities were allowed to intervene in the Adversary Proceeding.

20. On September 29, 2006, BEPCO filed motions to dismiss, to convert, for abstention, for appointment of a trustee, or for appointment of an examiner (the "Dismissal/Conversion Motions") (Bankr. Docket No. 1-24) and a motion for modification of the automatic stay under 11 U.S.C. § 362, and a related memorandum of law in support thereof (Bankr. Docket Nos. 23 and 26) (collectively, the "Stay Relief Motion," and together with the Dismissal/Conversion Motion, the "BEPCO Motions").

21. Trial of the PI Motion and of the BEPCO Motions (collectively, the "BEPCO Litigation") commenced October 19, 2006, and the Court declined to dismiss the bankruptcy cases on either of the issues heard on October 19, 2006 (whether Santa Fe was ineligible to be a chapter 11 debtor, as alleged by BEPCO, and whether the Bankruptcy Cases had been filed in good faith) based on the record established at that hearing. However, the Court indicated after the October 19, 2006 hearing that it wanted a fuller record developed in connection with the BEPCO Litigation matters.

22. Resumption of the trial on the BEPCO Litigation initially was scheduled for December 4 and 5, 2006; but it was adjourned several times while discovery and other pre-trial activity ensued. Indeed, while BEPCO suggests that these adjournments "frustrated" its attempts at pursuing its claims, the fact of the matter is that they occurred often with BEPCO's agreement

---

*Healthcare,* 128 Fed.Appx. 839, 844-45 (3d Cir. 2005) (holding that an individual creditor of a debtor may not assert a general claim belonging to all creditors).

HOU 0015838.00162: 1330507v1

and, in some instances, at their request. Therefore, BEPCO's suggestion that any delay in adjudication of the BEPCO Litigation is the fault of the Debtors, the GlobalSantaFe Entities or the Bankruptcy Court is disingenuous.

23. Trial of the BEPCO Litigation proceeded on September 17 and 18, 2007 (the "Trial"). Pursuant to the Court's September 26, 2007 *Post-Trial Order With Respect To Matters Tried On September 17-18, 2007 And With Respect To Other Pending Matters* dated (Bankr. Docket No. 249; Adv. Docket No. 137) (the "Post-Trial Order"), the parties made post-trial submissions on October 19, 2007 (proposed findings of fact and conclusions of law) and on November 2, 2007 (reply briefs to the initial submissions).

24. On February 15, 2008, the Bankruptcy Court issued its Findings of Fact and Conclusions of Law (the "Findings") and related Order (Bankr. Docket Nos. 291 and 292; Adversary Docket Nos. 164 and 165) (collectively, the "Order"), disposing of the issues raised in the BEPCO Litigation. Specifically, the Court denied the Dismissal/Conversion Motion and the PI Motion. The Stay Relief Motion was granted subject to the Court's subsequent determination as to the appropriate forum for the litigation that Bass sought to commence. In making its ruling, the Bankruptcy Court made detailed factual findings and conducted a comprehensive legal analysis of the matters before it.

25. On February 25, 2008, the Debtors filed a *Motion (I) Under Fed. R. Bankr. P. 7052, 9023 and 9024 For Clarification And/Or Reconsideration And/Or Amendment Of The Court's February 15, 2008, Findings Of Fact And Conclusions Of Law And Related Order; And (II) Under Fed. R. Bankr. P. 7062 And 8005, For Entry Of An Order Staying Effectiveness Of The Court's Findings Of Fact And Conclusions Of Law And Related Order Pending Resolution*

*Of This Motion And/Or Any Related Appeal* (the "Debtors' Reconsideration Motion").  (Bankr. Docket No. 169).

26. The Debtors' Reconsideration Motion sought clarification with respect to three discrete portions of the Orders.  Specifically, the Debtors requested clarification as to whether: (i) the Bankruptcy Court intended to grant BEPCO relief from the automatic stay to pursue claims against Memorial, or just Santa Fe; (ii) the Bankruptcy Court intended to conclusively rule on Santa Fe's claim for declaratory relief that Santa Fe owns the Alter Ego Claim pursuant to Section 541 of the Bankruptcy Code; or (iii) whether the discussion regarding the BEPCO's claims was intended to constitute findings of fact or conclusions of law for any purpose other than the minimal "colorable claim" showing required to demonstrate that BEPCO was entitled to relief from the automatic stay.

