**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| 15375 MEMORIAL CORPORATION, *et al.,* | ) Bankr. Case. No. 06-10859 (KG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| BEPCO L.P., f/k/a | ) |
| Bass Enterprises Production Company, | ) |
| | ) Civil Action No. 08-313 (SLR) |
| Appellant, | ) |
| | ) |
| v. | ) (Consolidation of civil actions 08-313, |
| | ) 314, 318, 319, 321, 322, 325 and 326) |
| 15375 MEMORIAL CORPORATION, *et al.,* | ) |
| | ) |
| Appellees and Cross-Appellants. | ) |
| | ) |

**NOTICE OF FILING OF EXHIBIT "A" TO RESPONSE OF GLOBALSANTAFE
ENTITIES IN OPPOSITION TO BEPCO, L.P., F/K/A BASS ENTERPRISES
PRODUCTION COMPANY'S EMERGENCY REQUEST FOR CERTIFICATION FOR
DIRECT APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD
CIRCUIT PURSUANT TO 28 U.S.C. § 158(d)(2)**

Please take notice that GlobalSantaFe Corporation, GlobalSantaFe Corporate Services, Inc.,

and Entities Holdings, Inc. (collectively "GlobalSantaFe Entities"), by and through their undersigned

counsel, is filing the attached Exhibit "A" – Transcript of April 18, 2008 Hearing in front of The

Honorable Kevin Gross - to the Response in Opposition to BEPCO, L.P., f/k/a Bass Enterprises

Production Company's Emergency Request for Certification for Direct Appeal to the United States

Court of Appeals for the Third Circuit Pursuant to 28 U.S.C. § 158(d)(2) [Docket Item No. 10, Filed

June 13, 2008].

Dated:  June 13, 2008                    __/s/ Kevin J. Mangan_____
                                         Francis A. Monaco, Jr. (#2078)
                                         Kevin J. Mangan (#3810)
                                         WOMBLE CARLYLE SANDRIDGE &
                                         RICE, PLLC
                                         222 Delaware Avenue, Suite 1501
                                         Wilmington, Delaware  19801
                                         Telephone:  (302) 252-4320
                                         Facsimile:  (302) 252-4330

Document #:  20793     Notice of Filing of Exhibit - Goldman Ex. A.

WCSR  3919683v1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Case No. 06-10859(KG) |
| | ) | (Jointly Administered) |
| | ) | Chapter 11 |
| 15375 MEMORIAL CORPORATION, | ) | |
| *et al.*, | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| SANTA FE MINERALS, INC., | ) | Adversary No. 06-50822(KG) |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| versus | ) | |
| | ) | |
| BEPCO, L.P., formerly known as | ) | |
| BASS ENTERPRISES PRODUCTIONS | ) | Courtroom No. 3 |
| COMPANY, | ) | J. Caleb Boggs Federal |
| | ) | 844 N. King Street |
| Defendant. | ) | Wilmington, Delaware 19801 |
| | ) | |
| GLOBALSANTAFE CORPORATION, | ) | |
| GLOBALSANTAFE CORPORATE | ) | |
| SERVICES, INC., and ENTITIES | ) | |
| HOLDINGS, INC., | ) | |
| | ) | April 18, 2008 |
| Intervenors. | ) | 10:05 A.M. |

TRANSCRIPT OF STATUS CONFERENCE
BEFORE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

ECRO:                    Leslie Murin


TRANSCRIPTION SERVICE:    TRANSCRIPTS PLUS
                         435 Riverview Circle
                         New Hope, Pennsylvania 18938
                         Telephone:  215-862-1115
                         Facsimile: 215-862-6639
                         e-mail CourtTranscripts@aol.com


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

2

APPEARANCES:

| | |
|---|---|
| For the Debtor: | Stevens & Lee, P.C.<br>By:  JOHN DEMMY, ESQ.<br>1105 North Market Street, 7th Floor<br>Wilmington, Delaware 19801 |
| For BEPCO: | Morris Nichols Arsht & Tunnell<br>By:  GREGORY W. WERKHEISER, ESQ.<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, Delaware 19899-1347 |
| For GlobalSantaFe<br>Entities: | Womble Carlyle Sandridge & Rice, PLLC<br>By:  JOHN STROCK, ESQ.<br>1201 N. Orange Street, Suite 400<br>Wilmington, Delaware 19801 |
| For the U.S. Trustee: | U.S. Trustee's Office<br>By:  DAVID L. BUCHBINDER, ESQ.<br>844 King Street<br>Wilmington, Delaware 19899 |

TELEPHONIC APPEARANCES:

| | |
|---|---|
| For GlobalSantaFe<br>Entities: | Locke Liddell & Sapp, LLP<br>By:  PHILIP EISENBERG, ESQ.<br>     MARK CHEVEZ, ESQ.<br>3400 JPMorgan Chase Tower<br>600 Travis<br>Houston, Texas 77002 |
| For the Debtor: | Carver, Darden, Koretzky, Tessier,<br>Finn, Blossman & Areaux, L.L.C.<br>By:  LEANN MOSES, ESQ.<br>     HAMPTON CARVER, ESQ.<br>1100 Poydras Street, Suite 2700<br>New Orleans, Louisiana 70163 |

3

1          THE COURT:  Good morning, Counsel, please be seated.

2          MULTIPLE SPEAKERS:  Good morning, Your Honor.

3          THE COURT:  And good morning to Mr. Eisenberg and Ms.

4  Moses on the telephone.

5          MR. EISENBERG:  Good morning, Your Honor.

6          MS. MOSES:  Good morning,.

7          MR. EISENBERG:  I've got Mark Chevez with me, as

8  well.

9          THE COURT:  Oh, I'm sorry.  Thank you.

10          MS. MOSES:  And, Your Honor, Hampton Carver is with

11  me, as well.

12          THE COURT:  Thank you.  Good morning, Mr. Carver,

13  then.  Mr. Demmy?

14          MR. CARVER:  Good morning, Your Honor.

15          THE COURT:  Mr. Demmy?

16          MR. DEMMY:  Good morning, Your Honor.  John Demmy of

17  Stevens and Lee for the debtors.

18          Your Honor, this is the time for a status and

19  scheduling conference, I suppose, in connection with certain

20  matters in the Santa Fe Minerals case.  Obviously the Court

21  issued an opinion and order Wednesday, late afternoon or early

22  evening, I'm not sure, but we've had a day or so to look at it.

23          In terms of status and scheduling, I don't have a lot

24  to report to the Court that we haven't already said.

25          THE COURT:  Right.

4

1            MR. DEMMY:  A couple of things I will note, though.

2   We haven't had a chance to speak to -- at least I haven't had a

3   chance to speak to counsel for BEPCO about scheduling.  And the

4   Court has directed us to --

5            THE COURT:  And I didn't --

6            MR. DEMMY:  -- think about scheduling.

7            THE COURT:  -- expect it by now, sure.

8            MR. DEMMY:  Mainly I was busy on some other things

9   yesterday and I apologize, I just could not reach out to Mr.

10  Werkheiser.

11           THE COURT:  No apology necessary.

12           MR. DEMMY:  But we, of course, would -- would intend

13  to do that and comply with the Court's direction.  I have one

14  question, though, about that direction.  The Court's order

15  says, "The Court directs the parties to submit a stipulation

16  and order scheduling the completion of briefing on the GSF

17  entities' motion for summary judgment in the declaratory

18  judgment adversary proceeding.  And I'm not sure we're talking

19  about the same things, I wanted to discuss with the Court what

20  the Court has in mind because there isn't a motion for summary

21  judgment pending in the declaratory judgment proceeding that

22  I'm aware of.

23           There is the debtors' motion for summary judgment

24  with respect to the BEPCO claim that's pending, not in that

25  adversary proceeding.

1             THE COURT:  Okay.  Okay.

2             MR. DEMMY:  So, I'm -- I'm a big confused.  I don't

3  know if other parties are, as well, but I'm --

4             THE COURT:  That's the --

5             MR. DEMMY:  I'm not sure what the Court is asking us

6  to do there.

7             THE COURT:  That's the motion I was looking to have

8  addressed.

9             MR. DEMMY:  The claim motion, Your Honor?

10            THE COURT:  Well --

11            MR. DEMMY:  I'm -- I just --

12            THE COURT:  There's a summary judgment motion

13 pending, as I recall, on the alter ego issue.

14            MR. DEMMY:  I --

15            THE COURT:  Is that right?

16            MR. WERKHEISER:  Your Honor, I think --

17            THE COURT:  Mr. Werkheiser?

18            MR. WERKHEISER:  Yes.  I'm sorry, for the record,

19 Gregory Werkheiser for BEPCO.

20            Your Honor, I think the motion that you might have

21 been referring to was a motion that was filed by the

22 GlobalSantaFe entities back on December 29th of 2006, which I

23 think I styled as a motion to dismiss --

24            THE COURT:  To dismiss?

25            MR. WERKHEISER:  -- our request from relief from stay

6

1  as to the alter ego claims, and I --

2            THE COURT:  Okay.  Okay.

3            MR. WERKHEISER:  And I -- and I think as to which the

4  principle argument was over ownership and standing to assert

5  the alter ego claims.

6            THE COURT:  Understood.  My mistake.

7            MR. WERKHEISER:  And I thought perhaps that's what

8  Your Honor was getting to --

9            THE COURT:  Yes.

10           MR. WERKHEISER:  -- with that reference in the order.

11           THE COURT:  Okay.

12           MR. DEMMY:  Well, and -- and I was going to raise --

13  that was the only pending motion -- technically pending motion

14  that related to alter ego claim, Your Honor, but I'm not sure

15  that that motion is technically pending in a sense that it

16  requires decision.  It's the GlobalSantaFe entities' motion

17  filed in that adversary proceeding, but in light of the Court's

18  rulings in connection with BEPCO's relief from stay motion with

19  regard to both insurance and our alter ego issues, I'm not sure

20  where that motion stands and whether it needs to be briefed at

21  this point.

22           THE COURT:  Well, we --

23           MR. DEMMY:  But I don't want to speak for any other

24  party.

25           THE COURT:  Okay.  All right.

7

1          MR. DEMMY:  It was -- it was the debtor's view that

2    perhaps the Court, because of the reference to the motion for

3    summary judgment, was dealing -- was referring to the debtors'

4    motion for summary judgment with regard to the Bass claims, and

5    that's -- that's the reason why I had that confusion.

6          THE COURT:  Okay.  And I've kind of confused the two

7    and sort of combined them in my own mind as to what was pending

8    because we have not really resolved the alter ego issue at this

9    point.

10          MR. DEMMY:  That's my understanding, as well, Your

11    Honor.

12          THE COURT:  And that is what, in my mind, we now

13    should move on to address.

14          MR. DEMMY:  And I think --

15          THE COURT:  But I want to hear from Mr. Werkheiser,

16    too, of course.

17          MR. DEMMY:  Sure.  And in that regard, Your Honor, I

18    don't -- I don't think that -- that -- and I'll defer to Mr.

19    Eisenberg, it's his motion, we joined it, so that the Court

20    understands the procedural posture.  But it is his motion, but

21    I'm not sure we need to submit a scheduling order with regard

22    to briefing on that motion at this point.

23          Perhaps what we need to do is talk about scheduling

24    generally in the adversary proceeding.

25          THE COURT:  Okay.

1          MR. DEMMY:  But on that point, I'll defer to other

2   counsel.

3          THE COURT:  Why don't I hear from Mr. Werkheiser on

4   that point while we're with it?

