## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| 15375 MEMORIAL CORPORATION, *et al.*, | ) | Bankr. Case No. 06-10859 (KG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
| ——————————————— | ) |  |
|  | ) |  |
| BEPCO, L.P., f/k/a | ) |  |
| Bass Enterprises Production Company | ) |  |
|  | ) | Civil Action No. 08-313 (SLR) |
| Appellant, | ) |  |
|  | ) | (Consolidation for procedural |
| v. | ) | purposes of Civil Actions 08- |
|  | ) | 313, 08-314, 08-318, 08-319, 08- |
| 15375 MEMORIAL CORPORATION, *et al,* | ) | 321, 08-322, 08-325 & 08-326) |
|  | ) |  |
| Appellees and Cross-Appellants. | ) |  |
| ——————————————— | ) |  |

## EMERGENCY MOTION OF APPELLANT BEPCO, L.P., F/K/A BASS ENTERPRISES PRODUCTION COMPANY TO BYPASS APPELLATE MEDIATION

Appellant BEPCO, L.P., f/k/a Bass Enterprises Production Company ("BEPCO" or "Appellant") by its undersigned attorneys, hereby moves (the "Motion") for entry of an Order bypassing appellate mediation pursuant to this Court's Standing Order, dated July 23, 2004 (**Exhibit A** hereto) (the "Standing Order"). In support of this Motion, BEPCO respectfully states as follows:

### BACKGROUND

1.    BEPCO's appeals are from (a) an order of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") denying BEPCO's motion to dismiss the chapter 11 cases of debtors 15375 Memorial Corporation ("Memorial") (a shell holding company) and Santa Fe Minerals, Inc. ("Santa Fe," and together with Memorial, the "Debtors") (a dissolved corporation) and (b) an order of the Bankruptcy Court denying BEPCO's

motion for reconsideration under Rules 7052 and 9023 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Federal Rules of Civil Procedure 52 and 59(e).  BEPCO sought the dismissal of the Debtors' chapter 11 cases based on, *inter alia,* (i) the Debtors' lack of good faith, (ii) "cause" pursuant to section 1112(b) of title 11 of the United States Code (the "Bankruptcy Code") and (iii) the ineligibility of Santa Fe, a corporation that was irrevocably dissolved long before its chapter 11 petition was filed, to be a debtor under chapter 11 of the Bankruptcy Code.

2.      The bankruptcy cases arise out of a lawsuit that was brought several years ago in Louisiana against, *inter alia,* BEPCO and Santa Fe in which the plaintiffs sought to recover damages in excess of $300 million for property damage allegedly caused by oil and gas exploration and related activities on property Santa Fe occupied under a mineral lease for which BEPCO (or, as it was then named, Richardson Oils, Inc.) also was in the chain of title.  Santa Fe avoided liability in the original Louisiana suit by filing a chapter 11 petitions in the Bankruptcy Court on August 16, 2006.  Thereafter, when it became clear that BEPCO would not be able to obtain the dismissal of the Debtors' chapter 11 cases or relief from stay in time to re-join Santa Fe and to add Memorial and the GlobalSantaFe Corporation, GlobalSantaFe Corporate Services, Inc. and Entities Holdings, Inc. (collectively, the "GSF Entities") to the Louisiana suit, BEPCO reached a settlement with the plaintiffs pursuant to which more than $20 million has been paid and its reserved all rights and claims against the Debtors, the GSF Entities and others not expressly released thereunder.

3.      For nearly the last two years, BEPCO has been pursuing efforts before the Bankruptcy Court to obtain the right to liquidate its claims against the Debtors in a non-bankruptcy forum, to attempt to recover its losses from liability insurance proceeds that may be

available and to proceed against the non-debtor GSF Entities that BEPCO asserts are liable to it on single business enterprise, alter ego, wrongful distribution at dissolution and similar theories. As the Bankruptcy Court found, the Debtors' estates are deeply administratively insolvent, so, as a practical matter, any meaningful recovery by BEPCO is likely to come from liability insurance proceeds and/or the non-debtor GSF Entities. The continuation of the bankruptcy cases essentially has operated as a roadblock to BEPCO accessing these non-debtor sources of recovery and, as to the GSF Entities, that roadblock now threatens to become permanent as a result of actions being undertaken in the Bankruptcy Court by the Debtors and GSF Entities while these appeals are pending.

    4.    Specifically, in the brief period of time these appeals have been docketed in this Court, the Debtors and the insider GSF Entities, which wholly dominate and control them, have been proceeding with efforts in the Bankruptcy Court intended to moot these appeals and deny BEPCO meaningful appellate relief. Specifically, the Debtors are pursuing confirmation of an amended plan of liquidation (Bankr. D.I. 351) (the "Amended Plan"), which is based on a settlement between the Debtors and the insider GSF Entities, reached without the involvement of BEPCO, other non-insider creditors or an independent fiduciary (the "Insider Settlement").[1] The

---

[1]    Both Santa Fe and Memorial are wholly owned subsidiaries of GlobalSantaFe Corporation, one of the world's largest offshore oil and gas drilling contractors and a leading provider of drilling services. The Debtors' exclusive representative in the chapter 11 cases has been David E. Faure, who reports directly to the General Counsel of GlobalSantaFe Corporation. Indeed, Mr. Faure testified at trial "that the filing of a lawsuit against [GlobalSantaFe Corporation] on behalf of the Debtors to facilitate the return of upstreamed funds would jeopardize his job." Furthermore, while Santa Fe, as a dissolved corporation, can act only through Memorial as its sole shareholder, all directors of Memorial are officers of GlobalSantaFe Corporation, and most officers of Memorial are officers of GlobalSantaFe Corporation or other non-debtor members of its corporate family. See Findings of Fact and Conclusions of Law, at 6-10 (Bankr. D.I. 291; Adv. D.I. 164). No trustee, examiner or official committee of unsecured creditors has been appointed in the Debtors' chapter 11 cases.

Insider Settlement would release potentially valuable causes of action against the GSF Entities, provide no benefit at all to the Debtors' few general unsecured creditors and enjoin BEPCO from pursuing the non-debtor GSF Entities on any claims related to the Debtors without providing BEPCO any distribution whatsoever other than the right to pursue insurance proceeds, which BEPCO has already secured through litigation with the Debtors and GSF Entities in the Bankruptcy Court.

5.     In response to these and related concerns that BEPCO's ability to obtain effective appellate review would be effectively mooted by actions in the Bankruptcy Court and because of the innate appropriateness of allowing the Third Circuit to directly review the important legal questions involved in these appeals, on June 4, 2008, BEPCO filed *BEPCO, L.P., f/k/a Bass Enterprises Production Company's Emergency Request For Certification For Direct Appeal To The United States Court Of Appeals For The Third Circuit Pursuant To 28 U.S.C. § 158(d)(2)* (D.I. 6) (the "Certification Request") (**Exhibit B** hereto) in this Court shortly after its appeals were docketed.[2]  Invoking a new procedure for bankruptcy appeals set forth in 28 U.S.C. § 158(d)(2) and Bankruptcy Rule 8001(f), the Certification Request asks this Court to expedite BEPCO's appeals and certify them for direct appeal to the United States Court of Appeals for the Third Circuit.  The Debtors and GSF Entities, appellees and cross appellants herein, have objected (D.I. 9 & 10) to BEPCO's Certification Request.[3]

---

[2]     The Certification Request contains further background on the bankruptcy cases and these appeals and is incorporated herein by reference.

[3]     On June 16, 2008, BEPCO filed *Motion of Appellant BEPCO, L.P., f/k/a Bass Enterprises Production Company for Leave to File A Reply In Support Of Its Emergency Request For Certification For Direct Appeal To The United States Court Of Appeals For The Third Circuit* (D.I. 12), which attached its proposed reply in support of the Certification Request.  The Certification Request has now been fully submitted for the Court's consideration.

6.      Although these cases had languished in the Bankruptcy Court for nearly two years before the docketing of these appeals, earlier this month the Debtors aggressively sought to schedule a hearing on, among other things, a motion to approve the Insider Settlement (D.I. 360) and a disclosure statement to accompany the Amended Plan (D.I. 352), for June 27, 2008. These matters are ones that the Bankruptcy Court has recognized "involve significant, substantive issues, and come before the [Bankruptcy] Court while the parties are engaged in appellate review of earlier rulings of the [Bankruptcy] Court."[4] Considering the foregoing and that BEPCO "is seeking certification for direct and expedited appellate review by the United States Court of Appeals for the Third Circuit," the Bankruptcy Court has briefly deferred the hearing on these matters until July 23, 2008, at 10:00 a.m. (ET).[5] Nevertheless, time remains of the essence if BEPCO is to obtain effective appellate review.

7.      As a matter of course, these appeals were directed to mandatory mediation when they were docketed in this Court. On June 11, 2008, BEPCO received an introductory letter from Kevin F. Brady, Esquire, of Connolly Bove Lodge & Hutz LLP, notifying it of his appointment as mediator.

8.      On June 13, 2008, the undersigned counsel for BEPCO contacted Mr. Brady and informed him of the pending Certification Request and of additional circumstances that make these appeals extremely poor candidates for appellate mediation. Mr. Brady suggested

---

[4]    Order of the Bankruptcy Court, dated June 16, 2008 (Bankr. D.I. 368) (**Exhibit C** hereto) ("June 16 Order").

[5]    June 16 Order, at 2. Under the Bankruptcy Court's Local Rules, BEPCO's responses will be due by July 16, 2008.

that BEPCO's counsel transmit a letter to him explaining its position, which counsel did by letter dated June 17, 2008 (**Exhibit D** hereto).

9.    Several email exchanges followed with Mr. Brady and counsel for the Debtors and GSF Entities (**Exhibits E to I** hereto) in which the Debtors and GSF stated their opposition to BEPCO's request to bypass appellate mediation.  In particular, by email, dated June 18, 2008 (**Exhibit I** hereto), the Debtors asserted that the mediator was without authority to make a recommendation to this Court concerning the appropriateness of appellate mediation and that BEPCO was required to make a motion in this Court in the first instance.

## RELIEF REQUESTED

10.    By this Motion, BEPCO respectfully requests that the Court grant it relief from the Standing Order, to the extent applicable, and direct that BEPCO's appeals can proceed without appellate mediation.

11.    BEPCO makes this Motion out of an abundance of caution because it is unclear whether the Standing Order was intended to apply to appeals from the Bankruptcy Court in situations such as this one where certification to the Third Circuit is requested under 28 U.S.C. § 158(d)(2) and Interim Bankruptcy Rule 8001(f).  Notably, the amendments to 28 U.S.C. § 158 which make certification for direct review of bankruptcy orders in the courts of appeals available was not enacted and did not become effective for over a year after the Standing Order was entered by this Court.[6]  Moreover, the Standing Order provides that the only effect of the referral to appellate mediation of the appeal is that "[b]riefing shall be deferred during the pendency of

---

[6]    Section 158(d)(2) was enacted pursuant to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, which generally became effective on October 17, 2005, and applies only to cases commenced after that date. *See In re McKinney,* 457 F.3d 623, 624 (7th Cir. 2006).

mediation unless the Court determines otherwise." (Standing Order, § 3)  It says nothing of the Standing Order's effect on other proceedings in connection with bankruptcy appeals, such as the Certification Request.

12.    However, to the extent that the Standing Order applies here, BEPCO respectfully submits that these appeals are particularly ill-suited to appellate mediation for several reasons.  First, as discussed above, while these appeals are pending, the Debtors and GSF Entities have taken steps before the Bankruptcy Court in an effort to frustrate BEPCO's ability to obtain effective appellate review of the Bankruptcy Court's order denying BEPCO's motion to dismiss the Debtors' chapter 11 cases.[7]  If the Certification Request is not considered and BEPCO's appeals do not proceed expeditiously, then BEPCO may forever lose the opportunity to obtain effective appellate review.[8]

13.    Second, as the Bankruptcy Court recognized in its June 16 Order, the Disclosure Statement (and by extension the Amended Plan) and the Insider Settlement "involve significant, substantive issues". (June 16 Order, at 2)  If the Amended Plan and Insider

---

[7]    Indeed, the Debtors are already on record asserting that the Bankruptcy Court retains jurisdiction, notwithstanding these appeals, to confirm a plan. See Debtors' Response In Opposition To Motion Of BEPCO, L.P., f/k/a Bass Enterprises Production Company For Entry Of An Order (I) Granting Reconsideration, In Part, Of The Court's Opinion And Order, Each Dated February 15, 2008; (II) Upon Reconsideration, (A) Vacating That Portion Of The Opinion And Order Denying The BEPCO Dismissal/Conversion Motion And (B) Amending The Opinion And Order To Grant The Relief Requested In The BEPCO Dismissal/Conversion Motion; And (III) Granting Related Relief (Bankr. D.I. 305; Adv. D.I. 177), at ¶ 22 n.5.

[8]    In issuing the June 16 Order, the Bankruptcy Court attached clear importance to the fact that BEPCO had filed a Certification Request in this Court. (June 16 Order, at 2) Accordingly, it is possible that the Bankruptcy Court may further defer or stay proceedings on the Amended Plan, Insider Settlement and other matters that may overlap with these appeals were this Court to act on the Certification Request promptly. Indeed, the Bankruptcy Court noted in the June 16 Order that the bankruptcy cases "have been long pending and there is no reason – operational, financial or for convenience – why the Pending Matters must be heard sooner rather than shortly later." (June 16 Order at 2)

Settlement go forward before these appeals can be resolved, there will be a considerable and unnecessary consumption of the resources of the Courts and the parties. These matters are likely to involve significant briefing, discovery and evidentiary hearings in the Bankruptcy Court, all of which could be avoided if BEPCO is successful in obtaining a reversal of the Bankruptcy Court's order declining to dismiss the Debtors' chapter 11 cases.

14.    Third, another attempt at mediation is likely to be a futile gesture if past history is any guide. On July 3, 2007, BEPCO entered into a stipulation (Adv. D.I. 110) (**Exhibit J** hereto) (the "July 3, 2007 Stipulation") with the Debtors and GSF Entities pursuant to which the parties agreed to "meet, discuss, and explore in good faith resolution of all pending matters in the bankruptcy proceeding" and to a more than two month continuance a previously scheduled trial date of July 11, 2007. (July 3, 2007 Stipulation, ¶¶ 1 & 4) Then, after direct discussion among the parties failed to produce a settlement, BEPCO agreed to attempt mediation of these disputes before the Honorable Kevin J. Carey of the Bankruptcy Court on August 28, 2007 (Bankr. D.I. 220) (**Exhibit K** hereto), which was just weeks before the rescheduled trial dates of September 17 through 19, 2007. Those efforts were entirely unsuccessful and concluded with the parties still very far apart on settlement.

15.    The recent actions by the Debtors and GSF Entities strongly indicate that they have no genuine interest in settling these disputes. Rather than attempting to involve BEPCO in a discussion over the terms of the Insider Settlement and Amended Plan, the Debtors filed the Amended Plan and a motion to approve the Insider Settlement and attempted to schedule them for the earliest possible hearing date. Notably, the Amended Plan would provide BEPCO with no distribution from the Debtors' estates, yet would subject BEPCO to involuntary third party releases and injunctions running in favor of the non-debtor GSF Entities. These

actions by the Debtors and GSF Entities and the prior history of their conduct in the bankruptcy cases strongly indicate that they simply want to pursue appellate mediation to avail themselves of the stay and further delay the progress of these appeals.

16.     The stated purposes of the Standing Order are to "more efficiently and expeditiously administer justice and assist the parties to amicably resolve the disputes which are the subject of appeals before the Court . . . ." (Standing Order, at 1)  Considering all that has transpired in this litigation and the matters currently pending before the Bankruptcy Court and this Court, it is highly unlikely that those purposes would be served here.  Rather, BEPCO respectfully submits that under the circumstances the potential for abuse of the mediation process to delay the progress of BEPCO's appeals and to frustrate its ability to obtain meaningful appellate review is simply far too great for appellate mediation to occur at this time.

### D. DEL. L.R. 7.1.1 STATEMENT

17.     The undersigned counsel for BEPCO hereby certifies in accordance with Rule 7.1.1 of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware that a reasonable effort has been made to reach agreement with the Debtors and the GSF Entities with respect to the subject matter of this Motion.  As described above, both the Debtors and GSF Entities have rejected BEPCO's request that they agree to bypass appellate mediation.

