IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| 15375 MEMORIAL CORPORATION, *et al.*, | Bankr. Case. No. 06-10859 (KG) |
| Debtors. | (Jointly Administered) |
| | |
| BEPCO L.P., f/k/a Bass Enterprises Production Company, | |
| Appellant, | Civil Action No. 08-313 (SLR) |
| v. | (Consolidation of civil actions 08-313, 314, 318, 319, 321, 322, 325 and 326) |
| 15375 MEMORIAL CORPORATION, *et al.*, | |
| Appellees and Cross-Appellants. | |

**JOINT RESPONSE OF THE DEBTORS AND THE GLOBALSANTAFE ENTITIES
IN OPPOSITION TO EMERGENCY MOTION OF APPELLANT BEPCO, L.P.,
F/K/A BASS ENTERPRISES PRODUCTION COMPANY TO BYPASS APPELLATE
MEDIATION AND MOTION TO STRIKE RELATED EXHIBITS**

Debtors and Debtors in Possession 15375 Memorial Corporation ("Memorial") and Santa Fe Minerals, Inc. ("Santa Fe")(collectively, "Debtors") and GlobalSantaFe Corporation, GlobalSantaFe Corporate Services, Inc., and Entities Holdings, Inc. (collectively "GlobalSantaFe Entities"), by and through their respective undersigned counsel, hereby submit this Joint Response in Opposition to Emergency Motion of Appellant BEPCO, L.P., f/k/a Bass Enterprises Production Company ("BEPCO") to Bypass Appellate Mediation ("Mediation Motion") and Motion to Strike Related Exhibits, and respectfully show the Court as follows:

1

# INTRODUCTION[1]

1. The initial notices of appeal commencing this appellate process were filed by BEPCO on April 28, 2008. This appeal was docketed in this Court on May 27, 2008.

2. Since then, BEPCO has filed the following pleadings in this Court:

- Emergency Request for Certification for Direct Appeal to the United States Court of Appeals for the Third Circuit Pursuant to 28 U.S.C. § 158(d)(2)

- Motion of Appellant BEPCO, L.P., f/k/a Bass Enterprises Production Company (I) for Consideration of Supplemental Materials in Connection With Certification Request and (II) to Supplement Record on Appeal

- Motion of Appellant BEPCO, L.P., f/k/a Bass Enterprises Production Company for Leave to File a Reply in Support of its Emergency Request for Certification for Direct Appeal to the United States Court of Appeals for the Third Circuit

- Statement Relating to Motion of Appellant BEPCO, L.P., f/k/a Bass Enterprises Production Company for Leave to File a Reply in Support of its Emergency Request for Certification for Direct Appeal to the United States Court of Appeals for the Third Circuit

- Emergency Motion of Appellant BEPCO, L.P., f/k/a Bass Enterprises Production Company to Bypass Appellate Mediation

- Emergency Motion to Shorten Notice and Response Deadline with Respect to Emergency Motion of Appellant BEPCO, L.P., f/k/a Bass Enterprises Production Company to Bypass Appellate Mediation

3. In addition to the foregoing, BEPCO even filed a limited opposition to the Debtors' Motion to Consolidate Appeals.

4. BEPCO's filings include several hundreds of pages of exhibits and attachments, a number of which are not part of the record on appeal and were filed in violation of Federal Rule of Bankruptcy Procedure 8006, as set forth more fully in the GlobalSantaFe Entities' response [Docket No. 16] in opposition to the Motion of Appellant BEPCO, L.P., f/k/a Bass Enterprises

---

[1] BEPCO's arguments relating to the merits of matters currently pending in the Bankruptcy Court are not addressed herein; as they are matters which: (1) BEPCO has not yet filed objections to; and (2) are not before this Court.

Production Company (I) for Consideration of Supplemental Materials in Connection With Certification Request and (II) to Supplement Record on Appeal ("Motion to Supplement").[2]

5.      Moreover, BEPCO has seen fit to file strings of correspondence between counsel and the Court appointed mediator in this matter, Mr. Kevin Brady; correspondence which are confidential pursuant to the express terms of this Court's July 26, 2004 Standing Order regarding mediation. Further, within the context of communicating with the current mediator, BEPCO also violates the confidentiality of a prior mediation by offering characterizations of those proceedings in the hope of casting a negative light on the Debtors and the GlobalSantaFe Entities and prejudicing the mediator against the Debtors and the GlobalSantaFe Entities.

6.      BEPCO's violations of mediation confidentiality and non-stop filing of meritless pleadings not only waste judicial resources, but are indicative of the pattern of harassment and unreasonableness that have delayed the Debtors' progress in their bankruptcy cases and caused the Debtors, and the GlobalSantaFe Entities, to incur significant legal costs.