27. Additionally, the Debtors' Reconsideration Motion requested an extension of the stay under Fed. R. Bankr. P. 4001(a)(3) pending adjudication of the motion and any appeal – a stay which BEPCO opposed.  The Global Santa Fe Entities filed a joinder to the Debtors' Reconsideration Motion (Bankr. Docket No. 171).

28. Also on February 25, 2008, BEPCO filed its Motion For Entry Of An Order (I) Granting Reconsideration, In Part, Of The Court's Opinion And Order, Each Dated February 15, 2008; (II) Upon Reconsideration, (A) Vacating That Portion Of The Opinion And Order Denying The BEPCO Dismissal/Conversion Motion; And (III) Granting Related Relief (the "BEPCO Reconsideration Motion").  (Bankr. Docket No. 172).  In the BEPCO Reconsideration Motion, BEPCO (i) argued that the Court failed to appropriately consider the "cause" argument for dismissal under Section 1112(b)(4)(A) of the Bankruptcy Code; (ii) requested reconsideration of the Court's ruling that the Debtors' cases were filed in good faith.

HOU 0015838.00162: 1330507v1

29. In addition to the foregoing, the Debtors, the GlobalSantaFe Entities and BEPCO each submitted letters to the Court outlining their respective positions as to the appropriate venue for the BEPCO Litigation against Santa Fe and/or its insurers. (Adv. Docket Nos. 175, 180, 181 and187 and).

30. On April 16, 2008, the Court issued its Memorandum Opinion On Reargument and related Order outlining its rulings on the motions for reconsideration that were filed by the Debtors, Global Santa Fe Entities and BEPCO (collectively, the "Reconsideration Motions"). (Bankr. Docket Nos. 193, 194). In the Reconsideration Order, the Court denied the BEPCO Reconsideration Motion and granted the Debtors' Reconsideration Motion. Additionally, the Court held that BEPCO's litigation against Santa Fe and/or its insurers should proceed in a non-bankruptcy forum of BEPCO's choosing, to wit, Louisiana.

31. On April 21, 2008, the Court entered its Order Regarding Debtors' Motion To Stay Pending Appeal And Joinder By The GSF Entities pursuant to which the Court denied the Debtors' request for a stay of that portion of the Order granting BEPCO relief from the automatic stay to pursue claims against Santa Fe and its insurers. (Bankr. Docket No. 196).

32. Soon thereafter, these appellate proceedings were commenced.

## ARGUMENT

### A.    The Issues Raised in these Appeals are Mixed Questions of Law and Fact Not Appropriate for Certification to the Third Circuit.

33. The Second Circuit, in analyzing the standards for certification set forth in § 158(d)(2), has stated: "Legislative history confirms that Congress intended [§ 158(d)(2)] to facilitate [the circuit court's] provision of guidance on **pure questions of law.**" *Webber v. United States Trustee,* 484 F.3d 154, 158 (2d Cir. 2007) (emphasis added). "Indeed, Congress believed direct appeal would be most appropriate where [the circuit court was to be] called upon to resolve a

HOU 0015838.00162: 1330507v1

**question of law not heavily dependent on the particular facts of [the] case,** because such questions can often be decided based on an incomplete or ambiguous record**.**" *Id.* (citing H.R.Rep. No. 109-31, at 148-49, U.S.Code Cong & Admins.News 2005, 88, 206 (noting that Congress did not expect that § 158 would be used to facilitate direct appeal of "fact-intensive issues," but rather "anticipated that ... [for such issues] district court judges or bankruptcy appellate panels" would suffice); emphasis added). Only when "a discrete, controlling question of law is at stake" that can be resolved promptly is certification appropriate. *Id.*

34. In the instant case, BEPCO's own Motion demonstrates that the issues presented in these appeals are not "pure questions of law," nor are they questions that are "not heavily dependent on the particular facts of [the] case." Rather, the issues presented are unique to these bankruptcy cases and will require a through and detailed review of a record comprised of thousands of pages, numerous transcripts and a seventy-nine page opinion, which is supplemented by a thirteen page opinion on re-argument.

35. As will be set forth more fully below, the questions presented for review in these appeals are fact intensive and not appropriate for direct review by the Third Circuit.

> **1.    BEPCO's § 1112(b) Argument is Based Upon an Incorrect Reading of the Statute and a Faulty Understanding of the Relevant Case Law.**

36. BEPCO's argument that the Bankruptcy Court misinterpreted the various provisions of § 1112(b) in reaching its conclusion that the Debtors' bankruptcy cases should not be dismissed is simply wrong.