5          MR. WERKHEISER:  Well, Your Honor, I was actually

6   going to rise to suggest that maybe we ought to spend a few

7   minutes on the reconsideration decision first and then we could

8   move on to some of the more discrete issues as to the case

9   going forward.  If I may, and --

10          THE COURT:  Yes.

11          MR. WERKHEISER:  And I particularly -- and I was

12   hoping for the opportunity at the outset, I did want to address

13   Footnote 4 of the decision, Your Honor, because I was, I have

14   to say personally, distressed that things we may have said in

15   our motion papers might have caused the Court to believe that

16   we were acting to admonish the Court or to threaten the Court

17   in any way, and that was absolutely not our intent in that.

18   And I apologize if the papers were inartfully drafted so that

19   the Court read them that way.

20          Your Honor, and I understand this is, to some degree,

21   water under the bridge.  But what we were getting to in that

22   context, Your Honor, was simply the fact that we appreciated

23   the very high burden we had on the motion for reconsideration

24   and that essentially the Court had two steps:  One, was I even

25   going to grant reconsideration and consider the request to

9

1  change the relief;  And, two, would I actually grant the

2  request to change the result from the prior decision.  And we

3  were simply trying to impress upon the Court that while the

4  Court sees many reconsideration motions, we thought this one

5  was particularly unique, given the circumstances of the case,

6  and given, at that time, the procedural issues that might have

7  been raised by an appeal, which might follow if the decision

8  was left unchanged.

9           So, that's where we're going, Your Honor.  I -- you

10 know, I hold the Court and the highest respect in Your Honor

11 and the highest respect, and I just want to be very clear that

12 we did not intend anything different from that.

13          THE COURT:  Well, I appreciate that, Mr. Werkheiser.

14 And you know, I think as everyone knows, I have the greatest

15 respect and sensitivity for how difficult it is to be a lawyer

16 and you walk a very fine line between being, you know, a

17 forceful advocate, and still, you know, not crossing the line,

18 and I just thought it got a little close to the line.  I don't

19 think it crossed the line, it got close.  And -- so, I just

20 wanted to kind of express my own sort of reaction to it, and

21 that's all that was.

22          MR. WERKHEISER:  Thank you, Your Honor.

23          THE COURT:  And I certainly meant and mean no

24 disrespect to counsel for whom I also hold the highest respect.

25 And I haven't been a Judge that long that I don't remember how

1  difficult it is to be a lawyer and to try and tell the Judge

2  that, you know, you're -- you know, you're dead wrong and you'd

3  better -- you should, or we'd like you to take another look at

4  things.  So, I -- but I appreciate that, Mr. Werkheiser.

5          And, you know, I said what I said, and really -- I'm

6  long passed it.

7          MR. WERKHEISER:  Thank you, Your Honor.

8          THE COURT:  But thank you.

9          MR. WERKHEISER:  Your Honor, just on the -- the

10 merits of the reconsideration of the motion, and I -- I raise

11 this just because I think it sort of sets the table for dealing

12 with the alter ego claims and other scheduling issues that we

13 may have today.  But --

14         THE COURT:  And by the way, I know you haven't had a

15 lot of time to consider what you might want to do and what your

16 options are, and I am not foreclosing your continuing to

17 consider those.

18         MR. WERKHEISER:  Thank you, Your Honor.  And I think

19 we understand the Court's ruling which is that it is granting

20 relief from stay for BEPCO to go forward with the litigation in

21 Louisiana as to the debtor, Santa Fe Minerals, and its

22 insurers.

23         Your Honor, when we were last here on March 25th, I

24 think there was discussion about -- there was a pending request

25 for a stay at that time, and I believe the Court directed that

1 the stay would remain in effect through one business day after

2 the status conference, which was originally scheduled for

3 yesterday, but we would understand that it would mean that the

4 stay would remain in effect through Monday --

5         THE COURT:  Yes.

6         MR. WERKHEISER:  -- and thereafter we would be free

7 to proceed in accordance with the Court's order here.  But

8 given the procedural complexity in this case, we wanted to make

9 sure that our understanding was correct at this point in light

10 of the ruling.

11         THE COURT:  That is correct.  I think one of the

12 concerns, as I recall, that the debtors and GSF entities had

13 was whether the case could proceeds against Memorial.  And if

14 I'm wrong, of course, either Mr. Eisenberg or Mr. Demmy can

15 correct me.  And that's why they were looking for stay relief

16 at that point.

17         MR. DEMMY:  The concern was twofold, Your Honor.  The

18 -- one being what Your Honor's identified about Memorial.  The

19 second being that, as I understand the rules, there's an

20 automatic ten-day stay --

21         THE COURT:  Yes.

22         MR. DEMMY:  -- in connection with a relief from stay

23 order.  And, of course, the -- Your Honor's decision originally

24 was entered February 15 of this year and we had a

25 teleconference within the ten-day period, we filed a motion for

12

1  reconsideration within that ten-day period.  It was put on for

2  hearing on March 25th.  So, we were outside the ten-day period.

3          THE COURT:  Right.

4          MR. DEMMY:  That's why we asked for the stay to be

5  extended --

6          THE COURT:  Okay.

7          MR. DEMMY:  -- when we get to the March 25 hearing

8  and we're going to go forward again to -- at that point, the

9  hearing was scheduled for yesterday, but then, of course, was

10 put over to today.  We had a concern that the ten-day automatic

11 stay under the rules would have expired, our motion would not

12 have been ruled upon.  That's why we rose and, in essence,

13 orally moved for a continuation of the stay, which I think

14 BEPCO consented to.

15         THE COURT:  I think they consented to it, yes.

16         MR. DEMMY:  And the Court granted, in connection with

17 the order entered previously.  So, those were the two concerns:

18 The expiration of the ten-day stay -- I don't know that I have

19 a view right now as to whether or not the ten-day automatic

20 stay continues from the April 16 order, which finally concludes

21 the stay relief motion.  I, frankly, hadn't thought about that

22 too hard in the past day until Mr. Werkheiser rose.

23         THE COURT:  Okay.

24         MR. WERKHEISER:  Your Honor, again, Gregory

25 Werkheiser for the record.

1          Your Honor, that -- that is probably something we do

2  need to try and sort out for today.

3          THE COURT:  I think so, too.

4          MR. WERKHEISER:  Because obviously we've waited a

5  long time for the opportunity to go forward and have every

6  intention of trying to move quickly, and we do not want to get

7  sideways with the Court or do anything that wasn't contemplated

8  by the Court's opinion.

9          It's certainly our view, as I expressed, that they've

10 gotten the benefit, in effect, of the ten-day stay, and a stay

11 beyond that by Your Honor's direction and our consent through

12 tomorrow.

13         And we'd respectfully submit that there ought not to

14 be a further stay beyond -- beyond Monday.

15         THE COURT:  Does anyone wish to be heard on that

16 point?   Mr. Eisenberg, any comment?

17         MR. EISENBERG:  Yes, Your Honor.  Thank you very

18 much.  And, yeah, I'm sitting here with Mr. Chevez, we had a

19 chance actually to talk about that with the moot button on.

20 So, and we believe that now that there is an order that ten

21 days for us to review the opinion and the stay would apply, and

22 that -- that that is the -- where the automatic ten-day period

23 comes in.  One of the big issues that we obviously had

24 previously was there was a motion to dismiss, combined with the

25 motion to lift stay.  And there was a reconsideration on the

1  motion to dismiss itself, and that's why we had the concerns

2  procedurally we did, and why I believe we took the steps we did

3  amongst the parties and the Court, to make sure because of the

4  pending motion to dismiss and the reconsideration of the motion

5  to dismiss.

6         Now that we have an order with an order lifting stay,

7  the normal rules apply and it's a ten-day period, and that

8  would be our view.

9         MR. WERKHEISER:  Your Honor, may I --

10         THE COURT:  Yes, you may.

11         MR. WERKHEISER:  May I respond briefly?

12         THE COURT:  You may respond before I comment.

13         MR. WERKHEISER:  Thank you, Your Honor.  Just two

14  brief points:  Of course, 4001(a)(3) is discretionary, and it

15  says the default rules that the ten days would -- would apply

16  in the absence of the Court ordering otherwise.  So, Your Honor

17  is certainly free to order otherwise, if you so chose to.

18         But in this circumstance, it would certainly not make

19  sense to give them the benefit of the additional ten days

20  because they have put before the Court a motion for a stay

21  pending appeal, which we discussed back on March 25th, the

22  parties have briefed it and submitted it for a decision.

23         We understand if Your Honor has not acted on the

24  request for a stay pending appeal at this time, but the issue's

25  been fully joined at this point, Your Honor, and -- and we have

15

1  consented to a stay well beyond what is required under -- under

2  the Rules.  And, therefore, we'd ask that we be permitted to go

3  forward on Tuesday.  Thank you.

4           MR. DEMMY:  May I just make one point, Your Honor?

5           THE COURT:  Certainly, Mr. Demmy.

6           MR. DEMMY:  I think the -- the -- I -- in sitting

7  here and listening, I adopt Mr. Eisenberg's comments.  I think

8  the key is not that we've already sought a stay.  I think we

9  did so to protect our rights going forward in light of the

10 schedule and we shouldn't be penalized for doing that.

11          I do agree with Mr. Werkheiser that it's -- this is a

12 discretionary issue for the Court, and the Court, upon request,

13 can -- I think can waive the stay, and that you often see that

14 in proposed orders in connection with matters such as this.

15 You know, having -- having said that, as I said, I think the

16 key question is is the order that Your Honor entered on April

17 16th, does that trig the ten-day stay under the Rule?  And I

18 think -- because it finally concludes the matter that it would

19 trigger that ten-day stay regardless of what had occurred

20 previously in connection with our motion to preserve our rights

21 as we move forward through the process.

22          THE COURT:  Well, of course, in my -- in my earlier

23 decision, the original decision, I lifted the stay.  And the

24 only issue that remained was the forum, in what forum.  And I

25 recognize that BEPCO has waited a very, very long time to be

1  able to proceed with the -- to litigation.  But I do think -- I

2  do think that under these circumstances, and the difficulty of

3  this case, and all of the procedural confusion and machinations

4  that are occurring, I think I ought to continue the stay in

5  effect for the ten days just to give the parties an

6  opportunity, which you really haven't had to make a

7  determination as to what, if anything, you're going to do on

8  appeal.  Whether you're going to seek an appeal.  And I'm not

9  ruling on whether that appeal would be interlocutory or not,

10  and, you know, what legal impact it might have.  But I just

11  think that we ought to continue the stay for the ten days.

12          MR. DEMMY:  Yeah, I understand Your Honor is

13  declining to exercise your discretion --

14          THE COURT:  That's right.

15          MR. DEMMY:  -- to revoke the stay under the Rule, and

16  all other rights are reserved.

17          THE COURT:  Correct.

18          MR. DEMMY:  -- in connection with any appeal, if

19  taken, or any other request.  So, I understand the Court's

20  ruling in that regard.

21          (Attorneys confering off-the record)

22          THE COURT:  No, no, come, Mr. Werkheiser.

23          MR. WERKHEISER:  Clarification.  Because I -- I --

24  Your Honor, I just wanted to understand where you are with

25  respect to -- there has been a motion for a stay pending appeal

1 submitted with respect to that, not squarely addressed in Your

2 Honor's decision, I don't believe.  So, I'm a little concerned

3 that we're going to wait ten days, get confronted for a new

4 motion for a stay pending and then we will be, you know, some

5 additional period of time out from there from that.  So, I just

6 want to be clear that there's not going to be a further motion

7 in this Court for a stay pending appeal, given that there's one

8 already filed.