[CONTINUED NEXT PAGE]

WHEREFORE, BEPCO respectfully requests this Court enter an order, substantially in the form attached as **Exhibit L** hereto: (i) exempting these appeals from mandatory mediation and (ii) granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
      June 18, 2008

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Gregory W. Werkheiser (No. 3553)
Kelly M. Dawson (No. 4786)
1201 Market Street
P. O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 351-9229
Fax: (302) 658-3989

-and-

CARVER DARDEN KORETZKY TESSIER FINN
BLOSSMANN & AREAUX, L.L.C.
M. Hampton Carver (LA #4546)
Leann Opotowsky Moses (LA #19439)
1100 Poydras Street, Suite 2700
New Orleans, LA 70163
Telephone: (504) 585-3800
Fax: (504) 585-3801

Co-Counsel for BEPCO, L.P., formerly known
as Bass Enterprises Production Company

2372272.1

# Exhibit A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

**In Re:**                                :
                                             :

**Procedures To Govern Mediation Of**    :
**Appeals From The United States**         :
**Bankruptcy Court For This District.**     :

## O R D E R

WHEREAS, this Court has jurisdiction to hear appeals from the Bankruptcy Court for this District, 28 U.S.C. § 158;

WHEREAS, the Judges of this Court have determined that, in order to more efficiently and expeditiously administer justice and assist the parties to amicably resolve the disputes which are the subject of appeals before the Court, it is appropriate and necessary for there to be mandatory mediation of all appeals to this Court from the Bankruptcy Court;

NOW THEREFORE, this 23rd day of July, 2004, it is hereby ordered that the following mandatory mediation procedures shall apply to all appeals to this Court from the Bankruptcy Court:

    1.    <u>Appellate Mediation Panel</u>

        (a)    The Judges of the Court shall designate a panel of mediators who meet the criteria contained in 1(b) (the "Appellate Mediation Panel" or "Panel"). Panel members will serve at the pleasure of the Judges of this Court.

        (b)    Persons seeking to be members of the Panel must submit a letter requesting same. Said letter should state the regular hourly rate charged by that person and be accompanied by a Curriculum Vitae which demonstrates the person's experience, competence and acceptability to serve on the Panel.

        (c)    Following selection, the mediator's relationship is solely with the parties to the appeal, except that mediators are subject to certain reporting requirements to the Judges and Clerk of this Court.

2.     Referral to Panel

Appeals in bankruptcy cases shall be referred to the Appellate Mediation Panel to facilitate settlement or otherwise to assist in the expeditious handling of the appeal. The Clerk of this Court shall establish and manage the Appellate Mediation Panel. Mediations will be conducted by members of the Panel. In all cases, the Clerk will assign the matter to a mediator on a rotating basis.

3.     Initial Submissions to Mediator And Deferral of Briefing

The Clerk will provide the mediator with a copy of the judgment or order on appeal, any opinion or memorandum issued by the Bankruptcy Court, any relevant motions, and all statements by the parties of the issues to be presented on appeal.

Briefing shall be deferred during the pendency of mediation unless the Court determines otherwise. A referral to mediation, however, shall not defer or extend the time for ordering any necessary transcripts.

If a case is not resolved through mediation, it will proceed through the appellate process as if mediation had not been considered or initiated.

4.     Referral of Pending Appeals to Mediation

At any time during an appeal pending as of the date of this order, the assigned Judge may refer the appeal to the Panel for mediation. The procedures set forth in paragraph 5 below are applicable to matters referred for mediation pursuant to this paragraph unless otherwise directed by the mediator. Documents, including but not limited to those specified in paragraph 5(a), may be required.

5.     Proceedings After Selection of the Mediator

(a)   Submission of Position Papers and Documents

Within fifteen (15) days after the selection of the mediator, each counsel shall prepare and submit to the mediator a confidential position paper of no more than ten (10) pages, stating counsel's views on the key facts and legal issues in the case, as well as on key factors relating to settlement. The position paper will include a statement of motions filed in this Court and their status. Copies of position papers submitted by the parties directly to the mediator should not be served upon opposing counsel. Documents prepared for mediation sessions are not to be filed with the Clerk's Office and are not to be of record in the case.

(b)   Mediation Sessions

The mediator will notify the parties of the time, date, and place of the mediation session and whether it will be conducted in person or telephonically. Unless the

mediator directs otherwise, mediation sessions must be attended by the senior lawyer for each party responsible for the appeal and by the person or persons with actual authority to negotiate a settlement of the case. If settlement is not reached at the initial mediation session, but the mediator believes further mediation sessions or discussions would be productive, the mediator may conduct additional mediation sessions in person or telephonically.

(c) <u>Confidentiality of Mediation Proceedings</u>

The mediator shall not disclose to anyone statements made or information developed during the mediation process. The attorneys and other persons attending the mediation are likewise prohibited from disclosing statements made or information developed during the mediation process to anyone other than clients, principals or co-counsel, and then, only upon receiving due assurances that the recipients will honor the confidentiality of the information. Similarly, the parties are prohibited from using any information obtained as a result of the mediation process as a basis for any motion or argument to any court. The mediation proceedings shall be considered compromise negotiations under Rule 408 of the Federal Rules of Evidence. Notwithstanding the foregoing, the bare fact that a settlement has been reached as a result of mediation shall not be considered confidential.

(d) <u>Settlement</u>

No party shall be bound by statements or actions at a mediation session unless a settlement is reached. If a settlement is reached, the agreement shall be reduced to writing and shall be binding upon all parties to the agreement, and counsel shall file a stipulation of dismissal of the appeal. Such a stipulation must be filed within thirty (30) days after settlement is reached.

(e) <u>Fees of the Mediator</u>

One-half of the mediator's fees shall be paid by the appellant(s) and one-half of such fees shall be paid by the appellee(s).

FOR THE COURT:


    <u>Sue L. Robinson</u>
SUE L. ROBINSON
CHIEF JUDGE

# Exhibit B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| 15375 MEMORIAL CORPORATION, *et al.*, | ) | Bankr. Case No. 06-10859 (KG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |

---

|  |  |  |
|---|---|---|
| BEPCO LP, | ) |  |
| Appellant, | ) |  |
|  | ) | Civil Action No. 08-313 (SLR) |
| v. | ) |  |
|  | ) | Bankruptcy Case No. 06-10859 |
| GlobalSantaFe Corporation, *et al*, | ) | ADV 06-50822 |
|  | ) | AP 08-29 |
| Appellees. | ) |  |

---

|  |  |  |
|---|---|---|
| BEPCO LP, | ) |  |
| Appellant, | ) |  |
|  | ) | Civil Action No. 08-314 (SLR) |
| v. | ) |  |
|  | ) | Bankruptcy Case No. 06-10859 |
| Santa Fe Minerals Inc., | ) | ADV 06-50822 |
|  | ) | AP 08-30 |
| Appellee. | ) |  |

---

|  |  |  |
|---|---|---|
| BEPCO LP, | ) |  |
| Appellant, | ) |  |
|  | ) | Civil Action No. 08-321 (SLR) |
| v. | ) |  |
|  | ) | Bankruptcy Case No. 06-10859 |
| GlobalSantaFe Corporation, *et al.*, | ) | ADV 06-50822 |
|  | ) | AP 08-29 |
| Appellees. | ) |  |

BEPCO LP,                          )
                                   )
                   Appellant,      )          Civil Action No. 08-322 (SLR)
                                   )
            v.                     )          Bankruptcy Case no. 06-10859
                                   )          ADV 06-50822
GlobalSantaFe Corporation, et al., )          AP 08-30
                                   )
                   Appellees.      )
_____    )
                                   )

## BEPCO, L.P., F/K/A BASS ENTERPRISES PRODUCTION COMPANY'S EMERGENCY REQUEST FOR CERTIFICATION FOR DIRECT APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT PURSUANT TO 28 U.S.C. § 158(d)(2)

BEPCO, L.P., f/k/a Bass Enterprises Production Company ("BEPCO"), pursuant to 28 U.S.C. § 158(d)(2) and Rule 8001(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), hereby requests (the "Certification Request") certification for direct appeals to the United States Court of Appeals for the Third Circuit (the "Third Circuit") of its appeals from the following entered by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") in the jointly administered bankruptcy cases captioned *In re 15375 Memorial Corporation and Santa Fe Minerals, Inc.,* Case Nos. 06-10859 (KG) and 06-10860 (KG) (together, the "Main Case") and the related adversary proceeding captioned *Santa Fe Minerals, Inc. v. BEPCO, L.P., formerly known as Bass Enterprises Production Company,* Adv. Pro. No. 06-50822 (KG) (the "Adversary Proceeding"):

> (a) Findings of Fact and Conclusions of Law (Bankr. D.I. 291; Adv. D.I. 164) (the "Opinion" or "Op.") and related Order (Bankr. D.I. 292; Adv. D.I. 165) (the "Order"), each entered on February 15, 2008, insofar as the Opinion and Order denied the Motion of BEPCO, L.P. f/k/a Bass Enterprises Production Company, for Order (I) Dismissing Debtors' Chapter 11 Cases for Bad Faith, Cause Under 11 U.S.C. § 1112(b) and Ineligibility Under 11 U.S.C. § 109, (II) Dismissing or Suspending Debtors' Chapter 11 Cases Under 11 U.S.C. § 305(a)(1), (III) Converting Debtors' Chapter 11 Cases to Cases Under Chapter 7 of the Bankruptcy

Code Pursuant to 11 U.S.C. § 1112(b), (IV) Appointing a Trustee Pursuant to 11 U.S.C. § 1104(a), or, (V) Appointing an Examiner Pursuant to 11 U.S.C. § 1104(c) and a related memorandum of law in support thereof (Bankr. D.I. 21 & 22) (together, the "BEPCO Dismissal/Conversion Motion");[1] and

(b)    Memorandum Opinion on Reargument (Bankr. D.I. 323; Adv. D.I. 193) (the "Reconsideration Opinion" or "Recon. Op.") and related Order (Bankr. D.I. 324; Adv. D.I. 194) (the "Reconsideration Order" and collectively with the Reconsideration Opinion, the "Reconsideration Opinion and Order"), each entered on April 16, 2008, insofar as the Reconsideration Opinion and Order denied BEPCO's request in the Motion of BEPCO, L.P. f/k/a Bass Enterprises Production Company For Entry Of An Order (I) Granting Reconsideration, In Part, Of The Court's Opinion And Order, Each Dated February 15, 2008; (II) Upon Reconsideration, (A) Vacating That Portion Of The Opinion And Order Denying The BEPCO Dismissal/Conversion Motion And (B) Amending The Opinion And Order To Grant The Relief Requested In The BEPCO Dismissal/Conversion Motion; And (III) Granting Related Relief (Bankr. D.I. 299; Adv. D.I. 172) (the "BEPCO Reconsideration Motion") to vacate and amend certain portions of the Opinion and Order.[2]

In support of this Certification Request, BEPCO respectfully states as follows:

## INTRODUCTION

1.    A direct and expedited appeal to the Third Circuit is necessary and crucial to serve the interests of justice in these cases.  At issue in the BEPCO Dismissal/Conversion Motion was whether debtors Santa Fe Minerals, Inc. ("Santa Fe" or "SFMI") (which at the time of its bankruptcy filing was, and remains today, an irrevocably dissolved corporation) and 15375 Memorial Corporation ("Memorial," and together with Santa Fe, the "Debtors") (which at the time of its bankruptcy was, and remains today, a shell, holding company) should be allowed to proceed with reorganization cases under chapter 11 of title 11 of the United States Code (the

---

[1]    Copies of the Opinion and Order are attached as **Exhibit A** to the proposed Certification annexed hereto.

[2]    Copies of the Reconsideration Opinion and Order are attached as **Exhibit B** to the proposed Certification annexed hereto.

3

"Bankruptcy Code"). The record in the Bankruptcy Court – virtually undisputed from the outset – establishes that the Debtors have no meaningful assets or source of income and that their bankruptcy filings were orchestrated as a coordinated effort to insulate GlobalSantaFe Corporation ("GSF Corp."), the Debtors' ultimate parent and one of the world's largest offshore oil and gas drilling contractors, from legacy liability resulting from Santa Fe's prior oil and gas exploration and related activities.[3]

2.      As a result of the Debtors' bankruptcy filings, BEPCO, by far the largest of the Debtors' handful of non-insider creditors, has been frustrated for nearly two years in its efforts to obtain redress for losses in excess of $20 million it has incurred as a result of claims for environmental and property damage brought against it by owners of land on which Santa Fe conducted oil and gas exploration and related activities. Only recently, by the Reconsideration Order entered on April 16, 2008, has the Bankruptcy Court granted BEPCO limited relief from the automatic stay to liquidate its claims against Santa Fe (but not Memorial) in Louisiana state court and to pursue recoveries, if any, available from liability insurers. The automatic stay under section 362 of the Bankruptcy Code otherwise remains in place and BEPCO remains barred at this time from pursuing Memorial or the non-debtor GSF Entities on alter ego, single business enterprise, wrongful distribution at dissolution and other claims and remedies that may allow BEPCO to be made whole for its losses.

3.      Proceedings on the BEPCO Dismissal/Conversion Motion have moved far slower than is typical of such litigation. The Opinion and Order, by which the Bankruptcy Court, *inter alia,* denied the BEPCO Dismissal/Conversion Motion, was not issued until

---

[3]      GSF Corp., GlobalSantaFe Corporate Services Inc. and Entities Holdings, Inc. are collectively referred to herein as the "GSF Entities".

February 15, 2008 – more than 16 months after BEPCO first moved for the dismissal of the Debtors' bankruptcy cases.[4]  In contrast, section 1112(b)(3) of the Bankruptcy Code states that a motion to dismiss or convert a chapter 11 case under section 1112(b) of the Bankruptcy Code ordinarily should be heard within 30 days of filing and should be decided within 15 days of commencement of the hearing on the motion. *See* 11 U.S.C. § 1112(b)(3).  In including this provision, Congress recognized that as far as motions to dismiss or convert chapter 11 cases under section 1112(b) are concerned, "justice delayed is justice denied".  Clearly, if ever there was an appropriate case for this maxim to be applied, this is one.

        4.      Absent an expedited consideration of these appeals, there is a substantial risk that BEPCO's ability to obtain meaningful appellate review of the Bankruptcy Court's decisions refusing to dismiss these highly questionable chapter 11 cases will be mooted.[5]  Indeed, the Debtors and GSF Entities have already begun taking steps to ensure that justice is denied BEPCO through the filing on June 2, 2008 of the Debtors First Amended Joint Plan Of Liquidation (Bankr. D.I. 351) (the "Amended Plan").  Despite delaying the filing of the Amended Plan for over two and one-half months after the Opinion and Order were issued, the

---

[4]    The causes for the delay include, among other things, numerous discovery and other collateral disputes, a failed attempt at mediation that the parties pursued at the urging of the Bankruptcy Court and the Bankruptcy Court's reluctance to decide these matters without the development a substantial factual record.

[5]    Indeed, the Debtors are already on record asserting that the Bankruptcy Court retains jurisdiction, notwithstanding these appeals, to confirm a plan. *See* Debtors' Response In Opposition To Motion Of BEPCO, L.P., f/k/a Bass Enterprises Production Company For Entry Of An Order (I) Granting Reconsideration, In Part, Of The Court's Opinion And Order, Each Dated February 15, 2008; (II) Upon Reconsideration, (A) Vacating That Portion Of The Opinion And Order Denying The BEPCO Dismissal/Conversion Motion And (B) Amending The Opinion And Order To Grant The Relief Requested In The BEPCO Dismissal/Conversion Motion; And (III) Granting Related Relief (Bankr. D.I. 305; Adv. D.I. 177), at ¶ 22 n.5.

Debtors are now aggressively pursing confirmation of the Amended Plan and have scheduled a hearing to approve the related disclosure statement (Bankr. D.I. 352) for June 27, 2008 at 11:00 a.m. (ET), with objections purportedly due by June 20, 2008 (Bankr. D.I. 354).