7.      In its most recent filings, BEPCO seeks to bypass this Court's **mandatory** mediation process and shorten the Debtors' and GlobalSantaFe Entities' time to respond to its so-called "emergency motion."

8.      In support of its Mediation Motion, BEPCO continues to contend that the Debtors and the GlobalSantaFe Entities are "frustrating" BEPCO's right to appellate review, all the while failing to acknowledge that:

- These appeals were initiated in April, via BEPCO's filing of four Notices of Appeal;
- BEPCO waited almost **two months** to seek relief from this Court's **mandatory** mediation program; and

---

[2]      On this date Debtors filed a joinder to the GlobalSantaFe Entities' Response to the Motion to Supplement.

3

- Any "frustration" of BEPCO's appellate rights is the result of BEPCO failing to seek a stay in the Bankruptcy Court.

9.      It is also worth noting that, while BEPCO contends that it is unclear whether this Court's mandatory mediation program was meant to apply to cases subject to certification directly to the Third Circuit, BEPCO fails to account for the fact that the Third Circuit, pursuant to Federal Rule of Appellate Procedure 33, has its <u>own</u> Appellate Mediation Program. Therefore, even if BEPCO were to succeed in avoiding mediation in these proceedings and were to succeed in its efforts to obtain direct review, it would still remain subject to possible mediation within the context of the Third Circuit's mediation program.

10.     For these reasons, as set forth more fully below, Debtors and the GlobalSantaFe Entities respectfully request that BEPCO's Mediation Motion be denied.

11.     In addition, Debtors and the GlobalSantaFe Entities request that BEPCO's Mediation Motion and related exhibits be stricken from the record because they: (1) contain confidential materials relating to the parties' previous mediation attempt; (2) contain correspondence as between the parties and the Court appointed mediator; and (3) contain materials and references outside of the appellate record before this Court.

## ARGUMENT

12.     The Standing Order of this Court dated July 26, 2004 provides, in relevant part:

> bankruptcy cases **shall** be referred to the Appellate Mediation Panel to facilitate settlement or otherwise to assist in the expeditious handling of the appeal. The Clerk of this Court shall establish and manage the Appellate Mediation Panel. Mediations will be conducted by members of the Panel. In all cases, the Clerk will assign the matter to a mediator on a rotating basis.

(emphasis added)

13.     In its Mediation Motion, BEPCO provides <u>no</u> valid basis upon which this Court should grant BEPCO relief from this Court's Standing Order and fails in its efforts to cast the

4

Debtors and the GlobalSantaFe Entities as the ones who do not want to negotiate settlement in good faith.

14. The Debtors and the GlobalSantaFe Entities stand ready to proceed with mediation and would welcome the opportunity to explore any and all settlement possibilities.

15. BEPCO, however, in an effort to avoid engaging in such a dialogue, prefers to make baseless allegations of bad faith against the Debtors and the GlobalSantaFe Entities, relying on the continuing proceedings in the Debtors' bankruptcy cases as evidence of such bad faith.

16. According to BEPCO:

> . . . [T]hese appeals are particularly ill-suited to appellate mediation for several reasons. First . . . while these appeals are pending, the Debtors and GSF Entities have taken steps before the Bankruptcy Court in an effort to frustrate BEPCO's ability to obtain effective appellate review of the Bankruptcy Court's order denying BEPCO's motion to dismiss . . .

(Mediation Motion at ¶ 12)

17. As previously noted to this Court, to the extent BEPCO's appeals are "frustrated" or mooted, it is due **entirely** to BEPCO's own failure to obtain – or even request – a stay from the Bankruptcy Court, as required by Federal Rule of Bankruptcy Procedure 8005.

18. A party that fails to seek a stay in the bankruptcy court is not entitled to seek such a stay from the appellate court. *In re Zahn Farms,* 206 B.R. 643 (B.A.P. 2d Cir. 1997). Therefore, BEPCO has waived any opportunity it may have had to seek a stay of the Debtors' bankruptcy proceedings and BEPCO's constant complaints regarding any possible "thwarting" of its ability to seek appellate review is of its own making and do not entitle it to any form of relief. *See Matter of Manges,* 29 F.3d 1034, *cert. denied,* 513 U.S. 1152 (stating that failure to

5

seek or obtain a stay creates a risk that appellate review may be precluded on the ground of mootness).