37. § 1112(b)(1) provides:

> . . .[A]bsent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

HOU 0015838.00162: 1330507v1

(emphasis added).

38. § 1112(b)(2) provides:

> The relief provided in paragraph (1) shall not be granted **absent unusual circumstances specifically identified by the court that establish that such relief is not in the best interests of creditors and the estate**, if the debtor or another party in interest objects and establishes that --
>
> > (A) there is a reasonable likelihood that a plan will be confirmed . . .; and
> >
> > (B) the grounds for granting such relief include an act or omission of the debtor other than under paragraph (4)(A)

(emphasis added).

39. § 1112(b)(4)(A) refers to cause being established via a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation."

40. Read together, while § 1112(b)(4)(A) provides that a case should be dismissed where there is both a "substantial continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," as the Bankruptcy Court correctly pointed out in its Memorandum Opinion on Reargument, even in the face of cause, a court retains discretion, pursuant to § 1112(b)(1) to refuse to dismiss a bankruptcy case where the court specifically identifies unusual circumstances upon which it determines dismissal is not in the best interests of the estate.  Indeed, even BEPCO is forced to concede that recent authority from the Southern District of New York supports this interpretation.  (BEPCO Request to Certify at ¶31; citing *In re the 1031 Tax Group, LLC,* 374 B.R. 78, 93 (Bankr. S.D.N.Y. 2007)).

41. More importantly for purposes of the matter currently before this Court, by its very nature, this type of analysis is fact-intensive, subject to review clear error standard and, therefore, an inappropriate case for certification pursuant to § 158(d)(2). *In the Matter of Jersey Integrated Health-Practice, Inc.,* 2008 WL 305739 (D.N.J.) (slip copy; internal citations omitted) (stating:

"Factual determination[s] . . . are not to be set aside unless the bankruptcy court committed clear error. The fact that the reviewing court could have decided a matter differently does not render a finding of fact clearly erroneous.").

42.    With regard to the merits of BEPCO's strained reading of § 1112, even BEPCO's own case citations indicate that BEPCO's interpretation of § 1112 is incorrect.

43. In *In re Emergystat of Sulligent, Inc.,* 2008 WL 597613 (Bankr. E.D. Tenn.), cited by BEPCO, the United States moved to dismiss the debtor's bankruptcy case on several grounds, including a "continuing loss to or diminution of the estate and the absence of a reasonable likelihood of reorganization . . . ."  According to BEPCO, this case stands for the proposition that "as a matter of law, a debtor [can] never carry its burden to establish "unusual circumstances" where "cause" is based on section 1112(b)(4)(a) . . . " (Request to Certify at ¶).  Upon review of the case, however, the court in *In re Emergstat* found cause under § 1112(b)(4)(A), stating "based on the entire record . . . the court concludes that the United States has established cause for dismissal under 11 U.S.C. § 1112(b)(4)(A)," but continued by stating: "The United States having established statutory cause for dismissal, **this court must then examine whether unusual circumstances have been identified that establish that dismissal is not in the best interests of creditors and the estate."** *Id.* at *8-9 (emphasis added).

44. Similarly, in *In re Gateway Access Solutions, Inc.,* 374 B.R. 556 (Bankr. M.D. Pa. 2007), a case also cited by BEPCO, the movants sought to covert the debtor's case for various reasons, including an alleged continuing diminution of the estate.  In analyzing the motion before it, the court began by analyzing the BAPCPA amendments and noting that, although "the statutory language has been changed . . . **conversion or dismissal may be disallowed if the Debtor specifically identifies "unusual circumstances" which establish conversion is not in the best**

interest of creditors." *Id.* at 560 (emphasis added). The court further held that "the former case law expounding on former § 1112(b)(1) [was] equally applicable to new § 1112(b)(4)(A)." *Id.* at 562.

45. Moreover, just as in *In re Emergstat*, although the court found cause to dismiss, including "a substantial and continuing diminution of the estate," the court went on to analyze whether there were "factors to establish conversion [was] not in the best interest of the creditors and the estate." *Id.* at 564, 566. "**Under BAPCPA, the Court must make a decision which fosters the best interests of creditors. This is not a change from prior law**." *Id.* at 568 (emphasis added).[8]

46. Based upon the foregoing, it becomes clear that BEPCO can cite to <u>no</u> authority in support of its reading of § 1112, nor can BEPCO manufacture a "pure question of law" that requires resolution by the Third Circuit. Rather, BEPCO's appeal amounts to nothing more than a disagreement with the disposition of this case by the Bankruptcy Court. That, however, is insufficient to satisfy the requirements of § 158.