9 　　　　　MR. DEMMY:  Your Honor, I think that's -- I think

10 that's fair.  I'm not trying to delay BEPCO, I do want to

11 preserve our procedural rights.

12 　　　　　THE COURT:  You have the -- you have the automatic

13 tend days.

14 　　　　　MR. DEMMY:  Right.

15 　　　　　THE COURT:  And the only question is whether that

16 remains in effect or whether I'm withdrawing it.

17 　　　　　MR. DEMMY:  That's right.

18 　　　　　THE COURT:  And that was your point.

19 　　　　　MR. DEMMY:  That's right.

20 　　　　　THE COURT:  Expressed better than I had.  And that is

21 the case.

22 　　　　　MR. DEMMY:  And -- and in the event we were going to

23 decide to appeal and seek a stay pending appeal, clearly we

24 would -- we would ask the Court to then -- I think it's our --

25 we'd need the Court to rule one way or the other, whether on

1  the pending motion or on a new motion, you know, it -- in the

2  normal course of events, if we hadn't had motions for

3  reconsideration, we would have probably asked for the Court to

4  do so within the ten-day period.

5             THE COURT:  Right.

6             MR. DEMMY:  I think we can -- we can agree to do the

7  same here, we'll ask the Court to rule.  Without filing --

8  without -- and I guess what I'm saying is without filing a

9  motion and putting it on for June 7th and getting an automatic

10  -- I'm not -- that's not what I'm looking to do here.

11             MR. WERKHEISER:  Your Honor, I think I'm okay with --

12             THE COURT:  I understand.

13             MR. WERKHEISER:  -- what Mr. Demmy has said, but I'd

14  just like to confirm for my understanding.

15             THE COURT:  I'm just trying to think of what the

16  effect is.  Here's what we're going to do.  It's such a

17  procedural little nicety here given the reconsideration. And --

18  in other words, if you file your appeal, Mr. Demmy, you may

19  then come in and move for a stay pending appeal?

20             MR. DEMMY:  Let me -- let me -- maybe I can shed some

21  further light on this.

22             THE COURT:  And if you do that --

23             MR. DEMMY:  I think -- my understanding of the

24  procedure -- and I might be arguing sort of contrary to what

25  you'd think I might say, if -- if we file a notice of appeal, I

1 think we've divested the Court perhaps of jurisdiction.

2            THE COURT:   Correct.

3            MR. DEMMY:   At least based on the decisions I'm aware

4 of in this District and in this Circuit, there might be some

5 contrary opinion or some contrary authority elsewhere, but I

6 think in this Court, I'm fairly confident that if we were to

7 file that notice of appeal, it would divest the Court of

8 jurisdiction regarding our stay request, and we'd have to go to

9 the District Court.  And then we might have a problem

10 explaining to the District Court why we didn't get the

11 Bankruptcy Court to rule first.

12            So, I think we're -- we're going to have to do

13 something within that ten-day period regardless of filing a new

14 motion or proceeding on our already filed motion.  I think

15 we're going to need to -- if we decide that we would like to

16 appeal and have a stay pending appeal, we're going to have to

17 have this Court to decide within the ten days, because that's

18 our time period for filing a notice of appeal, after which I

19 don't think this Court could rule anymore.

20            THE COURT:   It's always been my understanding -- and

21 I didn't come prepared -- that you have to file your appeal

22 first.  I had that issue once in a case with -- it goes back a

23 long time, with Judge Balick.  And she told me, no, Mr. Gross,

24 you file your --

25            MR. DEMMY:   Actually, Your Honor --

1    THE COURT:  -- appeal and then you ask for a stay.

2    MR. DEMMY:  I actually had the opposite experience

3 with her where we did file the notice, and then she said I

4 don't have jurisdiction now, it's on appeal.

5    THE COURT:  And when I -- and when I went before

6 Judge Balick in that case, other people in the courtroom said

7 to me, you know, she always did just the opposite.

8          (Laughter)

9    THE COURT:  So, here's what we're going to do.

10    MR. WERKHEISER:  Uh --

11    THE COURT:  Go ahead, Mr. Werkheiser.

12    MR. WERKHEISER:  Oh, Your Honor, I was going to just

13 actually second Mr. Demmy's understanding of the rule.  I think

14 that once the notice is filed, that may divest the Court of

15 jurisdiction.

16    But -- but I did want to be clear, because there is a

17 pending motion already.

18    THE COURT:  Right.

19    MR. WERKHEISER:  And certainly if Your Honor decides

20 that within the ten days and were to grant the stay, that would

21 be one situation.  I just want to be clear that --

22    THE COURT:  That --

23    MR. WERKHEISER:  -- you know, if Your Honor doesn't

24 act on it, then whatever stay there is goes away, without

25 prejudice to Mr. Demmy and his client seeking a stay in the

1  District Court upon the filing of their appeal is my

2  understanding of the way the Rule would operate in this

3  situation.  I don't think the mere filing of the motion would

4  give them a stay beyond the ten days, nor do I think that they

5  should have the opportunity to file a new motion in this Court

6  since they already have one on file, Your Honor.

7          THE COURT:  Okay.

8          MR. EISENBERG:  And, Your Honor, this is Philip

9  Eisenberg.  I think actually what Mr. Demmy was asking was that

10  everybody agreed that we wouldn't have to file a new motion if

11  we were going to seek a stay because it would sort of be

12  redundant pleadings.  And so I -- I kind of echo what Mr.

13  Werkheiser has said.  And our understanding of the way it works

14  is you file your notice of appeal, but the stay issue still

15  needs to at least be raised as an initial matter in the

16  Bankruptcy Court.  And either it gets rule on or it doesn't get

17  ruled on, and the stay expires on its own force, and then you

18  seek relief from -- in the District Court.  And so I think -- I

19  think we all are in agreement on what the process and procedure

20  is.

21          MR. DEMMY:  I guess what I don't want to have happen

22  is if -- if we file our notice of appeal and this Court hasn't

23  ruled, that we then have a problem with the District Court

24  because we haven't received a decision from this Court.  And I

25  think the -- the Appellate Rule -- the Bankruptcy Appellate --

1  I really don't want to make this difficult.  I really want to

2  get to the end, but without having to go in front of Judge

3  Sleet or whomever and him say, well, why didn't you get an

4  order from the Bankruptcy Court, and why should I give you one

5  when you didn't follow the rule.

6          THE COURT:  Right.

7          MR. DEMMY:  That's my issue.

8          MR. WERKHEISER:  And, Your Honor, I --

9          THE COURT:  You see if --

10          MR. WERKHEISER:  I would never purport to speak for

11  our District Court judges, but as I read Rule 8005, the only

12  thing it requires of them, in order to be able to seek the stay

13  at a District Court, is to have raised it before the Bankruptcy

14  Judge or presented it to the Bankruptcy Judge in the first

15  instance, is the actual language that it says.  So, I think as

16  long as they presented it here, certainly I wouldn't be

17  inclined to argue in the District Court that they've waived the

18  right to seek the stay there, reserving all of our rights on

19  the merits, of course.

20          THE COURT:  And you see if I issue a decision on a

21  motion to stay an appeal that hasn't been filed, then, in

22  effect, I'm rendering an advisory opinion.

23          MR. DEMMY:  And I hear that, and maybe this is the

24  solution, Your Honor.  Perhaps -- I think the -- you, your

25  Court, this Court, can, in the first instance, determine its

23

1  own jurisdiction.

2              THE COURT:  Correct.

3              MR. DEMMY:  So, if -- if you don't believe you've

4  been divested of jurisdiction by the filing of a notice of

5  appeal, if in the event we were to decide to appeal and we file

6  our notice of appeal putting the stay issue clearly at issue --

7  because I don't want the Court to do work that it doesn't have

8  to do also, then at least you could decide whether we get it or

9  we don't get it on the merits, and not -- and I would hope that

10 BEPCO wouldn't raise the jurisdictional issue at that point,

11 but the Court could decide it without -- deciding it on the

12 basis that you did not have jurisdiction to do so.

13             THE COURT:  Right.  I've got a motion to stay pending

14 appeal pending before me.  I don't need a new one.  I don't

15 need a new one.  And I'm going to go back and do just a little

16 bit of research to see whether -- and I can't imagine I'm

17 supposed to rule on that motion unless an appeal was taken.

18             MR. WERKHEISER:  Your Honor --

19             THE COURT:  Because you've got your automatic ten-day

20 stay, that's why that's -- that's why that's in place.

21             MR. WERKHEISER:  Your Honor, my understanding of the

22 functioning of the Rule might be slightly different, which is I

23 think once the appeal is filed, it does divest the Court of

24 jurisdiction, and then the stay would need to be presented to

25 the District Court.

24

1           THE COURT:  Okay.

2           MR. WERKHEISER:  But as I said, in terms of

3 preserving their right to present it in the District Court, I

4 think they've done already by seeking the stay here.  And

5 whether Your Honor actually acts on that does not affect their

6 rights going forward, nor does the fact that you haven't acted

7 on it de facto continue the stay going forward --

8           THE COURT:  Well, then --

9           MR. WERKHEISER:  -- is my understanding.

10          THE COURT:  Then what I'm going to do is after the

11 hearing, I'm going to go back and make a decision and issue an

12 order on the motion the stay pending appeal.

13          MR. WERKHEISER:  Thank you, Your Honor.

14          THE COURT:  I think that's what the parties need, and

15 that's what I'll do.  So, we'll cover that at least.

16          MR. DEMMY:  I appreciate that, Your Honor.  But my

17 understanding is that the Court's decision not to waive or

18 otherwise dispense with the automatic ten-day stay will remain

19 in place.

20          THE COURT:  That's right.

21          MR. DEMMY:  Thank you, Your Honor.

22          THE COURT:  Correct.  And I'll make that clear in the

23 order, too.

24          So, now we've got the scheduling of your motion to

25 dismiss.

1          MR. DEMMY:  Well, I'm going to go back to the

2  beginning now.

3          THE COURT:  Okay.

4          MR. DEMMY:  Is the Court referring to the motion to

5  dismiss filed on the alter ego proceeding?  Or the motion that

6  we filed, the debtors have filed, regarding the Bass claim?

7  Those are two matters that are still technically open.

8          THE COURT:  Those are still open.

9          MR. DEMMY:  Yes.

10         THE COURT:  And what is your suggestion on the two?

11         MR. DEMMY:  On the former, Your Honor, I don't know

12  that we need to specifically schedule that at this point in

13  time.  Again, I'll defer to Mr. Eisenberg on that.  I think

14  what we ought to do is generally converse with BEPCO with

15  regard to a schedule for that adversary proceeding generally.

16  It seems to me that a motion to dismiss BEPCO's motion for stay

17  relief -- I don't want to say it's moot, I don't want to

18  concede that point, and I'm not going to do that.  But I just

19  don't think it's at forefront of that litigation under the

20  circumstances we're at standing here today.

21         As to the latter matter, Your Honor, it's the

22  debtors' view that we should -- the Court should allow us to

23  proceed with the motion for summary judgment on the claim, it

24  raises bankruptcy and Federal issues, and it would have the

25  possibility of greatly streamlining whatever litigation is

1  going on in Louisiana.

2          THE COURT:  Yes.

3          MR. DEMMY:  If we could -- if we could make that a

4  coverage case, as opposed to a claim litigation case, I think

5  that would greatly benefit the parties and the Court.  Both

6  courts.

7          So, just to sum up on that point, I think what we

8  would need there is the Court to set a hearing date, and

9  possibly in the context of -- I don't think we have anymore

10  omnibus dates with the Court.  The Court could set omnibus

11  dates, we could select an appropriate date for an argument on

12  that motion and work backward from there in terms of completing

13  the briefing on the motion for summary judgment with regard to

14  the Bass claims.