5.    The Amended Plan, like the predecessor plan that the Bankruptcy Court rejected in the Opinion, contains impermissible third party releases and injunctions (Amended Plan, §§ 8.1, 8.2 & 8.3) that would, *inter alia,* deny BEPCO any ability to obtain a recovery from the non-debtor GSF Entities without in any way compensating it for the extinguishment of its valuable claims.  The Amended Plan is particularly offensive and overreaching in that it attempts to deny BEPCO the right to vote on the Amended Plan by deeming it "unimpaired" (Amended Plan, § 3.3.6) under section 1124 of the Bankruptcy Code by reason of the possibility that BEPCO's claims might someday be satisfied by liability insurance proceeds (and notwithstanding that none of the Debtors' liability insurers have agreed to cover BEPCO's claims and the action the Bankruptcy Court authorized BEPCO to commence in Louisiana state court is in its early stages).  Thus, if the Debtors and GSF Entities have their way while these appeals are pending, BEPCO will be stripped of its claims against the GSF Entities pursuant to an Amended Plan on which BEPCO would not be permitted to vote.

6.    Furthermore, as contemplated by 28 U.S.C. § 158(d)(2)(A)(i) and (ii), these appeals involve no less than three (3) dispositive questions of law as to which there is either no controlling decision of the Third Circuit or United States Supreme Court and/or conflicting decisions which render the law unsettled.  The first question of law raised by these appeals is whether the Bankruptcy Court, once it finds "cause" under section 1112(b)(4)(A) of the Bankruptcy Code based on "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation", retains the discretion under section

1112(b) of the Bankruptcy Code not to dismiss or convert the case or appoint a trustee. There is

no decision of the Third Circuit or Supreme Court which controls the application of this aspect of

section 1112(b) of the Bankruptcy Code since it was extensively amended by Congress pursuant

to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), and

lower court decisions have been inconsistent in their interpretation of the post-BAPCPA version

of this statute.

       7.    The second question of law raised by these appeals is whether the

Bankruptcy Court erred in not dismissing the Debtors' chapter 11 cases for lack of good faith

when the largely undisputed record establishes that the commencement and continuation of these

liquidating chapter 11 cases was unnecessary to preserve value that would have been lost outside

of bankruptcy and serves only to frustrate legitimate creditor action. Although BEPCO believes

that controlling decisions of the Third Circuit dictate that the Debtors' chapter 11 cases must be

dismissed for lack of good faith, the Bankruptcy declined to reach this conclusion. Additionally,

in allowing the cases to continue, the Bankruptcy Court relied on case law which it has construed

in a manner in conflict with the decisions BEPCO believes require the dismissal of these chapter

11 cases.

       8.    The third question of law raised by these appeals is whether Santa Fe, as a

dissolved corporation, remains eligible to be a debtor under chapter 11 of the Bankruptcy Code

when its dissolution was irrevocable long before the filing of its chapter 11 petition such that

rehabilitation was a legal impossibility from the very outset. Once again, there is no controlling

decision in this Circuit, although Circuit level authority from elsewhere would require the

dismissal of Santa Fe's chapter 11 case.

9.      In summary, these appeals are uniquely suited to proceed by direct appeal to the Third Circuit because they both involve unsettled issues of federal bankruptcy law in the Third Circuit and because their prompt adjudication will materially advance the underlying chapter 11 cases in the most fundamental way by resolving the threshold issue of whether the Debtors' chapter 11 cases should be allowed to proceed at all.  Accordingly, BEPCO respectfully submits that certification of its appeals for direct review in the Third Circuit is mandated under 28 U.S.C. § 158(d)(2).

### FACTS NECESSARY TO UNDERSTAND THE QUESTIONS PRESENTED

10.     On August 16, 2006 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned, jointly administered bankruptcy cases.

11.     BEPCO and the Debtors have been litigating the BEPCO Dismissal/Conversion Motion since September 2006.  Additionally, the GSF Entities, each non-debtor, insider affiliates of the Debtors, have actively participated in proceedings on the BEPCO Dismissal/Conversion Motion and related matters since their earliest stages.

12.     The Bankruptcy Court initially considered the BEPCO Dismissal/Conversion Motion at a hearing commenced on October 19, 2006.  At the conclusion of that hearing, the Bankruptcy Court took the BEPCO Dismissal/Conversion Motion under advisement.  It, however, did not render a decision on the BEPCO Dismissal/Conversion Motion, deferring its ruling until the development of a more complete record.  The BEPCO Dismissal/Conversion Motion was again considered by the Bankruptcy Court at a two-day hearing commenced on September 17, 2007.  Post-trial briefing followed and was completed by November 2, 2007.

13.    Approximately three and one-half months later, on February 15, 2008, the Bankruptcy Court entered the Opinion and Order, *inter alia,* denying the BEPCO Dismissal/Conversion Motion. In its Opinion, the Bankruptcy Court rejected BEPCO's request to dismiss the chapter 11 cases on account of the Debtors' lack of good faith and to dismiss Santa Fe's chapter 11 case on account of its ineligibility. The Opinion, however, did not separately address, among other things, BEPCO's request to have the Debtors' chapter 11 cases dismissed for cause pursuant to section 1112(b)(4)(A) of the Bankruptcy Code.

14.    The Bankruptcy Court's refusal to dismiss the chapter 11 cases came notwithstanding its extensive findings of fact, made from a largely undisputed record, which included the following:

   i.   The Debtors' chapter 11 cases were "not filed in furtherance of preserving any going concern or maximizing value of any non-insurance assets." (Op. at 66)

   ii.   The Debtors' "assets other than insurance proceeds are negligible . . ." (Op. at 67)

   iii.   As of the commencement of the bankruptcy cases, the Debtors had no funds other than $100,000 advanced by one of the GSF Entities to Memorial pursuant to a note issued in contemplation of the Debtors' bankruptcy filing. (Op. at 24-25)

   iv.   "[T]here [is no] reason to believe that the proceeds of the liability insurance policies will be insufficient to satisfy all claims presented." (Op. at 66)

   v.   "[I]t is highly doubtful, given the circumstances of these cases, that the Debtors have any equitable interest in the proceeds of the liability insurance policies at issue . . . or in the Alter Ego Claims." (Op. at 74)

   vi.   While certain liability insurance policies were reviewed and notices were sent to certain of the insurance companies during the pendency of their bankruptcy cases, those activities were performed by personnel of one of the GSF Entities, were "undertaken for the benefit of the entire GlobalSantaFe corporate family" and their "overall goal . . . was to compile a database of policies that could be reviewed as claims came up

against any [GlobalSantaFe] entity, whether it be the Debtors or others." (Op. at 35-36)

vii. "The Court is not satisfied that the Debtors have the necessary incentive to pursue its insurers . . . ." (Op. at 73)

viii. The Debtors' estates are administratively insolvent, have experienced a cash shortfall throughout these cases, and because "[t]he Debtors have no reliable source of income, . . . the only likely outcome is that the cash shortfall will continue to increase." (Op. at 46-48)

ix. The Debtors have allowed more than $350,000 in professional fees and alleged intercompany obligations to the GSF Entities to accrue (and for which no formal applications for allowance and payment have yet been filed) and currently have no funds with which to satisfy such obligations. (Op. at 48)

x. The Debtors' liquidating plan (Bankr. D.I. 222) (i) contained "no commitment from any insurer to fund the distributions to claimants such as BEPCO" (Op. at 70), (ii) offered no "effective mechanism that would ensure that insurance recoveries could be procured on a more expedited basis than were BEPCO left to its own devices" (Op. at 70), (iii) was conditioned on the grant to the GSF Entities of "a permanent injunction" notwithstanding the Debtors' inability "to demonstrate that this is the rare case where such extraordinary relief is appropriate" (Op. at 77), and (iv) would grant the "GSF Entities . . . the protection of releases and channeling injunctions well before they may ever be called upon to provide any material assistance to the Plan trustee." (Op. at 70)

xi. Santa Fe, which has been "dissolved since December 2000", "has no officers, directors or employees and engages in no business", and its "defunct status is undisputed and a matter of public record in these cases." (Op. at 7)

xii. "Memorial is . . . a holding company with no employees and engages in no business other than to act as the sole shareholder of Santa Fe." (Op. at 6) Memorial had previously dissolved and then had its dissolution revoked "'under the advice of counsel in litigation.'" (Op. at 6)

xiii. Each of the Debtors is a wholly-owned subsidiary of GlobalSantaFe Corporation, which, with other members of its corporate family, is one of the world's largest offshore oil and gas drilling contractors and a leading provider of drilling services. (Op. at 7)

xiv. At all times from and after commencement of the Debtors' chapter 11 cases, all directors of Memorial have been officers of GlobalSantaFe, and

10

most, if not all, officers of Memorial have been officers of GlobalSantaFe or other non-debtor members of its corporate family. (Op. at 10)

xv. David E. Faure, the Debtors' sole representative in the chapter 11 cases who has sole responsibility for the Debtors' alleged efforts to recover funds from the GSF Entities, reports directly to the General Counsel of GlobalSantaFe and testified at trial "that the filing of a lawsuit against [GlobalSantaFe] on behalf of the Debtors to facilitate the return of upstreamed funds would jeopardize his job." (Op. at 9-10)

xvi. Approximately one week prior to the filing of the Debtors' chapter 11 cases, David E. Faure caused Memorial to execute a note pursuant to which it agreed, *inter alia,* that (i) "it accepts all liabilities existing or arising from the activities of Santa Fe", (ii) "it is not a single business enterprise with . . . GlobalSantaFe Corporation . . . or any affiliate of GlobalSantaFe Corporation", and (iii) to defend and indemnify its immediate parent, one of the GSF Entities, from all claims related to Santa Fe's operations. (Op. at 23-24)

xvii. At the time the Debtors commenced their chapter 11 cases, "[t]he Debtors were aware that the Tebow Plaintiffs were seeking $320 million from Santa Fe and BEPCO for remediation of" property allegedly damaged primarily through Santa Fe's activities thereon and that the Tebow Plaintiffs would dismiss Santa Fe from the litigation were it to file bankruptcy. (Op. at 16)

xviii. At the time the Debtors commenced their chapter 11 cases, the Debtors and the GSF Entities were aware that both the Tebow Plaintiffs and BEPCO had threatened to pursue GlobalSantaFe Corporation under Louisiana's single business enterprise doctrine, which is akin to alter ego liability. (Op. at 22-23)

xix. "A motivation for the filing of the Debtors' bankruptcy cases was to cut off the potential future exposure of the [non-debtor] GSF Entities for claims made against the Debtors." (Op. at 22)

xx. Aside from the proofs of claim filed by BEPCO, the insider GSF Entities and Santa Fe's own professionals, only ten (10) proofs of claim have been filed in the Debtors' bankruptcy cases, (i) six (6) of which are claims by taxing authorities that "relate primarily to property of non-debtor affiliates and do not represent obligations of the debtors" (Op. at 29) and (ii) two (2) of the proofs of claim relate to personal injury actions concerning which the coverage may be available under "insurance policies separate and distinct from those likely to provide coverage for BEPCO's claims." (Op. at 68)

15.     Following the entry of the Opinion and Order, BEPCO timely filed the

BEPCO Reconsideration Motion.  In the BEPCO Reconsideration Motion, BEPCO identified

three principal bases for the reconsideration, vacatur and amendment, in part, of the Opinion and

Order.  First, BEPCO argued that the facts as found by the Bankruptcy Court and as stipulated by

the parties in the Opinion and Order established "cause" under section 1112(b)(4)(A) of the

Bankruptcy Code and that dismissal or other relief under section 1112(b)(1) was therefore

required.  Second, again principally relying upon the facts as found by the Bankruptcy Court or

as stipulated by the parties, BEPCO argued that the Bankruptcy Court had misapprehended its

position that the Debtors' chapter 11 cases should be dismissed for lack of good faith because

they failed to advance any valid bankruptcy purpose as required by *NMSBPCSLDHB, L.P., v.*

*Integrated Telecom Express, Inc.*, 384 F.3d 108, 118 (3d Cir. 2004).  Third, BEPCO pointed out

that the Bankruptcy Court had failed to consider the undisputed fact that Santa Fe's dissolution

could no longer be revoked and, as a result, had misapplied the law under section 109(d) of the

Bankruptcy Code which would have made Santa Fe ineligible to be a chapter 11 debtor.  The

matters at issue in the BEPCO Reconsideration Motion correspond directly with the legal

questions presented in this Certification Request.

16.     Although the Bankruptcy Court granted BEPCO's request for

reconsideration of the Opinion and Order, upon reconsideration, the Bankruptcy Court denied

BEPCO's request to vacate and amend the relevant portions of its Opinion and Order.  While

acknowledging that the elements of "cause" under section 1112(b)(4)(A) of the Bankruptcy Code

were present, the Bankruptcy Court refused to grant the relief required by section 1112(b)(1) of

the Bankruptcy Code based upon its misapplication of the limited exceptions to section

1112(b)(1)'s directive that the Bankruptcy Court "shall" dismiss or convert a chapter 11 case

12

upon a finding of cause. Specifically, the Bankruptcy Court relied on the exception set forth in section 1112(b)(2) even though it found cause under section 1112(b)(4)(A), which made the exception unavailable to the Debtors as a matter of law. (Recon. Op. at 8) Additionally, the Bankruptcy Court deemed "special circumstances" to be present in these liquidating, virtually no asset bankruptcy cases based on its findings that the Debtors had accomplished the following in the more than 20 months the chapter 11 cases had been pending when the Reconsideration Opinion was issued:

> 1. In the Insurance Review Program, the Debtors have identified insurance policies which will inure to the benefit of the claimants, including BEPCO.
>
> 2. Debtors have given and continue to give notice of claims to insurers for the benefit of creditors.
>
> 3. Debtors have preserved claims for indemnity and defense costs relating to the Tebow Action.
>
> 4. Debtors have obtained dismissal of litigation or claims from which they otherwise might have been damaged.

(Recon. Op. at 6-7)[6]

17.  On April 28, 2008, BEPCO timely filed notices of appeal from (a) Opinion and Order (Bankr. D.I. 329; Adv. D.I. 197) and (b) the Reconsideration Opinion and Order (Bankr. D.I. 330; Adv. D.I. 198).[7]

---

[6]  Although the Bankruptcy Court granted reargument and reconsideration without limitation, its Reconsideration Opinion did not specifically address BEPCO's requests to vacate and amend the Opinion and Order to dismiss Santa Fe's bankruptcy case because of its ineligibility to be a chapter 11 debtor under section 109(d) of the Bankruptcy Code. Additionally, the Bankruptcy Court only commented briefly on BEPCO's request to reconsider its decision not to dismiss the Debtors' chapter 11 cases for lack of good faith. (Recon. Op. at 7-8)

[7]  Under established Third Circuit precedent, the Opinion and Order and Reconsideration Opinion and Order are final orders within the meaning of 28 U.S.C. § 158(a).  *See, e.g.,*
(Continued . . .)

18.    On May 7, 2008, the Debtors and the GSF Entities each filed notices of cross-appeal from the Opinion and Order and the Reconsideration Opinion and Order (Bankr. D.I. 336 & 337; Adv. D.I. 206 & 207).

19.    All appeals were subsequently docketed with this Court on May 27 & 29, 2008 and assigned the following case numbers: 08-313 (SLR), 08-314 (SLR), 08-318 (SLR), 08-319 (SLR), 08-321 (SLR), 08-322 (SLR), 08-325 (SLR) and 08-326 (SLR).[8]

20.    On the date hereof, the Debtors and GSF Entities filed a motion requesting the consolidation of all of the appeals and their joint administration under a single caption.[9]

## QUESTIONS PRESENTED

21.    The issues in BEPCO's appeals of the Opinion and Order and Reconsideration Opinion and Order include the following dispositive legal questions:

a.    Whether the Bankruptcy Court, once it found "cause" under section 1112(b)(4)(A) of the Bankruptcy Code based on "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation", retained the

---

(. . . continued)

*In re SGL Carbon Corp.,* 200 F.3d 154, 159 (3d Cir. 1999) (recognizing appellate jurisdiction from order denying dismissal of chapter 11 case as final order); *In re Brown,* 916 F.2d 120, 121 (3d Cir. 1990) (order of bankruptcy court denying creditor's motion to dismiss debtor's chapter 11 proceedings final under 28 U.S.C. § 158(a)); *Delightful Music Ltd. v. Taylor (In re Taylor),* 913 F.2d 102, 104 (3d Cir. 1990) ("The order refusing to dismiss the bankruptcy petition is . . . appealable.")