19. In fact, even had BEPCO sought a stay from the Bankruptcy Court, the possibility that an "appeal will be mooted" does not, by itself, "establish that [an appellant] will be injured by denying [a] stay." *In re Dakota Rail, Inc.,* 111 B.R. at 821; *see also In re Public Service Co. of New Hampshire,* 116 B.R. at 350 (stating, with respect to the argument that the appellant's appeal will be moot if a stay is not granted: "*all* courts confronted with this argument hold it is not enough to show sufficient injury to appellants to warrant [a] stay."); *In re Boca Del Rio Properties, Inc.,* 2006 WL 2459445 at *1 (S.D. Tex.) (rejecting debtor's assertion that it will suffer irreparable injury via the mooting of its appeal absent a stay where the debtor failed to show a likelihood of success on the merits of its appeal.).

20. In short, BEPCO's constant complaining regarding its need for immediate appellate relief is legally irrelevant.

21. It should also be noted that, while BEPCO contends that the Debtors' progress in its cases is being pursued in bad faith, the fact of the matter is that the Debtors' efforts at obtaining confirmation of a plan have been endorsed by the United States Trustee and approved by the Bankruptcy Court; facts that BEPCO conveniently omits.

22. In addition, while BEPCO argues that if the bankruptcy court proceedings continue, it will be required to engage in significant briefing in the Bankruptcy Court; it has become evident in this appeal that BEPCO's counsel is more than capable of preparing briefs on a variety of topics at the proverbial "drop of a hat."

23. Further still, while BEPCO presents a long-winded analysis as to whether this Court's Standing Order was meant to apply to appeals subject to possible certification to the

6

Third Circuit, BEPCO fails to account for the fact that, even if certified, this appeal would **still** be subject to potential mediation, pursuant to the Third Circuit's Appellate Mediation Program.[3]

24. Therefore, because: (1) this Court's appellate mediation procedures are mandatory; (2) the advancement of these cases in the Bankruptcy Court cannot support the granting of any relief in favor of BEPCO, particularly in light of BEPCO's failure to request and be granted a stay pending appeal; and (3) because, even if exempted from this Court's mediation program and certified for direct appeal, this case would remain subject to the Third Circuit's Appellate Mediation Program, Debtors and the GlobalSantaFe Entities respectfully request that BEPCO's Mediation Motion to denied.

25. In addition, Debtors and the GlobalSantaFe Entities request that BEPCO's Mediation Motion and related exhibits be stricken from the record because to they reference confidential mediation communications and documents not in the record before this Court.

## MOTION TO STRIKE

26. Attached to BEPCO's Mediation Motion (as Exhibits D through I) are confidential correspondence between the Court's appointed mediator, Mr. Kevin Brady, and the parties.

27. This Court's Standing Order on mediation provides, in relevant part:

> The mediator shall not disclose to anyone statements made or information developed during the mediation process. The attorneys and other persons

---

[3] Third Circuit Local Rule 33.1 provides:

> Appeals in civil cases . . . are referred to the Appellate Mediation Program to facilitate settlement or otherwise to assist in the expeditious handling of the appeal or petition. . . Mediations will be conducted by a senior judge of the court of appeals, a senior judge of a district court, the special master, or other person designated pursuant to Rule 48 F.R.A.P. . . . In all cases, however, the special master will determine which cases are appropriate for mediation and will assign the matter to a mediator.

With some limited exceptions, not applicable here, "All civil appeals and petitions . . . **shall** be eligible for referral to the Appellate Mediation Program." L.R. 33.2 (emphasis added).

> attending the mediation are likewise prohibited from disclosing statements made or information developed during the mediation process to anyone other than clients, principals or co-counsel, and then, only upon receiving due assurances that the recipients will honor the confidentiality of the information. Similarly, **the parties are prohibited from using any information obtained as a result of the <u>mediation process</u> as a basis for any motion or argument to any court. The mediation proceedings shall be considered compromise negotiations under Rule 408 of the Federal Rules of Evidence.**

(emphasis added).

28. In its exhibits in support of its Mediation Motion, BEPCO not only violates the confidentiality this Court has bestowed on the current mediation process, but the confidentiality of a prior mediation.

29. In *In re Student Finance Corporation,* 2007 WL 4643881 (D. Del.) (Slip Copy attached as Exhibit A), the plaintiffs procured expert reports, which incorporated submissions made as part of a confidential mediation. In response, the defendants moved to have such reports stricken.

30. In granting the defendants' motion to strike, the court in *Student Finance* noted the "strong policy considerations favoring a confidential mediation process." *Id.* at *1. Moreover, the court stated:

> [T]here is a well-established judicial policy protecting the confidentiality of the settlement process. The judicial system encourages the resolution of disputes by mediation and settlement. It is axiomatic that the assurance of confidentiality for communications made during the course of settlement negotiations is a critical component of the process. Particularly, in the event that settlement discussions do not resolve the dispute, the parties must be able to litigate their claims in the courtroom **without the pall-like presence of confidential negotiation statements influencing the arguments**. . . .
>
> **[T]he courts must remain blind to any** confidential **statements made during the course of settlement negotiations** . . .