47. Factually speaking, the GlobalSantaFe Entities would be remiss if they did not attempt to correct the misguided picture BEPCO paints of the Debtors' bankruptcy cases.

48. BEPCO's attempt to argue that the Bankruptcy Court committed reversible error by referring to the unusual circumstances of this case as "special circumstances" is simply ludicrous. Further, BEPCO's arguments as to what facts the Bankruptcy Court should or should not have considered simply highlights the fact-intensive nature of these bankruptcy cases, which make it an inappropriate case for certification.

---

[8] Although the courts in *In re Emergstat* and *In re Gateway Access Solutions, Inc.* ultimately determined that unusual circumstances did not exist in those cases, the analysis applied by those courts was the same analysis applied by the Bankruptcy Court in the instant case.

HOU 0015838.00162: 1330507v1

49. Further still, BEPCO's factual citations to the record omit reference to numerous factual findings which formed the backbone of the Bankruptcy Court's conclusion that dismissal would not be in the best interests of the Debtors' estates or their creditors in the present cases.

50. Despite BEPCO's representations to the contrary, the Bankruptcy Court expressly found that these bankruptcy cases have benefited the Debtors' estates and their creditor constituencies in a variety of ways.  In this regard, the Bankruptcy Court held:

> The Bankruptcy Cases should not be dismissed or converted (or abstained from).  The actions taken by Debtors after commencement of the cases have benefitted Debtors' estates. Debtors have, in connection with the Bankruptcy Cases:

> (a)    asserted the automatic stay in connection with the Tebow, Ellison Harris, Sinz, Troia, Boudreaux Actions, and other matters, to limit the estate's involvement in litigation other than in this Bankruptcy Court;

> (b)    facilitated dismissal of Debtors as defendants from the Ellison, Harris, Tebow, Sinz and Troia Actions and, again, to centralize these claims in the Bankruptcy Court forum;

> (c)    established a bar date to set the number of claims;  fixed the notice problem that existed with respect to Santa Fe's dissolution;

> (d)    subject to claims that may hereafter be asserted, if any, created a known universe of claims;

> (e)    analyzed the BEPCO claims to be able to file a motion contesting whether BEPCO has any legally cognizable claim at all against Debtors;

> (f)    taken advantage of the breathing spell afforded by bankruptcy to inventory and analyze potentially applicable insurance policies and related information;

HOU 0015838.00162: 1330507v1

51. Given this portion of the Bankruptcy Court's opinion, as well as the additional findings noted below, it is remarkable that BEPCO would suggest that the court failed to identify unusual circumstances warranting a continuation of these cases. The Bankruptcy Court identified specific circumstances as to why dismissal and conversion were inappropriate, consistent with the mandate of § 1112.

52. In addition, while BEPCO contends that the Debtors' estates are being eroded, the Bankruptcy Court's findings of fact suggest otherwise.

53. In the instant case, the Bankruptcy Court expressly found that the these cases have given rise to the following benefits:

(i)   "Insurance coverage exists for the claims asserted [by BEPCO and related to the] Tebow Action under a number of the London Market policies." (Findings of Fact and Conclusions of Law at p.31).

(ii)  Such coverage "appears to be at least $20 million in primary coverage for each covered occurrence . . . Also . . . there is $95 million in excess coverage for each covered occurrence . . .There is no evidence of any payments made under the London Market policies for claims made by the Tebow Plaintiffs. Thus, the full amount of coverage is still available to pay BEPCO's claims." *Id.* at p.33.

(iii) "Santa Fe also has insurance policies, which cover the asbestos claims against the Santa Fe-Pomeroy subsidiary." *Id.* at 34. In fact, "there [is no] reason to believe that the proceeds of the liability policies will be insufficient to satisfy **all** claims presented." *Id.* at 66 (emphasis added).

(iv)  While, "[p]rior to the filing of the Bankruptcy Cases, Debtors did not have the financial ability to conduct a detailed insurance archeology review for their potential insurance policies and coverage," post-petition, such a review, with the aid of GlobalSantaFe has taken place and identified coverage. *Id.* at 34.

(v)   "As a result of [ ] post-bankruptcy communications between Debtors and insurers some insurers have agreed to provide defense for Tebow claims under a reservation of rights." *Id.* at 38.