15          THE COURT:  Okay.  Thank you. Mr. Werkheiser?

16          MR. WERKHEISER:  Your Honor, and I apologize because

17  I think there's going to be an edge in my voice here.  But I

18  think the phrase that's been used in connection with

19  reconsideration and re-argument motions is the never ending

20  polemic.  And these are the very same arguments presented to

21  Your Honor on the venue issue, and in connection with

22  reconsideration, which is why they thought this was a better

23  forum and that should happen here.  Your Honor has ruled now.

24  And, Your Honor, what makes sense under the circumstances is to

25  go let that litigation happen and see what happens.  And then

1  if there are issues to be dealt with before this Court after

2  that litigation has reached an outcome in one manner or

3  another, we can come back and deal with those.  But -- but this

4  is simply another effort to force us to litigate on multiple

5  fronts when Your Honor has already ruled that this matter ought

6  to be decided in Louisiana, consistent with BEPCO's request.

7          So, we'd submit that the motion for summary judgment,

8  which 80 percent of which or more is -- is attacking us on the

9  same issues that will be litigated in Louisiana, and that

10  overlap with the coverage issues, ought not to go forward at

11  this time until there's been some decision or outcome or

12  definitive ruling in the Louisiana litigation that would make

13  it appropriate to -- to go back and consider those issues.

14          And I think that was what Your Honor ruled in the

15  final paragraph of your opinion.  Your Honor stated, "The

16  bottom line is this, BEPCO's lawsuit should proceed in

17  Louisiana against Santa Fe."  And I think Your Honor meant the

18  insureds, as well, "If Santa Fe prevails, the parties can

19  return to this Court for the resolution of issues such as

20  punitive damages and mere speculation at this point, and

21  whether Memorial is liable under the demand note."

22          I think you'd put in that category if there are any

23  discrete bankruptcy issues, we can come back to the Court and

24  deal with those at that time.

25          Thank you, Your Honor.

1          THE COURT:  That was my thinking.

2          MR. DEMMY:  And, Your Honor, I don't want to

3   foreclose Mr. Eisenberg, I know we're popping up and down, and

4   if he wants to jump in, he certainly can.  I don't -- I respect

5   all Court's rulings and generally don't ask a court to

6   reconsider and don't try to reargue.  And, frankly, Your Honor,

7   I just don't think we've ever heard definitely from the Court,

8   and if I'm a little dense on the subject, I apologize.  But I

9   don't think we've heard definitively about the motion for

10  summary judgment.  It's been deferred by order several times.

11  And even in the passage that Mr. Werkheiser read, I don't know

12  that the court definitely said something with regard to the

13  motion for summary judgment on the claim, and then we had the

14  Court's order which -- which sort of, in my view, at least,

15  merged the motion to dismiss in the alter ego with the motion

16  for summary judgment on the claim.  And we had the Court, at

17  the last hearing, indicate, well, let's deal with the forum

18  issue, and I know you want to move forward on other things, the

19  plan and the motion for summary judgment on the claim.  I'm not

20  saying the Court ruled in any fashion.  I'm saying -- I'm

21  asking and presenting the issue because I didn't -- I don't

22  think the Court had previously definitively ruled.  If the

23  Court says now I want it all to go in Louisiana, I accept what

24  the Court says.  I don't think the Court has said that

25  definitively yet.

1          THE COURT:  Okay.

2          MR. DEMMY:  And we -- we have a view that -- and

3    we've maintained it throughout, but have not tried to reargue

4    things that the Court has already decided.  But we have a view

5    that we believe that it can be dealt with efficiently by this

6    Court in this circumstance.  And that -- that's my explanation

7    for why I keep coming back to the motion for summary judgment.

8          THE COURT:  Well, let's talk -- let me -- before I

9    even hear from Mr. Eisenberg --

10          MR. EISENBERG:  Yes, Your Honor.

11          THE COURT:   Let me hear from either Mr. Werkheiser

12    or Mr. Carver or Ms. Moses about the overlap that Mr.

13    Werkheiser mentioned, because I am concerned about overlap.

14    And I do want BEPCO to be able to proceed with its litigation

15    effectively, and that is a concern of the Court, too.  So,

16    let's talk about the overlap of issues and what issue this

17    Court out to be deciding and what issues the Court in Louisiana

18    ought to be deciding, and in what order it is most appropriate

19    to do that.

20          I don't want us to have, you know, two litigations

21    going on at the same time with the potential for inconsistency,

22    for example.

23          MR. WERKHEISER:  Yes, Your Honor.  Your Honor, if I

24    may, I'm going to try to volunteer Mr. Carver to speak to that

25    issue because I think he can -- he can talk more knowledgeably

1   about the issues that are involved in the merits of BEPCO's

2   claim against Santa Fe, and -- and issues related to the

3   settlement which, I think, might be dealt with by a Louisiana

4   court.

5            THE COURT:  That would be fine.  Mr. -- Mr. Carver,

6   are you in a position to respond?

7            MR. CARVER:  Yes, Your Honor.  Your Honor, I --

8   Hampton Carver for BEPCO.  I don't have their summary judgment

9   motion before me, but basically that summary judgment motion

10   raises the very issues which will be a defense to our

11   litigation in Louisiana, including a host of issues about

12   whether we are stopped by matters of collateral estoppel

13   because of supposedly inconsistent positions we took when the

14   Tebow sued us, with respect to whether we are entitled under

15   Louisiana law to recover against Santa Fe, with respect to

16   whether we will be able to show under Louisiana law that Santa

17   Fe would have been liable to the Tebows.  And, hence, since we

18   are subject -- we are subrogated to the Tebow's rights, Santa

19   Fe would be liable to us.  Whether, under Louisiana law,

20   respecting solidary obligations, Santa Fe would be solidarily

21   liable with us and, therefore, we would have rights against

22   them.  There's just a host of issues which we will expect Santa

23   Fe and its insurers to raise in the Louisiana court.

24            And you have referred these matters to the Louisiana

25   court.  And, with all due respect, Your Honor, BEPCO doesn't

31

1    think you should be deciding them in the first instance.

2            THE COURT:  And I don't either.

3            MR. CARVER:  And that being the case, I think what

4    Mr. Werkheiser suggested, which is that we go forward in

5    Louisiana, we see whether we can recover against Santa Fe.  If

6    the Court rules in Santa Fe's favor, that will suit all issues

7    before you.  And one of the issues that Santa Fe has raised, of

8    course, is proscription.

9            In the event that the more likely result, however,

10   that I think the Court and the debtors and Santa Fe and we all

11   agree that there's a strong likelihood that there's insurance

12   coverage, what we hope will happen, frankly, Your Honor, is

13   that we will reach some settlement with the insurers, which

14   will moot this issue altogether.  And would also moot the

15   issues respecting our alter ego claims against GlobalSantaFe,

16   which, for this reason, we would urge Your Honor to put off

17   until after the Louisiana suit is resolved or settled.

18           Now I know I'm jumping to another issue, but that

19   issue is related to this issue.  In order to -- well, as I

20   said, in order for us to have a valid alter ego claim against

21   GlobalSantaFe, or the other SFI entities, we have to have a

22   valid claim against Santa Fe Minerals, Inc. in the first place,

23   and that will be decided by the Louisiana Court.

24           THE COURT:  That -- you see, that was what I was

25   thinking originally.

1          MR. CARVER:  And if the issues relating to the alter

2    ego claims are not put off, we're going to have two parallel

3    proceedings going at the same time.  And even if you decide

4    that the claim against the alter ego claims are property of the

5    estate and that BEPCO doesn't individually have standing to

6    pursue them, then you would have to decide, Your Honor, whether

7    an independent third party should be appointed to pursue those

8    claims.  And then very extensive discovery would have to go

9    forward with respect to those claims, all of which an be

10   avoided, we hope, if the Louisiana suit goes forward and either

11   -- and we don't hope this -- either Santa Fe wins or we make a

12   settlement with the insurers, which is, frankly, what we hope

13   to do.

14         MR. EISENBERG:  Your Honor, Philip Eisenberg.

15         THE COURT:  Yes, Mr. Eisenberg.

16         MR. EISENBERG:  I appreciate being heard on this,

17   Your Honor.  On behalf of the GlobalSantaFe entities.  I think

18   what my focus is -- and Your Honor's ruling, Your Honor

19   indicated that the plan would have to be modified and move

20   forward.

21         THE COURT:  Correct.

22         MR. EISENBERG:  And the way I'm at least looking at

23   this is how do we now, incorporating the fact that the stays

24   are lifted, there's ongoing litigation in Louisiana, we

25   incorporate that aspect into a plan and we move forward with

33

1  the plan process.

2       And I can say my client, and I believe the debtors

3  have been kind of held back in pursuing that, and we're very --

4  quite interested in moving forward with the plan process.  And

5  we believe that that is absolutely a concurrent step that will

6  take place while the -- the -- any in whatever litigation and

7  shape and form BEPCO wants to take in Louisiana will go

8  forward.

9       At the same time, there may be, because of the plan,

10 the bankruptcy issues that get raised that might touch on

11 things that are pending between BEPCO and Santa Fe, such as how

12 do you classify the claims, how do you address the claims in a

13 confirmation proceeding, and things of that nature.  And those

14 are just normal things the Bankruptcy Courts do all the time in

15 the plan process when a stay has been lifted and there's

16 litigation.  And I believe what Mr. Demmy is talking about with

17 the summary judgment on the claims objection on the claim is to

18 define those things that will help us to move forward in the

19 plan process, i.e., what is the nature of the claim, and things

20 of that nature under Section 502.

21       And so those -- that's the process that we envision

22 moving forward.  And I think quite right, BEPCO can, in any

23 shape or form as they choose, move forward with seeking alter

24 ego relief and discovery or not.  And to the extent that they

25 believe that moving forward in the litigation in Louisiana is

1 the proper approach first, before they start pursuing that,

2 then that's their choice.

3          On the other hand, the debtor and my clients, the

4 GlobalSantaFe entities, have the right to move forward with the

5 plan process and also to the extent that we want to move

6 forward with certain elements of the plan that are there now,

7 modify further elements, I think we have a right to do that, as

8 well.  And so what I'm mindful of is -- in hearing the

9 dialogue, is that we have the right to fully and completely

10 move forward with the plan process while they're pursuing their

11 rights in the State Court.  Because we have, likewise, been

12 delayed in moving forward in the plan process.  And so that --

13 that's -- that's my concern, and that's why I think as part of

14 the scheduling process, we should have at least certain aspects

15 of the summary judgment motion move forward and to help define

16 and organize and expedite the plan process.  That, I believe,

17 is one of the reasons why the summary judgment was filed in the

18 first place.  And we intend to join in, not on proscription and

19 things of that, but issues that we believe will advance the

20 plan process.  And that's really our goal here, it's to get a

21 plan in place and to get a plan confirmed, and to move this

22 through the bankruptcy process so that we're out of the

23 bankruptcy process.

24          MR. WERKHEISER:  Your Honor, if I may, for the

25 record, Gregory Werkheiser.

 1          THE COURT:  Of course.

 2          MR. WERKHEISER  Your Honor, I think we're conflating

 3  a number of issues.  And the first is what Your Honor has

 4  ruled, which is we ought to go forward in Louisiana.