[8]    Because there were direct and cross appeals from both the Opinion and Order and the Reconsideration Opinion and Reconsideration Order and because each of those decisions was docketed in both the Main Case and the Adversary Proceeding, eight related appeals have been docketed by the Clerk.

[9]    BEPCO does not oppose the joint administration of the appeals under a single caption for procedural purposes only. Out of an abundance of caution, this Certification Request has been filed separately in each of the appeals initiated by BEPCO because the motion of the Debtors and the GSF Entities is still pending and has not yet been acted upon by this Court.

discretion under section 1112(b) of the Bankruptcy Code sufficient to allow it not to dismiss or convert the case or appoint a trustee on this record.

        b.     Whether, in denying BEPCO's request to dismiss the Debtors' chapter 11 cases for lack of good faith, the Bankruptcy Court disregarded the proper legal standard that requires a chapter 11 petition filed when no rehabilitation is intended or possible to preserve value for creditors that would be lost without bankruptcy protection.

        c.     Whether the Bankruptcy Court erred in failing to dismiss Santa Fe's bankruptcy case on the basis of its ineligibility to be a chapter 11 debtor under section 109(d) of the Bankruptcy Code, notwithstanding that it was absolutely impossible for Santa Fe to reorganize under chapter 11 because its dissolution had become irrevocable long before its bankruptcy case was filed.

## RELIEF SOUGHT IN THE APPEALS

        22.     By its appeals, BEPCO seeks the entry of orders: (a) reversing the Opinion and Order insofar that they denied the BEPCO Dismissal/Conversion Motion and remanding the cases to the Bankruptcy Court with instructions to dismiss the Debtors' chapter 11 cases with prejudice, subject to a limited retention of jurisdiction for the purpose of determining BEPCO's entitlement, if any, to recover its fees and expenses; and (b) reversing the Reconsideration Opinion and Order insofar that they denied BEPCO's request to vacate and amend, in part, the Opinion and Order and remanding the cases to the Bankruptcy Court with instructions to dismiss the Debtors' chapter 11 cases with prejudice, subject to a limited retention of jurisdiction for the purpose of determining BEPCO's entitlement, if any, to recover its fees and expenses.

## BASES FOR CERTIFICATION

23.     Enacted as part of the BAPCPA, 28 U.S.C. § 158(d)(2)(A) streamlines the

bankruptcy appeals process by providing direct access to the United States Courts of Appeals

through a two-step certification process. House Report No. 109-31, Pt. 1, 109th Cong., 1st Sess.

148-49 (2005).

24.     For an appeal to be made directly to the relevant United States Court of

Appeals, either the relevant bankruptcy court, the relevant district court or the parties acting

jointly must certify that one of the following criteria has been satisfied:

> (i) the judgment, order, or decree involves a question of law as to
> which there is no controlling decision of the court of appeals for
> the circuit or of the Supreme Court of the United States, or
> involves a matter of public importance;
>
> (ii) the judgment, order, or decree involves a question of law
> requiring resolution of conflicting decisions; *or*
>
> (iii) an immediate appeal from the judgment, order, or decree may
> materially advance the progress of the case or proceeding in which
> the appeal is taken.

28 U.S.C. § 158(d)(2)(A)(i) – (iii) (emphasis added).[10]  Certification is mandatory if any one of

these three circumstances exists.[11]  *See* 28 U.S.C. § 158(d)(2)(B).

---

[10]     If it is certified that the criteria set forth in section 158(d)(2)(A) has been satisfied, the
relevant United States Court of Appeals must authorize the direct appeal.  *See* 28 U.S.C.
§ 158(d)(2)(A).  "Jurisdiction for the direct appeal would exist in the circuit court of
appeals only if the court of appeals authorizes the direct appeal." House Report No. 109-
31, Pt. 1, 109th Cong., 1st Sess. 148-49 (2005)

[11]     As one leading commentator explains, "Section 158(d)(2) was apparently suggested by
28 U.S.C. § 1292(b)." 1 COLLIER ON BANKRUPTCY ¶ 5.05A[2] at 5-18 (15th ed. rev.
2008).  However, the standard under section 158(d)(2) is significantly more relaxed than
that applied under section 1292(b).  "[W]hile any one of the four criterial set out [in
section 158(d)(2) would fulfill the statutory predicate for a  certification, section 1292(b)
requires both a controlling question of law *and* a certification that an immediate appeal
would advance the litigation.  Thus, decisions interpreting section 1292(b) will be helpful
(Continued . . .)

25.    While the presence of only one of the three circumstances set forth in Section 158(d)(2)(A) is required for certification, all three circumstances are present in the appeal currently before this Court.

**A.    The BEPCO Appeals Involve Questions Of Law As To Which There Is No Controlling Third Circuit Or Supreme Court Decision And Involve Matters Of Public Importance**

**i.    No Decision Of The Third Circuit Or The Supreme Court Controls The Questions Of Law Involved In The BEPCO Appeals**

**a.    Section 1112(b) Of The Bankruptcy Code**

26.    With the enactment of BAPCPA, section 1112 of the Bankruptcy Code underwent a major overhaul. Specifically, section 1112(b) – the provision at issue here – was substantially redrafted. The amendments to section 1112(b) "materially circumscribed the court's discretion to convert or dismiss a chapter 11 case for cause in significant ways." 7 COLLIER ON BANKRUPTCY ¶ 1112.01[2][a] at 1112-8.1.

27.    Under the pre-BAPCPA version of section 1112(b) of the Bankruptcy Code, a finding of "cause" may have led to conversion or dismissal or it may not have – it was a matter left entirely to the discretion of the bankruptcy court.[12] As revised, section 1112(b)(1) now provides:

> [A]bsent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court *shall* convert

---

(. . . continued)

but by no means determinative in certain cases." 1 COLLIER ON BANKRUPTCY ¶ 5.05A[2] at 5-19.

[12]    The pre-BAPCPA version of section 1112(b)(1) provided that upon a finding of cause, "the court *may* convert a case under . . . chapter [11], whichever is in the best interest of creditors and the estate . . . ." 11 U.S.C. § 1112(b)(1) (emphasis added).

a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

11 U.S.C. § 1112(b)(1) (emphasis added).

28.    Section 1112(b)(2), in turn, provides:

The relief provided in paragraph (1) shall not be granted absent unusual circumstances specifically identified by the court that establish that such relief is not in the best interests of creditors and the state, if the debtor or another party in interest objects and establishes that –

(A)    there is a reasonable likelihood that a plan will be confirmed . . . within a reasonable period of time; and

(B)    the grounds for granting such relief include an act or omission of the *debtor other than under paragraph (4)(A)*-

(i)    for which there exists a reasonable justification for the act or omission; and

(ii)    that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2) (emphasis added).    Thus, the express terms of the section 1112(b)(2) exception to section 1112(b)(1)'s mandatory dismissal for cause make the exception unavailable when, as the Bankruptcy Court found here, cause is based on "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" under section 1112(b)(4)(A).

29.    Only a handful of lower courts (and no Circuit courts) have considered the interplay between sections 1112(b)(1), 1112(b)(2) and 1112(b)(4)(A) since the BAPCPA amendments to section 1112 became effective.    Of these, at least two courts have held that sections 1112(b)(1) and 111(b)(2) must be read together so that "[i]f the movant establishes 'cause,' then the burden shifts to the debtor or other party in interest to prove that the cause falls within the § 1112(b)(2) 'unusual circumstances' exception to § 1112(b)(1)'s mandatory

18

conversion or dismissal." *In re Emergystat of Sulligent, Inc.*, No. 07-51394, 2008 WL 597613, at *6 (Bankr. E.D. Tenn. Feb. 29, 2008). *See also In re Gateway Solutions, Inc.*, 374 B.R. 556, 561 (Bankr. M.D. Pa. 2007).

      30.    As section 1112(b) has been construed by these courts, as a matter of law, a debtor could never carry its burden to establish "unusual circumstances" where "cause" is based on section 1112(b)(4)(A) because section 1112(b)(2) is viewed as the source of the statutory authority for a debtor resisting the mandatory grant of relief under section 1112(b)(1) and section 1112(b)(2) is expressly unavailable when cause under section 1112(b)(4)(A) is established. It can be inferred from the Bankruptcy Court's exercise of discretion in the Reconsideration Opinion not to grant relief under section 1112(b)(1) that it rejected this construction of the statute. BEPCO respectfully submits that this was legal error by the Bankruptcy Court that requires reversal of the Opinion and Order.

      31.    In contrast, at least one bankruptcy court has stated in dicta and without analysis that it retains the discretion not to grant relief under section 1112(b)(1), despite a finding of cause under section 1112(b)(4)(A). *See In re the 1031 Tax Group, LLC*, 374 B.R. 78, 93 (Bankr. S.D.N.Y. 2007). Neither this court nor any other court, however, has attempted to answer the question why Congress would amend section 1112(b) to deny a debtor the opportunity to defeat a request for relief under section 1112(b)(1) by establishing "unusual circumstances" under section 1112(b)(2) after a finding of cause pursuant to section 1112(b)(4)(A) while at the same time allowing the bankruptcy court discretion to deny relief after a finding of such cause pursuant to section 1112(b)(1).

      32.    There are only two possible interpretations that can be reconciled with the statute's express language. As interpreted by the *Emergystat* and *Gateway Solutions* courts,

Congress meant for sections 1112(b)(1) and 1112(b)(2) to be read together to foreclose an "unusual circumstances" defense to a motion to dismiss or convert under section 1112(b)(1) when cause is based on section 1112(b)(4)(A). Alternatively, Congress may have meant to leave some discretion to the bankruptcy court not to grant relief under section 1112(b)(1), but intended that the "unusual circumstances" proven in such a situation to be far more compelling and extraordinary than the generic "unusual circumstances" that would suffice were section 1112(b)(4)(A) not the source of the "cause" finding.[13]

33.    While BEPCO believes that under any definition of "unusual circumstances" the Bankruptcy Court's failure to dismiss the Debtors' chapter 11 cases constituted reversible error, it is clear from the Reconsideration Opinion that (assuming relief can ever be denied on the basis of "unusual circumstances" when cause is based on section 1112(b)(4)(A)) the Bankruptcy Court committed legal error by failing to demand that the Debtors come forward with the type of compelling and truly extraordinary "unusual circumstances" that could justify denying relief under section 1112(b)(1) when section 1112(b)(4)(A) supplies "cause" for relief. Indeed, the Bankruptcy Court did not even attempt to invoke the "unusual circumstances" label, choosing instead to deny relief based on a finding of "special circumstances," which is not a term used in the statute. (Recon. Op. at 6)

34.    With its redrafting of section 1112(b), Congress, unfortunately, has created a statute that, in some respects, has a meaning as clear as mud. Nevertheless, Congress's

---

[13]    One commentator states: "Although section 1112(b) does not defined the phrase 'unusual circumstances,' it clearly contemplates conditions that are not common in most chapter 11 cases" and that "the import of section 1112(b) is that, if cause exists, the case should be converted or dismissed unless unusual facts or circumstances demonstrate that the purposes of chapter 11 would be better served by maintaining the case as a chapter 11 proceeding." 7 COLLIER ON BANKRUPTCY ¶ 1112.04[3] at 1112-26.

intent to substantially "limit the Court's discretion to refuse to dismiss or convert a Chapter 11 case upon a finding of cause" is evident. *Gateway Access,* 374 B.R. at 560.  See also 7 COLLIER ON BANKRUPTCY ¶ 1112.04[1] at 1112-19 to 1112-20 ("As amended in 2005, section 1112(b) materially circumscribes the court's discretion to convert or dismiss a chapter 11 case for cause in several important ways.").  What is not entirely clear and what neither the Supreme Court nor the Third Circuit has yet addressed is whether, when cause is based on section 1112(b)(4)(A), the bankruptcy court retains any discretion to deny relief under section 1112(b)(1) and, even if it has such discretion, what the standard against which its exercise of discretion should be measured.

      b.    <u>Lack Of Good Faith</u>

      35.    BEPCO argued to the Bankruptcy Court that application of the standards developed by the Third Circuit in *NMSBPCSLDHB, L.P., v. Integrated Telecom Express, Inc.,* 384 F.3d 108 (3d Cir. 2004) and *In re SGL Carbon Corp.,* 200 F.3d 154 (3d Cir. 1999), requires dismissal of the Debtors' chapter 11 cases.  Specifically, *Integrated Telecom* provides that a chapter 11 petition filed when no reorganization is intended and possible "must either preserve some going concern value, e.g., by liquidating a company as a whole or in such a way as to preserve some of the company's goodwill, or by maximizing the value of the debtor's estate." *Integrated Telecom,* 384 F.3d at 120 n.4.  As explained by the Third Circuit, "[t]o say that liquidation under Chapter 11 maximizes the value of an entity is to say that there is some value that otherwise would be lost outside of bankruptcy." *Id.* at 120.   BEPCO respectfully submits that the clear answer, even on the record found by the Bankruptcy Court, is that the Debtors' chapter 11 cases do not serve the purpose of preserving value that would be lost outside of bankruptcy and merely serve to frustrate legitimate creditor action.

21

36. The Bankruptcy Court, however, apparently disagreed that *Integrated Telecom* and *SGL* control on these facts and relied on a handful of decisions (which, as discussed below, are themselves in conflict with other decisions relied upon by BEPCO) that stand for the general proposition that a chapter 11 bankruptcy case may be maintained for the purpose of conducting an orderly liquidation of the debtor's assets for the benefit of creditors. (Op. at 55-56) (collecting cases). Thus, assuming without conceding the correctness of the Bankruptcy Court's apparent conclusion that *Integrated Telecom* and *SGL* do not control the outcome, there would be no Third Circuit or Supreme Court decision dispositive of whether the Debtors' chapter 11 cases should be dismissed for lack of good faith.

c. Section 109(d) Of The Bankruptcy Code

37. As the cases cited in the parties' briefs, the Opinion and Order and the Reconsideration Opinion and Order indicate, there is no controlling Third Circuit or Supreme Court authority discussing whether a dissolved corporation whose dissolution can no longer be revoked, like Santa Fe, is eligible to proceed as a chapter 11 debtor pursuant to section 109(d) of the Bankruptcy Code.

38. For all of the foregoing reasons, the Opinion and Order clearly present questions of law that are eligible for direct appeal to the Third Circuit under 28 U.S.C. § 158(d)(2)(A)(i) and therefore certification is required under 28 U.S.C. § 158(d)(2)(B).

**ii. The Opinion And Order Involve Questions Of Law Which Are Matters Of Public Importance**

39. 28 U.S.C. § 158(d)(2)(A)(i) provides an additional ground for direct appeal where "the judgment, order or decree . . . involves a matter of public importance."

40. As a threshold matter, there is a long standing and well established policy interest in policing the bankruptcy process against abusive and bad faith filings. *See, e.g., In re*

22

*Froment*, 171 B.R. 170, 173 (Bankr. D. Mass. 1994) ("[T]he public interest dictates a result that discourages abusive and bad faith filings. Such filings mire the bankruptcy process in the eyes of the public . . . ."). Indeed, the very origin of the requirement of good faith is in preventing "'abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefitting them in any way . . . .'" *SGL*, 200 F.3d at 161 (quoting *Little Creek Dev. Co. v. Commonwealth Mortg. Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1072 (5th Cir. 1986)). These appeals directly put before the Court the question of whether these Debtors are misusing the chapter 11 process and, accordingly, clearly implicate a matter of public importance.

41.    Furthermore, section 1112(b) of the Bankruptcy Code was recently redrafted as a part of BAPCPA. Interpreting this recent overhaul of the statute is of public importance as it will instruct courts in the Third Circuit (and provide guidance to bankruptcy courts elsewhere) regarding the proper application of these provisions on a going-forward basis.

42.    For these additional reasons, certification is required by 28 U.S.C. § 158(d)(2)(B).

**B.    The Opinion And Order Involve Questions Of Law Requiring Resolution Of Conflicting Decisions**

**i.    Section 1112(b) Of The Bankruptcy Code**

43.    As discussed in paragraphs 26 through 34 above, since the BAPCPA amendments to section 1112(b) became effective, only a handful of lower courts have considered the interplay between sections 1112(b)(1) and 1112(b)(2) following a finding of cause under section 1112(b)(4)(A). These few decisions contain limited analysis and are in some disagreement. The requirement of conflicting decisions is satisfied as to this issue.