*Id.* at *1 (emphasis added).

SL1 827438v1/000000.00000

31. In this case, BEPCO has violated the well-established judicial policies set forth above and attempted to use confidential information obtained in two mediation processes in order to obtain relief to which it is legally not entitled.

32. Therefore, because BEPCO's actions are in clear violation of this Court's Standing Order and relevant case law, and BEPCO's Exhibits D through I should be stricken.

33. Similarly, BEPCO's use of the Bankruptcy Court's scheduling order and references to proceedings subsequent to the entry of the order from which this appeal ensued is nothing more than an "end run" designed at skirting the clear prohibition against supplementing the appellate record before this Court. *See In re Neshaminy Office Bldg. Associates,* 62 B.R. 798, 802 (E.D. Pa. 1986) (stating: "Items not before the Bankruptcy Court and not considered by it in rendering its decision may not be included in the record."); *In re MK Lombard Group, Ltd.,* 2005 WL 735993 (E.D. Pa. 2005) (citing *Neshaminy* with approval); *see also* The GlobalSantaFe Entities' Response in Opposition to Motion of Appellant BEPCO, L.P., f/k/a Bass Enterprises Production Company (I) for Consideration of Supplemental Materials in Connection With Certification Request and (II) to Supplement Record on Appeal. Therefore, BEPCO's entire Mediation Motion and remaining exhibits should be stricken in order delete such exhibits and references from the record.

## CONCLUSION

34. For the reasons set forth above, Debtors and the GlobalSantaFe Entities respectfully request that BEPCO's Mediation Motion be denied in its entirety and that appropriate sanctions, including the striking of BEPCO's Mediation Motion and related exhibits, be levied against BEPCO for its violation of this Court's Standing Order, general judicial policy

of mediation confidentiality and prohibition against supplementing the appellate record before this Court.

Dated: Wilmington, Delaware
      June 23, 2008

Respectfully submitted,

**STEVENS & LEE, P.C.**

*/s/ John D. Demmy*
John D. Demmy (Bar No. 2802)
1105 North Market Street, 7th Floor
Wilmington, DE 19801
Telephone: (302) 425-3308
Telecopier: (610) 371-8515
Email: jdd@stevenslee.com

-and-

John C. Kilgannon
1818 Market Street, 29th Floor
Philadelphia, PA 19103
Telephone: (215) 751-1943
Telecopier: (610) 371-7954
Email: jck@stevenslee.com

*Attorneys For Debtors*

**WOMBLE CARLYLE SANDRIDGE & RICE, PLLC**

*/s/ Francis A. Monaco, Jr.*
Francis A. Monaco, Jr. (#2078)
Kevin J. Mangan (#3810)
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
Tel. (302) 252-4361

-and-

Philip G. Eisenberg
Texas State Bar No. 24033923
Mark A. Chavez
Texas State Bar No. 24036357
**LOCKE LORD BISSELL & LIDDELL, LLP**
3400 JPMorgan Chase Tower, 600 Travis Street
Houston, Texas 77002
Tel. (713) 226-1200

*Attorneys for the GlobalSantaFe Entities*

10

# EXHIBIT A

Before the
Federal Communications Commission
Washington, D.C. 20554

In the Matter of                           )
                                           )
Notice of Apparent Liability for Forfeiture )
                                           )
UNIVERSITY HOSPITAL, INC.                  )   File No. 920EF0029
                                           )
Licensee of Industrial/Business Station    )
WPIM566, Cincinnati, OH                    )

NOTICE OF APPARENT LIABILITY FOR FORFEITURE

Adopted: May 13, 1999          Released: May 14, 1999

By the Chief, Enforcement and Consumer Information Division,
Wireless Telecommunications Bureau:

I. Introduction

1. This is a Notice of Apparent Liability for Forfeiture, pursuant to Section 503(b) of the Communications Act of 1934, as amended, ("Act") and Section 1.80 of the Commission's Rules, against University Hospital, Inc. ("University"), licensee of Industrial/Business Station WPIM566, Cincinnati, Ohio. For the reasons that follow, we find that University operated radio transmitting apparatus without authorization from the Commission and acquired control of Station WPIM566 without the Commission's consent, in apparent violation of Sections 301 and 310(d) of the Communications Act of 1934, as amended, respectively. We conclude that University is apparently liable for a forfeiture in the amount of $18,000.