(vi)  At present, "Debtors have assets that can be liquidated and used to pay claims in the Bankruptcy Cases." *Id.* at 57.

(vii) "Debtors' possible recovery from other GlobalSantaFe entities, i.e., the Alter Ego claims . . . also constitutes a potential asset." *Id.* at 58.

(viii) The GlobalSantaFe settlement, if approved will result in the GlobalSantaFe

HOU 0015838.00162: 1330507v1

Entities "continu[ing] to cooperate in the pursuit of insurance rights and will contribute **well over $1,000,000 in cash and other value so that substantial value can be delivered to all creditors of the estates on their claims."** *Id.* at 59 (emphasis added).

54. In fact, the Bankruptcy Court went so far as to find that: "[T]here [is no] reason to believe that the proceeds of the [Debtors'] liability policies will be insufficient to satisfy all claims presented." (BEPCO Request to Certify; citing Op. at 66).

55. Therefore, contrary to BEPCO' allegations that the Debtors have a negative cash flow, which thus warrants dismissal or conversion, this is not the case.

56. As noted above, the Bankruptcy Court has already determined that the Debtors' creditors will, in all likelihood, be satisfied via the proceeds of the Debtors' various insurance policies. Moreover, there will be over $1,000,000 in cash and other value available for the payment of administrative claimants.  Therefore, the continuation of these proceedings is in the best interests of both creditors and the estate.

57. BEPCO' arguments to the contrary simply ignore: (1) the substantial assets that have been recovered to date; (2) the cash infusion proposed in the Debtors' settlement with the GlobalSantaFe Entities; and (3) the insurance proceeds identified by the Court that will ultimately be paid to creditors, all of which were cited by this Court as specific circumstances warranting continuation of these proceedings.  More to the point for purposes of the pending Request to Certify, BEPCO's appellate issues are fact-intensive issues, best addressed by this Court in the first instance, not the Third Circuit.

> **2.     BEPCO's Own Citation to Third Circuit Authority Belies Their Argument That There is No Binding Authority With Regard to BEPCO's Claim of Alleged Lack of Good Faith.**

58. BEPCO's argument that there is no binding Third Circuit authority with regard to its lack of good faith argument is belied by BEPCO's citation to **two** Third Circuit opinions in the

19

opening sentence of its argument.

59. Likewise, BEPCO's position that the Bankruptcy Court failed to properly consider *Integrated Telecom* and *SGL* is belied by the fact that the Bankruptcy Court **expressly** stated in its Opinion on Reargument: **"The Court has carefully considered the Third Circuit's holding in *Integrated Telecom*, a leading case involving dismissal for cause."**

60. The Bankruptcy Court did not take issue with the legal propositions in *Integrated Telecom*, rather the Bankruptcy Court found that the facts of these cases were different than those addressed in *Integrated Telecom,* again demonstrating that the questions presented by these appeals are not "pure questions of law," but rather complex factual issues, which are reviewed by this Court against a clear error standard and fall outside the universe of cases subject to certification pursuant to § 158.

### 3. The Section 109(d) Issues Presented by BEPCO, Which Deal With Interpretation of Wyoming State Law, Do Not Demand Immediate Review by the Third Circuit.

61. It is well established that the question of whether a dissolved corporation is eligible to be a debtor under Chapter 11 involves the attributes of the dissolved company under applicable state law. *In re State Park Building Group, Ltd.*, 316 B.R. 466, 472 (Bankr. N.D. Tex. 2004); *In re Ethanol Pacific, Inc.*, 166 B.R. 928, 930 (Bankr. D. Idaho 1994). In the instant case, Wyoming law governs the question of Santa Fe's eligibility as a debtor.

62. While BEPCO contends that there is a need for the Third Circuit to decide whether Santa Fe is an eligible debtor under § 109(d) of the Bankruptcy Code, it is difficult to imagine why there is a need for the Third Circuit to create "controlling authority" on the question of whether, under Wyoming state law, Santa Fe maintains a corporate existence sufficient to support a bankruptcy filing. Simply put, Wyoming state law questions are best left to the legislature and courts of Wyoming, not the Third Circuit.