 5          The -- the second issue is, well, you know, what

 6  effect, if any, does our going forward have in Louisiana on the

 7  estate.  And, Your Honor, for all practical purposes, we're

 8  drilling into a dry whole as against the estate.  For all

 9  practical purposes, any recovery is coming from the insurance

10  or is coming from the GlobalSantaFe entities if we get to a

11  point where Your Honor allows us to proceed against them or a

12  Trustee or third party fiduciary were to proceed against them.

13  So, this is not a case where there's a recovery from estate

14  assets that is being dissipated by us going forward --

15          THE COURT:  And it's not a case where we have an

16  operating entity.

17          MR. WERKHEISER:  Correct, Your Honor.  Your Honor, as

18  to the plan issues that have been raised, I think the first

19  step there is for them to file their new plan and let's see.

20  Because I -- I -- if I -- I have a hard time fathoming how

21  BEPCO's claim, which is most assuredly a pre-petition claim, is

22  a confirmation issue for that plan.  It is -- if this plan is

23  anything other than a pot plan that says we're going to fund X

24  dollars, and -- and creditors in order with the priorities of

25  the Bankruptcy Code are going to take whatever distributions

1  they are rateably entitled to, it's not before Your Honor but I
2  don't know how that -- it can be confirmed in a case like this.

3       So, I don't think the summary judgment motion is
4  anything that needs to go forward right now.  Your Honor, let's
5  file the plan and maybe we reevaluate the issue at that time.

6       Your Honor, I do want to mention a couple of issues,
7  and I think Mr. Carver hinted at them.  Which is that if a plan
8  does go forward, I expect it will largely be premised, again,
9  on an attempt to compromise the so-called alter ego claims that
10 assert ownership over them between the debtor and its parent,
11 GlobalSantaFe.

12      And that does raise issues as to the interested
13 nature of the transaction, whether, in fact, there ought to be
14 a third party fiduciary, such as a Trustee or an examiner in
15 that process.  We are, at this stage of the case, well beyond
16 the exclusive periods for the debtor, even by the outside dates
17 that Congress would permit.

18      So, you know, that -- it's not before Your Honor but
19 in terms of mapping the path forward, I think that is something
20 that is probably -- would have to be addressed if another plan
21 is put back on the table.  Thank you.

22      THE COURT:  Well, here's what I'm going to say before
23 we all become even more sort of argumentative on the issues.
24 My whole -- one of the problems that's happened in this case is
25 that there have been a lot of moving parts.  And it seemed as

1  if there would be some progress or some direction to the case

2  and once side or the other would then interject sort of a -- an

3  alternate course.  And my thought in the -- in the decision on

4  reconsideration was that the case in Louisiana should proceed

5  because until we have a result in Louisiana, all of these other

6  issues are going to be very, very difficult to resolve, and

7  they may never have to be resolved.  And there could be

8  inconsistencies.

9       So, I agree with BEPCO here.  That I would like the

10  litigation in Louisiana to proceed, at least for a reasonable

11  period of time to give them an opportunity to commence the

12  case, to take some discovery, to engage in settlement

13  discussions before some of the bankruptcy-related issues become

14  active again.  And -- so, to that end, I am not going to

15  schedule anything further on either the motion for summary

16  judgment in the adversary case, or the motion to dismiss in the

17  -- in the main cases.  And allow BEPCO to get its feet on the

18  ground in the litigation on Louisiana, which will have a

19  tremendous impact upon whatever the debtors do in this court.

20  And I just think that makes all the sense in the world, and it

21  will clarify things in a way that really hasn't been the case

22  heretofore.  And so I -- as part of this order that I'm going

23  to issue addressing the stay relief --

24       MR. WERKHEISER:  Yes, Your Honor.

25       THE COURT:  -- I will also address the scheduling,

1  which will be that the -- the pending motions from the GSF

2  entities and the debtors are held in abeyance.

3        Now, I am not going to be in a position to know when

4  something happens necessarily in the Louisiana litigation, but

5  I'm sure that one party or the other, if some action is needed

6  on the part of the Court, will bring it to my attention.

7        MR. DEMMY:  Your Honor, on -- on the point of

8  scheduling matters and whether matters should be held in

9  abeyance, Your Honor did not touch upon -- and clearly we

10 believe that an amended plan is required based on the Court's

11 rulings on various issues.  And as Mr. Eisenberg stated, it was

12 our intent to proceed with an amended plan, and I didn't hear

13 the Court say anything about that.  I think that we should be

14 allowed to proceed with that process.  The Court, in the

15 context of confirmation, can always make whatever rulings and

16 scheduling decision it would like to make.  But I think we

17 should be allowed to proceed so the Court -- I think that will

18 further clarify matters.

19        THE COURT:  I think it may, too.  And I certainly am

20 not going to enjoin, if you will, the debtors from filing an

21 amended plan.  And I think we'll see -- we'll see what that

22 plan says obviously, and BEPCO, I'm sure, will have some views

23 on the plan.

24        MR. DEMMY:  Yes, sir.

25        THE COURT:  But at least we won't be involved in

1  rather heavy litigation, even if it is just motion practice,

2  but it's still litigation while the Louisiana case is allowed

3  to proceed.

4          MR. WERKHEISER:  Understood, Your Honor.  Thank you.

5          THE COURT:  I see Mr. Buchbinder waiting to rise.

6  Don't complicate it further, Mr. Buchbinder, bring clarity.

7          MR. BUCHBINDER:  Good morning, Your Honor.

8          THE COURT:  Good morning.

9          MR. BUCHBINDER:  David Buchbinder on behalf of the

10 United States Trustee.

11          I would just like to observe this morning that our

12 purpose here ultimately is to have a confirmed plan or other

13 disposition of the case, and from the perspective of my client,

14 moving this case forward through the plan process seems to be

15 most appropriate, and I would also observe from my own

16 experiences that -- and of all the people in this room that

17 this is not the first Chapter 11 case in which we have what,

18 for all practical purposes, is a two-party dispute.

19          THE COURT:  Right.

20          MR. BUCHBINDER:  But in which the Court has found

21 that there are other interests that are ultimately implicated.

22 And it is certainly not the first case in which a debtor has

23 faced the prospect of litigation, which is germane to the

24 outcome of the case, and these things can certainly be

25 accounted for in a properly drafted plan.  And I am all in

40

1  favor of the plan process moving forward.

2         THE COURT:  Thank you, Mr. Buchbinder.  And I agree

3  with that and I think I will make that clearer in the order

4  that I issue that although the pending motions are not going to

5  proceed, the plan process may.  The filing of an amended plan.

6         And then we'll have to see how we sort that out.

7         MR. WERKHEISER:  We'll see where we are at that time.

8         THE COURT:  We'll see where we are.  But I don't

9  think any of us should be speculating today.

10        MR. DEMMY:  The only other -- I want to move on.  So,

11 if you want to go back.

12        THE COURT:  On that issue, Mr. Werkheiser?

13        MR. WERKHEISER:  Your Honor, it would just -- it

14 occurred to me that if, in fact, a plan is filed at some stage

15 further down the road by the debtors or GlobalSantaFe or anyone

16 else now that exclusivity is dissipated, you know, it may be

17 appropriate at that point before other litigation ramps up then

18 to have some sort of status conference with the Court.

19        THE COURT:  Oh, I would agree.  I would agree.

20        MR. WERKHEISER:  All right.  Thank you, Your Honor.

21        MR. DEMMY:  Always happy to get together and talk.

22        THE COURT:  Always happy.

23        MR. DEMMY:  The only other thing that I would like to

24 raise at this point is omnibus hearing dates, should we contact

25 chambers to schedule them?  Just maybe as holding dates.  We

41

1  might not use them under the circumstances, but I think we

2  ought to --

3          THE COURT:  I think you should, too.

4          MR. DEMMY: -- at least get some scheduled.

5          THE COURT:  Yes, I think that's a good idea, and I'm

6  -- I won't schedule them because I always foul up the

7  scheduling.  But if you will just call Ms. Scaruzzi, she will

8  be happy to give you dates.

9          MR. DEMMY:  We will do that.  And that -- that's all

10 that the debtors have, I believe.  I'll invite BEPCO and the

11 GSF folks to chime in, if they have anything.

12         THE COURT:  Anything further, Mr. Werkheiser?

13         MR. WERKHEISER:  Your Honor, I don't think we have

14 anything further today.

15         THE COURT:  All right.  Counsel, I thank you.  Thank

16 you for your patience with the Court at time in this case.  And

17 sometimes -- I was just saying at a conference where I spoke

18 yesterday, you know, that coming in -- being a judge is kind of

19 like you'd walk into the court and they turn on the lights, and

20 then they turn them back off again, and sometimes we only see

21 things in intervals, and don't see the bigger picture and don't

22 really know sometimes what some of the motivations are or the

23 strategies, and that -- that can make it difficult, and I think

24 that's been the case here, was not having an overall better

25 understanding early, early on in the case where things might

1 head.  But we'll get them back on track now, and I thank

2 everyone and --

3          MR. DEMMY:  No apologies need, Your Honor.

4          THE COURT:  We will stand in recess and get some

5 omnibus dates and I will issue that order promptly on the stay

6 issue, as well as the scheduling issue.

7          MR. DEMMY:  Thank you, Your Honor.

8          MR. WERKHEISER:  Thank you, Your Honor.

9              (Proceedings Adjourn at 10:57 A.M.)

10

11

12              C E R T I F I C A T I O N

13

14      I, Karen Hartmann, certify that the foregoing is a

15 correct transcript to the best of my ability, from the

16 electronic sound recording of the proceedings in the above-

17 entitled matter.

18

19  /s/  *Karen Hartmann*               Date:  April 24, 2008

20 TRANSCRIPTS PLUS

21

22

23

24

25

/

/S/- 42:19

1

10:57- 42:9
11- 39:17
15- 11:24
16- 12:20
16TH- 15:17

2

2006- 5:22
2008- 42:19
24- 42:19
25- 12:7
25TH- 10:23 12:2
14:21
29TH- 5:22

4

4- 8:13
4001A3- 14:14

5

502- 33:20

7

7TH- 18:9

8

80- 27:8
8005- 22:11

A

ABEYANCE- 38:2,9
ABILITY- 42:15
ABLE- 16:1 22:12
29:14 30:16
ABOVE- 42:16
ABSENCE- 14:16
ACCEPT- 28:23
ACCORDANCE- 11:7
ACCOUNTED- 39:25
ACT- 20:24
ACTED- 14:23 24:6
ACTING- 8:16
ACTION- 38:5
ACTIVE- 37:14
ACTS- 24:5
ACTUAL- 22:15
ADDRESS- 7:13
8:12 33:12 37:25
ADDRESSED- 5:8
17:1 36:20
ADDRESSING- 37:23
ADJOURN- 42:9
ADMONISH- 8:16
ADOPT- 15:7
ADVANCE- 34:19
ADVERSARY-
4:18,25 6:17 7:24
25:15 37:16
ADVISORY- 22:22
ADVOCATE- 9:17
AFFECT- 24:5
AFTERNOON- 3:21
AGAINST- 11:13
27:17 30:2,15,21