### ii.    Lack Of Good Faith

44.    Many courts have been asked to consider whether good faith is lacking in the context of a debtor's bankruptcy case. While BEPCO believes that the Third Circuit's *Integrated Telecom* and *SGL* decisions control and require the dismissal of the Debtors' cases, the Bankruptcy Court apparently reached a differenced conclusion. Absent consideration of *Integrated Telecom* and *SGL* as controlling authority, BEPCO acknowledges that certain of the lower court authorities are in disarray.

45.    For example, in their respective briefs the Debtors and the GSF Entities cite to various, non-binding authority which they assert support of their contention that the Debtors' chapter 11 cases were filed in good faith as (i) a bankruptcy proceeding is a viable alternative to a properly conducted dissolution process under state law even if no other bankruptcy purpose is served and (ii) a bankruptcy court is available as a centralized forum to make distributions to creditors.[14] *Contra, e.g., In re Mazzocone,* 183 B.R. 402, 412 (Bankr. E.D. Pa. 1995) ("Without first determining that a bankruptcy liquidation (with all that it entails) is appropriate under the facts of the case, it does not follow that preservation of equal distribution for its own sake is warranted, since that policy is neither inherently desirable nor justified outside of bankruptcy."), *aff'd,* 200 B.R. 568 (E.D. Pa. 1996).

---

[14]    See, e.g., GlobalSantaFe Entities' Proposed Findings Of Fact And Conclusions Of Law With Respect To Those Matters Heard On September 17-18, 2007 (Bankr. D.I. 256; Adv. D.I. 141) at ¶¶ 57-72; Proposed Findings Of Fact And Conclusions Of Law Submitted By Debtors In Connection With (I) Debtors' Motion For Preliminary Injunctive Relief (Adversary D.I. 3), Bass' Motion To Dismiss And Other Relief (D.I. 21), And (III) Bass' Motion For Modification Of The Automatic Stay (D.I. 23) (Bankr. D.I. 259; Adv. D.I. 140) at ¶¶ 226-243.

### iii.    Section 109(d) Of The Bankruptcy Code

46.    Lastly, with respect to whether Santa Fe, a dissolved corporation that no longer has the option of revoking its dissolution, is eligible to be a debtor pursuant to section 109(d) of the Bankruptcy Code, BEPCO has continuously maintained that the bankruptcy court, district court and Second Circuit decisions in *C-TC 9th Ave. P'Ship v. Norton Co. (In re C-TC 9th Ave. P'Ship)*, 193 B.R. 650 (Bankr. N.D.N.Y. 1995), *aff'd*, 196 B.R 666 (N.D.N.Y. 1996), *aff'd*, 113 F.3d 1304 (2d Cir. 1997), are directly apposite and require the dismissal of Santa Fe's chapter 11 petition. However, at least one bankruptcy court has disagreed with this line of cases.

47.    In *C-TC*, the court held that a dissolved New York partnership was not eligible to proceed under chapter 11, pointing to the inability of the dissolved partnership to seek reinstatement as the barrier preventing it from qualifying for chapter 11 relief. *C-TC*, 113 F.3d at 1309 ("The estate reinstatement allowed a New York corporation is not available to a New York partnership."). In contrast, in *In re Statepark Building Group, Ltd.*, 316 B.R. 466, 475 (Bankr. N.D. Tex. 2004), the bankruptcy court rejected this analysis.

48.    These conflicting decisions with respect to section 1112(b) of the Bankruptcy Code, lack of good faith and eligibility pursuant to section 109(d) of the Bankruptcy Code represent important issues of law that urgently need appellate clarification. Thus, questions of law eligible for appeal under 28 U.S.C. § 158(d)(2)(A)(ii) exist and therefore certification is required under 28 U.S.C. § 158(d)(2)(B).

## C.    Expedited Direct Appeals To The Third Circuit Will Materially Advance The Progress Of The Chapter 11 Cases

49.    BEPCO's appeals go to the must fundamental question at issue in these bankruptcy cases – whether they should be allowed to continue at all. This issue has been an overhang for the more than 21 months these chapter 11 cases have been pending. Furthermore,

as discussed above, the Debtors and the GSF Entities are taking steps through the filing of the Amended Plan and aggressive scheduling of proceedings thereon to thwart the adjudication of this threshold issue. Thus, unless this Court and the Third Circuit act promptly to advance the adjudication of BEPCO's appeals, BEPCO may be denied effective appellate relief and these important legal questions that go to the very heart of how and for whose benefit the bankruptcy process may properly be utilized may never be answered.

50.   In summary, BEPCO respectfully submits that its appeals clearly include issues eligible for direct appeal to the Third Circuit under 28 U.S.C. § 158(d)(2)(A)(iii) and therefore certification is required under 28 U.S.C. § 158(d)(2)(B).

### D. DEL. L.R. 7.1.1 STATEMENT

51.   To the extent applicable, the undersigned counsel for BEPCO hereby certifies in accordance with Rule 7.1.1 of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware that a reasonable effort has been made to reach agreement with the Debtors and the GSF Entities with respect to this Certification Request.

[CONTINUED NEXT PAGE]

## CONCLUSION

52.    For the foregoing reasons, BEPCO respectfully requests this Court enter

the annexed proposed Certification certifying BEPCO's appeals for direct appeal to the Third

Circuit pursuant to 28 U.S.C. § 158(d)(2) and Bankruptcy Rule 8001(f).

Dated: Wilmington, Delaware       MORRIS, NICHOLS, ARSHT & TUNNELL LLP
      June 4, 2008

                                 Gregory W. Werkheiser (No. 3553)
                                 Kelly M. Dawson (No. 4786)
                                 1201 Market Street
                                 P. O. Box 1347
                                 Wilmington, Delaware 19899-1347
                                 Telephone: (302) 351-9229
                                 Fax: (302) 658-3989

                                 -and-

                                 CARVER DARDEN KORETZKY TESSIER FINN
                                 BLOSSMANN & AREAUX, L.L.C.
                                 M. Hampton Carver (LA #4546)
                                 Leann Opotowsky Moses (LA #19439)
                                 1100 Poydras Street, Suite 2700
                                 New Orleans, LA 70163
                                 Telephone: (504) 585-3800
                                 Fax: (504) 585-3801

                                 Co-Counsel for BEPCO, L.P., formerly known
                                 as Bass Enterprises Production Company

2312597.5

**Due to their voluminous nature, exhibits to the Certification Request have been omitted.  Copies of the exhibits are available upon request.**

# Exhibit C

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| 15375 MEMORIAL CORPORATION, et al., | ) | Case No. 06-10859(KG) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Re Dkt. Nos. 351, 352, 354,** |
| | ) | **356, 358, 359 & 361** |

## ORDER

Pending before the Court are the following motions and applications ("the Pending

Matters"):

1. The Debtors' Motion Under and Pursuant to Federal Rule of Bankruptcy Procedures 9019 for Approval of Settlement (D.I. 360) (the "Settlement Motion");

2. The Debtors' Motion for an Order (I) Approving Disclosure Statement, (II) Establishing Confirmation Related Notice Procedures, (III) Approving Solicitations Packages, and (IV) Approving Forms of Ballots and Procedures for Voting on Debtors' First Amended Joint Plan of Liquidation (D.I. 356) (the "Disclosure Statement Motion");

3. The Second Interim Application of Stevens & Lee, P.C. for Allowance and Payment of Compensation and Reimbursement of Expenses as Counsel to the Debtors for the Period November 1, 2006 through January 31, 2007 (D.I. 358);

4. The Third Interim Application of Stevens & Lee, P.C. for Allowance and Payment of Compensation and Reimbursement of Expenses as Counsel to the Debtors for the Period of February 1, 2007 through April 30, 2007 (D.I. 359).

Debtors are seeking to schedule the Pending Matters for June 27, 2008, while BEPCO

opposes the scheduling.

The Pending Matters, especially the Settlement Motion and the Disclosure Statement Motion, involve significant, substantive issues, and come before the Court while the parties are engaged in appellate review of earlier rulings of the Court. Moreover, BEPCO, L.P., is seeking certification for direct and expedited appellate review by the United States Court of Appeals for the Third Circuit.

BEPCO has not sought to stay the pending cases while the appellate process proceeds and Debtors have every right, even duty, to proceed with the cases. However, the cases have been long pending and there is no reason - operational, financial or for convenience - why the Pending Matters must be heard sooner rather than shortly later. Therefore, in the spirit of reason in an otherwise acrimonious case, the Court will adjourn the June 27, 2008, hearing and, instead, schedules the Pending Matters to be heard on the next date scheduled in the cases, July 23, 2008, at 10:00 a.m.

Dated: June 16, 2008

KEVIN GROSS, U.S.B.J.

2

# Exhibit D

## Morris, Nichols, Arsht & Tunnell llp

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899–1347

302 658 9200
302 658 3989 Fax

Gregory W. Werkheiser
302 351 9229
302 425 4663 Fax
gwerkheiser@mnat.com

June 17, 2008

**VIA HAND DELIVERY**

Kevin F. Brady, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899

Re:    ***BEPCO, L.P. v. 15375 Memorial Corporation, et al.,***
       ***Civil Action No. 1:08-cv-00313 (SLR)***

Dear Kevin:

   I write on behalf of appellant and cross-appellee BEPCO, L.P., f/k/a Bass Enterprises Production Company ("BEPCO"), in response to your letter, dated June 9, 2008 concerning your assignment as mediator in the above-referenced appeals currently pending before the United States District Court for the District of Delaware (the "District Court"). While BEPCO appreciates your willingness to mediate the disputes that are the subject of these appeals, for a number of reasons, these appeals are particularly ill-suited to the appellate mediation process contemplated by the District Court's Standing Order, dated July 23, 2004. BEPCO, therefore, requests that it be permitted to bypass the appellate mediation process.

   By way of background, BEPCO's appeals are from (a) an order of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") denying BEPCO's motion to dismiss the chapter 11 cases of debtors 15375 Memorial Corporation ("Memorial") (a shell holding company) and Santa Fe Minerals, Inc. ("Santa Fe," and together with Memorial, the "Debtors") (a dissolved corporation) and (b) an order of the Bankruptcy Court denying BEPCO's motion for reconsideration under Bankruptcy Rules 7052 and 9023 and Federal Rules of Civil Procedure 52 and 59(e). BEPCO sought the dismissal of the Debtors' chapter 11 cases based on, *inter alia*, (i) the Debtors' lack of good faith, (ii) "cause" pursuant to 11 U.S.C. § 1112(b) and (iii) the ineligibility of Santa Fe, a corporation that was irrevocably

Kevin F. Brady, Esq.
June 17, 2008
Page 2

dissolved long before its chapter 11 petition was filed, to be a debtor under chapter 11 of the Bankruptcy Code.

More broadly, the bankruptcy cases arise out of a lawsuit that was brought several years ago in Louisiana against, *inter alia,* BEPCO and Santa Fe in which the plaintiffs sought to recover damages in excess of $300 million for property damage allegedly caused by oil and gas exploration and related activities on property Santa Fe occupied under a mineral lease for which BEPCO (or, as it was then named, Richardson Oils, Inc.) also was in the chain of title. Santa Fe avoided liability in the original Louisiana suit by filing a chapter 11 petitions in the Bankruptcy Court on August 16, 2006. Thereafter, when it became clear that BEPCO would not be able to obtain the dismissal of the Debtors' chapter 11 cases or relief from stay in time to re-join Santa Fe and to add Memorial and the GlobalSantaFe Corporation, GlobalSantaFe Corporate Services, Inc. and Entities Holdings, Inc. (collectively, the "GSF Entities") to the Louisiana suit, BEPCO reached a settlement with the plaintiffs pursuant to which more than $20 million has been paid.

For nearly the last two years, BEPCO has been pursuing efforts before the Bankruptcy Court to obtain the right to liquidate its claims against the Debtors in a non-bankruptcy forum, to attempt to recover its losses from liability insurance proceeds that may be available and to proceed against the non-debtor GSF Entities that BEPCO asserts are liable to it on single business enterprise, alter ego, wrongful distribution at dissolution and similar theories. As the Bankruptcy Court found, the Debtors' estates are deeply administratively insolvent, so, as a practical matter, any meaningful recovery by BEPCO is likely to come from liability insurance proceeds and/or the non-debtor GSF Entities. The continuation of the bankruptcy cases essentially has operated as a roadblock to BEPCO accessing these non-debtor sources of recovery and, as to the GSF Entities, that roadblock now threatens to become permanent.[1]

First, in the brief period of time these appeals have been docketed in the District Court, the Debtors and the insider GSF Entities, which wholly dominate and control them, have been proceeding with efforts in the Bankruptcy Court intended to moot these appeals and deny BEPCO meaningful appellate relief. Specifically, the Debtors are pursuing confirmation of an amended plan of liquidation (the "Amended Plan"), which is based on a settlement between the Debtors and the insider GSF Entities, reached without the involvement of creditors or an independent fiduciary. This settlement would release potentially valuable causes of action against the GSF Entities, provide no benefit at all to unsecured creditors and enjoin BEPCO from pursuing the non-debtor GSF Entities in any claims related to the Debtors without providing BEPCO any distribution whatsoever under the Plan other than the right to pursue insurance

---

[1]     Recently, the Bankruptcy Court authorized BEPCO to commence litigation in Louisiana to liquidate its claims against Santa Fe (but not against Memorial or the non-debtor GSF Entities) and to pursue recoveries under liability insurance policies. That suit was filed on April 29, 2008 and is in its earliest stages.

Kevin F. Brady, Esq.
June 17, 2008
Page 3

proceeds, which BEPCO has already secured through litigation with the Debtors and GSF Entities in the Bankruptcy Court.

Second, BEPCO has a pending request (D.I. 6) (the "Certification Request") in the District Court to expedite its appeals and certify them for direct review to the United States Court of Appeals for the Third Circuit. A stay of BEPCO's appeals pending mediation would frustrate BEPCO's ability to obtain expedited review in the Third Circuit pursuant to the Certification Request.

Third, the unfortunate truth that BEPCO has learned through hard experience in this litigation is that the Debtors and GSF Entities have never been willing to engage in good faith negotiations in furtherance of resolving these disputes. At the prompting of the Bankruptcy Court, BEPCO previously agreed to continue a July 2007 trial date and mediated before the Honorable Kevin J. Carey of the Bankruptcy Court on August 28, 2007. Those efforts were unsuccessful and concluded with the parties still very far apart on settlement.

Recent actions by the Debtors and GSF Entities strongly indicate that the passage of time and the rulings by the Bankruptcy Court have done nothing to change their unwillingness to have meaningful discussions about a resolution of these matters and create the risk that they would only use appellate mediation to delay the progress of BEPCO's appeals. Notably, the Amended Plan provides BEPCO with no distribution in the Debtors' bankruptcy cases. Moreover, the Debtors have sought to aggressively schedule the disclosure statement for the Plan and their motion to approve their self-interested settlement with the GSF Entities for a hearing on June 27, 2008.[2] Furthermore, both the Debtors and GSF Entities have refused to consent to the certification of these appeals to the Third Circuit and have filed more than 40 pages of briefing in opposition to the Certification Request, with the clear agenda of denying BEPCO meaningful appellate relief before they have the opportunity to attempt to moot BEPCO's appeals through their actions in the Bankruptcy Court.

Considering all that has transpired in this litigation and the matters currently pending before the Bankruptcy Court and District Court, it is highly unlikely that mediation at this time would materially aid the parties in resolving their differences or otherwise conserve judicial resources. Indeed, under the circumstances, BEPCO submits that the potential for abuse of the mediation process to delay the progress of BEPCO's appeals and to frustrate its ability to obtain meaningful appellate review is simply far too great for appellate mediation to occur at this time. Accordingly, BEPCO requests that you recommend to the District Court that these appeals be excepted from the appellate mediation process.

---

[2]    At BEPCO's request, the Bankruptcy Court has delayed proceedings on these matters, but only to July 23, 2008, at 10:00 a.m. (ET).

Kevin F. Brady, Esq.
June 17, 2008
Page 4

Please do not hesitate to contact me if you have any questions.