II. Background

2. University initially held a license for Industrial/Business Station WNSS855 (929.5375 MHz) in Cincinnati, Ohio. University used this station to page its doctors. In 1996, University entered into an agreement with two paging companies, MAP Paging, Inc. ("MAP Paging"), then-licensee of Station WPIM566 (929.0125 MHz), and MobileMedia Paging, Inc. ("MobileMedia"). The agreement contemplated, among other things, that University would divest itself of its license for Station WNSS855 and acquire, via assignment of license, the authorization for Station WPIM566. According to University, MobileMedia was to prepare and file the application for Commission consent to the assignment of license of Station WPIM566 from MAP Paging to University.

3. University constructed six new sites in August 1996 and then commenced paging operations without authority on the frequency 929.0125 MHz from these six sites using the call sign WPIM566. University asserts that it believed at the time that the assignment application had been properly and its operation on 929.0125 MHz was permissible under Section 90.159(c) of the Commission's Rules. In fact, no assignment application had been filed, and University had no authority to operate even on a temporary basis on the frequency 929.0125 MHz.

4. Nearly two years later, University discovered that it did not have authority to operate the frequency 929.0125 MHz at the six new sites, and, on July 14, 1998, University voluntarily brought the matter to the Commission's attention. On August 3, 1998, University filed application for the assignment of the license for station WPIM566 and for special temporary authority (STA) to operate at the six new sites.

5. The Commission granted an STA to University on August 27, 1998. Thereafter, on November 16, 1998, the Commission granted University's assignment for consent to the assignment of license of Station WPIM566.

III. Discussion

6. Section 301 of the Act provides in pertinent part:

> No person shall use or operate any apparatus for the transmission of energy c communications or signals by radio . . . except under and in accordance with this Act and with a license in that behalf granted under the provisions of this Act.

Section 310(d) of the Act provides in pertinent part:

> No . . . station license . . . shall be transferred, assigned, or disposed of manner, voluntarily or involuntarily, directly or indirectly . . . to any person except upon application to the Commission and upon finding by the Commission that the public interest, convenience and necessity will be served thereby.

7. The Commission's policy of imposing monetary forfeitures for violation of Sections 301 and 310(d) of the Act is well established. Each day of a continuing violation is considered a separate violation for purposes of computing a forfeiture under Section 503(b)(1) of the Act.

8. University concedes that it did not receive Commission approval before it constructed an operated six paging facilities in the Cincinnati, Ohio, area. Upon realizing that it lacked the authorization, University notified the Commission and soon thereafter filed the appropriate applications. University claims that it believed an assignment application had been filed and th authorized to operate pursuant to Section 90.159(c) of the Commission's Rules under a conditional permit. This explanation, however, does not excuse University's violations. University did not an assignment application on file and, therefore, did not have a conditional permit. Universit affirmative duty to ascertain, before beginning operation, whether its application had been filec whether it possessed authority to operate a station.

9. The guidelines contained in the Commission's Forfeiture Policy Statement, which became effective on October 14, 1997, specify base forfeiture amounts of $10,000 for "construction and/o operation without an instrument of authorization for the service" and $8,000 for "unauthorized substantial transfer of control." The guidelines, however, permit the Commission to issue a higl lower forfeiture than provided in the guidelines. Section 503 of the Act requires the Commission consider "the nature, circumstances, extent and gravity of the violation, and with respect to the violator, the degree of culpability, any history of prior offenses, ability to pay, and other suc as justice may require." In this case, taking into consideration all of the factors required by 503(b)(2)(D) of the Act, including, but not limited to, University's voluntary disclosure of its violations to the Commission and its use of the frequency exclusively for vital medical purposes, believe it is appropriate to reduce the amount of University's proposed forfeiture to $3,000 per the violations at each of University's six transmission sites, for a total forfeiture of $18,000.

IV. Ordering Clauses

10. ACCORDINGLY, pursuant to Section 503(b) of the Communications act of 1934, as amended, and Section 1.80 of the Commission's Rules, University is hereby NOTIFIED of its APPARENT LIABILITY FOR FORFEITURE in the amount of eighteen thousand dollars ($18,000) for repeatedly violating Sections 301 and 310(d) of the Communications Act of 1934, as amended.

11. IT IS FURTHER ORDERED, pursuant to Section 1.80 of the Commission's Rules, that within thirty days of the release of this Notice, University SHALL PAY the full amount of the proposed forfeiture or SHALL FILE a written statement seeking reduction or cancellation of the proposed forfeiture.

12. IT IS FURTHER ORDERED that copies of this Notice shall be sent, by Certified Mail, Return Receipt Requested, to University Hospital, Inc., 234 Goodman Street, Cincinnati, Ohio 4526 Attention: Clinical Engineering Division, and to University's counsel, Todd Collis, Esq., Crabbe, Brown, Jones, Potts & Schmidt, 500 Front Street, Suite 1200, Columbus, Ohio, 43215.