20

63. In any event, Wyoming law on this issue is clear.  The statute that governs dissolution of a Wyoming corporation, such as Santa Fe, is WYO. STAT. § 17-16-1405(a), which provides, in relevant part:

> § 17-16-1405(a) Effect of dissolution
>
>> (a)  A dissolved corporation continues its corporate existence but may not carry on a business except that is appropriate to wind up and liquidate its business and affairs, including:
>>
>>> (i) collecting its assets…;
>>>
>>> (iii) discharging or making provision for discharging its liabilities…;
>>>
>>> (v)  doing every other act necessary to wind up and liquidate its business and affairs.

WYO. STAT. § 17-16-1405(a)

64. Thus, under Wyoming law, a dissolved Wyoming corporation continues its corporate existence to liquidate its assets and wind up its business affairs.

65. Under similar circumstances, bankruptcy courts have consistently held that where state law authorizes a dissolved corporation to remain in existence after dissolution to wind up its affairs, the dissolved corporation is eligible to file for bankruptcy protection.  *See In re State Park Building Group, Ltd.*, 316 B.R. 466, 472 (Bankr. N.D. Tex. 2004) (dissolved Texas corporation determined to be eligible debtor); *In re White Farms, Inc.*, 94 B.R. 410, 12-13 (Bankr. W.D. Va. 1998) (court held that because Virginia statute authorized a dissolved corporation to pursue claims, corporation was authorized to file Chapter 11 petition).  The Wyoming dissolution statute is analogous to the dissolution statutes that were addressed in *State Park* and *White Farms*.

66. In the instant case, as of the Petition Date, Santa Fe maintained an existence as a Wyoming corporation under applicable law.  In light of applicable Wyoming law, the

21

Bankruptcy Court correctly concluded that Santa Fe has maintained its corporate existence for purposes of winding up its affairs, and, therefore, was an eligible debtor under Section 109 of the Bankruptcy Code.

67. Because the question of Santa Fe's eligibility under § 109 is tied to interpretations of Wyoming state law, the GlobalSantaFe Entities would submit that this is not a question upon which binding Third Circuit authority is necessary.  Hence, certification of this question pursuant to § 158 would be inappropriate.

> **4.    The Public Interest is Best Served in These Cases Via the Development of a Coherent Body of Bankruptcy Law at the District Court Level.**

68. While BEPCO casts the questions discussed above as ones of public importance that require review by the Third Circuit, the fact of the matter is that "Congress believed direct appeal would be most appropriate where [the court was] called upon to resolve a question of law not heavily dependent on the particular facts of a case . . . ." *Weber*, 484 F.3d at 158.  As set forth above, it is clear that this is not such a case.

69. Moreover, even if the questions presented here were ones of public importance, as BEPCO suggests, the fact that some of the questions derive from the BAPCPA amendments weighs <u>against</u> certification.

70. As the Second Circuit has stated:

> . . . [A]lthough Congress emphasized the importance of our expeditious resolution of bankruptcy cases, it did not wish us to privilege speed over other goals; indeed, **speed is not necessarily compatible with our ultimate objective-answering questions wisely and well. In many cases involving unsettled areas of bankruptcy law, review by the district court would be most helpful. Courts of appeals benefit immensely from reviewing the efforts of the district court to resolve such questions. Permitting direct appeal too readily might impede the development of a coherent body of bankruptcy case-law.** *See Ohio v. Roberts,* 448 U.S. 56, 64, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) (explaining that "the common-law tradition" is a "process [that is] gradual, building on past decisions, drawing on new experience, and responding to changing conditions"), *abrogated on other grounds by Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354,

158 L.Ed.2d 177 (2004); Benjamin N. Cardozo, *The Nature of the Judicial Process* 24 (1921) (explaining that the common law process "goes on inch by inch"). Moreover, **since district courts tend to resolve bankruptcy appeals faster than the courts of appeals . . . the cost in speed of permitting district court review will likely be small.**

**We believe that Congress was aware of the dangers of leapfrogging the district court in the appeals process. Initially divided over whether to make direct appeals mandatory in certain circumstances, or to grant discretion to the courts of appeals to accept or decline such direct appeals, Congress wisely adopted the latter path, probably in recognition of the salutary effects of allowing some cases to percolate through the normal channels. . . .**

**We must also bear in mind that in most cases, even without certification, the parties will have an opportunity to appeal both to the district court and to this court before the termination of the entire bankruptcy proceeding, thereby satisfying many of the objectives here that also underlie § 1292(b) and Rule 23(f).**

*Id.* at 160-61(emphasis added).