31:5,15,20,22
32:4 35:8,11,12
AGREE- 15:11 18:6
31:11 37:9
40:2,19
AGREED- 21:10
AGREEMENT- 21:19
AHEAD- 20:11
ALLOW- 25:22
37:17
ALLOWED- 38:14,17
39:2
ALLOWS- 35:11
ALTER- 5:13
6:1,5,14,19 7:8
10:12 25:5 28:15
31:15,20 32:1,4
33:23 36:9
ALTERNATE- 37:3
ALTOGETHER- 34:11
AMENDED-
38:10,12,21 40:5
AMONGST- 14:3
ANYMORE- 19:19
26:9
APOLOGIES- 42:3
APOLOGIZE- 4:9
8:18 26:16 28:8
APOLOGY- 4:11
APPELLATE- 21:25
APPLY- 13:21
14:7,15
APPOINTED- 32:7
APPRECIATE- 9:13
10:4 24:16 32:16
APPRECIATED- 8:22
APPROACH- 34:1
APPROPRIATE-
26:11 27:13 29:18
39:15 40:17
APRIL- 12:20
15:16 42:19
ARGUE- 22:17
ARGUING- 18:24
ARGUMENT- 6:4
26:11
ARGUMENTATIVE-
36:23
ARGUMENTS- 26:20
ASPECT- 32:25
ASPECTS- 34:14
ASSERT- 6:4 36:10
ASSETS- 35:14
ASSUREDLY- 35:21
ATTACKING- 27:8
ATTEMPT- 36:9
ATTENTION- 38:6
ATTORNEYS- 16:21
AUTHORITY- 19:5
AUTOMATIC- 11:20
12:10,19 13:22
17:12 18:9 23:19
24:18
AVOIDED- 32:10
AWARE- 4:22 19:3

B

BACK- 5:22 14:21
19:22 23:15 24:11

25:1 27:3,13,23
29:7 33:3 36:21
40:11 41:20 42:1
BACKWARD- 26:12
BALICK- 19:23
20:6
BANKRUPTCY- 19:11
21:16,25
22:4,13,14 25:24
27:23 33:10,14
34:22,23 35:25
BASED- 19:3 38:10
BASIS- 23:12
BASS- 7:4 25:6
26:14
BECOME- 36:23
37:13
BENEFIT- 13:10
14:19 26:5
BEPCO- 4:3,24
5:19 10:20 12:14
25:14 29:14
30:8,25 32:5
33:7,11,22
37:9,17 38:22
41:10
BEPCO'S- 6:18
25:16 27:6,16
30:1 35:21
BIG- 5:2 13:23
BIT- 23:16
BOTH- 6:19 26:5
BOTTOM- 27:16
BRIDGE- 8:21
BRIEF- 14:14
BRIEFED- 6:20
14:22
BRIEFING- 4:16
7:22 26:13
BUCHBINDER-
39:5,6,7,9,20
40:2
BURDEN- 8:23
BUSINESS- 11:1
BUSY- 4:8
BUTTON- 13:19

C

CALL- 41:7
CAN- 11:14 15:13
18:6,20 22:25
27:3,18,23 28:4
29:5,25 31:5
32:9,10 36:2
38:15 39:24 41:23
CAN'T- 23:16
CARVER-
3:10,12,14
29:12,24 30:5,7,8
31:3 32:1 36:7
CASES- 37:17

CATEGORY- 27:22
CAUSED- 8:15
CERTAIN- 3:19
34:6,14
CERTAINLY- 9:23
13:9 14:17,18
15:5 20:19 22:16
28:4 38:19
39:22,24
CERTIFY- 42:14
CHAMBERS- 40:25
CHANCE- 4:2,3
13:19
CHANGE- 9:1,2
CHAPTER- 39:17
CHEVEZ- 3:7 13:18
CHIME- 41:11
CHOICE- 34:2
CHOOSE- 33:23
CHOSE- 14:17
CIRCUIT- 19:4
CIRCUMSTANCE-
14:18 29:6
CIRCUMSTANCES-
9:5 16:2 25:20
26:24 41:1
CLAIM- 4:24 5:9
6:14 25:6,23 26:4
28:13,16,19 30:2
31:20,22 32:4
33:17,19 35:21
CLAIMS- 6:1,5 7:4
10:12 26:14 31:15
32:2,4,8,9
33:12,17 36:9
CLARIFICATION-
16:23
CLARIFY- 37:21
38:18
CLARITY- 39:6
CLASSIFY- 33:12
CLEARER- 40:3
CLIENTS- 24:3
CLOSE- 9:18,19
CODE- 35:25
COLLATERAL- 30:12
COMBINED- 7:7
13:24
COME- 16:22 18:19
19:21 27:3,23
COMES- 13:23
COMING- 29:7
35:9,10 41:18
COMMENCE- 37:11
COMMENT- 13:16
14:12
COMMENTS- 15:7
COMPLETELY- 34:9
COMPLETING- 26:12
COMPLETION- 4:16
COMPLEXITY- 11:8
COMPLICATE- 39:6
COMPLY- 4:13
COMPROMISE- 36:9
CONCEDE- 25:18
CONCERN- 11:17
12:10 29:15 34:13
CONCERNED- 17:2
29:13

CONCERNS- 11:12
12:17 14:1
CONCLUDES- 12:20
15:18
CONCURRENT- 33:5
CONFERENCE- 3:19
11:2 40:18 41:17
CONFERRING- 16:21
CONFIDENT- 19:6
CONFIRM- 18:14
CONFIRMATION-
33:13 35:22 38:15
CONFIRMED- 34:21
36:2 39:12
CONFLATING- 35:2
CONFRONTED- 3:7
CONFUSED- 5:2 7:6
CONFUSION- 7:5
16:3
CONGRESS- 36:17
CONNECTION- 3:19
6:18 11:22 12:16
15:14,20 16:18
26:18,21
CONSENT- 13:11
CONSENTED-
12:14,15 15:1
CONSIDER- 8:25
10:15,17 27:13
CONSISTENT- 27:6
CONTACT- 40:24
CONTEMPLATED-
13:7
CONTEXT- 8:22
26:9 38:15
CONTINUATION-
12:13
CONTINUE- 16:4,11
24:7
CONTINUES- 12:20
CONTINUING- 10:16
CONTRARY- 18:24
19:5
CONVERSE- 25:14
COUNSEL- 3:1 4:3
8:2 9:24 41:15
COUPLE- 4:1 36:6
COURSE- 4:12 7:16
11:14,23 12:9
14:14 15:22 18:2
22:19 31:8 35:1
37:3
COURT'S- 4:13,14
6:17 10:19 11:7
13:8 16:19 24:17
28:5,14 38:10
COURTROOM- 20:6
COURTS- 26:6
33:14
COVER- 24:15
COVERAGE- 26:4
27:10 31:12
CREDITORS- 35:24
CROSSED- 9:19
CROSSING- 9:17

D

DAMAGES- 27:20
DATE- 26:8,11

42:19
**DATES-** 26:10,11
36:16 40:24,25
41:8 42:5
**DAVID-** 39:9
**DAY-** 3:22 11:1
12:22
**DAYS-** 13:21
14:15,19 16:5,11
17:3,13 19:17
20:20 21:4
**DE-** 24:7
**DEAD-** 10:2
**DEAL-** 27:3,24
28:17
**DEALING-** 7:3
10:11
**DEALT-** 27:1 29:5
30:3
**DEBTOR-** 10:21
34:3 36:10,16
39:22
**DEBTOR'S-** 7:1
**DEBTORS-** 3:17
11:12 25:6 31:10
33:2 37:19
38:2,20 40:15
41:10
**DEBTORS'-** 4:23
7:3 25:22
**DECEMBER-** 5:22
**DECIDE-** 17:23
19:15,17
23:5,8,11 32:3,6
**DECIDED-** 27:6
29:4 31:23
**DECIDES-** 20:19
**DECIDING-** 23:11
29:17,18 31:1
**DECISION-** 6:16
8:7,13 9:2,7
11:23 14:22 15:23
17:2 21:24 22:20
24:11,17 27:11
37:3 38:16
**DECISIONS-** 19:3
**DECLARATORY-**
4:17,21
**DECLINING-** 16:13
**DEFAULT-** 14:15
**DEFENSE-** 30:10
**DEFER-** 7:18 8:1
25:13
**DEFERRED-** 28:10
**DEFINE-** 33:18
34:15
**DEFINITELY-**
28:7,12
**DEFINITIVE-** 27:12
**DEFINITIVELY-**
28:9,22,25
**DEGREE-** 8:20
**DELAY-** 17:10
**DELAYED-** 34:12
**DEMAND-** 27:21
**DEMMY'S-** 20:13
**DENSE-** 28:8
**DETERMINATION-**
16:7

**DETERMINE-** 22:25
**DIALOGUE-** 34:9
**DIDN'T-** 4:5
19:10,21 22:3,5
28:21 38:12
**DIFFERENT-** 9:12
23:22
**DIFFICULT-** 9:15
10:1 22:1 37:6
41:23
**DIFFICULTY-** 16:2
**DIRECTED-** 4:4
10:25
**DIRECTION-**
4:13,14 13:11
37:1
**DIRECTS-** 4:15
**DISCOVERY-** 32:8
33:24 37:12
**DISCRETE-** 8:8
27:23
**DISCRETION-** 16:13
**DISCRETIONARY-**
14:14 15:12
**DISCUSSIONS-**
37:13
**DISMISS-** 5:23,24
13:24 14:1,4,5
24:25 25:5,16
28:15 37:16
**DISPENSE-** 24:18
**DISPOSITION-**
39:13
**DISPUTE-** 39:18
**DISRESPECT-** 9:24
**DISSIPATED-** 35:14
40:16
**DISTRESSED-** 8:14
**DISTRIBUTIONS-**
35:25
**DISTRICT-**
19:4,9,10
21:1,18,23
22:11,13,17 23:25
24:3
**DIVEST-** 19:7
20:14 23:23
**DIVESTED-** 19:1
23:4
**DOESN'T-** 20:23
21:16 23:7 30:25
32:5
**DOLLARS-** 35:24
**DRAFTED-** 8:18
39:25
**DRILLING-** 35:8
**DRY-** 35:8
**DUE-** 30:25

**E**

**EARLIER-** 15:22
**EARLY-** 3:21 41:25
**ECHO-** 21:12
**EDGE-** 26:17
**EFFECT-** 11:1,4
13:10 16:5 17:16
18:16 22:22 35:6
**EFFECTIVELY-**
29:15

**EFFICIENTLY-** 29:5
**EFFORT-** 27:4
**EGO-** 5:13
6:1,5,14,19 7:8
10:12 25:5 28:15
31:15,20 32:2,4
33:24 36:9
**EISENBERG-**
3:3,5,7 7:19
11:14 13:16,17
21:8,9 25:13 28:3
29:9,10
32:14,15,16,22
38:11
**EISENBERG'S-** 15:7
**ELECTRONIC-** 42:16
**ELEMENTS-** 34:6,7
**ELSEWHERE-** 19:5
**ENDING-** 26:19
**ENGAGE-** 37:12
**ENJOIN-** 38:20
**ENTERED-** 11:24
12:17 15:16
**ENTITIES-** 5:22
11:12 31:21 32:17
34:4 35:10 38:2
**ENTITIES'-** 4:17
6:16
**ENTITLED-** 30:14
36:1 42:17
**ENTITY-** 35:16
**ENVISION-** 33:21
**ESSENCE-** 12:12
**ESSENTIALLY-** 8:24
**ESTATE-** 32:5
35:7,8,13
**ESTOPPEL-** 20:6
**EVENING-** 3:22
**EVENTS-** 18:2
**EVERYBODY-** 21:10
**EVERYONE-** 9:14
42:2
**EXAMINER-** 36:14
**EXAMPLE-** 29:22
**EXCLUSIVE-** 36:16
**EXCLUSIVITY-**
40:16
**EXERCISE-** 16:13
**EXPECT-** 4:7 30:22
36:8
**EXPEDITE-** 34:16
**EXPERIENCE-** 20:2
**EXPERIENCES-**
39:16
**EXPIRATION-** 12:18
**EXPIRED-** 12:11
**EXPIRES-** 21:17
**EXPLAINING-** 19:10
**EXPLANATION-** 29:6
**EXPRESS-** 9:20
**EXPRESSED-** 13:9
17:20
**EXTENDED-** 12:5
**EXTENSIVE-** 32:8
**EXTENT-** 33:24
34:5