Sincerely,

Gregory W. Werkheiser

cc:    John D. Demmy, Esq.
       John C. Kilgannon, Esq.
       Philip G. Eisenberg, Esq.
       Mark A. Chavez, Esq.
       Francis A. Monaco, Jr., Esq.
       Kevin J. Mangan, Esq.
       David Buchbinder, Esq.
       M. Hampton Carver, Esq.
       Leann O. Moses, Esq.

2365978.3

## Werkheiser, Gregory

| | |
|---|---|
| **From:** | Werkheiser, Gregory |
| **Sent:** | Tuesday, June 17, 2008 2:51 PM |
| **To:** | 'kbrady@cblh.com' |
| **Cc:** | 'Demmy, John, D.'; Kilgannon, John C.; 'Eisenberg, Philip'; Chavez, Mark; fmonaco@wcsr.com; kmangan@wcsr.com; 'Buchbinder, David'; 'Hampton Carver'; 'Leann Moses'; Dawson, Kelly |
| **Subject:** | BEPCO L.P., f/k/a Bass Enterprises - Civil Action No. 08-313 |
| **Attachments:** | 6_17_08 Letter to Kevin Brady re_ Mediation.PDF |

Please see the attached correspondence.  Thank you.

Gregory W. Werkheiser
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Chase Manhattan Centre, 18th Floor
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

Main: 302.658.9200
Direct Dial: 302.351.9229
Fax: 302.425.4663

| M | N | A | T |

6_17_08 Letter to
Kevin Brady ...

# Exhibit E

## Werkheiser, Gregory

| | |
|---|---|
| **From:** | Eisenberg, Philip [peisenberg@lockelord.com] |
| **Sent:** | Tuesday, June 17, 2008 4:35 PM |
| **To:** | kbrady@cblh.com |
| **Cc:** | Demmy, John, D.; Kilgannon, John C.; Chavez, Mark; fmonaco@wcsr.com; kmangan@wcsr.com; Buchbinder, David; Hampton Carver; Leann Moses; Dawson, Kelly; Werkheiser, Gregory |
| **Subject:** | RE: BEPCO L.P., f/k/a Bass Enterprises - Civil Action No. 08-313 |

Mr.Brady,

I am lead counsel for the GSF Entities in this matter. I am in receipt of Mr. Werkheiser's correspondence to you.

As an initial matter I believe Mr. John Demmy, lead counsel for Debtors, is out of the office and unavailable this week. I had previously requested Mr. Frank Monaco to share our availability for a call with you, as requested, but we have been holding off waiting for Mr. Demmy. We expect upon Mr. Demmy's return to let you know our availability next week for a call.

With regard to Mr. Werkheiser's letter, it was my understanding absent agreement of the parties that the mediation was mandatory in accordance with your local rules. The GSF Entities stand ready to fully participate in this process. You should know that just last friday Mr. Demmy and I received an email from Mr. Werkheiser concerning settlement which provided that, "BEPCO always has been and remains willing to engage in a dialogue to resolve the matters in dispute...." Certainly a somewhat different message than the one conveyed in Mr. Werkheiser's correspondence to you.

Without responding to the many accusations in Mr. Werkheiser's letter, please simply note we disagree and would suggest that we address Mr. Werkheiser's concerns in a conference call with you next week.

Philip Eisenberg, Partner
Locke Lord Bissell & Liddell
600 Travis Street, Suite 3400
Houston, Texas 77002
(o)713-226-1304
(f)713-223-3717

---

**From:** Werkheiser, Gregory [mailto:GWerkheiser@MNAT.com]
**Sent:** Tuesday, June 17, 2008 1:51 PM
**To:** 'kbrady@cblh.com'
**Cc:** 'Demmy, John, D.'; Kilgannon, John C.; Eisenberg, Philip; Chavez, Mark; fmonaco@wcsr.com; kmangan@wcsr.com; 'Buchbinder, David'; 'Hampton Carver'; 'Leann Moses'; Dawson, Kelly
**Subject:** BEPCO L.P., f/k/a Bass Enterprises - Civil Action No. 08-313

Please see the attached correspondence.  Thank you.

Gregory W. Werkheiser
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Chase Manhattan Centre, 18th Floor
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

Main: 302.658.9200
Direct Dial: 302.351.9229

Fax: 302.425.4663

| M | N | A | T |

This message, including any accompanying documents or attachments, may contain information that is confidential or that is privileged. If you are not the intended recipient of this message, please note that the dissemination, distribution, use or copying of this message or any of the accompanying documents or attachments is strictly prohibited. If you believe that you may have received this message in error, please contact me at (302) 658-9200 or by return e-mail.

6/18/2008

# Exhibit F

## Werkheiser, Gregory

| | |
|---|---|
| **From:** | Werkheiser, Gregory |
| **Sent:** | Tuesday, June 17, 2008 5:17 PM |
| **To:** | 'Eisenberg, Philip'; kbrady@cblh.com |
| **Cc:** | Demmy, John, D.; Kilgannon, John C.; Chavez, Mark; fmonaco@wcsr.com; kmangan@wcsr.com; Buchbinder, David; Hampton Carver; Leann Moses; Dawson, Kelly |
| **Subject:** | RE: BEPCO L.P., f/k/a Bass Enterprises - Civil Action No. 08-313 |
| **Attachments:** | BEPCO/15375 Memorial |

Kevin,

So that you have the benefit of the email Mr. Eisenberg is referring to, I have attached a copy of my email to him and Mr. Demmy, dated June 13, 2008, for your reference.  The email was prompted by statements made by the Debtors and GSF Entities in recent filings with the Bankruptcy Court and the District Court that created the false impression that BEPCO was unwilling to discuss settlement in any setting.  I believe, if you review the email, you will note that it is entirely consistent with my letter to you.  In particular, I made the point abundantly clear in my email to Messrs. Demmy and Eisenberg that the recent actions of the Debtors and GSF Entities, including their filing of an amended plan of liquidation that offers BEPCO no distribution whatsoever, were at odds with their statements in their recent Court filings.

As I stated in my prior email, "[i]f the Debtors and GSF Entities have a meaningful settlement proposal to convey, we are prepared to listen."  That has been true and remains true of BEPCO today.

Whether, however, BEPCO's appeals should be stayed pending another round of formal mediation (there already having been an unsuccessful attempt at mediation in this case sponsored by the Bankruptcy Court) is quite a different issue.  Given that it was explained at some length in the letter delivered to you earlier today, I won't burden you with further elaboration on the unfair prejudice that BEPCO will experience if its appeals are stayed pending mediation while the efforts of the Debtors and GSF Entities to moot these appeals in the Bankruptcy Court continue.

I transmitted the letter setting forth BEPCO's position on the inappropriateness of these appeals for appellate mediation at your suggestion following our brief conversation last Friday.  The provision of such a letter is consistent with my prior experience with the District Court's appellate mediation program, where the mediator has made a recommendation to the District Court in the first instance based on the initial feedback of the parties concerning whether the case was appropriate for mediation.  If, however, a formal request by BEPCO to the District Court to be excused from appellate mediation would be more appropriate, we, of course, will follow your lead.

Thank you for the oportunity to respond to Mr. Eisenberg's email.  I am available at your convenience should you wish to discuss this matter further.

Sincerely,

Gregory W. Werkheiser
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Chase Manhattan Centre, 18th Floor
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

Main: 302.658.9200
Direct Dial: 302.351.9229

Fax: 302.425.4663
| M | N | A | T |

---

**From:** Eisenberg, Philip [mailto:peisenberg@lockelord.com]
**Sent:** Tuesday, June 17, 2008 4:35 PM
**To:** kbrady@cblh.com
**Cc:** Demmy, John, D.; Kilgannon, John C.; Chavez, Mark; fmonaco@wcsr.com; kmangan@wcsr.com; Buchbinder, David; Hampton Carver; Leann Moses; Dawson, Kelly; Werkheiser, Gregory
**Subject:** RE: BEPCO L.P., f/k/a Bass Enterprises - Civil Action No. 08-313

Mr.Brady,

I am lead counsel for the GSF Entities in this matter. I am in receipt of Mr. Werkheiser's correspondence to you.

As an initial matter I believe Mr. John Demmy, lead counsel for Debtors, is out of the office and unavailable this week. I had previously requested Mr. Frank Monaco to share our availability for a call with you, as requested, but we have been holding off waiting for Mr. Demmy. We expect upon Mr. Demmy's return to let you know our availability next week for a call.

With regard to Mr. Werkheiser's letter, it was my understanding absent agreement of the parties that the mediation was mandatory in accordance with your local rules. The GSF Entities stand ready to fully participate in this process. You should know that just last friday Mr. Demmy and I received an email from Mr. Werkheiser concerning settlement which provided that, "BEPCO always has been and remains willing to engage in a dialogue to resolve the matters in dispute...." Certainly a somewhat different message than the one conveyed in Mr. Werkheiser's correspondence to you.

Without responding to the many accusations in Mr. Werkheiser's letter, please simply note we disagree and would suggest that we address Mr. Werkheiser's concerns in a conference call with you next week.

Philip Eisenberg, Partner
Locke Lord Bissell & Liddell
600 Travis Street, Suite 3400
Houston, Texas 77002
(o)713-226-1304
(f)713-223-3717

---

**From:** Werkheiser, Gregory [mailto:GWerkheiser@MNAT.com]
**Sent:** Tuesday, June 17, 2008 1:51 PM
**To:** 'kbrady@cblh.com'
**Cc:** 'Demmy, John, D.'; Kilgannon, John C.; Eisenberg, Philip; Chavez, Mark; fmonaco@wcsr.com; kmangan@wcsr.com; 'Buchbinder, David'; 'Hampton Carver'; 'Leann Moses'; Dawson, Kelly
**Subject:** BEPCO L.P., f/k/a Bass Enterprises - Civil Action No. 08-313

Please see the attached correspondence.  Thank you.

Gregory W. Werkheiser
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Chase Manhattan Centre, 18th Floor
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

Main: 302.658.9200
Direct Dial: 302.351.9229
Fax: 302.425.4663

| M | N | A | T |

This message, including any accompanying documents or attachments, may contain information that is confidential or that is privileged. If you are not the intended recipient of this message, please note that the dissemination, distribution, use or copying of this message or any of the accompanying documents or attachments is strictly prohibited. If you believe that you may have received this message in error, please contact me at (302) 658-9200 or by return e-mail.

6/18/2008

## Werkheiser, Gregory

| | |
|---|---|
| **From:** | Werkheiser, Gregory |
| **Sent:** | Friday, June 13, 2008 2:11 PM |
| **To:** | 'Demmy, John, D.'; 'Eisenberg, Philip' |
| **Cc:** | Hampton Carver; 'Leann Moses'; Dawson, Kelly |
| **Subject:** | BEPCO/15375 Memorial |

SUBJECT TO FRE 408

FOR SETTLEMENT PURPOSES ONLY

John and Phil,

As you know, the Amended Plan the Disclosure Statement and the 9019 Motion to approve the GSF Settlement were filed with no prior discussion with BEPCO and were scheduled by the Debtors on virtually the shortest possible (and as to the Disclosure Statement and Solicitation Procedures Motion, improper) notice to BEPCO. As a result of the actions of the Debtors and GSF Entities, BEPCO has little choice but to devote most of its resources right now to vigorously defend its interests and oppose the relief that has been requested at the June 27th hearing in these cases.

Nevertheless, the fact that BEPCO intends to continue defending its interests should not be taken to indicate that BEPCO is foreclosing a negotiated resolution of the matters in dispute among BEPCO, the Debtors and the GSF Entities. We're still reviewing the Disclosure Statement, Amended Plan, 9019 Motion and GSF Settlement and the Interim Fee Applications, so I'm not currently in a position to detail all of the potential problems raised by these filings, although our preliminary reaction is that they appear to be numerous and of sufficient magnitude to make the Amended Plan patently not confirmable and the GSF Settlement not approvable by the Bankruptcy Court.

From a settlement standpoint, the ball has been and remains in the court of the Debtors and the GSF Entities. BEPCO acknowledges that the filing of a plan can often be a jumping off point for negotiations between the parties. However, the Amended Plan filed by the Debtors here provides BEPCO with no rights that it has not already established through hard fought litigation and, in fact, attempts to deny other rights to BEPCO that it is entitled to under the Bankruptcy Code and applicable law. As I'm sure you're aware, the Amended Plan purports to bind BEPCO with third party releases and to permanently enjoin it from proceeding against the Debtors and the GSF Entities, but offers it nothing by way of a distribution on its claims. The right to seek a recovery under liability policies is one that BEPCO has from the outset, but which the Debtors and GSF Entities wrongfully resisted, as found by the Bankruptcy Court.

BEPCO always has been and remains willing to engage in a dialogue to resolve the matters in dispute among the parties, but the current posture of the cases created by the actions of the Debtors and the GSF Entities makes it difficult for such a dialogue to occur. We urge the Debtors and GSF Entities to reconsider their approach to these matters. If the Debtors and GSF Entities have a meaningful settlement proposal to convey, we are prepared to listen. BEPCO, however, cannot be expected to counter against an offer of zero, which is all that is really on the table now.

Gregory W. Werkheiser
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Chase Manhattan Centre, 18th Floor
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

Main: 302.658.9200
Direct Dial: 302.351.9229
Fax: 302.425.4663

| M | N | A | T |

# Exhibit G

## Werkheiser, Gregory

| | |
|---|---|
| **From:** | Eisenberg, Philip [peisenberg@lockelord.com] |
| **Sent:** | Tuesday, June 17, 2008 6:44 PM |
| **To:** | Werkheiser, Gregory; kbrady@cblh.com |
| **Cc:** | Demmy, John, D.; Kilgannon, John C.; Chavez, Mark; fmonaco@wcsr.com; kmangan@wcsr.com; Buchbinder, David; Hampton Carver; Leann Moses; Dawson, Kelly |
| **Subject:** | RE: BEPCO L.P., f/k/a Bass Enterprises - Civil Action No. 08-313 |

Mr. Brady,

From my experience there is a reason that mediations are made mandatory. It is done so to avoid unnecessary posturing and accusations. I stand by my earlier email. Apparently BEPCO is willing to address settlement but only if it can suspend the rules that are made equally applicable to all parties. It is the position of the GSF Entities that a formal mediation should be required to go forward under the Standing Order and we are prepared to do so and to discuss same with you next week once we hear from Mr. Demmy concerning his availability.

Philip Eisenberg, Partner
Locke Lord Bissell & Liddell
600 Travis Street, Suite 3400
Houston, Texas 77002
(o)713-226-1304
(f)713-223-3717

---

**From:** Werkheiser, Gregory [mailto:GWerkheiser@MNAT.com]
**Sent:** Tuesday, June 17, 2008 4:17 PM
**To:** Eisenberg, Philip; kbrady@cblh.com
**Cc:** Demmy, John, D.; Kilgannon, John C.; Chavez, Mark; fmonaco@wcsr.com; kmangan@wcsr.com; Buchbinder, David; Hampton Carver; Leann Moses; Dawson, Kelly
**Subject:** RE: BEPCO L.P., f/k/a Bass Enterprises - Civil Action No. 08-313

Kevin,

So that you have the benefit of the email Mr. Eisenberg is referring to, I have attached a copy of my email to him and Mr. Demmy, dated June 13, 2008, for your reference. The email was prompted by statements made by the Debtors and GSF Entities in recent filings with the Bankruptcy Court and the District Court that created the false impression that BEPCO was unwilling to discuss settlement in any setting. I believe, if you review the email, you will note that it is entirely consistent with my letter to you. In particular, I made the point abundantly clear in my email to Messrs. Demmy and Eisenberg that the recent actions of the Debtors and GSF Entities, including their filing of an amended plan of liquidation that offers BEPCO no distribution whatsoever, were at odds with their statements in their recent Court filings.

As I stated in my prior email, "[i]f the Debtors and GSF Entities have a meaningful settlement proposal to convey, we are prepared to listen." That has been true and remains true of BEPCO today.

Whether, however, BEPCO's appeals should be stayed pending another round of formal mediation (there already having been an unsuccessful attempt at mediation in this case sponsored by the Bankruptcy Court) is quite a different issue. Given that it was explained at some length in the letter delivered to you earlier today, I won't burden you with further elaboration on the unfair prejudice that BEPCO will experience if its appeals are stayed pending mediation while the efforts of the Debtors and GSF Entities to moot these appeals in the Bankruptcy Court continue.