FEDERAL COMMUNICATIONS COMMISSION

Catherine W. Seidel

Consumer & Governmental Affairs
Enforcement Bureau Consumer & Governmental Affairs
Wireless Telecommunications Bureau

Slip Copy  
Slip Copy, 2007 WL 4643881 (D.Del.)  
**(Cite as: 2007 WL 4643881 (D.Del.))**

Page 1

In re Student Finance Corp.  
D.Del.,2007.  
Only the Westlaw citation is currently available.  
United States District Court,D. Delaware.  
In re STUDENT FINANCE CORPORATION, Debtor.  
Charles A. Stanziale, Jr., Chapter 7 Trustee Of Student Finance Corporation, Plaintiff,  
v.  
Pepper Hamilton LLP, et al., Defendants.  
Royal Indemnity Company, Plaintiff,  
v.  
Pepper Hamilton LLP, et al., Defendants.  
Bankruptcy No. 02-11620-KJC.  
Adversary No. 04-56423.  
Civil Action Nos. 04-1551 JJF, 05-165-JJF.

May 25, 2007.

Named Expert: Douglas M. Branson, Nancy J. Moore, Steven L. Schwarcz

Allison M. Berger, Hal L. Baume, Teresa M. Dorr, Fox Rothschild LLP, Lawrenceville, NJ, Charlene D. Davis, Mary E. Augustine, The Bayard Firm, L. Jason Cornell, Sheldon K. Rennie, Fox Rothschild LLP, Wilmington, DE, for Debtor.  
Anthony M. Saccullo, Daniel K. Astin, Fox Rothschild LLP, Ashley B. Stitzer, Charlene D. Davis, Christopher A. Ward, Kathryn D. Sallie, Mary E. Augustine, The Bayard Firm, Wilmington, DE, Dawn N. Zubrick, Dilworth Paxson LLP, Deirdre M. Richards, Obermayer Rebmann Maxwell & Hippel LLP, Philadelphia, PA, for Charles A. Stanziale, Jr., Chapter 7 Trustee.  
Karen Lee Turner, Eckert Seamans Cherin & Mellott, LLC, Susan E. Poppiti, Pinckney Harris & Poppiti, LLC, Wilmington, DE, Carol L. Press, Pro Hac Vice, Neil G. Epstein, Pro Hac Vice, for Robert L. Bast and Pamela Bashore Gagne.  
Daniel Bryan Butz, Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE, for Cahill Gordon & Reindel LLP.  
Philip Trainer, Jr., Andrew Dieter Cordo, Tiffany Geyer Lydon, Ashby & Geddes, Wilmington, DE, for Royal Indemnity Company.

*MEMORANDUM ORDER*

JOSEPH J. FARNAN, JR., District Judge.  
\*1 Pending before the Court is the Motion To Strike Expert Reports And Preclude Testimony Of Douglas M. Branson, Nancy J. Moore, and Steven L. Schwarcz filed by Defendants Pepper Hamilton LLP and W. Roderick Gagné in his capacity as an attorney (D.I. 231, 04-1551; D.I. 475, 05-165).[FN1] For the reasons discussed, the Motion will be granted.

> FN1. The Motion To Strike was joined to a limited extent by the "Accountant Defendants" (Freed Maxick & Battaglia CPAs PC, Freed Maxick Sachs & Murphy, P.C., McGladrey & Pullen, LLP, and Michael Aquino). (D.I.480, 05-165). The Motion was also joined in its entirety by Defendants Robert L. Bast, Pamela Bashore Gagné, W. Roderick Gagne in his capacity as Trustee of the Brennan Trusts, and the Brennan Trusts. (D.I.236, 04-1551). The Court will refer collectively to these parties as "Defendants."

**I. BACKGROUND**

On May 7, 2007, Plaintiffs delivered to Defendants the reports of their testifying experts. Three of the experts' reports stated that they had considered **confidentialmediation** submissions made by Defendants in connection with a **confidentialmediation** session which took place in December 2006.[FN2] The parties involved in that session signed a **Mediation** Agreement providing for the **confidentiality** and non-disclosure of statements made in the course of the **mediation**.[FN3]

> FN2. The parties to the mediation were Plaintiffs Royal Indemnity Co. and the Trustee, Defendant Pepper Hamilton LLP, and Defendants Robert L. Bast, Pamela Bashore Gagne, The Brennan Trust, and W. Roderick Gagné in both his capacity as an attorney with Pepper Hamilton and Trustee of the Brennan Trusts.

> FN3. The full text of the relevant portion of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the Mediation Agreement is set forth in the parties briefs on the Motion. *See* D.I. 232 at 2, 04-1551.