71. Based upon the foregoing analysis, it become evident that the public interest is not served by rushing to judgment on the allegedly unsettled questions of law BEPCO claims require review by the Third Circuit, but rather by allowing such questions to be addressed by the district courts in a timely matter. To do otherwise might ultimately "impede the development of a coherent body of bankruptcy case law" and deny the public of the "salutary effects of allowing [ ] cases to percolate through the normal channels." *Id.*

72. In addition, as one commentator has said: "A "matter of public importance" should transcend the litigants and involve a legal question the resolution of which will advance the cause of jurisprudence to a degree that is usually not the case." *1-5 Collier on Bankruptcy-15th Edition Rev. P 5.05A.* Here, the issues presented by BEPCO do not, by any means, "transcend the litigants and involve a legal question the resolution of which will advance the cause of jurisprudence." Rather, the orderly development of bankruptcy jurisprudence through normal channels is of greater public importance than BEPCO's dissatisfaction with the factual determinations of the Bankruptcy Court.

23

73. Therefore, contrary to BEPCO's suggestion, the public interest is served in this case, not by certification, but rather by allowing this case to proceed in this Court. Indeed, rushing to certify the matters presented benefits no one other than BEPCO and, while BEPCO contends that certification is necessary in order to expedite consideration of this appeal, the fact of the matter is that, as the Second Circuit points out in *Weber*, "**district courts tend to resolve bankruptcy appeals faster than the courts of appeals . . . .**" *Id.* Therefore, even BEPCO's own argument in favor of a quick resolution of these appeals weigh <u>against</u> granting certification of these appeals to the Third Circuit.

## B. There are No Conflicting Decisions Regarding Resolution That Require § 158 Certification.

### 1. There is No Conflict of Decisions With Respect to § 1112(b) That Requires Resolution.

74. As set forth above, while BEPCO argues that certification is required to resolve "conflicting decisions" regarding the interaction between § 1112(b)(1) and § 1112(b)(2), review of the cases BEPCO maintains are conflicting reveals that <u>each and everyone of the cases</u> has held that, irrespective of whether cause to dismiss exists under § 1112(b)(4)(A), the court must analyze whether unusual circumstances exist that warrant allowing a bankruptcy case to continue.

75. Therefore, BEPCO's "conflicting decisions" argument fails on its face. Further, even if there were conflicting decisions across the country, that is insufficient to satisfy § 158.

76. While § 158 allows for certification to the courts of appeals to resolve conflicting decisions, in order for this provision to apply the conflict "would have to exist **within the particular circuit**." *1-5 Collier on Bankruptcy-15th Edition Rev. P 5.05A.*

77. The cases BEPCO cites arise out of the Eastern District of Tennessee, the Southern District of New York and the Middle District of Pennsylvania. Thus, because no two of these

24

decisions both conflict and arise out of the same circuit, BEPCO cannot satisfy § 158, especially when <u>there is no actual conflict in the holdings of the cases.</u>

### 2. There are No Conflicting Decisions Regarding BEPCO's Lack of Good Faith Argument.

78. BEPCO's argument that conflicting decisions must be resolved with respect to the Bankruptcy Court's findings with regard to BEPCO's lack of good faith arguments is simply meritless.

79. As set forth above, BEPCO itself cites to Third Circuit authority in making its arguments and the Bankruptcy Court expressly cited that authority in its opinion.  More importantly, BEPCO can point to no genuine conflict among the cases in this circuit that needs resolution. Rather, BEPCO, once again, is simply dissatisfied with the Bankruptcy Court's <u>factual</u> findings, which is insufficient to warrant certification to the Third Circuit.

### 3. Section 109 Conflicts Arising From Interpretation of State Law are Not Appropriate for Certification.

80. With regard to BEPCO's § 109 arguments, BEPCO does not even attempt to argue that there is a conflict of law in this circuit.  Instead, BEPCO contends that the Bankruptcy Court should be required to apply <u>Second</u> Circuit authority which relied on <u>New York</u> state law to the question of whether Santa Fe is an eligible debtor, which is an analysis that requires reference to <u>Wyoming</u> state law, as set forth above.

81. Again, § 158 is only meant to address conflicts within this circuit (none of which BEPCO can cite to), not alleged conflicts from cases around the country, which apply New York state law.  Moreover, it is hard to imagine why there is a need for the Third Circuit to create a line of jurisprudence interpreting Wyoming state law.