**F**

**FACED-** 39:23

**FACTO-** 24:7
**FAIR-** 17:10
**FAIRLY-** 19:6
**FASHION-** 28:20
**FATHOMING-** 35:20
**FAVOR-** 31:6 40:1
**FE-** 3:20 10:21
30:2,15,17,19,20,
23
27:17,18
31:5,7,10,22
32:11 33:11
**FE'S-** 31:6
**FEBRUARY-** 11:24
**FEDERAL-** 25:24
**FEET-** 37:17
**FIDUCIARY-** 35:12
36:14
**FILE-** 18:18,25
19:7,21,24 20:3
21:5,6,10,14,22
23:5 35:19 36:5
**FILED-** 5:21 6:17
11:25 17:8 19:14
20:14 22:21 23:23
25:5,6 34:17
40:14
**FILING-** 18:7,8
19:13,18 21:1,3
23:4 38:20 40:5
**FINAL-** 27:15
**FINALLY-** 12:20
15:18
**FINE-** 9:16 30:5
**FIRST-** 8:7
19:11,22 22:14,25
31:1,22 34:1,18
35:3,18 39:17,22
**FOCUS-** 32:18
**FOLKS-** 41:11
**FOLLOW-** 9:7 22:5
**FOOTNOTE-** 8:13
**FORCE-** 21:17 27:4
**FORCEFUL-** 9:17
**FORECLOSE-** 28:3
**FORECLOSING-**
10:16
**FOREFRONT-** 25:19
**FOREGOING-** 42:14
**FORM-** 33:7,23
**FORMER-** 25:11
**FORUM-** 15:24
26:23 28:17
**FOUL-** 41:6
**FOUND-** 39:20
**FRANKLY-** 12:21
28:6 31:12 32:12
**FREE-** 11:6 14:17
**FRONT-** 22:2
**FRONTS-** 27:5
**FULLY-** 14:25 34:9
**FUNCTIONING-**
23:22
**FUND-** 35:23
**FURTHER-** 13:14
17:6 18:21 34:7
37:15 38:18 39:6
40:15 41:12,14

**G**

**GENERALLY-** 7:24
25:14,15 28:5
**GERMANE-** 39:23
**GET-** 12:7 13:6
17:3 19:10 21:16
22:2,3 23:8,9
33:10 34:20,21
35:10 37:17 40:21
41:4 42:1,4
**GETS-** 21:16
**GIVE-** 14:19 16:5
21:4 22:4 37:11
41:8
**GIVEN-** 9:5,6 11:8
17:7 18:17
**GLOBALSANTAFE-**
5:22 6:16
31:15,21 32:17
34:4 35:10 36:11
40:15
**GO-** 10:20 12:8
13:5 15:2 19:8
20:11 22:2 23:15
24:11 25:1 26:25
27:10,13 28:23
31:4 32:8 33:7
35:4 36:4,8 40:11
**GOAL-** 34:20
3:1,2,3,5,6,12,14
,16
**GOOD-** 39:7,8 41:5
**GOT-** 3:7 9:18,19
23:13,19 24:24
**GRANT-** 8:25 9:1
20:20
**GRANTED-** 12:16
**GRANTING-** 10:19
**GREATEST-** 9:14
**GREATLY-** 25:25
26:5
**GREGORY-** 5:19
12:24 34:25
**GROSS-** 19:23
**GROUND-** 37:18
**GSF-** 4:16 11:12
38:1 41:11
**GUESS-** 18:8 21:21

**H**

**HADN'T-** 12:21
18:2
**HAMPTON-** 3:10
30:8
**HAND-** 34:3
**HAPPY-** 40:21,22
41:8
**HARD-** 12:22 35:20
**HASN'T-** 21:22
22:21 37:21
**HAVEN'T-** 3:24 4:2
9:25 10:14 16:6
21:24 24:6
**HEAD-** 42:1
**HEAR-** 7:15 8:3
22:23 29:9,11
38:12
**HEARD-** 13:15

28:7,9 32:16
HEARING- 12:2,7,9 24:11 26:8 28:17 34:8 40:24
HEAVY- 39:1
HELD- 33:3 38:2,8
HELP- 33:18 34:15
HENCE- 30:17
HERE'S- 18:16 20:9 36:22
HERETOFORE- 37:22
HIGH- 8:23
HIGHEST- 9:10,11,24
HINTED- 36:7
HOLD- 9:10,24
HOLDING- 40:25
HONOR'S- 11:18,23 13:11 17:2 32:18
HOPE- 23:9 31:12 32:10,11,12
HOPING- 8:12
HOST- 30:11,22

I
I'D- 18:13
I'LL- 7:18 8:1 24:15,22 25:13 41:10
I'VE- 3:7 7:6 23:13
IDENTIFIED- 11:18
IE- 33:19
IMAGINE- 23:16
IMPACT- 16:10 37:19
IMPLICATED- 39:21
IMPRESS- 9:3
INARTFULLY- 8:18
INC- 31:22
INCLINED- 22:17
INCONSISTENCIES- 37:8
INCONSISTENCY- 29:21
INCONSISTENT- 30:13
INCORPORATE- 32:25
INCORPORATING- 32:23
INDICATED- 32:19
INDIVIDUALLY- 32:5
INITIAL- 21:15
INSURANCE- 6:19 31:11 35:9
INSUREDS- 27:18
INSURERS- 10:22 30:23 31:13 32:12
INTEND- 4:12 9:12 34:18
INTENT- 8:17 38:12
INTENTION- 13:6
INTERESTS- 39:21
INTERJECT- 37:2
INTERLOCUTORY- 16:9

INTERVALS- 41:21
INVITE- 41:10
ISN'T- 4:20
ISSUE'S- 14:24
ISSUED- 3:21
IT'S- 6:16 7:19 13:9 14:7 15:11 17:24 18:16 19:20 20:4 25:17,19,21 28:10 34:20 35:15 36:1,18 39:2

J
JOHN- 3:16
JOIN- 34:18
JOINED- 7:19 14:25
JUDGE- 9:25 10:1 19:23 20:6 22:2,14 41:18
JUDGES- 22:11
JUDGMENT- 4:17,18,21,23 5:12 7:3,4 25:23 26:13 27:7 28:10,13,16,19 29:7 30:8,9 33:17 34:15,17 36:3 37:16
JUMP- 28:4
JUMPING- 31:18
JUNE- 18:9
JURISDICTION- 19:1,8 20:4,15 23:1,4,12,24
JURISDICTIONAL- 23:10

K
KAREN- 42:14,19
KEY- 15:8,16
KNOWLEDGEABLY- 29:25
KNOWS- 9:14

L
LANGUAGE- 22:15
LARGELY- 36:8
LATE- 3:21
LATTER- 25:21
LAUGHTER- 20:8
LAWSUIT- 27:16
LAWYER- 9:15 10:1
LEE- 3:17
LEFT- 9:8
LEGAL- 16:10
LET'S- 28:17 29:8,16 35:19 36:4
LIABLE- 27:21 30:17,19,21
LIFT- 13:25
LIFTED- 15:23 32:24 33:15
LIFTING- 14:6
LIGHT- 6:17 11:9 15:9 18:21
LIGHTS- 41:19
LIKELIHOOD- 31:11

LIKEWISE- 34:11
LINE- 9:16,17,18,19 27:16
LISTENING- 15:7
LITIGATE- 27:4
LITIGATED- 27:9
LITIGATION- 10:20 16:1 25:19,25 26:4,25 27:2,12 29:14 30:11 32:24 33:6,16,25 37:10,18 38:4 39:1,2,23 40:17
LITIGATIONS- 29:20
LONG- 9:25 10:6 13:5 15:25 19:23 22:16
LOOK- 5:22 10:3
LOOKING- 5:7 11:15 18:10 32:22
LOT- 3:23 10:15 36:25

M
MACHINATIONS- 16:3
MAIN- 37:17
MAINLY- 4:8
MAINTAINED- 29:3
MAKE- 11:8 14:3,18 15:4 16:6 22:1 24:11,22 26:3 27:12 32:11 38:15,16 40:3 41:23
MANY- 9:4
MAPPING- 36:19
MARCH- 10:23 12:2,7 14:21
MARK- 3:7
MATTERS- 3:20 15:14 25:7 30:12,24 38:8,18
MEANT- 9:23 27:17
MEMORIAL- 11:13,18 27:21
MERE- 21:3 27:20
MERGED- 28:15
MERITS- 10:10 22:19 23:9 30:1
MINDFUL- 34:8
MINERALS- 3:20 10:21 31:22
MISTAKE- 6:6
MODIFIED- 32:19
MODIFY- 34:7
MONDAY- 11:4 13:14
MOOT- 13:19 25:17 31:14 3:1,2,3,5,6,12,14 ,16
MORNING- 39:7,8,11
MOSES- 3:4,6,10 29:12
MOTIONS- 9:4 18:2

26:19 38:1 40:4
MOTIVATIONS- 41:22
MOVE- 7:13 8:8 13:6 15:21 18:19 28:18 32:19,25 33:18,23 34:4,5,10,15,21 40:10
MOVED- 12:13
MOVING- 33:4,22,25 34:12 36:25 39:14 40:1
MUCH- 13:18
MULTIPLE- 3:2 27:4

N
NECESSARY- 4:11
NEEDED- 38:5
NEW- 17:3 18:1 19:13 21:5,10 23:14,15 35:19
NICETY- 18:17
NOR- 21:4 24:6
NORMAL- 14:7 18:2 33:14
NOTE- 4:1 27:21
NOTICE- 18:25 19:7,18 20:3,14 21:14,22 23:4,6

O
OBJECTION- 33:17
OBLIGATIONS- 30:20
OBSERVE- 39:11,15
OCCURRED- 15:19 40:14
OCCURRING- 16:4
OFF-THE- 16:21
OFTEN- 15:13
OMNIBUS- 26:10 40:24 42:5
ONE- 4:13 8:24 9:4 11:1,11,18 13:23 15:4 17:7,25 20:21 21:6 22:4 23:14,15 27:2 31:7 34:17 36:24 38:5
ONGOING- 32:24
OPEN- 25:7,8
OPERATE- 21:2
OPERATING- 35:16
OPINION- 3:21 13:8,21 19:5 22:22 27:15
OPPOSED- 26:4
OPPOSITE- 20:2,7
OPTIONS- 10:16
ORALLY- 12:13
ORDERING- 14:16
ORDERS- 15:14
ORGANIZE- 34:16
ORIGINAL- 15:23
ORIGINALLY- 11:2,23 31:25

OTHERWISE- 14:16,17 24:18
OUTCOME- 27:2,11 39:24
OUTSET- 8:12
OVERLAP- 27:10 29:12,13,16
OWN- 7:7 9:20 21:17 23:1 39:15
OWNERSHIP- 6:4 36:10