I transmitted the letter setting forth BEPCO's position on the inappropriateness of these appeals for appellate mediation at your suggestion following our brief conversation last Friday. The provision of such a letter is

Page 2 of 3

consistent with my prior experience with the District Court's appellate mediation program, where the mediator has made a recommendation to the District Court in the first instance based on the initial feedback of the parties concerning whether the case was appropriate for mediation.  If, however, a formal request by BEPCO to the District Court to be excused from appellate mediation would be more appropriate, we, of course, will follow your lead.

Thank you for the oportunity to respond to Mr. Eisenberg's email.  I am available at your convenience should you wish to discuss this matter further.

Sincerely,

Gregory W. Werkheiser
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Chase Manhattan Centre, 18th Floor
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

Main: 302.658.9200
Direct Dial: 302.351.9229
Fax: 302.425.4663
| M | N | A | T |

---

**From:** Eisenberg, Philip [mailto:peisenberg@lockelord.com]
**Sent:** Tuesday, June 17, 2008 4:35 PM
**To:** kbrady@cblh.com
**Cc:** Demmy, John, D.; Kilgannon, John C.; Chavez, Mark; fmonaco@wcsr.com; kmangan@wcsr.com; Buchbinder, David; Hampton Carver; Leann Moses; Dawson, Kelly; Werkheiser, Gregory
**Subject:** RE: BEPCO L.P., f/k/a Bass Enterprises - Civil Action No. 08-313

Mr.Brady,

I am lead counsel for the GSF Entities in this matter. I am in receipt of Mr. Werkheiser's correspondence to you.

As an initial matter I believe Mr. John Demmy, lead counsel for Debtors, is out of the office and unavailable this week. I had previously requested Mr. Frank Monaco to share our availability for a call with you, as requested, but we have been holding off waiting for Mr. Demmy. We expect upon Mr. Demmy's return to let you know our availability next week for a call.

With regard to Mr. Werkheiser's letter, it was my understanding absent agreement of the parties that the mediation was mandatory in accordance with your local rules. The GSF Entities stand ready to fully participate in this process. You should know that just last friday Mr. Demmy and I received an email from Mr. Werkheiser concerning settlement which provided that, "BEPCO always has been and remains willing to engage in a dialogue to resolve the matters in dispute...." Certainly a somewhat different message than the one conveyed in Mr. Werkheiser's correspondence to you.

Without responding to the many accusations in Mr. Werkheiser's letter, please simply note we disagree and would suggest that we address Mr. Werkheiser's concerns in a conference call with you next week.

Philip Eisenberg, Partner
Locke Lord Bissell & Liddell

6/18/2008

600 Travis Street, Suite 3400
Houston, Texas 77002
(o)713-226-1304
(f)713-223-3717

---

**From:** Werkheiser, Gregory [mailto:GWerkheiser@MNAT.com]
**Sent:** Tuesday, June 17, 2008 1:51 PM
**To:** 'kbrady@cblh.com'
**Cc:** 'Demmy, John, D.'; Kilgannon, John C.; Eisenberg, Philip; Chavez, Mark; fmonaco@wcsr.com;
kmangan@wcsr.com; 'Buchbinder, David'; 'Hampton Carver'; 'Leann Moses'; Dawson, Kelly
**Subject:** BEPCO L.P., f/k/a Bass Enterprises - Civil Action No. 08-313

Please see the attached correspondence.  Thank you.

Gregory W. Werkheiser
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Chase Manhattan Centre, 18th Floor
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

Main: 302.658.9200
Direct Dial: 302.351.9229
Fax: 302.425.4663

| M | N | A | T |

---

This message, including any accompanying documents or attachments, may contain information that is
confidential or that is privileged. If you are not the intended recipient of this message, please note that the
dissemination, distribution, use or copying of this message or any of the accompanying documents or
attachments is strictly prohibited. If you believe that you may have received this message in error, please contact
me at (302) 658-9200 or by return e-mail.

# Exhibit H

## Werkheiser, Gregory

| | |
|---|---|
| **From:** | Werkheiser, Gregory |
| **Sent:** | Tuesday, June 17, 2008 7:01 PM |
| **To:** | 'Eisenberg, Philip'; kbrady@cblh.com |
| **Cc:** | Demmy, John, D.; Kilgannon, John C.; Chavez, Mark; fmonaco@wcsr.com; kmangan@wcsr.com; Buchbinder, David; Hampton Carver; Leann Moses; Dawson, Kelly |
| **Subject:** | RE: BEPCO L.P., f/k/a Bass Enterprises - Civil Action No. 08-313 |

Kevin,

While we have no desire to interrupt Mr. Demmy's vacation, BEPCO would appreciate learning sooner rather than later whether it is necessary for BEPCO to make a formal request to the District Court to be excused from the appellate mediation process. BEPCO has a request pending before the District Court to expedite its appeals and certify them for direct review in the Third Circuit. It would be unfortunate if any lingering uncetainty about the inappropriateness of appellate mediation here were to delay the District Court's consideration of BEPCO's certification request, which has already has been fully briefed and submitted to the District Court for a decision.

Thank you.

Gregory W. Werkheiser
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Chase Manhattan Centre, 18th Floor
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

Main: 302.658.9200
Direct Dial: 302.351.9229
Fax: 302.425.4663
| M | N | A | T |

---

**From:** Eisenberg, Philip [mailto:peisenberg@lockelord.com]
**Sent:** Tuesday, June 17, 2008 6:44 PM
**To:** Werkheiser, Gregory; kbrady@cblh.com
**Cc:** Demmy, John, D.; Kilgannon, John C.; Chavez, Mark; fmonaco@wcsr.com; kmangan@wcsr.com; Buchbinder, David; Hampton Carver; Leann Moses; Dawson, Kelly
**Subject:** RE: BEPCO L.P., f/k/a Bass Enterprises - Civil Action No. 08-313

Mr. Brady,

From my experience there is a reason that mediations are made mandatory. It is done so to avoid unnecessary posturing and accusations. I stand by my earlier email. Apparently BEPCO is willing to address settlement but only if it can suspend the rules that are made equally applicable to all parties. It is the position of the GSF Entities that a formal mediation should be required to go forward under the Standing Order and we are prepared to do so and to discuss same with you next week once we hear from Mr. Demmy concerning his availability.

Philip Eisenberg, Partner

Locke Lord Bissell & Liddell
600 Travis Street, Suite 3400
Houston, Texas 77002
(o)713-226-1304
(f)713-223-3717

---

**From:** Werkheiser, Gregory [mailto:GWerkheiser@MNAT.com]
**Sent:** Tuesday, June 17, 2008 4:17 PM
**To:** Eisenberg, Philip; kbrady@cblh.com
**Cc:** Demmy, John, D.; Kilgannon, John C.; Chavez, Mark; fmonaco@wcsr.com; kmangan@wcsr.com; Buchbinder, David; Hampton Carver; Leann Moses; Dawson, Kelly
**Subject:** RE: BEPCO L.P., f/k/a Bass Enterprises - Civil Action No. 08-313

Kevin,

So that you have the benefit of the email Mr. Eisenberg is referring to, I have attached a copy of my email to him and Mr. Demmy, dated June 13, 2008, for your reference. The email was prompted by statements made by the Debtors and GSF Entities in recent filings with the Bankruptcy Court and the District Court that created the false impression that BEPCO was unwilling to discuss settlement in any setting. I believe, if you review the email, you will note that it is entirely consistent with my letter to you. In particular, I made the point abundantly clear in my email to Messrs. Demmy and Eisenberg that the recent actions of the Debtors and GSF Entities, including their filing of an amended plan of liquidation that offers BEPCO no distribution whatsoever, were at odds with their statements in their recent Court filings.

As I stated in my prior email, "[i]f the Debtors and GSF Entities have a meaningful settlement proposal to convey, we are prepared to listen." That has been true and remains true of BEPCO today.

Whether, however, BEPCO's appeals should be stayed pending another round of formal mediation (there already having been an unsuccessful attempt at mediation in this case sponsored by the Bankruptcy Court) is quite a different issue. Given that it was explained at some length in the letter delivered to you earlier today, I won't burden you with further elaboration on the unfair prejudice that BEPCO will experience if its appeals are stayed pending mediation while the efforts of the Debtors and GSF Entities to moot these appeals in the Bankruptcy Court continue.

I transmitted the letter setting forth BEPCO's position on the inappropriateness of these appeals for appellate mediation at your suggestion following our brief conversation last Friday. The provision of such a letter is consistent with my prior experience with the District Court's appellate mediation program, where the mediator has made a recommendation to the District Court in the first instance based on the initial feedback of the parties concerning whether the case was appropriate for mediation. If, however, a formal request by BEPCO to the District Court to be excused from appellate mediation would be more appropriate, we, of course, will follow your lead.

Thank you for the oporturnity to respond to Mr. Eisenberg's email. I am available at your convenience should you wish to discuss this matter further.

Sincerely,

Gregory W. Werkheiser
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Chase Manhattan Centre, 18th Floor
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

Main: 302.658.9200
Direct Dial: 302.351.9229

Fax: 302.425.4663

| M | N | A | T |

---

**From:** Eisenberg, Philip [mailto:peisenberg@lockelord.com]
**Sent:** Tuesday, June 17, 2008 4:35 PM
**To:** kbrady@cblh.com
**Cc:** Demmy, John, D.; Kilgannon, John C.; Chavez, Mark; fmonaco@wcsr.com; kmangan@wcsr.com; Buchbinder, David; Hampton Carver; Leann Moses; Dawson, Kelly; Werkheiser, Gregory
**Subject:** RE: BEPCO L.P., f/k/a Bass Enterprises - Civil Action No. 08-313

Mr.Brady,

I am lead counsel for the GSF Entities in this matter. I am in receipt of Mr. Werkheiser's correspondence to you.

As an initial matter I believe Mr. John Demmy, lead counsel for Debtors, is out of the office and unavailable this week. I had previously requested Mr. Frank Monaco to share our availability for a call with you, as requested, but we have been holding off waiting for Mr. Demmy. We expect upon Mr. Demmy's return to let you know our availability next week for a call.

With regard to Mr. Werkheiser's letter, it was my understanding absent agreement of the parties that the mediation was mandatory in accordance with your local rules. The GSF Entities stand ready to fully participate in this process. You should know that just last friday Mr. Demmy and I received an email from Mr. Werkheiser concerning settlement which provided that, "BEPCO always has been and remains willing to engage in a dialogue to resolve the matters in dispute...." Certainly a somewhat different message than the one conveyed in Mr. Werkheiser's correspondence to you.

Without responding to the many accusations in Mr. Werkheiser's letter, please simply note we disagree and would suggest that we address Mr. Werkheiser's concerns in a conference call with you next week.

Philip Eisenberg, Partner
Locke Lord Bissell & Liddell
600 Travis Street, Suite 3400
Houston, Texas 77002
(o)713-226-1304
(f)713-223-3717

---

**From:** Werkheiser, Gregory [mailto:GWerkheiser@MNAT.com]
**Sent:** Tuesday, June 17, 2008 1:51 PM
**To:** 'kbrady@cblh.com'
**Cc:** 'Demmy, John, D.'; Kilgannon, John C.; Eisenberg, Philip; Chavez, Mark; fmonaco@wcsr.com; kmangan@wcsr.com; 'Buchbinder, David'; 'Hampton Carver'; 'Leann Moses'; Dawson, Kelly
**Subject:** BEPCO L.P., f/k/a Bass Enterprises - Civil Action No. 08-313

Please see the attached correspondence.  Thank you.

Gregory W. Werkheiser
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Chase Manhattan Centre, 18th Floor
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

6/18/2008

Main: 302.658.9200
Direct Dial: 302.351.9229
Fax: 302.425.4663

| M | N | A | T |

This message, including any accompanying documents or attachments, may contain information that is confidential or that is privileged. If you are not the intended recipient of this message, please note that the dissemination, distribution, use or copying of this message or any of the accompanying documents or attachments is strictly prohibited. If you believe that you may have received this message in error, please contact me at (302) 658-9200 or by return e-mail.

6/18/2008

# Exhibit I

## Werkheiser, Gregory

| | |
|---|---|
| **From:** | Demmy, John, D. [JDD@stevenslee.com] |
| **Sent:** | Wednesday, June 18, 2008 10:15 AM |
| **To:** | kbrady@cblh.com |
| **Cc:** | Werkheiser, Gregory; Dawson, Kelly; Hampton Carver; Leann Moses; Eisenberg, Philip; fmonaco@wcsr.com; Mangan, Kevin; Kilgannon, John C. |
| **Subject:** | BEPCO - 15375 Memorial, et al. - GlobalSantaFe Company, et al.: Appeal, C. A. No. 08-313 (SLR) |

Kevin:

As I think you are aware by now, I represent Debtors in this appeal. As I advised you last Friday, I am out this week on a family vacation but was alerted to the email traffic with respect to this matter by my colleague, John Kilgannon. I am back in the office on Monday, June 23rd, and would prefer to have a telephone conference with you and the parties to discuss scheduling of a mediation in this appeal then, or at any other collectively convenient time next week. However, I did want to briefly advise of Debtors' position with respect to what I take to be BEPCO's entreaties to you to advocate its position that, contrary to the District Court's standing order, a mediation should not proceed here (which, at least to me, seems contrary to BEPCO's counsel's June 13 email to myself and Mr. Eisenberg, which I understand has been provided to you, of BEPCO's willingness to discuss a settlement of issues including the pending appeals). First, I certainly do not agree with Mr. Werkheiser's characterization of Debtors' involvement in the mediation conducted by Judge Carey last summer (which BEPCO has characterized, in its submissions to the District Court in this appeal, as being forced upon it by the Bankruptcy Court). Unsupported (and unsupportable) accusations regarding a party's alleged lack of good faith in a particular setting are never productive and Debtors will refrain from any lengthy response thereto other than what is already stated herein and, although neither Debtors nor their counsel believe they should have to do so, to confirm again here and now that Debtors intend to participate in this mediation in good faith in an effort to resolve this appeal, and, if possible, all pending issues with BEPCO. Debtors further submit that mandatory mediation cannot be avoided, as BEPCO seeks to do here, unless the District Court enters an order to such effect. Debtors do not agree that mediation should be dispensed with here, and are interested in mediating. Finally, Debtors do not believe that an appointed mediator has any authority to advocate for any party to the District Court with respect to its desire to avoid the Court's mandatory mediation program or otherwise to decide whether mediation should be deferred or avoided and Debtors would encourage you not to do so here. If BEPCO wishes to take the matter up with the Court it certainly may do so, and Debtors, at least, would oppose such a request; but we do not believe the mediator has any role in the process other than to discharge his or her duties under the Court's standing order. My understanding is that this customarily is the position taken by mediators appointed in other appeals, including an appeal in which I was involved previously and in which Mr. Werkheiser's partner, Bill Sudell, was appointed as mediator.

Naturally, I will try to make myself available if there are any questions, but, of course, my preference would be to take these issues up, if necessary, upon my return to the office next week.

Regards,

**John D. Demmy**
Stevens & Lee, P. C.
1105 North Market Street
7th Floor
Wilmington, DE 19801
Telephone: (302)425-3308
Facsimile: (610)371-8515

---

This email may contain privileged and confidential information and is solely for the use of the sender's intended recipient(s). If you received this email in error, please notify the sender by reply email and delete all copies and attachments. Thank you.

# Exhibit J

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| 15375 MEMORIAL CORPORATION, *et al.*, | ) | |
| | ) | Case No. 06-10859 (KG) |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| SANTA FE MINERALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 06-50822 (KG) |
| | ) | |
| BEPCO, L.P., formerly known as BASS | ) | |
| ENTERPRISES PRODUCTION COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| GLOBALSANTAFE CORPORATION, | ) | |
| GLOBALSANTAFE CORPORATE | ) | |
| SERVICES, INC. AND ENTITIES | ) | |
| HOLDINGS, INC., | ) | |
| | ) | |
| Intervenors. | ) | |

## STIPULATION AND AGREEMENT PROVIDING FOR A CONTINUANCE
## OF PENDING LITIGATION AND ADDRESSING RELATED MATTERS

This stipulation and agreement (the "Stipulation") is made and entered into as of this 2nd day of July 2007 (the "Effective Date") by and among (a) BEPCO, L.P., f/k/a Bass Enterprises Production Company ("BEPCO"), (b) 15375 Memorial Corporation ("Memorial") and Santa Fe Minerals, Inc. ("Santa Fe," and together with Memorial, the "Debtors"), debtors and debtors-in-possession, and (c) GlobalSantaFe Corporation, Entities Holdings, Inc. and GlobalSantaFe Corporate Services Inc. (collectively, "GlobalSantaFe"), subject to the approval of the Court. The Debtors, GlobalSantaFe and BEPCO are referred to herein, collectively, as the

"Parties".