By their Motion, Defendants contend that the Court should strike the expert reports of three testifying experts, Douglas M. Branson, Nancy J. Moore, and Steven L. Schwarcz, and preclude each from testifying at trial because the experts received and considered **confidential** and **privilegedmediation** statements of Defendants. In response, Plaintiffs contend that the Mediation Agreement did not preclude them from sharing such statements with their experts. Plaintiffs further contend that there is no prejudice to Defendant Pepper and that precluding the expert testimony is too harsh a sanction.

**II. DISCUSSION**

The Court concludes that, in light of the parties' **Mediation** Agreement and strong policy considerations favoring a **confidentialmediation** process, Defendants' Motion should be granted. With respect to the Mediation Agreement, the Court concludes that the language is clear on its face that statements made during the course of mediation were not to be disclosed to third parties, including experts. The Court is not persuaded by Plaintiffs' argument that the Agreement considered experts to be distinct from third parties with regard to limitations on disclosure of mediation statements.

Further, and perhaps more importantly, there is well-established judicial policy protecting the confidentiality of the settlement process. The judicial system encourages the resolution of disputes by mediation and settlement. It is axiomatic that the assurance of confidentiality for communications made during the course of settlement negotiations is a critical component of the process. Particularly, in the event that settlement discussions do not resolve the dispute, the parties must be able to litigate their claims in the courtroom without the pall-like presence of confidential negotiation statements influencing the arguments.

In this case, the Court is also not persuaded by Plaintiffs argument that disclosure of the statements to their experts is not harmful to Defendants because the statements do not contain prejudicial information. Regardless of any effect of the content, the courts must remain blind to any confidential statements made during the course of settlement negotiations, particularly where the parties have guaranteed non-disclosure and confidentiality in an agreement. Here, Plaintiffs have exposed three of their testifying experts to **confidentialmediation** statements made by Defendants. By doing so, Plaintiffs have introduced to the adjudicative process matters that are supposed to be shielded from the Court. Therefore, the Court concludes that the expert reports must be stricken and the testimony precluded. Accordingly, the Court will grant Defendants' Motion To Strike.

**\*2** Additionally, having found that Defendants' position was meritorious, the Court will grant Defendants the extension of time they requested to file their expert reports.

***ORDER***

NOW THEREFORE, IT IS HEREBY ORDERED that:

1) The Motion To Strike Expert Reports And Preclude Testimony Of Douglas M. Branson, Nancy J. Moore, and Steven L. Schwarcz filed by Defendants Pepper Hamilton LLP and W. Roderick Gag e in his capacity as an attorney (D.I. 231, 04-1551/ D.I. 475, 05-165) is ***GRANTED;***

2) Defendants' oral request, made at the emergency hearing held on May 17, 2007, to extend deadlines for submission of expert reports is ***GRANTED.***Defendants shall submit a revised Case Management Order **no later than Wednesday, May 30, 2007.**

D.Del.,2007.
In re Student Finance Corp.
Slip Copy, 2007 WL 4643881 (D.Del.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Before the
Federal Communications Commission
Washington, D.C. 20554

In the Matter of                        )
                                        )
Notice of Apparent Liability for Forfeiture  )
                                        )
UNIVERSITY HOSPITAL, INC.               )    File No. 920EF0029
                                        )
Licensee of Industrial/Business Station )
WPIM566, Cincinnati, OH                 )


NOTICE OF APPARENT LIABILITY FOR FORFEITURE


Adopted: May 13, 1999          Released: May 14, 1999


By the Chief, Enforcement and Consumer Information Division,
Wireless Telecommunications Bureau:


I. Introduction

    1. This is a Notice of Apparent Liability for Forfeiture, pursuant to Section 503(b) of the Communications Act of 1934, as amended, ("Act") and Section 1.80 of the Commission's Rules, against University Hospital, Inc. ("University"), licensee of Industrial/Business Station WPIM566 Cincinnati, Ohio. For the reasons that follow, we find that University operated radio transmitting apparatus without authorization from the Commission and acquired control of Station WPIM566 without the Commission's consent, in apparent violation of Sections 301 and 310(d) of the Communications Act of 1934, as amended, respectively. We conclude that University is apparently liable for a forfeiture in the amount of $18,000.

II. Background

    2. University initially held a license for Industrial/Business Station WNSS855 (929.5375 MHz) in Cincinnati, Ohio. University used this station to page its doctors. In 1996, University entered into an agreement with two paging companies, MAP Paging, Inc. ("MAP Paging"), then-licensee of Station WPIM566 (929.0125 MHz), and MobileMedia Paging, Inc. ("MobileMedia"). The agreement contemplated, among other things, that University would divest itself of its license for Station WNSS855 and acquire, via assignment of license, the authorization for Station WPIM566. According to University, MobileMedia was to prepare and file the application for Commission consent to the assignment of license of Station WPIM566 from MAP Paging to University.