HOU 0015838.00162: 1330507v1

**C. A Direct Appeal to the Third Circuit Will <u>Not</u> Materially Advance These Cases.**

82. Finally, while BEPCO argues to this Court that Third Circuit review is necessary or "BEPCO may be denied effective appellate relief," it must be remembered that BEPCO did not request a stay pending appeal from the Bankruptcy Court. More importantly, BEPCO represented that it had no expectation to recover from the Debtors' bankruptcy estates. Specifically, BEPCO's counsel stated as follows:

> . . . Your Honor, for all practical purposes, we're drilling into a dry hole as against the estate. For all practical purposes, **any recovery is coming from the insurance** or is coming from the GlobalSantaFe Entities . . .

(Tr. of Apr. 18, 2008 Hrg. at p.35, attached hereto as Exhibit "A").

83. If BEPCO does not intend to recover from the Debtors' estates, BEPCO can experience no harm in the Debtors' cases progressing in a manner that doesn't impact that interest – an interest which has already been preserved via the Bankruptcy Court authorizing BEPCO to proceed directly against Santa Fe and its insurers in a Louisiana state court.

84. As has been the case throughout the entirety of these proceedings, BEPCO is changing its position based upon the exigencies of the moment. When it suited BEPCO, BEPCO argued that it had no expectation of recovering from the Debtors' estate and that it was interested solely in recovery from the Debtors' insurers. Now, BEPCO is arguing to this Court that it will be "denied effective appellate relief" if it is not allowed to have questions addressed which have no bearing on its pursuit of the Debtors' insurers. It is these type of "flip-flopping" on BEPCO's part that have delayed these proceedings.

85. Indeed, on April 18, 2008, BEPCO's counsel represented to the Bankruptcy Court that it was in support of the Debtors filing an amended plan; a position that was also supported by the United States Trustee. (Ex. A at p. 35, 39 where BEPCO's counsel states: "I think the first step

HOU 0015838.00162: 1330507v1

there is for them to file their new plan and let's see" and the United States Trustee states: "[M]oving this case forward through the plan process seems to be most appropriate . . .").

86. Now that the Debtors have filed an Amended Plan, BEPCO complains that that process should not move forward and that their rights are somehow being violated when it was BEPCO that: (1) supported the filing of an amended plan; (2) represented that they had no expectation from recovering from the Debtors' estate; and (3) never moved for a stay pending appeal.

87. Based upon these facts, it is not certification of this appeal to the Third Circuit that will move this case forward, but rather allowing this appeal to proceed in the ordinary course, with the Debtors being allowed to proceed on the Bankruptcy Court in pursuit of their plan process, just as BEPCO and the United States Trustee suggested on April 18, 2008.

## CONCLUSION

88. Based upon the foregoing, the GlobalSantaFe Entities respectfully request that BEPCO's Request to Certify be denied for the reasons set forth above.


Dated: Wilmington, Delaware
        June 13, 2008


                                    Respectfully submitted,



                                    __/s/Kevin J. Mangan_____
                                    Francis A. Monaco, Jr. (#2078)
                                    Kevin J. Mangan (#3810)
                                    **WOMBLE CARLYLE SANDRIDGE
                                    & RICE, PLLC**
                                    222 Delaware Avenue, Suite 1501
                                    Wilmington, DE 19801
                                    Tel. (302) 252-4361

                                          and

27

Philip G. Eisenberg
Texas State Bar No. 24033923
Mark A. Chavez
Texas State Bar No. 24036357
**LOCKE LORD BISSELL & LIDDELL, LLP**
3400 JPMorgan Chase Tower
600 Travis Street
Houston, Texas  77002
Tel. (713) 226-1200

HOU 0015838.00162: 1330507v1

**CERTIFICATE OF SERVICE**

**I, Heidi E. Sasso, certify that I am not less than 18 years of age, and that service of the foregoing document was made on June 13, 2008 upon:**

Gregory Werkheiser, Esq.
Kelly Dawson, Esq.
Morris Nichols Arsht & Tunnell LLP
1201 Market Street
Wilmington, DE 19801

M. Hampton Carver, Esq.
Leann Moses, Esq.
Carver Darden Koretzy Tessier Finn  Blossman & Areaux, LLC
1100 Poydras Street, Ste. 2700
New Orleans, LA 70163

John Demmy, Esq.
Stevens & Lee PC
1105 N. Market Street, 7th Floor
Wilmington, DE 19801

Under penalty of perjury, I declare that the foregoing is true and correct.

____6/13/2008                          /s/ Heidi E. Sasso

Document #: 370
WCSR  3895071v1