P
PAPERS- 8:15,18
PARALLEL- 32:2
PARENT- 36:10
PARTICULARLY- 8:11 9:5
PARTIES- 4:15 5:3 14:3,22 16:5 24:14 26:5 27:18
PARTS- 36:25
PARTY- 6:24 32:7 35:12 36:14 38:5
PASSAGE- 28:11
PASSED- 10:6
PAST- 12:22
PATH- 36:19
PATIENCE- 41:16
PENALIZED- 15:10
PEOPLE- 20:6 39:16
PERCENT- 27:8
PERHAPS- 6:7 7:2,23 19:1 22:24
PERIOD- 11:25 12:1,2 13:22 14:7 17:5 18:4 19:13,18 37:11
PERIODS- 36:16
PERMIT- 36:17
PERMITTED- 15:2
PERSONALLY- 8:14
PERSPECTIVE- 39:13
PHILIP- 21:8 32:14
PHRASE- 26:18
PICTURE- 41:21
PLACE- 23:20 24:19 31:22 33:6 34:18,21
PLEADINGS- 21:12
POINTS- 14:14
POLEMIC- 26:20
POPPING- 28:3
POSITION- 30:6 38:3
POSITIONS- 30:13
POSSIBILITY- 25:25
POSTURE- 7:20
POT- 35:23
POTENTIAL- 29:21
PRACTICAL- 35:7,9 39:18
PRACTICE- 39:1
PREJUDICE- 20:25
PREMISED- 36:8

PREPARED- 19:21
PREPETITION-
35:21
PRESENT- 24:3
PRESENTED-
22:14,16 23:24
26:20
PRESENTING- 28:21
PRESERVE- 15:20
17:11
PRESERVING- 24:3
PREVAILS- 27:18
PREVIOUSLY- 12:17
13:24 15:20 28:22
PRINCIPLE- 6:4
PRIOR- 9:2
PRIORITIES- 35:24
PROBLEM- 19:9
21:23
PROBLEMS- 36:24
PROCEDURAL- 7:20
9:6 11:8 16:3
17:11 18:17
PROCEDURALLY-
14:2
PROCEDURE- 18:24
21:19
PROCEED- 11:7
16:1 25:23 27:16
29:14 35:11,12
37:4,10
38:12,14,17 39:3
40:5
PROCEEDINGS- 32:3
42:9,16
PROCEEDS- 11:13
PROGRESS- 37:1
PROMPTLY- 42:5
PROPER- 34:1
PROPERLY- 39:25
PROPERTY- 32:4
PROPOSED- 15:14
PROSCRIPTION-
31:8 34:18
PROSPECT- 39:23
PROTECT- 15:9
PUNITIVE- 27:20
PURPORT- 22:10
PURSUE- 32:6,7
PURSUING- 33:3
34:1,10
PUTTING- 18:9
23:6

Q
QUICKLY- 13:6

R
RAISE- 6:12 10:10
23:10 30:23 36:12
40:24
RAISED- 9:7 21:15
22:13 31:7 33:10
35:18
RAISES- 25:24
30:10
RAMPS- 40:17
RATEABLY- 36:1
RATHER- 39:1

REACH- 4:9 31:13
REACHED- 27:2
REACTION- 9:20
REARGUE- 28:6
29:3
REARGUMENT- 26:19
REASON- 7:5 31:16
REASONABLE- 37:10
REASONS- 34:17
RECEIVED- 21:24
RECOGNIZE- 15:25
RECONSIDER- 28:6
RECONSIDERATION-
8:7,23,25 9:4
10:10 12:1 13:25
14:4 18:3,17
26:19,22 37:4
RECORDING- 42:16
RECOVER- 30:15
31:5
RECOVERY- 35:9,13
REDUNDANT- 21:12
REEVALUATE- 36:5
REFERRED- 30:24
RELIEF- 5:25 6:18
9:1 10:20
11:15,22 12:21
21:18 25:17 33:24
37:23
REMAIN- 11:1,4
24:18
REMAINED- 15:24
REMAINS- 17:16
RENDERING- 22:22
REPORT- 3:24
REQUEST- 5:25
8:25 9:2 10:24
14:24 15:12 16:19
19:8 27:6
REQUIRED- 15:1
38:10
REQUIRES- 6:16
22:12
RESEARCH- 23:16
RESERVING- 22:18
RESOLUTION- 27:19
RESOLVE- 37:6
RESOLVED- 7:8
31:17 37:7
RESPECT- 4:24
9:10,11,15,24
16:25 17:1 28:4
30:14,15,25 32:9
RESPECTFULLY-
13:13
RESPECTING- 30:20
31:15
RESPOND- 14:11,12
30:6
RESULT- 9:2 31:9
37:5
RETURN- 27:19
REVOKE- 16:15
RIGHTS- 15:9,20
16:16 17:11 22:18
24:6 30:18,21
34:11
RISE- 8:6 39:5
ROAD- 40:15

ROOM- 39:16
ROSE- 12:12,22
RULE- 15:17 16:15
17:25 18:7
19:11,19 20:13
21:2,16,25
22:5,11 23:17,22
RULED- 12:12
21:17,23 26:23
27:5,14 28:20,22
35:4
RULES- 11:19
12:11 14:7,15
15:2 31:6
RULING- 10:19
11:10 16:9,20
27:12 32:18
RULINGS- 6:18
28:5 38:11,15

S
SANTA- 3:20 10:21
30:2,15,16,18,20,
22
27:17,18
31:5,6,7,10,22
32:11 33:11
SCARUZZI- 41:7
SCHEDULE- 15:10
25:12,15 37:15
40:25 41:6
SCHEDULED- 11:2
12:9 41:4
SCHEDULING-
3:19,23 4:3,6,16
7:21,23 10:12
24:24 34:14 37:25
38:8,16 41:7 42:6
SEATED- 3:1
SECOND- 11:19
20:13 35:5
SEE- 15:13
22:9,20 23:16
26:25 31:5,24
35:19 38:21 39:5
40:6,7,8 41:20,21
SEEK- 16:8 17:23
21:11,18 22:12,18
SEEKING- 20:25
24:4 33:23
SEES- 9:4
SELECT- 26:11
SENSITIVITY- 9:15
SET- 26:8,10
SETS- 10:11
SETTLED- 31:17
SETTLEMENT- 30:3
31:13 32:12 37:12
SEVERAL- 28:10
SFI- 31:21
SHAPE- 33:7,23
SHED- 18:20
SHOULDN'T- 15:10
SHOW- 41:7
SIDE- 37:2
SIDEWAYS- 13:7
SIMPLY- 8:22 9:3
27:4
SITTING- 13:18

15:6
SITUATION- 20:21
21:3
SLEET- 22:3
SLIGHTLY- 23:22
SO-CALLED- 36:9
SOLIDARILY- 30:20
SOLIDARY- 30:20
SOLUTION- 22:24
SOUGHT- 15:8
SOUND- 42:16
SPEAKERS- 3:2
SPECULATING- 40:9
SPECULATION-
27:20
SPEND- 8:6
SQUARELY- 17:1
STAGE- 36:15
40:14
STAND- 42:4
STANDING- 6:4
25:20 32:5
STANDS- 6:20
START- 34:1
STATE- 34:11
STATUS- 3:18,23
11:2 40:18
STAYS- 32:23
STEP- 33:5 35:19
STEPS- 8:24 14:2
STEVENS- 3:17
STIPULATION- 4:15
STOPPED- 30:12
STRATEGIES- 41:23
STREAMLINING-
25:25
STRONG- 31:11
STYLED- 5:23
SUBMITTED- 14:22
17:1
SUBROGATED- 30:18
SUED- 30:14
SUGGESTED- 31:4
SUGGESTION- 25:10
SUIT- 31:6,17
32:10
SUM- 26:7
SUMMARY-
4:17,20,23 5:12
7:3,4 25:23 26:13
27:7
28:10,13,16,19
29:7 30:8,9 33:17
34:15,17 36:3
37:15
SUPPOSE- 3:19
SUPPOSED- 23:17
SUPPOSEDLY- 30:13

T
TABLE- 10:11
36:21
TEBOW- 30:14
TEBOW'S- 30:18
TEBOWS- 30:17
TECHNICALLY-
6:13,15 25:7
TELECONFERENCE-
11:25

TELEPHONE- 3:4
TEN- 13:20
14:15,19 16:5,11
17:3 19:17 20:20
21:4
TEN-DAY- 11:20,25
12:1,2,10,18,19
13:10,22 14:7
15:17,19 18:4
19:13 23:19 24:18
TERMS- 3:23 24:2
26:12 36:19
THERE'S- 5:12
11:19 17:6,7
26:17 27:11 30:22
31:11 32:24 33:15
35:13
THEREFORE- 15:2
30:21
THESE- 16:2 26:20
30:24 37:5 39:24
THEY'RE- 34:10
THEY'VE- 13:9
22:17 24:4
THIRD- 32:7 35:12
36:14
THREATEN- 8:16
TIME- 3:18 9:6
10:15,25 13:5
14:24 15:25 17:5
19:18,23 25:13
27:11,24 29:21
32:3 33:9,14
35:20 36:5 37:11
40:7 41:16
TIMES- 28:10
TODAY- 10:13
12:10 13:2 25:20
40:9 41:14
TOMORROW- 13:12
TOOK- 14:2 30:13
TOUCH- 33:10 38:9
TRACK- 42:1
TRANSACTION-
36:13
TRANSCRIPT- 42:15
TRANSCRIPTS-
42:20
TREMENDOUS- 37:19
TRIG- 15:17
TRIGGER- 15:19
TRUSTEE- 35:12
36:14 39:10
TUESDAY- 15:3
TURN- 41:19,20
TWO- 7:6 8:24 9:1
12:17 14:13
25:7,10 29:20
32:2
TWOFOLD- 11:17
TWO-PARTY- 39:18

U
UNCHANGED- 9:8
UNDERSTANDS- 7:20
UNDERSTOOD- 6:6
39:4
UNIQUE- 9:5
UNITED- 39:10

UNLESS- 23:17
URGE- 31:16
USED- 26:18

**V**

VALID- 31:20,22
VENUE- 26:21
VIEW- 7:1 12:19
13:9 14:8 25:22
28:14 29:2,4
VIEWS- 38:22
VOICE- 26:17
VOLUNTEER- 29:24

**W**

WAIT- 17:3
WAITED- 13:4
15:25
WAITING- 39:5
WALK- 9:16 41:19
WANTS- 28:4 33:7
WASN'T- 13:7
WATER- 8:21
WE'D- 10:3 13:13
15:2 17:25 19:8
27:7
WE'LL- 18:7 24:15
38:21 40:6,7,8
42:1
WE'RE- 4:18 8:4
9:9 12:8 17:3
18:16 19:12,15,16
20:9 25:20 28:3
32:2 33:3 34:22
35:2,7,23
WE'VE- 3:22 13:4
15:8 19:1 24:24
28:7,9 29:3
WEDNESDAY- 3:21
WHOLE- 35:8 36:24
WINS- 32:11
WISH- 13:15
WITHDRAWING-
17:16
WON'T- 38:25 41:6
WORDS- 18:18
WORK- 23:7 26:12
WORKS- 21:13
WORLD- 37:20
WOULDN'T- 21:10
22:16 23:10

**X**

X- 35:23

**Y**

YEAR- 11:24
YESTERDAY- 4:9
11:3 12:9 41:18
YOU'D- 10:2 18:25
27:22 41:19
YOU'RE- 10:2
16:7,8

**CERTIFICATE OF SERVICE**

**I, Heidi E. Sasso, certify that I am not less than 18 years of age, and that service of the foregoing document was made on June 13, 2008 upon:**

Gregory Werkheiser, Esq.
Kelly Dawson, Esq.
Morris Nichols Arsht & Tunnell LLP
1201 Market Street
Wilmington, DE 19801

M. Hampton Carver, Esq.
Leann Moses, Esq.
Carver Darden Koretzy Tessier Finn  Blossman & Areaux, LLC
1100 Poydras Street, Ste. 2700
New Orleans, LA 70163

John Demmy, Esq.
Stevens & Lee PC
1105 N. Market Street, 7th Floor
Wilmington, DE 19801

Under penalty of perjury, I declare that the foregoing is true and correct.

____6/13/2008                          /s/ Heidi E. Sasso