RECITALS:

A.    On September 8, 2006, Santa Fe commenced the adversary proceeding captioned Santa Fe Minerals, Inc. v. BEPCO, L.P., f/k/a Bass Enterprises Production Company, Adv. No. 06-50822 (the "Adversary Proceeding"), by the filing of a complaint against BEPCO [Adv. D.I. 1] (the "Complaint").

B.    On September 8, 2006, in the Adversary Proceeding, Santa Fe filed its Motion for Preliminary Declaratory and Injunctive Relief and a related memorandum of law in support thereof [Adv. D.I. 3 & 4] (the "Injunction Motion").

C.    On September 29, 2006, BEPCO filed the Motion of BEPCO, L.P. f/k/a Bass Enterprises Production Company, for Order (I) Dismissing Debtors' Chapter 11 Cases for Bad Faith, Cause Under 11 U.S.C. § 1112(b) and Ineligibility Under 11 U.S.C. § 109, (II) Dismissing or Suspending Debtors' Chapter 11 Cases Under 11 U.S.C. § 305(a)(1), (III) Converting Debtors' Chapter 11 Cases to Cases Under Chapter 7 of the Bankruptcy Code Pursuant to 11 U.S.C. § 1112(b), (IV) Appointing a Trustee Pursuant to 11 U.S.C. § 1104(a), or, (V) Appointing an Examiner Pursuant to 11 U.S.C. § 1104(c) and a related memorandum of law in support thereof [D.I. 21 & 22] (the "Dismissal/Conversion Motion").

D.    On September 29, 2006, BEPCO filed the Motion for Modification of the Automatic Stay Under 11 U.S.C. § 362 and a related memorandum of law in support thereof [D.I. 23 & 26] (the "Stay Relief Motion").

E.    On October 6, 2006, GlobalSantaFe filed a motion to intervene in the Adversary Proceeding and a related memorandum of law in support thereof [Adv. D.I. 11 & 12], which attached as an exhibit GlobalSantaFe's proposed complaint in intervention (the

2

"Intervention Complaint"). The Adversary Proceeding, the Complaint, the Injunction Motion, the Dismissal/Conversion Motion, the Stay Relief Motion, the Intervention Complaint and all other requests for relief, objections and responses related thereto pending before this Court are referred to herein collectively as the "Pending Disputed Matters".

      F.    On October 24, 2006, the Court entered an Order [Adv. D.I. 27] authorizing intervention by GlobalSantaFe in the Adversary Proceeding, subject to the terms and conditions stated therein.

      G.    The Court has scheduled a trial with respect to certain of the Pending Disputed Matters to commence on July 11, 2007 (the "Trial").

      NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, SUBJECT TO THE APPROVAL OF THE COURT, AS FOLLOWS:

      1.    The Trial shall be continued from July 11, 2007, until September 17, 2007 (the "Rescheduled Trial"). New dates shall be established for (a) a pre-trial conference, (b) the submission of a revised pre-trial stipulation, if appropriate, and (c) the submission of pre-trial briefs, if appropriate. The Parties are directed to confirm and submit proposed dates to the Court as soon as practicable following approval of this Stipulation.   A schedule for post-trial briefing, if appropriate, shall be determined after the conclusion of the Rescheduled Trial.

      2.    Pending the Rescheduled Trial, there shall be "standstill" among the parties such that, except as herein below provided, no additional discovery shall be conducted and no motions or other pleadings will be filed with respect to the Pending Disputed Matters now before the Court or any other matters among the parties hereto.

      3.    The matters now scheduled for Trial on July 11, 2007 will be heard at the Rescheduled Trial before any other motions, claims objections, or other matters now pending or

3

hereafter filed. Notwithstanding the foregoing, Debtors shall be entitled to schedule a hearing on their motion for summary judgment with respect to BEPCO's proofs of claim (the "Claim Motion") for a date which is at least ten days after the Rescheduled Trial. BEPCO reserves its right to oppose proceeding on the Claim Motion.

       4.     Pending the Rescheduled Trial, the Parties shall meet, discuss, and explore in good faith resolution of all pending matters in the bankruptcy proceedings including, but not limited to, the nature, availability and extent of the liability insurance coverage of Debtors and GlobalSantaFe. Nothing contained herein in regards to the Parties' agreement to discuss a good faith resolution shall be deemed as a commitment by any of the Parties to take any particular action with respect to such matters.

       5.     As of the Effective Date there shall be a tolling of any prescription statutes, statutes of limitation and statutes of repose that otherwise have not already expired, running against any claim by BEPCO against any one or more of Debtors and GlobalSantaFe relating to *Tebow v. Bradex, et al.*, No. 2005-7728 in the 12th Judicial District Court of the Parish of Avoyelles, State of Louisiana ("the Tebow Litigation"). Such prescription statutes, statutes of limitation and statutes of repose shall be tolled from the Effective Date until the date of the Rescheduled Trial, and such period shall not be considered. This standstill agreement does not constitute an admission by any of Debtors and GlobalSantaFe that BEPCO has any valid claim against any one or more of them nor the amount of such claim. Debtors and GlobalSantaFe do not agree that any claim which is already barred by prescription, or the running of any statute of limitations or statute of repose is revived by this Stipulation, nor does BEPCO agree that any such claim is so barred. Further, this Stipulation is without prejudice to the effects, if any, of the operation of 11 U.S.C. § 108 to independently stay any prescription or the running of any statute

4

of limitations or statute of repose.

6.    The Parties agree Mr. W. Frank McCreight may be designated as a witness for the Rescheduled Trial, subject to Debtors and GlobalSantaFe right to object to such designation (a) to the extent they are not permitted to take Mr. McCreight's deposition on reasonable notice prior to the Rescheduled Trial and (b) to the extent Debtors and GlobalSantaFe are not provided documents related to the subject matters for which Mr. McCreight has been designated by BEPCO as requested by Debtors and GlobalSantaFe, with the Court to resolve any disputes relating to such matters raised by objection by any of the Parties in advance of the Rescheduled Trial.

7.    Debtors' exclusive periods ("Exclusivity") to file a plan of reorganization may be extended through and including October 17, 2007, and the Debtors' exclusive period in which to solicit acceptances of such a plan shall be extended through December 16, 2007. Subject to approval by the Court, the Parties agree that notwithstanding the March 26, 2007, Order of the Court (D. I. 160), Debtors may file a proposed chapter 11 plan ~~prior to the Rescheduled Trial~~ ("Plan Filing"). No party shall seek approval of a disclosure statement or confirmation of a plan until thirty days after September 20, 2007.

8.    This stipulation is intended to address procedural issues with respect to the Pending Disputed Matters, Exclusivity and Plan Filing and not to affect any of the Parties' substantive rights. The Court shall retain jurisdiction to construe and implement the terms of this Stipulation.

9.    Nothing in this Stipulation shall constitute an admission relating to any matter including without limitation the Pending Disputed Matters. In the event that this Stipulation is not approved by the Court, the Stipulation shall be deemed null and void and shall

_If a plan is filed prior to the conclusion of the Rescheduled Trial, it shall not be filed later than August 28, 2007._

not be admissible, and may not be used in any manner, in this or any other case, proceeding or action for any purpose whatsoever.

10. Should any provision of this Stipulation require interpretation or construction, it is agreed that because all Parties, by their respective attorneys, have fully participated in the preparation of all provisions of this Stipulation, any arbitrator or judge who interprets or construes this Stipulation shall not apply any presumption based upon the rule of construction that a document is to be construed more strictly against the Party who itself or through its agents prepared such document.

11. This Stipulation, constitutes the entire agreement between the Parties with respect to the subject matter hereof, supersedes any prior agreements and understandings between the Parties, whether written or oral, with respect to the subject matter hereof and shall bind and benefit the Parties and their respective predecessors, successors and assigns.

[CONTINUED NEXT PAGE]

SL1 734331v1/000000.00000

12.     This Stipulation may be executed in one or more counterparts, including by facsimile or electronic mail, each of which shall be deemed an original but all of which taken together shall constitute but one and the same instrument. Each Party covenants, represents and warrants that such counterparts need not include the signature/verification page for any other Party, that the Parties may combine the signed counterparts into a single document by attaching all of the executed signature/verification pages to a single copy or original of this Stipulation, and that the foregoing shall not affect the validity of this Stipulation.

Dated: July 3, 2007

STEVENS & LEE, P.C.

_____
John D. Demmy (DE No. 2802)
John C. Kilgannon (PA No. 82263)
1105 North Market Street, 7th Floor
Wilmington, DE 19801
(302) 425-3308

Counsel for Debtors


MORRIS, NICHOLS, ARSHT
& TUNNELL LLP

_____
Gregory W. Werkheiser (DE No. 3553)
Kelly M. Dawson (DE No. 4786)
1201 North Market Street
Post Office Box 1347
Wilmington, DE 19899-1347
(302) 658-9200

-and-

CARVER DARDEN KORETZKY TESSIER
FINN BLOSSMAN & AREAUX, L.L.C.
M. Hampton Carver (LA #4546)
Stephen Rose (LA #114600)
Leann Opotowsky Moses (LA #19439)
1100 Poydras Street - Suite 2700
New Orleans, LA 70163
Telephone:    (504) 585-3800

Co-Counsel for BEPCO, L.P., formerly known
as Bass Enterprises Production Company

7

WOMBLE CARLYLE SANDRIDGE & RICE
A Professional Limited Liability Company

Francis X. Monaco, Jr. (DE No. 2078)
Kevin J. Mangan (DE No. 3810)
222 Delaware Avenue, Suite 1500
Wilmington, DE 19801
~~(336) 721-3600~~
(3-25) 252 4301

-and-

LOCKE LIDDELL & SAPP LLP
Philip G. Eisenberg (TX No. 24033923)
Omer F. Kuebel, III (LA No. 21682)
3400 JPMorgan Chase Tower
600 Travis Street
Houston, TX 77002
(713) 226-1200

Counsel for GlobalSantaFe

SO ORDERED
this **3rd** day of **July**

The Honorable Kevin Gross
United States Bankruptcy Judge

8

# Exhibit K

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| 15375 MEMORIAL CORPORATION, et al. | ) | Case No. 06-10859(KG) |
| | ) | (Jointly Administered) |
|                 Debtors. | ) | |

## ORDER

In anticipation of the three (3) day trial beginning September 17, 2007, and after a teleconference with the parties' respective attorneys, IT IS HEREBY ORDERED as follows:

1.      The parties[1] have agreed that mediation ("the Mediation") may be helpful and, accordingly, are directed to mediate their dispute before The Honorable Kevin J. Carey, U.S.B.J., on August 28, 2007.  Judge Carey will advise the parties of the procedures for the Mediation.

2.      In the event the Mediation is unsuccessful, the Court will hold the pretrial conference on September 12, 2007, at 9:30 a.m.  The pretrial order will be due to be filed on or before September 7, 2007, at 4:00 p.m.

3.      Debtors have served Bass with a motion for summary judgment ("the Motion") directed to the validity of Bass's proof of claim; and the parties disagree on when the Court should require briefing and hear argument.  With mediation scheduled to proceed within two weeks and the pretrial conference and trial shortly thereafter, it is unrealistic and unnecessary

---

[1] The "parties" are 15375 Memorial Corporation and SantaFe Minerals, Inc. ("Debtors"); GlobalSantaFe Corporation Entities Holdings, Inc., and GlobalSantaFe Corporate Services, Inc.; BEPCO, L.P. f/k/s Bass Enterprises Production Company ("Bass").

to divert Bass's attention and efforts away from preparations for the Mediation and trial. However, the Court's review of Debtors' brief in support of the motion for summary judgment leads to the conclusion that the summary judgment issue will should be resolved in conjunction with the post-trial ruling. Accordingly, the briefing on the summary judgment motion and argument, if any, will be deferred and scheduled in coordination with the post-trial briefing and argument, if any, with the scheduling to be addressed at the conclusion of the trial.

4.    Debtors shall not file the Motion prior to the Mediation.  Thereafter, the Motion shall be filed under seal to afford confidential treatment to the settlement agreement in the Tebow litigation brought in the Louisiana state court proceedings.

Dated: August 17, 2007

KEVIN GROSS, U.S.B.J.

cc:  The Honorable Kevin J. Carey

2

# Exhibit L

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| 15375 MEMORIAL CORPORATION, *et al.*, | ) | Bankr. Case No. 06-10859 (KG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| BEPCO, L.P., f/k/a | ) | |
| Bass Enterprises Production Company | ) | |
| | ) | Civil Action No. 08-313 (SLR) |
| Appellant, | ) | |
| | ) | (Consolidation for procedural |
| v. | ) | purposes of Civil Actions 08- |
| | ) | 313, 08-314, 08-318, 08-319, 08- |
| 15375 MEMORIAL CORPORATION, *et al,* | ) | 321, 08-322, 08-325 & 08-326) |
| | ) | |
| Appellees and Cross-Appellants. | ) | |
| | ) | |

## ORDER

Upon the Emergency Motion Of Appellant BEPCO, L.P., f/k/a Bass Enterprises

Production Company To Bypass Appellate Mediation (the "<u>Motion</u>")[1]; and due and sufficient

notice of the Motion having been given; and it appearing that no other or further notice need be

provided; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.    The Motion is granted.

---

[1]    All terms not defined herein shall have the meanings ascribed to such terms in the
Motion.

2.    The above-captioned appeals are exempt from the mandatory mediation procedures described in this Court's Standing Order, dated July 23, 2004.


Dated: June ___, 2008
       Wilmington, Delaware

_____
THE HONORABLE SUE L. ROBINSON
UNITED STATES DISTRICT JUDGE

## <u>CERTIFICATE OF SERVICE</u>

 I, Gregory W. Werkheiser, certify that I am not less than 18 years of age, and that service of the **Emergency Motion Of Appellant BEPCO, L.P. f/k/a Bass Enterprises Production Company To Bypass Appellate Mediation** was caused to be made on June 18, 2008, in the manner indicated upon the parties on the attached list.

 Under penalty of perjury, I declare that the foregoing is true and correct.

Dated: June 18, 2008

              _____
              Gregory W. Werkheiser (#3553)

806880.8

# SERVICE LIST

**VIA E-MAIL and HAND DELIVERY**

John D. Demmy, Esquire
Stevens & Lee, PC
1105 N. Market Street
7th Floor
Wilmington, DE 19801
jdd@stevenslee.com

Francis A. Monaco, Jr., Esquire
Kevin J. Mangan, Esquire
Womble, Carlyle, Sandridge & Rice, PLLC
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
fmonaco@wcsr.com
kmangan@wcsr.com

David Buchbinder, Esquire
Office of the U.S. Trustee
844 King Street
Suite 2207
Lockbox 35
Wilmington, DE 19801
david.l.buchbinder@usdoj.gov

Kevin F. Brady
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
kbrady@cblh.com

**VIA E-MAIL and FIRST CLASS U.S. MAIL**

Philip G. Eisenberg, Esquire
Mark A. Chavez, Esquire
Locke Liddell & Sapp, LLP
600 Travis Street
3400 JP Morgan Chase Tower
Houston, TX 77002
peisenberg@lockeliddell.com
mchavez@lockeliddell.com

John C. Kilgannon, Esquire
Stevens & Lee, PC
1818 Market Street
Philadelphia, PA 19103
jck@stevenslee.com

M. Hampton Carver, Esq.
Leann Opotowsky Moses, Esq.
Carver Darden Koretzky Tessier Finn Blossman &
Areaux, L.L.C.
1100 Poydras Street - Suite 3100
New Orleans, LA 70163
carver@carverdarden.com
moses@carverdarden.com

2374355.1