    3. University constructed six new sites in August 1996 and then commenced paging operations without authority on the frequency 929.0125 MHz from these six sites using the call sign WPIM566. University asserts that it believed at the time that the assignment application had been properly and its operation on 929.0125 MHz was permissible under Section 90.159(c) of the Commission's Rules. In fact, no assignment application had been filed, and University had no authority to operate even on a temporary basis on the frequency 929.0125 MHz.

    4. Nearly two years later, University discovered that it did not have authority to operate the frequency 929.0125 MHz at the six new sites, and, on July 14, 1998, University voluntarily brought the matter to the Commission's attention. On August 3, 1998, University filed application for the assignment of the license for station WPIM566 and for special temporary authority (STA) to operate at the six new sites.

    5. The Commission granted an STA to University on August 27, 1998. Thereafter, on November 16, 1998, the Commission granted University's assignment for consent to the assignment of license of Station WPIM566.

III. Discussion

6. Section 301 of the Act provides in pertinent part:

> No person shall use or operate any apparatus for the transmission of energy or communications or signals by radio . . . except under and in accordance with this Act and with a license in that behalf granted under the provisions of this Act.

Section 310(d) of the Act provides in pertinent part:

> No . . . station license . . . shall be transferred, assigned, or disposed of manner, voluntarily or involuntarily, directly or indirectly . . . to any person except upon application to the Commission and upon finding by the Commission that the public interest, convenience and necessity will be served thereby.

7. The Commission's policy of imposing monetary forfeitures for violation of Sections 301 and 310(d) of the Act is well established. Each day of a continuing violation is considered a separate violation for purposes of computing a forfeiture under Section 503(b)(1) of the Act.

8. University concedes that it did not receive Commission approval before it constructed and operated six paging facilities in the Cincinnati, Ohio, area. Upon realizing that it lacked the necessary authorization, University notified the Commission and soon thereafter filed the appropriate applications. University claims that it believed an assignment application had been filed and that it was authorized to operate pursuant to Section 90.159(c) of the Commission's Rules under a conditional permit. This explanation, however, does not excuse University's violations. University did not have an assignment application on file and, therefore, did not have a conditional permit. University's affirmative duty to ascertain, before beginning operation, whether its application had been filed and whether it possessed authority to operate a station.

9. The guidelines contained in the Commission's Forfeiture Policy Statement, which became effective on October 14, 1997, specify base forfeiture amounts of $10,000 for "construction and/or operation without an instrument of authorization for the service" and $8,000 for "unauthorized substantial transfer of control." The guidelines, however, permit the Commission to issue a higher or lower forfeiture than provided in the guidelines. Section 503 of the Act requires the Commission to consider "the nature, circumstances, extent and gravity of the violation, and with respect to the violator, the degree of culpability, any history of prior offenses, ability to pay, and other such as justice may require." In this case, taking into consideration all of the factors required by 503(b)(2)(D) of the Act, including, but not limited to, University's voluntary disclosure of its violations to the Commission and its use of the frequency exclusively for vital medical purposes, believe it is appropriate to reduce the amount of University's proposed forfeiture to $3,000 per the violations at each of University's six transmission sites, for a total forfeiture of $18,000.

IV. Ordering Clauses

10. ACCORDINGLY, pursuant to Section 503(b) of the Communications act of 1934, as amended, and Section 1.80 of the Commission's Rules, University is hereby NOTIFIED of its APPARENT LIABILITY FOR FORFEITURE in the amount of eighteen thousand dollars ($18,000) for repeatedly violating Sections 301 and 310(d) of the Communications Act of 1934, as amended.

11. IT IS FURTHER ORDERED, pursuant to Section 1.80 of the Commission's Rules, that within thirty days of the release of this Notice, University SHALL PAY the full amount of the proposed forfeiture or SHALL FILE a written statement seeking reduction or cancellation of the proposed forfeiture.

12. IT IS FURTHER ORDERED that copies of this Notice shall be sent, by Certified Mail, Return Receipt Requested, to University Hospital, Inc., 234 Goodman Street, Cincinnati, Ohio 4526 Attention: Clinical Engineering Division, and to University's counsel, Todd Collis, Esq., Crabbe, Brown, Jones, Potts & Schmidt, 500 Front Street, Suite 1200, Columbus, Ohio, 43215.

FEDERAL COMMUNICATIONS COMMISSION

Catherine W. Seidel

Consumer and Governmental Affairs Bureau
Enforcement Bureau
Wireless Telecommunications Bureau